**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| AMERIFIRST FINANCIAL, INC., *et al.*,[1] | ) Case No. 23-11240 (TMH) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

**DEBTORS' MOTION SEEKING ENTRY OF INTERIM AND FINAL ORDERS (I)
AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION EMPLOYEE WAGES,
SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EMPLOYEE
EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS
AND (II) GRANTING RELATED RELIEF**

AmeriFirst Financial, Inc. and its affiliated debtors and debtors in possession (each, a

"Debtor" and collectively, the "Debtors") in the above-captioned chapter 11 cases, by and through

their undersigned proposed counsel, submit this motion (this "Motion") for entry of interim and

final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively,

the "Interim Order" and "Final Order"):  (a) authorizing, but not directing, the Debtors to (i) pay

prepetition wages, salaries, other compensation, and reimbursable employee expenses, and (ii)

continue employee benefits programs in the ordinary course, including payment of certain

prepetition obligations related thereto, in an aggregate amount not to exceed $1,130,000 pursuant

to the Interim Order and $1,130,000 pursuant to the Final Order; and (b) granting related relief.  In

addition, the Debtors request that the Court schedule a final hearing to consider entry of the Final

Order.  In support hereof, the Debtors represent as follows:

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers include:  Phoenix 1040 LLC (2550) and AmeriFirst Financial, Inc. (4557).  The Debtors' service address is 1550 McKellips Road, Suite 117, Mesa, AZ 85203.

**Jurisdiction and Venue**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541(b)(1) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and  Local Rule 9013-1(m).

**Background**

4.      On August 24, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant toBankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has

been made in these chapter 11 cases, and no official committee of unsecured creditors has been appointed in these chapter 11 cases.

5.      Debtor AmeriFirst Financial, Inc. ("AFI") is a mid-sized independent mortgage company. It is licensed to operate in 44 states and serves customers via branches located in over 20 states.  In addition to originating and purchasing residential mortgage loans, AFI owns certain loan master servicing rights and fees generated thereby.

6.      Additional factual background regarding events leading to the filing of these chapter 11 cases is set forth in the *Declaration of T. Scott Avila in Support of First Day Motions* (the "Avila Declaration"), filed concurrently herewith and incorporated herein by reference.

### The Debtors' Workforce

7.      As of the Petition Date, the Debtors employ approximately 153 full-time employees and 14 part-time employees (the "Employees").  The Employees perform a variety of functions critical to the preservation of value and the administration of the Debtors' estates.  In many instances, the Employees include personnel who are intimately familiar with the Debtors' businesses, processes, and systems, and who cannot be easily replaced.  Without the continued, uninterrupted services of the Employees, the Debtors simply could not run their business and preserve value for the benefit of all stakeholders.  No Employees are party to collective bargaining agreements or other similar labor agreements, and no Employees are members of labor unions.

8.      In addition to the Employees, the Debtors' workforce also includes two independent contractors (the "Independent Contractors"), who perform necessary support for the Debtors.

9.      Many of the Employees and Independent Contractors rely on their compensation and benefits to pay their daily living expenses.  Thus, the Employees and Independent Contractors

3

will be exposed to significant financial constraints if the Debtors are not permitted to continue

paying compensation and providing the Employees with health and other benefits.  Without the

continued, uninterrupted services of their Employees and Independent Contractors, the Debtors'

continued operations and going concern value will be threatened.  Consequently, the Debtors

respectfully submit that the relief requested herein is necessary and appropriate under the facts and

circumstances of these chapter 11 cases.

