## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERIFIRST FINANCIAL, INC., *et al.*,[1] | ) | Case No. 23- 11240 (TMH) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO (A) CONTINUE OPERATING CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (the "Debtors" or the "Company") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby file this motion (the "Motion") seeking entry of an interim order (the "Interim Order") and a final order (the "Final Order"), substantially in the forms attached to this Motion as **Exhibit A** and **Exhibit B**, pursuant to sections 105, 345, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing the Debtors to (a) continue operating the Cash Management System (as defined herein), (b) honor and pay the Bank Fees (as defined herein) in the normal course, and (c) maintain existing business forms, and (ii) granting certain related relief, as described more fully herein. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Phoenix 1040 LLC (255) and AmeriFirst Financial, Inc. (4557). The Debtors' business address is 1550 McKelleps Road, Suite 117, Mesa, AZ 85203.

1

**Jurisdiction**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. The Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105, 345, and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2.

**Background**

4. On August 24, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are managing their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in the Debtors' chapter 11 cases, and no committees have been appointed or designated.

5. Debtor AmeriFirst Financial, Inc. ("AFI") is a mid-sized independent mortgage company. It is licensed to operate in 44 states and serves customers via branches located in over 20 states. In addition to originating and purchasing residential mortgage loans, AFI owns certain loan master servicing rights and fees generated thereby.

6. Additional factual background regarding the events leading to the filing of these Chapter 11 Cases is set forth in the *Declaration of T. Scott Avila in Support of First Day Motions* (the "Avila Declaration"), filed concurrently herewith and incorporated herein by reference.

### Cash Management System

7. In the ordinary course of business, the Debtors utilize a centralized cash management system (the "Cash Management System") to collect, manage, and disburse funds used in their business. The Cash Management System is essential to the stability of the Debtors' assets and business objectives, and to maximizing the value of their estates.

8. As of the Petition Date, the Debtors maintain twenty-five (25) bank accounts (the "Bank Accounts") at several banks, including Alliance Bank of Arizona, BMO Harris Bank N.A., Chase Bank, Wells Fargo, Veritex, Centier, and Citizens Bank (collectively, the "Banks"). Payments to creditors are made from the Bank Accounts, in a variety of ways, including checks, drafts, wire transfers, credit cards, and automated clearinghouse ("ACH") transfers. A general diagram of the movement of funds within the Cash Management System is attached hereto as **Exhibit C**, and a summary of bank accounts and a short description of the purpose of each account is attached hereto as **Exhibit D** (the "Bank Accounts").

9. Below is a summary of the Bank Accounts with a short description for the purpose of each account. Further explanation is provided on **Exhibit C** to this Motion:

|   | Debtor | Institution | Account Type | Last 4 Digits of Account Number | Account Purpose |
|---|---|---|---|---|---|
| 1. | Amerifirst Financial, Inc. | Alliance Bank of Arizona | Business Analysis | 4484 | AFI owned servicing general operating |
| 2. | Amerifirst Financial, Inc. | Alliance Bank of Arizona | Servicing | 7714 | AFI owned servicing general operating |
| 3. | Amerifirst Financial, Inc. | Alliance Bank of Arizona | FHLMC | 4044 | Fannie Servicing account loan note |
| 4. | Amerifirst Financial, Inc. | Alliance Bank of Arizona | FHLMC | 8051 | Fannie Servicing account escrows |

