# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>AMERIFIRST FINANCIAL, INC., *et al.*,[1]<br><br>　　　　　　　　　　Debtors. | ) <br> ) Chapter 11 <br> ) <br> ) Case No. 23-11240 (TMH) <br> ) <br> ) (Joint Administration Requested) <br> ) |

## DECLARATION OF T. SCOTT AVILA
## IN SUPPORT OF FIRST DAY MOTIONS

I, T. Scott Avila, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1.     I am Chief Restructuring Officer ("CRO") of Debtor Phoenix 1040 LLC ("Phoenix") and Debtor AmeriFirst Financial, Inc. ("AmeriFirst", together with Phoenix, the "Debtors). I became CRO of the Debtors on August 21, 2023. Since that time, and in such capacities, I have worked to become familiar with the Debtors' business, financial affairs, and day-to-day operations.

2.     I am authorized to submit this Declaration on behalf of the Debtors. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents, and information I have received from other members of the Debtors' management or the Debtors' advisors. If I were called upon to testify, I could and would testify competently to the facts set forth herein on that basis.

---

[1]     The Debtors and the last four (4) digits of their respective taxpayer identification numbers include: Phoenix 1040 LLC (2550) and AmeriFirst Financial, Inc. (4557). The Debtors' service address is 1550 McKelleps Road, Suite 117, Mesa, AZ 85203.

3.  I submit this Declaration in support of the Debtors' critical "first day" motions described below (collectively, the "First Day Motions") filed in these chapter 11 cases (the "Chapter 11 Cases").[2] I am over the age of 18, competent to testify, and authorized to submit this Declaration on behalf of the Debtors.

## General Background

4.  The Debtors commenced these Chapter 11 Cases following the Change in Control (defined below) on August 24, 2023 (the "Petition Date") to effectuate an orderly wind down of their lending platforms and sale of their related assets.

5.  AmeriFirst is a mid-sized independent mortgage company. It is licensed to operate in 44 states and serves customers via branches located in over 20 states. In addition to originating and purchasing residential mortgage loans, AmeriFirst owns certain loan master servicing rights ("MSRs") and fees generated thereby. The MSRs are a valuable asset of the Debtors' estates. Phoenix has no business operations aside from holding 100% of the equity interests in AmeriFirst.

6.  Following the nationwide decline in residential mortgage lending, particularly refinancings, AmeriFirst's annual combined loan originations and loan sale income dropped precipitously. For the 12 month period ending December 31 2022, AmeriFirst suffered a $16.8 million net loss.

## Prepetition Secured Debt

7.  Pursuant to, *inter alia*, (i) that certain *Amended and Restated Credit and Security Agreement*, dated as of May 15, 2023 (the "Prepetition Credit Agreement"), among AmeriFirst, as borrower, and RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. and RCP Customized Credit Fund (Fund IVA), L.P. (each, a "Prepetition Lender" and collectively, the "Prepetition

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the applicable First Day Motions.

Lenders"), and RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. as administrative agent (the "Prepetition Agent", and with the Prepetition Lenders, the "Prepetition Secured Parties"), (ii) that certain *Limited Waiver and Second Amendment to Credit and Security Agreement*, dated as of May 15, 2023 (the "Limited Waiver"), and (iii) the certain *Settlement Agreement*, dated as of May 15, 2023 (the "Settlement Agreement"), the Prepetition Secured Parties provided certain prepetition term loans and other financial accommodations to AmeriFirst.

8. Pursuant to the Settlement Agreement, in consideration for the execution of the Prepetition Credit Agreement, the Second Amendment, and a restatement of the "bad boy" guaranty agreement of Eric Bowlby (the "Guarantor"), AmeriFirst's former Chief Executive Officer and then majority shareholder, in favor of the Prepetition Secured Parties, the Prepetition Secured Parties, AmeriFirst, and Guarantor entered into certain mutual releases, including the release of all Existing Defaults (as defined in the Settlement Agreement), subject to the terms and conditions set forth therein.

