## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| AMERIFIRST FINANCIAL, INC., *et al.*,[1] | Case No. 23-11240 (TMH) |
| Debtors. | (Joint Administration Requested) |

### MOTION OF THE DEBTORS FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION FINANCING AND (B) TO UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL  HEARING, AND (V) GRANTING RELATED RELIEF

AmeriFirst Financial, Inc. ("AmeriFirst") and Phoenix 1040, LLC ("Phoenix"), as debtors and debtors in possession (collectively, the "Debtors"), in these chapter 11 cases (the "Chapter 11 Cases"), hereby file this postpetition financing motion (this "Motion") requesting entry of an interim order (this "Interim Order") and a final order (the "Final Order") as set forth below pursuant to sections 105(a), 363, and 364 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (as amended, the "Local Bankruptcy Rules").  In support of this Motion, the Debtors submit the *Declaration of T. Scott Avila in Support of First Day Motions* (the "First Day Declaration"),[2] filed concurrently herewith and incorporated herein by reference.  In further support of this Motion, the Debtors respectfully represent as follows:

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers include:  Phoenix 1040 LLC (2550) and AmeriFirst Financial, Inc. (4557).  The Debtors' service address is 1550 McKelleps Road, Suite 117, Mesa, AZ 85203.

[2]   Capitalized terms used but not defined herein shall have the meanings set forth in the First Day Declaration.

## I.  SUMMARY OF RELIEF REQUESTED

1.      The Debtors seek entry of the Interim Order, substantially in the form attached hereto as **Exhibit 1**, and the Final Order to be submitted at a later date (respectively, the "Interim Order" and "Final Order" and collectively, the "DIP Orders"):

(1)      authorizing AmeriFirst to obtain postpetition financing from RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. and RCP Customized Credit Fund (Fund IV-A), L.P. ("DIP Lenders"), consisting of a senior secured, superpriority term loan facility in the principal amount of up to **$5,000,000** (the "DIP Loans") to be used for general liquidity purposes, including the payment of administrative expenses and estate professional fees, as described herein and in that certain *Binding DIP Term Sheet*, dated August 28, , 2023, by and among the DIP Lenders, as lenders, RCP Credit Opportunities Fund Loan SPV (Fund III), L.P., as agent (the "DIP Agent"), and AmeriFirst, as borrower (substantially in the form attached hereto as **Exhibit A**, as any time amended, the "DIP Term Sheet"), of which amount **$2,775,000** will be available on an interim basis (the "Interim Amount Limit") during the Interim Period (as defined below), on the terms and conditions set forth in the DIP Term Sheet and this Interim Order;

(2)      authorizing AmeriFirst to execute and enter into the DIP Term Sheet and to perform all such other and further acts as may be required in connection with the DIP Term Sheet;

(3)      authorizing AmeriFirst  to use proceeds of the DIP Loans solely as expressly permitted in the DIP Term Sheet and in accordance with this Interim Order;

(4)      pursuant to Bankruptcy Code section 364, granting the DIP Agent for the benefit of the DIP Lenders security interests and liens as set forth in the DIP Term Sheet and this Interim Order and allowed superpriority administrative expense claims against AmeriFirst for the amounts advanced under the DIP Loans;

2

(5)    authorizing AmeriFirst to pay the principal, interest, fees, expenses, disbursements, and other amounts payable under the DIP Term Sheet as such amounts become due and payable;

(6)    granting adequate protection to the Prepetition Lenders (as defined below) as set forth in the DIP Term Sheet and this Interim Order;

(7)    scheduling a final hearing (the "Final Hearing") to consider entry of the Final Order, and in connection therewith, giving and prescribing the manner of notice of the Final Hearing on the Motion; and

(8)    granting the Debtors such other and further relief as is just and proper.

## II.   JURISDICTION AND VENUE

2.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013–1(f) of the Local Bankruptcy Rules, the Debtors consent to the entry of a Final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter Final orders or judgments consistent with Article III of the United States Constitution.

3.    Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The statutory basis for the relief requested herein are sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 507 and 552 of Title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9013, and Local Bankruptcy Rules 4001-2, 9006-1, and 9013.

### III.   BACKGROUND

**A.     General Background**

5.     On August 24, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date of this Motion, no official committee, trustee or examiner has been appointed in these chapter 11 cases (the "Chapter 11 Cases").

6.     Background information regarding the Debtors' business, organizational structure, and description of the events precipitating the filing of the Chapter 11 Cases is set forth in the First Day Declaration.

**B.     Prepetition Secured Debt**

7.     Pursuant to, *inter alia*, (i) that certain *Amended and Restated Credit and Security Agreement*, dated as of May 15, 2023 the "Prepetition Credit Agreement"), among AmeriFirst , as borrower, and RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. and RCP Customized Credit Fund (Fund IVA), L.P. (each, a "Prepetition Lender" and collectively, the "Prepetition Lenders"), and RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. as administrative agent (the "Prepetition Agent", and with the Prepetition Lenders, the "Prepetition Secured Parties"), and (ii) the certain *Limited Waiver and Second Amendment to Credit and Security Agreement*, dated as of May 15, 2023 (the "Second Amendment"), the Prepetition Secured Parties provided certain prepetition term loans and other financial accommodations to AmeriFirst.

8.     Pursuant to the that certain Settlement Agreement, dated as of May 15, 2023 (the "Settlement Agreement"), in consideration for the execution of the Prepetition Credit Agreement, the Second Amendment, and a restatement of the "bad boy" guaranty of Eric Bowlby

4

(the "<u>Guarantor</u>"), AmeriFirst's former Chief Executive Officer and then majority shareholder, in favor of the Prepetition Secured Parties, the Prepetition Secured Parties, AmeriFirst, and Guarantor entered into certain mutual releases, including the release of all Existing Defaults (as defined in the Settlement Agreement), subject to the terms and conditions set forth therein.

9.      As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Credit Agreement is at least $15,798,087 (*plus* accrued and unpaid interest, additional fees, costs, expenses, and other obligations as provided under the Prepetition Credit Agreement) (the "<u>Prepetition Obligations</u>").

10.      In connection with the Prepetition Credit Agreement, the shareholders of AmeriFirst, Eric Bowlby and Kenneth Bowlby, entered into that certain *Pledge Agreement*, dated as of May 15, 2023 (the "<u>Pledge Agreement</u>") with the Prepetition Secured Parties, which granted liens on and security interests in the 100% of the common equity stock of AmeriFirst (the "<u>Pledged Shares</u>") in favor of the Prepetition Agent, AmeriFirst entered into that certain *Security Agreement*, dated as of May 15, 2023, with the Prepetition Secured Parties (the "<u>Security Agreement</u>"), which granted a first priority lien on and security interest in substantially all of the personal property of AmeriFirst to the Prepetition Agent, subject to certain permitted liens, together with mortgages on certain real property of AmeriFirst scheduled pursuant to the Prepetition Credit Agreement. Pursuant to the Prepetition Credit Agreement and the Security Agreement, the Prepetition Secured Parties assert that the Prepetition Obligations are secured by valid, binding, perfected first priority security interests and liens (the "<u>Prepetition Liens</u>") in and on the "Collateral," as defined in the Prepetition Credit Agreement and Security Agreements (the "<u>Prepetition Collateral</u>").

DOCS_SF:109424.3 70786/001

11.     Pursuant to the Second Amendment, AmeriFirst agreed to issue 40,000 shares of preferred shares, with an aggregate liquidation value of $4 million, to the Prepetition Lenders, at the closing of the Prepetition Credit Agreement.

