# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| AMERIFIRST FINANCIAL, INC.,[1] | ) Case No. 23-11240 (TMH) |
|  | ) |
|  | ) (Joint Administration Requested) |
|  | ) |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS UNDER SECTIONS 105(a), 363, 1107(a) AND 1108 OF THE BANKRUPTCY CODE (I) AUTHORIZING THE DEBTORS TO CONTINUE IN THE ORDINARY COURSE OF BUSINESS: (A) SALE ACTIVITIES RELATED TO CERTAIN "CIK" PROPERTIES, (B) ORIGINATING AND FUNDING MORTGAGE, LOANS, (C) SELLING "SCRATCH AND DENT LOANS", (D) SERVICING LOANS, AND (II) GRANTING RELATED RELIEF**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby move (the "Motion") for entry of interim and final orders, under sections 105(a), 362, 363, 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing, but not directing, the Debtors to continue in the ordinary course of business: (a) sale activities related to certain "Cash is King" owned properties ("CIK Properties"), including authorizing the sale of such CIK Properties free and clear of liens, claims, and encumbrances, (b) originating and funding mortgage loans, (c) selling "scratch and dent" loans, (d) servicing loans, and (ii) granting related relief.

In support of the Motion, the Debtors, by and through their undersigned counsel,

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers include:  Phoenix 1040 LLC (2550) and AmeriFirst Financial, Inc. (4557).  The Debtors' service address is 1550 McKelleps Road, Suite 117, Mesa, AZ 85203.

respectfully represent as follows:

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference from the United States District Court for the District of Delaware*,

dated February 29, 2012.  The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008,

and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order

by the Court in connection with this motion to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

3.      On August 24, 2023 (the "Petition Date"), each of the Debtors filed a voluntary

petition in this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors are

managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code

sections 1107(a) and 1108. No trustee, examiner or statutory creditors' committee has been

appointed in these chapter 11 cases.

4.      Debtor AmeriFirst Financial, Inc. ("AFI") is a mid-sized independent mortgage

company. It is licensed to operate in 44 states and serves customers via branches located in over

20.  In addition to originating and purchasing residential mortgage loans, AFI owns certain loan

master servicing rights ("MSRs") and fees generated thereby.

5.      Additional factual background regarding the events leading to the filing of these

chapter 11 cases is set forth in the *Declaration of T. Scott Avila in Support of First Day Motions* [Docket No. 20] (the "Avila Declaration").

### The Ordinary Course Business Practices

6.     The Debtors' business relies upon their ability to timely satisfy their obligations, whether those obligations relate to selling owned property and conveying clear title, originating and funding mortgage loans, buying and selling loans or servicing loans.  These functions are the very lifeblood of their business.  Each of these activities are extremely time sensitive and the Debtors' inability to perform or timely deliver harms the value of their estates.

7.     The Debtors believe these activities, which are described in more detail below, constitute ordinary course transactions.  However, in an abundance of caution, the Debtors are seeking Court approval to continue these business practices as they did prepetition.

#### A.  CIK Properties

8.     The Debtors conduct a "Cash is King" program ("CIK Program") pursuant to which AFI provides a customer with a mortgage loan for the purchase of a new property while simultaneously buying the customer's existing property.  The customer benefits from eliminating any sale contingency related to the sale of the current property prior to buying the new property.

9.     Once purchased, AFI immediately markets the CIK Property for sale and sells it when an acceptable offer is received.  AFI receives a resell commission in connection with the sale.  AFI discontinued buying CIK Properties in October 2022.

10.     AFI purchased a total of approximately 100 properties under the CIK Program and has sold 96 of them; 30-40 of those sales occurred during the past twelve months. AFI currently owns 4 CIK Properties; three are located in Texas and one in Arizona.  Three of

3

the CIK Properties are under a contract of sale. One was scheduled to close on August 25, 2023, a second is scheduled to close on August 31st and the third is scheduled to close on September 8th. The fourth CIK Property is not yet under contract.

