IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| AMERIFIRST FINANCIAL, INC., *et al.*,[1] | ) ) ) | Case No. 23- 11240 (TMH) |
| Debtors. | ) ) ) ) | (Jointly Administered) **Re: Docket No. 19** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
OPERATING CASH MANAGEMENT SYSTEM, (B) HONOR AND
PAY BANK FEES, (C) MAINTAIN EXISTING BUSINESS FORMS,
(II) SCHEDULING A FINAL HEARING, AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), seeking entry of an interim order (this "Interim Order"), pursuant to sections 105, 345, and 363 of the Bankruptcy Code, Rules 6003 and 6004 of the Bankruptcy Rules, and Rule 2015-2 of the Local Rules, (i) authorizing the Debtors to (a) continue operating the Cash Management System, (b) honor and pay the Bank Fees in the normal course, including any prepetition Bank Fees, and (c) maintain existing business forms, and (ii) granting certain related relief, all as more fully set forth in the Motion; and upon consideration of the Avila Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that venue of

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Phoenix 1040 LLC (255) and AmeriFirst Financial, Inc. (4557). The Debtors' business address is 1550 McKelleps Road, Suite 117, Mesa, AZ 85203.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at an interim hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on an interim basis, as set forth in this Interim Order.

2. The final hearing (the "Final Hearing") on the Motion shall be held on October 2, 2023, at 11 a.m., prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on September 25, 2023. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3. The Debtors are authorized, but not directed except to the extent set forth herein, to: (a) continue operating the Cash Management System, substantially as identified on **Exhibit C** to the Motion and as described in the Motion; (b) honor their prepetition obligations related thereto; (c) use, in their present form, all preprinted correspondence and Business Forms (including letterhead) without reference to the Debtors' status as debtors in possession; (d) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit D** to the Motion (except for Malaby Insurance, Inc. Chase bank account x9687, as further provided in paragraph 23 herein), and need not comply with certain guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines (to the extent

applicable); (e) treat each respective Debtor's Bank Accounts for all purposes as accounts of each such respective Debtor as a debtor in possession; (f) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; and (g) pay the Bank Fees, including any prepetition amounts and any ordinary course Bank Fees incurred in connection with the Bank Accounts and to otherwise perform their obligations under the documents governing the Bank Accounts; *provided* that in the case of each of (a) through (g), such action is taken in the ordinary course of business and consistent with historical practices.[3] This includes, without limitation, authorization for the Debtors or account owners/custodial parties (as applicable) to disburse through any means funds held in the Bank Accounts for borrower-related disbursements (e.g., property taxes, hazard insurance, or similar disbursements) and other disbursements for funds held as custodian of or for another party (with such borrower-related funds and other custodial disbursements collectively referred to herein as "Custodial Funds"), which authorization shall be consistent with the Fannie Mae Lender Contract (as defined below) and the Freddie Mac Agreements (as defined below).

4. Debtor AFI is a party to that certain Mortgage Selling and Servicing Contract, the Fannie Mae Selling Guide (the "Selling Guide"), the Fannie Mae Servicing Guide (the "Servicing Guide" and together with the Selling Guide, the "Guides"), all supplemental servicing instructions or directives provided by Federal National Mortgage Association (together with any successor thereto, "Fannie Mae"), all applicable master agreements, recourse agreements, repurchase agreements, indemnification agreements, loss-sharing agreements, and any other agreements between Fannie Mae and AFI, all as amended, restated or supplemented from time to time

---

[3] Nothing in this Order authorizes Phoenix 1040 LLC to access or control any Bank Account of AFI, which shall in all respects remain subject to any applicable terms of the Fannie Mae Lender Contract and the Freddie Mac Agreements.

