# EXHIBIT A

**DIP Term Sheet**

# AMERIFIRST FINANCIAL, INC.
# BINDING DIP TERM SHEET DATED AUGUST 28, 2023[1]

| | |
|---|---|
| **Borrowers:** | AmeriFirst Financial, Inc. as debtor-in-possession (the "Debtor") |
| **DIP Credit Facility:** | Maximum available on entry of the Interim Order: $2,775,000<br>Maximum available upon entry of the Final Order: $5,000,000<br><br>The DIP Credit Facility is a senior secured, superpriority term loan facility.<br><br>Amounts repaid under the DIP Credit Facility may be reborrowed consistent with the Approved Budget. |
| **DIP Lenders:** | RCP Credit Opportunities Fund Loan SPV (Fund III), L.P., RCP Customized Credit Fund (Fund IV-A), L.P. ("DIP Lenders") |
| **Agent:** | RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. ("DIP Agent") |
| **Interest Rate:** | Non-default: SOFR plus 2.0%, which shall be accrued and payable upon maturity of the DIP Loans<br>Default: SOFR plus 4.5% payable in cash monthly in arrears. |
| **Fees** | 50 bps on total facility size and 50 bps on unused committed amounts, both of which shall be accrued and payable upon maturity of the DIP Loans. |
| **Maturity and Repayment:** | The DIP Loans shall mature on the earliest of (unless extended in writing by the DIP Agent): (i) November 30, 2023; (ii) the effective date or the date of the substantial consummation (as defined in section 1102(2) of the Bankruptcy Code) of a Plan of Reorganization that has been confirmed by an order of the Bankruptcy Court; (iii) the date the Bankruptcy Court orders the conversion of the Chapter 11 Case of the Debtor or the chapter 11 case of Phoenix 1040, LLC to a liquidation under Chapter 7 of the Bankruptcy Code; (iv) the date of consummation of a sale or other disposition of all or substantially all of the assets of the Debtor under section 363 of the Bankruptcy Code or otherwise; (v) the date the Bankruptcy Court orders the dismissal of the Chapter 11 Case or the chapter 11 case of Phoenix 1040, LLC; (vi) the date of acceleration of the DIP Loans, including as a result of the occurrence and continuance of an Event of Default; and (vii) the date that is 35 calendar days after the Petition Date if the Final Order shall not have been entered by such date.<br><br>Upon the maturity of the DIP Loans, the Debtor shall repay to the DIP Agent for the ratable account of the DIP Lenders the aggregate principal amount of all DIP Loans outstanding on such date, together with all accrued and unpaid interest on the principal amount of the DIP Loans (to be paid to but excluding the date of such payment) and all fees and expenses and other obligations payable under the DIP Facility (together, the "DIP Obligations"). |

---

[1] Capitalized terms not defined herein have the meaning set forth in the proposed Interim Order.

