**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| AMERIFIRST FINANCIAL, INC., *et al.*,[1] | ) | Case No. 23-11240 (TMH) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DECLARATION OF T. SCOTT AVILA
IN SUPPORT OF ADDITIONAL FIRST DAY MOTIONS**

I, T. Scott Avila, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1.      I am Chief Restructuring Officer ("CRO") of Debtor Phoenix 1040 LLC ("Phoenix") and Debtor AmeriFirst Financial, Inc. ("AmeriFirst", together with Phoenix, the "Debtors).  In such capacities, I have worked to become familiar with the Debtors' business, financial affairs, and day-to-day operations.

2.      I am authorized to submit this Declaration on behalf of the Debtors. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents, and information I have received from other members of the Debtors' management or the Debtors' advisors. If I were called upon to testify, I could and would testify competently to the facts set forth herein on that basis.

---

[1]   The Debtors and the last four (4) digits of their respective taxpayer identification numbers include: Phoenix 1040 LLC (2550) and AmeriFirst Financial, Inc. (4557). The Debtors' service address is 1550 McKelleps Road, Suite 117, Mesa, AZ 85203.

3.    I submit this Declaration in support of certain additional critical "first day" motions described below (collectively, the "First Day Motions") filed in these chapter 11 cases (the "Chapter 11 Cases").[2]  I am over the age of 18, competent to testify, and authorized to submit this Declaration on behalf of the Debtors.

**General Background**

4.    The Debtors commenced these Chapter 11 Cases on August 24, 2023 (the "Petition Date") to effectuate an orderly wind down of their lending platforms and sale of their related assets.

5.    On August 29, 2023, I submitted the *Declaration of T. Scott Avila in Support of First Day Motions* [Docket No. 20] (the "Initial Declaration").  The Initial Declaration described the Debtors' business, the circumstances surrounding the commencement of the Chapter 11 Cases, and certain critical motions necessary to stabilize the Debtors' business operations (the "Initial First Day Motions").  The Initial First Day Motions related to (a) the joint administration of the Chapter 11 Cases, (b) continuation of the Debtors' cash management system, (c) payment of employee wages, compensation and employee benefits programs, and (d) debtor in possession financing and use of cash collateral. On August 30, 2023, the Court held a hearing on the Initial First Day Motions and entered orders granting each of them.  The orders granting the Initial First Day Motions relating to operations and/or payment of prepetition amounts are interim orders subject to final approval from the Court.

6.    This Declaration describes certain additional critical First Day Motions that are also necessary to stabilizing and maintaining operations during the initial days of these Chapter 11 Cases.  These First Day Motions relate to (a) maintaining a consolidated creditor matrix with certain personally identifiable information, such as home addresses for individual creditors,

---

[2]   Capitalized terms used but not defined herein shall have the meanings set forth in the applicable First Day Motions.

2

redacted; (b) retention of a claims and noticing agent; (c) payment of certain taxes and fees; (d) payment of insurance obligations; and (e) procedures to provide adequate assurance to utility providers.

7.      For the reasons stated in the Initial Declaration and below, I believe that the relief requested in the First Day Motions is necessary to prevent imminent harm to the Debtors' estates.

## FIRST DAY MOTIONS

**I.      Administrative Motions**

**A.      Creditor Matrix Motion**

8.      Pursuant to the Creditor Matrix Motion, the Debtors seek entry of an order (a) authorizing the Debtors to (i) file a consolidated list of creditors in lieu of submitting a separate mailing matrix for each Debtor, (ii) file a consolidated list of the Debtors' thirty largest unsecured creditors in lieu of filing lists for each Debtor, and (iii) redact certain personally identifiable information for the Debtors' individual creditors.  The Debtors propose to retain Omni Agent Solutions ("Omni") as notice and claims agent in connection with the Chapter 11 Cases to assist the Debtors in preparing creditor lists and mailing initial notices.  With such assistance, the Debtors will be prepared to file a computer-readable, consolidated list of creditors upon request and will be capable of undertaking all necessary mailings.  Indeed, because the Debtors have thousands of creditors, converting the Debtors' computerized information to a format compatible with the matrix requirements would be an exceptionally burdensome task and would greatly increase the risk and recurrence of error with respect to information already intact on computer systems maintained by the Debtors or their agents.

9.      I believe that consolidation of the Debtors' computer records into a creditor database and mailing notices to all applicable parties in such database will be sufficient to permit

3

Omni to promptly notice those parties.  Maintaining electronic-format lists of creditors rather than preparing and filing separate matrices will maximize efficiency and accuracy and reduce costs.

