**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| AMERIFIRST FINANCIAL, INC., *et al.*,[1] | Case No. 23-11240 (TMH) |
| Debtors. | (Jointly Administered) |
| | Re: D.I. 21 & 61 |

**EMERGENCY MOTION OF ERIC BOWLBY TO ADJOURN THE SEPTEMBER 18, 2023 HEARING AND SEPTEMBER 13, 2023 OBJECTION DEADLINE OF DEBTORS' MOTION FOR ENTRY OF A FINAL ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION FINANCING AND (B) TO UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Eric Bowlby ("Mr. Bowlby"), on behalf of himself and other displaced shareholders of debtor AmeriFirst Financial, Inc. ("AFI" and together with debtor Phoenix 1040, LLC ("Phoenix"), the "Debtors"), by and through his undersigned counsel, hereby submits this emergency motion (the "Motion to Adjourn") *ex parte*, pursuant to Bankruptcy Rule 9013, to adjourn the currently scheduled September 18, 2023 hearing and September 13, 2023 objection deadline of the Debtors' motion (the "DIP Motion") for a final order authorizing the Debtors to obtain postpetition financing [D.I. 21]. In support of the Motion to Adjourn, Mr. Bowlby respectfully states as follows: [2]

**BACKGROUND**

1. Mr. Bowlby respectfully incorporates all of the facts outlined in his previous

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Phoenix 1040 LLC (2550); and AmeriFirst Financial, Inc. (4557). The Debtors' service address in these chapter 11 cases is 1550 McKellips Road, Suite 117, Mesa, Arizona 85203.

[2] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the *Declaration of T. Scott Avila in Support of First Day Motions* [D.I. 20] (the "First Day Declaration"); the First Day Motions; and the *Preliminary Objection of Eric Bowlby to Debtors' First Day Motions* [D.I. 44] ("Preliminary Objection").

Preliminary Objection to the Debtors' First Day Motions, but highlights the following events that have occurred since then:

2.     On August 22, 2023, AFI issued a Notice of Default to Reverence Capital Partners ("RCP"), the parent company of lender companies RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. and RCP Customized Credit Fund (Fund IV-A), L.P., advising that RCP's actions had materially breached the Prepetition Credit Agreement previously executed on May 15, 2023 between the companies.  D.I. 44 at ¶ 11.  These actions include, but are not limited to: causing AFI to be dangerously undercapitalized by sweeping approximately $5,000,000 from AFI's bank account on May 25, 2023 despite AFI's protests; again unilaterally withdrawing $3,258,313 from AFI's bank account on June 29, 2023 over AFI's protests; and refusing to finance AFI's payroll obligations on August 5, 2023 and August 20, 2023.  *See id.* Ex. E.

3.     In response, on August 24, 2023 (the "Petition Date"), RCP issued its own Notice of Default, personally "delivered" that notice to AFI's corporate headquarters in Mesa, Arizona via a team of RCP agents and employees accompanied by armed guards, and took control of all of AFI's offices and operations.  RCP's alleged basis for doing so was that it was exercising its rights under a Pledge Agreement signed May 15, 2023, which would permit RCP to take control of AFI's shares, but only during an event of default as defined in the Prepetition Credit Agreement.  *Id.* ¶¶ 12-16.

4.     That same day, RCP transferred all of its rights to AFI's shares to Phoenix 1040, and used this purported control of AFI's shares to execute a series of AFI corporate resolutions expelling Mr. Bowlby and his father as the only directors of AFI's board, removing Mr. Bowlby and his executive team from AFI's leadership positions, and installing RCP's own agents in their stead.  *Id.* ¶¶ 17-22.  RCP installed its Financial Director, David Sloane, as Chairman of AFI's

board, Jeffrey Dane as an Independent Director, and T. Scott Avila ("Mr. Avila") as Chief Restructuring Officer ("CRO"), President, Treasurer, and Secretary (collectively with Mssrs. Sloane and Dane, "Current Management"). *Id.* ¶ 22.

5. On that same date, Current Management caused each of the Debtors to file a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Contemporaneously therewith, as part of the Debtors' First Day Motions, the Debtors filed the *Motion of the Debtors for Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protections to Prepetition Lenders, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [D.I. 21] (the "DIP Motion"), requesting a final order authorizing the Debtors to obtain postpetition financing, as well as the First Day Declaration of Mr. Avila.

