**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMERIFIRST FINANCIAL, INC., *et al.*,[1] | Case No. 23-11240 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: TBD** |
| | **Objection Deadline: TBD** |

**UNITED STATES TRUSTEE'S MOTION TO TRANSFER VENUE**

Andrew R. Vara, the United States Trustee for Region 3 ("U.S. Trustee"), through his counsel, files this *Motion to Transfer Venue* (the "Motion") in the interests of justice. In support thereof, the U.S. Trustee states:

**PRELIMINARY STATEMENT**

1. These cases should be transferred to the United States Bankruptcy Court for the District of Arizona (the "Arizona Bankruptcy Court") in the interest of justice because Debtors have abused the bankruptcy system. Venue in this jurisdiction is based solely on Debtor Phoenix 1040 LLC's ("Phoenix") incorporation in Delaware on June 28, 2023, 57 days before the bankruptcy filing. Arizona Debtor AmeriFirst Financial, Inc.'s ("AFI") stock was transferred to Phoenix hours -- if not minutes -- prior to the filing. Phoenix filed first, basing its venue choice on its state of incorporation. AFI filed next, basing its venue choice on the forum of an affiliated entity that was created to manufacture venue in Delaware. A debtor's choice of forum is not

[1] The Debtors and the last four digits of their respective taxpayer identification numbers include: Phoenix 1040 LLC (2550) and AmeriFirst Financial, Inc. (4557). The Debtors' service address is 1550 McKelleps Road, Suite 117, Mesa, AZ 85203.

dispositive when steps are taken on the eve of bankruptcy to manufacture venue in a certain court, which is an abusive manipulation of the venue statute.

**JURISDICTION & STANDING**

2. Pursuant to 28 U.S.C. § 1334, applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve this Motion.

3. Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4. The U.S. Trustee has standing to be heard on this matter pursuant to 11 U.S.C. § 307.

**BACKGROUND**

5. The Debtors filed voluntary petitions for relief under Chapter 11 on August 24, 2023 (the "Petition Date"). Both petitions were signed by Chief Restructuring Officer ("CRO") T. Scott Avila. Mr. Avila became the Debtors' CRO on August 21, 2023. (*Declaration of T. Scott Avila in Support of First Day Motions* ("Avila Decl.") ¶ 1, D.I. 20).

6. AFI is a mid-sized independent mortgage company that owns certain loan master servicing rights ("MSRs") which are a valuable asset of the estate. *Id.* ¶ 5. Phoenix has no operations other than holding 100% of the common equity interest in AFI due to a change of control event that occurred on the Petition Date. *Id.* ¶¶ 5 and 12.

7. Months before the filing, AFI entered into various agreements with its prepetition secured lender through documents dated as of May 15, 2023. *Id.* ¶¶ 7 - 11. In connection therewith, AFI shareholders Eric Bowlby and Kenneth Bowlby entered into a pledge agreement with the prepetition secured parties, also dated as of May 15, 2023, which granted liens and security interests in 100% of the common stock of AFI in favor of the prepetition agent (the "Pledge Agreement"). *Id.* ¶ 10.

8. On August 24, 2023, the prepetition agent issued a Notice of Events of Default and declared the obligations owed by AFI were immediately due and payable. *Id.* ¶ 12. The prepetition agent also exercised its rights under the Pledge Agreement and transferred its rights under the Pledge Agreement and AFI's common stock to Phoenix. *Id.* The certificates for the pledged shares were cancelled and a new stock certificate was issued to Phoenix. *Id.* As the sole shareholder of AFI, Phoenix executed various documents that, *inter alia*, removed and replaced the then current board of directors, and the new AFI Board then removed all officers and elected new ones. *Id.* The new AFI Board also authorized the CRO to take all necessary action in connection with AFI's bankruptcy filing. (*Unanimous Written Consent of the Board of Directors of Amerifirst Financial, Inc., Effective as of August 24, 2023*, attached to AFI's Chapter 11 Petition, D.I. 1).

9. AFI's Petition lists Phoenix as owning 100% of its common shares, and RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. ("RCP Fund III") as owning 100% of its preferred shares. Phoenix was incorporated in Delaware on June 28, 2023. Its Certificate of Formation is signed by Milton R. Berlinski, who is listed on Reverance Captial Partners' ("RCP") website as a co-founder of RCP. A copy of Phoenix's Certificate of Formation is attached as

**Exhibit A**. On its Petition, Phoenix lists its principal place of business as the AFI headquarters in Mesa, Arizona.

## ARGUMENT

### A. Overview

10. By this Motion, the U.S. Trustee requests entry of an order, substantially in the form submitted herewith, transferring these cases to the Arizona Bankruptcy Court in the interest of justice pursuant to 28 U.S.C. §§ 1408 and 1412, Bankruptcy Rule 1014, and Section 105(a) of the Bankruptcy Code.

