**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| AMERIFIRST FINANCIAL, INC., *et al.*,[1] | Case No. 23-11240 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 104 & 105** |

**OMNIBUS OBJECTION OF ERIC BOWLBY TO (I) DEBTORS' APPLICATION FOR AUTHORIZATION TO EMPLOY AND RETAIN PACHULSKI STANG ZIEHL & JONES LLP AS COUNSEL FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE [D.I. 104]; AND (II) DEBTORS' MOTION TO RETAIN AND EMPLOY PALADIN MANAGEMENT GROUP, LLC TO PROVIDE A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL PERSONNEL AS OF THE PETITION DATE [D.I. 105]**

Eric Bowlby ("Mr. Bowlby"), on behalf of himself and other displaced shareholders of debtor AmeriFirst Financial, Inc. ("AFI", and together with debtor Phoenix 1040, LLC ("Phoenix 1040"), the "Debtors"), by and through his undersigned counsel, hereby files this omnibus objection (the "Retention Objection") to (i) *Debtors' Application For Authorization To Employ And Retain Pachulski Stang Ziehl & Jones LLP As Counsel For The Debtors Effective As Of The Petition Date* [D.I. 104] (the "Counsel Retention Application" or "CRA") and (ii) *Debtors' Motion To Retain And Employ Paladin Management Group, LLC To Provide A Chief Restructuring Officer And Additional Personnel As Of The Petition Date* [D.I. 105] (the "CRO Retention Application," and collectively with the Counsel Retention Application, the "Retention Applications"). The Retention Objection is based on facts set forth in the *Declaration of Eric*

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Phoenix 1040 LLC (2550); and AmeriFirst Financial, Inc. (4557). The location of Debtor AmeriFirst Financial, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 1550 McKelleps Road, Suite 117, Mesa, Arizona 85203.

*Bowlby in Support of the Supplemental Objection to the Motion for Entry of a Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Lenders, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [D.I. 154] (the "<u>Bowlby Declaration</u>"). Moreover, Mr. Bowlby incorporates the arguments in the Preliminary Objection as fully set forth herein. In support of the Retention Objection, Mr. Bowlby respectfully states as follows:[2]

## PRELIMINARY STATEMENT

1.  The events leading up to the Petition Date perpetrated by RCP and its agents, including Current Management, as set forth in Mr. Bowlby's Preliminary Objection, show that neither Paladin Management Group, LLC ("<u>Paladin</u>") nor Pachulski Stang Ziehl & Jones LLP ("<u>PSZ&J</u>") meet the requirements for retained professionals under the Bankruptcy Code and applicable law. While both Paladin and PSZ&J are both reputable firms with unquestionable industry experience, under these facts, they are both fruit from the poisonous tree and cannot be deemed "independent" or "disinterested" under the Bankruptcy Code or applicable law.

2.  As set forth in Mr. Bowlby's Preliminary Objection, the background facts of this case demonstrate, without question, that both Paladin and PSZ&J are either agents of RCP or were directly appointed by other agents of RCP. In the days preceding the hostile takeover of AFI, RCP appointed Current Management and PSZ&J with the charge of filing AFI and its new shell corporate parent into chapter 11 proceedings.

---

[2] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the *Declaration of T. Scott Avila in Support of First Day Motions* [D.I. 20] (the "<u>First Day Declaration</u>"); the First Day Motions; the *Preliminary Objection of Eric Bowlby to Debtors' First Day Motions* [D.I. 44] ("<u>Preliminary Objection</u>"); the Retention Applications; or the body of this Retention Objection, as applicable.

3.       Because Paladin and PSZ&J were directly or indirectly appointed by RCP to act as agents in RCP's best interests, they do not meet the "disinterested person" standard as articulated in Bankruptcy Code section 101(14) and required by section 327(a) and the Jay Alix Protocol.  For that same reason, Paladin and PSZ&J also have actual conflicts of interest that further warrant disapproval of their applications under section 327(c).  As such, the Court should deny Debtors' respective applications to retain Paladin and PSZ&J.

## FACTUAL BACKGROUND

4.       Mr. Bowlby incorporates by reference the facts set forth in the Preliminary Objection [D.I. 44] and in the Bowlby Declaration [D.I. 154] as if set forth fully herein.

