## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

AMERIFIRST FINANCIAL, INC., *et al.*,

Debtors.[1]

Chapter 11

Case No. 23-11240 (TMH)

(Jointly Administered)

## DEBTORS' (I) OBJECTION TO RETENTION OF KASOWITZ BENSON TORRES LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND (II) MOTION TO DISQUALIFY KASOWITZ FROM REPRESENTING COMMITTEE

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Phoenix 1040 LLC (2550); and AmeriFirst Financial, Inc. (4557). The location of Debtor AmeriFirst Financial, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 1550 McKelleps Road, Suite 117, Mesa, Arizona 85203.

# TABLE OF CONTENTS

**Page**

Jurisdiction and Venue.................................................................................................. 1

Preliminary Statement............................................................................................... 2

Background .................................................................................................................. 2

    A.    AFI's Bankruptcy Filing ................................................................................ 2

    B.    Kasowitz Represented AFI Prior to the Petition Date ........................................... 3

    C.    The Committee's Formation and Selection of Kasowitz ....................................... 5

    D.    The Debtors Demand Kasowitz's Withdrawal Based on Conflict ........................ 7

    E.    Kasowitz's Adverse Advocacy ............................................................................. 9

Objection and Relief Requested................................................................................ 11

Argument .................................................................................................................... 11

    A.    Committee's Application to Retain Kasowitz Must Be Denied .......................... 13

    B.    Kasowitz Must Be Disqualified Based on Ethical Rules Violations .................. 15

        (1)    The Application Must be Denied, and Kasowitz Must Be
               Disqualified, Because Kasowitz Violated Its Duty Not to Reveal or
               Use Client Confidences Without AFI's Consent ..................................... 16

        (2)    The Committee's Employment of Kasowitz, to Which AFI Does
               Not Consent, Violates Model Rule 1.7. ................................................... 21

        (3)    Alternatively, Kasowitz Is Prohibited from Representing
               the Committee Under Model Rule 1.9(a) ............................................... 25

            a.   The Committee Work Is Substantially Related ................................. 27

Conclusion ................................................................................................................. 32

Notice ......................................................................................................................... 32

No Prior Request........................................................................................................ 32

**TABLE OF AUTHORITIES**

**Page**

**CASES**

。

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*American Roller Co. v. Budinger*,
513 F.2d 982 (3d Cir. 1975)............................................................................ 27

*Bd. of Trs. of Leland Stanford Junior Univ. v. Yuzhen Zhang*,
__ F.Supp.3d __, No. 19-cv-02904, 2023 U.S. Dist. LEXIS 90086, *9 (N.D. Cal. March 6, 2023)............................................................................................................... 25

*Becker v. Bank of N.Y. Mellon Trust Co., N.A.*,
2016 U.S. Dist. LEXIS 138485 ................................................................. 23, 26

*Bingham Greenebaum Doll, LLP v. Glenview Health Care Facility, Inc. (In re Glenview Health Care Facility, Inc.)*,
620 B.R. 582, 589 (6th Cir. B.A.P. 2020) .................................................... 15

*Century Indem. Co. v. Congoleum Corp. (In re Congoleum Corp.)*,
426 F.3d 675 (3d Cir. 2005)........................................................................... 15

*Church [v. Sullivan]*,
942 F.2d [1501] [(10th Cir. 1991)] ................................................................ 22

*Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*,
808 F. Supp. 1200 (E.D. Pa. 1992) .......................................................... 16, 27

*Enoch [v. Gramley]*,
70 F.3d [1490] at 1495-97 [(7th Cir. 1995)]................................................. 22

*Enzo Life Scis., Inc. v. Adipogen Corp.*,
No. 11-cv-00088, 2013 U.S. Dist. LEXIS 164939,  2013 WL 6138791 (D. Del. Nov. 20, 2013) ................................................................................................................... 26

*Greenwood Land Co. v. Omnicare, Inc.*,
No. 09-cv-686, 2009 U.S. Dist. LEXIS 74374(W.D. Pa. Aug. 20, 2009)............ 28

*Hot Line, Inc.*,
808 F. Supp. 1200 (E.D. Pa. 1992) .......................................................... 16, 27

*In re Boy Scouts of Am.*,
35 F.4th 149 ................................................................................................. 15

*In re Caldor*,
193 B.R. 165 (Bankr. S.D.N.Y. 1996)........................................................... 14

*In re Diva Jewelry Design, Inc.*,
367 B.R. 463 (Bankr. S.D.N.Y. 2007).......................................................... 15

*In re Enron Corp.*,
No. 01-16034, 2002 Bankr. LEXIS 1720 (Bankr. S.D.N.Y. May 23, 2002).......... 14

*In re Harman*,
628 N.W. 2d 351 (Wis. 2001)........................................................................ 11

*In re JAB Energy Solutions II, LLC*,
Case No. 21-11226 (Bankr. D. Del. Dec. 7, 2021) ..................................... 14

*In re Meridian Auto. Systems-Composite Operations, Inc.*,
340 B.R. 740 (Bankr. D. Del. 2006) ........................................................... 19

*In re National Financial Enterprises, Inc.*,
  298 B.R. 112 (Bankr. S.D. Ohio 2003) ............................................................ 14

*In re Nw. Corp.*,
  346 B.R. 84 (D. Del. 2006) ........................................................................... 15

*In re Pittsburgh Corning Corp.*,
  308 B.R. 716 (Bankr. W.D. Pa. 2004) ............................................................ 14

*In re South Pacc Island Airways*,
  68 B.R. 574 (Bankr. D. Haw. 1986) ........................................................... 23, 30

*INA Underwriters Ins. Co. v. Nalibotsky*,
  594 F. Supp. 1199 (E.D. Pa. 1984) ............................................................... 26

*Int'l Bus. Mach. v. Levin*,
  579 F.2d 271(3d Cir. 1978) .......................................................................... 16

*Integrated Health Servs. of Cliff Manor, Inc. v. THCI, Co. LLC*,
  327 B.R. 200 (D. Del. 2005) ......................................................................... 29

*Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*,
  49 F.4th 223 (3d Cir. 2022) ..................................................................... 16, 23

*McClure v. Thompson*,
  323 F.3d 1233 (9th Cir. 2003) ..................................................................... 18

*Milford Grp., Inc.*,
  164 B.R. 899 (Bankr. M.D. Pa. 1993) ............................................................ 15

*Miller v. Sun Capital Partners (In re IH1 Inc.)*,
  441 B.R. 742 (Bankr. D. Del. 2011) .......................................................... 20, 28

*Nealy v. Cabana*,
  782 F.2d 1362 (5th Cir. 1986) ..................................................................... 22

*Perillo v. Johnson*,
  205 F.3d 775798 (5th Cir. 2000) .................................................................. 22

*Richardson v. Hamilton Int'l Corp.*,
  469 F.2d 1382 (3d Cir. 1972) ....................................................................... 27

*Talecris Biotherapeutics, Inc. v. Baxter Int'l, Inc.*,
  491 F. Supp. 2d 510 (D. Del. 2007) .............................................................. 27

*United States v. Malpiedi*,
  62 F.3d 465 (2d Cir. 1995) .......................................................................... 22

*United States v. Miller*,
  624 F.2d 1198 (3d Cir. 1980) .................................................................... 2, 16

*United States v. Moscony*,
  927 F.2d 742 (3d Cir. 1991) ........................................................................ 16

*United States v. Winkle*,
  722 F.2d 605 (10th Cir. 1983) ..................................................................... 22

*Webb v. E.I. DuPont de Nemours & Co.*,
  811 F. Supp. 158 (D. Del. 1992) .................................................................. 19

## STATUTES

11 U.S.C. § 105 .......................................................................................... 2
11 U.S.C. § 1103 ............................................................................... 11, 14, 15
11 U.S.C. § 1103(a) ................................................................................... 13
11 U.S.C. § 1103(b) ................................................................................... 13
11 U.S.C. § 327 ......................................................................................... 14

