# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERIFIRST FINANCIAL, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11240 (TMH)<br><br>(Jointly Administered) |

**DEBTORS' OBJECTION TO
UNITED STATES TRUSTEE'S MOTION TO TRANSFER VENUE**

The above-captioned debtors and debtors in possession (the "Debtors") hereby object to the motion to transfer venue of these bankruptcy cases [Docket No. 142] (the "Motion to Transfer") to the U.S. Bankruptcy Court for the District of Arizona (the "Arizona Bankruptcy Court"), filed by Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"). Interested Party Eric Bowlby ("Mr. Bowlby") has filed a joinder to the Motion to Transfer [Docket No. 144] (the "Joinder"). In support of this objection, the Debtors respectfully state as follows:

**Preliminary Statement**

1. The Motion to Transfer is based on the U.S. Trustee's unsupported allegation that the Debtors have "abused the bankruptcy system" by manufacturing venue on the eve of bankruptcy in order to file here. That is not what happened.

2. Prior to the Petition Date (as defined below), the Debtors' prepetition lenders, RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. and RCP Customized Credit Fund (Fund IV-A), L.P. (the "Prepetition Lenders"), exercised their available remedies under a

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Phoenix 1040 LLC (2550); and AmeriFirst Financial, Inc. (4557). The location of Debtor AmeriFirst Financial, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 1550 McKellips Road, Suite 117, Mesa, Arizona 85203.

stock pledge (the "Stock Pledge") to take control of the voting stock in Debtor AmeriFirst Financial, Inc. ("AmeriFirst"). *See* **Exhibit A** (Stock Pledge). As is customary, the Prepetition Lenders needed to place the stock of AmeriFirst somewhere. They decided to assign the stock to Debtor Phoenix 1040 LLC ("Phoenix"), a Delaware entity that they had created a couple months earlier. Notably, both of the Prepetition Lenders are also Delaware entities, so it made perfect sense that Phoenix too would be a Delaware entity for purposes of holding the stock in AmeriFirst. The Debtors themselves had no say in this process and certainly did not "manufacture venue". After the Prepetition Lenders' exercise of rights under the Stock Pledge, the Debtors found themselves in a situation where AmeriFirst was hopelessly insolvent and needed to file for bankruptcy protection. Consistent with common bankruptcy practice, Phoenix was filed as the lead Debtor in order to ensure that the stock of AmeriFirst also would be subject to the automatic stay.

3. Venue is proper in this forum because Phoenix is a Delaware entity and owns 100% of the stock of AmeriFirst. The U.S. Trustee does not even challenge that venue is legally proper here.

4. The U.S. Trustee seeks to transfer venue in the interest of justice and the convenience of the parties on the basis that the Arizona Bankruptcy Court is a more efficient forum than this Court. The U.S. Trustee bears the burden of proof on this point. Yet, the U.S. Trustee waited for nearly one month after the filing of these cases to file the Motion to Transfer and then did not bother to set it for hearing until the matter was raised at a status conference on September 29, 2023. The Motion to Transfer will not be heard until October 20, 2023, almost two months into these cases. Much has happened and will continue to happen by then. A number of first day

2

motions have been approved, a debtor-in-possession financing facility is in place, and various sale, employee retention, and professional employment pleadings have been filed and are set for hearing later this month. The Debtors are also working a liquidating chapter 11 plan. Notably, the Committee (as defined below) was appointed on September 15, 2023, and has yet to support the Motion to Transfer.

5. The Debtors submit that a transfer of venue to the Arizona Bankruptcy Court will not further the interest of justice or the convenience of the parties, but rather would only cause additional delay and cost. Importantly, no legitimate creditor supports the Motion to Transfer as yet. Only Mr. Bowlby has filed the Joinder. Mr. Bowlby is AmeriFirst's disgruntled and replaced former majority owner, president, chief executive officer, and chairman of the board. He asserts disputed claims for unpaid wages since his removal (while at the same time admitting elsewhere that the Debtors did commit to pay him for his time) and potential indemnity rights (for what is unclear). The Debtors' investigation of potential claims against Mr. Bowlby is ongoing. In any case, it would be an event of default under AmeriFirst's postpetition loan facility (the "DIP Facility") for a venue transfer to be ordered. The DIP Facility matures on December 31, 2023.

