# Exhibit A

**Stock Pledge**

# PLEDGE AGREEMENT

This PLEDGE AGREEMENT (as amended, restated, supplemented or otherwise modified from time to time, this "Agreement") is dated as of May 15, 2023 and entered into by and among Eric Bowlby, an individual with primary residence in the State of Arizona and Ken Bowlby, an individual with primary residence in the State of Arizona (each a "Pledgor" and collectively the "Pledgors"), and RCP CREDIT OPPORTUNITIES FUND LOAN SPV (FUND III), L.P., as administrative agent (in such capacity, the "Administrative Agent") for the Lenders under the Credit Agreement as defined below) (together with its successors and assigns, "Pledgee").

1. Reference is made to that certain Amended and Restated Credit Agreement, dated as of the date hereof (as the same may be amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), by and among AmeriFirst Financial, Inc., an Arizona corporation (the "Borrower") and Pledgee as the Administrative Agent.

2. Capitalized terms not defined herein are used as defined in the Credit Agreement. The following terms as used herein have the following meanings:

"Payment in Full" means the earlier of (a) payment in full in cash of all Obligations (other than contingent indemnification obligations); and (b) the payment of the Required Paydown Amount on or prior to the Required Paydown Date and the satisfaction or waiver (in accordance with Section 8.02 of the Credit Agreement) of all of the other conditions to the deemed repayment of the Loan set forth in Section 2.19 of Credit Agreement

3. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and as collateral security for and to secure the prompt payment and performance in full of all the Obligations of the Borrower under the Credit Agreement, each Pledgor hereby grants to Pledgee a continuing security interest in all of the capital stock or other equity interests of the Borrower (collectively, the "Equity Interests") whether now or hereafter issued by the Borrower (any and all such Equity Interests in the Borrower, collectively, the "Pledged Equity" and together with all proceeds, products and increases thereof and substitutions and replacements therefor, collectively, the "Collateral").

4. Each Pledgor represents and warrants that he is the legal and beneficial owner of the Collateral, free and clear of all liens and encumbrances.

5. In furtherance of Pledgee's security interest in the Collateral, each Pledgor agrees to deliver to Pledgee, promptly upon receipt of same from the vendor where the Pledgor ordered new stock certificates, any and all certificates representing the Collateral identified on Schedule I attached hereto (the "Certificates"), together with transfer powers duly executed in blank by each Pledgor, where applicable (the "Stock Powers").

6. Each Pledgor irrevocably authorizes Pledgee at any time upon five (5) Business Days' prior written notice to the Pledgors in the sole discretion of the Pledgee and appoints the Pledgee as its attorney-in-fact (i) to file financing statements necessary or desirable in the Pledgee's sole discretion to perfect and to maintain the perfection and priority of the Pledgee's security interest in the Collateral, (ii) to discharge past due taxes, assessments, charges, fees or

Liens on the Collateral unless the same are being contested in good faith by appropriate proceedings diligently conducted and (iii) to do all other acts and things necessary to carry out this Agreement. The powers conferred on Pledgee, for the benefit of the Pledgee and Lenders, under this Paragraph 6 are solely to protect Pledgee's interests in the Collateral and shall not impose any duty upon Pledgee or any Lender to exercise any such powers.

