**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERIFIRST FINANCIAL, INC,[1] *et al.*, | ) | Case No. 23-11240 (TMH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 212, 243, 260** |
| | ) | |
| | ) | |
| | ) | |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
AMERIFIRST FINANCIAL, INC., *ET AL.*'S OMNIBUS REPLY IN
FURTHER SUPPORT OF APPLICATION TO RETAIN AND
EMPLOY KASOWITZ BENSON TORRES LLP AS
<u>SPECIAL LITIGATION COUNSEL *NUNC PRO TUNC* TO SEPTEMBER 19, 2023</u>**

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Phoenix 1040 LLC (2550); and AmeriFirst Financial, Inc. (4557). The location of Debtor AmeriFirst Financial, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 1550 McKelleps Road, Suite 117, Mesa, Arizona 85203.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

SUPPLEMENTAL BACKGROUND .............................................................................. 3

ARGUMENT ................................................................................................................... 7

I.      KASOWITZ HAS NOT VIOLATED ANY ETHICAL RULES AND ITS PROPOSED
ENGAGEMENT DOES NOT PRESENT ANY DISABLING CONFLICTS .................. 7

      A.     Kasowitz Has Not Shared Any Client Confidential Information In Violation
of Model Rules 1.6(a) and 1.9(c). ........................................................... 8

      B.     Model Rule 1.7 Is Inapplicable Because Kasowitz Was Terminated as
Counsel to AFI on The Petition Date. .................................................... 12

      C.     Kasowitz is Not Barred from Representing the Committee under Rule 1.9(a). ... 14

II.     KASOWITZ'S RETENTION IS PROPER UNDER SECTIONS 1103(b) AND
327(a) OF THE BANKRUPTCY CODE ........................................................ 16

NOTICE ........................................................................................................................ 19

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Becker v. Bank of N.Y. Mellon Trust Co., N.A.*,
    No. 12-6412, 2016 WL 5816075 (E.D. Pa. Oct. 5, 2016) ......................................................13

*In re Boy Scouts of America*,
    35 F.4th 149 (3d Cir. 2022) ...................................................................................15, 17, 18

*Church v. Sullivan*,
    942 F.2d 1501 (10th Cir. 1991) .............................................................................14

*In re Corn Derivatives Antitrust Litigation*,
    748 F.2d 157 (3d Cir. 1984)...................................................................................10

*Enzo Life Scis., Inc. v. Adipogen Corp.*,
    No. 1:11-CV-00088-RGA, 2013 WL 6138791 (D. Del. Nov. 20, 2013) ...............................11

*Greenwood Land Co. v. Omnicare, Inc.*,
    No. 09-cv-686, 2009 U.S. Dist. LEXIS 74374 (W.D. Pa. Aug. 20, 2009)................................9

*In re Harman*,
    628 N.W.2d 351 (Wis. 2001)................................................................................11

*In re HH Liquidation, LLC*,
    571 B.R. 97 (Bankr. D. Del. 2017) ........................................................................12

*McClure v. Thompson*,
    323 F.3d 1233 (9th Cir. 2003) ...............................................................................11

*In re Meridian Automotive Systems-Composite Operations, Inc.*,
    340 B.R. 740 (Bankr. D. Del. 2006) ..............................................................11, 12, 13

*Miller v. Sun Capital Partners, Inc. (In re IH 1, Inc.)*,
    441 B.R. 742 (Bankr. D. Del. 2011) .......................................................................11

*Nealy v. Cabana*,
    782 F.2d 1362 (5th Cir. 1986) ...............................................................................13

*Perillo v. Johnson*,
    205 F.3d 775 (5th Cir. 2000) .................................................................................14

*In re Revstone Industries, LLC*, .
    551 B.R. 745 (D. Del. 2015)..............................................................................17, 19

*In re S. Pac. Island Airways*,
    68 B.R. 574 (Bankr. D. Haw. 1986) ....................................................................15

*United States v. Malpiedi*,
    62 F.3d 465 (2d Cir. 1995)...............................................................................13

*United States v. Winkle*,
    722 F.2d 605 (10th Cir. 1983) .........................................................................14

**Statutes**

11 U.S.C. § 101(14)(c)...........................................................................................17

11 U.S.C. § 327(a) .........................................................................................1, 17, 18

11 U.S.C. § 327(a), Section 1103(b)......................................................................19

11 U.S.C. § 328(a) ...................................................................................................1

11 U.S.C. § 1103(b) ...........................................................................................1, 19

11 U.S.C. § 1103(b) AND 327(a) ....................................................................16, 17

**Other Authorities**

Fed. R. Bankr. P. 2002 ............................................................................................19

L.R. 9010-1(f) ..........................................................................................................7

L.R. 9013-1(m) .......................................................................................................19

Rule 1.6(a).....................................................................................................*passim*

Model Rule 1.7...............................................................................................*passim*

Model Rule 1.9...............................................................................................*passim*

The Official Committee of Unsecured Creditors of AmeriFirst Financial, Inc., *et al.* (the "Committee"), respectfully submits this omnibus reply (the "Reply") in further support of the *Application of the Official Committee of Unsecured Creditors of AmeriFirst Financial, Inc., et al. to retain and employ Kasowitz Benson Torres LLP as Special Litigation Counsel Nunc Pro Tunc to September 19, 2023* (the "Application") and in response to (i) the *Debtors' (I) Objection to Retention of Kasowitz Benson Torres LLP as Counsel to the Official Committee of Unsecured Creditors and (II) Motion to Disqualify Kasowitz from Representing Committee* [D.I. 243] (the "Debtors' Objection").  In support of this Reply, Kasowitz respectfully represents as follows:

## PRELIMINARY STATEMENT[2]

1.      The Debtors and the U.S. Trustee assert that Kasowitz, former counsel to AFI, has an irresolvable conflict of interest precluding it from representing the Committee, notwithstanding the fact that the proposed representation is for a limited role as special litigation counsel to investigate and prosecute potential claims against non-debtor entities for the benefit of the Debtors' estates and all parties in interest.  Indeed, at all times, Kasowitz has pledged that it will not represent the Committee in any action adverse to the Debtors.  As a result, there is no risk that Kasowitz's prior representation poses any risk of harm to the Debtors or that threatens to abuse the parties' prior relationship.

