IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERIFIRST FINANCIAL, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11240 (TMH)<br><br>(Jointly Administered)<br>**Ref. Docket No. 224** |

**ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF
PHOENIX CAPITAL, INC. AS MSR BROKER FOR THE DEBTORS AND DEBTORS
IN POSSESSION, PURSUANT TO 11 U.S.C. §§ 327(a) AND 328, EFFECTIVE AS OF
SEPTEMBER 7, 2020; (II) WAIVING CERTAIN REQUIREMENTS
IMPOSED BY LOCAL RULE 2016-2; AND (III) GRANTING RELATED RELIEF**

Upon the application (the "Application")[2] of the debtors in the above-captioned chapter 11 cases (collectively, the "Debtors"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for: (i) authority to employ and retain Phoenix Capital, Inc. ("Phoenix Capital") as MSR Broker to the Debtors in these Chapter 11 Cases, effective as of September 7, 2023 (the "Effective Date"), pursuant to the terms of the Engagement Agreement; and (ii) a waiver of certain requirements of Local Rule 2016-2 and excusing compliance with certain U.S. Trustee Guidelines, all as more fully set forth in the Application; and upon consideration of the First Day Declaration and the Jimenez Declaration; and the United States District Court for the District of Delaware

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Phoenix 1040 LLC (2550); and AmeriFirst Financial, Inc. (4557). The location of Debtor AmeriFirst Financial, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 1550 McKellips Road, Suite 117, Mesa, Arizona 85203.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided to the parties listed therein, and no other or further notice need be provided; and this Court being satisfied that Phoenix Capital has the capability and experience to provide the services described in the Application and that Phoenix Capital does not hold an interest adverse to the Debtors or the estates respecting the matters upon which it is to be engaged; and having found that the relief requested in the Application is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1. The Application is **GRANTED** as set forth herein.

2. The Debtors are authorized to retain and employ Phoenix Capital as MSR Broker to the Debtors in these Chapter 11 Cases, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, effective as of the Effective Date, under the terms and conditions set forth in the Application and the Engagement Agreement, as modified by this Order.

3. Except to the extent set forth herein, the Engagement Agreement (together with all exhibits thereto), including without limitation the Fee and Expense Structure, is approved pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, and the Debtors are authorized

and directed to perform their payment, reimbursement, contribution, and indemnification obligations and their non-monetary obligations in accordance with the terms and conditions, and at the times specified, in the Engagement Agreement.

4. Phoenix Capital's fees in these Chapter 11 Cases are hereby approved pursuant to section 328(a) of the Bankruptcy Code. The fees and expenses payable to Phoenix Capital pursuant to the Engagement Agreement and this Order shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code.

5. Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of this Court, or any guidelines regarding submission and approval of fee applications, in light of services to be provided by Phoenix and the structure of Phoenix's compensation pursuant to the Engagement Letter, Phoenix and its professionals shall be granted a limited waiver of the information-keeping requirements of Bankruptcy Rule 2016(a), Local Rule 2016-2(d), the U.S. Trustee Guidelines, and any otherwise applicable orders or procedures of the Court in connection with the services to be rendered pursuant to the Engagement Letter, and shall instead be required only to maintain time records of its services rendered for the Debtors in one-half hour (0.5) increments, setting forth, on a daily basis, a description of the services rendered and the professionals rendering such services, and will present such records together with its fee applications filed with this Court; *provided however*, that Phoenix's professionals shall not be required to keep time records on a "project category" basis or provide or conform to any schedules of hourly rates.

6. Notwithstanding anything to the contrary in the Application or any of its attachments, no amounts shall be paid to Phoenix Capital absent an order of this Court approving

a fee application filed on notice to parties in interest in these Chapter 11 Cases under the procedures set forth in any order establishing procedures for compensation and reimbursement of expenses of professionals.

7.      Notwithstanding any provision to the contrary in this Order, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") shall have the right to object to Phoenix's request(s) for interim and final compensation based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code. This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Phoenix's fees under the standard set forth in the preceding sentence. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Phoenix's fees.

8.      The Debtors must approve any third-party broker or transfer fees before they are incurred by Phoenix.

9.      In the event that Phoenix Capital seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application, the Engagement Agreement, and this Order, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Phoenix Capital's own applications, both interim and final, and these invoices and time records shall be subject to the approval of this Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.  Notwithstanding the foregoing, Phoenix Capital shall only

be reimbursed for any legal fees incurred in connection with these Chapter 11 Cases to the extent permitted under applicable law and the decisions of this Court.

        10.      The indemnification, contribution, reimbursement, limitation of liability and related provisions set forth in the Engagement Agreement are approved, subject during the pendency of these Chapter 11 Cases to the following modifications:

    a.    No Indemnified Party (as that term is defined in the Engagement Agreement) shall be entitled to indemnification, contribution, or reimbursement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court.

    b.    Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify an Indemnified Party, or provide contribution or reimbursement to an Indemnified Party, for: (i) any claim or expense to the extent that it is either judicially determined (the determination having become final) to have arisen from such Indemnified Party's gross negligence, bad faith, or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of Phoenix Capital's or another Indemnified Party's contractual obligations unless this Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artist Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) for any claims or expense that is settled prior to judicial determination as to the exclusions set forth in clauses (i) and (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which such Indemnified Party should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement, as modified herein; and

    c.    If, before the earlier of: (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal); and (ii) the entry of an order closing these Chapter 11 Cases, Phoenix Capital believes that it is entitled to payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Agreement, as modified by this Order, including, without limitation, the advancement of defense costs, Phoenix Capital must file an application with this Court, and the Debtors may not pay any such amounts to Phoenix Capital before the entry of an order by this Court approving the payment. This paragraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for payment by Phoenix Capital for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify

        Phoenix Capital. All parties in interest shall retain the right to object to any demand for indemnification, contribution, or reimbursement by Phoenix Capital under the respective standards set forth above.

    d.    The limitation of liability provision set forth in paragraph 5.2 of the Engagement Letter shall not apply during the pendency of these Chapter 11 Cases.

11.    During the course of these Chapter 11 Cases, any provisions in the Engagement Agreement, the Application, or any document attached or related thereto requiring the payment of late fees or interest on fees or expenses if not paid within a certain time frame will have no force or effect.

12.    Phoenix Capital shall: (i) to the extent that Phoenix Capital uses the services of independent contractors or subcontractors (collectively, the "Contractors") in these Chapter 11 Cases, pass through the cost of such Contractors to the Debtors at the same rate that Phoenix Capital pays the Contractors; and (ii) seek reimbursement for actual costs only. The Debtors shall ensure that the Contractors are subject to the same conflicts checks as required for Phoenix Capital and file with this Court such disclosures required by Bankruptcy Rule 2014.

13.    Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be effective and enforceable immediately upon entry hereof.

14.    Phoenix Capital shall use its best efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these Chapter 11 Cases.

15.    In the event of any inconsistency between the Engagement Agreement, the Application, and this Order, this Order shall govern.

16.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

17. Notwithstanding any term in the Engagement Agreement to the contrary, this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

|  |  |
|---|---|
| **Dated: October 24th, 2023**<br>**Wilmington, Delaware** | **THOMAS M. HORAN**<br>**UNITED STATES BANKRUPTCY JUDGE** |