## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| AMERIFIRST FINANCIAL, INC., et al.[1] | ) Case No. 23-11240 (TMH) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

## MEMORANDUM OPINION

The question before the Court is whether the bankruptcy cases of Phoenix 1040 LLC ("Phoenix") and AmeriFirst Financial, Inc. ("AFI," and together with Phoenix, the "Debtors") should be transferred from this Court to the United States Bankruptcy Court for the District of Arizona. Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee") filed his Motion to Transfer Venue (the "Motion") [D.I. 142], arguing that the interest of justice demands transfer. The Official Committee of Unsecured Creditors[2] (the "Committee") and Eric Bowlby[3] ("Mr. Bowlby," and together with the U.S. Trustee and the Committee, the "Movants") join in the request. The Debtors[4] and RCP Customized Credit Fund (Fund IV-A), L.P.[5] ("RCP") oppose it. For the reasons described in this opinion, I find that the Movants have failed to meet their burden, and therefore deny the Motion.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers include: Phoenix 1040 LLC (2550) and AmeriFirst Financial, Inc. (4557). The Debtors' service address is 1550 McKelleps Road, Suite 117, Mesa, AZ 85203.

[2] Joinder of the Official Comm. of Unsecured Creditors to the United States Trustee's Mot. to Transfer Venue [D.I. 266].

[3] Joinder of Interested Party Eric Bowlby to United State Trustee's Mot. to Transfer Venue [D.I. 144]; Reply of Interested Party Eric Bowlby in Support of United States Trustee's Mot. to Transfer Venue [D.I. 268].

[4] Obj. to United States Trustee's Mot. to Transfer Venue (the "Debtors' Obj,") [D.I. 253].

[5] Joinder of RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. and RCP Customized Credit Fund (Fund-IV-A), L.P. to Debtors' Obj. to United States Trustee's Mot. to Transfer Venue [D.I. 257].

## JURISDICTION

The Court has jurisdiction over this matter and the authority to enter a final order under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

## BACKGROUND

AFI is a regional, mid-sized independent mortgage company.[6] It is an Arizona corporation with its headquarters located in Arizona. On May 15, 2023, AFI entered into agreements with RCP Credit Opportunities Fund Loan SPV (Fund III), L.P ("RCP"), which is the prepetition lender, and several of RCP's affiliates.[7] Among these agreements, shareholders Eric and Kenneth Bowlby entered into the "Pledge Agreement" that provided liens to RCP on the entirety of AFI common stock.[8] Through a separate agreement, the "Second Agreement," AFI pledged 40,000 shares of "preferred shares" to RCP at "the closing of the Prepetition Credit Agreement."[9]

On June 28, 2023, RCP formed Phoenix.[10] Phoenix is a Delaware LLC "owned by non-Debtor Phoenix 1040 Holdings, LLC ('Phoenix Holdings'), . . . also a Delaware entity."[11] Phoenix Holdings remains under the control and ownership of RCP.

On August 24, 2023, following events of default, RCP exercised it rights under the Pledge Agreement, "assigning [its] rights under the Pledge Agreement" and transferring all AFI common stock—through an execution of new stock certificates—to Phoenix.[12] RCP retains ownership of all preferred shares of AFI stock.[13] On the same day, Phoenix Holdings removed

---

[6] <u>Decl. of T. Scott Avila in Support of First Day Mots.</u> (the "<u>Avila Decl.</u>")  ¶ 5 [D.I. 20].
[7] Avila Decl. ¶¶ 7–12.
[8] <u>Id.</u> at ¶ 10.
[9] <u>Id.</u> at ¶ 11.
[10] Motion ¶ 1.
[11] Debtors' Obj. ¶ 13.
[12] Avila Decl. ¶ 12.
[13] <u>See</u> Chapter 11 Voluntary Petition of AFI, List of Equity Security Holders [D.I. 1].

the directors and executives of AFI and installed David Sloane and Jeffrey Dane as directors, and T. Scott Avila as Chief Restructuring Officer.[14] Mr. Dane serves as an independent director.[15]