**Employee Compensation and Benefits**

10.    To minimize the personal hardship the Employees could suffer if prepetition

Employee-related obligations are not paid when due or as expected and to maintain stability in the

Debtors' workforce during the administration of the Debtors' chapter 11 cases, the Debtors, by

this motion, seek authority, but not direction, to:   (a) pay and honor certain prepetition claims

relating to, among other things, wages, salaries, and other compensation, payroll services, federal

and state withholding taxes and other amounts withheld (including garnishments, Employees'

share of insurance premiums, and taxes), reimbursable expenses, health insurance, retirement

health and related benefits, workers' compensation benefits, life insurance, short-term and long-

term disability coverage, certain director compensation, and certain other benefits that the Debtors

have historically provided in the ordinary course (collectively, the "Employee Compensation and

Benefits"); and (b) pay all costs incident to the Employee Compensation and Benefits, collectively

in an aggregate amount not to exceed $1,130,000.  For the avoidance of doubt, no Employee

Compensation and Benefits may be paid that exceeds the amounts authorized under the

concurrently filed *Motion of the Debtors for Interim and Final Orders (I) Authorizing Debtors (A)*

*to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate*

4

*Protection to Prepetition Lenders, (III) Modifying the Automatic Stay, (IV) Scheduling a Final*

*Hearing, and (V) Granting Related Relief* (the "<u>DIP Motion</u>").

11.     Subject to approval from the Court, the Debtors intend to continue their applicable prepetition Employee Compensation and Benefits in the ordinary course.  Out of an abundance of caution, the Debtors further request authority to modify, change, and discontinue any of their Employee Compensation and Benefits and to implement new programs, policies, and benefits in the ordinary course during these chapter 11 cases without the need for further Court approval, subject to the Bankruptcy Code and any other provisions of applicable law.

12.     By this Motion, the Debtors seek authority to make the following payments related to prepetition amounts owed on account of the Employee Compensation and Benefits:

| Employee Obligation | Interim Amount | Final Amount |
|---|---|---|
| Unpaid Compensation Obligations | $500,000 | $500,000 |
| Withholding Obligations | $205,000 | $205,000 |
| Payroll Processing Fees | $55,000 | $55,000 |
| Reimbursable Expenses and Credit Care Obligations | $140,000 | $140,000 |
| **Employee Compensation** | **$900,000.00** | **$900,000.00** |
| Health Benefit Plans | $115,000 | $115,000 |
| 401(k) Plan | $15,000 | $15,000 |
| **Employee Benefits Programs** | **$130,000** | **$130,000** |
| **Total** | **$1,130,000** | **$1,130,000** |

## I.     Employee Compensation and Withholding Obligations.

### A.     Unpaid Compensation.

13.     In the ordinary course of business, the Debtors have incurred obligations to their Employees for Employee Compensation, Independent Contractor Obligations, and Commissions (each as defined below and collectively, the "<u>Compensation Obligations</u>").  As of the Petition Date, the Debtors estimate that they owe approximately $500,000 on account of accrued but unpaid

5

Compensation Obligations. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue to honor the Compensation Obligations and to pay any prepetition claims with respect thereto in the ordinary course of business.

### i.      Unpaid Employee Compensation.

14.     In the ordinary course of business, the Debtors incur obligations to their Employees for wages, overtime, and similar obligations (the "Employee Compensation"). Because Employees are generally paid in arrears, certain Employees are owed accrued but unpaid Employee Compensation as of the Petition Date (the "Unpaid Employee Compensation"). Employee Compensation may also be due and owing as of the Petition Date because of, among other things, potential discrepancies between the amounts paid and the amounts that Employees believe they should have been paid, which, upon resolution, may reveal that additional amounts are owed to such Employees, or as a result of Employees holding uncashed paper paychecks as of the Petition Date.

15.     The majority of the Debtors' payroll is made by direct deposit through electronic transfer of funds to the Employees' bank accounts or other electronic means on a bi-weekly calendar, and Employee Compensation accrues on either a salaried or hourly basis. As of the Petition Date, the Debtors estimate that they owe approximately $256,000 on account of accrued but Unpaid Employee Compensation.

### ii.      Independent Contractor Obligations.

16.     Typically, the Debtors hire Independent Contractors directly, and in the ordinary course of business, incur payment obligations to their Independent Contractors for services rendered to the Debtors (the "Independent Contractor Obligations"). The Debtors pay their Independent Contractors on either a weekly or monthly basis at an agreed rate, depending on the

6

terms of the Debtors' agreement with the Independent Contractor.  The Independent Contractors perform critical staff augmentation that support the Debtors' Employees and operations.  The Debtors believe that the authority to continue paying their Independent Contractors is critical to maintaining and administering their estates.  As of the Petition Date, the Debtors estimate that they owe approximately $25,000 in accrued but unpaid Independent Contractor Obligations (the "Unpaid Independent Contractor Obligations").