3

|    | **Debtor** | **Institution** | **Account Type** | **Last 4 Digits of Account Number** | **Account Purpose** |
|----|------------|-----------------|------------------|-------------------------------------|---------------------|
| 5. | Amerifirst Financial, Inc. | Alliance Bank of Arizona | FNMA | 0270 | Fannie Servicing account loan note |
| 6. | Amerifirst Financial, Inc. | Alliance Bank of Arizona | FNMA | 4271 | Fannie Servicing account escrows |
| 7. | Amerifirst Financial, Inc. | Alliance Bank of Arizona | GNMA | 2288 | Ginnie Servicing account escrows |
| 8. | Amerifirst Financial, Inc. | Alliance Bank of Arizona | GNMA | 2949 | Ginnie Servicing account escrows |
| 9. | Amerifirst Financial, Inc. | Alliance Bank of Arizona | Portfolio | 1398 | AFI owned servicing account loan note |
| 10. | Amerifirst Financial, Inc. | Alliance Bank of Arizona | Portfolio | 7385 | AFI owned servicing account escrows |
| 11. | Amerifirst Financial, Inc. | BMO Harris Bank N.A. | Checking Acct. | 8588 | Hard money loans |
| 12. | Amerifirst Financial, Inc. | Chase Bank | MIP | 4209 | FHA/VA mortgage insurance payment; loan transactions. |
| 13. | Amerifirst Financial, Inc. | Chase Bank | Operating | 4191 | Main Operating |
| 14. | Amerifirst Financial, Inc. | Chase Bank | Payroll | 6620 | Payroll payments to provider, transfers from misc accounts. |
| 15. | Amerifirst Financial, Inc. | Chase Bank | Servicing | 7122 | Interim servicing for 1st payment. AFI funds a loan, Investor has not purchased the loan and borrower makes a payment. |
| 16. | Amerifirst Financial, Inc. | Chase Bank | Trust (appraisals) | 4217 | Trust account |
| 17. | Amerifirst Financial, Inc. | Chase Bank | Savings | 9872 | Unknown |
| 18. | Amerifirst Financial, Inc. | Chase Bank | Savings | 3952 | Unknown |
| 19. | Amerifirst Financial, Inc. | Wells Fargo | Checking Acct. | 4352 | Private funding account |
| 20. | Amerifirst Financial, Inc. | Veritex | DACA | 5415 | Sweep acct. Transfers into account from multiple accounts or CIK/S&D sales. |
| 21. | Amerifirst Financial, Inc. | Veritex | WH Checking | 9327 | Loan transactions |
| 22. | Amerifirst Financial, Inc. | Centier | Operating | 7532 | Account related to warehouse deposit |
| 23. | Amerifirst Financial, Inc. | Centier | Reserve | 8813 | Centier operating account; AFI plus/minus on loan funding transactions |

|  | **Debtor** | **Institution** | **Account Type** | **Last 4 Digits of Account Number** | **Account Purpose** |
|---|---|---|---|---|---|
| 24. | Captive Insurance - Malaby Insurance, Inc. | Chase Bank | Checking | 9687 | Only opened to receive tax refund |
| 25. | Phoenix 1040 LLC | Citizens Bank | Operating | 4721 | Operating Account |

## Bank Fees

10. The Debtors incur certain fees and charges in connection with the ordinary course operation of the Cash Management System, including, without limitation, those fees as specified in the prepetition agreements entered into between the Debtors and the Banks (collectively, the "Bank Fees"). The Bank Fees include account maintenance charges, charges relating to ACH and wire transfers, lockbox and depository service charges, and other customary miscellaneous charges. On average, the Debtors incur approximately $3,400 in Bank Fees per month. In the ordinary course of business and typically on a monthly basis, the Banks charge the Debtors and deduct from the appropriate bank accounts certain service charges, and other fees, costs, and expenses. The Debtors believe there are approximately $3,400 in Bank Fees that have accrued prepetition and are outstanding as of the Petition Date. Accordingly, the Debtors seek approval to pay prepetition Bank Fees up to $3,400 and to pay any postpetition Bank Fees and, for the Banks to deduct, any such Bank Fees in the ordinary course when due.

## Business Forms

11. The Debtors utilize numerous preprinted business forms in the ordinary course of their business (including, without limitation, letterhead, purchase orders, invoices, and checks), including in connection with their Cash Management System. The Debtors would be required by the United States Trustee (the "U.S. Trustee") under the U.S. Trustee's *Operating Guidelines for Chapter 11 Case* (the "U.S. Trustee Guidelines") to incur the expense and delay of ordering

entirely new business forms referencing the Debtors' status as debtors-in-possession absent relief from the Court. To the extent necessary, the Debtors seek authority to use pre-existing business forms without such a reference in order to minimize expense to the estate. The Debtors submit that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtors will likely be aware of their status as debtors-in-possession and, therefore, changing business forms is unnecessary and would be unduly burdensome. In accordance with Local Rule 2015-2(a), to the extent the Debtors exhaust their existing supply of checks, the Debtors will reissue checks with the designation "Debtor-in-Possession" and the corresponding case number.

**Compliance with Section 345 of the Bankruptcy Code**

12. Pursuant to the U.S. Trustee Guidelines, the U.S. Trustee generally requires chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee's office.