9. As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Credit Agreement is at least $15,798,087 (*plus* accrued and unpaid interest, additional fees, costs, expenses, and other obligations as provided under the Prepetition Credit Agreement) (the "Prepetition Obligations").

10. In connection with the Prepetition Credit Agreement, the shareholders of AmeriFirst, Eric Bowlby and Kenneth Bowlby, entered into that certain *Pledge Agreement*, dated as of May 15, 2023 (the "Pledge Agreement") with the Prepetition Secured Parties, which granted liens and security interests in 100% of the common equity stock of AmeriFirst (the "Pledged Shares") in favor of the Prepetition Agent, and AmeriFirst entered into that certain *Security Agreement*, dated as of May 15, 2023, with the Prepetition Secured Parties (the "Security

3

Agreement") which granted a first priority lien on and security interest in substantially all of the personal property of AmeriFirst to the Prepetition Agent, subject to certain permitted liens, together with mortgages on certain real property of AmeriFirst scheduled pursuant to the Prepetition Credit Agreement. Pursuant to the Prepetition Credit Agreement and the Security Agreement, the Prepetition Secured Parties assert that the Prepetition Obligations are secured by valid, binding, perfected first priority security interests and liens (the "Prepetition Liens") in and on the "Collateral," as defined in the Prepetition Credit Agreement and Security Agreements (the "Prepetition Collateral").

11. Pursuant to the Second Amendment, AmeriFirst agreed to issue 40,000 shares of preferred shares, with an aggregate liquidation value of $4 million, to the Prepetition Lenders at the closing of the Prepetition Credit Agreement.

**Change in Control**

12. On August 24, 2023, following various events of default under the Prepetition Credit Agreement and prior to the commencement of these Chapter 11 Cases, the Prepetition Agent gave a Notice of Events of Default under the Prepetition Credit Agreement and declared that the Obligations of AmeriFirst under the Prepetition Credit Agreement were immediately due and payable. The Prepetition Agent thereafter exercised its rights under the Pledge Agreement, including transferring the Pledged Stock and assigning the Prepetition Agent's rights under the Pledge Agreement to Phoenix. Pursuant to the Pledge Agreement, the certificates for the Pledged Shares were then canceled and a new stock certificate issued to Phoenix. Phoenix as the sole shareholder of AmeriFirst then executed a Unanimous Written Consent as the sole shareholder of AmeriFirst (the "Phoenix Consent"). The Phoenix Consent (a) removed the former directors of AmeriFirst; and (b) elected two new directors (including an independent director) to AmeriFirst's

board of directors. The reconstituted board of AmeriFirst executed a unanimous consent removing all former officers of AmeriFirst and electing new officers (the "AmeriFirst Consent", together with the Phoenix Consent, the "Change in Control"). The Phoenix Consent and the AmeriFirst Consent were each filed with and accepted by the Arizona Corporation Commission.

13. The Debtors have insufficient cash on hand to fund ongoing operations and the costs of these Chapter 11 Cases, including paying employees and other administrative claims. Following arms-length negotiations, the Debtors have reached agreement with the Prepetition Lenders as "DIP Lenders" on the terms of debtor in possession financing and use of cash collateral.

14. The Debtors have filed to date a limited number of critical First Day Motions which are discussed below. These First Day Motions relate to (a) the joint administration of the Debtors' Chapter 11 Case, (b) continuation of the Debtors' cash management system, (c) payment of employee wages, compensation and employee benefits programs, and (d) debtor in possession financing and use of cash collateral. The relief requested in the First Day Motions is critical to stabilize the Debtors' business operations and the ultimate success of these Chapter 11 Cases. The Debtors will file additional typical First Day Motions as soon as possible and intend to seek the Court's approval of those as well in the near future. For the reasons stated above and below, I believe that the relief requested in the First Day Motions is necessary to prevent imminent harm to the Debtors' estates.