12.     On August 24, 2023, following various events of default under the Prepetition Credit Agreement and prior to the commencement of these Chapter 11 Cases, the Prepetition Agent gave a Notice of Events of Default under the Prepetition Credit Agreement and declared that the Obligations of AmeriFirst under the Prepetition Credit Agreement were immediately due and payable.  The Prepetition Agent thereafter exercised its rights under the Pledge Agreement, including transferring the Pledged Stock and assigning the Prepetition Agent's rights under the Pledge Agreement to Phoenix.  Pursuant to the Pledge Agreement, the certificates for the Pledged Shares were then canceled and a new stock certificate issued to Phoenix.  Phoenix as the sole shareholder of AmeriFirst, then executed a Unanimous Written Consent as the sole shareholder of AmeriFirst (the "Phoenix Consent").  The Phoenix Consent (a) removed the former directors of AmeriFirst; and (b) elected two new directors (including an independent director) to AmeriFirst's board of directors.  Finally, also on August 24, 2023, the new reconstituted board of AmeriFirst executed a separate unanimous consent removing all former officers of AmeriFirst and electing new officers.

13.     The Prepetition Lenders assert that all of the Debtors' cash, including but not limited to the amounts on deposit or maintained in any account or accounts by the Debtors or any amounts generated postpetition, constitutes the Prepetition Lenders' cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

6

## IV.   PROPOSED DIP TERM SHEET

14.    Subject to Court approval, the DIP Lenders have agreed to provide DIP Loans to the Debtors in an amount up to $5 million (subject to any limitations on borrowing under the DIP Term Sheet), of which $2.775 million will be available upon entry of the Interim Order. The Debtors require an immediate infusion of new money in order to maintain operations, pay employees, and satisfy accruing administrative expenses, including estate professional fees.  The Debtors do not have adequate funding based on access to Cash Collateral alone.  Without the proposed DIP Loans, the Debtors would suffer immediate and irreparable harm and would be forced to terminate operations, layoff all employees, and convert these cases to Chapter 7.

15.    As set forth in the First Day Declaration, the Debtors' only source of funding for these Chapter 11 Cases are the existing Prepetition Lenders.  The proposed DIP Loans and authorization to use Cash Collateral, as offered by the DIP Lenders and the Prepetition Lenders, are the best and only financing options currently available to these estates.  Fully unsecured postpetition financing was not available to the Debtors.  Other potential sources of debtor in possession financing for the Debtors, including but not limited to funding on a junior secured basis, are also nonexistent.

### A.    Summary of Essential Terms of DIP Term Sheet

16.    In accordance with Bankruptcy Rule 4001(b) and Local Bankruptcy Rule 4001-2(a)(i)-(iii), the chart below reflects the essential terms of the proposed financing and use of cash collateral as set forth in the DIP Term Sheet and incorporated in the proposed DIP Orders. The DIP Term Sheet is copied essentially verbatim below:

| | |
|---|---|
| **Borrowers:** | AmeriFirst Financial, Inc. as debtor-in-possession (the "<u>Debtor</u>") |
| **DIP Credit Facility:** | Maximum available on entry of the Interim Order: $2,775,000<br>Maximum available upon entry of the Final Order: $5,000,000<br><br>The DIP Credit Facility is a senior secured, superpriority term loan facility.<br><br>Amounts repaid under the DIP Credit Facility may be reborrowed consistent with the Approved Budget. |
| **DIP Lenders:** | RCP Credit Opportunities Fund Loan SPV (Fund III), L.P., RCP Customized Credit Fund (Fund IV-A), L.P. ("<u>DIP Lenders</u>") |
| **Agent:** | RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. ("<u>DIP Agent</u>") |
| **Interest Rate:** | Non-default:  SOFR plus 2.0%, which shall be accrued and payable upon maturity of the DIP Loans<br>Default:  SOFR plus 4.5% payable in cash monthly in arrears. |
| **Fees** | 50 bps on total facility size and 50 bps on unused committed amounts, both of which shall be accrued and payable upon maturity of the DIP Loans. |
| **Maturity and Repayment:** | The DIP Loans shall mature on the earliest of (unless extended in writing by the DIP Agent):  (i) November 30, 2023; (ii) the effective date or the date of the substantial consummation (as defined in section 1102(2) of the Bankruptcy Code) of a Plan of Reorganization that has been confirmed by an order of the Bankruptcy Court; (iii) the date the Bankruptcy Court orders the conversion of the Chapter 11 Case of the Debtor or the chapter 11 case of Phoenix 1040, LLC to a liquidation under Chapter 7 of the Bankruptcy Code; (iv) the date of consummation of a sale or other disposition of all or substantially all of the assets of the Debtor under section 363 of the Bankruptcy Code or otherwise; (v) the date the Bankruptcy Court orders the dismissal of the Chapter 11 Case or the chapter 11 case of Phoenix 1040, LLC; (vi) the date of acceleration of the DIP Loans, including as a result of the occurrence and continuance of an Event of Default; and (vii) the date that is 35 calendar days after the Petition Date if the Final Order shall not have been entered by such date.<br><br>Upon the maturity of the DIP Loans, the Debtor shall repay to the DIP Agent for the ratable account of the DIP Lenders the aggregate principal amount of all DIP Loans outstanding on such date, together with all accrued and unpaid interest on the principal amount of the DIP Loans (to be paid to but excluding the date of such payment) and all fees and expenses and other obligations payable under the DIP Facility (together, the "<u>DIP Obligations</u>"). |

| Use of Proceeds: | The proceeds of the DIP Loans shall be applied strictly in accordance with the Approved Budget (subject to the Permitted Variance), including, without limitation, to the extent authorized by the Bankruptcy Court, to pay the prepetition accrued wages specified in the Initial Budget (subject to the Permitted Variance).

No part of the proceeds of any DIP Loan, the Cash Collateral, or any other of the Collateral will be used:

(i) for any purpose that is prohibited under the Bankruptcy Code or the Interim or the Final Order; or
(ii) to investigate, commence, prosecute, or finance in any way (or reimburse for expenses incurred or to be incurred in connection with) any action, suit, arbitration, proceeding, application, motion, objection or other litigation adverse to the interests of the DIP Agent and the DIP Lenders, including to commence or prosecute or join in any action against the DIP Agent or the DIP Lenders with respect to or related to:
(A) the claims, liens or security interest of the DIP Agent and the DIP Lenders, or their respective rights and remedies under the Interim Order or the Final Order, as the case may be, including to commence or prosecute or join in any action against the DIP Agent or the DIP Lenders seeking (x) to avoid, subordinate or recharacterize the DIP Obligations, (y) any monetary, injunctive or other affirmative relief against the DIP Agent or the DIP Lenders or (z) to prevent or restrict the exercise by the DIP Agent or the DIP Lenders of any of their respective rights or remedies under the Interim Order or the Final Order,
(B) any claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness or obligations that are subjects of the releases set forth in the Interim Order and the Final Order,
(C) the stipulations to be made by the Debtor and approved by the Final Order; or
(D) any other action which with the giving of notice or passing of time would result in an Event of Default as described below; or
(iii) to investigate, commence, prosecute, or finance in any way (or reimburse for expenses incurred or to be incurred in connection with) any action, suit, arbitration, proceeding, application, motion, objection or other litigation adverse to the interests of the Prepetition Agent or the Prepetition  Lenders, including to commence or prosecute or join in any action against the Prepetition Agent or the Prepetition Lenders with respect to or related to the claims, liens or security interest of the Prepetition Agent and the Prepetition Lenders, or their respective rights and remedies under the Interim Order or the Final Order, as the case may be, or the Prepetition Loan Documents, including to commence or prosecute or join in any action against the Prepetition Agent or the Prepetition Lenders seeking (x) to avoid, subordinate or recharacterize the Prepetition Obligations, (y) any monetary, injunctive or other affirmative relief against the Prepetition Agent or the Prepetition Lenders or (z) to prevent or restrict the exercise by the Prepetition Agent or the Prepetition Lenders of any of their respective rights or remedies under the Interim Order or the Final Order, as the case may be, or, to the extent authorized by the Interim Order or the Final Order, under the Prepetition Loan Documents ; provided, however, that up to $50,000 in the aggregate of the proceeds of any DIP Loan or cash collateral may be used solely by any statutory committee appointed in the Chapter 11 Case to investigate, but not to commence, prosecute or finance litigation, with respect to the foregoing. |
|---|---|