11.     Pending the sale of the CIK Properties, the Debtors are required to pay any associated carrying costs, including utilities, taxes, HOA fees and the like. The Debtors seek authority to pay any outstanding prepetition amounts in the ordinary course. Failure to do so could jeopardize the sale of the CIK Properties. The amounts are *de minimis*.

12.     The CIK Properties are subject to mortgage liens held by either RCP or AZ Instant Funding. As part of the sale of the CIK Properties, the Debtors will need to convey clear title, which will require paying off the mortgage liens at closing. The Debtors do not anticipate that funds from the sale of the CIK Properties will exceed the amount of the mortgage liens.

13.     The Debtors request authority to proceed with the sale of the CIK Properties in the ordinary course, without the need to obtain separate orders for each sale, subject only to the approval of the holders of the applicable mortgage liens.

**B.  Originating and Funding Mortgage Loans**

14.     The essence of the Debtors' business is originating and selling mortgage loans. Once a loan is originated, the Debtors sell it to investors, typically "aggregators" who will package purchased loans and sell them in the secondary capital markets.

15.     In order to fund new mortgage loans – the backbone of the mortgage industry - the Debtors must retain access to their warehouse lines of credit with Centier Bank and AZ Instant Funding[2]. The Debtors' business depends on the uninterrupted flow of liquidity in

---

[2] The AZ Instant Funding warehouse line is limited to construction and repair draws on houses bought by borrowers to "flip". The Centier Bank warehouse line does not permit such draws.

DOCS_DE:244466.2 70786/001

order to fund mortgage originations for customers. [3]

16.      A warehouse facility is structured as a "safe harbor" repurchase agreement under which a seller sells a mortgage loan to a buyer, with the buyer agreeing to sell the mortgage loan back to the seller on a certain date in the future.  This arrangement, which is typical in the mortgage industry, is how AFI actually funds the mortgage loans it originates on behalf of underlying borrowers.  AFI buys the mortgage loans back when it is prepared to permanently sell it to one or more loan buyers.  Without the benefit of the relief sought in this Motion, AFI will not be able to provide the funding necessary for its borrowers to close the purchase of their homes.

17.      Without access to the warehouse lines, the Debtors will not be able to satisfy obligations to customers with locked loans or originate and fund new loans.  As a result, existing customers would be left at closing tables without the funds necessary to close on the purchase or refinance of their homes and the Debtors would lose the ability to attract new borrowers.

**C.  Scratch and Dent Loan Sales**

18.      In the ordinary course of their business, the Debtors will need to sell loans with material defects, such as misrepresentations by the borrower, litigations claims, a title defect or some other defect that prevents AFI from selling the loan to an investor (the "S&D Loans").  Typically, AFI bundles the S&D Loans and puts them to market for a "scratch and dent trade".  Scratch and dent trades are a standard practice in the industry.

19.      The Debtors had agreed to two such trades prior to the Petition Date. The Debtors expect they can complete the trades quickly upon entry of an interim order granting

---

[3] AFI originates both residential mortgage loans and "business purpose" residential mortgage loans.

the Motion.  The Debtors expect to receive proceeds in excess of $2.4 million from these trades

of the S&D Loans.

### D.  Servicing Loans

20.     While not a substantial portion of their business, the Debtors do have

certain obligations to service mortgage loans, generally, but not exclusively, during the period

prior to the loans being sold.  The Debtors receive fees for services provided. The Debtors seek

authority to continue to perform any servicing obligations in the ordinary course of business.

Failure to comply with their servicing obligations can subject the Debtors to consumer and

regulatory complaints and would have an adverse impact on their estates.