(collectively and as further defined in the Guides, the "Fannie Mae Lender Contract"). Notwithstanding anything to the contrary in this Order, all funds previously or hereafter collected as servicer for Fannie Mae under the Fannie Mae Lender Contract, including all funds previously or hereafter collected by any sub-servicer (collectively, the "Fannie Mae Payments"), are and shall remain property of Fannie Mae at all times, including without limitation any funds held in any custodial accounts (as referenced in the Fannie Mae Lender Contract) and the custodial accounts identified on Exhibit D to the Motion. Such funds shall be remitted to Fannie Mae in such amounts and at such times as provided under the terms of the Fannie Mae Lender Contract. Furthermore, any funds remitted by Fannie Mae to the Debtor post-petition (whether on account of pre-petition or post-petition transactions) shall be handled as provided in the Fannie Mae Lender Contract, including return of any excess owed to Fannie Mae thereunder. Fannie Mae payments held in blocked accounts may be released on such terms and conditions as may be acceptable to Fannie Mae. For the avoidance of any doubt, the Debtors' property shall not include any Fannie Mae Payments and nothing in this Order shall limit, impact, impair or affect, in any way, the obligations of AFI (or any sub-servicer for loans currently owned or hereafter acquired by Fannie Mae) under the Fannie Mae Lender Contract, nor shall this Order impact Fannie Mae's rights with respect to AFI or any sub-servicer under the Fannie Mae Lender Contract. Nothing herein gives the Debtors, any lenders, or any other party any interest in the mortgages and loans (or the proceeds thereof) owned by Fannie Mae and serviced pursuant to the Fannie Mae Lender Contract, the servicing rights associated therewith, or the Fannie Mae Lender Contract. Fannie Mae reserves all rights under the Fannie Mae Lender Contract. To the extent of any inconsistency between the Fannie Mae Lender Contract and this Order, the Fannie Mae Lender Contract shall control.

5. Debtor AFI is subject to the Freddie Mac Single-Family Seller/Servicer Guide ("Freddie Mac Guide"), the Freddie Mac Single-Family/Servicer Guide Plus Additional Provisions, certain applicable Master Agreements (as defined in the Freddie Mac Guide), Purchase Contracts (as defined in the Freddie Mac Guide), Pricing Identifier Terms (as defined in the Freddie Mac Guide) supplements, addendums, Bulletins (as defined in the Freddie Mac Guide), terms of business and any other agreements between AmeriFirst and Freddie Mac, as amended, restated or supplemented from time to time (collectively, the "Freddie Mac Agreements"). Notwithstanding anything to the contrary in this Order, all funds previously or hereafter collected as servicer for Freddie Mac under the Freddie Mac Agreements, including all funds previously or hereafter collected by any sub-servicer (collectively, the "Freddie Mac Payments"), are and shall remain property of Freddie Mac at all times, including without limitation any funds held in any custodial accounts (as referenced in the Freddie Mac Agreements) and the custodial accounts identified on Exhibit D to the Motion. Such funds shall be remitted to Freddie Mac in such amounts and at such times as provided under the terms of the Freddie Mac Agreements. Furthermore, any funds, if any, remitted by Freddie Mac to the Debtor post-petition (whether on account of pre-petition or post-petition transactions) shall be handled as provided in the Freddie Mac Agreements, including return of any excess owed to Freddie Mac thereunder. Freddie Mac payments held in blocked accounts may be released on such terms and conditions as may be acceptable to Freddie Mac. For the avoidance of any doubt, the Debtors' property shall not include any Freddie Mac Payments and nothing in this Order shall limit, impact, impair or affect, in any way, the obligations of AFI (or any sub-servicer for loans currently owned or hereafter acquired by Freddie Mac) under the Freddie Mac Agreements, nor shall this Order impact Freddie Mac's rights with respect to AFI or any sub-servicer under the Freddie Mac Agreements. Nothing herein

gives the Debtors, any lenders, or any other party any interest in the mortgages and loans (or the proceeds thereof) owned by Freddie Mac and serviced pursuant to the Freddie Mac Agreements, the servicing rights associated therewith, or the Freddie Mac Agreements. Freddie Mac reserves all rights under the Freddie Mac Agreements. To the extent of any inconsistency between the Freddie Mac Agreements and this Order, the Freddie Mac Agreements shall control.

6. To the extent that any Fannie Mae, Freddie Mac, or the Government National Mortgage Association is granted different or additional rights or protections hereunder, each other of Fannie Mae, Freddie Mac, or the Government National Mortgage Association shall have the option (but not the obligation) to adopt comparable rights and protections at any time.

7. The Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business consistent with historical practices, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order; *provided* that the Debtors shall only instruct or request any Banks to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Bank for payment after the Petition Date as authorized by an order of the Court.