| | |
|---|---|
| **Use of Proceeds:** | The proceeds of the DIP Loans shall be applied strictly in accordance with the Approved Budget (subject to the Permitted Variance), including, without limitation, to the extent authorized by the Bankruptcy Court, to pay the prepetition accrued wages specified in the Initial Budget (subject to the Permitted Variance).<br><br>No part of the proceeds of any DIP Loan, the Cash Collateral, or any other of the Collateral will be used:<br><br>(i) for any purpose that is prohibited under the Bankruptcy Code or the Interim or the Final Order; or<br>(ii) to investigate, commence, prosecute, or finance in any way (or reimburse for expenses incurred or to be incurred in connection with) any action, suit, arbitration, proceeding, application, motion, objection or other litigation adverse to the interests of the DIP Agent and the DIP Lenders, including to commence or prosecute or join in any action against the DIP Agent or the DIP Lenders with respect to or related to:<br>(A) the claims, liens or security interest of the DIP Agent and the DIP Lenders, or their respective rights and remedies under the Interim Order or the Final Order, as the case may be, including to commence or prosecute or join in any action against the DIP Agent or the DIP Lenders seeking (x) to avoid, subordinate or recharacterize the DIP Obligations, (y) any monetary, injunctive or other affirmative relief against the DIP Agent or the DIP Lenders or (z) to prevent or restrict the exercise by the DIP Agent or the DIP Lenders of any of their respective rights or remedies under the Interim Order or the Final Order,<br>(B) any claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness or obligations that are subjects of the releases set forth in the Interim Order and the Final Order,<br>(C) the stipulations to be made by the Debtor and approved by the Final Order; or<br>(D) any other action which with the giving of notice or passing of time would result in an Event of Default as described below; or<br>(iii) to investigate, commence, prosecute, or finance in any way (or reimburse for expenses incurred or to be incurred in connection with) any action, suit, arbitration, proceeding, application, motion, objection or other litigation adverse to the interests of the Prepetition Agent or the Prepetition Lenders, including to commence or prosecute or join in any action against the Prepetition Agent or the Prepetition Lenders with respect to or related to the claims, liens or security interest of the Prepetition Agent and the Prepetition Lenders, or their respective rights and remedies under the Interim Order or the Final Order, as the case may be, or the Prepetition Loan Documents, including to commence or prosecute or join in any action against the Prepetition Agent or the Prepetition Lenders seeking (x) to avoid, subordinate or recharacterize the Prepetition Obligations, (y) any monetary, injunctive or other affirmative relief against the Prepetition Agent or the Prepetition Lenders or (z) to prevent or restrict the exercise by the Prepetition Agent or the Prepetition Lenders of any of their respective rights or remedies under the Interim Order or the Final Order, as the case may be, or, to the extent authorized by the Interim Order or the Final Order, under the Prepetition Loan Documents ; <u>provided, however</u>, that up to $50,000 in the aggregate of the proceeds of any DIP Loan or cash collateral may be used solely by any statutory committee appointed in the Chapter 11 Case to investigate, but not to commence, prosecute or finance litigation, with respect to the foregoing. |

| | |
|---|---|
| **Budget** | Following delivery of the Initial Budget, not later than the last Business Day of the last full calendar week of each month (or earlier with respect to the budget to be attached to the Final Order) (the "Updated Budget Deadline"), the Debtor shall provide the DIP Agent with an updated budget (each such update which is approved in accordance with the terms hereof, an "Updated Budget"), prepared by management of the Debtor in consultation with the DIP Agent covering a 13-week period that commences with the Updated Budget Deadline, consistent with the form and level of detail set forth in the Initial Budget.  Each Updated Budget shall be, in each case, subject to the written approval of the DIP Agent (in its sole discretion).  As used herein, the "Approved Budget" shall mean (i) initially, the Initial Budget and (ii) thereafter, upon (and subject to) the approval of any Updated Budget by the DIP Agent, such Updated Budget. |
| **Budget Variance** | Commencing on Friday, September 8, 2023, and on each Friday thereafter, the Debtor shall provide a weekly variance report to the DIP Agent showing actual receipts (if any) and actual disbursements compared against the projected receipts (if any) and projected disbursements in the Approved Budget through the last Business Day of the prior week (each, a "Budget Variance Test Date").  The Debtor shall not permit:<br><br>(a) the sum of the actual aggregate operating disbursements of the Debtor for the four weeks (or lesser period if applicable) ending immediately prior to such Budget Variance Test Date (the "Budget Variance Test Period") to be greater than 110% of the aggregate amount set forth for the line item in the Approved Budget entitled "Total Operating Disbursements" for such Budget Variance Test Period (the "Permitted Variance"); or<br><br>(b) the sum of the actual disbursements of fees incurred by professionals of any unsecured creditors committee in the Chapter 11 Case and of the Debtor ending immediately prior to such Budget Variance Test Date to be greater than the amount set forth for the line item in the Approved Budget under "Non-Operating Disbursements" for such Budget Variance Test Period.<br><br>To the extent that any Budget Variance Test Period encompasses a period that is covered in more than one Approved Budget, the applicable weeks from each applicable Approved Budget shall be utilized in making the described above. |