10.     The Debtors also seek to authorization to redact from any paper filed or to be filed with the Court in the Chapter 11 Cases the home addresses of individuals—including the Debtors' employees and borrowers—and interest holders because such information could be used, among other things, to perpetrate identity theft or to locate survivors of domestic violence, harassment, or stalking.  I understand that Courts in this jurisdiction have granted relief similar to the relief requested herein in comparable chapter 11 cases.

11.     Accordingly, on behalf of the Debtors, I respectfully submit that the relief requested in the Creditor Matrix Motion should be granted.

**B.     Notice and Claims Agent Application**

12.     Pursuant to the Notice and Claims Agent Application, the Debtors are seeking authority to retain Omni as their Claims and Noticing Agent effective as of the Petition Date. Omni's duties will include assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in these Chapter 11 Cases. The terms of Omni's retention are set forth in the engagement agreement attached as <u>Exhibit 1</u> to the proposed order attached to the Notice and Claims Agent Application; *provided* that Omni is seeking approval solely of the terms and provisions as set forth in Notice and Claims Agent Application and the proposed order.

13.     The Debtors evaluated several potential candidates to serve as their Claims and Noticing Agent.  Following that review, and in consideration of the number of anticipated claimants and parties in interest, the nature of the Debtors' business, and the scope of tasks for which the Debtors will require the assistance of a Claims and Noticing Agent, the Debtors submit

that the appointment of Omni as Claims and Noticing Agent is both necessary and in the best interests of the Debtors' estates.

14.     I believe that the relief requested in the Notice and Claims Agent Application is in the best interests of the Debtors' estates, their creditors, and all other parties in interest, and will enable the Debtors to continue to operate their business in chapter 11 without disruption. Accordingly, on behalf of the Debtors, I respectfully submit that the Notice and Claims Agent Application should be approved.

## II.     Operational Motions Requesting Immediate Relief

### A.     Taxes and Fees Motion

15.     By the Taxes and Fee Motion, the Debtors request interim and final orders (a) authorizing the Debtors to remit and pay (or use tax credits to offset) Taxes and Fees (as defined herein) in the ordinary course of business that are payable or become payable during these Chapter 11 Cases (including any obligations subsequently determined upon audit or otherwise to be owed for periods prior to the Petition Date); and (b) granting related relief.

16.     In the ordinary course of business, the Debtors collect, withhold, and incur sales, use, and income taxes, as well as other governmental taxes, fees, and assessments (collectively, the "Taxes and Fees").  The Debtors pay or remit, as applicable, Taxes and Fees to various governmental authorities (each an "Authority" and collectively, the "Authorities") on a periodic basis (monthly, quarterly, semi-annually, annually, and on an ad hoc basis depending on the Debtors' reporting calendar), based on the nature and incurrence of a particular Tax or Fee and as required by applicable laws and regulations.  A schedule identifying the Authorities is attached to the Taxes and Fees Motion as Exhibit C.

5

17.     Any failure by the Debtors to pay the Taxes and Fees could materially disrupt the Debtors' business operations in several ways, including (but not limited to):  (a) the Authorities may initiate audits of the Debtors, which would unnecessarily divert the Debtors' attention from the Chapter 11 Cases; (b) the Authorities may attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, or pursue other remedies that will harm the estates; and (c) in certain instances, the Debtors' directors and officers could be subject to claims of personal liability, which would likely distract those key individuals from their duties related to the Debtors' restructuring.  Taxes and Fees not paid on the due date as required by law may result in fines and penalties, the accrual of interest, or both.  Accordingly, the Debtors seek authority to pay, in their reasonable discretion, the Taxes and Fees in the ordinary course as they become due.

18.     For the reasons set forth herein and expanded on in the Taxes and Fees Motion, on behalf of the Debtors, I respectfully submit that the relief requested in the Taxes and Fees Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest, and will enable the Debtors to continue to operate their businesses in the Chapter 11 Cases with minimal disruption, thereby maximizing value for the estates.

**B.     Insurance Motion**

19.     By the Insurance Motion, the Debtors seek entry of interim and final orders (i) authorizing, but not directing, the Debtors to continue their existing Insurance Policies (as defined below); (ii) authorizing, but not directing, the Debtors to pay certain (a) prepetition Insurance Obligations (as defined in the Insurance Motion), and (b) postpetition Insurance Obligations in the ordinary course of business; (iii) authorizing the Debtors to renew, amend, supplement, extend, or purchase and finance insurance policies in the ordinary course; and (iv) granting related relief.