6. On August 29, 2023, the Court held an initial status conference in which it set a hearing for the First Day Motions for the following afternoon, August 30, 2023, at 3:00 p.m. (ET) (the "First Day Hearing").

7. Accordingly, on August 30, 2023, Interested Party Mr. Bowlby filed a Preliminary Objection to the First Day Motions, including the DIP Motion.

8. At the First Day Hearing, counsel for Mr. Bowlby cross-examined Mr. Avila as to the measures he took in conducting due diligence and inquiring with other lenders as to DIP financing. At that time, Mr. Avila provided only cursory answers and failed to explain any details relating to the extent of his due diligence or how he negotiated terms with either RCP or other prospective lenders.

9. In light of Debtors' counsel's representations that AFI was in dire need of immediate financing to make payroll that week in order to prevent a mass employee exodus and

rapid deterioration of AFI's assets, the Court denied the objections of Mr. Bowlby's counsel without prejudice and approved temporary DIP financing for the amount of $2,775,000, reasoning that AFI was in dire need of funds to make payroll the following day, and that the Court would hear substantive objections to the DIP Motion at the final hearing on September 18, 2023 at 2:00 p.m. (ET) (the "<u>Final DIP Hearing</u>").

10. Although Current Management had orchestrated matters to oust Mr. Bowlby from his managing position at AFI, Mr. Bowlby has stayed on at AFI—without title or compensation—at Current Management's request in order to salvage the value of whatever assets AFI has remaining, as well as to protect his employees from further disruption.

11. At Current Management's request, Mr. Bowlby set up numerous calls with institutional investors and lenders, seeking to find buyers for assets in AFI's loan portfolio so that AFI could have liquidity to continue operating.

12. However, Mr. Avila has largely frustrated these efforts by refusing to provide even the bare minimum industry standard reps and warranties required to provide assurances to prospective buyers that the loans being sold are properly supported by the appropriate documentation—thus strongly implying that he intended for AFI to shut down instead of reorganize—which in turn doused those prospective buyers' interest and caused them to pull out of talks.

13. When queried by Mr. Bowlby as to why he would so intentionally either devalue the loans Mr. Bowlby was trying to sell, and/or entirely the sales entirely, Mr. Avila replied—in no uncertain terms—that he had been instructed by his patrons at RCP to refuse to provide any such reps and warranties.

14. As there was no legal or business reason for Mr. Avila to refuse to provide reps

and warranties for loans such as these, Mr. Bowlby can only surmise that the true rationale behind these marching orders was because RCP wished to have AFI's assets liquidated as quickly and cheaply as possible.

15. In the same fashion, Current Management has refused to permit AFI's previous warehouse[3] lender, Centier Bank, to fund AFI's pipeline loans, which are badly needed to provide AFI with ready funding for operations. Mr. Bowlby also found two other lenders ready and willing to finance AFI's pipeline loans, with The Money Source willing to pay a premium on such loans and Goldwater Bank even willing to "table fund"[4] AFI's pipeline loans *without the requisite reps and warranties*. Notwithstanding these extremely generous terms for a company in the midst of chapter 11 proceedings and subject to a secured creditor's second published—albeit unlawful—notice of default, Current Management still refused to permit AFI to secure such funding, thus ensuring that AFI will be doomed to liquidation instead of having any chance to emerge from its chapter 11 proceedings and resuming business as usual.

16. Additionally, on or about Tuesday, September 5, 2023, not even one week after the Court entered the Interim DIP Financing Order, Mr. Bowlby learned that Current Management had fired approximately 135 people (representing about 85% of AFI's workforce) via an overnight email, without notice or severance.

17. Moreover, as of the date of the filing of this Motion to Adjourn, which is approximately 24 hours from the objection deadline to the DIP Motion, an official committee of unsecured creditors (the "<u>Committee</u>") has not been formed.

---

[3] Warehouse financing lines are the lifeblood of the mortgage servicing industry; a large portion of AFI's revenue stream consisted of utilizing these lines of credit to finance the cash needed to fund AFI-brokered loans, selling said loans on the secondary market, and collecting origination fees.

[4] In simplest terms, table funding typically refers to a transaction in which the funder (here, Goldwater Bank) both funds and immediately buys the loan from the originator (AFI) upon closing, thus minimizing the risk to the originator while ensuring payment of the origination fee.