11. 28 U.S.C. § 1408 sets forth where venue of bankruptcy cases may be laid:

> Except as provided in section 1410 of this title [pertaining to cases ancillary to foreign proceedings], a case under title 11 may be commenced in the district court for the district—
>
> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or
>
> (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

12. Fed. R. Bankr. P. 1014 provides:

> If a petition is filed in the proper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may transfer the case to any other district if the court determines that the transfer is in the interest of

justice or for the convenience of the parties.

13. If venue is proper in multiple districts under Section 1408, a party-in-interest may seek to have the case transferred to another proper venue when the transfer is in the interest of justice. *See In re Northfield Labs. Inc.,* 467 B.R. 582, 590 (Bankr. D. Del. 2010) (Shannon, J.) ("Section 1412 is phrased in the disjunctive and a proceeding is subject to transfer upon a sufficient showing that either the interest of justice or the convenience of the parties is met."); *In re LaGuardia Assocs., L.P.*, 316 B.R. 832, 837 (Bankr. E.D. Pa. 2004) ("It has been observed that § 1412 is [ ] written in the disjunctive, making transfer of venue appropriate ***either*** in the interest of justice ***or*** for the convenience of parties, and that statutory provision creates two distinct analytical bases upon which transfer of venue may be grounded.") (citation omitted) (emphasis in original).

14. Delaware courts consider a host of factors, weighing those factors differently based on the facts and circumstances of each case: (1) the original choice of forum; (2) the requested forum; (3) whether the claim arose elsewhere; (4) location of books and records and/or the possibility of viewing premises, if applicable; (5) convenience of the parties as indicated by their relative physical and financial condition; (6) convenience of the witnesses; (7) enforceability of the judgment; (8) practical considerations that would make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two *fora* resulting from congestion of the courts' dockets; (10) the public policies of the *fora*; (11) the familiarity of the judge with the applicable state law; and (12) the local interest in deciding local controversies at home. *See Zazzali v. 1031 Exch. Grp. (In re DBSI, Inc.)*, 478 B.R. 192, 194-95 (Bankr. D. Del. 2012); *see also Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995) (listing factors within the context of 28 U.S.C. § 1404(a)); *In re Innovative Commc'n Co., LLC*,

358 120, 126-27 (Bankr. D. Del. 2006) (holding the *Jumara* factors relevant to transfers of venue in the context of section 1412). In addition, courts also have "discretion to consider other private and public interest factors." *In re Qualteq, Inc.*, No. 11-12572, 2012 WL 527669, at *5 (Bankr. D. Del. Feb. 16, 2012). Considered both individually and collectively, these factors overwhelmingly weigh in favor of granting the relief requested in the Motion.

**B. <u>The Cases Should Be Transferred to the Arizona Bankruptcy Court in the Interest of Justice.</u>**

15. There are numerous factors a court looks to when determining whether a transfer of venue would be in the interest of justice. These include, *inter alia*, whether the transfer promotes the economic and efficient administration of the bankruptcy estate; facilitates judicial efficiency; will allow for a fair trial in either venue; is to a forum that has an interest in deciding the controversy; would affect enforceability of any judgment rendered; and is such that the original choice of forum should be disturbed. *Northfield Labs.,* 467 B.R. at 590. In applying this test, a court "must consider what will promote the efficient administration of the estate, judicial economy, timeliness and fairness." *Qualteq,* 2012 WL 527669, at *6 (citation omitted).

16. Of these factors, "[i]t is oft-repeated that the factor accorded the most weight is promotion of the economic and efficient administration of the estate." *Id.* at *6; *see DBSI,* 478 B.R. at 198 (noting that the forum in which the debtor has its primary operations is favored); *DHP Holdings II Corp. v. The Home Depot, Inc. (In re DHP Holdings II Corp.),* 435 B.R. 264, 275 (Bankr. D. Del. 2010) (transferring venue after noting that "[u]ltimately, however, the most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate") (citation and quotations omitted); *Laguardia Assocs.,* 316 B.R. at 837 ("[T]he 'interest of justice' component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis. It contemplates a consideration of

whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness") (*quoting Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.*), 896 F.2d 1384, 1391 (2d Cir. 1990)).

17. Efficiency and fairness dictate that these cases be transferred to the Arizona Bankruptcy Court. While debtors have wide latitude in selecting their preferred venue, they have no latitude to abuse the system and manufacture venue for the purpose of forum shopping – which is what the above-captioned Debtors did. A little less than 2 months before the filings Phoenix was formed and registered as a Delaware LLC, and the basis of venue in this Court was thereby manufactured. When AFI's common stock came to be owned by Phoenix on the Petition Date, AFI became an affiliate of Phoenix. As an affiliate, AFI could then file its bankruptcy case in this Court.

18. The manner in which venue was manufactured in Delaware here is similar to situations addressed by several courts. In *In re Patriot Coal Corp.,* 482 B.R. 718 (Bankr. S.D. N.Y. 2012) two new entities were incorporated in New York weeks prior to the petition date and became the basis for affiliates from outside New York to file for bankruptcy in the Southern District of New York. *Id.* at 726-28. The court found that "[n]otwithstanding the absence of bad faith on the part of the Debtors and the deference to which the Debtors' venue choice is entitled ... the Debtors' purposeful creation of the venue-predicate affiliates in New York on the eve of filing must be considered in the "interest of justice" analysis set forth in section 1412." *Id.* at 743. The *Patriot Coal* court would not "allow the Debtors' venue choice to stand, as to do so would elevate form over substance in [a] way that would be an affront to the purpose of the bankruptcy venue statute and the integrity of the bankruptcy system." *Id.* at 744.