5.       On September 11, 2023, Debtors filed the Counsel Retention Application [D.I. 104], seeking approval to retain and employ PSZ&J as Debtors' counsel *nunc pro tunc* from the Petition Date.  [D.I. 104].  The Counsel Retention Application does not include the engagement agreement between the Debtors and PSZ&J.

6.       On the same day, Debtors also filed the CRO Retention Application [D.I. 105], seeking approval to (a) retain and employ Paladin to provide Debtors with a Chief Restructuring Officer (a "CRO") and certain additional Paladin personnel, and (b) designate T. Scott Avila, principal of Paladin, as the Debtors' CRO *nunc pro tunc* from the Petition Date.  [D.I. 105].  The CRO Retention Application only attaches an engagement letter signed on the Petition Date, however, based on sworn testimony in the First Day Declaration, Paladin was retained three days earlier on August 21, 2023.  The engagement letter from that date has not been disclosed or provided to parties in interest.

# LEGAL ARGUMENT

I. **PSZ&J and Paladin Have Failed To Comply With Rule 2014 and the Disclosure Requirements of the Jay Alix Protocol, As Applicable**

7. Bankruptcy Rule 2014(a) provides,

> The application [to employ attorneys pursuant to § 327] shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, ***all of the person's connections with the debtor, creditors, any other party in interest,*** their respective attorneys attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. Pro. 2014 (emphasis added).

8. Moreover, under the Jay Alix Protocol, which is required to be followed by any financial advisory firm providing CRO services under section 363(b) of the Bankruptcy Code in this Court, "[t]he application to retain [the CRO firm] shall make all appropriate disclosures of any and all facts that may have a bearing on whether [the CRO firm], its affiliates, and/or the individuals working on the engagement have any conflict."

9. Under these rules, "[t]he professional must disclose ***all*** connections and potential connections," *In re NNN 400 Capital Ctr. 16, LLC*, 619 B.R. 802, 809 (Bankr. D. Del. 2020), and "[f]ailure to disclose connections itself is enough to warrant disqualification of counsel from employment." *In re Universal Bldg. Prods.*, 486 B.R. 650, 663 (Bankr. D. Del. 2010).

10. This requirement "is necessary to enable the court to evaluate fully whether the professional is actually a disinterested person and does not hold or represent an interest adverse to the estate, as required by [Bankruptcy Code] section 327(a)." 3 Collier on Bankruptcy, ¶ 327.01[1].

11. In the instant case, close scrutiny of the Retention Applications in light of Rule 2014's and Jay Alix Protocol's requirements finds it lacking.

12. Here, the Counsel Retention Application and the attachments appended thereto merely states that to the best of its knowledge, "PSZ&J has not represented the Debtors, their creditors, equity security holders, or any other parties in interest, or their respective attorneys, in any matter relating to Debtors or their estates." [D.I. 104 ¶ 12].  The CRO Retention Application includes language that is similarly bland.  *See* D.I. 105-3 ¶¶ 9-11.

13. But the CRA notably does not disclose whether, to the best of its knowledge, this statement with multiple qualifiers indeed represents the full extent of PSZ&J's **connections** with those parties in **any matter**, as required under Bankruptcy Rule 2014.

14. To wit, it should be noted that although it is the common practice to include a client match list when seeking section 327 approval to retain attorney professionals, PSZ&J—a well-known bankruptcy firm—chose to not to do so here.  Neither did Paladin.  Moreover, it is custom and required in this district to provide a client match list with connections dating back three years.  Both Retention Applications are silent on any connections, let alone those within the last three years.

15. The client match list is instrumental in confirming details such as (a) the identity of the client retaining the law firm; (b) whether there exist alternative financing arrangements suggesting the presence of other intervening interests; and (c) confirming that no conflicts of interest exist in the law firm's retention.

16. Here, by failing to provide a client match list, PSZ&J has failed to fully disclose the full extent to which it has ever represented RCP, Paladin, or any related parties in any similar actions.

17. Moreover, because the applicable engagement letters were not filed with the Court, it is impossible to know who from the Debtors (or RCP) actually authorized the engagements of each professional.