11 U.S.C. § 328(c) ........................................................................................... 14

28 U.S.C. § 1334 ............................................................................................... 1

28 U.S.C. § 1408 ............................................................................................... 1

28 U.S.C. § 157 ................................................................................................. 1

28 U.S.C. § 157(b)(2) ....................................................................................... 1

28 U.S.C. §1409 ............................................................................................... 1

## OTHER AUTHORITIES

7 Collier on Bankruptcy ¶ 1103.04 (16th 2023) ........................................... 14

## RULES

Bankruptcy Rule 1015(b)................................................................................... 3

Local Rule 9010(f)............................................................................................ 16

Local Rule 9010-1(f)......................................................................................... 1

Model Rule 1.10(a)(2) ...................................................................................... 23

Model Rule 1.6.................................................................................................. 18

Model Rule 1.6(b).............................................................................................. 18

Model Rule 1.6(c).............................................................................................. 18

Model Rule 1.7.................................................................................................. 12

Model Rule 1.7(c)(2) ........................................................................................ 25

Model Rule 1.9(a)............................................................................................. 12

DOCS_LA:351509.14 70786/001

Debtors AmeriFirst Financial, Inc. ("AFI") and Phoenix 1040 LLC ("Phoenix" and collectively with AFI, the "Debtors") in the above-captioned chapter 11 cases hereby (1) object (the "Objection") to the application (the "Application") of the Official Committee of Unsecured Creditors (the "Committee") to retain Kasowitz Benson Torres LLP ("Kasowitz") as special litigation counsel [Docket No. 212] and (2) move (the "Motion") for the entry of an order disqualifying Kasowitz from such representation, and granting related relief. In support of the Objection and Motion, the Debtors respectfully represent as follows:

<u>**Jurisdiction and Venue**</u>

1.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The Motion is grounded upon Rules 1.6, 1.7, and 1.9 of the ABA Model Rules of Professional Conduct (the "Model Rules") made applicable by Local Rule 9010-1(f), 11

U.S.C. § 105, and the inherent power of the court to supervise the professional conduct of attorneys appearing before it. *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980); *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984).

## Preliminary Statement

5.     Kasowitz represented AFI prior to (and until at least) the Petition Date.  The Committee's proposed retention of Kasowitz without AFI's consent (and, indeed, over AFI's objection) therefore subjects the Debtors to advocacy against their positions or interests by its own prepetition counsel on matters substantially related to Kasowitz's proposed representation of the Committee.  Kasowitz's adverse representation plainly violates the Bankruptcy Code and ethical rules, and compromises Client Confidences (defined herein) and the Debtors' attorney-client privilege.

6.     This Court should not validate the unprecedented attempt by a law firm to represent a creditors' committee immediately after it represented the debtor on substantially related matters—particularly where the debtor vigorously objects.  The Application should be denied and Kasowitz should disqualified from representing the Committee or any other party-in-interest in these Cases.

## Background

### A.     AFI's Bankruptcy Filing

7.     On August 24, 2023 (the "Petition Date"), the Debtors each filed petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases

are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. No trustee or examiner has been appointed in the Chapter 11 Cases.

8.     Prior to the Petition Date, AFI was a closely held independent mortgage corporation as to which its owners pledged their stock as collateral for debt to certain of their lenders. Following a nationwide decline in residential mortgage lending, AFI's annual combined loan originations and income from loan sales dropped precipitously. Based on events of default by AFI under certain of its prepetition loans, on the Petition Date, the administrative agent for certain secured lenders exercised its rights by, among other matters, effectuating a sale under its stock pledge, removing and replacing certain directors of AFI (including a replacement made by adding an independent director to address any conflicts), and otherwise transferring control of AFI to Phoenix.

9.     Additional factual background regarding the Debtors, including the events precipitating the filing of the Chapter 11 Cases, is set forth in the *Declaration of T. Scott Avila in Support of First Day Motions* [Docket No. 20] and the *Declaration of T. Scott Avila in Support of Additional First Day Motions* [Docket No. 76], and incorporated herein by reference.[2]

## B.     Kasowitz Represented AFI Prior to the Petition Date

10.     On December 19, 2022 (more than eight months before the Petition Date), AFI engaged Kasowitz to analyze potential claims against its prepetition secured lender, Reverence Capital Partners ("RCP"), who was itself a former client of Kasowitz.[3]   Between

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.
[3] *See* Application at Stein Declaration, Schedule 2.

December 2022 and May 2023, Kasowitz invoiced approximately $400,000[4] in fees in connection with its representation of AFI, although it appears the majority of the billing entries concerned matters beyond the investigation of potential claims against RCP, including the negotiation of the Prepetition Credit Agreement, Limited Waiver, Settlement Agreement, and Pledge Agreement (the "Settlement Agreement").[5]

11.     After the Settlement Agreement and related documents were finalized, Kasowitz continued to represent AFI on other financing matters in June and July 2023.  For example, Kasowitz's invoice dated July 31, 2023 reflects time spent on "customers issues/strategy," "customers approval," "S&D issue," and "warehouse lines."[6]   Kasowitz's invoices reflect that Edward Filusch ("Filusch"), a partner in Kasowitz's New York office, was the primary billing partner.[7]

12.     On August 21, 2023—just three days before the Petition Date—AFI and Kasowitz entered into a second engagement agreement pursuant to which AFI agreed to pay Kasowitz a retainer of $2 million to serve as special litigation counsel for the purpose of continuing to investigate potential claims against RCP.

13.     As a result of Kasowitz's continuous representation of AFI from December 2022 through the Petition Date, Kasowitz obtained a wide range of the Debtors' confidential information, mental impressions, and strategies (hereafter, "Client Confidences").[8]

---

[4] Kasowitz extended a 20% discount off of its standard hourly rates to AFI such that AFI was billed only 80% of that amount.  *See* December 19, 2021 Engagement Letter, attached hereto as Exhibit A; Kasowitz Invoices, attached hereto as Exhibit B.

[5] *See* Exh. B.

[6] *See* Exh. B.

[7] *See* Exh. B.

[8] To the best of the Debtors' knowledge, the attorney-client relationship between AFI and Kasowitz was never formally terminated.

**C.    The Committee's Formation and Selection of Kasowitz**

14.    On September 15, 2023, the Office of the United States Trustee filed its *Notice of Appointment of Creditors' Committee* [Docket No. 122] appointing the Committee.

15.    On September 19, 2023, the Committee selected Kasowitz as proposed counsel to the Committee, and on September 20, 2023, the Committee selected Morris, Nichols, Arsht & Tunnell LLP ("MNAT") as proposed co-counsel to the Committee.[9]

16.    Kasowitz never sought (let alone obtained) AFI's waiver of the obvious conflict of interest before pitching the Committee, and the Debtors have never consented to Kasowitz's representation of the Committee or the use of its Client Confidences by Kasowitz for any purpose.

17.    On September 21, 2023, Matthew Stein of Kasowitz emailed Debtors' counsel, copying Filusch, and advised that Kasowitz had been selected to represent the Committee, stating: "We [Kasowitz], together with Rob Dehney, have been selected by the official committee of unsecured creditors to represent it in AmeriFirst."[10] As set forth below, Debtors' counsel immediately (and thereafter repeatedly) protested that Kasowitz's representation of the Committee created a conflict of interest and otherwise violated ethical rules.

18.    On September 27, 2023, the Committee filed its Committee Statement purporting to clarify the proposed scope of Kasowitz's role as "special litigation counsel to the Committee to investigate and determine whether the estate has viable claims against . . . [the

---

[9] *Statement of the Official Committee of Unsecured Creditors Concerning the Debtors' First Day Motions and Requesting Status Conference* [Docket No. 171] (the "Committee Statement") at ¶ 3.
[10] Email dated 9/21/23, attached hereto as Exhibit C.

Proposed DIP Lenders] or other non-debtors in these Chapter 11 Cases."[11] Notably, however (and consistent with Kasowitz's actual conduct following the Petition Date as described herein), the pleading's signature block does not reflect such a purportedly limited role, but instead identifies Kasowitz and Filusch (and MNAT) generally as proposed counsel for the Committee.