6. The reality is that a transfer of venue could be disastrous to these cases. The Debtors' ability to borrow money under the DIP Facility or use cash collateral would be placed at grave risk. A new judge in the Arizona Bankruptcy Court would have to learn about the Debtors and these cases from scratch. A whole new set of lawyers in Arizona would need to be employed by the Debtors and the Committee, who will then charge the estates for time spent getting up to speed. Further, a new U.S. Trustee would be involved and the Debtors would be required to incur the expense of sending a slate of additional notices to all creditors and parties in interest. There is

3

DOCS_SF:109672.2 70786/001

no need to transfer what is essentially a liquidating case with less than 25 employees where the Debtors are making great strides in selling their remaining loans, mortgage servicing business, and other operating assets over the next couple months. As noted, the Debtors also are working on a chapter 11 liquidating plan. The Motion to Transfer appears to be based on the misunderstanding by the U.S. Trustee that the Debtors took steps to "manufacture venue" in this District when they did no such thing. Delaware venue is based on the usual and standard exercise of rights under the Stock Pledge by the Prepetition Lenders, two Delaware entities. The Prepetition Lenders utilized another Delaware entity, Phoenix, in order to accomplish their goal of taking control of the stock of AmeriFirst. There is nothing nefarious about that.

7. For all the reasons set forth herein, the Debtors urge the Court to retain jurisdiction over these cases because venue is proper here and the interest of justice and convenience of the parties do not support a transfer to the Arizona Bankruptcy Court.

## Background

**A.    The Debtors' Bankruptcy Filing**

8. On August 24, 2023 (the "Petition Date"), the Debtors commenced these cases by each filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of T. Scott Avila in Support of First Day Motions* [Docket No. 20], which is incorporated herein by reference.

9. The Debtors continue in the possession of their property and to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4

10. No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

11. On September 15, 2023, the U.S. Trustee appointed the Official Committee of Unsecured Creditors in these cases (the "Committee").

12. On September 19, 2023, the U.S. Trustee filed the Motion to Transfer, nearly one month after the Petition Date. The U.S. Trustee did not initially set a hearing date or objection deadline on the Motion to Transfer. It was not until a status conference before the Court on September 29, 2023, that the issue of the timing of the Motion to Transfer was raised. The Motion to Transfer was then set for hearing on October 20, 2023, along with the final hearing on the DIP Facility and the Committee's application to retain Kasowitz Benson & Torres LLP as special litigation counsel.

B. **The Debtors' Organizational Structure, Governance, and Relationship to the Prepetition Lenders**

13. Debtor Phoenix is a Delaware limited liability company. The membership interests in Phoenix are 100% owned by non-Debtor Phoenix 1040 Holdings, LLC ("Phoenix Holdings"), which is also a Delaware entity. Phoenix Holdings is owned and/or controlled by the Prepetition Lenders. David Sloane, an employee of an affiliate of the Prepetition Lenders, is managing director of Phoenix Holdings.

14. On or about August 24, 2024, the Prepetition Lenders exercised their rights and remedies under a stock pledge to take control of the stock of AmeriFirst. The Prepetition Lenders assigned such stock to Phoenix. *See* **Exhibit B** (Assignment and Assumption Agreement). T. Scott Avila is the managing director of Phoenix. *See* **Exhibit C** (Consent of Sole Member).

5

15. Concurrent with the exercise of the Stock Pledge by the Prepetition Lenders, on August 24, 2023, Phoenix Holdings removed the existing directors of AmeriFirst and replaced them with a board of directors consisting of David Sloane and Jeffrey Dane. *See* **Exhibit D** (Unanimous Written Consent of Shareholder). AmeriFirst's new board named T. Scott Avila as chief restructuring officer, along with certain other officer titles. *See* **Exhibit E** (Unanimous Written Consent of Board). Mr. Avila is a restructuring professional who had no prior involvement with the Debtors or the Prepetition Lenders. Mr. Dane is an independent board member who had no prior involvement with the Debtors or the Prepetition Lenders. Mr. Dane is delegated exclusive authority over any conflict matters involving any related party to AmeriFirst. *Id.*

16. Pursuant to that certain *Amended and Restated Credit and Security Agreement*, dated as of May 15, 2023 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Credit Agreement"), among (a) AmeriFirst, as borrower, (b) RCP Credit Opportunities Fund Loan SPV (Fund III), L.P., as agent, (c) the Prepetition Lenders, as lenders, AmeriFirst is indebted to the Prepetition Lenders in the amount of $15,798,087 in principal obligations as of the Petition Date. The Prepetition Lenders are themselves Delaware entities. *See* **Exhibit F** (Good Standing Certificates)

C. **The Debtors' Current Assets and Operations**

17. The Debtors are a mortgage company. They currently employ less than 25 employees and are in the process of liquidating their remaining assets, which generally consist of certain mortgage loans, a mortgage servicing business with a loan portfolio totaling hundreds of millions of dollars, and other miscellaneous assets and real estate. AmeriFirst also owns the personal residence of Bolby in Arizona, which will be marketed for sale in the near term.