7. **EACH PLEDGOR HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS PLEDGEE AS ITS PROXY AND ATTORNEY IN FACT (AS SET FORTH IN PARAGRAPH 6 ABOVE) WITH RESPECT TO ITS COLLATERAL, INCLUDING, THE RIGHT, UPON THE OCCURRENCE OF AN EVENT OF DEFAULT AND SO LONG AS IT IS CONTINUING, TO VOTE SUCH COLLATERAL, WITH FULL POWER OF SUBSTITUTION TO DO SO. IN ADDITION TO THE RIGHT TO VOTE ANY SUCH COLLATERAL, THE APPOINTMENT OF PLEDGEE AS PROXY AND ATTORNEY-IN-FACT SHALL INCLUDE THE RIGHT TO EXERCISE ALL OTHER RIGHTS, POWERS, PRIVILEGES AND REMEDIES TO WHICH A HOLDER OF SUCH COLLATERAL WOULD BE ENTITLED (INCLUDING GIVING OR WITHHOLDING WRITTEN CONSENTS OF SHAREHOLDERS, CALLING SPECIAL MEETINGS OF SHAREHOLDERS AND VOTING AT SUCH MEETINGS). SUCH PROXY SHALL BE EFFECTIVE, AUTOMATICALLY AND WITHOUT THE NECESSITY OF ANY ACTION (INCLUDING ANY TRANSFER OF ANY SUCH PLEDGED COLLATERAL ON THE RECORD BOOKS OF THE ISSUER THEREOF) BY ANY PERSON (INCLUDING THE ISSUER OF SUCH PLEDGED COLLATERAL OR ANY OFFICER OR AGENT THEREOF), BUT ONLY UPON THE OCCURRENCE AND DURING THE CONTINUANCE OF AN EVENT OF DEFAULT.** Notwithstanding anything to the contrary in Paragraph 6 above, if no Event of Default has occurred and is continuing hereunder, each Pledgor shall have the right, where applicable, to vote and give consents with respect to the Collateral for all purposes not inconsistent with the provisions of this Agreement, the Credit Agreement and the other Loan Documents, and Pledgee shall, if necessary, execute due and timely proxies in favor of each Pledgor for this purpose.

8. If, with the consent of Pledgee, any Pledgor shall substitute or exchange other securities in place of those herein mentioned, all of the rights and privileges of Pledgee and all of the obligations of each Pledgor with respect to the securities originally pledged or held as Collateral hereunder shall be forthwith applicable to such substituted or exchanged securities.

9. Upon the occurrence and during the continuance of any Event of Default where the Pledgee is entitled to declare the Loan then outstanding to be due and payable under the Credit Agreement, Pledgee shall be authorized to collect all dividends, distributions, interest payments and other amounts (including amounts received or receivable upon redemption or repurchase) that may be, or become, due on any of the Collateral. If any Pledgor receives any such dividends, distributions, payments or amounts after the occurrence and during the continuance of an Event of Default, it shall immediately endorse and deliver the same to Pledgee in the form received. All such amounts which Pledgee receives and retains in accordance with the terms of this Paragraph 9 shall be applied to reduce the outstanding amount of the Loan. Neither Pledgor shall have any personal liability under this Agreement other than with respect to the Collateral pledged hereunder. Pledgee is, furthermore, authorized to give receipts in the name of any Pledgor for any amounts so

received.  Pledgee shall be under no obligation to collect any such dividends, distributions, interest payments and other amounts.

10. In the event that, during the term of this Agreement, subscription warrants or any other rights or options shall be issued in connection with the Collateral, such warrants, rights or options shall be immediately assigned, if necessary, by each Pledgor to Pledgee.  If any such warrants, rights or options are exercised by any Pledgor, all new securities so acquired by such Pledgor shall be immediately assigned to Pledgee, shall become part of the Collateral and shall be endorsed to, delivered to and held by Pledgee under the terms of this Agreement in the same manner as the securities originally pledged.

11. In the event that, during the term of this Agreement, any share, dividend, distribution, reclassification, readjustment, new issuance or other change to any part of the Collateral is declared or made in the capital structure of the Borrower, all new, substituted and additional shares, or other securities, issued by reason of any such change shall become part of the Collateral and shall be endorsed to, delivered to and held by Pledgee under the terms of this Agreement in the same manner as the securities originally pledged.