2.      Critically, the analysis used in this Circuit to determine whether a disabling conflict exists under Sections 1103(b) or 327(a) (applicable to statutory committees' professionals through the requirement that they meet Section 328(a) to be compensated), focuses on *present adversity*. Where there is no present adversity, the lack of adverse interest and disinterestedness requirements are satisfied.  Moreover, only the existence of an "actual" conflict requires disqualification.  Courts

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Application.

have discretion to permit retentions where there only exists a "potential" for conflict, and cannot disqualify based on the mere "appearance of conflict." Here, there is no present adversity and no "actual conflict" as Kasowitz has stated that it will not take any position that is adverse to the Debtors. Further, the Committee has proposed to retain Morris Nichols to handle all matters in which the Committee may be adverse to the Debtors to ensure that the Committee is adequately represented.

3.     The Debtors also raise concerns that Kasowitz has access to client confidential information under Model Rules 1.6 and 1.9. The Debtors fail, however, to specify any of this information and its relevance to the limited scope of Kasowitz's proposed engagement. All of Kasowitz's knowledge relates to the interactions between AFI and RCP in connection with prepetition loan documents and AFI's assertion – communicated to RCP – that RCP materially breached its obligations to AFI. There is no risk that AFI's confidential information – to the extent any such information is possessed by Kasowitz – is at any risk of disclosure.

4.     Similarly, the Debtors and the U.S. Trustee argue that Kasowitz is precluded from representing the Committee as special litigation counsel under Model Rule 1.9 on the grounds that it previously represented AFI. This argument too must fail. Model Rule 1.9 prohibits a current representation if it is materially adverse to a former client. Both objectors do not, because they cannot, provide any evidence that Kasowitz's current representation is materially adverse to AFI.

5.     The Debtors' asserted concerns regarding Kasowitz's concurrent representation of AFI and the Committee in violation of Model Rule 1.7 are also unsubstantiated. Kasowitz's representation was effectively terminated on the Petition Date and as such Model Rule 1.7 is inapplicable.

6.      In sum, neither the Debtors nor the U.S. Trustee have articulated a credible argument that Kasowitz's proposed representation of the Committee is adverse to the Debtors or is to their disadvantage.  In fact, the contrary is true.  The investigation and pursuit of potential claims that would inure to the benefit of the Debtors and their estates is a quintessential interest of the Debtors.  Indeed, the Debtors have a fiduciary duty to ensure they maximize the value of any such claims.  Moreover, the Debtors stated at a hearing on October 16, 2023 that AFI's independent director is investigating claims against RCP and sought Kasowitz's assistance in evaluating the claims one week prior.

7.      Finally, disqualification motions should not be used as a litigation tactic, which the Committee believes is the impetus for the Debtors' Objection.  Absent a compelling rationale to the contrary, which does not exist here, the Committee's choice of counsel is entitled to deference.

8.      Accordingly, Kasowitz's Application should be granted.

### SUPPLEMENTAL BACKGROUND

9.      At all times, Kasowitz has fully disclosed its prior representation of AFI and that its proposed retention is limited in scope to special litigation counsel.  Filusch Decl., ¶ 4;[3] Application, ¶¶ 2, 11-12, 16-17.

10.      The Debtors' Objection asserts that Kasowitz's role representing AFI prepetition has extended beyond merely litigation, and also included negotiation of the Prepetition Credit Agreement and Loan Documents.  Debtors' Objection, ¶ 11.  However, the Debtors fail to appreciate that all of Kasowitz's actions on behalf of AFI related to AFI's relationship with RCP and that Kasowitz was required to address the repercussions of RCP's actions throughout AFI's

---

[3] Submitted contemporaneously herewith in support of the Reply and in opposition to the Debtors' Objection is the Declaration of Edward E. Filusch (the "Filusch Declaration" or "Filusch Decl.").

business.  *See* Application, ¶¶ 11-12; Filusch Decl., ¶ 4.  The fact remains that the entirety of Kasowitz's work related to RCP.