On August 24, 2023 (the "Petition Date"), Phoenix filed a voluntary petition under chapter 11 relief in this Court. AFI then filed a petition in this Court as an affiliate of Phoenix. The cases are being jointly administered.[16]

Of AFI's top thirty creditors, seven are identified as having addresses in Arizona.[17] The remaining top creditors have addresses around the country. RCP, which is based in New York, is AFI's largest unsecured creditor, with claims exceeding $23 million, which are said to be partially secured.[18] AFI's Schedule D identifies twenty-seven secured creditors with addresses throughout the country.[19] AFI's Schedule E/F identifies two-hundred forty unsecured creditors spread throughout the country.[20]

AFI is headquartered at 1550 McKellips Road, Suite 117, Mesa, AZ 85203. That is where Mr. Bowlby ran AFI.[21] Its books and records are predominately located in the AFI's offices in Gilbert, Arizona.[22]

The Debtors have seventeen remaining employees who are in Arizona, Colorado, and Florida.[23]

---

[14] Debtors' Obj. ¶ 15.

[15] Id.

[16] Order (I) Directing Joint Admin. of Chapter 11 Cases and (II) Granting Related Relief [D.I. 49].

[17] At the October 20, 2023, counsel for the U.S. Trustee argued that eighteen of the top thirty creditors are in Arizona. Tr. Regarding Hr'g on Mot. to Transfer Venue Held October 20, 2023 (the "Hr'g Transcript"), 169:8–12. However, upon my review of the AFI top thirty unsecured creditor list, there are seven Arizona addresses, six California addresses, five New York addresses, three Minnesota addresses, one Florida address, one Colorado address, one Massachusetts address, one Texas address, one North Carolina address, one Washington address, and three addresses that were redacted or omitted. See AFI Pet. [D.I. 1].

[18] AFI Schedule D [D.I. 251].

[19] Id.

[20] AFI Schedule E [D.I. 251].

[21] Hr'g Tr., 155:17-18.

[22] Hr'g Tr., 148:2–3; 155:19–21.

[23] Hr'g Tr., 82:8–12.

Since the Petition Date, the Debtors have made some progress with these cases. This Court has approved many typical first day motions. Notably, however, the Debtors have not yet obtained final approval of debtor-in-possession financing and use of cash collateral and lack final approval of their cash management motion. And while the Debtors filed a proposed combined plan and disclosure statement,[24] they apparently prepared and filed it without input from the Committee.[25]

On October 20, 2023, the Court held an evidentiary hearing regarding the Motion. The Court heard testimony from two witnesses. The Debtors presented the testimony of R. Scott Avila. Mr. Avila is the Managing Director and Chief Restructuring Officer of Phoenix and President, Secretary, Treasurer, and Chief Restructuring Officer of AFI.[26]

Mr. Bowlby also testified.[27] He is the former Chief Executive Officer, majority shareholder, and Chairman of AFI.[28] He served in those roles until August 24, 2023.[29]

## STANDARD

Under 28 U.S.C. § 1408(1), venue is proper in the "domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement."[30] Under 28 U.S.C. § 1408(2), any affiliate of a debtor may file

---

[24] Chapter 11 Combined Plan & Disclosure Statement [D.I. 300].

[25] Hr'g Tr., 191:9–11 ("MR. DEHNEY: They filed a plan last night. No one consulted with the committee. We haven't had a discussion with them. No one has reached out.").

[26] Hr'g Tr., 19:9–11.

[27] The Debtors contend that Mr. Bowlby is not a creditor and lacks standing to be heard in this matter. Mr. Bowlby argues that he is owed pre-petition wages and has potential indemnification claims against AFI. I need not decide whether he has standing because I am considering Mr. Bowlby's arguments and am ruling on the merits.

[28] Decl. of Eric Bowlby, ¶ 1 [D.I. 154].

[29] Id.