### iii.        Unpaid Commissions.

17.     The Debtors pay sales-based commissions to approximately 40 Employees.  These Employees market the Debtors' products and services and generally receive commission payments on a bi-monthly, in-arrears basis in varying percentages based on the sales tied to their individual efforts (the "Commissions").  The Debtors generally pay Commissions in arrears based on the Employees' sales performance in the prior month.  The Commissions are an important part of such Employees' overall compensation packages and motivate the Employees to maximize their sales performance.  Many of the Employees rely on the Commissions for their daily living expenses such that the failure to pay such Commissions would impose undue hardship.  On average, the Debtors spend approximately $400,000 per month on Commissions.  As of the Petition Date, the Debtors owe approximately $219,000 in accrued but unpaid Commissions (the "Unpaid Commissions").

18.     As of the Petition Date, the Debtors estimate that they owe approximately $500,000 on account of accrued Unpaid Employee Compensation, Unpaid Independent Contractor Obligations, and Unpaid Commissions earned prior to the Petition Date (collectively, the "Unpaid Compensation Obligations"), all of which will come due within the first twenty-one days of these chapter 11 cases.  As described above, if the Employees lose the Unpaid Compensation

Obligations that they are owed, it could cause Employees to experience financial hardship. In light of the substantial benefit the Employees will continue to provide to the Debtors' estates, the Debtors wish to avoid imposing such a hardship. The Debtors do not seek to pay Unpaid Compensation to any Employee in excess of the $15,150 priority wage cap imposed by section 507(a)(4) of the Bankruptcy Code. Accordingly, by this motion the Debtors seek authority, but not direction, to pay their Unpaid Compensation Obligations in the ordinary course and consistent with past practice and to continue to pay all accruing Compensation Obligations in the ordinary course.

**B.     Withholding Obligations.**

19.     During each applicable payroll period, the Debtors routinely deduct certain amounts from Employees' paychecks, including garnishments, child support, and similar deductions, legally ordered deductions, and miscellaneous deductions (collectively, the "Deductions"), and forward such amounts to various third-party recipients.

20.     In addition to the Deductions, certain federal and state laws require that the Debtors withhold certain amounts from Employees' gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, or local taxing authorities. The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based upon a percentage of gross payroll, additional amounts for federal and state unemployment insurance and Social Security and Medicare taxes (together with the Employee Payroll Taxes, the "Payroll Taxes"). The Payroll Taxes are generally processed and forwarded to the appropriate federal, state, and local taxing authorities at the same time the Employees' payroll checks are disbursed.

DOCS_DE:244438.4 70786/001

21.      As of the Petition Date, the Debtors estimate that they will have approximately $205,000 in unpaid Deductions and Payroll Taxes (together, the "Withholding Obligations") outstanding, all of which will come due within the first twenty-one days of these chapter 11 cases. By this motion, the Debtors seek authority, but not direction, to pay in a manner consistent with historical practice any unpaid Withholding Obligations and to continue to honor the Withholding Obligations in the ordinary course during the administration of these chapter 11 cases.

### C.      Payroll Processing.

22. Certain Withholding Obligations for the Debtors' Employees are processed by UKG Solutions ("UKG") using its cloud-based human capital management software system, Ulti-Pro. The Debtors pay approximately $15,000 per month for such services.  As of the Petition Date, the Debtors estimate that they owe $55,000 on account of prepetition payroll services (the "Unpaid Payroll Processing Fees").  By this motion, the Debtors seek authority, but not direction, to pay the Unpaid Payroll Processing Fees consistent with past practice and to continue payroll processing in the ordinary course during the administration of these chapter 11 cases.