13. Six of the Banks where the Debtors maintain twenty-three of their twenty-five Bank Accounts are authorized depositories under the U.S. Trustee Guidelines, including the Debtors main operating accounts.[2] Cause exists to allow the Debtors to continue utilizing the existing Bank Accounts consistent with historical practices.

14. The Cash Management System is complex and critical to the ongoing stability of the Debtors' businesses. Relocating the Cash Management Systems to new accounts and/or an authorized depository (a) would impose an excessive administrative burden on the Debtors and (b) could have unwanted or detrimental effects and disruption on the Debtors' business would stem

---

[2] Ten of the Debtors' Bank Accounts are maintained at Alliance Bank of Arizona, subsidiary of authorized depository Western Alliance Bank.

from such a transition. The Debtors will continue to work in good faith with the U.S. Trustee to address any concerns regarding the use of these accounts on a postpetition basis.

15. Out of an abundance of caution, to the extent the Court determines that the requirements of section 345(b) of the Bankruptcy Code are not satisfied, the Debtors request a 30 day suspension of such requirements, subject to the Debtors' rights to seek further extensions

## Relief Requested

16. The Debtors seek entry of the Interim Order and Final Order, pursuant to sections 105, 345, and 363 of the Bankruptcy Code, Rules 6003 and 6004 of the Bankruptcy Rules, and Rule 2015-2 of the Local Rules, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, authorizing the Debtors to (a) continue operating the Cash Management System, (b) honor and pay the Bank Fees in the normal course, including any prepetition Bank Fees, (c) maintain existing business forms, and (d) granting certain related relief, as described more fully herein.

## Basis for Relief

**A.    Maintaining the Existing Cash Management System
is Essential to Debtors' Operational Stability**

17. The U.S. Trustee Guidelines require a debtor-in-possession to, among other things:

   a. establish one debtor-in-possession bank account for all estate monies required for the payment of taxes, including payroll taxes;

   b. close all existing bank accounts and open new debtor-in-possession accounts;

   c. maintain a separate debtor-in-possession account for cash collateral; and

   d. obtain checks that bear the designation "debtor-in-possession" and reference the bankruptcy case number and type of account on such checks.

18. These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date. Enforcement of this provision of the U.S. Trustee Guidelines during these chapter 11 cases would severely disrupt the administration of the Debtors' estates. Accordingly, the Debtors respectfully request authorization to operate the Bank Accounts in the same manner as was maintained in the ordinary course of business prior to the Petition Date.

19. Continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Additionally, courts in this and other districts have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

20. Here, continued use of the Cash Management System will facilitate the chapter 11 cases by, among other things, avoiding administrative inefficiencies and expenses associated with disrupting this system and minimizing delays in the payment of postpetition obligations. The Debtors respectfully submit that parties in interest will not be harmed by the maintenance of the

8

existing Cash Management System because the Debtors employ appropriate mechanisms and internal control procedures to prevent unauthorized payments on account of obligations incurred before the Petition Date. As such, maintaining the Cash Management System is in the best interests of the Debtors' estates.

21. Furthermore, as discussed above, in the ordinary course of business, the Debtors conduct transactions through electronic wire transfers and other similar methods. If the Debtors' ability to conduct transactions by debit, wire, credit card, ACH transfer, or other similar methods is impaired, their estates will incur additional and unnecessary costs. Accordingly, the Debtors submit that it is in the best interests of all stakeholders for the Court to grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check.

B. **Authorizing (i) the Banks to Continue to Maintain, Service, and Administer the Bank Accounts and (ii) the Debtors to Pay Bank Fees, Each in the Ordinary Course of Business, Is Warranted**

22. The Debtors respectfully request that the Court authorize the Bank to continue to maintain, service, and administer the Bank Accounts as an account of the Debtors as debtors-in-possession, without interruption and in the ordinary course of business. In this regard, the Bank should be authorized to receive, process, honor, and pay any and all checks, ACH transfers, other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto; provided, however, that any check, advise, draft, or other notification that the Debtors advised the Bank to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Bank only to the extent authorized by order of the Court.

23. The Debtors further request that the Court authorize the Banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be

honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date. The Debtors also request that, to the extent the Banks honor a prepetition check or other item drawn on any account either (i) at the direction of the Debtors, (ii) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite the above-described protective measures, the Banks will not be deemed to be liable to the Debtors or their estates on account of such prepetition check or other item honored postpetition. The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

24. The Debtors further request that the Court authorize them to pay the Bank Fees and authorize the Banks to (i) continue to charge the Bank Fees and (ii) charge-back returned items to the applicable Bank Account, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course of business. The Debtors' inability to pay the prepetition Bank Fees or to continue to pay the Bank Fees in the ordinary course of business postpetition could hinder their ability to manage the Cash Management System to the detriment of the Debtors' estates.