**FIRST DAY MOTIONS**

I. **Administrative Motion**

    A. **Joint Administration Motion**

15. The Debtors request entry of an order directing joint administration of their Chapter 11 Cases for procedural purposes only pursuant to Federal Rule of Bankruptcy Procedure 1015(b)

and providing that the Court maintain one file and one docket for all of the Debtors' Chapter 11 Cases under the lead case, *In re AmeriFirst Financial, Inc., et al.*

16.     The two Debtor entities are "affiliates" as that term is defined in section 101(2) of the Bankruptcy Code.  Accordingly, joint administration of these Chapter 11 Cases will allow for the efficient and convenient administration of the Debtors' interrelated Chapter 11 Cases, will yield significant cost savings, and will not prejudice the substantive rights of any party in interest.

17.     I believe that entry of an order directing joint administration of the Chapter 11 Cases will reduce fees and costs by avoiding duplicative filings and objections.  Joint administration also will allow the Office of the United States Trustee (the "United States Trustee") and all parties-in-interest to monitor the Chapter 11 Cases with greater ease and efficiency. Accordingly, on behalf of the Debtors, I respectfully submit that the Joint Administration Motion should be approved.

**II.    Operational Motions Requesting Immediate Relief**

**A.    Cash Management Motion**

18.     By the Cash Management Motion, the Debtors request interim and final (i) authority to (a) continue operating the Cash Management System (as defined therein), (b) honor and pay the Bank Fees (as defined therein) in the normal course, and (c) maintain existing business forms, and (ii) granting certain related relief, as described more fully in the Cash Management Motion.

19.     In the ordinary course of business, the Debtors utilize their Cash Management System to collect, manage, and disburse funds used in their business.  The Cash Management System is essential to the stability of the Debtors' assets and business objectives, and to maximizing the value of their estates.

20. As of the Petition Date, the Debtors maintain twenty-one (21) bank accounts (the "Bank Accounts") at several banks, including Alliance Bank of Arizona, BMO Harris Bank N.A., Chase Bank, Wells Fargo, Veritex, Centier, and Citizens Bank (collectively, the "Banks"). Payments to creditors are made from the Bank Accounts, in a variety of ways, including checks, drafts, wire transfers, credit cards, and automated clearinghouse ("ACH") transfers. A general diagram of the movement of funds within the Cash Management System is attached to the Cash Management Motion as **Exhibit C**, and a summary of bank accounts and a short description of the purpose of each account is attached thereto as **Exhibit D** (the "Bank Accounts").

21. The Debtors incur certain fees and charges in connection with the ordinary course operation of the Cash Management System, including, without limitation, those fees as specified in the prepetition agreements entered into between the Debtors and the Banks (collectively, the "Bank Fees"). The Bank Fees include account maintenance charges, charges relating to ACH and wire transfers, lockbox and depository service charges, and other customary miscellaneous charges. In the ordinary course of business and typically on a monthly basis, the Bank charges the Debtors and deducts from the appropriate bank accounts certain service charges, and other fees, costs, and expenses. The Debtors are still investigating and obtaining access to certain information related to Bank Fees but expect that there will be prepetition Bank Fees outstanding as of the Petition Date. Accordingly, at the final hearing on the Cash Management Motion, the Debtors will seek approval to pay prepetition Bank Fees and to pay any postpetition Bank Fees and, for the Banks to deduct, any such Bank Fees in the ordinary course when due.

22. Maintaining the Debtors' Cash Management System in its current state is crucial to the Debtors' continued operations, given the volume of transactions processed through the Cash Management System each day. Any disruption to the Cash Management System would

unnecessarily and significantly disrupt the Debtors' operations and impede the successful administration of their Chapter 11 Cases.

23. I believe that the relief requested in the Cash Management Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest, and will enable the Debtors to continue to operate their businesses in these Chapter 11 Cases with minimal disruption, thereby benefiting all parties in interest. Accordingly, for the reasons set forth herein and in the Cash Management Motion, on behalf of the Debtors, I respectfully submit that the relief requested in the Cash Management Motion should be granted.

### B. Wages and Benefits Motion

24. By the Wages and Benefits Motion, the Debtors seek entry of interim and final orders granting authorizing, but not directing, the Debtors to (i) pay prepetition wages, salaries, other compensation, and reimbursable employee expenses, and (ii) continue employee benefits programs in the ordinary course, including payment of certain prepetition obligations related thereto.