9

| Budget | Following delivery of the Initial Budget, not later than the last Business Day of the last full calendar week of each month (or earlier with respect to the budget to be attached to the Final Order) (the "<u>Updated Budget Deadline</u>"), the Debtor shall provide the DIP Agent with an updated budget (each such update which is approved in accordance with the terms hereof, an "<u>Updated Budget</u>"), prepared by management of the Debtor in consultation with the DIP Agent covering a 13-week period that commences with the Updated Budget Deadline, consistent with the form and level of detail set forth in the Initial Budget.  Each Updated Budget shall be, in each case, subject to the written approval of the DIP Agent (in its sole discretion).  As used herein, the "<u>Approved Budget</u>" shall mean (i) initially, the Initial Budget and (ii) thereafter, upon (and subject to) the approval of any Updated Budget by the DIP Agent, such Updated Budget. |
|---|---|
| **Budget Variance** | Commencing on Friday, September 8, 2023, and on each Friday thereafter, the Debtor shall provide a weekly variance report to the DIP Agent showing actual receipts (if any) and actual disbursements compared against the projected receipts (if any) and projected disbursements in the Approved Budget through the last Business Day of the prior week (each, a "<u>Budget Variance Test Date</u>").  The Debtor shall not permit: <br><br> (a) the sum of the actual aggregate operating disbursements of the Debtor for the four weeks (or lesser period if applicable) ending immediately prior to such Budget Variance Test Date (the "<u>Budget Variance Test Period</u>") to be greater than 110% of the aggregate amount set forth for the line item in the Approved Budget entitled "<u>Total Operating Disbursements</u>" for such Budget Variance Test Period (the "<u>Permitted Variance</u>"); or <br><br> (b) the sum of the actual disbursements of fees incurred by professionals of any unsecured creditors committee in the Chapter 11 Case and of the Debtor ending immediately prior to such Budget Variance Test Date to be greater than the amount set forth for the line item in the Approved Budget under "<u>Non-Operating Disbursements</u>" for such Budget Variance Test Period. <br><br> To the extent that any Budget Variance Test Period encompasses a period that is covered in more than one Approved Budget, the applicable weeks from each applicable Approved Budget shall be utilized in making the described above. |

10

| **Conditions of Borrowing** | The following shall each be true as the date of any Credit Extension: |
| --- | --- |
| | (a) (i) All Chapter 11 Orders filed or to be filed with, and submitted to, the Bankruptcy Court shall be in form and substance reasonably acceptable to the DIP Agent. |
| | (ii) Each Chapter 11 Order that has been entered as of such date shall be in full force and effect and shall not have been vacated, reversed, modified, amended or stayed without the written consent of the DIP Agent. |
| | (iii) The Debtor shall be in compliance in all material respects with the Interim Order and the Final Order, as applicable, and each other Chapter 11 Order. |
| | (b) The DIP Agent shall have received a Request for Credit Extension in accordance with the requirements hereof. |
| | (c) All engagement letters or other agreements providing for the payment of the fees and expenses of the Debtor's proposed professional advisors shall be in form and substance reasonably satisfactory to the DIP Agent. |
| | The effectiveness of the DIP Credit Facility and the obligation of the DIP Lenders to fund the Initial Loans shall be subject to the satisfaction or waiver of the following conditions precedent: |
| | (a) The Interim Order (i) shall have been entered by the Bankruptcy Court and (ii) shall be in full force and effect and shall not (in whole or in part) have been reversed, modified, amended, stayed, or vacated, absent prior written consent of Agent. |
| | (b) All orders entered by the Bankruptcy Court pertaining to cash management and adequate protection, shall, and all other motions and documents filed or to be filed with, and submitted to, the Bankruptcy Court in connection therewith shall be in form and substance reasonably satisfactory to the DIP Agent. |
| | (c)(i) No trustee, examiner or receiver shall have been appointed or designated with respect to the Debtor or its business, properties or assets, and (ii) no order shall be entered by the Bankruptcy Court dismissing the Chapter 11 Case or any other relief authorizing any third party to exercise control over the bankruptcy estate of the Debtor or any Collateral with an aggregate fair market value in excess of $100,000 with respect to all such motions. |
| | (d) The DIP Agent shall have received the Initial Budget and such other information (financial or otherwise) regarding the Initial Budget as the DIP Lenders or the DIP Agent may reasonably request. |
| | (e) Subject to Bankruptcy Court approval, the Debtor shall have the corporate power and authority to make, deliver and perform their obligations under the Interim Order. |
| | The obligation of the DIP Lenders to fund loans subsequent to the Initial Loans shall be subject to the satisfaction or waiver of the following conditions precedent: |
| | (a) The Final Order (i) shall be in form and substance satisfactory to the Agent, (ii) shall have been entered by the Bankruptcy Court within a date which is 35 days following the Petition Date, and (iii) shall be in full force and effect and shall not have been modified or amended absent prior written consent of the DIP Agent or reversed, modified, amended, stayed, or vacated, absent the prior written consent of the DIP Agent. |
| | (b) The Debtor shall be in compliance with each order entered in the Chapter 11 Case, including the Interim Order, and following entry of the Final Order, the Final Order. |
| | (c) The Debtor shall be in compliance with the Approved Budget (subject to the Permitted Variance). |
| | (d) All orders entered by the Bankruptcy Court pertaining to cash management and adequate protection, shall, and all other motions and documents filed or to be filed with, and submitted to, the Bankruptcy Court in connection therewith shall be in form and substance reasonably satisfactory to the DIP Agent. |
| | (e)(i) No trustee, examiner or receiver shall have been appointed or designated with |