### RELIEF REQUESTED

21.     By this Motion, the Debtors seek interim and final relief pursuant to

Bankruptcy Code sections 105(a), 363, 1107(a) and 1108 to operate all ordinary course

components of their mortgage lending business.  Specifically, the Debtors respectfully request

that the Court enter interim and final orders (i) authorizing, but not directing the Debtors to

continue the following standard business practices in the ordinary course of business: (a) sale

activities related to the CIK Properties, including authorizing the sale of such CIK Properties free

and clear of liens, claims, and encumbrances, (b) originating and funding mortgage loans, (c)

selling "scratch and dent" loans (d) servicing loans, and (ii) granting related relief.

### BASIS FOR RELIEF REQUESTED

22.     The Debtors believe the relief requested in this Motion relates solely to

the continued ordinary course conduct of the Debtors' business within the meaning of section

363(c)(1) of the Bankruptcy Code. Nonetheless, the relief requested herein is essential to provide

comfort to those doing business with the Debtors. Section 363(c) of the Bankruptcy Code

authorizes a debtor in possession to use, sell, or lease property of the estate in the ordinary course of its business. See 11 U.S.C. § 363(c). Section 363(c) of the Bankruptcy Code, in relevant part, provides:

> If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204 or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

23.     The ordinary course of business standard was intended to allow a debtor in possession the flexibility required to run its business and respond quickly to changes in the business environment. Moore v. Brewer (In re HMH Motor Servs., Inc.), 259 B.R. 440, 448-49 (Bankr. S.D. Ga. 2000).  A debtor in possession, thus, may use, sell or lease property of the estate without need for prior court approval if the transaction is in the ordinary course. Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (holding that ordinary course uses of estate property do not require a prior hearing); Armstrong World Indus. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.), 29 B.R. 391, 394 (S.D.N.Y. 1983) (holding that where a debtor in possession is merely exercising the privileges of his status, there is no general right to notice and hearing concerning particular transactions conducted in the ordinary course of the business).

24.     Courts broadly interpret the term ordinary course.  Gassen v. Universal Bldg. Materials, Inc. (In re Berkley Multi-Units, Inc.), 88 B.R 394, 396 (Bankr. M.D. Fla. 1988). In determining whether a transaction is in the ordinary course of business under Bankruptcy

Code section 363, the courts apply a two-pronged test: (1) the objective horizontal test, and (2) the subjective vertical test.  See Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne), 114 F.3d 379, 384-85 (2d Cir. 1997); see also In re Dana Corp., 358 B.R. 567, 580 (Bankr. S.D.N.Y. 2006) (and cases cited therein); In re The Leslie Fay Cos., 168 B.R. 294, 304 (Bankr. S.D.N.Y. 1994). The horizontal test is a factual analysis as to whether the transaction in question is of the sort commonly undertaken by companies in that industry.  In re Lavigne, 114 F.3d at 385.  That is, the horizontal test focuses on whether the transaction is usual or abnormal for the industry. The vertical test, which is also called the creditor's expectation test, is an analysis conducted from the perspective of a hypothetical creditor and analyzes whether the transaction subjects the creditor to an economic risk of a nature different from those it accepted when it decided to extend credit. Id. (internal quotations omitted); In re The Leslie Fay Cos., 168 B.R. at 304. In making this determination, courts look to the debtor's pre-petition business practices and conduct and compare them to the debtor's postpetition conduct.  In re The Leslie Fay Cos., 168 B.R. at 304.

25. Here, all of the activities for which the Debtors seek authority to continue satisfy both the horizontal and vertical tests. The horizontal test is easily met. Each of the foregoing activities represents an essential component in continuing the Debtors' business as it was conducted prior to the Petition Date. These services are typically performed by similarly situated mortgage loan servicers in the mortgage lending and securitization industries.  Likewise, a hypothetical creditor should expect that the Debtors, in their capacity as a mortgage loan lender, would be parties to various agreements that require them to engage in the various activities described in this Motion. Granting the relief requested herein would not subject creditors to economic risks that would not have been contemplated by them.  Therefore, the

vertical test is also satisfied. <u>See Burlington N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)</u>, 853 F.2d 700, 705 (9th Cir. 1988) (debtor's renewal and execution of leases satisfied vertical test because debtor routinely entered into leases prior to bankruptcy); <u>In re Johns-Manville Corp.</u>, 60 B.R. at 616 (debtor's employment of lobbyists satisfied both vertical and horizontal tests because debtor had been retaining lobbyists for many years and because it was common practice of other major companies to do so).