8. The Banks are authorized to debit the Debtors' accounts in the ordinary course of business, consistent with historical practices, without the need for further order of this Court for: (a) all checks drawn on the Debtors' accounts which are cashed at such Bank's counters or

exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of Debtors' accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

9. Any existing agreements between or among the Debtors, the Banks, and other parties shall continue to govern the postpetition cash management relationship between the Debtors and the Bank, and all of the provisions of such agreements, including, without limitation, the termination, fee provisions, rights, benefits, offset rights, and remedies afforded under such agreements shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and the Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and cash management procedures in the ordinary course of business, consistent with historical practices and the Debtors' prepetition secured debt agreements, including, without limitation, the opening and closing of bank accounts, subject to the terms and conditions of this Interim Order.

10. The Debtors' time to comply with section 345(b) of the Bankruptcy Code is hereby extended for a period of thirty (30) days from the date of this Order (the "Extension Period"), provided, however, that such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or a final waiver of the requirements of section 345(b) in these Chapter 11 Cases.

11. The Debtors shall maintain detailed records reflecting all transfers of funds (including any intercompany transactions). The Debtors shall continue to maintain records in the

ordinary course of business with respect to all transfers so that all transactions (including any intercompany transactions) may be readily ascertained, traced and recorded properly on the applicable accounts and distinguished between prepetition and postpetition transactions. There shall be no intercompany transfers by the Debtors to non-debtor affiliates or subsidiaries nor any intercompany loans to non-Debtor affiliates or subsidiaries absent further order of this Court.

12. Upon entry of this Interim Order, the Debtors shall (a) contact each Bank, (b) provide such Bank with each of the Debtors' employer identification numbers, and (c) identify each of their Bank Accounts held at such Bank as being held by a debtor in possession in the Debtors' bankruptcy cases. For any Bank at which the Debtors hold Bank Accounts that are not party to a Uniform Depository Agreement with the Office of the U.S. Trustee for the District of Delaware, the Debtors shall use their good-faith efforts to cause the Bank to execute a Uniform Depository agreement within fifteen (15) days of the date of this Interim Order. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned Banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

13. Subject to the terms hereof, the Debtors are authorized, but not directed, in the ordinary course of business consistent with historical practices and the Debtors' prepetition secured debt agreements, to open any new bank accounts or close any existing Bank Accounts and enter into any ancillary agreements, including deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate, provided that the Debtors give notice to the U.S. Trustee and any official committees appointed in these chapter 11 cases within 15 days of opening or closing a bank account. The relief granted in this Interim Order is extended to any new bank account opened by the Debtors in the ordinary course of business after the date hereof,

which account shall be deemed a "Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Bank," provided that any new domestic bank account opened by the Debtors shall be established at an institution that is a party to a Uniform Depository Agreement with the U.S. Trustee or is willing to immediately execute such a Uniform Depository Agreement.

14. All banks maintaining any of the Bank Accounts that are provided with notice of this Interim Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date; *provided*, *however*, that any such bank shall not be found to be in violation of this Interim Order nor liable to the Debtors or their estates should any such bank honor or pay any bank payment (a) in a good faith belief that the Court has authorized such payment to be honored, or (b) as the result of a mistake made despite implementation of customary item handling procedures.

15. The Banks are authorized, without further order of this Court, to deduct any applicable fees from the applicable Bank Accounts in the ordinary course of business consistent with historical practices and pursuant to the applicable agreements governing each Bank Account.

16. The Banks are authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers, including, without limitation, on account of checks that have been dishonored or returned as a result of insufficient funds in the Bank Accounts, in each case to the same extent the Debtors were responsible for such items prior to the Petition Date.

17. Subject to the terms set forth herein, any bank, including the Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Interim Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

18. Any banks, including the Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; provided that the Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

19. The Debtors shall calculate quarterly fees under 28 U.S.C. section 1930(a)(6) based on the disbursements of each debtor, regardless of who pays those disbursements.

20. Nothing contained in the Motion or this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien or setoff right, in favor of any person or entity, that existed as of the Petition Date.

21. Nothing contained in the Motion or this Interim Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Interim Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Interim Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

22. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

23. Notwithstanding anything in this Interim Order or the Motion, any bank accounts held by non-Debtor affiliate Malaby Insurance, Inc. shall not be included in the definition of Bank as provided in the Motion, and shall not be subject to the terms of this Interim Order.

24. Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

25. The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003.

26. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

27. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

28. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

29. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**Dated: August 31st, 2023**  
**Wilmington, Delaware**

**THOMAS M. HORAN**  
**UNITED STATES BANKRUPTCY JUDGE**