3

| | |
|---|---|
| **Conditions of Borrowing** | The following shall each be true as the date of any Credit Extension:<br><br>(a) (i) All Chapter 11 Orders filed or to be filed with, and submitted to, the Bankruptcy Court shall be in form and substance reasonably acceptable to the DIP Agent.<br>(ii) Each Chapter 11 Order that has been entered as of such date shall be in full force and effect and shall not have been vacated, reversed, modified, amended or stayed without the written consent of the DIP Agent.<br>(iii) The Debtor shall be in compliance in all material respects with the Interim Order and the Final Order, as applicable, and each other Chapter 11 Order.<br>(b) The DIP Agent shall have received a Request for Credit Extension in accordance with the requirements hereof.<br>(c) All engagement letters or other agreements providing for the payment of the fees and expenses of the Debtor's proposed professional advisors shall be in form and substance reasonably satisfactory to the DIP Agent.<br><br>The effectiveness of the DIP Credit Facility and the obligation of the DIP Lenders to fund the Initial Loans shall be subject to the satisfaction or waiver of the following conditions precedent:<br><br>(a) The Interim Order (i) shall have been entered by the Bankruptcy Court and (ii) shall be in full force and effect and shall not (in whole or in part) have been reversed, modified, amended, stayed, or vacated, absent prior written consent of Agent.<br>(b) All orders entered by the Bankruptcy Court pertaining to cash management and adequate protection, shall, and all other motions and documents filed or to be filed with, and submitted to, the Bankruptcy Court in connection therewith shall be in form and substance reasonably satisfactory to the DIP Agent.<br>(c)(i) No trustee, examiner or receiver shall have been appointed or designated with respect to the Debtor or its business, properties or assets, and (ii) no order shall be entered by the Bankruptcy Court dismissing the Chapter 11 Case or any other relief authorizing any third party to exercise control over the bankruptcy estate of the Debtor or any Collateral with an aggregate fair market value in excess of $100,000 with respect to all such motions.<br>(d) The DIP Agent shall have received the Initial Budget and such other information (financial or otherwise) regarding the Initial Budget as the DIP Lenders or the DIP Agent may reasonably request.<br>(e) Subject to Bankruptcy Court approval, the Debtor shall have the corporate power and authority to make, deliver and perform their obligations under the Interim Order.<br><br>The obligation of the DIP Lenders to fund loans subsequent to the Initial Loans shall be subject to the satisfaction or waiver of the following conditions precedent:<br><br>(a) The Final Order (i) shall be in form and substance satisfactory to the Agent, (ii) shall have been entered by the Bankruptcy Court within a date which is 35 days following the Petition Date, and (iii) shall be in full force and effect and shall not have been modified or amended absent prior written consent of the DIP Agent or reversed, modified, amended, stayed, or vacated, absent the prior written consent of the DIP Agent.<br>(b) The Debtor shall be in compliance with each order entered in the Chapter 11 Case, including the Interim Order, and following entry of the Final Order, the Final Order.<br>(c) The Debtor shall be in compliance with the Approved Budget (subject to the Permitted Variance).<br>(d) All orders entered by the Bankruptcy Court pertaining to cash management and adequate protection, shall, and all other motions and documents filed or to be filed with, and submitted to, the Bankruptcy Court in connection therewith shall be in form and substance reasonably satisfactory to the DIP Agent. |