6

20.     In the ordinary course of business, the Debtors are the beneficiaries of certain insurance policies (collectively, the "Insurance Policies," and each individually an "Insurance Policy") that provide coverage for, among other things, property, business automobile, general commercial liability, directors' and officers' liability, and workers' compensation liability. The Debtors obtain the Insurance Policies through various third-party insurance carriers (collectively, the "Insurance Carriers").  A list of the Insurance Policies is attached to the Insurance Motion as Exhibit C.  As part of maintaining their Insurance Policies in the ordinary course of business, the Debtors pay premiums and other obligations related thereto, including any broker or advisor fees, assessments, or other fees (collectively, the "Insurance Obligations").

21.     Continuation of the Insurance Policies, and entry into new insurance policies and related financing agreements, is essential to the preservation of the value of the Debtors' business and operations.  Moreover, in many instances, insurance coverage is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the Office of the United States Trustee's (the "U.S. Trustee") requirement that a debtor maintain adequate coverage given the circumstances of its chapter 11 case.  Accordingly, the Debtors request authorization, but not direction, to continue prepetition practices related to the Insurance Policies, satisfy prepetition obligations related thereto, and enter into new insurance policies and related financing arrangements, as applicable, in the ordinary course of business on a postpetition basis, subject to applicable law.

22.     In the ordinary course of business, the Debtors may provide surety bonds to certain parties to secure the Debtors' payment or performance of certain obligations (each a "Surety Bond").  These may include surety bonds required by state agencies to maintain licenses or the right to conduct business in a particular state directly or with third parties.  To continue their

7

business operations during the chapter 11 process, the Debtors must be able to provide financial assurance to state governments, government-sponsored enterprises, regulatory agencies, and third parties. This requires the Debtors to maintain any existing Surety Bonds, including satisfying any applicable obligations thereunder, renewing Surety Bonds, executing agreements, and related matters. Failing to provide, maintain, or replace Surety Bonds in a timely manner could prevent the Debtors from performing essential operations.

23.     Absent the authority requested in the Insurance Motion, the Debtors' business could be adversely impacted, to the detriment of the Debtors and their stakeholders. Accordingly, I believe the relief requested in the Insurance Motion is in best interest of the Debtors, their estates and their creditors, and will enable the Debtors to continue to operate their businesses in the chapter 11 cases with minimal disruption, thereby maximizing value for the estates.

### C.      Utilities Motion

24.     By the Utilities Motion, the Debtors seek entry of interim and final orders (i) approving the Debtors' proposed form of adequate assurance of payment to the Utility Companies (as defined in the Utilities Motion); (ii) establishing procedures for resolving objections by Utility Companies relating to the adequacy of the proposed adequate assurance provided by the Debtors; (iii) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or discriminating against, the Debtors on the basis of the commencement of these chapter 11 cases or any outstanding prepetition debts; (iv) scheduling a final hearing; and (v) granting related relief.

25.     The Debtors receive essential utility services from several Utility Companies. By the Utilities Motion, the Debtors seek to minimize disruption of utility services to their operations and ensure a smooth transition into chapter 11. Specifically, the Debtors request approval of the

form of adequate assurance of payment they will provide to their utility providers, a deposit, and procedures to resolve any dispute that may arise relating to the adequate assurance. The Debtors also request that the Court prohibit their utility providers from discontinuing or otherwise affecting the Debtors' services, subject to compliance with the proposed procedures.

26.     In order to maintain ongoing business operations, it is imperative that the Debtors are able to rely on a consistent supply of the utility services. I believe these measures will ensure that the Debtors maintain essential utility services to their facilities at this critical juncture in their chapter 11 cases and prevent irreparable harm to the Debtors' estates. For these reasons, and as more fully explained in the Utilities Motion I request that the Court grant the relief requested in the Utilities Motion.

## CONCLUSION

27.     I have reviewed each of the above First Day Motions. All of the facts set forth in the First Day Motions are true and correct to the best of my knowledge and belief based upon (a) my personal knowledge of the Debtors' operations and finances, (b) information learned from my review of relevant documents, (c) information supplied to me by other members of the Debtors' management team and the Debtors' advisors, and/or (d) my opinion based upon my knowledge and experience or information I have reviewed concerning the Debtors' operations and financial condition. Accordingly, the Debtors respectfully request that the relief requested in each of the First Day Motions be granted because such relief is a critical element in stabilizing and facilitating the Debtors' operations during the pendency of the Chapter 11 Cases.

28.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: September 6, 2023

*/s/ T. Scott Avila*
T. Scott Avila
Chief Restructuring Officer
AmeriFirst Financial, Inc.