**ARGUMENT**

18. The Court has the authority under Bankruptcy Rule 9006(b)(1), upon a showing of "cause," to extend the minimum notice provisions set forth in the Bankruptcy Rules.

19. "Cause" exists here because minimum standards of due process and fundamental fairness require that parties in interest be afforded more than thirteen business days to evaluate the complex, as well as potentially prejudicial and/or case-dispositive relief sought by the DIP Motion, in a case where there exist serious questions as to whether the DIP Motion was filed without the CRO and Current Management having first conducted the requisite due diligence to select RCP as the DIP lender. This is particularly subject to scrutiny, given that:

   a. Mr. Avila was installed as CRO of Phoenix 1040—itself an RCP-controlled entity—on August 21, 2023, only three days before the Petition Date and installed as CRO of AFI on August 24, 2023, the very same day he initiated these chapter 11 proceedings, despite admitting on the record at the First Day Hearing that he had not reviewed AFI's books and records until his installation therein;

   b. The Debtors filed their First Day Motions—including the DIP Motion—on August 29, 2023, only three business days after Mr. Avila took over AFI's helm [*see, e.g.,* D.I. 21];

   c. Mr. Avila testified that he was interviewed for the position of AFI's CRO by Mr. Dane, the "Independent Director" of AFI, despite the fact that RCP did not install Mr. Dane as AFI's Independent Director until August 24, 2023, the very same day as Mr. Avila;

   d. Mr. Avila's First Day Declaration contained only a cursory statement that "[f]ollowing arms-length negotiations, the Debtors . . . reached agreement with [RCP] as

"DIP Lenders" on the terms of debtor in possession financing and use of cash collateral." [D.I. 20 at ¶ 13];

   e. Mr. Avila's testimony at the First Day Hearing as to the extent of his due diligence for seeking out DIP lenders was similarly cursory in nature—he testified only that he spoke with three other potential lenders, but did not explain how far those discussions went, the method and measure with which he evaluated those lenders as viable options, or whether he performed any research to determine whether other lenders might be more appropriate.

20. Given the litany of dubious circumstances under which Mr. Avila was installed as CRO and selected his patron RCP as DIP lender for AFI, and that the Debtors are currently seeking a final order within a mere twenty-one days of the Petition Date, this warrants extension of the minimum notice provisions set forth in the Rules in order to permit all interested parties to conduct appropriate discovery pertaining to the well-founded concerns as to the methodology, diligence, and impartiality that Mr. Avila employed in this regard.

21. Second, given that Current Management has further terminated the employment of over 85% of AFI's workforce, most if not all without any severance, it does not appear that AFI is in the same dire straits that RCP placed it in pre-petition. Payroll has presumably been slashed to a bare minimum, the Court had previously authorized up to $2,775,000 of interim DIP financing, and Current Management has steered AFI into liquidating a significant portion of its assets. Accordingly, an adjournment will not prejudice the Debtors' operations because the Debtors now have little to no operations to speak of.

22. Finally, and most importantly, the Committee has yet to be formed. As this Court is aware, the Committee is a vital fiduciary and it is standard practice for such Committee to be

afforded at least fourteen days to consider the relief requested in the DIP Motion and take necessary discovery from those parties involved. At present, the Committee would have less than twenty-four hours to object, and three business days to prepare for what should be a contested hearing.

## CONCLUSION

For the foregoing reasons, Mr. Bowlby respectfully requests the entry of an order, substantially in the form attached hereto, (i) continuing the hearing of the Debtors' DIP Motion from September 13, 2023 to October 2, 2023 at 11:00 a.m. ET or such other time as is convenient to the Court ; (ii) preserving all rights asserted by any party in a timely filed objection until the Court hears the DIP Motion; and (iii) granting such other relief as is just.

Dated: September 12, 2023
Wilmington, Delaware

**PASHMAN STEIN WALDER HAYDEN, P.**C

*/s/ William R. Firth, III*
William R. Firth, III (No. 4356)
Joseph C. Barsalona II (No. 6102)
1007 North Orange Street, 4th Floor, #183,
Wilmington, DE 19801
Telephone: (302) 592-6497
Facsimile: (201) 488-5556
Email: wfirth@pashmanstein.com
jbarsalona@pashmanstein.com

*Counsel to Eric Bowlby, on behalf of himself and other displaced shareholders of AmeriFirst Financial, Inc.*