19. A similar analysis was undertaken by the court in *In re LTL Management LLC,*

2021 WL 5343945 (Bankr. W.D.N.C. Nov. 16, 2021), and a similar result was reached. Quoting in part the *Patriot Coal* opinion, the *LTL* court found that "[s]etting up a company with the sole intent of filing bankruptcy in a certain district cannot be 'the thing which the [venue] statute intended.' …Even without any evidence of bad faith, courts are not required to "condone every strategy devised by clever lawyers to outsmart statutory purpose." *Id.* at * 6 (*quoting Patriot Coal Corp*., 482 B.R. at 745).

20. When deciding to transfer the case, the *LTL* court observed that the debtor went beyond "forum shopping" – they created a North Carolina entity to manufacture venue. *Id.* "[T]he purposeful creation of venue, although not dispositive by itself, must be considered in the interest of justice analysis. The more dispositive factor, however, remains that that there is a more appropriate venue for the administration of the estate." *Id; see also In re Anthymtv Co.,* 650 B.R. 261, 284 – 85 (Bankr. D. S.C. 2023) (Debtor's choice of forum was not dispositive because steps were taken on the eve of bankruptcy to manufacture venue in a certain court). In *In re Dunmore Homes, Inc.,* 380 B.R. 663, 675 – 76 (Bankr. S.D.N.Y. 2008), the only nexus to the chosen venue was a corporate entity created 59 days before the bankruptcy filing. The court ordered the case transferred to California noting that due to the circumstances there would be serious questions of "abuse of discretion" if it denied the motion to transfer venue in the interest of justice.

21. The same may be said here – venue was manufactured 56 days before the Petition Date, when Phoenix was incorporated in Delaware. AFI's common shares were then transferred to this Delaware entity on the Petition Date, providing the opportunity for AFI to assert venue in this Court as an affiliate of Phoenix. Therefore, the Debtors' choice of forum should not be dispositive. There exists a far more appropriate venue for these bankruptcy cases

that were filed to administer the assets of AFI, an Arizona corporation headquartered in Arizona. Phoenix is also headquartered in Arizona, and the operating assets are located there.

22. The effect of transfer on the ability for the parties to receive a fair hearing is, at best, neutral. While the U.S. Trustee is confident both courts would fairly apply the uniform laws of the Bankruptcy Code, the Arizona Bankruptcy Court will have at least as much experience applying the Arizona state laws that may arise in these cases. Ultimately, the operating Debtor's Arizona roots favor the transfer of venue, since there is a "local interest in deciding local controversies at home." *In re Amendt,* 169 F. App'x 93, 97 (3d Cir. 2006) (citation and quotations omitted). *See also In re Ocean Props. of Del., Inc.,* 95 B.R. 304, 305 (Bankr. D. Del. 1988) (granting motion to transfer venue after explaining that, although "the debtor's choice of forum is entitled to 'great weight'" where venue is proper, a venue transfer motion "requires balancing this factor with several others," including "the proximity of the court to interested parties as well as the location of assets, the economics of administering the estate and the relative economic harm to debtor and other interested parties").

23. In addition, as these cases were just commenced, this Court has not yet had the opportunity to familiarize itself with the complexities of the Debtors' financial affairs or business. As such, in the interest of promoting judicial economy, the U.S. Trustee submits that these cases should be transferred to Arizona as soon as possible to avoid unnecessary expenditures of this Court's time and resources.[2]

[2] These cases should also be transferred to the Arizona Bankruptcy Court for the convenience of the parties. While the top 30 creditors reside in various jurisdictions, 18 are located in or near Arizona: 9 in California, 7 in Arizona, 1 in Texas and 1 in Utah. (D.I. 1). The principal place of business and the operating assets of the Debtors are in Arizona. Books and records, witnesses, and the majority (if not all) of the current and former employees are also in Arizona.

**CONCLUSION**

WHEREFORE, for the reasons stated herein, the U.S. Trustee respectfully requests that this Court enter an Order, pursuant to 28 U.S.C. §§ 1408 and 1412, Bankruptcy Rule 1014, and Section 105(a) of the Bankruptcy Code, substantially in the form submitted herewith (i) transferring these cases to the United States Bankruptcy Court for the District of Arizona; and (ii) granting the U.S. Trustee such other and further relief as this Court may deem just and proper.

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE FOR**
**REGIONS 3 AND 9**

By: */s/ Linda Richenderfer*
Linda Richenderfer (DE # 4138)
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Tel.)
(302) 573-6497 (Fax)
Email: linda.richenderfer@usdoj.gov

Dated: September 19, 2023

# EXHIBIT A