18. In the same vein, the Declaration of Laura Davis Jones attached as Exhibit C to the CRA (the "Jones Declaration") also states the following:

> 5. PSZ&J was engaged prior to the Petition Date to represent the Debtors. At the time of its engagement, PSZ&J began a full and thorough conflict review of potential parties in interest in these Chapter 11 Cases (the "Potential Parties in Interest"). A copy of the list of Potential Partiesi in Interest is attached hereto as Schedule I.
>
> 6. [PSZ&J] maintains an electronic client database of current and former clients to permit the electronic searching of all potential parties in interest in new cases for connections to [PSZ&J]'s clients. [PSZ&J] searched this client database to determine whether it had any relationships with the Potential Parties in Interest listed on Schedule I.
>
> \*\*\*
>
> 8. PSZ&J also solicited information regarding possible connections to the Debtors by firm-wide email . . . .
>
> [D.I. 104, Ex. C ¶¶ 5-6.]

19. Although the above-quoted paragraphs nominally state the procedures by which PSZ&J conducted a conflict check, the Jones Declaration remains silent as to any details involving the results of those efforts—for example, whether PSZ&J utilized a client match list conducting its conflicts diligence, whether PSZ&J discovered that it had previously represented any creditors,

equity security holders, or other parties in interest prior to these chapter 11 proceedings, the identities of such former clients, and/or the method or rationale by which PSZ&J concluded it was a disinterested person without any interests adverse to the Debtors' estates or any class of creditors. The only mention of such results therein appear to be mere recitations that PSZ&J found itself to have complied with the statutory requirements of sections 101(14) and 327(a) of the Bankruptcy Code. *Id.* ¶ 7-8.

20. The Declaration of T. Scott Avila attached as Exhibit B to the CRO Retention Application (the "Avila Retention Declaration") contains similarly generalized language, stating only that "Paladin maintains a database for purposes of performing 'conflicts checks,'" that Avila "obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in [sic] herein," and that "to the best of its knowledge, Paladin knows no fact or situation that would represent a conflict of interest for Paladin with regard to the Debtors." [D.I. 105, Ex. B ¶¶ 7-9]. As with the Jones Declaration, absent from the Scott Retention Declaration are the detailed results of Paladin's conflicts search or the method or rationale by which Paladin determined it had no conflicts of interest.

21. Given that Mr. Bowlby has from the genesis of these proceedings set forth serious allegations and credible supporting evidence thereto pertaining to RCP's hostile takeover, its subsequent installation of both Paladin and PSZ&J in positions of control in the Debtors, and the relative expediency with which Debtors' counsel was thereafter able to file the chapter 11 petitions as well as First Day Motions [*see* D.I. 44 ¶¶ 10-26; D.I. 154 ¶¶ 27-40, 44], it is possible that the representations set forth in the Jones Declaration and Scott Retention Declaration were strategically phrased as generally as possible, so as to avoid drawing any unwelcome scrutiny.

22. The need to address this deficiency in counsel's or another professional's application cannot be easily cured at a later stage. As courts have long held, a court's post-confirmation jurisdiction is extremely limited and cannot easily be re-expanded, even upon consent of the parties. *See, e.g., Resorts Internat'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004). Thus, the importance of ensuring that the application to retain PSZ&J as Debtors' counsel is essential at this stage to avoid creating an irreversible situation once such counsel has become firmly entrenched in these proceedings.

23. In the absence of vital disclosures and in light of the above-mentioned circumstances surrounding the engagement of PSZ&J and Paladin by the Current Management of AFI—themselves RCP employees and/or agents—the Court should deny the Retention Applications.

## II.     Neither Paladin Nor PSZ&J Satisfy the Requirements of Section 327 or its Jay Alix Equivalent to be Employed as Professionals

24. Section 327(a) of the Bankruptcy Code requires that professionals retained to assist the trustee and/or debtor-in-possession meet two requirements: (1) they must "not hold or represent an interest adverse to the estate," and (2) they must be "disinterested persons", within the meaning of section 101(14). *In re BH&P, Inc.*, 949 F.2d 1300, 1314 (3d Cir. 1991).

25. Furthermore, section 327(c) provides that although "a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor," where "there is objection by another creditor or the United States trustee, . . . the court shall disapprove such employment if there is an actual conflict of interest." *Id.*

26. Because PSZ&J and Paladin fail both tests, they are unfit to serve as professionals under section 327 and the equivalent under the Jay Alix Protocol, as applicable.

27. In relevant part, section 101(14) defines "disinterested person" as a person that

> (A) is not a creditor, an equity security holder, or an insider; . . . and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or direct relationship to, connection with, or interest in, the debtor, or for any other reason.