19.     On October 4, 2023, the Committee filed the Application seeking to employ Kasowitz for a long litany of broad purposes subject only to an overriding restriction about which the Application is unclear.  In the body of the Application, Kasowitz's proposed role is listed as follows:

> Subject to further order of the Court, the Committee requests the retention and employment of Kasowitz for rendering the following necessary legal services required in this case, including, among others:
>
> (a) advising the Committee with respect to its rights, duties and powers in these Chapter 11 Cases;
>
> (b) assisting the Committee in analyzing whether potential claims exist against non-Debtor third parties and pursuing recoveries in connection therewith;
>
> (c) investigating, as directed by the Committee, among other things, valuation, assets, liabilities, and financial condition of the Debtors, transactions with non-Debtor third parties, the Debtors' prepetition and post-petition management, and operational issues concerning the Debtors;
>
> (d) advising the Committee with respect to the Debtors' proposed first-day relief, including whether such relief relates to or impacts potential claims against non-Debtor third parties; advising the Committee with respect to post-petition financing and/or restructuring transactions; communicating with the Committee's constituents in furtherance of its responsibilities, including, but not limited to, communications required under section 1102 of the Bankruptcy Code; and
>
> (e) perform such other legal services as may be required or are otherwise deemed to be in the interests of the Committee in accordance with the Committee's powers and duties as set forth in the Bankruptcy Code, Bankruptcy Rules, or other applicable law, consistent with the scope of its representation.

---

[11] Committee Statement at ¶ 3.

> For the avoidance of doubt, notwithstanding anything that may be perceived as stating otherwise, Kasowitz will not take any action that is adverse to the Debtors or their respective estates.

Application at 9. Yet, although the Declaration of Matthew Stein includes a similar description, it ends with a different superseding provision that offers almost no limitation at all, by providing that Kasowitz's role can include any of the broad listed purposes so long as the work would concern or be related to litigation against any non-Debtor third party: "For the avoidance of doubt, and as noted above, Kasowitz will limit its work that concerns ore (sic) relates to litigation against non-Debtor third parties." Application at 25.

20. This proposed scope of services is extremely general in nature and far more consistent with a scope of services to be provided by general bankruptcy counsel than special litigation counsel.

## D. The Debtors Demand Kasowitz's Withdrawal Based on Conflict

21. Before this matter was discussed during the September 29, 2023 status conference, Debtors' counsel repeatedly (a) advised Kasowitz that the Debtors would not consent to their representation of the Committee, and (b) sought written assurances that MNAT would not share Client Confidences with the Committee or with Kasowitz, all to no avail:

a. On September 23, 2023, Debtors' counsel informed Kasowitz that its representation of the Committee raised a conflict of interest. In response, and contrary to its representation in their introductory email, Kasowitz stated that its representation would be limited to acting as special litigation counsel.

b. On September 24, 2023, Debtors' counsel advised that it was prepared to produce documents regarding prepetition loans and related issues only to MNAT, and

would do so on a professional-eyes-only basis on the condition that such documents would not be shared with Kasowitz or the Committee pending a resolution of conflict issues.[12]

        c.      On September 25, 2023, Debtors' counsel sent 37 compressed files to MNAT (only) comprised of prepetition RCP loan documents and lien search results, advising that the documents should not be shared with Kasowitz. Debtors' counsel also responded to MNAT's substantive questions regarding the Debtors.

        d.      On September 26, 2023, Kasowitz flatly rejected Debtors' counsel's provision of documents subject to restrictions on Kasowitz's access, and denied the existence of a conflict. Instead, Kasowitz acknowledged its prior representation of AFI and insisted that its role "would be limited to negotiations with the Debtors and would not take an adverse position on any issue in any pleading."[13]

      22.      ***As of September 26, 2023 (and thus before the September 29, 2023 status conference discussed below), Kasowitz had already taken adverse positions against the Debtors***, including, without limitation, challenging the Debtors' ability to file the Chapter 11 Cases.[14] Debtors' counsel responded to Kasowitz on September 26:

> As discussed over the weekend, **your firm has a conflict here, so we will not address any substantive case matters with you regarding the case**.
>
> Kasowitz actively represented AmeriFirst until just before the Petition Date, then challenged the ability of the Debtors to file these cases after the Petition Date, and now is purporting to represent the Committee in matters that are directly adverse to the Debtors. Kasowitz possesses privileged information that belongs to AmeriFirst. Further, Kasowitz does not have AmeriFirst's consent to represent the Committee. As your email below reflects, you are

---

[12] Email dated 9/24/23, attached hereto as Exhibit D.
[13] Email dated 9/26/23, attached hereto as Exhibit E.
[14] Email dated 8/24/23, attached hereto as Exhibit F.

already taking positions that are adverse to the Debtors. Indeed, as far as we can tell, it is unprecedented for prepetition counsel to a debtor to then seek to represent an unsecured creditors' committee post-petition, particularly over the former client's (the debtor's) objection. Indeed, Kasowitz's engagement letters with AmeriFirst have not even been terminated.

**We will respond separately and in due course to Morris Nichols' requests for information. We demand that Kasowitz not share any privileged information of AmeriFirst with either the Committee or Morris Nichols.** If any such sharing has already occurred, please advise as to the specific nature of any disclosures so that the Debtors can consider taking appropriate action. We will be sending a separate demand for Kasowitz to promptly deliver its entire client file with AmeriFirst, including all privileged information, to us.

Email dated 9/26/23, attached hereto as Exhibit G (emphasis added).

23.     On the same day, September 26, 2023, Debtors' counsel sent responsive documents to MNAT and twice thereafter on September 27, 2023 requested confirmation from MNAT that it would not share additional documents with Kasowitz. MNAT refused and responded by advising that Debtors' counsel "cannot dictate what the UCC does or who they hire."[15]

24.     On September 29, 2023, the Court held a status hearing during which Debtors' counsel advised the Court that Kasowitz's representation of the Committee creates a conflict of interest and violates Kasowitz's ethical obligations to AFI. Nevertheless, Kasowitz (a) continues to deny a conflict of interest exists; (b) fails to acknowledge its continuing duty of confidentiality to the Debtors, and (c) refuses to withdraw (instead, filing its retention application), necessitating the filing of this Objection and Motion.

E.     **Kasowitz's Adverse Advocacy**

25.     Without AFI's consent (and, indeed, over AFI's objections), Kasowitz is communicating on behalf of the Committee, holding itself out as co-counsel to the Committee,

---

[15] Email dated 9/26/23, attached hereto as Exhibit G.

and, apparently, communicating with counsel to AFI's former owners. All of these actions ignore the firm's profound conflict of interest, and highlight the untenable situation Kasowitz has created because there is no way for the Debtors (or anyone else) to police Kasowitz's conduct and protect its Client Confidences.

26. Notably, Kasowitz began taking positions adverse to the Debtors' interests before the Committee was even formed. On the Petition Date, Kasowitz (via Filusch) advised counsel for the prepetition lenders that the petitions were all "void":

> [F]or the avoidance of doubt, **it is our position that your EOD [event of default], Resolutions, petitions, are all void** given RCP's prior EOD. We will, of course, respond to the notices in due course; however, in the interim, we do not recognize these as valid legally.

Exhibit F (emphasis added). Presumably, Kasowitz was acting on behalf of AFI's former Chief Executive Officer, Eric Bowlby, and other displaced shareholders since the Debtors never authorized this communication and it was contrary to the Debtors' objectives.

27. Further, Kasowitz is now working on the Committee's expected opposition to the Debtors' proposed financing ("DIP Financing") motion [Docket No. 21]. *See* Committee Statement. Disturbingly, e-mails show that Filusch—the Kasowitz partner who lead the firm's pre-petition representation of AFI—is actively involved in this matter. Filusch filed a *pro hac vice* motion in order to represent the Committee in this case [Docket No. 209].

28. On September 26, 2023, Matthew Stein of Kasowitz emailed Debtors' counsel, copying Filusch and others, and insisted that ten categories of documents be shared immediately with the Committee in connection with the proposed DIP Financing. Such demands were, and are, clearly outside of Kasowitz's purported role as "special litigation counsel." *See* Exhibit E.