6

18.     Prior to the Petition Date, the Debtors operated in 44 states and maintained service branches in 22 states. Although the Debtors are based in Arizona, they have creditors located throughout the United States. The Prepetition Lenders are headquartered in New York City.

**D.     The Debtors' Chapter 11 Proceedings to Date**

19.     By the time that the Motion to Transfer is heard on October 20, 2023, these cases will have been pending in this Court for nearly two months. Much has transpired.

20.     This Court has conducted multiple hearings and status conferences and entered interim and even final orders on a wide variety of motions, including interim approval of the DIP Facility authorizing AmeriFirst to borrow up to $2.775 million from the DIP Lenders [Dkt. No. 61], which are also the Prepetition Lenders. The Court overruled Mr. Bowlby's objection to the DIP Facility at that time. The DIP Facility matures on December 31, 2023. Attached hereto as **Exhibit G** is a listing of the material filings and orders entered in these cases to date. To date, there are over 250 separate docket items in these cases. The Debtors are also working on a chapter 11 liquidating plan.

21.     The date that is set for the hearing on the Motion to Transfer (October 20, 2023) is also the date when the Court will consider entry of a final order to approve the DIP Facility and whether Kasowitz Benson & Torres LLP will be employed by the Committee. The Committee's other proposed counsel, Morris, Nichols, Arsht & Tunnell LLP, is based in Delaware and has been actively involved in these cases over the last few weeks. Mr. Bowlby's counsel, Pashman Stein Walder Hayden, P.C., is also based in Delaware.

7

22. Both Mr. Bowlby and the Committee have served extensive document requests on the Debtors and the Prepetition Lenders in connection with the matters set for hearing on October 20, 2023, to which the Debtors and the Prepetition Lenders have responded. All parties are well-represented, fully informed, and ready to proceed with the administration of these cases in this Court. No creditor, aside from Mr. Bowlby (whose claims are disputed and against whom the estates are likely to have sizeable claims), has joined in the Motion to Transfer to date. There is no legitimate interest that will be served by now transferring these cases to the Arizona Bankruptcy Court. The Debtors therefore object to the Motion to Transfer.

## Legal Basis for Objection to Motion to Transfer

**A. The Debtors' Cases are Properly Venued in This District Because Phoenix is Organized in the State of Delaware**

23. Venue is proper for a bankruptcy case in any judicial district where (i) the debtor's "domicile, residence, principal place of business . . . or principal assets" have been located for a "longer portion of" the 180 days prior to the petition date; or (ii) the bankruptcy case of an affiliate is pending. 28 U.S.C. § 1408.

24. Phoenix is a limited liability company formed under the laws of the State of Delaware. Consequently, venue of this case is proper in Delaware as a matter of law under 28 U.S.C. § 1408. *See, e.g., In re Restaurants Acquisition I, LLC*, 2016 Bankr. LEXIS 684, at *6 (Bankr. D. Del. Mar. 4, 2016) ("Because the Debtor is organized under the laws of Delaware, this forum is proper under the statute."); *In re Innovative Communication Co., LLC*, 358 B.R. 120, 125 (Bankr. D. Del. 2006) ("Venue is appropriate in the state of incorporation, 28 U.S.C. § 1408(1), so venue is proper in Delaware with respect to the corporate Debtors."). Phoenix is the sole owner

8

of the stock of AmeriFirst, therefore AmeriFirst is an affiliate of Phoenix and also legally entitled to file for bankruptcy here. 28 U.S.C. § 1408(2). The U.S. Trustee does not (and cannot) challenge that venue is legally proper in this Court.