12. Each Pledgor shall, upon obtaining ownership of any additional Equity Interests, of the Borrower or Equity Interests otherwise required to be pledged to Pledgee pursuant to the Credit Agreement, which Equity Interests are not already Collateral, promptly (and in any event within two (2) Business Days following the date on which such Pledgor obtains such ownership) deliver to Pledgee a Pledge Amendment duly executed by such Pledgor, in substantially the form of Schedule II hereto (a "Pledge Amendment") in respect of any such additional Equity Interests, pursuant to which such Pledgor shall pledge to Pledgee all of such additional Equity Interests. Each Pledgor hereby authorizes Pledgee to attach each Pledge Amendment to this Agreement and agrees that all Pledged Equity listed on any Pledge Amendment delivered to Pledgee shall for all purposes hereunder be considered Collateral.

13. Each Pledgor authorizes Pledgee, without notice or demand, and without affecting the liability of each Pledgor hereunder, from time to time to:

(A) hold security in addition to and other than the Collateral for the payment of the Obligations or any part thereof, and exchange, enforce, waive and release any Collateral or any part thereof, or any other such security, or part thereof;

(B) release any of the endorsers or guarantors of the Obligations secured hereunder or any part thereof, or any other person whomsoever liable for or on account of such Obligations;

(C) proceed against any Pledgor, the Borrower, Person who has given a Guarantee or any other person whomsoever with respect to the Collateral.  Each Pledgor further waives any defense arising by reason of any liability or other defense of each Pledgor or of any other person (other than Payment in Full).  Each Pledgor shall have no right to require Pledgee to marshal collateral.

14. It shall not be necessary for Pledgee to inquire into the powers of each Pledgor or the agents acting or purporting to act on behalf of each Pledgor, and any obligations made or created in reliance on the professed exercise of such powers shall be secured hereunder.

15. To the extent permitted by applicable law and in the Credit Agreement, Pledgee shall be under no duty or obligation whatsoever to make or give any presentments, demands for performance, notices of non-performance, protests, notices of protest or notices of dishonor in connection with the Obligations.

16. The occurrence of an "Event of Default" under the Credit Agreement where the Pledgee is entitled to declare the Loan then outstanding to be due and payable shall, at the option of Pledgee, constitute an "<u>Event of Default</u>" under this Agreement.

17. Upon the occurrence and during the continuance of any Event of Default, the Obligations shall, at the option of Lender, become immediately due and payable, and Pledgee shall have all the rights and remedies provided in the Uniform Commercial Code as in effect in the State of New York on the date of this Agreement and, the Pledgee may, upon ten (10) days' prior written notice to each Pledgor sent to the persons identified herein and in the same manner as provided in the Credit Agreement, without liability for any diminution in value or price which may have occurred, sell all or any part of the Collateral in such manner and for such price as Pledgee may determine. Each Pledgor recognizes that Pledgee may be unable to effect a public sale of any or all the Collateral and may be compelled to resort to one or more private sales thereof. each Pledgor also acknowledges that any private sale may result in prices and other terms less favorable to the seller than if such sale were a public sale and, notwithstanding such circumstances, agrees that any such private sale shall not be deemed to have been made in a commercially unreasonable manner solely by virtue of such sale being private. Pledgee shall be under no obligation to delay a sale of any of the Collateral for the period of time necessary to permit each Pledgor or the issuer of the Collateral to register such securities for public sale under the Securities Act of 1933, as amended, or under applicable state securities laws, even if each Pledgor and the issuer would agree to do so. At any public or private sale, Pledgee shall be free to purchase all or any part of the Collateral. Pledgee shall receive the proceeds of any such sale or sales, and, after deducting therefrom any and all reasonable costs and expenses incurred in connection with the sale thereof, apply the proceeds toward the payment of the Obligations secured hereunder, including interest, attorneys' fees and all other costs, fees and expenses incurred by Pledgee hereunder and under any other agreement between each Pledgor and Pledgee arising after the Effective Date. If such proceeds be more than sufficient to pay the same, then in case of a surplus, such surplus shall be accounted for and paid over to each Pledgor, <u>provided</u> each Pledgor be not then indebted to Pledgee otherwise under the Credit Agreement or this Agreement .