11.     The Debtors also assert that Kasowitz's signing of a new engagement agreement with AFI three days before RCP foreclosed on AFI's pledged equity presents a disabling conflict, because it shows that Kasowitz's representation has not terminated.  Debtors' Objection, ¶¶ 12-13; Application, ¶ 13.[4]  However, the Debtors present no evidence that Kasowitz's role continued beyond August 24, 2023 (the "Petition Date").  The Debtors' assertion that "Kasowitz began taking positions adverse to the Debtors' interests before the Committee was even formed," based on the fact that partner Edward Filusch advised "*counsel to the prepetition lenders*" on the Petition Date that the Debtors' petitions were void, based on the Debtors' "presum[ption]" that Kasowitz was acting as counsel to Eric Bowlby" is plainly incorrect for two reasons.  Debtors' Objection, ¶ 26 (emphasis added), Ex. F; Filusch Decl., ¶¶ 11-12.  First, the 2022 Engagement Letter and 2023 Engagement Letter are clear that Kasowitz represented AFI, not Mr. Bowlby.  Application, Ex. B ("Stein Declaration" or "Stein Decl."), Ex. B, Exs. 1 at 1, Ex. 2 at 1.  Second, Filusch was simply challenging what he, at the time, perceived as continued misconduct by RCP toward AFI, as he was learning the facts in a chaotic situation in real time as armed personnel were in AFI's offices as well as Scott Avila (somebody Filusch believed to be from the marshal's office).  *See* Filusch Decl. ¶¶ 8-10.  Notably, the Debtors do not contest that "Kasowitz did not receive advance notice"

---

[4] The Debtors' statement that Kasowitz was included in a joint signature block with Morris, Nichols, Arsht & Tunnell LLP ("Morris Nichols") (which is general committee counsel) in a statement filed on September 27, 2023 [D.I. 171] (the "Committee Statement") is a diversion, as the substance of the Committee Statement disclosed that the Committee intended for Kasowitz's retention was intended to be as special litigation counsel to investigate and potentially pursue claims against non-debtor third parties, and Kasowitz in its Application expressly disclosed that it sought to be retained as special litigation counsel.  Debtors' Objection, ¶ 69, Ex. C; Committee Statement, ¶¶ 3, 11, Conclusion; Application, ¶¶ 2-3, 10, 15-16, 18-19, 28, 32.  For the same reason, the Debtors' statement that Kasowitz's initial outreach email to Debtors' counsel did not use the term "special litigation counsel" when referencing the Committee's selection of Kasowitz as counsel also falls flat.  Debtors' Objection, ¶ 69, Ex. C.

of the events immediately preceding the filing of the Petitions, including critically, RCP's foreclosure on the common stock of AFI.  Application, ¶ 14; Filusch Decl. ¶¶ 7, 10.

12.     After Mr. Avila explained that he was the Debtors' CRO and the circumstances surrounding his appointment, Kasowitz instructed Mr. Bowlby to cooperate, and reserved all rights on behalf of AFI while it determined what was going on.  Filusch Decl., ¶ 10.  On a Zoom call with Laura Davis Jones of Pachulski Stang Ziehl & Jones LLP ("Pachulski") on the Petition Date, Ms. Jones, acting at the request of RCP to intervene, appeared to be under a misapprehension that Filusch's accusations against RCP were adverse to the Debtors.  Filusch Decl., ¶ 11.  Filusch clarified this misapprehension.  Filusch Decl., ¶ 11.  Filusch had a subsequent discussion with Ms. Jones on August 25, 2023, where he further expounded the reasoning regarding why it would make sense for the Debtors to bring claims against RCP and that Kasowitz could have a role to play in that.  Filusch Decl., ¶ 12.

13.     On August 29, 2023, Filusch reviewed the *Motion of the Debtors for Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Lenders, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [D.I. 21] (the "DIP Motion"), and the stipulations and proposed findings of fact seeking to provide releases to RCP (*see id., e.g.*, Ex. 1 (Proposed Order), ¶¶ 5(a)-(h), 6(a)-(h)).  Based on this review, Filusch understood that the Debtors had no interest in investigating or pursuing potential claims against RCP and that the Debtors had no intent to continue to employ Kasowitz, which confirmed his understanding that AFI had terminated Kasowitz on the Petition Date.   Filusch Decl., ¶¶ 12-13.

14.     The Debtors also argue incorrectly that Kasowitz's role has been or will exceed the scope of special litigation counsel.  Debtors' Objection, ¶¶ 20, 63.  Although the Debtors and the

U.S. Trustee point to a broad catchall in the Application's scope of representation, this was intended to ensure that if matters fall outside the scope of potential litigation against non-debtor third parties but still may have an impact on such litigation, Kasowitz, is not unnecessarily curtailed.  Debtors' Objection, ¶¶ 19, 69; U.S. Trustee Objection, ¶ 19.  This catchall was not intended to constitute, nor should it be construed as, a general provision allowing Kasowitz to violate the ABA Model Rules of Professional Conduct (the "Model Rules"), or the Bankruptcy Code retention requirements.[5]

15.     Notwithstanding that consent was not required here given the lack of material adversity of its representation, the Debtors' assertion that they "repeatedly advised Kasowitz" that they would not consent to its representation of the Committee is inaccurate.  Debtors' Objection, ¶¶ 17, 21.  In fact, after a meet and confer with the Debtors on September 23, 2023, the Debtors' counsel expressed an *initial view* that Kasowitz was conflicted, but indicated that they would report back by September 24, 2023 regarding the views of the Debtors' CRO concerning Kasowitz's retention.  *See id.*, ¶ 14; Filusch Decl., ¶ 17.

16.     Having not heard back from the Debtors, on September 26, 2023, Kasowitz emailed the Debtors' counsel to follow up on the lack of response on the Debtors' position regarding Kasowitz's retention.  Objection, Ex. E at 3-4.  In its correspondence, Kasowitz reiterated a position that it made clear at the meet and confer on September 23, 2023, which is that it would not represent the Committee on any matter adverse to the Debtors.  *Id.*  It also explained the need for customary information from the Debtors to determine whether proposed DIP terms could be improved, and that evaluating this information was directly aligned with the interests of the

---

[5] The discrepancy that the Debtors and the U.S. Trustee note between the Stein Declaration and the Application was inadvertent and does not alter the fact that the catchall is intended to relate to services that relate to third-party litigation, but are not directly tied to it.  Debtors' Objection ¶¶ 19-20, 55 & n.35; U.S. Trustee Objection, ¶ 19.