[30] 28 U.S.C. § 1408(1); In re Enron Corp., 274 B.R. 327, 341 (Bankr. S.D.N.Y 2002) ("[V]enue is proper in any jurisdiction where the debtor maintains a domicile, residence, principal place of business or where its principal assets are located for at least 180 days before the filing of the bankruptcy petition.").

a bankruptcy petition in the same district as the Debtor.[31] Because Phoenix is formed under the

laws of the State of Delaware, venue for its case in this district is proper under 28 U.S.C. §

1408(1). Likewise, because AFI is an affiliate of Phoenix, venue of its case in this district is

proper under section 1408(2).

The Court has broad discretion when deciding to transfer venue.[32] However, courts

generally lend "great weight" to a debtor's choice of venue when venue is proper.[33] The Movants

bear the burden of establishing by a preponderance of the evidence that the venue of these cases

should be transferred.[34]

Section 1412 empowers a court to "transfer a case or proceeding under title 11 to a

district court for another district, in the interest of justice or for the convenience of parties."[35]

Section 1412 directs the Court to apply two distinct and independent tests in determining proper

venue; the "Court must grant relief if it is established that a transfer of venue would be proper if

it is in (1) the interest of justice or (2) the convenience of the parties."[36]

### ANALYSIS

The Movants urge the Court to transfer venue of these cases under the "interest of

justice" prong of section 1412. Courts in this district consider certain factors when determining

---

[31] 28 U.S.C. § 1408(2).

[32] In re Centennial Coal, Inc., 282 B.R. 140, 146 (Bankr. D. Del. 2002).

[33] In re Delaware & H.R. Co., 96 B.R. 469, 473 (D. Del. 1989); In re Ocean Properties of Delaware, Inc., 95 B.R. 304, 305 (Bankr. D. Del. 1988) ("When venue is proper, the debtor's choice of forum is entitled to 'great weight.'"); In re Rests. Acquisition I, LLC, No. 15-12406 (KG), 2016 Bankr. LEXIS 684, at *7 (Bankr. D. Del. Mar. 4, 2016) ("[C]ourts will generally grant substantial deference to a debtor's choice of forum."); In re Rehoboth Hospitality, LP, No. 11-12798 (KG), 2011 Bankr. LEXIS 3992, at *10 (Bankr. D. Del. Oct. 19, 2011) ("Generally, there is a presumption in favor of maintaining the debtor's choice of forum.").

[34] Hechinger Liquidation Trust v. Fox (In re Hechinger Inv. Co. of Del., Inc.), 296 B.R. 323, 325 (Bankr. D. Del. 2003) ("The decision of whether venue should be transferred lies within the sound discretion of the Court, though the moving party must demonstrate by a preponderance of the evidence that such change is warranted.") (citation omitted).

[35] 28 U.S.C. § 1412. The Federal Rules of Bankruptcy Procedure set forth an identical standard. Under Rule 1014(a)(1), "the court . . . may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties." Fed. R. Bankr. P. 1014(a)(1).

[36] Enron, 274 B.R. at 343.

whether to transfer venue in the interest of justice. Among those factors are "(i) whether transfer promotes the economic and efficient administration of the bankruptcy estate; (ii) whether transfer facilitates judicial efficiency; (iii) whether the parties will receive a fair trial in either venue; (iv) whether either forum has an interest in deciding the controversy; (v) whether transfer would affect enforceability of any judgment rendered; and (vi) whether the plaintiff's original choice of forum should be disturbed."[37] When weighing the interest of justice, bankruptcy courts lend the most significance to "the economic and efficient administration of the estate."[38]

As an initial matter, where venue is proper under section 1408, as is the case here, courts afford great weight to the debtor's selection of venue.[39]

The U.S. Trustee argues that the Debtors' decision to file in Delaware should be given no deference. That is because, the argument goes, the Debtors "manufactured venue" in Delaware when Phoenix was incorporated in Delaware less than two months before the Petition Date. The U.S. Trustee likens these cases to In re Patriot Coal[40] and In re LTL Management LLC.[41]