### D.      Reimbursable Expenses and Credit Card Obligations.

23.      Prior to the Petition Date and in the ordinary course, the Debtors reimbursed Employees for approved expenses incurred on behalf of the Debtors in the scope of their employment (the "Reimbursable Expenses").  The Reimbursable Expenses are largely on account of costs related to business travel, work-related meetings and communications, marketing, professional development and supply purchases, each for reasonable business-related purposes. Employees who pay up-front for Reimbursable Expenses apply for reimbursement by submitting an expense report.  Once the Debtors' financial personnel have determined that the charges are for

9

legitimate reimbursable business expenses, the Debtors reimburse the appropriate Employee for such charges.

24.    Historically, the Debtors pay Reimbursable Expenses of approximately $10,000 per month in the aggregate.  As of the Petition Date, the Debtors estimate that they owe approximately $10,000 in aggregate Reimbursable Expenses.

25.    In addition, the Debtors provide 30 Employees with corporate credit cards (the "Credit Cards") to be used strictly for upfront payment of Reimbursable Expenses and related charges (the "Permitted Charges"), as overseen by the Debtors' accounting personnel.   In accordance with established company policy, the Permitted Charges are satisfied directly by the Debtors, while Employees are held personally responsible for any amounts that do not qualify as Permitted Charges.  Historically, the Debtors have paid $135,000 per month on account of the Permitted Charges and recurring, *de minimis* fees related to maintenance of the Credit Cards (together, the "Credit Card Obligations").  As of the Petition Date, the Debtors estimate that they owe, in the aggregate, approximately $130,000 on account of the Credit Card Obligations, all of which has come due or will come due during the Interim Period.

26.    Employees incurred the Reimbursable Expenses and Permitted Charges as business expenses on the Debtors' behalf and with the understanding that such expenses would be reimbursed or paid fully.   Accordingly, to avoid harming Employees who incurred the Reimbursable Expenses and Permitted Charges, who may become personally liable for such expenses, the Debtors request authority, but not direction, to pay the Reimbursable Expenses and Credit Card Obligations and to continue to pay the Reimbursable Expenses and Credit Card Obligations in the ordinary course.

II.     **Employee Benefits Programs.**

27.     The Debtors offer certain of their Employees the ability to participate in a number of insurance and benefits programs, including, among other programs, medical, vision and dental plans, life insurance, accidental death and dismemberment insurance, disability benefits, workers' compensation, retirement plans, incentive programs, paid time off, and other employee benefit plans (collectively, the "Employee Benefits Programs").

28.     As described above, failure to continue the Employee Benefits Programs could cause Employees to experience severe hardship.  In light of the substantial benefit the Employees have provided and will continue to provide to the Debtors' estates, the Debtors wish to avoid imposing such a hardship.  Accordingly, by this motion, the Debtors seek authority, but not direction, to:  (a) pay any unpaid amounts due with respect to the Employee Benefits Programs; and (b) continue to provide Employee Benefits Programs in the ordinary course during the administration of these chapter 11 cases.  As of the Petition Date, the Debtors estimate that they owe approximately $130,000 on account of the Employee Benefits Programs, $130,000 of which will come due within the first twenty-one days of these chapter 11 cases.  The Employee Benefits Programs are described in greater detail below.

A.     **Health Benefit Plans.**

29.     The Debtors offer full–time Employees and certain family members of Employees the opportunity to participate in a number of health benefit plans, including medical, vision, and dental plans (collectively, the "Health Benefit Plans").  The Debtors fund the Health Benefits Plans through a combination of regular deductions from Employee wages and Debtor contributions.  Specifically, the Debtors provide the following effective on the first of the month following 30 days of full-time employment:

11

- <u>Medical Plan</u>:   The Debtors' fully insured medical plan (the "<u>Medical Plan</u>") is administered by United Healthcare. The Debtors historically pay approximately $115,000 per month for premiums related to the Medical Plan.   The Debtors fund the Medical Plan, in part, with regular deductions from Employee wages.  As of the Petition Date, the Debtors estimate that they owe approximately $115,000 on account of premiums due and owing under the Medical Plan.[2]

- <u>Dental Plan</u>:  Additionally, the Debtors offer their Employees the option of participating in a fully-insured dental plan (the "<u>Dental Plan</u>") administered by the United Healthcare.  The Employees pay all premiums related to the Dental Plan through wage deductions. As of the Petition Date, the Debtors do not believe they have any premiums due under the Dental Plan.