25. Courts in this district routinely have waived the U.S. Trustee Operating Guidelines in operating chapter 11 cases with ongoing business operations and restructuring efforts. *See*, *e.g.*, *In re GigaMonster Networks, LLC*, Case No. 23-10051 (JKS) (Bankr. D. Del. Feb. 9, 2023) (authorizing the Debtors' continued use of existing bank accounts); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022) (same); *In re TZEW Holdco, LLC*, Case No. 20-10910 (CSS) (Bankr. D. Del. April 14, 2020) (same); *In re PES Holdings, LLC*, No. 19-11626

(KG) (Bankr. D. Del. Aug. 20, 2019) (same); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 9, 2019) (same).

C. **Modifying Certain Requirements of Section 345(b) Is Warranted.**

26. Section 345(a) of the Bankruptcy Code authorizes a debtor in possession to make deposits or investments of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety, "unless the court for cause orders otherwise." *Id.* § 345(b). Alternatively, the debtor may require the entity to deposit governmental securities pursuant to 31 U.S.C. § 9303.[3] Additionally, under the U.S. Trustee Guidelines, debtors in possession must, among other things, close prepetition bank accounts and open new "debtor in possession" operating, payroll, and tax accounts at one or more authorized depositories.

27. To the extent that the Cash Management System does not strictly comply with section 345 of the Bankruptcy Code, the Debtors seek a waiver of the deposit and investment requirements set forth therein for a 45-day period commencing upon entry of the Interim Order, without prejudice to the Debtors' right to seek further modifications or extensions of time. Courts may waive compliance with section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines

---

[3] Section 9303 of title 31 provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may instead provide an eligible obligation, designated by the Secretary of the Treasury, as an acceptable substitute for a surety bond. 31 U.S.C. § 9303.

11

for "cause." In evaluating whether "cause" exists, courts have considered a number of factors, including:

- the sophistication of the debtor's business;
- the size of the debtor's business operations;
- the amount of the investments involved;
- the bank ratings (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held;
- the complexity of the case;
- the safeguards in place within the debtor's own business for ensuring the safety of the funds;
- the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;
- the benefit to the debtor;
- the harm, if any, to the debtor;
- the harm, if any, to the estate; and
- the reasonableness of the debtor's request for relief from section 345(b) of the Bankruptcy Code requirements in light of the overall circumstances of the case.

*In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999). Here, these factors warrant a modification of the requirements of section 345 of the Bankruptcy Code to the extent the Cash Management System does not already strictly comply with its requirements.

28. The Debtors' Bank Accounts comply with the requirements of section 345(b) of the Bankruptcy Code. The Debtors' Bank Accounts are maintained at Alliance Bank of Arizona, BMO Harris Bank, Chase Bank, Wells Fargo Bank, Veritex, Centier Bank, and Citizens Bank, all of which are insured by the Federal Deposit Insurance Corporation. Thus, the Debtors believe that any funds that are deposited in these Bank Accounts are secure. Moreover, the Debtors understand that each of their Banks, except for Centier Bank, have each executed a Uniform Depository Agreement with, and are designated as an authorized depository by, the U.S. Trustee, pursuant to the U.S. Trustee Guidelines.

29. The Debtors maintain two Bank Accounts at Centier Bank. The Debtors understand that Centier Bank has not executed a Uniform Depository Agreement with the U.S. Trustee and

are not authorized depositories under the U.S. Trustee Guidelines. Nonetheless, the Debtors believe based on their business relationships, and the history of the institution, that Centier Bank is well-capitalized and financially stable. The Debtors maintain only limited funds at the Centier Bank Accounts, and each of these are insured by the Federal Deposit Insurance Corporation. Thus, the Debtors believe that any funds that are deposited in these Bank Accounts should be secure.