25. As of the Petition Date, the Debtors employ approximately 153 full-time employees and 14 part-time employees (the "Employees"). The Employees perform a variety of functions critical to the preservation of value and the administration of the Debtors' estates. In many instances, the Employees include personnel who are intimately familiar with the Debtors' businesses, processes, and systems, and who cannot be easily replaced. Without the continued, uninterrupted services of the Employees, the Debtors simply could not run their business and preserve value for the benefit of all stakeholders. No Employees are party to collective bargaining agreements or other similar labor agreements, and no Employees are members of labor unions.

26. In addition to the Employees, the Debtors' workforce also includes two independent contractors (the "<u>Independent Contractors</u>"), who perform necessary support for the Debtors.

27. Many of the Employees and Independent Contractors rely on their compensation and benefits to pay their daily living expenses. Thus, the Employees and Independent Contractors will be exposed to significant financial constraints if the Debtors are not permitted to continue paying compensation and providing the Employees with health and other benefits. Without the continued, uninterrupted services of their Employees and Independent Contractors, the Debtors' continued operations and going concern value will be threatened.

28. Accordingly, for the reasons set forth herein and expanded on in the Wage and Benefits Motion, on behalf of the Debtors, I respectfully submit that the relief requested in the Wage and Benefits Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest, and will enable the Debtors to continue to operate their businesses in the Chapter 11 Cases with minimal disruption, thereby maximizing value for the estates.

    **C.**    **DIP Financing/Cash Collateral Motion**

29. Subject to Court approval, the DIP Lenders have agreed to provide DIP Loans to the Debtors in an amount up to $5.0 million (subject to any limitations on borrowing under the DIP Term Sheet), of which $2.775 million will be available upon entry of the Interim Order. The Debtors require an immediate infusion of new money in order to maintain operations, pay employees, and satisfy accruing administrative expenses, including estate professional fees. The Debtors do not have adequate funding based on access to Cash Collateral alone. Without the proposed DIP Loans, the Debtors would suffer immediate and irreparable harm and would be forced to terminate operations, layoff all employees, and convert these cases to Chapter 7.

30. Based on these facts, the Debtors' only source of funding for these Chapter 11 Cases are the existing Prepetition Lenders. The proposed DIP Loans and authorization to use Cash Collateral, as offered by the DIP Lenders and the Prepetition Lenders, are the best and only financing options currently available to these estates. Fully unsecured postpetition financing was not available to Debtors on these favorable terms. Other potential sources of debtor in possession financing for the Debtors, including on a junior secured basis, are also nonexistent on these terms.

31. The terms of the DIP Term Sheet were negotiated in good faith and at arm's-length between the Debtors and the DIP Lenders, resulting in an agreement that is designed to permit the Debtors to maximize the value of their assets. The Debtors submit that the proposed terms of the DIP Loans are fair, reasonable, and appropriate under the circumstances.

32. For the reasons set forth above, the Debtors' sound business judgment clearly supports approval of the DIP Term Sheet. Access to the DIP Loans and use of Cash Collateral will allow the Debtors to continue to operate, thus maximizing value for all of their constituents.

33. Accordingly, I respectfully submit that the DIP Term Sheet and access to Cash Collateral should be approved and is in the best interests of the Debtors' estates.

**CONCLUSION**

34. I have reviewed each of the First Day Motions. All of the facts set forth in the First Day Motions are true and correct to the best of my knowledge and belief based upon (a) my personal knowledge of the Debtors' operations and finances, (b) information learned from my review of relevant documents, (c) information supplied to me by other members of the Debtors' management team and the Debtors' advisors, and/or (d) my opinion based upon my knowledge and experience or information I have reviewed concerning the Debtors' operations and financial condition. Accordingly, the Debtors respectfully request that the relief requested in each of the

First Day Motions be granted because such relief is a critical element in stabilizing and facilitating the Debtors' operations during the pendency of the Chapter 11 Cases.

35. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: August 28, 2023

*/s/ T. Scott Avila*
T. Scott Avila
Chief Restructuring Officer
AmeriFirst Financial, Inc.