11

| | |
|---|---|
| | respect to the Debtor or its business, properties or assets, and (ii) no order shall be entered by the Bankruptcy Court dismissing the Chapter 11 Case or any other relief authorizing any third party to exercise control over the bankruptcy estate of the Debtor or any Collateral with an aggregate fair market value in excess of $100,000 with respect to all such motions, and no motion or application shall have been filed with respect to the foregoing other than a motion that is being contested by the Debtor in good faith.<br><br>(f)  The DIP Agent shall have received the Initial Budget and such other information (financial or otherwise) regarding the Initial Budget as the DIP Lenders or the DIP Agent may reasonably request. |
| **Roll-up** | Subject to entry of the Final Order, an amount of the loans under the prepetition credit facility (the "<u>Prepetition Loans</u>") provided to the Debtor by the Prepetition Lenders (which entities are also the DIP Lenders)  shall be rolled up, and converted into DIP Obligations secured by the DIP Liens ratably with the DIP Loans in an amount equal to the sum of (x) the amounts advanced to Phoenix 1040, LLC immediately prior to the Petition Date to fund the retention of professionals and premiums for director and officer liability insurance (the "<u>Prepetition Protective Advances</u>"); and (y) 100% of the aggregate amount of Cash Collateral used by the Debtor and DIP Loans advanced pursuant to the Interim Order and the Final Order. |
| **Perfection and Enforceability of Prepetition Obligations and Liens** | Subject to entry of the Final Order, the Debtor stipulates that the Prepetition Loans and other obligations of the Debtor (the "<u>Prepetition Obligations</u>") under that certain *Amended and Restated Credit and Security Agreement*, dated as of May 15, 2023, and the Loan Documents (as defined therein) (the "<u>Prepetition Loan Documents</u>"), constitute legal, valid, binding, and non-avoidable obligations of the Debtor in accordance with the respective terms of the relevant Prepetition Loan Documents, and no portion of the Prepetition Obligations or any payment made to the Prepetition Lenders or applied to or paid on account thereof prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is defined in the Bankruptcy Code), cause of action  including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law.  The Prepetition Protective Advances shall be deemed "Protective Advances" under the Prepetition Loan Documents.<br><br>Subject to entry of the Final Order, the Debtor stipulates that, as of the Petition Date, pursuant to the Prepetition Loan Documents, the Debtor granted for the benefit of the Prepetition Lenders, a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on (the "<u>Prepetition Liens</u>") substantially all of their assets and property as set forth in the Prepetition Loan Documents (the "<u>Prepetition Collateral</u>"), subject only to any liens permitted by the Prepetition Loan Documents to be senior to the Prepetition Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "<u>Prepetition Permitted Senior Liens</u>"). |

| Challenge Period | The Debtor's stipulations, admissions, agreements and releases contained in the Final Order shall be binding upon the Debtor in all circumstances and for all purposes. The Debtor's stipulations, admissions, agreements and releases contained in the Final Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Case and any other person or entity acting or seeking to act on behalf of the Debtor's estate, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtor, in all circumstances and for all purposes unless: (a) (x) such committee or other party in interest with requisite standing has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein) by no later than the later of (x) 21 calendar days after entry of the Final Order and (y) if a chapter 7 or a chapter 11 trustee is appointed or elected prior to the end of the Challenge Period (as defined below), the Challenge Period solely for any such chapter 7 trustee or chapter 11 trustee shall be extended to the date that is the later of (A) 21 calendar days after entry of the Final Order, or (B) the date that is 30 calendar days after their appointment; or any such later date as has been agreed to in writing by the Prepetition Lenders or has been ordered by the Court for cause upon a motion filed and served within any applicable period (the time period established by the foregoing clauses (x)-(z) the "<u>Challenge Period</u>"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens, or (B) asserting or prosecuting any avoidance action or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "<u>Challenges</u>") against the Prepetition Lenders in connection with or related to the Prepetition Loan Documents, the Prepetition Loans, the Prepetition Liens, or the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge; <u>provided</u>, <u>however</u>, that any pleadings filed in connection with a Challenge shall set forth with specificity the basis for such Challenge and any Challenges not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred. If no Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such Challenge, then: (1) the Debtor's stipulations, admissions, agreements and releases contained in the Final Order shall be binding on all parties in interest; (2) the obligations of the Debtor under the Prepetition Loan Documents shall constitute allowed claims not subject to defense avoidance, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in this case and any Successor Case; (3) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, including any statutory or non-statutory committees appointed or formed in the Chapter 11 Case or any other party in interest acting or seeking to act on behalf of the Debtor's estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory committees appointed or formed in the Chapter 11 case or any other party acting or seeking to act on behalf of the Debtor's estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, whether arising under the Bankruptcy Code or otherwise, against any of Prepetition Lenders shall be deemed forever waived, released and barred. If any Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in the Final Order shall |

| | |
|---|---|
| | nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in the Final Order will vest or confers on any person or entity (each as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in the Chapter 11 Case, standing or authority to pursue any claim or cause of action belonging to the Debtor or its estate, including, without limitation, any Challenges with respect to the Prepetition Loan Documents, Prepetition Loans or Prepetition Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay confirmation of any plan of reorganization in the Chapter 11 Case. |
| **Waiver/Modification of the Automatic Stay** | The Interim Order and the Final Order shall include a customary waiver/modification of the automatic stay to permit the DIP Agent and the DIP Lenders to take all actions as are necessary or appropriate to implement the terms of the Interim Order and the Final Order. The automatic stay shall be modified to the extent necessary to permit the DIP Agent on behalf of the DIP Lenders to take any action necessary or appropriate to perfect the liens of the DIP Lenders on the DIP Collateral and the Collateral. |
| **Adequate Protection** | Pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, as adequate protection of their respective interests in the Prepetition Collateral for the aggregate diminution in value of such interests (including from the amount of any Cash Collateral used by the Debtor) (the "Diminution in Value") (if any) and as an inducement to the Prepetition Lenders to consent to the use of their Cash Collateral, the Prepetition Lenders are granted the following Adequate Protection (collectively, the "Adequate Protection Obligations"), subject to and junior in all respects to the DIP Obligations and the Carve-Out: |
| | (i)   The Prepetition Lenders, effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition Lenders' Diminution in Value (if any) upon all of the DIP Collateral, subject to and junior in all respects to the DIP Liens (as defined below) and the Carve-Out; and |
| | (ii)   The Prepetition Lenders shall be granted allowed superpriority administrative expense claims against the Debtor (without the need to file any proof of claim) on account of the Prepetition Lenders' Diminution in Value (if any) under section 507(b) of the Bankruptcy Code (the "Prepetition Lender 507(b) Claims"), which Prepetition Lender 507(b) Claims shall be payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding avoidance actions, but including upon entry of the Final Order, without limitation, proceeds of avoidance actions). Except as otherwise provided in the Interim Order or the Final Order and subject to and junior in all respects to the DIP Superpriority Claims (as defined below) and the Carve-Out, the Prepetition Lender 507(b) Claims shall have priority over any and all administrative expenses and all other claims against the Debtor now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. |

| | |
|---|---|
| **Collateral:** | As security for the DIP Obligations, effective and automatically properly perfected on the date the Interim Order is entered, and without the necessity of execution, recordation or filing of any perfection document or instrument, or the possession or control by the DIP Agent of, or over, any Collateral, without any further action by the DIP Lenders, the following valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens (the "<u>DIP Liens</u>") will be granted to the DIP Agent for the benefit of the DIP Lenders (all property identified below being collectively referred to as the "<u>DIP Collateral</u>," and, together with the Prepetition Collateral, the "<u>Collateral</u>"), subject to and junior in all respects to the Carve-Out: <br><br> *Liens on Unencumbered Property* <br><br> Pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in (subject only to the Carve-Out) all tangible and intangible prepetition and postpetition property of the Debtor whether existing on the Petition Date or thereafter acquired, including, without limitation, the Debtor's mortgage servicing rights (to the extent such rights are unencumbered property) and the proceeds, products, rents, and profits thereof, that, on or as of the Petition Date, is not subject to (i) a valid, perfected and non-avoidable lien or (ii) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, other than avoidance actions and the Carve-Out (and any amounts held therein), but including, upon and subject to entry of the Interim Order, proceeds of avoidance actions (collectively, the "<u>Unencumbered Property</u>"). <br><br> *Liens Junior to Certain Other Liens on Encumbered Property* <br><br> Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all tangible and intangible prepetition and postpetition property of the Debtor that, on or as of the Petition Date, is subject to and junior in all respects to the Prepetition Liens and the liens or security interests permitted under the Prepetition Loan Documents (i.e., the Prepetition Permitted Senior Liens), which Collateral (the "<u>Encumbered Property</u>") shall be subject to such Prepetition Liens and Prepetition Permitted Senior Liens. <br><br> For the avoidance of doubt, the valid and enforceable interests of providers of warehouse credit facilities in mortgage loans and related documents existing as of the Petition Date (the "<u>Prepetition Warehoused Mortgage Loans Collateral</u>") shall be deemed Prepetition Permitted Senior Liens and the Prepetition Warehoused Mortgage Loans Collateral shall be deemed Encumbered Property. |
| **DIP Superpriority Claims** | The DIP Obligations shall be superpriority administrative expense claims against the Debtors (without the need to file any proof of claim) under section 507(b) of the Bankruptcy Code entitled to superpriority status senior to the Prepetition Lender 507(b) Claims, as set forth in the Interim Order and the Final Order (the "<u>DIP Superpriority Claims</u>"). |
| **Carve-Out:** | As to be provided in the Interim Order and Final Order |