26.     Relief similar to that requested by the Debtors has been routinely granted as a matter of course in numerous Chapter 11 cases of other mortgage lenders.  <u>See</u>, <u>e.g.</u>, <u>In re Thornburg Mortg., Inc.</u>, No. 09-17787 (Bankr. D. Md. May 6, 2009) (Docket No. 49) (granting the debtors authority to continue servicing loans and performing its loan auditing and fulfillment services business in the ordinary course of business); <u>In re Am. Home Mortg. Holdings, Inc.</u>, Case No. 07-11047 (CSS) (Bankr. D. Del. Aug. 24, 2007) (Docket No. 358) (granting the debtors authority to, among other things, sell REO owned in the ordinary course free and clear of any and all liens and encumbrances and to continue funding servicing advances); (authorizing the debtors to sell loans owned by the debtors and honor existing obligations and incur new obligations in the ordinary course of business in connection with the servicing of loans); <u>In re Aegis Mortg. Corp.</u>, Case No. 07-11119 (BLS) (Bankr. D. Del. August 15, 2007) (Docket No. 35) (authorizing the debtors to sell certain loans owned by the debtors, continue performing under existing subservicing agreements, and enter into new subservicing agreements); <u>In re Mortg. Lenders Network USA, Inc.</u>, Case No. 07-10146 (PJW) (Bankr. D. Del. Feb. 7, 2007) (Docket No. 38) (authorizing debtors to sell loans that had closed and been funded, honor loan commitments upon which the debtors closed prepetition but were unable to fund, and honor existing obligations and incur new obligations in the ordinary course of business

9

in connection with the servicing of loans); In re The Finova Group Inc., Case No. 01-00697
(PJW) (Bankr. D. Del. Mar. 7, 2001) (Docket No. 16) (authorizing debtors to honor, renew,
increase and/or fund prepetition commitments, honor prepetition or postpetition servicing and
payment obligations, continue business practices including making of new loans, continuing
ordinary course intercompany loans and authorizing banks to honor prepetition checks and other
forms of payment); In re United Cos. Fin. Corp., Case No. 99-00451 (RB) (Bankr. D. Del. Mar.
5, 1999) (Docket No. 54) (authorizing debtors to honor prepetition commitments to fund
borrower loans, honor existing obligations in connection with servicing existing loans, honor
existing obligations in connection with securitization of loans and sell loans in the ordinary
course of business, and directing banks to honor loan disbursement checks and wire transfers); In
re Cityscape Fin. Corp., No. 98-22569 (ASH) (Bankr. S.D.N.Y. Jan. 25, 1999) (Docket No. 221)
(granting the debtors authority to, among other things, sell loan portfolios in the ordinary course
of business).

      27.      Implicit in the duties of a Chapter 11 debtor in possession is the duty "to
protect and preserve the estate, including an operating business's going-concern value." CoServ,
L.L.C., 273 B.R. at 497. See also In re Jennifer Convertibles, Inc., No. 10-13779, 2010 Bankr. LEXIS
6068 (Bankr. S.D.N.Y. July 29, 2010) (authorizing relief where, among other things, it would enable the
debtors "to preserve and realize the value of the Debtors' remaining operations on a going concern basis
and avoid any decline and further devaluation of the Debtors' business. . . ."); In re Gen. Motors Corp.,
2009 Bankr. LEXIS 5565, at *12 (authorizing relief where the court found it was necessary to preserve
the viability of the debtors' businesses as going concerns).