4

| | |
|---|---|
| | (e)(i) No trustee, examiner or receiver shall have been appointed or designated with respect to the Debtor or its business, properties or assets, and (ii) no order shall be entered by the Bankruptcy Court dismissing the Chapter 11 Case or any other relief authorizing any third party to exercise control over the bankruptcy estate of the Debtor or any Collateral with an aggregate fair market value in excess of $100,000 with respect to all such motions, and no motion or application shall have been filed with respect to the foregoing other than a motion that is being contested by the Debtor in good faith.<br>(f) The DIP Agent shall have received the Initial Budget and such other information (financial or otherwise) regarding the Initial Budget as the DIP Lenders or the DIP Agent may reasonably request. |
| **Roll-up** | Subject to entry of the Final Order, an amount of the loans under the prepetition credit facility (the "Prepetition Loans") provided to the Debtor by the Prepetition Lenders (which entities are also the DIP Lenders) shall be rolled up, and converted into DIP Obligations secured by the DIP Liens ratably with the DIP Loans in an amount equal to the sum of (x) the amounts advanced to Phoenix 1040, LLC immediately prior to the Petition Date to fund the retention of professionals and premiums for director and officer liability insurance (the "Prepetition Protective Advances"); and (y) 100% of the aggregate amount of Cash Collateral used by the Debtor and DIP Loans advanced pursuant to the Interim Order and the Final Order. |
| **Perfection and Enforceability of Prepetition Obligations and Liens** | Subject to entry of the Final Order, the Debtor stipulates that the Prepetition Loans and other obligations of the Debtor (the "Prepetition Obligations") under that certain *Amended and Restated Credit and Security Agreement*, dated as of May 15, 2023, and the Loan Documents (as defined therein) (the "Prepetition Loan Documents"), constitute legal, valid, binding, and non-avoidable obligations of the Debtor in accordance with the respective terms of the relevant Prepetition Loan Documents, and no portion of the Prepetition Obligations or any payment made to the Prepetition Lenders or applied to or paid on account thereof prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is defined in the Bankruptcy Code), cause of action including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law. The Prepetition Protective Advances shall be deemed "Protective Advances" under the Prepetition Loan Documents.<br><br>Subject to entry of the Final Order, the Debtor stipulates that, as of the Petition Date, pursuant to the Prepetition Loan Documents, the Debtor granted for the benefit of the Prepetition Lenders, a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on (the "Prepetition Liens") substantially all of their assets and property as set forth in the Prepetition Loan Documents (the "Prepetition Collateral"), subject only to any liens permitted by the Prepetition Loan Documents to be senior to the Prepetition Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "Prepetition Permitted Senior Liens"). |

5

| | |
|---|---|
| **Challenge Period** | The Debtor's stipulations, admissions, agreements and releases contained in the Final Order shall be binding upon the Debtor in all circumstances and for all purposes.  The Debtor's stipulations, admissions, agreements and releases contained in the Final Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Case and any other person or entity acting or seeking to act on behalf of the Debtor's estate, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtor, in all circumstances and for all purposes unless: (a) (x) such committee or other party in interest with requisite standing has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein) by no later than the later of (x) 21 calendar days after entry of the Final Order and (y) if a chapter 7 or a chapter 11 trustee is appointed or elected prior to the end of the Challenge Period (as defined below), the Challenge Period solely for any such chapter 7 trustee or chapter 11 trustee shall be extended to the date that is the later of (A) 21 calendar days after entry of the Final Order, or (B) the date that is 30 calendar days after their appointment; or any such later date as has been agreed to in writing by the Prepetition Lenders or has been ordered by the Court for cause upon a motion filed and served within any applicable period (the time period established by the foregoing clauses (x)-(z) the "Challenge Period"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens, or (B) asserting or prosecuting any avoidance action or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Challenges") against the Prepetition Lenders in connection with or related to the Prepetition Loan Documents, the Prepetition Loans, the Prepetition Liens, or the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge; provided, however, that any pleadings filed in connection with a Challenge shall set forth with specificity the basis for such Challenge and any Challenges not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred.  If no Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such Challenge, then: (1) the Debtor's stipulations, admissions, agreements and releases contained in the Final Order shall be binding on all parties in interest; (2) the obligations of the Debtor under the Prepetition Loan Documents shall constitute allowed claims not subject to defense avoidance, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in this case and any Successor Case; (3) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, including any statutory or non-statutory committees appointed or formed in the Chapter 11 Case or any other party in interest acting or seeking to act on behalf of the Debtor's estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory committees appointed or formed in the Chapter 11 case or any other party acting or seeking to act on behalf of the Debtor's estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, whether arising under the Bankruptcy Code or otherwise, against any of Prepetition Lenders shall be deemed forever waived, released and barred. If any Challenge is timely filed during the Challenge Period, the |