28. In other words, one cannot be deemed to be a "disinterested person" if they hold or represent any interest that is "materially adverse" to any party in interest in the bankruptcy, whether due to one of the specific reasons noted in the statute, or "for any other reason."

29. Courts have formulated a generally accepted definition of "adverse interest" under section 101(14) as

> (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate.
>
> [*In re AFI Holding,* 355 B.R. at 148-49 (citing *Rome v. Braunstein*, 19 F.3d 54, 58 n. 1 (1st Cir. 1994), and *In re Roberts*, 46 B.R. 815, 826-27 (Bankr. D. Utah 1985)).]

30. Courts have further held that section 101(14)'s definition of "disinterested person" is sufficiently broad to exclude appointment of individuals "with some interest or relationship that 'would even faintly color the independence and impartial attitude required by the Code.'" *Id.* at 149 (quoting *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 835 (7th Cir. 1998)).

31. To that end, "[t]he title 'trustee' has 'fiduciary significance in the equity sense,' and thus the trustee 'may not be the representative of any particular creditor, but must represent all

creditors without partiality.'" *Id.* at 147; *see also Mosser v. Darrow*, 341 U.S. 267, 271 (1951) ("Equity tolerates in bankruptcy trustees no interest adverse to the trust.").

32. Although the term "actual conflict of interest" is not defined in the Bankruptcy Code, courts have used their judgment and discretion to make evaluations as to whether an actual conflict exists "in light of the particular facts of each case." *In re BH&P*, 949 F.2d at 1315 (quoting *In re Star Broadcasting, Inc.*, 81 B.R. 835, 844 (Bankr. D.N.J. 1988)).

33. *In re Marvel Ent. Grp.*, 140 F.3d 463 (3d Cir. 1998), is instructive on this issue. In *In re Marvel*, the Third Circuit reiterated that a court *must* disqualify a trustee, a debtor-in-possession, and/or their selected counsel in situations presenting an actual conflict of interest. *Id.* at 476. The court further clarified that courts also should generally lean towards disqualification where *potential* conflicts of interest are presented, barring extraordinary circumstances.[3] *Id.* (quoting *In re BH&P*, 949 F.2d at 1316-17).

34. In so reasoning, the court noted that a debtor-in-possession's fiduciary obligations "include 'open, honest, and straightforward disclosure to the Court and creditors,'" as well as "the 'duty to protect and conserve property in its possession for the benefit of creditors.'" *Id.* at 474.

35. The *In re Marvel* court noted in that case, where proposed counsel to the chapter 11 trustee had previously represented a creditor in a small and completely unrelated non-litigation matter (involving a construction financing transaction in another state), that previous matter had concluded by the time the disqualification hearing had concluded, and that creditor had executed a universal conflict waiver, disqualification was not appropriate absent any actual or potential

---

[3] As identified in *BH&P*, such rare situations may arise where, for example, an exceptionally large case causes "every competent professional in a particular field" to "already [have been] employed by a creditor or party in interest," or where "the possibility that the potential conflict will become actual is remote

conflict of interest. The court noted that without more, the mere appearance of a conflict was insufficient to either disqualify counsel as a not-disinterested person under 11 U.S.C. § 327(a) or (c). *Id.* at 477.

36. In *In re AFI Holding*, the Ninth Circuit Bankruptcy Appellate Panel examined a case in which an appointed chapter 11 trustee (1) failed to timely disclose her previous representation of debtor insiders and (2) appeared to have given those insiders preferential treatment by declining to file avoidance actions against them. *Dye v. Brown (In re AFI Holding, Inc.)*, 355 B.R. 139, 145, 154 (9th Cir. B.A.P. 2006). The panel noted that regardless of whether the conflict of interest presented was merely potential in nature or reflected an actual conflict, "[w]here conflict of interest or abuse of professional confidence is asserted, the right of an attorney to freely practice his profession must, in the public interest, give way in cases of doubt." *Id.* at 154 (quoting *Chugach Elec. Assoc. v. United States*, 370 F.2d 441, 443-44 (9th Cir. 1966)).

37. The panel went on to hold that removal was still warranted since the trustee held a materially adverse interest against the estate and its creditors, or otherwise lacked the requisite disinterestedness under section 327. *Id.* at 154-55 ("[W]e conclude that the bankruptcy court did not err in its determination that [the trustee] was not disinterested because she had a materially adverse interest which created ongoing disharmony in the administration of the estate.").