29. On October 2, 2023, and despite Kasowitz reiterating to the Court at the September 29, 2023 status conference hearing that it would be limiting itself to a special counsel role, the comments of the Committee concerning the proposed scheduling and protective order in respect of the September 29, 2023 status conference were emailed to Debtors' counsel and others by Matthew Stein of Kasowitz. *See* Exhibit I.

## **Objection and Relief Requested**

30. By this Objection and Motion, the Debtors respectfully request that the Court enter an order: (a) denying the Application; (b) disqualifying Kasowitz from serving as counsel to the Committee or to any person or entity whose interests are adverse to the Debtors; (c) directing Kasowitz to immediately turnover to the Debtors all files and records relating to its representation of the Debtors, including, without limitation, emails and, particularly, emails with the former owners or their separate counsel, the Committee, or MNAT; and (d) granting the Debtor such other and further relief as the Court deems just and proper.

## **Argument**

31. Kasowitz must be disqualified and its retention application under Bankruptcy Code section 1103 denied because its employment by the Committee would violate two fundamental precepts of the legal profession: (1) without client consent, lawyers must maintain as confidential "all information relating to the representation, whatever its source" as to both current and former clients (with limited exceptions not applicable here);[16] and (2) without

---

[16] *See* MRPC r. 1.6, comments 2 and 3, and r. 1.9(c)(2); *In re Harman*, 628 N.W. 2d 351 (Wis. 2001); *In re Meridian Auto. Systems-Composite Operations Inc.*, 340 B.R. 740, 747 (Bankr. D. DE 2006) (counsel to informal creditors committee disqualified due to related prior creditor representation).

client consent, a lawyer cannot represent (a) a party adverse to its current client,[17] or (b) another person in a substantially related matter materially adverse to the interests of its former client.[18]

32.     Here, Kasowitz must be disqualified and its retention application denied because its continued employment by the Committee would assure the continued, impermissible disclosure and use of Client Confidences by Kasowitz in violation of ethical rules and its duties to AFI. This already is evident due to (a) the fact of Kasowitz's extensive communications with parties adverse to AFI (its client or former client), (b) its advocacy and pursuit—over AFI's objection—of the same purported lender liability claims against the proposed DIP lenders that it investigated on behalf of AFI, and (c) the nature of such claims as being most assuredly heavily factual in nature.

33.     Kasowitz's representation of the Committee also is impermissible due to AFI's lack of consent thereto, which is required to preserve Kasowitz's duties of loyalty and confidentiality to AFI, and the public's confidence in the integrity of the bar. This is so even if AFI is a former client because the two representations are "substantially related" and Kasowitz's representation of the Committee is materially adverse to AFI. Specifically, Kasowitz's actual and proposed work in questioning the DIP Financing involves the same lenders with which, and debt as to which, it negotiated for AFI prepetition, and the claims that Kasowitz proposes to investigate and pursue are the same claims that were a subject of Kasowitz's representation of AFI. These circumstances make these representations "substantially related," and Kasowitz's advocacy in questioning the DIP Financing and pursuing the DIP Lenders highlights Kasowitz's materially adversity to AFI's interests, particularly to AFI's goal of obtaining DIP financing from these DIP lenders.

---

[17] *See* MRPC, r 1.7.
[18] *See* MRPC, r. 1.9(a).

34. Although the Committee is obviously entitled to oppose the Debtors' positions as to the DIP Financing and alleged claims, Kasowitz, without AFI's consent, cannot be the firm to advise the Committee and must be disqualified based on its prior representation and receipt of Client Confidences. It is early in these cases and Kasowitz's representation of the Committee has just begun. Although, when Kasowitz is disqualified, the Committee will not have the benefit of Kasowitz's knowledge of AFI's Client Confidences, that outcome is mandated by clear ethical rules that cannot be ignored.

35. For the reasons set forth herein, the Court should deny the Application and grant the Motion to disqualify Kasowitz as Committee counsel.

**A.     Committee's Application to Retain Kasowitz Must Be Denied**

36. The Application must be denied because AFI, a client of Kasowitz, is materially adverse to the Committee and does not consent to Kasowitz's representation of the Committee, and because Kasowitz's employment would result in a continuing violation of Kasowitz's duties. Specifically, Kasowitz's employment violates basic, long-standing, and unambiguous standards of professional conduct embedded in both the Bankruptcy Code and applicable ethical rules.

37. The Committee seeks to be retained pursuant to section 1103 of the Bankruptcy Code, which provides, in relevant part:

> (a) . . . with the court's approval, [the] committee may select and authorize the employment . . . of one or more attorneys . . . to represent or perform services for such committee.

> (b) An attorney . . . employed to represent a committee . . . may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case. Representation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest.

11 U.S.C. § 1103(a) and (b).

38.     Relatedly, under Bankruptcy Code section 328(c), courts may deny compensation to committee counsel if they hold an interest adverse to the estate or are otherwise not disinterested (other than if such disinterestedness is a result of representing a creditor in the same class):

> [T]he court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section . . . 1103 of this title if, at any time during such professional person's employment under section . . . 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c).  In light of such restriction on compensation, courts also consider such adversity or lack of disinterestedness in determining retention:

> The requirements of § 1103 pursuant to which the application was made in this case are the same as those under § 327 -- the professional must not have an adverse interest and must be disinterested.

*In re Pittsburgh Corning Corp.*, 308 B.R. 716, 733 (Bankr. W.D. Pa. 2004); Application at ¶ 37 (applying section 327(a) standards to its retention application and stating that section 327(a) is applicable to its retention pursuant to section 328(a)).[19]

39.     Kasowitz has not cited any case law to justify their engagement by the Committee under these circumstances.  The cases they cite either involve consent[20] or unrelated representations,[21] or the non-actual conflict relates to having represented a specific creditor, which

---

[19] *See also*, *e.g.*, *In re Enron Corp.*, No. 01-16034, 2002 Bankr. LEXIS 1720, *23 (Bankr. S.D.N.Y. May 23, 2002) ("Although § 328(c) concerns compensation and not retention, when read in conjunction with § 1103(b), § 328(c) has been interpreted to impose additional considerations in analyzing the retention of committee professionals under § 1103(b) by incorporating standards [of disinterestedness]."); *In re Caldor*, 193 B.R. 165, 170-171 (Bankr. S.D.N.Y. 1996); 7 Collier on Bankruptcy ¶ 1103.04 (16th 2023) (discussing relationship between sections 1103 and 328).

[20] Application at ¶¶ 32-33 (discussing *In re National Financial Enterprises, Inc.*, 298 B.R. 112 (Bankr. S.D. Ohio 2003) (considering whether conflict was so material that retention should be denied even where debtors' counsel supported the retention)).

[21] Application at ¶ 34 (discussing *In re JAB Energy Solutions II, LLC*, Case No. 21-11226 (Bankr. D. Del. Dec. 7, 2021)).

is statutorily carved out from requiring denial of a retention application.[22] Importantly, what these cases do reflect is that courts properly take ethical considerations into account.

40.     Indeed, because the Bankruptcy Code provisions cited above and the separate ethical rules are based on the same the principles, courts often look to rules of professional conduct in recognition that such rules can inform a court's decision on retention.[23] In *Bingham Greenebaum Doll, LLP v. Glenview Health Care Facility, Inc. (In re Glenview Health Care Facility, Inc.)*, 620 B.R. 582, 589 (6th Cir. B.A.P. 2020), the court explained:

> Because § 1103 requires the bankruptcy court's approval for employment of committee counsel, it is perfectly appropriate for the bankruptcy court to consider state rules governing the professional responsibility of an attorney to the extent adopted by the federal court and put in issue by the parties.

*Id.* In *Century Indem. Co. v. Congoleum Corp. (In re Congoleum Corp.)*, 426 F.3d 675, 688 (3d Cir. 2005), the Third Circuit noted that: "In addition to the standards established by professional ethics, attorneys retained in bankruptcy proceedings are also required to meet the restrictions imposed by section 327 of the Bankruptcy Code."[24] Here, Kasowitz's violation of ethical rules reflects this lack of disinterestedness and the existence of material adversity requiring denial of the Application.