B.     **The Debtors Did Not "Manufacture Venue" in this Forum**

25.     The Debtors did not choose to drop the stock of AmeriFirst into a Delaware entity. The Prepetition Lenders made this decision in the customary and reasonable exercise of their rights under the Stock Pledge. The Prepetition Lenders are Delaware entities. Hence, it is entirely logical that they assigned the stock in AmeriFirst to a Delaware entity. They needed to put the stock somewhere. In fact, the Prepetition Lenders created another Delaware intermediate holding company, Phoenix Holdings, to hold the membership interests in Phoenix. Once the stock of AmeriFirst resided in Phoenix, a Delaware entity, the Debtors made the entirely appropriate decision to file both Debtors for bankruptcy in Delaware. Also as is customary, the Debtors wanted to ensure that the stock of AmeriFirst would be subject to the jurisdiction of this Court so that no party could commence litigation or seek to exercise remedies against such stock or obtain control of AmeriFirst while its bankruptcy case was pending.

26.     The cases cited by the U.S. Trustee as examples of "manufactured venue" are inapposite to the facts at hand.

27.     In *In re Patriot Coal Corp.*, 482 B.R. 718 (Bankr. S.D.N.Y. 2012), the ***debtors*** incorporated two entities in the State of New York, which entities became the first two of 99 total affiliated entities to file chapter 11 petitions. As the court noted: "Of particular significance to the Court's decision and analysis is the fact that the Parties stipulated prior to the Hearing that the Debtors formed both [New York debtors] to ensure that the provisions of 28

9

U.S.C. § 1408(1) were satisfied, and for no other purpose." 482 B.R. at 726–28. Thus, in *Patriot Coal*, the court was faced with the undisputed, stipulated fact that "the debtors . . . sought venue in New York by incorporating an entity shortly before their chapter 11 filing, admittedly solely to establish venue and meet the requirements of section 1408." *Id.* at 745. The court also noted: "In directing transfer of these cases in the interest of justice, the Court is not establishing a *per se* or categorical rule . . . . As the Court indicated at the Hearing, the result here may indeed have been different if the U.S. Trustee had been the only party-in-interest seeking to transfer the Debtors' cases—that is, if no *economic* party-in-interest had sought to transfer venue." *Id.* at 748.

28. Similarly, in *In re LTL Mgmt. LLC*, No. 21-30589, 2021 Bankr. LEXIS 3155 (Bankr. W.D.N.C. Nov. 16, 2021), the debtor's ultimate parent undertook a series of corporate transactions to separate talc-related liabilities from assets, then filed a chapter 11 case for the entity holding those liabilities. The court found transfer of venue appropriate under the specific and unusual facts before it, noting: "[A] court does not lightly transfer venue, and it is highly unusual to do so; however, this case is highly unusual." *Id.* at \*15. *LTL* also involved a large volume of talc litigation, which weighed in favor of transferring the bankruptcy case to the District of New Jersey: "The overwhelming number of ovarian cancer cases against the Debtor—approximately 35,000 of approximately 38,000—are pending in the MDL in New Jersey." *Id.* at \*16.

29. In *In re AnthymTV Co.*, 650 B.R. 261 (Bankr. D.S.C. 2023), the debtor, in response to the filing of the involuntary petition in the District of South Carolina, took obvious steps to manufacture jurisdiction in the District of Massachusetts: "On the afternoon of Friday, March 3, 2023—four days before the Motion to Appoint Interim Trustee was scheduled to be heard

10

in the U.S. Bankruptcy Court for the District of South Carolina—Debtor filed a Foreign Corporation Certificate of Registration with the Office of the Secretary of State for the Commonwealth of Massachusetts. Approximately 72 minutes after Debtor was registered with the Secretary of State in Massachusetts, it filed a voluntary petition . . . in the U.S. Bankruptcy Court for the District of Massachusetts." *Id.* at 273.

30. In each of the foregoing cases, the debtors or their affiliates themselves took action on the eve of a bankruptcy filing to establish venue in a particular forum for no legitimate alternative purpose. Here, the Prepetition Lenders (and not the Debtors) made the decision to exercise remedies against AmeriFirst's stock under the Stock Pledge. The Prepetition Lenders needed a vehicle to hold such stock. Given that the Prepetition Lenders are themselves Delaware entities, they decided to assign the stock to Phoenix, another Delaware entity, which is itself owned by Phoenix Holdings, also a Delaware entity. Hence, the Debtors did not "manufacture venue" in this forum. Proper venue exists here because the Prepetition Lenders properly exercised their rights under the Stock Pledge and assigned the stock of AmeriFirst to a Delaware entity for the legitimate purpose of holding such stock.