18. Upon Payment in Full, and the termination of the Credit Agreement, Pledgee will deliver all of the Collateral to each Pledgor along with the Stock Powers and all instruments of assignment executed in connection therewith, and execute and deliver to each Pledgor such documents as each Pledgor shall reasonably request to evidence Pledgee's release of Pledgee's security interest hereunder; <u>provided</u>, <u>however</u>, that Administrative Agent may retain possession of the Certificates, solely for the purpose of Paragraph 20, until such time as all obligations under the Hope Note and the Preferred Equity have been paid in full, and <u>provided</u>, <u>further</u>, that

Administrative Agent shall return the original Stock Powers to the Pledgor within two (2) Business Days of request by the Pledgors.

19. This Agreement shall remain in full force and effect and continue to be effective should any petition for bankruptcy protection be filed by or against each Pledgor, should each Pledgor become insolvent or make an assignment for the benefit of any creditor or creditors or should a receiver or trustee be appointed for all or any significant part of each Pledgor's assets, and shall continue to be effective or be reinstated, as the case may be, if at any time payment and performance of the Obligations, or any part thereof, is, pursuant to law, rescinded or reduced in amount, or must otherwise be restored or returned by any obligee of the Obligations, whether as a "voidable preference," "fraudulent conveyance," or otherwise, all as though such payment or performance had not been made. In the event that any payment, or any part thereof, is rescinded, reduced, restored or returned, the Obligations shall be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

20. Subject to Paragraph 19 hereof, this Agreement shall terminate upon the earlier of Payment in Full or the closing of the New Subordinated Debt; provided that the Pledgors will not pledge their respective equity interests in the Borrower as security for the New Subordinated Debt or otherwise until all obligations under the Hope Note and the Preferred Equity have been paid in full and the termination of the Credit Agreement.

21. All notices required or permitted to be given hereunder shall be in writing and shall be either personally delivered, faxed to the fax numbers provided herein or sent by United States certified or registered mail, return receipt requested, addressed to each Pledgor or Pledgee at their respective addresses stated below or at such other address as either party hereafter notices the other party as herein provided. Notices shall be effective at the times and in the manner set forth in Section 8.01 of the Credit Agreement.

Pledgors' Addresses for Notices:

    If to Pledgors:    Eric Bowlby
    c/o: AmeriFirst Financial, Inc.
    275 E. Rivulon Blvd., #300
    Gilbert, AZ 85297
    Email: EBowlby@amerifirst.us

    Ken Bowlby
    c/o: AmeriFirst Financial, Inc.
    275 E. Rivulon Blvd., #300
    Gilbert, AZ 85297

Pledgee's Address for Notices:

>If to Pledgee:
>
>Reverence Capital Partners
>590 Madison Avenue, 29th Floor
>New York, New York 10022
>Fax No.: 646-619-4307
>Email: RCPCREDIT@REVERENCECAPITAL.COM
>
>with a copy to:
>
>Quinn Emanuel Urquhart & Sullivan LLP
>51 Madison Avenue, 22nd Floor
>New York, NY 10010
>Attention: Manisha Sheth

22.  [Reserved].

23.  Promptly upon request by the Pledgee, each Pledgor shall execute, acknowledge, deliver, record, re-record, file, re-file, register and re-register any and all such further acts, deeds, certificates, assurances and other instruments as the Pledgee may reasonably require from time to time in order to (i) carry out more effectively the purposes of this Agreement, (ii) perfect and maintain the validity, effectiveness and priority of any of the Collateral and any of the Liens intended to be created hereunder and (iii) assure, convey, grant, assign, transfer, preserve, protect and confirm more effectively unto the Pledgee the rights granted or now or hereafter intended to be granted to the Pledgee under this Agreement or any other instrument executed in connection with this Agreement to which each Pledgor is or is to be a party.