Debtors in maximizing value for the estates.  *Id.*  This is entirely consistent with the message that Kasowitz conveyed to the Committee when it pitched the Committee.  Filusch Decl., 14.

17.     Subsequently, a *Scheduling and Protective Order* [D.I. 222] (the "Protective Order"), *inter alia*, restricting Kasowitz's access to and distribution of the Debtors' confidential information was entered on October 5, 2023.  Kasowitz has at all times remained in compliance with the terms of the Protective Order.  Filusch Decl., ¶ 18.

## ARGUMENT

### I.    KASOWITZ HAS NOT VIOLATED ANY ETHICAL RULES AND ITS PROPOSED ENGAGEMENT DOES NOT PRESENT ANY DISABLING CONFLICTS

18.     The Debtors and the U.S. Trustee argue that Kasowitz has violated or will violate its ethical obligations under the Model Rules, made applicable in this Court pursuant to Local Rule 9010-1(f), if its retention is approved.   Debtors' Objection, ¶ 41; U.S. Trustee Objection. Specifically, the Debtors assert that Kasowitz:  (1) "has been improperly disclosing and using AFI's client confidences" since being selected by the Committee as special litigation counsel in violation of Model Rules 1.6(a) and 1.9(c); (2) AFI is a current client of Kasowitz and Kasowitz took on an adverse representation without its consent in violation of Model Rule 1.7 (and that the proposed retention also violations Model Rule 1.7(c)(2));[6] and (3), in the alternative, AFI is a former client of Kasowitz and Kasowitz's retention will violate Model Rule 1.9(a).  Debtors' Objection, ¶¶ 42-70.  The U.S. Trustee raises an objection based on concerns that Kasowitz will use AFI's client confidential information in violation of Rule 1.9, and that its proposed

[6] There is no Model Rule 1.7(c)(2) under the current Model Rules.  Kasowitz presumes that the Debtors intended to refer to Model Rule 1.7(a)(2), which precludes representation where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another."

representation of the Committee is without the Debtors' consent.  U.S. Trustee Objection, ¶¶ 22-24, 28, 31.

19.    Kasowitz and its attorneys take their ethical duties and professional responsibilities very seriously, and Kasowitz has on numerous occasions fully disclosed its former representation of AFI to the Committee, the Court, and the U.S. Trustee.  Application, ¶¶ 11-15; Sept. 29, 2023 Tr. at 13:14-21; *see* Filusch Decl., ¶¶ 14-16.  None of the allegations asserted by the Debtors and parroted by the U.S. Trustee to the contrary are accurate.  Kasowitz has never improperly disclosed client confidences, is not currently representing AFI, is not proposing to engage an adverse representation, and is not acting in a manner adverse to AFI or to its disadvantage.  Accordingly, the Model Rules do not preclude the Committee's retention of Kasowitz.

A.    **Kasowitz Has Not Shared Any Client Confidential Information In Violation of Model Rules 1.6(a) and 1.9(c).**

20.    The Debtors' assertion that Kasowitz "has been improperly disclosing and using AFI's client confidences" in violation of Model Rules 1.6(a) and 1.9(c) without its consent is inaccurate.  Debtors' Objection, ¶¶ 16, 41.  The Debtors cite no evidence in support of their assertion; instead they merely state that Kasowitz has had "extensive communications with parties adverse to AFI," has pursued lender liability claims against the proposed DIP lenders over the Debtors' objection, and because of "the nature of such claims as being most assuredly heavily factual in nature."  *Id.*, ¶ 32.  The Debtors further contend that Kasowitz declined to provide written assurances that it would not use client confidential information before a status conference on September 29, 2023 and that the Debtors have "no way . . . to police" Kasowitz's use of client confidential information.  *Id.*, ¶¶ 21, 25.  The U.S. Trustee also objects on the grounds that Kasowitz is barred from representing the Committee as special litigation counsel on account of

Model Rule 1.9(c)'s protections regarding client confidential information.  U.S. Trustee Objection, ¶ 30.

21.     The Debtors have presented no evidence to support their assertions, which are irrelevant, inaccurate, or both.  The Debtors also fail to recognize the reality that any confidential information that has been disclosed concerning RCP's conduct prior to the Petition Date was either disclosed by (i) the Debtors themselves in the *Declaration of T. Scott Avila in Support of First Day Motions* [D.I. 20] (the "<u>First Day Declaration</u>") or the Debtors' other filings including, quite stunningly given their assertions in the Debtors' Objection, *unsealed exhibits filed in connection with the Objection*, or (ii) Mr. Bowlby in various filings.[7]  Second, no client confidences are at issue here, as the entirety of Kasowitz's engagement prepetition related to the conduct of RCP, a non-debtor third party.  *See* Filusch Decl., ¶¶ 3-6, 11.  Importantly, Rule 1.9(c) allows the dissemination of information that becomes "generally known."