In Patriot Coal, the debtor primarily operated in the mining and preparation of coal.[42] Patriot's principal place of business was St. Louis, Missouri. The mining and preparation operations of Patriot Coal stretched across West Virginia and Kentucky. Patriot maintained

---

[37] Paul H. Shield, Md, Inc. Profit Sharing Plan v. Northfield Labs Inc. (In re Northfield Labs., Inc.), 467 B.R. 582, 590 (Bankr. D. Del. 2010).
[38] Enron, 274 B.R. at 342; Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.), 596 F.2d 1239, 1247 (5th Cir. 1979) ("[T]he most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate.").
[39] See, e.g., Patriot Coal, 482 B.R. 718, 739 (Bankr. S.D.N.Y. 2012) ("A debtor's choice of forum is entitled to great weight if venue is proper pursuant to section 1408."; Rehoboth Hospitality, 2011 Bankr. LEXIS 3992 ("Generally, there is a presumption in favor of maintaining the debtor's choice of forum); Enron, 274 B.R. at 342 ("A debtor's choice of forum is entitled to great weight if venue is proper.").
[40] In re Patriot Coal, 482 B.R. at 718.
[41] In re LTL Mgmt. LLC, Case No. 21-30589, 2021 Bankr. LEXIS 3155 (Bankr. W.D.N.C. Nov. 16, 2021).
[42] Patriot Coal, 482 B.R. at 729.

interests separate from mining in several states, including Pennsylvania, Missouri, Ohio, Indiana, and Illinois. Id. Notably, Patriot conducted no business in New York.

Patriot Coal created two business entities in New York—PCX Enterprises, Inc.[43] on June 1, 2012, and Patriot Beaver Dam Holdings, LLC on June 14, 2012.[44]  On July 9, 2012, PCX and Patriot Beaver Dam filed voluntary petitions under chapter 11 in the Bankruptcy Court of the Southern District of New York.[45] Then, Patriot Coal filed a voluntary petition in the Bankruptcy Court for the Southern District of New York based on the filings of their affiliates, PCX and Patriot Beaver Dam. The court emphasized that, while Patriot Dam's actions did not constitute a bad faith filing, the creation of venue on the eve of filing must be considered as a factor when considering the interests of justice. To do so otherwise "would elevate form over substance in way that would be an affront to the purpose of the bankruptcy venue statute and the integrity of the bankruptcy system."[46] The court emphasized that the Debtor's actions would "all but render the venue statute meaningless."[47] The court further noted that there was no evidence to demonstrate that venue in New York served the convenience of the parties. Therefore, the court transferred the venue of the cases.

The Bankruptcy Court for the Western District of North Carolina faced a similar situation in LTL. In LTL, the debtor's predecessor "underwent a Texas divisive merger, resulting in the formation of the Debtor."[48] The newly formed debtor then converted its state of incorporation to

---

[43] Id. at 727.
[44] Id. at 728.
[45] "Of particular significance to the Court's decision and analysis is the fact that the Parties stipulated prior to the Hearing that the Debtors formed both PCX and Patriot Beaver Dam to ensure that the provisions of 28 U.S.C. § 1408(1) were satisfied, and for no other purpose." Id. at 728. Here, Movants assert no evidence that Phoenix was established solely for the purpose of obtaining venue in Delaware. Instead, there are numerous other legitimate reasons for the formation of Phoenix as a Delaware limited liability company.
[46] Id. at 744.
[47] Id.
[48] LTL Mgmt. LLC, 2021 Bankr. LEXIS 3155, at *24.