- <u>Vision Plan</u>:  The Debtors also offer their Employees the option of participating in a vision plan (the "<u>Vision Plan</u>") administered by United Healthcare.  The Employees pay all premiums related to the Vision Plan through wage deductions.  As of the Petition Date, the Debtors do not believe they have any premiums due under the Vision Plan.

30.     As required by law, the Debtors also offer coverage under certain of the Health Benefit Plans to their former employees who have elected COBRA coverage.  In the case of the former employees who have elected COBRA coverage, the Debtors do not pay any premiums on behalf of the Employees.  Instead, such former employees pay the full amount of the premiums directly to the Debtors.  As part of the relief requested hereunder, the Debtors request authority to pay any prepetition premium payments relating to COBRA coverage (which are fully paid by the former employees) and to continue to make such payments in the ordinary course of business.

---

[2]     The Debtors also provide Employees who have enrolled in the Medical Plan the opportunity to contribute to an individually owned health savings account ("<u>HSA</u>") which is maintained by United Healthcare.  The HSA is funding by contributions by both the Employees and Debtors.  The funds deposited in health savings accounts may be used to pay for a number of medical needs, including the purchase of eyeglasses, hearing aids and prescriptions.  The Debtors historically pay approximately $1,400 per month for contributions to the Employee HSAs.

**B.      Other Insurance, Disability Benefits, and Employee Assistance Programs.**

      **i.      Life and AD&D Insurance Programs.**

31.      The Debtors provide basic life and accidental death and dismemberment insurance (the "Basic Life and AD&D Insurance") to full-time Employees through United Healthcare.  The Debtors historically pay approximately $1,700 per month for premiums related to the Basic Life and AD&D Insurance.  As of the Petition Date, the Debtors do not believe they have any amounts due to United Healthcare under the Basic Life and AD&D Insurance.

      **ii.      Disability Benefits.**

32.      The Debtors provide Employees with short-term and long-term disability benefits (the "Disability Benefits") through United Healthcare.

33.      The short-term disability benefit is a voluntary, Employee-funded program administered by the Debtors. For full-time Employees, the short-term disability benefit replaces a portion of the Employee's income on the fourteenth consecutive day after the Employee is unable to work due to injury or sickness.

34.      The long-term disability benefit is also a voluntary, Employee-funded program administered by the Debtors.  Once an Employee has exhausted their short-term disability coverage and are still unable to return to work, Employees are eligible for long-term disability coverage.  The long-term disability benefit replaces a portion of the Employee's income. Eligibility begins after a waiting period.

35.      Because Employees pay for all costs of Disability Benefits, the Debtors do not believe that they owe any amounts with respect to the Disability Benefits as of the Petition Date. Nevertheless, out of an abundance of caution, they seek authority to continue to offer this benefit in the ordinary course.

C.    **Workers' Compensation Program.**

36.    The Debtors maintain workers' compensation insurance for their Employees (or are otherwise self-insured) at the statutorily required level for each state in which the Debtors have Employees (collectively, the "Workers' Compensation Program").    The Debtors maintain coverage for the Workers' Compensation Program through Hartford Fire Insurance Company ("Hartford").    The Workers' Compensation Program is provided on a guaranteed cost basis with no deductible nor self-insured retention.    The Debtors pay a fixed premium, regardless of the number or the amount of workers' compensation claims.[3]

37.    The Debtors must continue the claim assessment, determination, adjudication, and payment process pursuant to the Workers' Compensation Program without regard to whether such liabilities are outstanding before the Petition Date to ensure that the Debtors comply with applicable workers' compensation laws and requirements.    There are no open claims under the Workers' Compensation Program.

38.    Because the Debtors are statutorily and/or contractually obligated to maintain the Workers' Compensation Program, their inability to do so may result in adverse legal consequences that disrupt the restructuring process.    The Debtors seek authority, but not direction, to (a) continue the Workers' Compensation Program in the ordinary course of business on a postpetition basis[4] and (b) modify the automatic stay solely to allow Employees to assert claims under the Workers' Compensation Program.