30. The Debtors believe that Centier Bank is well-positioned to perform depository and cash management functions during these chapter 11 cases. If the Debtors are granted a waiver, the Debtors will not be burdened with the significant administrative difficulties and expenses relating to opening new accounts in a manner that ensures all of their funds are fully insured. In addition, the risk of severe disruption of the Debtors' integrated operations will be minimized. Accordingly, the Debtors respectfully submit that cause exists to allow the Debtors to continue utilizing the Bank Accounts at Centier Bank consistent with historical practices.

31. The Debtors request that they be permitted to maintain their Bank Accounts in accordance with their existing practices, for a 45-day period commencing upon entry of the Interim Order, without prejudice to the Debtors' right to seek further modifications or extensions of time.

**D.  The Court Should Authorize the Debtors to Continue
    Using Their Existing Business Forms**

32. To avoid disruption of the Cash Management System and unnecessary expenses, pursuant to Local Rule 2015-2(a), the Debtors request authorization to continue to use their business forms substantially in the form existing immediately before the Petition Date, without reference to the Debtors' status as debtors-in-possession. The Debtors submit that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtors will likely be aware of their status as debtors-in-possession and, thus, changing business forms is unnecessary and would be unduly burdensome. In accordance with Local Rule 2015-

2(a), to the extent the Debtors exhaust their existing supply of checks, the Debtors will reissue checks with the designation "Debtor-in-Possession" and the case number.

33. In other large chapter 11 cases, courts in this district have allowed debtors to use their prepetition business forms without the "debtor in possession" label. *See*, *e.g.*, *In re GigaMonster Networks, LLC*, Case No. 23-10051 (JKS) (Bankr. D. Del. Feb. 9, 2023) (authorizing debtors' continued use of preprinted check stock without a "Debtor in Possession" marking); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022) (same); *In re Riverbed Tech., Inc.,* No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) (same); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 26, 2021) (same); *In re Town Sports Int'l, LLC*, No. 20-12168 (CSS) (Bankr. D. Del. Oct. 13, 2020) (same); *In re Extraction Oil and Gas, Inc.*, No. 20-10548 (Bankr. D. Del. July 13, 2020) (same).

### Satisfaction of Bankruptcy Rule 6003

34. The Debtors believe that they are entitled to immediate authorization for the relief contemplated by this Motion. Pursuant to Bankruptcy Rule 6003, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001." To the extent that the requirements of Bankruptcy Rule 6003 are applicable to the relief requested in the Motion, the Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm. For reasons discussed above, the relief requested herein is integral to the Debtors' administrative activities in these Chapter 11

Cases and necessary to preserve the value of their business and maximize the value of their estates for the benefit of all stakeholders. Failure to receive such authorization and other relief during the first twenty-one (21) days of these Chapter 11 Cases would severely disrupt the administration of the Debtors' estates at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Reservation of Rights

35. Nothing contained herein is intended or shall be construed as: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

### Waiver of Bankruptcy Rule 6004

36. The Debtors seek a waiver of any stay of the effectiveness of any order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth in the Motion, the relief requested herein is essential to prevent immediate and irreparable harm to the Debtors' business operations. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

**Notice**

37. The Debtors will provide notice of this Motion to: (a) United States Trustee for the District of Delaware; (b) the United States Attorney's Office for the District of Delaware; (c) the state attorneys general for all states in which the Debtors conduct business; (d) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (e) counsel to the prepetition lender; (f) counsel to the postpetition lender; (g) the Banks; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).

**No Prior Request**

38. No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request entry of the proposed Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (i) authorizing the Debtors to (a) continue operating the Cash Management System, (b) honor and pay the Bank Fees in the normal course, including any prepetition Bank Fees, and (c) maintain existing business forms, and (ii) granting such further relief as may be appropriate and proper.

| | |
|---|---|
| Dated:  August 29, 2023 | PACHULSKI STANG ZIEHL & JONES LLP |
| | |
| | */s/ Laura Davis Jones* |
| | Laura Davis Jones (DE Bar No. 2436) |
| | David M. Bertenthal (CA Bar No. 167624) |
| | Timothy P. Cairns (DE Bar No. 4228) |
| | 919 North Market Street, 17th Floor |
| | P.O. Box 8705 |
| | Wilmington, Delaware  19899 (Courier 19801) |
| | Telephone:  (302) 652-4100 |
| | Facsimile:   (302) 652-4400 |
| | Email: ljones@pszjlaw.com |
| | dbertenthal@pszjlaw.com |
| | tcairns@pszjlaw.com |
| | |
| | Proposed Counsel to the Debtors and Debtors in Possession |