15

| | |
|---|---|
| **Events of Default:** | (b)  Failure to pay or prepay principal or interest within three (3) business days after the same becomes due.<br><br>(c)  Failure to perform or observe any other term, covenant or agreement described herein and such failure continue for fifteen (15) days after receipt by the Debtor of written notice thereof.<br><br>(d)  Any final judgment or order is entered against the Debtor for the payment of money in excess of $100,000 and such judgment or order shall not have been satisfied, vacated, discharged or stayed or bonded pending appeal for a period of (60) days.<br><br>(e)  The Interim Order or the Final Order shall for any reason cease to create, or shall be asserted by the Debtor not to create, a valid and perfected lien on and security interest in the Collateral with the priority required herein.<br><br>(f)  Any Change in Control.<br><br>(g)  The Final Order shall not have been entered by the Bankruptcy Court on or before the date that is 35 days following the Petition Date, which Final Order shall be in full force and effect and shall not have been reversed, modified, amended, stayed, or vacated.<br><br>(h)  The Chapter 11 Case or the chapter 11 case of Phoenix 1040, LLC shall be dismissed or the Bankruptcy Court shall have made a ruling requiring the dismissal of the Chapter 11 Case or the chapter 11 case of Phoenix 1040, LLC , suspended or converted it to a case under chapter 7 of the Bankruptcy Code, or the Debtor shall file any pleading requesting any such relief; or a motion shall be filed by the Debtor for the approval of, or there shall arise, (x) any other claim having priority senior to or *pari passu* with the claims of the DIP Agent and the DIP Lenders or any other claim having priority over any or all administrative expenses of the kind specified in clause (b) of Section 503 or clause (b) of Section 507 of the Bankruptcy Code (other than the Carve-Out)or (y) any Lien on the Collateral having a priority senior to or *pari passu* with the Liens and security interests granted in the Interim Order or the Final Order, except as expressly provided herein and in the Interim Order or the Final Order, as applicable.<br><br>(i)  The Debtor shall file a motion in the Chapter 11 Case to obtain additional or replacement financing from a party other than DIP Lenders under Section 364(d) of the Bankruptcy Code or to use Cash Collateral of a DIP Lender under Section 363(c) of the Bankruptcy Code, except to the extent any such financing shall provide for the payment in full in cash of the DIP Obligations and the obligations under the Prepetition Loan Documents.<br><br>(j)  The Debtor shall file a motion seeking, or the Bankruptcy Court shall enter, an order (A) approving payment of any prepetition claim other than (x) as provided for in (i) the First Day Orders or Second Day Orders or (ii) the Approved Budget or (y) otherwise consented to by the DIP Agent on behalf of  the DIP Lenders in writing, (B) granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to any holder of any security interest to permit foreclosure on any assets with a fair market value in excess of $100,000; or (C) approving any settlement or other stipulation not approved by the DIP Agent on behalf of  the DIP Lenders in writing with any secured creditor providing for payments as adequate protection or otherwise to such secured creditor.<br><br>(k)  An order shall be entered by the Bankruptcy Court without the express prior written consent of the DIP Agent on behalf of  the DIP Lenders (i) to revoke, reverse, stay, modify, supplement, vacate or amend the Interim Order or the Final Order in a manner inconsistent with this term sheet in a manner adverse to the DIP Lenders, (ii) to permit any administrative expense or any claim (now existing or hereafter arising, of any kind or nature whatsoever) to have administrative priority equal or superior to the priority of the DIP Loans (other than the Carve-Out); or (iii) to grant or permit the grant of a Lien on the Collateral.<br><br>(l)  An application for any of the orders described in clauses (h), (i), (j), (k), (n) and (r) shall be made by a Person other than the Debtor, and such application is not contested by the Debtor in good faith or any Person obtains a non-appealable final |

<table>
<tr><td></td><td>order charging any of the Collateral under section 506(c) of the Bankruptcy Code against the DIP Lenders or obtains a final order adverse to the DIP Lenders.<br>(m)   The Debtor shall fail to comply with the terms and conditions of the Interim Order or the Final Order in any material respect, and such failure is not cured within two (2) Business Days of knowledge or notice thereof.<br>(n)   The Bankruptcy Court shall enter order appointing a trustee under Chapter 7 or Chapter 11 of the Bankruptcy Code, or a responsible officer or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in subclauses (3) and (4) of clause (a) of Section 1106 of the Bankruptcy Code) under clause (b) of Section 1106 of the Bankruptcy Code in the Chapter 11 Case or the chapter 11 case of Phoenix 1040, LLC or the Debtor shall file, or support, any pleading seeking such relief.<br>(o)   The entry of an order by the Bankruptcy Court terminating or modifying the exclusive right of the Debtor to file a Plan of Reorganization pursuant to section 1121 of the Bankruptcy Code, without the prior written consent of the DIP Agent on behalf of the DIP Lenders.<br>(p)   The Debtor shall support (in any such case by way of any motion or other pleading filed with the Bankruptcy Court or any other writing to another party-in-interest executed by or on behalf of the Debtor) any other Person's opposition of any motion made in the Bankruptcy Court by or on behalf of the DIP Lenders seeking confirmation of the amount of the DIP Lenders' claim or the validity and enforceability of the Liens in favor of the DIP Agent.<br>(q)   (A) The Debtor shall seek to, or shall support (in any such case by way of any motion or other pleading filed with the Bankruptcy Court or any other writing to another party-in-interest executed by or on behalf of the Debtor any other person's motion to, disallow in whole or in part the DIP Lenders' claim in respect of the Obligations or to challenge the validity and enforceability of the Liens in favor of the DIP Agent or contest any material provision of any Loan Document, (B) the Debtor shall attempt to invalidate, reduce or otherwise impair the Liens or security interests of the DIP Agent or the DIP Lenders or to subject any Collateral to assessment pursuant to section 506(c) of the Bankruptcy Code, (C) any Liens on the Collateral and/or super-priority claims shall otherwise, for any reason, cease to be valid, perfected and enforceable in all respects, (D) any action is commenced by the Debtor that contests the validity, perfection or enforceability of any of the Liens and security interests of the DIP Agent or the DIP Lenders created by the Interim Order or the Final Order, or (E) any material provision of the Interim Order or the Final Order shall cease to be effective.<br>(r)   Any judgments which are in the aggregate in excess of $100,000 as to any postpetition obligation shall be rendered against the Debtor and the enforcement thereof shall not be stayed.<br>(s)   An order shall be entered by the Bankruptcy Court transferring venue of the Chapter 11 Case to any other court.</td></tr>
<tr><td>Milestones:</td><td>To be included in the Final Order.</td></tr>
</table>

DOCS_SF:109424.3 70786/001

**B.**     <u>**Additional Required Disclosures**</u>

17.     Pursuant to Local Bankruptcy Rule 4001-2(a)(i), a debtor in possession seeking authority to use cash collateral or obtain financing must disclose the presence and location of certain provisions contained in the documentation evidencing the cash collateral usage or financing.  The debtor in possession must also justify the inclusion of certain such provisions.  Set forth below are the disclosures required in accordance Local Bankruptcy Rule 4001-2(a)(i)(A)-(X) (many of which are also disclosed in Paragraph 16 of this Motion as set forth above):

(i)     Local Bankruptcy Rule 4001-2(a)(i)(A) requires a Debtors to disclose the amount of cash collateral the Debtors seeks permission to use or the amount of credit the Debtors seeks to obtain under the proposed loan agreement, including the committed amount of the proposed loan agreement and the amount of new funding that will actually be available for borrowing by the Debtors.