      28.      The relief requested herein is necessary to allow the Debtors to
preserve, enhance and maximize the value of their estates, thereby fulfilling their fiduciary duties
imposed by the Bankruptcy Code.

29.     For the reasons set forth above, the Debtors can only meet their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code by continuing to perform in the ordinary course of their business. Accordingly, the relief requested herein is essential to preserve the Debtors as a going concern and, thus, serves the rehabilitative purposes of the Bankruptcy Code as authorized pursuant to Bankruptcy Code section 105(a).

30.     To the extent the Debtors seek to pay prepetition amounts in connection with the practices described above, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may permit payments of prepetition obligations prior to confirmation of a plan and emergence from chapter 11 when essential to the continued operation of a debtor's business. Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "doctrine of necessity."

31.     Under the "doctrine of necessity," bankruptcy courts may authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor.  *In re Lehigh and New England Railway Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.,* 467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or materials essential to the conduct of the business until its pre-reorganization claims have been paid"); *In re Just for Feet, Inc.,* 242 B.R. 821, 824–25 (D. Del. 1999) (noting that, in

11

the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.,* 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

32.     Although the "doctrine of necessity" predates the Bankruptcy Code, *see Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286, 309 (1882), the modern application of the doctrine of necessity is grounded in specific provisions of the Bankruptcy Code, including sections 105(a), 1107(a) and 1108. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (fiduciary duties implicit in section 1107(a) of the Bankruptcy Code justify the "preplan satisfaction of a prepetition claim" where necessary to preserve going concern value). The doctrine, largely unchanged from the Court's reasoning in *Miltenberger*, is a widely accepted component of bankruptcy jurisprudence. *See Just for Feet, Inc.*, 242 at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy the debtor's business by refusing to deliver new inventory on the eve of debtor's key sales season); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (affirming order authorizing payment of prepetition wages, salaries, expenses and benefits); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546–47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agreed to provide postpetition trade credit).

33.     Here, any amounts to be paid are modest while failure to pay them would have outsized negative consequences.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

34.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, authorizing the

Debtors to (a) pay prepetition wages, salaries, other compensation, and reimbursable employee expenses and (b) continue employee benefits programs in the ordinary course, including prepetition obligations related thereto, and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases and the maintain value of their estate postpetition.  Failure to receive such authorization and other relief during the first twenty-one days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course, preserve the going concern value of the Debtors' operations, and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## **RESERVATION OF RIGHTS**

35.     Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise)

13

satisfied pursuant to this motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

## NOTICE

36.     Notice of this Motion and any interim order entered will be given via electronic or overnight mail to the following parties, or in lieu thereof, to their counsel: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to RCP; (c) counsel to Centier Bank; (d) counsel to AZ Instant Funding; (e) creditors holding the top thirty unsecured claims against the Debtors on a consolidated basis; and (f) all parties requesting notice in these cases.  The Debtors submit that no further notice is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court: (i) enter an interim order substantially in the form attached hereto as Exhibit A, granting certain of the relief sought herein immediately; (ii) enter a final order in a form to be filed prior to the Final Hearing, granting the relief sought herein on a final basis; and (iii) grant such other and further relief to the Debtors as the Court may deem just and proper.

14

Dated: August 29, 2023                    **PACHULSKI STANG ZIEHL & JONES LLP**

                                          */s/ Laura Davis Jones*
                                          Laura Davis Jones (DE Bar No. 2436)
                                          David M. Bertenthal (CA Bar No. 167624)
                                          Timothy P. Cairns (DE Bar No. 4228)
                                          919 North Market Street, 17th Floor
                                          P.O. Box 8705
                                          Wilmington, DE  19899-8705 (Courier 19801)
                                          Telephone:  (302) 652-4100
                                          Facsimile:  (302) 652-4400
                                          Email:  ljones@pszjlaw.com
                                            dbertenthal@pszjlaw.com
                                            tcairns@pszjlaw.com

                                          *Proposed Counsel to the Debtors and Debtors in
                                          Possession*