| | |
|---|---|
| | stipulations, admissions, agreements and releases contained in the Final Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in the Final Order will vest or confers on any person or entity (each as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in the Chapter 11 Case, standing or authority to pursue any claim or cause of action belonging to the Debtor or its estate, including, without limitation, any Challenges with respect to the Prepetition Loan Documents, Prepetition Loans or Prepetition Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay confirmation of any plan of reorganization in the Chapter 11 Case. |
| **Waiver/Modification of the Automatic Stay** | The Interim Order and the Final Order shall include a customary waiver/modification of the automatic stay to permit the DIP Agent and the DIP Lenders to take all actions as are necessary or appropriate to implement the terms of the Interim Order and the Final Order. The automatic stay shall be modified to the extent necessary to permit the DIP Agent on behalf of the DIP Lenders to take any action necessary or appropriate to perfect the liens of the DIP Lenders on the DIP Collateral and the Collateral. |
| **Adequate Protection** | Pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, as adequate protection of their respective interests in the Prepetition Collateral for the aggregate diminution in value of such interests (including from the amount of any Cash Collateral used by the Debtor) (the "Diminution in Value") (if any) and as an inducement to the Prepetition Lenders to consent to the use of their Cash Collateral, the Prepetition Lenders are granted the following Adequate Protection (collectively, the "Adequate Protection Obligations"), subject to and junior in all respects to the DIP Obligations and the Carve-Out:<br><br>(i)  The Prepetition Lenders, effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition Lenders' Diminution in Value (if any) upon all of the DIP Collateral, subject to and junior in all respects to the DIP Liens (as defined below) and the Carve-Out; and<br><br>(ii)  The Prepetition Lenders shall be granted allowed superpriority administrative expense claims against the Debtor (without the need to file any proof of claim) on account of the Prepetition Lenders' Diminution in Value (if any) under section 507(b) of the Bankruptcy Code (the "Prepetition Lender 507(b) Claims"), which Prepetition Lender 507(b) Claims shall be payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding avoidance actions, but including upon entry of the Final Order, without limitation, proceeds of avoidance actions). Except as otherwise provided in the Interim Order or the Final Order and subject to and junior in all respects to the DIP Superpriority Claims (as defined below) and the Carve-Out, the Prepetition Lender 507(b) Claims shall have priority over any and all administrative expenses and all other claims against the Debtor now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. |

7

| | |
|---|---|
| **Collateral:** | As security for the DIP Obligations, effective and automatically properly perfected on the date the Interim Order is entered, and without the necessity of execution, recordation or filing of any perfection document or instrument, or the possession or control by the DIP Agent of, or over, any Collateral, without any further action by the DIP Lenders, the following valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens (the "DIP Liens") will be granted to the DIP Agent for the benefit of the DIP Lenders (all property identified below being collectively referred to as the "DIP Collateral," and, together with the Prepetition Collateral, the "Collateral"), subject to and junior in all respects to the Carve-Out: <br><br> *Liens on Unencumbered Property* <br><br> Pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in (subject only to the Carve-Out) all tangible and intangible prepetition and postpetition property of the Debtor whether existing on the Petition Date or thereafter acquired, including, without limitation, the Debtor's mortgage servicing rights (to the extent such rights are unencumbered property) and the proceeds, products, rents, and profits thereof, that, on or as of the Petition Date, is not subject to (i) a valid, perfected and non-avoidable lien or (ii) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, other than avoidance actions and the Carve-Out (and any amounts held therein), but including, upon and subject to entry of the Interim Order, proceeds of avoidance actions (collectively, the "Unencumbered Property"). <br><br> *Liens Junior to Certain Other Liens on Encumbered Property* <br><br> Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all tangible and intangible prepetition and postpetition property of the Debtor that, on or as of the Petition Date, is subject to and junior in all respects to the Prepetition Liens and the liens or security interests permitted under the Prepetition Loan Documents (i.e., the Prepetition Permitted Senior Liens), which Collateral (the "Encumbered Property") shall be subject to such Prepetition Liens and Prepetition Permitted Senior Liens. <br><br> For the avoidance of doubt, the valid and enforceable interests of providers of warehouse credit facilities in mortgage loans and related documents existing as of the Petition Date (the "Prepetition Warehoused Mortgage Loans Collateral") shall be deemed Prepetition Permitted Senior Liens and the Prepetition Warehoused Mortgage Loans Collateral shall be deemed Encumbered Property. |
| **DIP Superpriority Claims** | The DIP Obligations shall be superpriority administrative expense claims against the Debtors (without the need to file any proof of claim) under section 507(b) of the Bankruptcy Code entitled to superpriority status senior to the Prepetition Lender 507(b) Claims, as set forth in the Interim Order and the Final Order (the "DIP Superpriority Claims"). |
| **Carve-Out:** | As to be provided in the Interim Order and Final Order |