38. On appeal, the Court of Appeals for the Ninth Circuit adopted the panel's holding in full. *In re AFI Holding, Inc.*, 530 F.3d 832, 838 (9th Cir. 2008).

39. With respect to the instant proceedings, it is clear that the conflict of interest presented as to PSZ&J and Paladin is more than mere appearances. It is also more than merely potential, or even incipient conflict of interest. It is an *actual* conflict.

40. As detailed in the Bowlby Declaration, RCP took affirmative steps starting at least on Monday, August 21, 2023 (if not much earlier) to (1) expel Mr. Bowlby and AFI's previous management and directors, (2) install Current Management and PSZ&J into positions of control, and (3) instruct PSZ&J and Current Management (including Mr. Avila, and by extension, Paladin) in such manner that would disproportionately benefit RCP to the detriment of AFI's estate and other creditors.

41. As noted in Part I, PSZ&J and Paladin have chosen to not provide a client match list identifying any potential conflicts here. The absence of these important documents alone should give the Court pause as to whether it can confidently determine that Paladin and PSZ&J are disinterested persons within the meaning of section 101(14).

42. Similarly, Paladin lacks the requisite disinterestedness to serve as management for the Debtors. It was appointed by RCP, a creditor whose pre-petition actions have demonstrated its ambition to steer AFI into bankruptcy proceedings and to jump the seniority line of secured creditors. *See Bowlby Declaration* ¶¶ 10(a), 22-25, 28-40. More egregiously, Mr. Avila's statements to Mr. Bowlby that he had advised RCP on how to structure DIP financing and that RCP has instructed him to liquidate AFI's assets without the industry-standard reps and warranties, *id.* at ¶¶ 45, 48-49, plainly demonstrate that he and Paladin continue to act at the direction of RCP, rather than according to their own independent judgment as to what is best for the Debtors.

## **CONCLUSION**

43. In consideration of the above as well as more generally the rapid orchestration of the events during the week of August 21—particularly RCP's formation of Phoenix 1040, LLC on August 21; RCP's hostile takeover of AFI on August 24; the appointment of Current Management

and PSZ&J as Debtors' counsel and filing of petitions within mere hours thereafter; and the negotiation of DIP financing and preparation of First Day Motions and the CRO's First Day Declaration within two business days thereafter—it completely beggars belief to claim that PSZ&J and Paladin are disinterested persons, rather than partners or agents of RCP participating in a carefully pre-planned scheme.

44. Both PSZ&J and Paladin have failed to comply with Rule 2014 and the disclosure requirements under the Jay Alix Protocol, as applicable.

45. Moreover, because both PSZ&J and Paladin also lack the requisite disinterestedness under section 327(a) and are inherently associated with actual conflicts of interest presenting materially adverse interests against the Debtors' estates and their creditors, the Court should deny their retention applications.

**RESERVATION OF RIGHTS**

46. Mr. Bowlby reserves all of his rights to supplement or amend this Objection at or prior to the Final Hearing. Mr. Bowlby also reserves all of his rights with respect to any filing by the Debtors or parties in support of the Retention Applications prior to the Final Hearing. Nothing contained in, or omitted from, this Objection constitutes an admission or stipulation by Mr. Bowlby with respect to any alleged claims against the Debtors, PSZ&J, or Paladin.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated: September 25, 2023<br>Wilmington, Delaware | **PASHMAN STEIN WALDER HAYDEN, P.**C<br><br>*/s/ Joseph C. Barsalona II*<br>William R. Firth, III (No. 4356)<br>Joseph C. Barsalona II (No. 6102)<br>1007 North Orange Street, 4th Floor, #183,<br>Wilmington, DE 19801<br>Telephone: (302) 592-6497<br>Facsimile: (201) 488-5556<br>Email: wfirth@pashmanstein.com<br>　　　　jbarsalona@pashmanstein.com<br><br>-and-<br><br>J. John Kim (admitted *pro hac vice*)<br>Joshua P. Law<br>Court Plaza South, East Wing<br>21 Main Street, Suite 200<br>Hackensack, NJ  07601<br><br>*Counsel to Eric Bowlby, on behalf of himself and other displaced shareholders of AmeriFirst Financial, Inc.* |