## B.     Kasowitz Must Be Disqualified Based on Ethical Rules Violations

41.     Irrespective of the Court's determination under section 1103, Kasowitz should be disqualified for violating applicable professional ethics rules.  A court's power to

---

[22] Application at ¶ 35 (discussing *In re Diva Jewelry Design, Inc.*, 367 B.R. 463, 464, 472-3 (Bankr. S.D.N.Y. 2007); *In re Milford Grp., Inc.*, 164 B.R. 899 (Bankr. M.D. Pa. 1993); *In re Nw. Corp.*, 346 B.R. 84, 85-88 (D. Del. 2006)).
[23] *In re Boy Scouts of Am.*, 35 F.4th 149, 161 ("a court's decision on retention may be informed by counsel's conduct implicating the Rules of Professional Conduct") (assessing retention under section 327 rather than 1103).
[24] In *In re Boy Scouts of Am.*, 35 F.4th at 159, the Court explained that in *Congoleum*, *supra*, the same facts that reflected a violation of ethical rules supported a denial of retention under the Bankruptcy Code.

disqualify an attorney derives "from its inherent authority to supervise the professional conduct of attorneys appearing before it." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980); *see also In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984) (same). It is axiomatic that "courts have vital interests in protecting the integrity of their judgments, maintaining public confidence in the integrity of the bar, eliminating conflicts of interest, and protecting confidential communications between attorneys and their clients." *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1203 (E.D. Pa. 1992); *see also United States v. Moscony*, 927 F.2d 742, 749 (3d Cir. 1991) (same).

> **(1) The Application Must be Denied, and Kasowitz Must Be Disqualified, Because Kasowitz Violated Its Duty Not to Reveal or Use Client Confidences Without AFI's Consent.**

42.     As described above, Kasowitz has been improperly disclosing and using AFI's Client Confidences, and if it remains employed by the Committee, could not help but to continue to do so. The Bankruptcy Court for the District of Delaware incorporates the ABA Model Rules of Professional Conduct in its local rules governing professional conduct.[25] Bankr. D. Del. L.R. 9010-1(f); *see Int'l Bus. Mach. v. Levin*, 579 F.2d 271, 279 n.2 (3d Cir. 1978) ("[T]he conduct of practitioners before the federal courts must be governed by the rules of those courts."). Courts rely on the Model Rules to determine whether attorneys appearing before it have violated ethical obligations, including those pertaining to conflicts of interests. *Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*, 49 F.4th 223, 228 (3d Cir. 2022).

43.     Under Model Rules 1.6 and 1.9, made applicable by Local Rule 9010(f), and the circumstances here, Kasowitz is barred from using or disclosing Client Confidences absent

AFI's consent, which AFI has not given. Model Rule 1.6 prohibits the disclosure or use of client

confidences, as follows:

> (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).
>
> (b) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:
>
> > (1) to prevent reasonably certain death or substantial bodily harm;
> >
> > (2) to prevent the client from committing a crime or fraud that is reasonably certain to result in substantial injury to the financial interests or property of another and in furtherance of which the client has used or is using the lawyer's services;
> >
> > (3) to prevent, mitigate or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services;
> >
> > (4) to secure legal advice about the lawyer's compliance with these Rules;
> >
> > (5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client;
> >
> > (6) to comply with other law or a court order; or
> >
> > (7) to detect and resolve conflicts of interest arising from the lawyer's change of employment or from changes in the composition or ownership of a firm, but only if the revealed information would not compromise the attorney-client privilege or otherwise prejudice the client.
>
> (c) A lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client.

MRPC r. 1.6. [26]  A lawyer is only excused from the duty of confidentiality under very limited circumstances set forth under Model Rule 1.6(b) (e.g., prevention of death or bodily harm), not applicable here.[27]  Model Rule 1.6(c) requires the lawyer to safeguard client confidences against inadvertent or unauthorized disclosure.

44.     Comments to the Model Rules and applicable case law make clear that client-lawyer confidentiality is fundamental to the attorney-client relationship because it contributes to trust and encourages full communication, even when the information may be sensitive or legally damaging to the client.  *See*, *e.g.*, MRPC r. 1.6, Comment 2; *McClure v. Thompson*, 323 F.3d 1233, 1242 (9th Cir. 2003).  Moreover, client confidences are not limited to privileged communications and, instead, embrace all information gained during or relating to the representation "whatever its source."  MRPC r. 1.6(a); *see also* MRPC r. 1.6, Comment 3 ("The confidentiality rule [] applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source."). This Court has previously recognized that legal conclusions and advice with respect to credit documents (which were central to Kasowitz's prepetition representation of AFI) are the type of "client confidences" protected from disclosure under applicable ethical rules:

> Milbank insists that the only information it received from Stanfield was the content of the Credit Documents, which were not proprietary to Stanfield and, in fact, were already accessible by the FLC.
>
> This misses the point. The duty of confidentiality "applies not only to matters communicated in confidence by the client but also to *all information* relating to the

---

[26] To the extent that New York or Arizona rules of professional conduct may be potentially applicable or govern the attorney-client relationship based on Kasowitz's engagement agreement or AFI's place of incorporation, respectively, each state has either verbatim or in substance adopted the relevant provisions of the Model Rules of Professional Conduct so there is no material difference based on choice of law.

[27] The duty of confidentiality is separate from the duty of loyalty, and does not depend on whether the matter is adverse or creates a conflict of interest.  Pursuant to the duty of confidentiality, a lawyer is obligated to protect client confidences by asserting the attorney-client privilege and other applicable protections in response to a court order or subpoena for the production of information.  *See* Rule 1.6, Comment 15.  The Rule does not turn on how the client confidences will be used or the type of proceeding for which it is sought.

representation, *whatever its source*." Model R. Prof'l Conduct 1.6, cmt. [3] (emphasis added). <u>Milbank's own legal conclusions about the Credit Documents and advice to Stanfield are particularly confidential.</u>

Knowledge of this confidential information could materially advance the FLC's position by giving it a head start in assessing the intercreditor issues arising under the Credit Documents and revealing precisely what Stanfield perceived to be the strengths and weaknesses of its own position. *See Webb v. E.I. DuPont de Nemours & Co.*, 811 F. Supp. 158, 162 (D. Del. 1992) ("Adverse use of confidential information is not limited to disclosure. It includes knowing . . . what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses."). This is particularly relevant here because the parties are currently embroiled in intense negotiations about the Debtors' plan of reorganization.

*In re Meridian Auto. Systems-Composite Operations, Inc.*, 340 B.R. 740, 747-48 (Bankr. D. Del. 2006) (emphasis added).

45.     Even if AFI is a former client, Kasowitz remains prohibited from using or disclosing Client Confidences absent AFI's consent, which AFI has not given, pursuant to Model Rule 1.9(c).  Model Rule 1.9(c) provides:

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

MPRC r. 1.9(c).

46.     As to disclosure of Client Confidences of a former client, as explained in an opinion of the ABA, an attorney's duties of confidentiality are the same as for current clients:

Model Rule 1.9(c)(2) governs the revelation of former client confidential information. Under Model Rule 1.9(c)(2), a lawyer who formerly represented a client in a matter, or whose present or former firm formerly represented a client in a matter, may not reveal information relating to the representation except as the Model Rules "would permit or require with respect to a [current] client." Lawyers thus have the same duties not to reveal former client

confidences under Model Rule 1.9(c)(2) as they have with regard to current clients under Model Rule 1.6.

ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 479 (2017) (discussing the "generally known" exception to former-client confidentiality).

47.     The violation or potential violation of a lawyer's duty of confidentiality makes disqualification appropriate.  This Court disqualified a firm from representing corporate defendants sued by a chapter 7 trustee due to the firm's prepetition representation of the debtor, stating:

> Generally, a lawyer may litigate against a former client only with that client's "informed consent, confirmed in writing." Model Rule 1.9. "'Informed consent' denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives [**9] to the proposed course of conduct." Model Rule 1.0(e).

*Miller v. Sun Capital Partners (In re IH1 Inc.)*, 441 B.R. 742, 746 (Bankr. D. Del. 2011).