C. **The Debtors' Choice of Forum in Delaware is Entitled to Substantial Weight, Especially Given the Length of Time That Has Passed Since the Petition Date**

31. Because venue in this District is legally proper, the Debtors' choice of this forum is entitled to great weight. *See, e.g., Restaurants Acquisition*, 2016 Bankr. LEXIS at *7 ("movant bears the burden of demonstrating that the factors strongly weigh in favor of a transfer as courts will generally grant substantial deference to a debtor's choice of forum"); *In re Ocean Properties of Delaware, Inc.*, 95 B.R. 304, 305 (Bankr. D. Del. 1988) (same). Therefore, a court

11

DOCS_SF:109672.2 70786/001

considering a venue transfer motion "should exercise its power to transfer cautiously, and the party moving for the transfer must show by a preponderance of the evidence that the case should be transferred." *In re Commonwealth Oil Refining Co., Inc. (Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co., Inc.)*, 596 F.2d 1239, 1241 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045 (1980) ("<u>CORCO</u>") (internal citations omitted); *accord In re Fairfield Puerto Rico, Inc.*, 333 F. Supp. 1187, 1989 (D. Del. 1971) ("This Court should not freely abandon to any other district its duty to determine a matter clearly within its jurisdiction."); *In re Rehoboth Hospitality, LP*, 2011 WL 5024267, at *3 (Bankr. D. Del. Oct. 19, 2011) ("The burden of proof is on the moving party requesting transfer.").

32. In the instant case, the Debtors exercised their sound business judgment to select Delaware venue and the U.S. Trustee has not carried its burden that a change of venue is warranted. There is a "fundamental legal tenet that every citizen of a state is entitled to take advantage of the state and federal judicial process available in that state." *In re PWS Holdings*, 1998 Bankr. LEXIS 549, at *14 (Bankr. D. Del. Apr. 28, 1998). Further, "Delaware has an interest in protecting the rights of its citizens," and correspondingly, change of venue can only be granted upon a strong showing of equities favoring the transfer. *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 706 (D. Del. 2001).

33. The U.S. Trustee did not file the Motion to Transfer for nearly one month after the Petition Date and then did not set the matter for hearing. It was not until a status conference on September 29, 2023 that the Motion to Transfer was set for hearing on October 20, 2023, nearly two months after the Petition Date. Indeed, the DIP Facility matures on December 31, 2023.

12

34. The time spent in the original forum, including the progress of the case and delays by parties in interest in challenging venue, is properly considered as part of the transfer of venue analysis. *See, e.g.*, *In re Vienna Park Props.*, 125 B.R. 84, 87 (S.D.N.Y. 1991) (citing *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990)) ("[T]ime and effort spent by a court are appropriate factors in determining the venue in which the estate may most efficiently and economically be administered."); *In re Bestwall LLC*, 605 B.R. 43, 52 (Bankr. W.D.N.C. 2019) (finding that retaining the case in the district where it was originally filed "best promote[d] the efficient administration of [the debtor's] estate" by avoiding superfluous administrative expenses and delays that would be associated with transfer to another district); *In re Pavilion Place Assocs.*, 88 B.R. 32, 35 (Bankr. S.D.N.Y. 1988) (noting that "transfer is a cumbersome disruption of the chapter 11 process").

35. Thus, the anticipated timeframe of the case and the level of familiarity that the court in the original venue has acquired are appropriate factors to consider. *See, e.g.*, *In re Hechinger Inv. Co. of Del., Inc.*, 296 B.R. 323, 327 (Bankr. D. Del. 2003) ("As this trial is expected to be short and I am already familiar with all relevant issues, it would be in the interests of judicial economy for me to retain this adversary proceeding rather than have a judge in the Houston Division invest the time on an entirely new matter."); *In re PermaLife Prods., LLC*, 432 B.R. 503, 519 (Bankr. D.N.J. 2010) (noting, in support of the court's decision not to grant a request to transfer venue, that the court had been involved with the case for some time and that the court's "familiarity should help in expediting trial or other resolution").