24.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, CONSISTENT WITH THE TERMS OF SECTION 8.09 OF THE CREDIT AGREEMENT.

30.  THIS AGREEMENT CONTAINS THE ENTIRE UNDERSTANDING BETWEEN PLEDGOR AND PLEDGEE AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES AND SUPERSEDES ALL PRIOR AGREEMENTS AND UNDERSTANDINGS, IF ANY, RELATING TO THE SUBJECT MATTER HEREOF. THERE ARE NO UNWRITTEN AGREEMENTS AMONG THE PARTIES HERETO. ANY PROMISES, REPRESENTATIONS, WARRANTIES OR GUARANTEES NOT HEREIN CONTAINED AND HEREINAFTER MADE SHALL HAVE NO FORCE AND EFFECT UNLESS IN WRITING, SIGNED BY EACH PLEDGOR AND PLEDGEE'S RESPECTIVE OFFICERS. NEITHER THIS AGREEMENT NOR ANY PORTION OR PROVISIONS HEREOF MAY BE CHANGED, MODIFIED, AMENDED, WAIVED, SUPPLEMENTED, DISCHARGED, CANCELLED OR TERMINATED ORALLY OR BY ANY COURSE OF DEALING, OR IN ANY MANNER OTHER THAN BY AN

AGREEMENT IN WRITING, SIGNED BY THE PARTY TO BE CHARGED. EACH PLEDGOR ACKNOWLEDGES THAT HE HAS BEEN ADVISED BY COUNSEL IN CONNECTION WITH THE EXECUTION OF THIS AGREEMENT AND THE OTHER DOCUMENTS AND IS NOT RELYING UPON ORAL REPRESENTATIONS OR STATEMENTS INCONSISTENT WITH THE TERMS AND PROVISIONS OF THIS AGREEMENT. EACH PLEDGOR FURTHER ACKNOWLEDGES THAT BY EXECUTING THIS AGREEMENT, HE IS WAIVING CERTAIN RIGHTS AS OTHERWISE SET FORTH HEREIN TO WHICH EACH PLEDGOR MAY OTHERWISE BE ENTITLED AT LAW.

31. If any provision of this Agreement is adjudicated to be invalid under applicable laws or regulations, such provision shall be inapplicable to the extent of such invalidity without affecting the validity or enforceability of the remainder of this Agreement which shall be given effect so far as possible. The captions in this Agreement are intended for convenience and reference only and shall not affect the meaning or interpretation of this Agreement. This Agreement may be executed in one or more counterparts (which taken together, as applicable, shall constitute one and the same instrument) and by facsimile transmission or other electronic means, which signatures shall be considered original executed counterparts. Each party to this Agreement agrees that it will be bound by its own facsimile signature or electronic signature and that it accepts the facsimile signature or electronic signature of each other party.

32. **EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.**

33. No amendment, modification or waiver of, or consent with respect to, any provision of this Agreement shall be effective unless the same shall be in writing and signed and delivered by Pledgee, and then such amendment, modification, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

34. It is the express intention and agreement of the parties hereto that all covenants, representations, warranties, waivers and indemnities made by each Pledgor herein shall survive the execution, delivery and termination of this Agreement until the earlier of Payment in Full or the closing of the New Subordinated Debt, <u>provided</u> <u>that</u> the Pledgors will not pledge their respective equity interests in the Borrower as security for the New Subordinated Debt or otherwise until all obligations under the Hope Note and the Preferred Equity have been paid in full.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, each Pledgor and Pledgee have executed this Agreement as of the date first above written.

**PLEDGOR:**

_____
Eric Bowlby,
an individual residing in the State of Arizona


**PLEDGOR:**

_____
Ken Bowlby,
an individual residing in the State of Arizona

**PLEDGEE:**

RCP CREDIT OPPORTUNITIES FUND LOAN SPV (FUND III), L.P.