22.     To the extent the Debtors are concerned about the disclosure of confidential information that has not already become "generally known," a core element of the Model Rule 1.9 analysis is material adversity.  *Greenwood Land Co. v. Omnicare, Inc.*, No. 09-cv-686, 2009 U.S. Dist. LEXIS 74374, *15 (W.D. Pa. Aug. 20, 2009) confirms this in a portion of the decision that the Debtors quote directly.  Debtors' Objection, ¶ 62 ("The question is not whether the attorney actually acquired confidential information, but whether confidential information that may have

---

[7] *See Preliminary Objection of Eric Bowlby to the Debtors' First Day Motions* [D.I. 44]; *Supplemental Objection of Eric Bowlby to Debtors' Motion for Entry of a Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Lenders, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [D.I. 116]; *Declaration of Eric Bowlby, Former CEO and Majority Shareholder of AFI, in Support of Eric Bowlby's Supplemental Objection to Debtors' Motion for Entry of a Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Lenders, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [D.I. 154].

been gained in the first representation [may be] *used to the detriment* of the former client in the subsequent action.") (emphasis added) (quoting *Greenwood* 2009 U.S. Dist. LEXIS 74374, *15).

23.    Additionally, although the purpose of Rule 1.9 is "to prevent even the potential that a former client's confidences and secrets may be used against him," the purpose is to serve as a "*prophylactic rule*," and the court is permitted to weigh "countervailing considerations." *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 162 (3d Cir. 1984) (emphasis added). These countervailing considerations include the interests of the new client in selecting the counsel of its choosing, and counsel's "extensive familiarity with the factual and legal issues involved." *Id.* The Committee has selected Kasowitz intentionally because of these exact characteristics. Thus, the Debtors' and the U.S. Trustee's citation to *Corn Derivatives* actually supports Kasowitz's retention. Debtors' Objection, ¶¶ 45-46, 50, 60; U.S. Trustee Objection, ¶ 25. Again, although the Third Circuit held in *Corn Derivatives* that disqualification was warranted, unlike here, in *Corn Derivatives*, the new client asserted positions that were adverse to the former clients. *Id.* at 161. Thus, in contrast with the facts in *Corn Derivatives*, this case is one where no "prophylactic" purpose would be served by disqualifying Kasowitz, and the Debtors are incorrect to state that the court should not consider "lack of harm" or "lack of adversity." Debtors' Objection, ¶ 50.

24.    Moreover, *Corn Derivatives* did not discuss or consider the existence of a separate and absolute confidentiality obligation under Rule 1.6(a) in the absence of adversity, as the Debtors contend exists. Debtors' Objection, Motion, ¶¶ 44 n.27, 50. The case could not have held as it did if an absolute bar exists under Rule 1.6(a). The Debtors' and U.S. Trustee's cases cited for the proposition that an absolute bar exists also contained evidence of adversity and thus are not applicable here.

25.     For example, although the court in *Miller v. Sun Capital Partners, Inc. (In re IH 1, Inc.)*, 441 B.R. 742, 746 (Bankr. D. Del. 2011), cited by the Debtors and the U.S. Trustee, determined that the mere existence of confidential information was sufficient to disqualify counsel based on its prepetition legal work, critically, adversity still existed.  Debtors' Objection, ¶ 44; U.S. Trustee Objection, ¶ 26.  Specifically, counsel sought to represent defendants in an adversary proceeding brought by a chapter 7 trustee, when it had advised the debtors prepetition on the relevant transactions (*i.e.*, direct adversaries of the debtors).  *Miller*, 441 B.R. at 746.

26.     Additionally, *In re Meridian Automotive Systems-Composite Operations, Inc.*, 340 B.R. 740 (Bankr. D. Del. 2006), relied upon by the Debtors and the U.S. Trustee, also is readily distinguishable because in that case, the confidential information at issue was expressly acknowledged to consist of information that would benefit the adversary to the former client. Debtors' Objection, ¶¶ 31 n.16, 44; U.S. Trustee Objection, ¶¶ 26, 28-29.  Indeed, in *Meridian*, counsel *conceded* that the representation of its former client was adverse and that it had not obtained a waiver.  340 B.R. at 743, 745.  In analyzing Model Rule 1.6 to determine that possession of client confidential information supported disqualification, the court held that "[k]nowledge of this confidential information" would provide counsel "a head start in assessing the intercreditor issues arising under the Credit Documents and revealing precisely what Stanfield perceived to be the strengths and weaknesses of its own position." *Id.* at 747.  The Debtors' other cited cases are likewise distinguishable.[8]  In contrast to these cases, here, any "head start" would directly benefit the Debtors <u>and</u> the Committee.

---

[8] In *Enzo Life Scis., Inc. v. Adipogen Corp.*, No. 1:11-CV-00088-RGA, 2013 WL 6138791, at *3 (D. Del. Nov. 20, 2013), there was "no dispute" as to disqualification under Model Rule 1.9 and Model Rule 1.6 was not implicated. Debtors' Objection, ¶ 60.  *McClure v. Thompson*, 323 F.3d 1233, 1248 (9th Cir. 2003) denied an ineffective assistance of counsel claim in a criminal proceeding where a habeas petitioner failed to establish any "specific evidence in the record" to suggest that the client's interests were "impermissibly impaired or compromised for the benefit of another party," and could not demonstrate that his counsel "actively represented a conflicting interest," concluding the argument to be speculative.  In *In re Harman*, 628 N.W.2d 351, 359-60 (Wis. 2001), also cited by the

27.     Additionally, although the Debtors do not expressly discuss Model Rule 1.9(c)(1), there is also no support for its applicability, as it concerns the disclosure of client confidential information "to the detriment" of a former client.  Neither the Debtors nor the U.S. Trustee demonstrate any "detriment" to the client that could arise from a representation of the Committee that will potentially enhance creditor recoveries.