North Carolina and filed a voluntary petition in the Western District of North Carolina.[49] In its decision to transfer venue from North Carolina to New Jersey, the court emphasized the Debtor's stipulation that venue was manufactured to obtain favorable dismissal standards as a consideration within the interests of justice standard. In effect, the debtor elevated the strict language of section 1408 over its intended purpose. The court noted that the "more dispositive factor" was that New Jersey remained "a more appropriate venue for the administration of the estate."[50]

I cannot conclude that the Debtors "manufactured" venue in this Court. These cases are distinguishable from Patriot Coal and LTL. In both Patriot Coal and LTL, the debtors themselves formed or reincorporated entities into their desired venue. Those courts were clear—such obvious attempts to manipulate venue placed the form of the venue statute over their substance, undermining the purpose and integrity of the bankruptcy system.[51]

In these cases, the prepetition lender, a Delaware entity, formed Phoenix for the purpose of holding AFI stock after exercising its rights under the Pledge Agreement. RCP forming Delaware entities to hold its acquired stock does not represent the brazen manipulation of venue seen in Patriot Coal and LTL. It is unsurprising that a Delaware entity would form subsidiary entities under the same state laws.

Here, the Movants also contend that the Debtors' choice of venue should be granted no deference on the theory that RCP selected the venue for these cases, and not the Debtors. At the hearing on the Motion, Mr. Avila testified that he was supportive of the Debtors commencing

---

[49] Id.
[50] Id. at *26. The Court weighed the relevant factors under the interest of justice standard and found New Jersey a more beneficial venue for the administration of the estate. Among the Court's findings were New Jersey's "significant mass tort experience," the "limited resources" of the Western District of North Carolina, and the necessity of assigning a visiting judge to at least one of the major asbestos cases pending in the district, thus losing "any efficiencies in this case here in light of the court's experience."
[51] See Patriot Coal, 482 B.R. at 744.

cases under chapter 11 in Delaware.[52] Specifically, Mr. Avila testified that Phoenix is incorporated in Delaware, and that AFI operated, has creditors, and originated loans throughout the United States.[53] He further testified that there was nothing unusual or surprising about filing in Delaware.[54] I simply cannot conclude that an experienced Chief Restructuring Officer such as Mr. Avila, who testified to his involvement in numerous in-court chief restructuring officer engagements,[55] could only have concluded that a Delaware bankruptcy filing was an appropriate strategy for the Debtors at the direction of RCP.

Instead, it is entirely reasonable, and is supported by the evidentiary record, that while RCP favored the venue of Delaware for the bankruptcy filings, the board of AFI independently determined that Delaware was the appropriate venue. Evidence to support the Movants' contention that Mr. Avila and Mr. Dane were mere instrumentalities of RCP and entirely under their control is lacking.

The other factors identified by the Northfield court generally are neutral. I cannot find that transfer promotes the economic and efficient administration of the bankruptcy estate. Instead, I find this to be a neutral factor or that it slightly favors denial of the Motion. The Delaware and Arizona courts are equally capable of presiding over these cases in an efficient manner. However, there would be some measure of increased cost associated with transferring the case, particularly because professionals might be replaced in the new venue, or would be required to associate with and integrate Arizona counsel, and take the time to assist the Court in getting acquainted with the cases.

---

[52] Hr'g Tr., 26:11–21.
[53] Id. at 26:14–19.
[54] Id. at 26:18–21.
[55] Id. at 20:3–5.

The factor of whether transfer would facilitate judicial efficiency is neutral. Again, the Delaware and Arizona courts are equally capable of presiding over these matters in an efficient manner. It is my understanding that neither court is so overburdened that administering these cases would impose any burden or affect the efficient operation of the courts.

The parties will be treated fairly in either venue. This factor is neutral.

While both venues have an interest in deciding the controversies at issue in these cases, this factor slightly favors transfer. The Debtors historically operated from Arizona, albeit with matters spread out around multiple states. In addition, there are several properties remaining to be sold in Arizona. However, Delaware has its own interest in these cases because of Phoenix's domicile here.

Finally, there is no issue regarding the enforceability of any judgments rendered by this Court. This factor is neutral.

Based on consideration of all these factors, with the most important one being the economic and efficient administration of these cases, I find that the Movants have not sustained their burden to demonstrate by a preponderance of the evidence that the venue of these cases should be transferred to the District of Arizona. Accordingly, the Motion is denied.

Dated: October 25, 2023
Wilmington, Delaware

Thomas M. Horan
United States Bankruptcy Judge