---

[3]    The Debtors intend to request payment of premiums due for the Workers' Compensation Program through a separate motion to approve their insurance programs to be filed in these Chapter 11 cases.

[4]    The Debtors' Workers' Compensation Program may change postpetition in the ordinary course of business due to changes in applicable laws and regulations and the Debtors' ability to meet requirements thereunder.    By this Motion, the Debtors request authority to continue the Workers' Compensation Program postpetition, including making any changes to current policy and practices that become necessary, subject to applicable law.

14

D.      **401(k) Plan.**

39.      The Debtors offer eligible Employees the opportunity to participate in a 401(k) plan (the "401(k) Plan").    The 401(k) Plan generally provides for pre-tax salary deductions of compensation up to limits set by the Internal Revenue Code.    The Debtors do not match an Employee's 401(k) Plan contributions (the "401(k) Contributions").    The 401(k) Plan is administered by Ascensus LLC ("Ascensus) and allows for automatic pre-tax wage deductions of eligible compensation up to the limits set forth by the Internal Revenue Code.    Each pay period, the Debtors deduct the Employees' 401(k) Contributions from the Employees' paychecks (the "401(k) Deductions") and holds such amounts in trust until they are forwarded to Ascensus.

40.      The Debtors also retain a record keeper and auditor for the 401(k) Plan.    The costs to pay for these services are paid jointly by funds contributed by the Debtors and funds deducted directly from the 401(k) assets.    As of the Petition Date, the Debtors estimate they owe approximately $15,000 for auditing costs.    The Debtors seek authority to pay these outstanding auditing costs, and otherwise honor their commitments to the 401(k) administrator, broker/advisor, and auditor (whether due prepetition or arising postposition), in the ordinary course on a postpetition basis.

41.      Many Employees' retirement savings solely consist of the 401(k) Plan.    Thus, the Debtors believe that continuing the 401(k) Plan is essential to maintaining Employee morale and protecting Employee expectations.    In addition, the Debtors believe that the 401(k) Deductions are generally held in trust by the Debtors and are not property of their estates.

42.      Accordingly, pursuant to the Interim Order and the Final Order, the Debtors seek the authority, but not direction, to (a) continue the 401(k) Plan in the ordinary course of business on a postpetition basis, (b) remit all 401(k) Deductions collected in the ordinary course of business,

15

and (c) pay all outstanding obligations related to prepetition services.  As of the Petition Date, the Debtors estimate that they owe approximately $15,000 on account of the 401(k) Plan, $15,000 of which will come due within the first twenty-one days of these chapter 11 cases.

### E.    Paid Time Off.

43.    In the ordinary course of business, the Debtors provide paid time off to certain of their Employees (the "Paid Time Off").  Paid Time Off generally accrues at specified rates up to a maximum amount based on applicable state limits, if any.  The rate and maximum amount of Paid Time Off that a given Employee is allowed to accrue varies based on position and time spent with the company.  Accrued Paid Time Off may be carried over from one year to the next, subject to certain caps on maximums set by the Debtors.

44.    Accruals of Paid Time Off, however, are not a current cash payment obligation.  By this Motion, the Debtors seek authority, but not direction, to pay any "cash out" amounts required under applicable law with respect to earned but unused Paid Time Off and to continue the Paid Time Off policy in the ordinary course.  For the avoidance of doubt, the Debtors seek authority to pay any "cash out" amounts required under applicable law with respect to earned but unused Paid Time Off in excess of $15,150 solely pursuant to the Final Order.

45.    In addition, the Debtors provide certain other forms of paid and unpaid leave, including, for example, (a) paid holidays, (b) leave under the Family and Medical Leave Act, and (c) other paid and unpaid leaves of absence for personal reasons, including those required by law.  Importantly, these other forms of paid and unpaid leave do not involve incremental cash outlays beyond standard payroll obligations.

46.    The Debtors believe that the continuation of Paid Time Off is essential to maintaining Employee morale during these chapter 11 cases.  Further, the policies are broad-based

16

programs upon which all Employees have come to depend. The Debtors anticipate that their Employees will utilize any accrued paid leave in the ordinary course of business, which will not create any material cash flow requirements beyond the Debtors' regular payroll obligations.