**Cash Collateral in the amount of approximately $483,000 would be used by the Debtors in accordance with the Budget.**

**New money DIP Loans total $ 5 million, of which $2.775 million would be available under the Interim Order, as set forth in the Recitals to the proposed Interim Order.**

(ii)     Local Bankruptcy Rule 4001-2(a)(i)(B) require the disclosure of pricing and economic terms, including letter of credit fees, commitment fees, and any other fees, provided that when any such terms are sought to be filed under seal, they shall not be disclosed in the Financing Motion itself, but shall be set forth in a separate document filed pursuant to the procedures set forth in Local Bankruptcy Rule 9018-1(d), the filing of which shall be disclosed in the Financing Motion.

**The economic terms of the DIP Loans are disclosed in the DIP Term Sheet. There are no terms sought to be filed under seal.**

(iii)     Local Bankruptcy Rule 4001-2(a)(i)(C) requires the disclosure of provisions that specifically limit the Court's power or discretion to enter future orders in the case.

**None.**

(iv)     Local Bankruptcy Rule 4001-2(a)(i)(D) requires disclosure of provisions that provide for the funding of non-Debtors affiliates with cash collateral or proceeds of the loan, as applicable, and the approximate amount of such funding.

**None.**

18

(v)      Local Bankruptcy Rule 4001-2(a)(i)(E) requires disclosure of material conditions to closing and borrowing, including budget provisions.

**The material conditions to borrowing are disclosed in DIP Term Sheet.**

(vi)      Local Bankruptcy Rule 4001-2(a)(i)(F) requires disclosure of any carve-outs from liens or superpriority claims, including the material terms of any professional fee carve-out.

**The provisions of the Carve-Out are disclosed in paragraph 16 of the proposed Interim Order.**

(vii)      Local Bankruptcy Rule 4001-2(a)(i)(G) requires disclosure of provisions that provide for postpetition liens on unencumbered assets, including the identification of such assets.

**The DIP Liens cover Unencumbered Property to the extent set forth in the DIP Term Sheet and paragraph 9 of the proposed Interim Order.**

(viii)      Local Bankruptcy Rule 4001-2(a)(i)(H) requires disclosure of provisions that establish any sale or plan milestones.

**Milestones are contemplated, but have not been agreed as yet and will be set forth in the proposed Final Order.**

(ix)      Local Bankruptcy Rule 4001-2(a)(i)(I) requires disclosure of provisions that provide for a prepayment penalty or other provisions that affect the Debtor's right or ability to repay the financing in full during the course of the chapter 11 case.

**None.**

(x)      Local Bankruptcy Rule 4001-2(a)(i)(J) requires disclosure of provisions, in jointly administered cases, that govern joint liability of the Debtors, including any provisions that would cause one jointly administered Debtors to become liable for the prepetition debt of another jointly administered Debtors for which it was not previously subject to.

**None for purposes of the proposed Interim Order.  To be determined as to the proposed Final Order.**

(xi)      Local Bankruptcy Rule 4001-2(a)(i)(K) requires disclosure of provisions that require the Debtors to pay an agent's or lender's expenses and attorneys' fees in connection with the proposed financing or use of cash collateral, without any notice or review by the Office of the United States Trustee, the committee appointed under section 1102 of the Bankruptcy Code (if formed) or, upon objection by either of the foregoing parties, the Court.

**None.**

(xii)      Local Bankruptcy Rule 4001-2(a)(i)(L) requires disclosure of provisions that prohibit the use of estate funds to investigate the liens and claims of the prepetition lender.

**None for purposes of the proposed Interim Order.  To be determined as to the proposed Final Order.**

(xiii)      Local Bankruptcy Rule 4001-2(a)(i)(M) requires disclosure of any termination or default provisions concerning the use of cash collateral or the availability of credit.

**The default and termination provisions are disclosed in paragraphs 17 and 20 of the proposed Interim Order.**

(xiv)      Local Bankruptcy Rule 4001-2(a)(i)(N) requires disclosure of any provisions that grant cross-collateralization protection or elevate prepetition debt to administrative expense (or higher) status or that secure prepetition debt with liens on postpetition assets (which liens the creditor would not otherwise have by virtue of the prepetition security agreement or applicable law).

**There is a partial roll-up of the Prepetition Obligations contemplated in the proposed Final Order.**

(xv)      Local Bankruptcy Rule 4001-2(a)(i)(O) requires disclosure of any provisions that apply the proceeds of postpetition financing to pay, in whole or in part, prepetition debt or which otherwise have the effect of converting (or "rolling up") prepetition debt to postpetition debt.

**There is a partial roll-up of the Prepetition Obligations contemplated in the proposed Final Order.**

(xvi)      Local Bankruptcy Rule 4001-2(a)(i)(P) requires disclosure of any provisions that immediately prime valid, perfected and non-avoidable liens existing immediately prior to the petition date or that are perfected subsequent to the petition date as permitted by section 546(b) of the Bankruptcy Code, in each case that are senior to the lender's prepetition liens under applicable law, without the consent of the affected secured creditors, and the proposed notice to be provided to such affected secured creditors.

**The proposed DIP Orders do not provide for the priming of any pre-existing secured liens.**

(xvii)      Local Bankruptcy Rule 4001-2(a)(i)(Q) requires disclosure of any provisions or findings of fact that (i) bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest, including, but not limited to, any official committee appointed in these cases, at least seventy-five (75)

days from the entry of the initial interim order to investigate such matters or (ii) limit the Court's ability to grant relief in the event of a successful challenge.

**None in the proposed Interim Order. There are certain stipulations contemplated in favor of the Prepetition Secured Parties, subject to challenge, in the proposed Final Order, as set forth in the DIP Term Sheet.**

(xviii)    Local Bankruptcy Rule 4001-2(a)(i)(R) requires disclosure of any provisions that immediately approve all terms and conditions of the underlying loan agreement (provided that provisions in the order that provide that the Debtors is authorized to enter into and be bound by the terms and conditions of such loan agreement do not need to be summarized).

**The DIP Term Sheet and the authority of the Debtors to enter into the DIP Loans are approved upon entry of the Interim Order.**

(xix)    Local Bankruptcy Rule 4001-2(a)(i)(S) requires disclosure of any provisions that modify or terminate the automatic stay or permit the lender to enforce remedies following an event of default that do not require at least five (5) days' written notice to the trustee or Debtors in possession, the Office of the United States Trustee and each committee appointed under sections 1102 and 1114 of the Bankruptcy Code (the "Remedies Notice Period"), prior to such modification or termination of the automatic stay or the enforcement of the lender's remedies.