8

| | |
|---|---|
| **Events of Default:** | (b)    Failure to pay or prepay principal or interest within three (3) business days after the same becomes due.<br>(c)    Failure to perform or observe any other term, covenant or agreement described herein and such failure continue for fifteen (15) days after receipt by the Debtor of written notice thereof.<br>(d)    Any final judgment or order is entered against the Debtor for the payment of money in excess of $100,000 and such judgment or order shall not have been satisfied, vacated, discharged or stayed or bonded pending appeal for a period of (60) days.<br>(e)    The Interim Order or the Final Order shall for any reason cease to create, or shall be asserted by the Debtor not to create, a valid and perfected lien on and security interest in the Collateral with the priority required herein.<br>(f)    Any Change in Control.<br>(g)    The Final Order shall not have been entered by the Bankruptcy Court on or before the date that is 35 days following the Petition Date, which Final Order shall be in full force and effect and shall not have been reversed, modified, amended, stayed, or vacated.<br>(h)    The Chapter 11 Case or the chapter 11 case of Phoenix 1040, LLC shall be dismissed or the Bankruptcy Court shall have made a ruling requiring the dismissal of the Chapter 11 Case or the chapter 11 case of Phoenix 1040, LLC , suspended or converted it to a case under chapter 7 of the Bankruptcy Code, or the Debtor shall file any pleading requesting any such relief; or a motion shall be filed by the Debtor for the approval of, or there shall arise, (x) any other claim having priority senior to or *pari passu* with the claims of the DIP Agent and the DIP Lenders or any other claim having priority over any or all administrative expenses of the kind specified in clause (b) of Section 503 or clause (b) of Section 507 of the Bankruptcy Code (other than the Carve-Out)or (y) any Lien on the Collateral having a priority senior to or *pari passu* with the Liens and security interests granted in the Interim Order or the Final Order, except as expressly provided herein and in the Interim Order or the Final Order, as applicable.<br>(i)    The Debtor shall file a motion in the Chapter 11 Case to obtain additional or replacement financing from a party other than DIP Lenders under Section 364(d) of the Bankruptcy Code or to use Cash Collateral of a DIP Lender under Section 363(c) of the Bankruptcy Code, except to the extent any such financing shall provide for the payment in full in cash of the DIP Obligations and the obligations under the Prepetition Loan Documents.<br>(j)    The Debtor shall file a motion seeking, or the Bankruptcy Court shall enter, an order (A) approving payment of any prepetition claim other than (x) as provided for in (i) the First Day Orders or Second Day Orders or (ii) the Approved Budget or (y) otherwise consented to by the DIP Agent on behalf of the DIP Lenders in writing, (B) granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to any holder of any security interest to permit foreclosure on any assets with a fair market value in excess of $100,000; or (C) approving any settlement or other stipulation not approved by the DIP Agent on behalf of the DIP Lenders in writing with any secured creditor providing for payments as adequate protection or otherwise to such secured creditor.<br>(k)    An order shall be entered by the Bankruptcy Court without the express prior written consent of the DIP Agent on behalf of the DIP Lenders (i) to revoke, reverse, stay, modify, supplement, vacate or amend the Interim Order or the Final Order in a manner inconsistent with this term sheet in a manner adverse to the DIP Lenders, (ii) to permit any administrative expense or any claim (now existing or hereafter arising, of any kind or nature whatsoever) to have administrative priority equal or superior to the priority of the DIP Loans (other than the Carve-Out); or (iii) to grant or permit the grant of a Lien on the Collateral.<br>(l)    An application for any of the orders described in clauses (h), (i), (j), (k), (n) and (r) shall be made by a Person other than the Debtor, and such application is not |