48.     Kasowitz is violating Model Rules 1.6(a) and 1.9(c) by knowingly revealing and using AFI's Client Confidences in advising the Committee with respect to DIP Financing and whether to seek standing to bring claims against RCP and proposes in its Application to continue to violate such rules.[28] Absent informed consent from AFI, Kasowitz is prohibited from discussing the Client Confidences (including with the Committee or MNAT) or using the Client Confidences to the disadvantage of the Debtors or for the advantage of Kasowitz, the Committee or other third parties.

49.     Kasowitz acknowledges it proposes to use Client Confidences gained from its prepetition representation of AFI for the Committee, and promotes the use thereof as efficient:

> Further, the Committee believes that Kasowitz's prior adversity to certain non-debtor parties-in-interest, including RCP Credit Opportunities Fund

---

[28] Additionally, Filusch's continued involvement similarly confirms that Kasowitz has disclosed Client Confidences.

Loan SPV (Fund III), L.P. and RCP Customized Credit Fund (Fund-IV-A), L.P., (collectively "RCP"), will deliver cost and timing efficiency in evaluating and potentially litigating viable claims for the benefit of unsecured creditors.

Application at ¶ 1.

50.     Kasowitz justifies its breach of duties of confidentiality by presumptuously asserting that the Committee's interests are aligned with those of the Debtors.  However, there is no "lack of harm" or "lack of adversity" exception to the prohibition against disclosure of Client Confidences set forth in Model Rules 1.6(a) and 1.9(c)(2).

51.     In addition, the Committee's and Debtors' interests are not necessarily aligned.[29]   The Committee appears to oppose or at least question the DIP Financing and has asserted that it should bring the claims against the prepetition and proposed DIP lenders (RCP) rather than the Debtors.  The Committee's questioning of the DIP Financing and desire for control of these claims represent material adversity with AFI.[30] Whether and how the Debtors wish to pursue claims against RCP is not for Kasowitz to decide, and Kasowitz cannot counsel the Committee on such matters without AFI's consent.

### (2) The Committee's Employment of Kasowitz, to Which AFI Does Not Consent, Violates Model Rule 1.7.

52.     To the Debtors' knowledge, Kasowitz never terminated its representation of AFI prior to soliciting and accepting the representation of the Committee. Even if the

---

[29] *See Becker v. Bank of N.Y. Mellon Trust Co., N.A.*, 2016 U.S. Dist. LEXIS 138485, at *92-93 (until settlement is reached aligning interests of debtors and bondholder creditor in prompt confirmation of a plan, their interests are potentially adverse as debtor has a duty to maximize assets for the benefit of *all* creditors).

[30] The notion that the Committee and the Debtors are aligned also is undercut by Kasowitz's promotion of its "prior adversity to certain non-debtor parties-in-interest," Application at ¶ 1, as being a benefit to the Committee. The benefit of this prior adversity is Kasowitz's resulting possession of facts, analyses and conclusions concerning the then adverse parties or related documents. Because those were acquired during its representation of AFI, they are Client Confidences.  Such Client Confidences only have material value to the Committee if the Committee is adverse to the Debtors' positions regarding, or as to the handling of, such matters.

representation is deemed to have subsequently terminated, at least as of the time Kasowitz pitched its services to the Committee, it was at that time currently conflicted from accepting, let alone soliciting, such representation under Model Rule 1.7.[31]  Under Model Rule 1.7:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
>> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>>
>> (2) each client consents after consultation.
>
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyers' responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
>> (1) the lawyer reasonably believes the representation will not be adversely affected: and
>>
>> (2) the client consents after consultation.

MCPR r. 1.7.

53.     As applied to the parties, here, Model Rule 1.7 mandates that without AFI's consent, Kasowitz cannot represent the Committee if either (a) Kasowitz's representation of the

---

[31] To the extent Kasowitz argues it is not governed by Model Rule 1.7 because the relationship is, at a minimum, impliedly terminated, there can be no dispute that Kasowitz represented AFI through at least August 24, 2023, the Petition Date.  Importantly, it is not the act of termination that is necessarily material in the "current client" vs. "former client" distinction in the Model Rules.  A focus is the temporality of the adverse engagements.   As noted by the Fifth Circuit:

> In a claim involving concurrent representation, there is an obvious temporal relationship and the substantive relationship between the two representations may also tend to be closer. *See*, *e.g.*, *United States v. Malpiedi*, 62 F.3d 465, 467-68 (2d Cir. 1995); *Nealy v. Cabana*, 782 F.2d 1362, 1363-65 (5th Cir. 1986). Similarly, in a case of successive representation, both the temporal and substantive relationship between the two representations may be quite remote. *See*, *e.g.*, *Enoch [v. Gramley]*, 70 F.3d [1490] at 1495-97 [(7th Cir. 1995)]. Those generalizations may not, however, hold universally true. *See United States v. Winkle*, 722 F.2d 605, 609-12 (10th Cir. 1983); *see also Church [v. Sullivan]*, 942 F.2d [1501] at 1511 & n.8 [(10th Cir. 1991)] (rejecting focus upon whether multiple representations were concurrent or successive in favor of a focus upon the relationship between the multiple representations).

*Perillo v. Johnson*, 205 F.3d 775, 798 (5th Cir. 2000). It is almost certain that Kasowitz's representation in matters related to AFI ran, without a break, from AFI (through at least August 24) to AFI's former shareholder Bowlby (on whose behalf Kasowitz sent the 8/24/23 Email attached hereto as Exhibit F) to the Committee shortly after its appointment.  Which representations were concurrent as compared to terminated and then commenced is ambiguous at best, but evidences that there was no meaningful temporal distinction.

Committee is directly adverse to the Debtors or (b) if Kasowitz's representation of the Committee may be materially limited by Kasowitz's responsibilities to AFI. Although an ethical wall would be insufficient here regardless, Kasowitz made no effort to create one to even attempt to prevent or mitigate imputation of the clear conflict among attorneys at the firm.[32] In this case, Filusch, the very attorney who led the AFI engagement, is already actively representing the Committee! It is plainly impossible for Filusch to implement an internal screening wall within his brain.[33]

54. The unusual circumstance faced here of a debtor's counsel seeking to become counsel to the chapter 11 committee was considered and rejected in *In re South Pacific Island Airways*, 68 B.R. 574, 577 (Bankr. D. Haw. 1986). There, the bankruptcy court found that, having served as counsel for the debtors in some matters relating to the bankruptcy proceeding, counsel could not represent the committee. It determined that where a debtor and creditors' committee have an actual *or potential* dispute between themselves in the method of operating debtor's business, they hold an adverse interest to each other. *Id.* Another case, *Becker v. Bank of N.Y. Mellon Trust Co., N.A.*, 2016 U.S. Dist. LEXIS 138485, at *92-93, clarified that sufficiently problematic adversity can arise even as to matters not directly adverse. There, the district court noted that actions taken by a bondholder creditor, even if not directly adverse such as through an objection, can pose a grave conflict if "the timing of the motion alone create[s] the risk of postponement" of confirmation of a plan or loss of financing. *Id.*[34]

---

[32] Model Rule 1.10(a)(2) provides guidance on *how* a client's confidences can be protected by providing screening as "a mechanism to give effect to the duty of confidentiality, not a tool to undermine it" while also allowing courts the discretion to disqualify attorneys where it is reasonable under the circumstances of the case before them. *Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*, 626 B.R. 249, 256 (Bankr. D. Del. 2021), *aff'd*, 49 F.4th 223 (3d Cir. 2022).

[33] In *Maxus Energy*, for example, the bankruptcy court grappled with whether a screening wall/conflict of interest policy could be effective where the attorney from one firm moved to and married a partner at the firm representing the adversary.

[34] In *Becker v. Bank of N.Y. Mellon Trust Co., N.A.*, *supra,* however, the parties had consented to the conflicted representation; the issue in that case was whether the conflict could be waived by consent.