36. "[W]hether a motion to change [or dismiss] venue has been timely filed depends on the facts and circumstances presented in the particular case. The Court should consider

whether the transfer [or dismissal] would result in fragmentation or duplication of administration, increase expense, or delay closing of the estate in determining the timeliness of the motion." *In re Johnson*, No. 20-66516-JWC, 2021 Bankr. LEXIS 2034, at *12 (Bankr. N.D. Ga. July 30, 2021) (citations and internal quotation marks omitted) (quoting *In re Blagg*, 223 B.R. 795, 802 (10th Cir. B.A.P. 1998)); *see also In re Rests. Acquisition I, LLC*, No. 15-12406 (KG), 2016 Bankr. LEXIS 684, at *15–16 (Bankr. D. Del. Mar. 4, 2016) (declining to transfer venue in part because the court "has spent a significant amount of time familiarizing itself with the Debtor's business and has granted numerous requests for relief in connection with these proceedings," further noting that "any unnecessary time delay associated with the learning curve could substantially limit the Company's ability to reorganize").

37.     Over the last nearly two months since the Petition Date, this Court has conducted multiple hearings and status conferences and entered interim and final orders on a multitude of motions, including interim approval of the DIP Facility authorizing AmeriFirst to borrow up to $2.775 million from the DIP Lenders [Dkt. No. 61]. Further hearings on substantive matters, including final approval of the DIP Facility and the Committee's proposed retention of special litigation counsel, are set for hearing on October 20, 2023, the same date as the Motion to Transfer. Parties are all represented by counsel, including Delaware counsel for the Committee and Mr. Bowlby, and extensive discovery has already been conducted. Attached hereto as **Exhibit G** is a listing of the material filings and orders entered in these cases to date. To date, there are over 250 separate docket items in these cases. The Debtors are also drafting a chapter 11 liquidating plan.

14

38. There was nothing that prevented the U.S. Trustee from filing the Motion to Transfer soon after the Petition Date, but the U.S. Trustee chose not to file the Motion to Transfer for nearly one month. *See In re Shelton*, No. 01-20655, 2001 Bankr. LEXIS 2213, at *27 (Bankr. D. Idaho Oct. 12, 2001) (finding that the U.S. Trustee's motion to transfer venue was untimely when such motion "could have been urged essentially from the commencement of the [debtors'] case"). Under these circumstances and given the deference properly accorded to the Debtors' choice of forum, the Motion to Transfer is untimely and should be denied.

### D. The Interest of Justice and Convenience of the Parties Weighs Strongly in Favor of Retaining Venue in Delaware

39. When asked to transfer an entire bankruptcy case to another venue, bankruptcy courts examine whether the transfer would be (a) in the interest of justice, or (b) the convenience of the parties. 28 U.S.C. § 1412. In considering the "convenience of the parties," courts have identified six factors, among others, to help guide their discretion. These six factors are:

  i. the economic administration of the estate;

  ii. the location of the assets;

  iii. the proximity of creditors of every kind to the court;

  iv. the proximity of the debtor to the court;

  v. the proximity of the witnesses necessary to the administration of the estate; and

  vi. the necessity for ancillary administration if liquidation should result.

*See*, *e.g.*, *CORCO*, 596 F.2d at 1247; *Restaurants Acquisition*, 2016 Bankr. LEXIS at *7 (applying *CORCO* factors); *Innovative*, 358 B.R. at 125 (citing *CORCO* factors and other private and public

15

interests that may be relevant). As discussed herein, the U.S. Trustee has failed to meet its "heavy burden of proof . . . to demonstrate that the balance of convenience weighs in [its] favor." *Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc. (In re Lionel Corp.)*, 24 B.R. 141, 142 (Bankr. S.D.N.Y. 1982). Consequently, the Motion to Transfer must be denied.

### i. *The Economic Administration of the Estate*

40. The economic and efficient administration of the estate is the most important factor when considering a motion to transfer venue. *CORCO*, 596 F.2d at 1247; *In re Caesars Entertainment Operating Co.*, 2015 Bankr. LEXIS 314, at *22 (Bankr. D. Del. Feb. 2, 2015); *In re Industrial Pollution Control, Inc.*, 137 B.R. 176, 182 (Bankr. W.D. Pa. 1992). Despite the importance of this factor, the U.S. Trustee makes little effort to explain why the economic administration of the estates would be improved if these cases were transferred to the Arizona Bankruptcy Court, aside from the superficial fact that the Debtors' headquarters are located there.