By: Reverence Capital Partners Credit (Fund III) GP, LLC, its General Partner

By: _____
Name: Peter C. Aberg
Title: Member

# ACKNOWLEDGEMENT

The undersigned hereby acknowledges receipt of the foregoing Pledge Agreement (the "Pledge Agreement") dated as of May 15, 2023, executed by Eric Bowlby, an individual with primary residence in the State of Arizona AND Ken Bowlby, an individual with primary residence in the State of Arizona (each a "Pledgor" and collectively the "Pledgors"), to and for the benefit of RCP CREDIT OPPORTUNITIES FUND LOAN SPV (FUND III), L.P. (together with its successors and assigns, the "Pledgee") and agrees to make, or cause to be made, all payments, income and dividends (whether in cash, stock, membership interests or other property), liquidating dividends, warrants, options, stock rights, membership interest rights, subscription rights, securities of the undersigned and any other distributions of any other property which each Pledgor is now or may hereafter be entitled to receive on account of the Collateral (as defined in the Pledge Agreement) directly to the Pledgee when required by the Pledgee in accordance with the foregoing Pledge Agreement.

The undersigned further agrees that notwithstanding anything to the contrary contained in the Bylaws of AmeriFirst Financial, Inc., an Arizona corporation (the "Bylaws"), the Pledgee shall have the right to exercise all voting rights in the stock, membership interests by reason of a foreclosure of such pledge or any other enforcement of the Pledgee's rights in accordance with the foregoing Pledge Agreement. The undersigned further waives any other provisions of the Bylaws that conflicts with the execution, delivery and performance by each Pledgor of the Pledge Agreement. The undersigned agrees to comply from time to time with any reasonable request made by each Pledgor in accordance with the requirements of the Pledge Agreement. In addition to the foregoing, the undersigned agrees that if at any time it shall receive instructions originated by Pledgee relating to the Pledged Equity, the undersigned shall comply with such instructions without further consent by any Person.

*[Remainder of page intentionally left blank]*

Dated as of the date first above written.

**ACKNOWLEDGED AND AGREED:**

AMERIFIRST FINANCIAL, INC.

By: _____
Name: _____Eric Bowlby_____
Title: _____CEO_____

# SCHEDULE I

## PART A
## PLEDGED EQUITY

| Issuer | Certificate No. | Percentage of Equity Interests | Physical Holder of Certificate |
|---|---|---|---|
| AmeriFirst Financial, Inc. | 6 | 67% | Eric M. Bowlby |
| AmeriFirst Financial, Inc. | 7 | 33% | Kenneth J. F. Bowlby |

# SCHEDULE II

# [FORM OF] PLEDGE AMENDMENT

This Pledge Amendment ("Pledge Amendment"), dated _____, ___ is delivered pursuant to Paragraph 12 of the Pledge Agreement referred to below. All defined terms herein shall have the meanings ascribed thereto or incorporated by reference in the Pledge Agreement. The undersigned hereby certifies that the representations and warranties in the Pledge Agreement are and continue to be true and correct, both as to the Equity Interests pledged prior to this Pledge Amendment and as to the Equity Interests pledged pursuant to this Pledge Amendment. The undersigned further agrees that this Pledge Amendment may be attached to that certain Pledge Agreement, dated as of May 15, 2023, among the undersigned, as Pledgor, RCP CREDIT OPPORTUNITIES FUND LOAN SPV (FUND III), L.P., as Pledgee, and the other parties thereto (the "Pledge Agreement"), and that the Pledged Equity listed on this Pledge Amendment shall be and become a part of the Collateral referred to in said Pledge Agreement and shall secure all Obligations referred to in said Pledge Agreement.

_____
[_____],
an individual residing in the State of [_____]

| Issuer | Certificate No. | Percentage of Equity Interests | Physical Holder of Certificate |
|---|---|---|---|
| AmeriFirst Financial, Inc. | | | |