28.     Moreover, Kasowitz has fully complied with the terms of the Court's Protective Order, which prohibits Kasowitz, *inter alia*, from sharing confidential information.[9]

**B.      Model Rule 1.7 Is Inapplicable Because Kasowitz Was Terminated as Counsel to AFI on The Petition Date.**

29.     The Debtors assert that Kasowitz is still counsel to AFI because its representation of AFI "was never formally terminated" and that the Debtors do not believe the representation has terminated because they never received a termination letter.  *See, e.g.*, Debtors' Objection, ¶¶ 13 n.11.  However, as set forth in the Filusch Declaration, and in the emails attached to the Debtors' Objection, AFI declined to continue using Kasowitz to work on lender liability litigation on its behalf after the commencement of the Chapter 11 Cases, and confirmed that they had no interest in doing so when they filed the DIP Motion.  *See* Filusch Decl., ¶ 13; Debtors' Objection/Motion, Ex. G.

30.     In *Meridian*, cited by the Debtors and the U.S. Trustee, the former client raised a similar argument that the Debtors raise here – that former counsel had not formally terminated its pre-petition representation of a creditor.  340 B.R. at 744.  Nonetheless, this Court held that Model

---

Debtors, although the court stated that adversity was not necessary, former counsel sent confidential medical records concerning a former client's drug and alcohol use to a prosecutor "for the specific purpose" of undermining her credibility, referred to the client as "a liar of world class magnitude," and accused the former client of perjury.

[9] In the event that the Committee obtains standing, the Committee may be entitled even to privileged materials, to the extent that the Debtors were insolvent at the time of the production.  *In re HH Liquidation, LLC*, 571 B.R. 97, 104 (Bankr. D. Del. 2017) (stating that to the extent the committee could establish that the debtors were insolvent at the time privileged communications were sent, they would be entitled to such communications).

Rule 1.7 was inapposite because subsequently the client informed counsel that it did not plan to utilize Milbank's services post-petition. *Id.* at 744-45. Here, the fact that the Debtors informed Kasowitz through their actions in this Court is no different. It simply is not plausible that Kasowitz represented the Debtors after the Petition Date.

31. The Debtors' citation to *Becker v. Bank of N.Y. Mellon Trust Co., N.A.*, No. 12-6412, 2016 WL 5816075, at *27 (E.D. Pa. Oct. 5, 2016) for the proposition that a non-direct conflict also can preclude representation is also unavailing here, as that case involved concurrent representation. Debtors' Objection, ¶ 54. In any event, it is also distinguishable because the court reasoned that although counsel to a single creditor had initially had a conflict with a debtor, the parties' interests became "largely aligned" post-settlement when the focus turned to "prompt confirmation of a plan of reorganization." *Id.* Here, to the extent that the Debtors conclude at the culmination of the investigation of AFI's independent director that the estates should not pursue claims against RCP or other non-debtor third parties, Morris Nichols will handle the prosecution and filing of a standing motion that is adverse to the Debtors. Under such circumstances, Kasowitz can represent the Committee if standing is granted, which will, once again, align the interests of the Debtors and the Committee.

32. The other cases that the Debtors cite for the proposition that a representation's status as concurrent or former focuses on temporality and substance rather than termination itself are readily distinguishable and the cases each involved actual adversity, not speculative or hypothetical adversity.[10]

---

[10] In *United States v. Malpiedi*, for example, a former client represented by a lawyer before an initial appearance in front of a grand jury made a perjurious statement at a second appearance where she was not represented over a year later, but believed that she still was represented. 62 F.3d 465, 467-68 (2d Cir. 1995). There was no indication, as here, that the client had directed her counsel to stand down, or had terminated him, other than the attorney's belief that in his "mind" he never represented her. *Id.* at 468. The other cases cited by the Debtors for the proposition that a close "temporal" and substantive relationship likewise are distinguishable because they also relate to the impairment of counsel's ability to zealously represent counsel's current client. *See also Nealy v. Cabana*, 782 F.2d

33.     Finally, the Debtors' speculation that Kasowitz risks violating "Model Rule 1.7(a)(2)"[11] because its ability to represent the Committee will be limited by its purported former representation of Mr. Bowlby is inaccurate.  Debtors' Objection, ¶ 57 n.36.  As disclosed in the Application and is evident from the 2022 Engagement Letter and 2023 Engagement Letter, Bowlby is a client affiliated party and was never a client of Kasowitz.

### C.    Kasowitz is Not Barred from Representing the Committee under Rule 1.9(a).

34.     The Debtors also argue that "even if AFI was a former client, Kasowitz's representation of the Committee also is impermissible due to AFI's lack of consent thereto, because the two representations are 'substantially related' and Kasowitz's representation of the Committee is materially adverse to AFI."  Debtors' Objection, ¶ 58.[12]  Although Kasowitz concedes that its representation of the Committee with respect to the investigation and potential prosecution of estate claims against RCP is "substantially related" to Kasowitz's prior representation of AFI, the Debtors have failed to show adversity.  *Id.*  Indeed, as the Debtors disclosed at a hearing on October 16, 2023, their independent director is investigating claims

---

1362, 1363-64 (5th Cir. 1986) (concurrent and active representation of client in a separate criminal trial impaired ability to call that client as a witness in other client's criminal trial); *United States v. Winkle*, 722 F.2d 605, 609-612 (10th Cir. 1983) (prior representation of government's key witness in criminal trial adversely affected ability of counsel to represent new client because of inability of counsel to zealously advocate on new client's behalf); *Church v. Sullivan*, 942 F.2d 1501, 1509-11 (10th Cir. 1991) (finding that counsel was unable to effectively cross-examine former client, to the detriment of new client); *Perillo v. Johnson*, 205 F.3d 775, 782 (5th Cir. 2000) (holding that the analysis centers on whether counsel is "prevented by his interest in another's welfare from vigorously promoting the welfare of his [current] client.") (citation omitted).  Any concern about impairment of Kasowitz's ability to zealously represent the Committee is addressed here by retaining Morris Nichols to handle matters as to which the Committee is adverse to the Debtors.