## Basis for Relief

I.    **A Sufficient Cause Exists to Authorize the Debtors to Honor the Employee Compensation and Benefits.**

    A.    **Certain Employee Compensation and Benefits Are Entitled to Priority Treatment.**

47.    Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle priority treatment to certain of the Employee Compensation and Benefits owed to the Employees. The Debtors are required to pay such priority claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(b) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or sick leave pay earned by an individual and (b) contributions to an employee benefit plan). Thus, granting the relief sought herein should only affect the timing of certain payments to the Employees and should not negatively affect recoveries for general unsecured creditors. Indeed, the Debtors submit that payment of the Employee Compensation and Benefits at this time enhances value for the benefit of all interested parties.

    B.    **Payment of Certain Employee Compensation and Benefits Is Required by Law.**

48.    The Debtors seek authority to pay the applicable Withholding Obligations to the appropriate third-party entities. These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from the Employees' paychecks. Indeed, certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from the Employees' paychecks on another party's behalf. *See* 11 U.S.C. §§ 541(b)(1), (d). Further, federal and state laws require the

17

Debtors to withhold certain tax payments from the Employees' paychecks and to pay such amounts to the appropriate taxing authority.  26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).  Because the Withholding Obligations may not be property of the Debtors' estates, the Debtors request that the Court authorize them to transmit the Withholding Obligations on account of the Employees to the proper parties in the ordinary course of business.

49.     Similarly, state laws require the Debtors to maintain the Workers' Compensation Program.  If the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states.   Payment of all workers' compensation amounts is therefore crucial to the Debtors' continued operations and the success of the Debtors' ongoing chapter 11 process.

## II.     Payment of the Employee Compensation and Benefits Is Proper Pursuant to Section 363(b) of the Bankruptcy Code and the Doctrine of Necessity.

50.     Section 363(c)(1) of the Bankruptcy Code expressly grants the Debtors the authority to "enter into transactions . . . in the ordinary course of business" and "use property of the estate in the ordinary course of business without notice or a hearing."  Therefore, the Debtors believe they are permitted to pay all postpetition amounts due pursuant to the Employee Compensation and Benefits as such actions are in the ordinary course of the Debtors' business.  Out of an abundance of caution, however, the Debtors seek entry of an order granting the relief requested herein to avoid any disruptions to their business operations.

18

51.     The relief requested herein may be granted by the Court pursuant to sections 363(b) and 105(a) of the Bankruptcy Code.  Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted) (requiring that the debtor show a "sound business purpose" to justify its actions under section 363 of the Bankruptcy Code); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

52.     In addition, the Court may authorize payment of prepetition claims in appropriate circumstances under section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of a bankruptcy court, empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of the Employee Compensation and Benefits under the "necessity of payment" rule (also referred to as the "doctrine of necessity").

53.     The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New England Ry. Co.* 657 F.2d 570, 581 (3d Cir. 1981).

The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  *Id.* (stating a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment").

54.     The necessity of payment doctrine is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of Chapter 11."  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of toolmakers as "necessary to avert a serious threat to the Chapter 11 process").

55.     Payment of the Employee Compensation and Benefits is warranted under this authority and the facts of these chapter 11 cases.  The majority of the Employees rely exclusively on the Employee Compensation and Benefits to satisfy their daily living expenses.  Consequently, Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor obligations for unpaid Employee Compensation and Benefits.  Additionally, continuing ordinary course benefits will help maintain Employee morale and minimize the adverse effect of the commencement of these chapter 11 cases on the Debtors' ongoing business operations.

56.     Moreover, Employees provide the Debtors with services necessary to conduct the Debtors' business, and the Debtors believe that absent the payment of the Employee Compensation and Benefits, the Debtors may experience turnover and instability at this critical time in these chapter 11 cases.  The Debtors believe that without these payments, the Employees may become demoralized and unproductive because of the potential significant financial strain and other hardships these Employees may face.  Such Employees may then elect to seek alternative employment opportunities.  Additionally, a significant portion of the value of the Debtors' business is tied to their workforce, which cannot be replaced without significant efforts—efforts that might not be successful given the overhang of these chapter 11 cases.  Enterprise value may be materially impaired to the detriment of all stakeholders in such a scenario.  The Debtors therefore believe that payment of the prepetition obligations with respect to the Employee Compensation and Benefits is a necessary and critical element of the Debtors' efforts to preserve value and will give the Debtors the greatest likelihood of retention of their Employees as the Debtors seek to operate their business in these chapter 11 cases.