**None. This requirement is met in the proposed Interim Order, as set forth in paragraphs 17 and 20 thereof.**

(xx)    Local Bankruptcy Rule 4001-2(a)(i)(T) requires disclosure of any provisions that seek to limit what parties in interest (other than the Debtors) may raise at any emergency hearing scheduled during the Remedies Notice Period.

**None.**

(xxi)    Local Bankruptcy Rule 4001-2(a)(i)(U) requires disclosure of any provisions that immediately grant to the prepetition secured creditor liens on the Debtor's claims and causes of action arising under sections 544, 545, 547, and 548 of the Bankruptcy Code or, in each case, the proceeds thereof.

**Liens on the proceeds of avoidance actions are effective only upon entry of the proposed Final Order.**

(xxii)    Local Bankruptcy Rule 4001-2(a)(i)(V) requires disclosure of any provisions that immediately waive the Debtor's rights under section 506(c) of the Bankruptcy Code.

**None. These provisions are subject to entry of the proposed Final Order.**

DOCS_SF:109424.3 70786/001

(xxiii)    Local Bankruptcy Rule 4001-2(a)(i)(W) requires disclosure of any provisions that immediately seek to affect the Court's power to consider the equities of the case doctrine under section 552(b)(1) of the Bankruptcy Code.

**None.  These provisions are subject to entry of the proposed Final Order.**

(xxiv)    Local Bankruptcy Rule 4001-2(a)(i)(X) requires disclosure of any provisions that immediately shield the lender from the equitable doctrine of "marshalling" or any similar doctrine.

**None.**  These provisions are subject to entry of the proposed Final Order.

## C.    <u>Need for Financing and Use of Cash Collateral</u>

18.    As noted above and in the First Day Declaration, AmeriFirst has an immediate and critical need to obtain the DIP Loans and use Cash Collateral (solely to the extent consistent with the Budget) to, among other things, (a) continue business operations; (b) make payroll; and (c) fund expenses of the Chapter 11 Cases.  AmeriFirst does not have sufficient sources of working capital and financing to maximize value throughout the Chapter 11 Cases without access to the DIP Loans and authorized use of Cash Collateral.  In the absence of the DIP Term Sheet and the use of Cash Collateral, AmeriFirst's business and estate would suffer immediate and irreparable harm.  Without access to the DIP Loans and Cash Collateral, AmeriFirst would run out of money and its ability to maintain going concern value would evaporate.

19.    As set out in the First Day Declaration, AmeriFirst is unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Term Sheet and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. AmeriFirst is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without granting the DIP Liens and the DIP Superpriority Claims (each as defined herein), in each case subject to the Carve-Out to the extent set forth herein, under the terms and conditions set forth in the Interim Order and the DIP Term Sheet.

## V.   BASIS FOR RELIEF

**A.     AmeriFirst Should Be Permitted to Obtain Postpetition Financing Pursuant to Section 364(c) of the Bankruptcy Code**

20.     Section 364(c) of the Bankruptcy Code requires a finding, made after notice and a hearing, that a debtor seeking postpetition financing on a secured basis cannot "obtain unsecured credit allowable under section 503(b)(l) of [the Bankruptcy Code] as an administrative expense." 11 U.S.C. § 364(c).

21.     In evaluating proposed postpetition financing under section 364(c) of the Bankruptcy Code, courts perform a qualitative analysis and generally consider similar factors, including whether:

> a.     unencumbered credit or alternative financing without superpriority status is available to the Debtors;
>
> b.     the credit transactions are necessary to preserve assets of the estate;
>
> c.     the terms of the credit agreement are fair, reasonable, and adequate;
>
> d.     the proposed financing agreement was negotiated in good faith and at arm's-length and entry thereto is an exercise of sound and reasonable business judgment and in the best interest of the Debtors' estate and its creditors; and
>
> e.     the proposed financing agreement adequately protects the DIP Lender.

*See, e.g.*, *In re Aqua Assoc.*, 123 B.R. 192 (Bankr. E.D. Pa. 1991) (applying the first three factors in making a determination under section 364(c)).

22.     To satisfy the standards of section 364 of the Bankruptcy Code, a debtor is not required to seek credit from every possible source: "the statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v. Shenandoah Fed. Sav. & Loan Ass'n* (*In re Snowshoe Co.*), 789 F.2d 1085, 1088 (4th Cir. 1986). Rather, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of section 364(c). *Id.*; *see also In re Ames*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

23

Where there are few lenders likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988).

23.    There are no prohibitions in the Bankruptcy Code for an insider or an affiliate of an insider to make a debtor-in-possession loan. *See In re 495 Central Park Avenue Corp.*, 136 B.R. 626 (Bankr. S.D.N.Y. 1992) (allowing priming debtor-in-possession loan from shareholders of the debtor); *Bland v. Farmworker Creditors* (*In re Bland*), 308 B.R. 109 (S.D. Ga. 2003) (recognizing that courts can approve post-petition loans from insiders).

24.    For the reasons discussed below and in the First Day Declaration, AmeriFirst satisfies the standards required to obtain postpetition financing in the Chapter 11 Cases on senior secured superpriority basis as to the DIP Collateral under sections 364(c)(1) and (2)of the Bankruptcy Code.

B.    **AmeriFirst is Unable to Obtain Financing on More Favorable Terms**

25.    As discussed above and in the First Day Declaration, under the facts of these Chapter 11 Cases, AmeriFirst is unable to obtain postpetition financing from any other parties other than the Prepetition Lenders.  The DIP Term Sheet provides AmeriFirst with the only postpetition financing option available for the orderly maintenance of the its assets and should be approved by this Court.

26.    AmeriFirst respectfully submits that its efforts to obtain postpetition financing under the facts of these Chapter 11 Cases satisfy the standard required under section 364(c) of the Bankruptcy Code. *See, e.g., In re Sky Valley, Inc.,* 100 at 113 (where few lenders can or will extend the necessary credit to a Debtors, "it would be unrealistic and unnecessary to require [the Debtors] to conduct such an exhaustive search for financing").

**C.**    **The Proposed DIP Loans are Necessary to Maximize the Value of the Estates**

27.    AmeriFirst seeks to use the DIP Loans to fund ordinary business expenses such as payroll, and bankruptcy-related costs and expenses, in accordance with the Budget, to maximize the value of these estates.  The DIP Term Sheet represents the best economic alternative for a new debtor in possession lending arrangement.

28.    As set forth in the First Day Declaration, AmeriFirst needs to continue to operate in the ordinary course, including satisfying payroll obligations, so as to maximize the value of its assets.  Failure to access the DIP Loans would irreparably damage AmeriFirst's efforts to effectuate an orderly Chapter 11 process for the benefit of all constituents.  Accordingly, the Debtors urge the Court to authorize the DIP Term Sheet and the DIP Loans on the terms contemplated herein.

**D.**    **The Terms of the Proposed DIP Term Sheet are Fair and Appropriate**

29.    In considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender.  *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 65 B.R. 358, 365 (W.D. Mich. 1986) (a debtor may have to enter into hard bargains to acquire funds).

30.    The terms of the DIP Term Sheet were negotiated in good faith and at arm's-length between the Debtors and the DIP Lenders, resulting in an agreement that is designed to permit the Debtors to maximize the value of their assets.  The Debtors submit that the proposed terms of the DIP Loans are fair, reasonable, and appropriate under the circumstances.  *See, e.g.*, *Bray v. Shenandoah Fed. Sav. and Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (stating that section 364(d) of the Bankruptcy Code imposes no duty to seek credit from every

possible lender); *In re Western Pacific Airlines, Inc.*, 223 B.R. 567 (Bankr. D. Colo. 1997) (authorizing postpetition financing that would preserve the value of the Debtors' assets). Further, the Prepetition Lenders consent to the DIP Loans on the terms set forth in the DIP Term Sheet.