9

| | |
|---|---|
| | contested by the Debtor in good faith or any Person obtains a non-appealable final order charging any of the Collateral under section 506(c) of the Bankruptcy Code against the DIP Lenders or obtains a final order adverse to the DIP Lenders.<br>(m)  The Debtor shall fail to comply with the terms and conditions of the Interim Order or the Final Order in any material respect, and such failure is not cured within two (2) Business Days of knowledge or notice thereof.<br>(n)  The Bankruptcy Court shall enter order appointing a trustee under Chapter 7 or Chapter 11 of the Bankruptcy Code, or a responsible officer or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in subclauses (3) and (4) of clause (a) of Section 1106 of the Bankruptcy Code) under clause (b) of Section 1106 of the Bankruptcy Code in the Chapter 11 Case or the chapter 11 case of Phoenix 1040, LLC or the Debtor shall file, or support, any pleading seeking such relief.<br>(o)  The entry of an order by the Bankruptcy Court terminating or modifying the exclusive right of the Debtor to file a Plan of Reorganization pursuant to section 1121 of the Bankruptcy Code, without the prior written consent of the DIP Agent on behalf of the DIP Lenders.<br>(p)  The Debtor shall support (in any such case by way of any motion or other pleading filed with the Bankruptcy Court or any other writing to another party-in-interest executed by or on behalf of the Debtor) any other Person's opposition of any motion made in the Bankruptcy Court by or on behalf of the DIP Lenders seeking confirmation of the amount of the DIP Lenders' claim or the validity and enforceability of the Liens in favor of the DIP Agent.<br>(q)  (A) The Debtor shall seek to, or shall support (in any such case by way of any motion or other pleading filed with the Bankruptcy Court or any other writing to another party-in-interest executed by or on behalf of the Debtor any other person's motion to, disallow in whole or in part the DIP Lenders' claim in respect of the Obligations or to challenge the validity and enforceability of the Liens in favor of the DIP Agent or contest any material provision of any Loan Document, (B) the Debtor shall attempt to invalidate, reduce or otherwise impair the Liens or security interests of the DIP Agent or the DIP Lenders or to subject any Collateral to assessment pursuant to section 506(c) of the Bankruptcy Code, (C) any Liens on the Collateral and/or super-priority claims shall otherwise, for any reason, cease to be valid, perfected and enforceable in all respects, (D) any action is commenced by the Debtor that contests the validity, perfection or enforceability of any of the Liens and security interests of the DIP Agent or the DIP Lenders created by the Interim Order or the Final Order, or (E) any material provision of the Interim Order or the Final Order shall cease to be effective.<br>(r)  Any judgments which are in the aggregate in excess of $100,000 as to any postpetition obligation shall be rendered against the Debtor and the enforcement thereof shall not be stayed.<br>(s)  An order shall be entered by the Bankruptcy Court transferring venue of the Chapter 11 Case to any other court. |
| **Milestones:** | To be included in the Final Order. |

10

| **Waivers:** | Subject to entry of the Final Order, except to the extent of the Carve Out, no costs or expenses of administration of the Chapter 11 Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceeding under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent, and no consent shall be implied from any action, inaction or acquiescence by the DIP Agent or the DIP Lenders to any charge, lien, assessment or claims against the Collateral under section 506(c) of the Bankruptcy Code or otherwise. Further, effective upon entry of the Final Order, the Debtors shall waive and the Final Order shall prohibit marshalling of any of the Collateral or other interest of the DIP Lender or under any similar theory, and in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the DIP Lenders. |
|---|---|

**AGREED AS OF THE DATE FIRST WRITTEN ABOVE:**

**BORROWER:**

**AMERIFIRST FINANCIAL, INC.**

By: *[signature]* T. Scott Avila
Title: Chief Restructuring Officer

**DIP AGENT AND DIP LENDER:**

**RCP CREDIT OPPORTUNITIES FUND LOAN SPV (FUND III), L.P.**

_____
By: _____
Title: _____

**DIP LENDER**:

**RCP CUSTOMIZED CREDIT FUND LOAN SPV (FUND IV-A), L.P.**

_____
By: _____
Title: _____

**AGREED AS OF THE DATE FIRST WRITTEN ABOVE:**

**BORROWERS:**

**AMERIFIRST FINANCIAL, INC.**

By: _____
Name: _____
Title:

**DIP AGENT AND DIP LENDER:**

**RCP CREDIT OPPORTUNITIES FUND LOAN SPV (FUND III), L.P.**

By: Reverence Capital Partners Credit (Fund III) GP, LLC, its General Partner

By: _____
Name: Peter C. Aberg
Title: Member

**DIP LENDER:**

**RCP CUSTOMIZED CREDIT FUND LOAN SPV (FUND IV-A), L.P.**

By: RCP CUSTOMIZED CREDIT FUND (FUND IV) GP, LLC, its General Partner

By: _____
Name: Peter C. Aberg
Title: Member