55.     Here, the Committee and Debtors already have actual disputes between themselves concerning, *inter alia*, the nature and amount of documents to which the Committee is entitled concerning the DIP financing, and potentially as to granting the motion for DIP financing. Further, although the Debtors are seeking financing from the DIP lenders, Kasowitz already is advocating for the Committee for pursuit of claims against the proposed DIP lenders (that are offering what the Debtors view as needed financing). Although Committee scrutiny of the DIP financing is expected, Kasowitz, as AFI's counsel or former counsel, holding Client Confidences on related matters, should not be weighing in or involved in any respect. Certainly, to the extent Kasowitz's representation jeopardizes the Debtors' DIP Financing, such actions are materially adverse.[35]

56.     Kasowitz at one point suggested that it could resolve its conflict issues by only acting as special counsel to the Committee in connection with bringing claims against RCP. First, and most critically, this is where the conflict is most acute. Kasowitz, and, in particular, Filusch, would be advising the Committee using Client Confidences of AFI on a matter where the Debtors' management and the Committee are not presently in agreement.  Regardless, Kasowitz, by its Application, seeks a far broader role, and it already has held itself out as general bankruptcy counsel to the Committee, has participated in emails concerning general Committee representation issues, and rejected for the Committee restrictions on the Debtors' provision of documents to the

---

[35] Whether or not otherwise effective, any proposed remedies other than denial of the Application and disqualification of Kasowitz are practically infeasible. Kasowitz early on indicated that it only would take a limited, special counsel role in investigating or pursuing claims against RCP and presumably related third parties. It then proceeded to ignore that limitation in conducting itself, involving itself with all aspects of the DIP Financing and the case, and filing the Application that describes a far broader role for itself, with only vague and ambiguous limitations.  Moreover, at times it seems to argue that adversity only consists of naming a party in a lawsuit.  Yet, adversity is not limited to litigation matters. Material adversity also typically encompasses negotiations and transactional matters and may include examining a former client in a substantially related matter even where no information from the prior representation is used. ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 497 (2021) (discussing the "generally known" exception to former-client confidentiality).

Committee. Moreover, Kasowitz's open hostility to current management of AFI (to whom Kasowitz did not send a formal termination letter, and with whom Kasowitz failed to even consult regarding its potential representation of the Committee) creates a substantial concern of the Debtors that Kasowitz views its loyalty as flowing not to AFI (or the Committee, for that matter) but to AFI's former equity holder Mr. Bowlby, on whose behalf Kasowitz, just several weeks ago, challenged the propriety of the change of control.

57.     Without AFI's consent, Model Rule 1.7 mandates disqualification because, among other things as more fully set forth above, Kasowitz's representation is currently and foreseeably directly adverse to the Debtors.[36]

### (3) Alternatively, Kasowitz Is Prohibited from Representing the Committee Under Model Rule 1.9(a).

58.     Even if AFI was a former client, Kasowitz's representation of the Committee also is impermissible due to AFI's lack of consent thereto, because the two representations are "substantially related" and Kasowitz's representation of the Committee is materially adverse to AFI. Representations adverse to *current* clients, absent consent, are prohibited because they implicate an attorney's duties of loyalty and independent judgment.[37]

---

[36] Kasowitz also is disqualified from representing the Committee under Model Rule 1.7(c)(2) as there is plainly a significant risk that its representation of the Committee may be materially limited by Kasowitz's duties to not use or disclose Client Confidences of at least AFI, which duty arises because AFI is a client or former client and there is a substantial relationship between Kasowitz's prior representation of AFI and its representation of the Committee, as discussed herein. Moreover, the Application says nothing about Kasowitz's ability to handle the investigation, valuation or pursuit of claims against non-debtor third party Eric Bowlby, AFI's former Chief Executive Officer, against whom the estate may well have claims. What is known is that (1) Mr. Bowlby, who is listed in the Application as a Client Affiliate, is believed to have directed Kasowitz in its representation of AFI, (2) the Debtors are unaware of Mr. Bowlby having had separate representation from AFI during Kasowitz's prepetition negotiation of the Settlement Agreement and related documents, including Mr. Bowlby's pledge and guarantee agreements, and (3) Kasowitz sent the August 24, 2023 email challenging the change in control, for which Mr. Bowlby would appear to be the primary beneficiary. If Kasowitz also were limited by duties to Bowlby, Model Rule 1.7(c)(2) might require disqualification for that additional reason. Moreover, if so limited as to matters involving its prior representation of AFI and matters involving Mr. Bowlby, any purpose to its retention as special counsel becomes unclear.

[37] See MRPC, r.1.7, comment 6; *Bd. of Trs. of Leland Stanford Junior Univ. v. Yuzhen Zhang*, __ F.Supp.3d __, No. 19-cv-02904, 2023 U.S. Dist. LEXIS 90086, *9 (N.D. Cal. March 6, 2023) ("In the case of concurrent adverse representation, 'a more stringent per se rule of disqualification applies' because it involves a breach of

Representations substantially related to the representation of a *former client*, absent consent, are prohibited because they implicate a lawyer's duty to preserve the confidentiality of information relating to the representation, whatever its source, and to maintain public confidence in the integrity of the bar and the right of a client to expect the loyalty of his attorney in the matter for which the attorney is retained.

59. Model Rule 1.9(a), which addresses duties of lawyers to former clients and provides that, absent the consent of a former client, "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially similar matter in which that person's interests are materially adverse to the interests of the former client." MRPC r. 1.9(a).[38]

60. Model Rule 1.9 "is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him. Without such a rule, clients may be reluctant to confide completely in their attorneys." *In re Corn Derivatives Antitrust Litig.*, 748 F.2d at 162. "[T]he rule is important for the maintenance of public confidence in the integrity of the bar." *Id.* Therefore, "'any doubts which the court may have regarding the appropriateness of disqualification should be resolved in favor of disqualifying the former counsel and, thus, preserving the confidences of the former client.'" *Enzo Life Scis., Inc. v. Adipogen Corp.*, No. 11-cv-00088, 2013 U.S. Dist. LEXIS 164939, *6, 2013 WL 6138791 (D. Del. Nov. 20, 2013) (quoting *INA Underwriters Ins. Co. v. Nalibotsky*, 594 F. Supp. 1199, 1207 (E.D. Pa. 1984) (not a Model Rules case)). Assuming that the relationship between the Kasowitz and AFI was properly

---

a duty of loyalty."); *Becker v. Bank of N.Y. Mellon Trust Co., N.A.*, No. 11-6460, 2016 U.S. Dist. LEXIS 138485, *96, 2016 WL 5816075 (E.D. Pa. Oct. 5, 2016) ("If a lawyer's representation of a client involves a conflict of interest, the lawyer's loyalty and independent judgment are called into question").

[38] Under Rule 1.10, such conflicts are imputed to a lawyer's entire firm. As a result, a firm cannot represent a client if one of its lawyers would be unable to do so under Rule 1.9. MRPC r. 1.10(a).

terminated before any conflict existed, and only Model Rule 1.9 applies, Kasowitz must be disqualified under Model Rule 1.9(a) because its representation of the Committee is substantially related to the representation of AFI and the two clients have materially adverse interests relating thereto.[39]

### a. The Committee Work Is Substantially Related.

61.     Disqualification under Model Rule 1.9(a) requires an analysis of whether the matter is "substantially related" to the matter involved in the former representation. Courts have routinely considered three factors when performing the substantial relationship analysis: 1) the nature and scope of the prior representation; 2) the nature and scope of the current representation; and, 3) during the prior representation, the possibility that the client disclosed confidences to his attorney which could be relevant to the current action and detrimental to the former client in the course of the current litigation. *See, e.g., Talecris Biotherapeutics, Inc. v. Baxter Int'l, Inc.*, 491 F. Supp. 2d 510, 514 (D. Del. 2007); *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1204 (E.D. Pa. 1992) (*citing Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (3d Cir. 1972), *cert. denied*, 411 U.S. 986, 93 S. Ct. 2271, 36 L. Ed. 2d 964 (1973).  Each of these three factors supports the conclusion that Kasowitz's work for the Committee is substantially related to its representation of AFI.