41. As noted above, this Court and the parties already have extensive familiarity with the Debtors and these cases, as reflected in the lengthy docket. There is nothing that would be achieved by a transfer of these cases to the Arizona Bankruptcy Court, except for delay and additional costs to the estates.

### ii. *The Location of the Assets*

42. The Debtors operate a national mortgage servicing business and have loans and properties owned in various states. The Debtors are also liquidating and have fewer than 25 employees left. There is nothing material, aside from Mr. Bowlby's residence owned by AmeriFirst, that is inherently tied to Arizona.

### iii. The Proximity of Creditors of Every Kind

43. Except for Mr. Bowlby who resides in Arizona and whose claims are disputed and against whom the Debtors may have substantial claims, the Debtors' creditors are dispersed around the nation. The Prepetition Lenders are based in New York. Indeed, no legitimate creditor or economic stakeholder has yet joined in the Motion to Transfer.

44. And of course, each of the principal parties already has counsel in Delaware. A move to Arizona would needlessly require the parties to engage new counsel with the attendant further delay and cost to the estates.

### iv. The Proximity of the Debtor and Witnesses Necessary to the Administration of the Estate

45. Only Mr. Bowlby resides in Arizona. Mr. Avila resides on the west coast and moves around the country freely. Mr. Dane is based in the New York area. The Committee's financial advisors likewise are based on the east coast. Arizona may be a convenient forum for Mr. Bowlby and no one else.

### v. The Necessity for Ancillary Administration if Liquidation Should Result

46. The final factor relates to the necessity for ancillary administration if liquidation should result. This factor also is not a relevant consideration given that the Debtors have postpetition financing in place and are proceeding with an orderly sale process and have a draft chapter 11 plan in process. As the courts in *CORCO* and *Fairfield Puerto Rico* recognized, "anticipation of the failure of the [Chapter 11] proceeding is an illogical basis upon which to predicate a transfer." *CORCO*, 596 F.2d at 1248; *see also In re Enron Corp.*, 274 B.R. 327, 349 (Bankr. S.D.N.Y. 2002); *In re Fairfield Puerto Rico, Inc.*, 333 F. Supp. at 1191. Indeed, "[t]his

17

factor is often discounted by courts." *Enron*, 274 B.R. at 343, n. 11. The Debtors' focus in these cases is to maximize the value of estate assets for the benefit of all constituents, and the U.S. Trustee offers no factual or legal basis for this Court to contemplate the failure of the Debtors' chapter 11 cases. *See In re Fairfield Puerto Rico, Inc.*, 333 F. Supp. at 1191. Accordingly, this factor does not support a transfer of venue.

### E. The Interest of Justice is Not Served By Transferring Venue

47. In determining whether a transfer would be "in the interest of justice," the court should consider "whether transfer of venue will promote the efficient administration of the estate, judicial economy, timeliness, and fairness." *Enron,* 274 B.R. at 387. These factors have generally been discussed above and support keeping these cases in Delaware. Additional concerns that would speak to the "interest of justice" include factors such as the importance of a debtor to the welfare and economic stability of a jurisdiction, which are not present in these cases. *See CORCO,* 596 F.2d at 1248 (even though the importance of the debtor, a major supplier of petroleum to Puerto Rico, to the welfare and economic stability of Puerto Rico implicated "interest of justice" considerations, the court determined not to transfer venue to Puerto Rico).

48. As noted above, venue is legally proper in this Court and the Debtors are entitled to substantial deference as to their choice of forum, especially given the delay of nearly two months after the Petition Date before the Motion to Transfer is even heard by this Court. The Debtors also did not "manufacture venue" in this forum. Venue is proper as a result of the proper exercise of remedies by the Prepetition Lenders under the Stock Pledge. Even if the Court considers the interests of justice and the convenience of the parties, there is no legitimate factual

18

DOCS_SF:109672.2 70786/001

or legal basis to transfer these cases to Arizona. A transfer of venue also would needlessly trigger a default under the DIP Facility, putting the Debtors' access to financing at risk.

49. For all these reasons, the Debtors urge this Court to maintain venue of these cases in Delaware.

WHEREFORE, the Debtors respectfully request that this Court enter an order denying the Motion to Transfer, and granting such other and further relief as this Court deems appropriate.

Dated: October 13, 2023
Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400
Email: ljones@pszjlaw.com
dbertenthal@pszjlaw.com
tcairns@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*