[11] There is no Model Rule 1.7(c)(2) under the current Model Rules.  Kasowitz presumes that the Debtors intended to refer to Model Rule 1.7(a)(2), which precludes representation where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another."

[12] Although the Debtors claim in the Debtors' Objection that "[r]epresentations substantially related to the representation of a former client, absent consent, *are* prohibited . . . . ," Debtors' Objection, ¶ 58 (emphasis added), as they state correctly in the following paragraph "material[] advers[ity]" must also be demonstrated. *Id.*, ¶ 59.  The U.S. Trustee Objection also confirms that the test is conjunctive. *See* U.S. Trustee Objection, ¶ 23 (citing *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, No. CIV. 10-1067- LPS, 2011 WL 2692968, at *5 (D. Del. June 22, 2011)).

against RCP. October 16, 2023 Tr. at 25:23-26:7. Although counsel suggested that releases would be sought notwithstanding, to the extent this is the position the Debtors ultimately take, Morris Nichols can serve as counsel on a standing motion, and Kasowitz can serve as litigation counsel if such a motion is granted. *Id.*

35.     The Debtors' contention that material adversity exists under Rule 1.9 relies on *In re S. Pac. Island Airways*, 68 B.R. 574 (Bankr. D. Haw. 1986), which is distinguishable and contradicted by Third Circuit precedent. Specifically, counsel to the committee there had failed to disclose numerous representations including the representation of the debtor against a major unsecured creditor prior to its retention, which would have led to a denial of the retention application, had the court been aware. *Id.* at 577. And critically, the case did not analyze the issues under Model Rule 1.9, but rather under the Bankruptcy Code, holding that although counsel had withdrawn its representation of the debtors, counsel's subsequent representation of the creditors' committee meant that counsel "represents an adverse interest" notwithstanding the withdrawal. 68 B.R. at 577. This directly contradicts the holding in *In re Boy Scouts of America*, 35 F.4th 149, 158 n.5 (3d Cir. 2022), discussed in Section II, *infra*, which held that adversity is determined based on the existence of present adverse interests. Moreover, the limited scope of Kasowitz's proposed representation of the Committee belies any legitimate assertion that interests are adverse.

36.     The Debtors also assert that current management has a disagreement with the Committee regarding the aggressiveness with which to pursue claims against RCP based upon concerns regarding RCP's willingness to provide DIP financing. Debtors' Objection, ¶ 68. Yet – the Delaware Local Rules preserve the Committee's right to challenge the proposed DIP financing. *See, e.g.*, Debtors' Objection, Ex. G at 3 (Kasowitz's prior representation "does not impede (nor

should it) efforts by the UCC to improve the terms of the DIP against RCP") Sept. 29, 2023 Tr. at
16:23-25 ("Info that Kasowitz has requested is information that ordinarily would be shared with
any committee to assist efforts to maximize the claims.").   Moreover, the aggressiveness with
which to pursue claims against the estate is not a question of adversity; instead, it is a question of
intensity.   Interests remain aligned.   However, to the extent that the Debtors conclude following
their investigation that the estates will not pursue claims against RCP or other third parties (at all),
Morris Nichols will handle a potential standing motion, absolving any issues.

37.     Accordingly, the Model Rules do not preclude Kasowitz's retention.

## II.     KASOWITZ'S RETENTION IS PROPER UNDER SECTIONS 1103(b) AND 327(a) OF THE BANKRUPTCY CODE

38.     The Debtors also argue that Kasowitz's Application should be denied under
Sections 1103(b) and 327(a) of the Bankruptcy Code and that Kasowitz must be disqualified
because Kasowitz will take positions on behalf of the Committee that are materially adverse to the
Debtors based on essentially the same assertions as its relies on to support disqualification under
the Model Rules.   *See* Section I, *supra*.

39.     None of these arguments precludes Kasowitz's proposed representation to
investigate and prosecute claims against non-debtors, including RCP.   Kasowitz's prior
representation of AFI ended on the Petition Date when RCP foreclosed on the AFI shareholders'
pledged equity interests.   Filusch Decl., ¶¶ 12-13.   Despite this prior representation, Kasowitz can
represent the Committee in matters that are not adverse to its former client AFI.   Putting aside the
wild speculation of the Debtors, the scope of the Committee's representation simply is not adverse
to any legitimate interest of the Debtors and does not implicate any client confidences.   To the
contrary, Kasowitz's retention is solely focused on augmenting the distributable value of the
Debtors' assets.   Accordingly, the Application should be granted.

40.    The Debtors' asserted grounds for disqualification do not mandate disqualification under Sections 1103(b) and 327(a) of the Bankruptcy Code, because there is no actual or present conflict of interest, as required by binding Third Circuit precedent delineated in *Boy Scouts*, 35 F.4th 149, as well as under *In re Revstone Industries, LLC*, . 551 B.R. 745, 746-47 (D. Del. 2015).