57.     Indeed, courts in this district have recognized the importance of satisfying employee obligations in cases requesting relief similar to that requested here.  *See, e.g.*, *In re Clover Techs. Grp., LLC*, No. 19-12690 (KBO) (Bankr. D. Del. Jan. 21, 2020) (authorizing Debtors to pay prepetition wages, salaries, other compensation, and reimbursable expenses and to continue employee benefits programs on a final basis); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) (authorizing debtors to satisfy prepetition wages, compensation, and benefit obligations to their employees and continue employee compensation and benefits programs in the ordinary course on an interim basis); *In re Destination Maternity Corp., et al.*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 12, 2019) (authorizing debtors to continue

21

employee compensation and benefit programs and pay certain prepetition obligations related thereto on a postpetition basis on a final basis); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) (same); *In re PES Holdings, LLC,* No. 19-11626 (KG) (Bankr. D. Del. July 22, 2019) (same).[5]   Accordingly, the Debtors respectfully request that the Court authorize the Debtors to pay and continue the Employee Compensation and Benefits in the ordinary course of business and consistent with past practice.

## III.    A Limited Waiver of the Automatic Stay for Workers' Compensation Claims Is Appropriate Here.

58.    Section 362(a)(1) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause."  11 U.S.C. § 362(d)(1).

59.    The Debtors seek authorization, under section 362(d) of the Bankruptcy Code, to permit their Employees to proceed with their claims against the Workers' Compensation Program in the appropriate judicial or administrative forum.  The Debtors believe that cause exists to modify the automatic stay because staying the Employee's workers' compensation claims could have a detrimental effect on the financial well-being and morale of the Employees and lead to the departure of certain Employees who are critical at this juncture.  Such departures could cause a severe disruption in the Debtors' business to the detriment of all stakeholders.  In addition, as noted above, if the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit

---

5    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

22

the Debtors from operating in those states.  Accordingly, the Debtors request a limited waiver of the automatic stay for purposes of allowing the Debtors' Workers' Compensation Program to proceed.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

60.     The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, the proposed debtor-in-possession financing, and anticipated access to cash collateral.  Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks, wire transfer requests, or automated clearing house transfers with respect to authorized payments related to this motion, as applicable.  Accordingly, the Debtors believe that checks, wire transfer requests, or automated clearing house transfers that are not related to authorized payments will not be honored inadvertently.   Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks, wire transfer requests, or automated clearing house transfers in respect of the relief requested in this motion.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

61.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  For the reasons discussed above, authorizing the Debtors to (a) pay prepetition wages, salaries, other compensation, and reimbursable employee expenses and (b) continue employee benefits programs in the ordinary course, including prepetition obligations related thereto, and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases and the maintain value of their estate

23

postpetition.  Failure to receive such authorization and other relief during the first twenty-one days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course, preserve the going concern value of the Debtors' operations, and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## **Reservation of Rights**

62.     Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any

particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

### **Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

63.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### **Notice**

64.    The Debtors will provide notice of this Motion to:  (a) United States Trustee for the District of Delaware; (b) the United States Attorney's Office for the District of Delaware; (c) the state attorneys general for all states in which the Debtors conduct business; (d) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (e) counsel to the prepetition lender; (f) counsel to the postpetition lender; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).

### **No Prior Request**

65.    No prior request for the relief sought in this motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the form**s** attached hereto as **Exhibit A** **and** **Exhibit B** respectively, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Dated: August 29, 2023                **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email: ljones@pszjlaw.com
         dbertenthal@pszjlaw.com
         tcairns@pszjlaw.com

Proposed Counsel to the Debtors and Debtors in Possession

26