## E.     The Carve-Out is Appropriate

31.     The DIP Liens and adequate protection are subject and subordinate to the Carve-Out in all respects.

32.     The Carve-Out contains similar terms to others that this Court has found to be reasonable and necessary to ensure that a debtor's estate and any statutory committee can retain assistance from their advisors and other critical expenses. Without the Carve-Out, the Debtors' estates may be deprived of possible rights and powers if the services for which professionals may be compensated are restricted. *See In re Ames Dep't Stores, Inc*., 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). Additionally, the Carve-Out protects against administrative insolvency during the course of these cases by ensuring that assets remain for the payment of the U.S. Trustee fees and professional fees, among other expenses, notwithstanding the grant of superpriority claims and liens under the DIP Orders. Accordingly, the Carve-Out is appropriate and should be approved.

## F.     The DIP Lenders Should Be Deemed Good Faith Lenders

33.     Section 364(e) of the Bankruptcy Code protects a good faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Section 364(e) provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

34.     Here, the Debtors believe the DIP Term Sheet embodies the most favorable terms on which AmeriFirst could obtain postpetition financing. As described in the First Day Declaration, negotiations of the terms of the DIP Facility with the DIP Lenders were conducted in good faith and at arms' length.  The terms and conditions of the DIP Term Sheet are fair and reasonable, and the proceeds of the DIP Loans will be used only for purposes that are permissible under the Bankruptcy Code and in accordance with the DIP Orders and the DIP Term Sheet, including the Budget.  Any consideration being provided to any of the DIP Lenders is described herein.  Accordingly, the Court should find that the DIP Lenders are "good faith" lenders within the meaning of section 364(e) of the Bankruptcy Code and are entitled to all of the protections afforded by that section.

**G.      The Proposed DIP Term Sheet Reflects AmeriFirst's Sound Business Judgment**

35.     A debtor's decision to enter into a postpetition lending facility under section 364 of the Bankruptcy Code is governed by the business judgment standard.  *See, e.g.*, *Trans World Airlines, Inc. v. Travelers Int'l AG (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving postpetition credit facility because such facility "reflect[ed] sound and prudent business judgment"); *In re Ames Dep't Stores, Inc.*, 115 B.R. at 38 (financing decisions under section 364 of the Bankruptcy Code must reflect a debtor's business judgment).

36.     Bankruptcy courts routinely accept a debtor's business judgment on many business decisions, including the decision to borrow money.  *See, e.g., Group of Inst. Investors v.*

27

*Chicago, Mil., St. P. & Pac.*, 318 U.S. 523, 550 (1943) (holding that decisions regarding assumption or rejection of leases are left to the business judgment of the Debtors); *In re Simasko Prod. Co.,* 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court.").  Further, one court has noted that "[m]ore exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1311 (5th Cir. 1985).

37.    Bankruptcy courts generally will defer to a debtor in possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious.  *In re Curlew Valley Associates*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981); *see also Trans World Airlines, Inc.,* 163 B.R. at 974 (approving interim loan, receivables facility and asset-based facility based upon prudent business judgment of the Debtors).  Generally courts will not second-guess a debtor in possession's business decisions involving "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." *Curlew Valley,* 14 B.R. at 513-14 (footnotes omitted).

38.    For the reasons set forth above and in the First Day Declaration, AmeriFirst's sound business judgment clearly supports approval of the DIP Term Sheet.  Access to the DIP Loans will allow AmeriFirst to continue to operate, thus maximizing value for all of their constituents.

**H.    Section 363 of the Bankruptcy Code Authorizes AmeriFirst's Use of Cash Collateral**

39.    Section 363(c)(2) of the Bankruptcy Code provides that a debtor in possession may not use cash collateral unless (A) each entity that has an interest in such cash collateral provides consent, or (B) the court approves the use of cash collateral after notice and a

28

hearing.  *See* 11 U.S.C. § 363(c).  Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by the [debtors in possession], the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).

40.    Here, AmeriFirst seeks authority to use the Cash Collateral pursuant to the Budget and have sought approval of various forms of adequate protection in favor of the Prepetition Lenders, including adequate protection liens and superpriority claims on the DIP Collateral to the extent of any diminution.  Importantly, the DIP Lenders and the Prepetition Lenders consent to the use of Cash Collateral on the terms set forth in the Interim Order and Final Order.

41.    Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the 14-day period following the filing of a motion requesting authorization to use cash collateral, "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a Final hearing."  Bankruptcy Rule 4001(b)(2).  In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions.  *See, e.g., In re Simasko Production Co.*, 47 B.R. at 449; *see also In re Ames Dep't Stores Inc.,* 115 B.R. at 38.  After the 14-day period, the request for use of cash collateral is not limited to those amounts necessary to prevent harm to the debtor's business.

42.    As previously noted, in order to continue operating and satisfying accruing administrative expenses, the Debtors require access to the DIP Loans and the use of Cash Collateral.  Such use will provide AmeriFirst with the necessary funds to remain administratively solvent.

43.     Absent access to Cash Collateral, AmeriFirst would face immediate and irreparable harm.  AmeriFirst would be forced to cease operations and convert these Chapter 11 Cases to Chapter 7.  Jobs would be lost and substantial value destroyed.  Thus, immediate access to Cash Collateral is essential to the Debtors' ability to maximize value for the benefit of all constituents.

## I.     Interim Order and Final Hearing

44.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Court schedule a Final Hearing within approximately thirty-five (35) calendar days of the commencement of the Chapter 11 Cases to consider approval of this Motion on a final basis.

45.     The urgent need to avoid immediate and irreparable harm to AmeriFirst's estates makes it imperative that AmeriFirst be authorized to access the DIP Loans and use Cash Collateral pending the Final Hearing, in order to allow the Debtors to operate and administer these Chapter 11 Cases on a postpetition basis.  Without the ability to make draws under the DIP Facility and use Cash Collateral, AmeriFirst would be unable to satisfy accruing postpetition obligations, including payroll, and would not be able to conduct a value-maximizing Chapter 11 process, thus causing irreparable harm to the AmeriFirst and its estates.  Accordingly, the Debtors respectfully request that, pending the Final Hearing, the Interim Order be approved and that the terms and provisions of the Interim Order be implemented and be deemed binding and that, after the Final Hearing, the Final Order be approved in all respects and the terms and provisions of the Final Order be implemented and be deemed binding.

## J.     Waiver of Bankruptcy Rule 6004(a) and 6004(h)

46.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a)

and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## VI.  NOTICE

47.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee, (b) the consolidated 30 largest unsecured creditors of the Debtors, (c) the Internal Revenue Service, (d) all parties who have filed requests prior to the date of service for notices under Rule 2002 of the Bankruptcy Rules, and (e) all parties known by a Debtor to hold or assert a lien on any asset of a Debtor.  As this Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered in respect to this Motion as required by Local Bankruptcy Rule 9013-1(m).

## VII.  NO PRIOR REQUEST

48.     The Debtors have not made any prior request for the relief sought herein to this Court or any other court.

**WHEREFORE**, the Debtors respectfully request entry of the Interim Order and, after Final Hearing, the Final Order, granting the relief requested herein and such other relief as is just and proper.

Dated: August 29, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:  302-652-4400
Email: ljones@pszjlaw.com
       dbertenthal@pszjlaw.com
       tcairns@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*