62.     As it relates to the third factor for determining if two matters are "substantially related," the Court's concern is, among other things, for the preservation of the confidences and secrets of the former client. *American Roller Co. v. Budinger*, 513 F.2d 982 (3d Cir. 1975). Yet, it is the possibility of the attorney having Client Confidences that matters rather than any need to prove what actual Client Confidences the attorney may have.  As one court

---

[39] Independently, Kasowitz cannot use or reveal information relating to its representation of AFI (not limited to confidential information) against AFI under Rule 1.9(c) as discussed above.

explains: "[t]he question is not whether the attorney actually acquired confidential information, but whether confidential information that may have been gained in the first representation [may be] used to the detriment of the former client in the subsequent action." *Greenwood Land Co. v. Omnicare, Inc.*, No. 09-cv-686, 2009 U.S. Dist. LEXIS 74374, *15 (W.D. Pa. Aug. 20, 2009) (internal quotation marks and citation omitted). This Court has similarly viewed this standard:

> Because the Court finds that the matters in this adversary proceeding are substantially related to the matters on which Kirkland had previously represented Debtors, it is not necessary for Trustee to identify any confidential information Kirkland obtained from this prior representation. Disqualification, therefore, is appropriate unless Debtors consented or Trustee has waived the grounds for disqualification.

*Miller v. Sun Capital Partners (In re IH1 Inc.)*, 441 B.R. at 746.

63. *Nature and Scope of Prior Representation.* As set forth in greater detail above, although the December 2022 retention agreement of Kasowitz indicates that its representation was limited to analyzing potential litigation claims against RCP and attempting to negotiate a resolution thereof (and Kasowitz appears to have investigated borrowing and related financial information), Kasowitz did not so limit its representation. By example, Kasowitz advised AFI regarding the prepetition loans and May 2023 workout. Thereafter, it also appears to have advised AFI on more general financing matters.

64. *Nature and Scope of Current Representation.* Kasowitz initially held itself out and acted as general bankruptcy counsel to the Committee. This included Kasowitz sending email communications concerning general Committee representation issues and the Committee's rejection of restrictions on the Debtors' provision of documents, and Kasowitz advising Phoenix

and AFI, *its client*, that they "cannot dictate what the UCC [their new client] does or who they hire."[40]   In a wholly inadequate attempt to circumvent conflicts, Kasowitz and the Committee subsequently stated that Kasowitz's role would be limited to acting as special litigation counsel to the Committee to investigate and determine whether the estate has viable claims against RCP and other parties. Although, regardless, the Application provides for a much broader role for Kasowitz, this proposed more limited scope is unquestionably substantially related to Kasowsitz's prior representation of AFI, which was primarily for the same purpose.

65.     *Possibility of Disclosure of Information*. Here, there does not just exist the possibility of disclosure of Client Confidences.  Indeed, as set forth above, Kasowitz is almost certainly disclosing and using Client Confidences gained from its prepetition representation of AFI.  Although this disclosure and use are independent grounds for disqualification based on duties of preserving client information as confidential, it also further establishes the "substantial relationship" of the prior and current matters.  But, regardless of whether there is evidence of the disclosure of Client Confidences, in determining whether a "substantial relationship" exists, "the court need not, nor should it, inquire into whether an attorney actually acquired confidential information during the prior representation related to the current representation. Rather, the court's primary concern is whether confidential information that *might* have been gained in the first representation may be used to the detriment of the former client in the subsequent action." See *Integrated Health Servs. of Cliff Manor, Inc. v. THCI, Co. LLC*, 327 B.R. 200, 206 (D. Del. 2005) (emphasis added).

---

[40] *See* Exhibit H.

66.     All three factors lead to the inescapable conclusion that the matter in which Kasowitz represented AFI is substantially related to the matters in which Kasowitz represents and proposes to represent the Committee, thus requiring disqualification of Kasowitz because of the significant, potential and actual adversity between the Committee and the Debtors including with respect to Kasowitz's proposed role as special litigation counsel to investigate and pursue claims of the Debtors and their estate against RCP and other parties.

**b. The Committee's Interests Are Materially Adverse to the Debtors.**

67.     There does not appear to be a dispute that Kasowitz's representation of the Committee, generally, would constitute a representation of an interest materially adverse to the Debtors. *See In re South Pacific Island Airways*, 68 B.R. at 577. Indeed, Kasowitz has attempted to cleanse its conflict by stating that the firm would not serve as counsel to the Committee in any manner adverse to the Debtors, and would limit their representation to being "special litigation counsel to investigate and determine whether the estate has viable claims against [the Proposed DIP Lenders] or other non-debtors in these Chapter 11 Cases." Committee Statement, ¶11.

68.     Such a proposed course of action as special litigation counsel only exacerbates the problem. Even if the Application and Kasowitz's conduct to date did not reflect that it is pursuing a much broader role in its representation of the Committee, this purportedly limited role that Kasowitz describes would involve Kasowitz representing the Committee on essentially the very same matter that was a material if not central aspect of its prepetition representation of AFI. Moreover, despite the prohibitions of Model Rules 1.6 and 1.9(c)(2) that have no exceptions to their confidentiality rules for aligned interests, this purportedly limited role would involve Kasowitz disclosing and using Client Confidences of AFI with respect to such matter to the benefit of the Committee and against the interests of AFI. AFI's current management

may or may not by the time of the final hearing on DIP financing have a view of these alleged lender liability claims differing from that of the Committee. In the meantime, the Debtors' current management has clear disagreements with the Committee regarding how these claims should be dealt with. The Committee's premature and aggressive assertion of claims that belong to the estate may jeopardize the DIP Financing, which financing the Debtors believe is in the best interests of their estates.

69.     Regardless, it is clear that Kasowitz is not limiting its representation to special litigation counsel against RCP. Kasowitz sought to represent the Committee on a general basis [*see* 9/21 Email, Exh. C] and has been representing the Committee on matters far broader than investigating or bringing claims against RCP. *See*, *supra*, at ¶ 27.[41] Moreover, the Application of Kasowitz provides for an extremely broad role for Kasowitz subject only to a limiting phrase appearing differently in the body of the Application (p. 9) and in Matthew Stein's declaration (p. 25), that "Kasowitz will not take any action that is adverse to the Debtors or their respective estates," or that "Kasowitz will limit its work that concerns ore (sic) relates to litigation against non-Debtor third parties," leaving to Kasowitz to self-police one, the other or both of these vague standards.

70.     Considering the early stage of this case, the relevant considerations of preserving the integrity of legal proceedings and preventing unfair prejudice noted by the Third Circuit in *Corn Derivatives* overwhelmingly weighs in favor of disqualification. Thus, under Model Rule 1.9(a), Kasowitz must be disqualified because it is a "lawyer who has formerly

---

[41] Kasowitz also has attempted to cleanse its conflict by arguing that the Debtors are no longer operating a business and liquidation of the estate's assets must mean that the Committee's interests necessarily align with those of the Debtor in maximizing value and minimizing costs. This case remains, however, a chapter 11, in which the Debtors and Committee may differ on the best course toward the maximization of estate values. In that regard, the Debtors retain the right to protect their Client Confidences from release without their consent.

represented a client in a matter" and, without AFI's consent, is representing "another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client."

## Conclusion

71.     For all of the foregoing reasons, the Application should be denied and the Motion granted disqualifying Kasowitz and affording the other relief requested herein.

## Notice

72.     The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the lenders under the Debtors' prepetition credit facility; (d) the Committee; and (e) any party that requests service pursuant to Bankruptcy Rule 2002.

## No Prior Request

73.     No prior request for the relief sought in this Motion has been made to this Court or any other Court.

WHEREFORE, the Debtors respectfully request entry of an order: (a) denying the Application; (b) disqualifying Kasowitz from serving as counsel to the Committee; (c) directing Kasowitz to immediately turn over to the Debtors all files and records relating to its representation of the Debtors, including, without limitation, emails and, particularly, emails with the former owners or their separate counsel, the Committee, or MNAT; and (d) granting the Debtor such other and further relief as the Court deems just and proper.

Dated:  October 11, 2023　　　　**PACHULSKI STANG ZIEHL & JONES LLP**

_/s/ Laura Davis Jones_
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:   302-652-4100
Facsimile:    302-652-4400
Email: ljones@pszjlaw.com
　　　 dbertenthal@pszjlaw.com
　　　 tcairns@pszjlaw.com

_Counsel for Debtors and_
_Debtors in Possession_