41.    In *Boy Scouts*, 35 F.4th 149, a case cited by the Debtors but which actually supports Kasowitz's retention, the court reaffirmed longstanding Third Circuit precedent that there are three categories of conflicts:  (1) actual conflicts; (2) potential conflicts; and (3) the mere appearances of conflict.  *Id.* at 158 (citing  *In re Marvel Entm't Grp.*,  140 F.3d 463, 476 (3d Cir. 1998)).  Actual conflicts require disqualification, potential conflicts allow the Court the discretion to retain a professional, and the mere appearance of conflict cannot support disqualification.  *Id.* (citing *Marvel*, 140 F.3d at 476).   In analyzing whether a conflict exists under Section 327(a) of the Bankruptcy Code, the Third Circuit held that the adversity analysis is viewed in the *present tense*, such that disqualification based on a prior adverse interest is not permissible.  *Id.* at 158 n.5 ("[Section] 327(a) is written in the present tense: it bars the retention of professionals who "*hold or represent*" adverse interests.  It only allows disqualifications for adverse interests that exist *at the time of retention*.") (emphasis added) (citing *In re AroChem Corp.*, 176 F.3d 610, 623 (3d Cir. 1999)).   The Third Circuit further highlighted that the key consideration in determining that counsel does not "hold[] or represent[] an *interest adverse to the estate*," or is not "disinterested" under Section 327(a) (meaning under Section 101(14)(c) that it does not have an "interest materially adverse to the *interest of the estate*"), is the absence of a conflict that "implicates the economic interests of the estate and might lessen its value," or "create a . . . dispute in which the estate is a rival claimant."  *Boy Scouts*, 35 F.4th at 158 (emphasis in original).

42.     *Boy Scouts* is instructive on its facts as well.  There, Sidley Austin LLP ("Sidley")

sought to be retained as debtors' counsel after failing to obtain a waiver from reinsurers it

represented.  *Id.* at 154-55.  Similar to this case, where the Debtors assert that Kasowitz still

represents them, Objection, ¶¶ 52-57, the clients in *Boy Scouts* contended that for several days

after Sidley filed its retention application and after the clients had refused to provide a waiver, that

Sidley continued to represent them at the time of its retention.  *Id.* at 155.  The Third Circuit found

no error with a bankruptcy determination that that Sidley had completed its withdrawal on one of

two days after filing its retention application, and a waiver from the former client was not required

given the absence of evidence of adversity.  *Id.* at 158 & n.5, 159-61.  Specifically, the Court found

that the retention was proper under Section 327(a) of the Bankruptcy Code because the prior

representation was not "adverse to [the debtor's] interests during its reorganization," and the

former client had failed to "meaningfully challeng[e]" the factual findings below.  *Boy Scouts*, 35

F.4th at 149.  The *Boy Scouts* Court also noted that disqualification motions should not be

employed a litigation tactic given the importance of the policy to allow litigants the counsel of

their choosing.  *Id.* at 160.

43.     Here, the Debtors have not set forth any evidence of adversity other than their view

that taking an aggressive posture toward potential claims may impact their ability to obtain DIP

financing and unfounded speculation that Kasowitz currently or has ever represented Mr. Bowlby.

Debtors' Objection, ¶ 58 n.36.  Kasowitz is not taking any adverse positions to the Debtors

regarding DIP financing, and to the extent the Debtors ultimately conclude that they do not want

to pursue claims and a standing motion is necessary, Morris Nichols is well-situated to contest the

Debtors' position with a standing motion.  If this is the case, Kasowitz will only investigate and

pursue claims against non-debtors under the scope of its proposed retention after standing has been granted.

44.     In *In re Revstone Indus., LLC*, a founder of the debtors filed an objection to the application of proposed counsel to the official committee of unsecured creditors in that case, where counsel had previously represented the debtors in domesticating a judgment. 551 B.R. 745, 746-47 (D. Del. 2015). Although the court held that the objector lacked standing because he was not the client, it noted in *dicta* that "Section 1103(b) is not violated if [committee counsel] represents an entity with an adverse interest in a matter unrelated to the bankruptcy case *or* in a matter that predates [the committee counsel's] representation of the Committee." *Id.* at 748 (citation omitted) (emphasis added). Therefore, as with Section 327(a), Section 1103(b) of the Bankruptcy Code also is not violated where the representation is of a former client, and Kasowitz's withdrawal and its proposed scope of representation to pursue only claims against non-debtor third parties equally satisfies Section 1103(b). Filusch Decl., ¶¶ 12-13.

## NOTICE

45.     Notice of this Reply shall be given to (a) the Debtors; (b) the Office of the United States Trustee for the District of Delaware, (c) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, (d) counsel to CP Credit Opportunities Fund Loan SPV (Fund III), L.P. and RCP Customized Credit Fund (Fund IV-A), L.P., (e) the United States Attorney's Office for the District of Delaware, (f) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service, and (g) any other party required to be provided notice under Local Rule 9013-1(m).

## **CONCLUSION**

WHEREFORE the Committee respectfully requests entry of an order granting the relief requested in the Application overruling any objection thereto, and granting such other and further relief as the Court may deem just and appropriate.

Dated: October 18, 2023

Respectfully Submitted,

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF AMERIFIRST FINANCIAL, INC., *ET AL*.**

By: */s/ Todd Cowen*
Todd Cowen
*Chair of the Official Committee of Unsecured Creditors*