**<u>Exhibit B</u>**

**Redline Comparing Committee's Proposed Final DIP Order to Debtors Proposed Final DIP Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMERIFIRST FINANCIAL, INC., *et al.*,[1] | Case No. 23-11240 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. ___** |

**FINAL ORDER (I) AUTHORIZING DEBTORS (A) TO**
**OBTAIN POSTPETITION FINANCING AND (B) TO UTILIZE**
**CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION**
**TO PREPETITION LENDERS, (III) MODIFYING THE AUTOMATIC STAY,**
**AND (IV) GRANTING RELATED RELIEF**

This matter is before the Court on the motion (the "Motion") of AmeriFirst Financial,

Inc. ("AmeriFirst") and Phoenix 1040, LLC, as debtors and debtors in possession (collectively,

the "Debtors"), in these chapter 11 cases (the "Chapter 11 Cases"), requesting entry of a final

order (this "Final Order") pursuant to sections 105(a), 363, and 364 of chapter 11 of title 11 of

the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rule 4001 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local

Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the

District of Delaware (as amended, the "Local Bankruptcy Rules"):

(1)    authorizing AmeriFirst to obtain postpetition financing from RCP Credit

Opportunities Fund Loan SPV (Fund III), L.P. and RCP Customized Credit Fund (Fund IV-A),

L.P. ("DIP Lenders"), consisting of a senior secured, superpriority term loan facility in the

principal amount of up to **$5,000,000** (the "DIP Loans") to be used for general liquidity

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers include:  Phoenix 1040 LLC (2550) and AmeriFirst Financial, Inc. (4557).  The Debtors' service address is 1550 McKelleps Road, Suite 117, Mesa, AZ 85203.

purposes, including the payment of ~~administrative~~ expenses and estate professional fees, as described herein and in that certain *Second Amended and Restated Binding DIP Term Sheet*, dated October 5, 2023, by and among the DIP Lenders, as lenders, RCP Credit Opportunities Fund Loan SPV (Fund III), L.P., as agent (the "DIP Agent"), and AmeriFirst, as borrower (substantially in the form attached hereto as **Exhibit A**, as any time amended, the "DIP Term Sheet"), of which amount **$2,775,000** was approved on an interim basis (the "Interim Amount Limit") on the terms and conditions set forth in the interim order approving the Motion entered by the Court on August 31, 2023 [Dkt. No. 61] (the "Interim Order");

(2)     authorizing AmeriFirst to execute and enter into the DIP Term Sheet and to perform all such other and further acts as may be required in connection with the DIP Term Sheet;

(3)     authorizing AmeriFirst to use proceeds of the DIP Loans and cash collateral (the "Cash Collateral") solely as expressly permitted in the DIP Term Sheet and in accordance with this Final Order;

(4)     pursuant to Bankruptcy Code section 364, granting the DIP Agent for the benefit of the DIP Lenders security interests and liens as set forth in the DIP Term Sheet and this Final Order and allowed superpriority administrative expense claims against AmeriFirst for the amounts advanced under the DIP Loans;

(6)     authorizing AmeriFirst to pay the principal, interest, fees, expenses, disbursements, and other amounts payable under the DIP Term Sheet as such amounts become due and payable;

(7)     granting adequate protection to the Prepetition Lenders (as defined below) as set forth in the DIP Term Sheet and this Final Order; and

(8)    granting the Debtors such other and further relief as is just and proper.

Based upon the Court's review of the Motion and the Interim Order, the exhibits attached thereto, the *Declaration of T. Scott Avila in Support of First Day Motions* (the "First Day Declaration") and all matters brought to the Court's attention at the interim hearing, which was held on August 30, 2023, pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) (the "Interim Hearing"), and all matters brought to the Court's attention at the final hearing, including but not limited to the objections of the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Committee") filed at Dkt. Nos. 281, 310, 403 and 404, which was held on ~~October  20~~November 21, 2023 (the "Final Hearing"), and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND, DETERMINED, AND ADJUDGED,** that:[2]

1.    <u>Disposition</u>.    The Motion is hereby GRANTED on a final basis solely to the extent provided herein.  Any and all objections to the relief requested in the Motion, to the extent not otherwise withdrawn, waived, or resolved by consent at or before the Interim Hearing and the Final Hearing, and all reservations of rights included therein, are hereby OVERRULED and DENIED unless otherwise provided herein.

2.    <u>Jurisdiction; Core Proceeding</u>.        This Court has jurisdiction over the Chapter 11 Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C.  § 1334.  This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

3.      <u>Service of Motion and Notice of Interim and Final Hearing</u>. The   Debtors   have caused to be served a notice of the Motion, the Interim Hearing, and the Final Hearing, including a copy of the proposed Interim Order, entered Interim Order, proposed Final Order, and Budget (as defined below), by electronic mail, telecopy transmission, hand delivery, overnight courier, or first class United States mail upon the Office of the United States Trustee (the "<u>U.S. Trustee</u>"), the consolidated 30 largest unsecured creditors of the Debtors, the Internal Revenue Service, all parties who have filed requests prior to the date of service for notices under Rule 2002 of the Bankruptcy Rules, and all parties known by a Debtor to hold or assert a lien on any asset of a Debtor.  The foregoing notice of the Motion, as it relates to this Final Order and Final Hearing, is appropriate, due, and sufficient under the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, including, without limitation, Sections 102(1) and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b), (c) and (d), and that no further notice of the relief sought at the Final Hearing and the relief granted herein is necessary or required.

4.      <u>Petition Date</u>. On August 24, 2023 (the "<u>Petition Date</u>"), each of the Debtors filed with the Court its respective voluntary petition for relief under chapter 11 of the Bankruptcy Code, and each is continuing to manage its properties and to operate its business as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed for any Debtor herein.  On September 15, 2023, the Office of the U.S. Trustee appointed the Official Committee of Unsecured Creditors in the Chapter 11 Cases [Dkt. No. 122] (the "<u>Committee</u>").

5.      <u>AmeriFirst's Stipulations</u>.  AmeriFirst, on behalf of itself and its estate, admits, stipulates, acknowledges, and agrees as follows<u>, subject to the Challenge(s) (as defined below)</u>:

      a.      <u>Need for Financing</u>.  An immediate and ongoing need exists for AmeriFirst to obtain the DIP Loans in order to permit, among other

things, the orderly operation of its business and the satisfaction of administrative expense claims. AmeriFirst does not have sufficient available resources of working capital to maintain its assets without postpetition financing. AmeriFirst's ability to maintain going concern value is essential to its preservation of the value of its assets for the benefit of all stakeholders.

b.  <u>Prepetition Credit Facility</u>. Pursuant to that certain *Amended and Restated Credit and Security Agreement*, dated as of May 15, 2023 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "<u>Prepetition Credit Agreement</u>", collectively with all other agreements, documents, and instruments executed or delivered in connection therewith, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and fee letters, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date the "<u>Prepetition Loan Documents</u>", and the credit facilities evidenced thereby, collectively, the "<u>Prepetition Credit Facility</u>") among (a) AmeriFirst Financial, Inc., as borrower the ("<u>Prepetition Borrower</u>"), (b) RCP Credit Opportunities Fund Loan SPV (Fund III), L.P., as agent (the "<u>Prepetition Agent</u>"), (c) RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. and RCP Customized Credit Fund (Fund IV-A), L.P. as lenders (the "<u>Prepetition Lenders</u>" and together with the Prepetition Agent, the "<u>Prepetition Secured Parties</u>"), the Prepetition Borrower incurred "Obligations" (as defined in the Prepetition Credit Agreement, the "<u>Prepetition Loans</u>" and with other obligations, the "<u>Prepetition Secured Obligations</u>"), the Prepetition Borrower is indebted to the Prepetition Secured Parties as set forth in the Prepetition Credit Facility.

c.  <u>Prepetition Secured Obligations</u>. As of the Petition Date, the Prepetition Borrower was validly, justly and lawfully indebted and liable to the Prepetition Secured Parties, without defense, challenge, objection, claim, counterclaim, or offset of any kind, for (x) not less than $15,798,087 in outstanding principal amount of Loans (as defined in the Prepetition Credit Agreement) plus accrued and unpaid interest thereon, and (y) any fees, expenses and disbursements (including any attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, financial advisors' fees, and fees of other consultants and professionals), costs, charges, indemnities, and other Prepetition Secured Obligations in each case incurred under (or reimbursable pursuant to) or secured by the Prepetition Loan Documents.

d.    <u>Validity of Prepetition Secured Obligations</u>. AmeriFirst stipulates that the Prepetition Obligations under Prepetition Loan Documents constitute legal, valid, binding, and non-avoidable obligations of AmeriFirst in accordance with the respective terms of the relevant Prepetition Loan Documents, and no portion of the Prepetition Obligations or any payment made to the Prepetition Lenders or applied to or paid on account thereof prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is defined in the Bankruptcy Code), cause of action   including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law.   The Prepetition Protective Advances (as defined in the DIP Term Sheet) shall be deemed "Protective Advances" under the Prepetition Loan Documents.

e.    <u>Validity, Perfection and Priority of Prepetition Liens</u>. AmeriFirst stipulates that, as of the Petition Date, pursuant to the Prepetition Loan Documents, AmeriFirst granted for the benefit of the Prepetition Lenders, a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on (the "<u>Prepetition Liens</u>") substantially all of its assets and property as set forth in the Prepetition Loan Documents (the "<u>Prepetition Collateral</u>"), subject only to any liens permitted by the Prepetition Loan Documents to be senior to the Prepetition Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "<u>Prepetition Permitted Senior Liens</u>").

f.    <u>Challenge Period</u>.   AmeriFirst's stipulations, admissions, agreements and releases contained in this Final Order shall be binding upon AmeriFirst and all other parties in interest, including, without limitation, the Committee and any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases and any other person or entity acting or seeking to act on behalf of AmeriFirst's estate, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for AmeriFirst, in all circumstances and for all purposes unless: (a) the Committee or other party in interest has filed a motion for standing to prosecute an adversary proceeding or contested matter (subject to the limitations contained herein) (i) by no later than the later of (x) November 21, 2023 and (y) if a chapter 7 or a chapter 11 trustee is appointed or elected prior to the end of the Challenge Period (as

defined below), the Challenge Period solely for any such chapter 7 trustee or chapter 11 trustee shall be extended to the date that is the later of (A) November 21, 2023, or (B) the date that is 30 calendar days after their appointment or (ii) any such later date as has been agreed to in writing by the Prepetition Lenders or (iii) has been ordered by the Court for cause upon a motion filed and served within any applicable period (the time period established by the foregoing clauses (x)-(z) the "Challenge Period"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens, or (B) asserting or prosecuting any avoidance action or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, a "Challenge" or the "Challenges") against the Prepetition Lenders in connection with or related to the Prepetition Loan Documents, the Prepetition Loans, the Prepetition Liens, or the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge.  If no Challenge is filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such Challenge and Court's ruling becomes a final non-appealable order, then: (1) AmeriFirst's stipulations, admissions, agreements and releases contained in this Final Order shall be binding on AmeriFirst and all parties in interest; (2) the obligations of AmeriFirst under the Prepetition Loan Documents shall constitute allowed claims not subject to defense avoidance, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in this case and any Successor Case; (3) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, including any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of AmeriFirst's estate, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory committees appointed or formed in

the Chapter 11 Cases or any other party acting or seeking to act on behalf of AmeriFirst's estate, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, whether arising under the Bankruptcy Code or otherwise, against any of Prepetition Lenders shall be deemed forever waived, released and barred.  If any Challenge is filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Final Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealed order of a court of competent jurisdiction.  Nothing in this Final Order will vest or confers on any person or entity (each as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in the Chapter 11 Case, standing or authority to pursue any claim or cause of action belonging to AmeriFirst or its estate, including, without limitation, any Challenges with respect to the Prepetition Loan Documents, Prepetition Loans or Prepetition Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay confirmation of any plan of reorganization in the Chapter 11 Cases.  Notwithstanding anything in the DIP Term Sheet, up to $100,000 in the aggregate of the proceeds of any DIP Loan or cash collateral may be used solely by any statutory committee appointed in the Chapter 11 Cases to investigate, commence, prosecute or finance litigation with respect to the foregoing, provided, however, for the avoidance of doubt, that any fees and/or expenses in excess of $100,000 incurred by any statutory committee in the connection with the foregoing and allowed by the Court under Section 328, 330, 331 and/or 503(b) of the Bankruptcy Code shall constitute administrative expenses payable under any chapter 11 plan.

g.      [Reserved.]

h.      [Reserved.]

f.   Waiver of Challenge and Challenge Period.  AmeriFirst's stipulations, admissions, agreements and releases contained in this Final Order shall be binding upon it in all circumstances and for all purposes. AmeriFirst's stipulations, admissions, agreements and releases contained in this Final Order shall be binding upon all other parties in interest, including, without limitation, the Committee, any other statutory or non-statutory committees appointed or formed in the Chapter 11 Case, and any other person or entity acting or seeking to act on behalf of AmeriFirst's estate, including any chapter 7 or

chapter 11 trustee or examiner appointed or elected for AmeriFirst, in all circumstances and for all purposes.

g. No Control. AmeriFirst's board of directors includes an independent director who has been delegated authority over all matters in the Bankruptcy Cases, including entry into the DIP Loans, where there is an actual or potential conflict of interest with any of AmeriFirst's equity holders or other stakeholders, including the Prepetition Secured Parties and the DIP Secured Parties (and the authority to determine whether such a conflict exists). None of the Prepetition Secured Parties or the DIP Secured Parties control (or have in the past controlled) AmeriFirst or its respective properties or operations, have authority to determine the manner in which AmeriFirst's operations are conducted or are control persons or insiders of AmeriFirst by virtue of any actions taken with respect to, in connection with, related to or arising from any Prepetition Loan Documents.

h. No Claims or Causes of Action. No claims or causes of action held by AmeriFirst or its estate exist against, or with respect to, the Prepetition Secured Parties and each of their respective Representatives (as defined below), in each case, in their capacity as such, under or relating to any agreements by and among AmeriFirst and any Prepetition Secured Party that is in existence as of the Petition Date.

6.      <u>Findings Regarding the DIP Loan</u>.

a. Good Cause.        Good cause has been shown for the entry of this Final Order and authorization for AmeriFirst to incur DIP Obligations (as defined below) pursuant to the DIP Term Sheet. AmeriFirst's need for financing of the type afforded by the DIP Term Sheet is immediate and critical. AmeriFirst cannot rely on receipts from assets sales because such receipts are uncertain as to amount and timing, and are cash collateral. Entry of this Final Order will preserve the assets of AmeriFirst's estate and its value for the benefit of all stakeholders and is in the best interests of AmeriFirst, its creditors, and its estate. The terms of the proposed financing are fair and reasonable, reflect AmeriFirst's exercise of business judgment, and are supported by reasonably equivalent value and fair consideration.

a.      [Reserved.]

b.      <u>Proposed DIP Loan</u>. AmeriFirst has requested that the DIP Lenders fund the DIP Loans from time to time (collectively with all other debts, obligations, liabilities, and indemnities of

AmeriFirst under the DIP Term Sheet, the "DIP Obligations"), all in accordance with and subject to the terms of the DIP Term Sheet. The DIP Lenders are willing to advance the DIP Loans upon the terms and conditions set forth herein and in the DIP Term Sheet.

c.      No Credit Available on More Favorable Terms.      The terms of the DIP Term Sheet as modified by this Final Order are favorable and it is unlikely that better terms could otherwise be obtained. AmeriFirst contacted several possible alternative lenders and none were willing to make a proposal.  AmeriFirst is also unable to obtain unsecured credit allowable under Section 364(c)(1) of the Bankruptcy Code without granting liens and superpriority claims in favor of the DIP Lenders under the terms and conditions set forth in this Final Order and in the DIP Term Sheet.

d.      Budget/Reporting.      AmeriFirst has prepared and annexed to this Final Order as **Exhibit B** hereto a budget (as at any time amended or supplemented with the written consent of the DIP Agent, the "Budget"), which sets forth, among other things, the projected disbursements for the period covered thereby and which AmeriFirst believes in good faith to be realistic and achievable. The DIP Agent and the DIP Lenders are relying upon the Budget in entering into the DIP Term Sheet.  The Committee relies upon the Budget in conducting its investigations.  As set forth in the DIP Sheet, AmeriFirst is required to deliver certain ongoing reports to the DIP Agent and the DIP Lenders showing actual disbursements compared to the Budget, subject to certain Permitted Variance (as defined in the DIP Term Sheet).  AmeriFirst's obligation to deliver ongoing reports is hereby extended to the Committee.

e.      Certain Conditions to DIP Loan.      The DIP Lenders' willingness to make DIP Loans pursuant to the DIP Term Sheet is conditioned upon, among other things, (i) AmeriFirst obtaining Court authorization to enter into the DIP Term Sheet addressing all DIP Obligations of AmeriFirst and all rights and remedies of the DIP Agent and the DIP Lenders thereunder; and (ii) the DIP Agent and the DIP Lenders receiving, as a benefit for the prompt payment of all DIP Obligations, certain liens and superpriority claims as set forth herein.

f. Finding of Good Faith.      Based upon the record presented at the Interim Hearing and the Final Hearing, the DIP Term Sheet was negotiated in good faith and at arm's length between AmeriFirst, the DIP Agent, and the DIP Lenders.  All of the DIP Obligations including, without limitation, the DIP Loans made pursuant to the DIP Term Sheet and all other liabilities and obligations of AmeriFirst under this Final Order owing to the DIP Agent and the

~~DIP Lenders shall be deemed to have been extended by the DIP Lenders in "good faith," as such term is used in Section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by Section 364(e) of the Bankruptcy Code. The DIP Agent and the DIP Lenders shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.~~

f.      [Reserved.]

7.      Authorization of Financing; Use of Proceeds.

a.      The Court hereby authorizes AmeriFirst's execution and delivery of the DIP Term Sheet in substantially the form annexed hereto (with such changes, if any, as were made prior to or as a result of the Final Hearing or are otherwise authorized to be made as amendments to the DIP Term Sheet in accordance with this Final Order).

b.      AmeriFirst is hereby authorized to borrow money and to use Cash Collateral pursuant to the DIP Term Sheet and the Budget on the terms and subject to the conditions set forth in this Final Order, including any Challenges, up to an aggregate outstanding principal amount at any time not exceeding the sum of **$5,000,000**, plus applicable interest, expenses, fees and other charges payable in connection with such DIP Loans, and to incur any and all liabilities and obligations under the DIP Term Sheet and to pay all principal, interest, fees, expenses and other obligations provided for under the DIP Term Sheet.

c.      The DIP Agent and the DIP Lenders shall not have any obligation or responsibility to monitor AmeriFirst's use of the DIP Loans, and the DIP Agent and the DIP Lenders may rely upon AmeriFirst's representations that the amount of DIP Loans requested at any time, and the use thereof, are in accordance with the requirements of this Final Order and the DIP Term Sheet.

d.      Proceeds of any DIP Loans shall be used in accordance with the DIP Term Sheet.

8.      Execution, Delivery and Performance of DIP Term Sheet.  The DIP Term Sheet may be executed and delivered on behalf of AmeriFirst by any officer, director, or agent of such Debtor, who by signing shall be deemed to represent himself or herself to be duly authorized and

empowered to execute the DIP Term Sheet for and on behalf of such Debtor.  The DIP Agent and the DIP Lenders shall be authorized to rely upon any such person's execution and delivery of the DIP Term Sheet as having been done with all requisite power and authority to do so, and the execution and delivery of any of the DIP Term Sheet or amendments thereto by any such person on behalf of AmeriFirst shall be conclusively presumed to have been duly authorized by all necessary corporate, limited liability company, or other entity action (as applicable) of such Debtor.  Upon execution and delivery thereof, the DIP Term Sheet shall constitute a valid and binding obligation of AmeriFirst, enforceable against such Debtor in accordance with its terms for all purposes during its Chapter 11 Case, and any subsequently converted case of such Debtor under Chapter 7 of the Bankruptcy Code (each, a "Successor Case") except as otherwise provided herein.  No obligation, payment, or transfer under the DIP Term Sheet or this Final Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law (including, without limitation, under Sections 502(d), 544, 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.  AmeriFirst is authorized to do and perform all acts:  to make, execute and deliver all instruments and documents (including, without limitation, amendments, waivers, consents, and other modifications) and to pay all reasonable fees, costs and expenses in each case as may be necessary or, in the reasonable opinion of the DIP Agent and the DIP Lenders, desirable to give effect to any of the terms and conditions of the DIP Term Sheet, to validate the perfection of the DIP Liens (as defined below), or as may otherwise be required or contemplated by the DIP Term Sheet.

9.      Roll Up.   The Prepetition Loans provided to AmeriFirst by the Prepetition

Lenders (which entities are also the DIP Lenders) shall be rolled up, and converted into DIP

Obligations secured by the DIP Liens ratably with the DIP Loans in an amount equal to the sum

of (x) the aggregate amount of $676,400, representing the sum of $325,000 advanced to Phoenix

1040, LLC immediately prior to the Petition Date to fund the retention of Paladin Management

Group and Pachulski Stang Ziehl & Jones and $351,400 advanced to Phoenix 1040, LLC to pay

the premium for a director and officer liability insurance policy for the Debtors (the "Prepetition

Protective Advances"); and (y) 100% of the aggregate amount of Cash Collateral used by

AmeriFirst from and after the Petition Date and the principal amount of all DIP Loans advanced

pursuant to the Interim Order and this Final Order; provided, however, that such "roll up" shall

in all respects be subject to any and all Challenges.

10.     DIP Liens.   As security for the DIP Obligations, effective and automatically

properly perfected on the date this Final Order is entered, and without the necessity of execution,

recordation or filing of any perfection document or instrument, or the possession or control by

the DIP Agent of, or over, any collateral, without any further action by the DIP Lenders, the

following valid, binding, continuing, fully perfected, enforceable and non-avoidable security

interests and liens (the "DIP Liens") will be granted to the DIP Agent for the benefit of the DIP

Lenders (all property identified below being collectively referred to as the "DIP Collateral," and,

together with the Prepetition Collateral (as defined below), the "Collateral"), subject to and

junior in all respects to the Carve-Out:

(a)     *No Liens on Unencumbered Property*.   ~~Pursuant to section 364(c)(2) of the~~
~~Bankruptcy Code, a first priority lien on and security interest in (subject only to~~
~~the Carve-Out) all~~All tangible and intangible prepetition and postpetition property

of AmeriFirst whether existing on the Petition Date or thereafter acquired, including, without limitation, AmeriFirst's mortgage servicing rights (to the extent such rights are unencumbered property) and the proceeds, products, rents, and profits thereof, avoidance actions and commercial torts, including the proceeds thereof, that, on or as of the Petition Date, is not subject to (i) a valid, perfected and non-avoidable lien or (ii) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, other than avoidance actions and the Carve-Out, but including proceeds of avoidance actions (collectively, the "Unencumbered Property"). For the avoidance of doubt, shall not be subject to the DIP Liens shall not attach to the Debtor's leases of non-residential real property, but shall attach solely to the proceeds of such leases.

(b) *Liens Junior to Certain Other Liens on Encumbered Property*. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all tangible and intangible prepetition and postpetition property of AmeriFirst that, on or as of the Petition Date, is subject to and junior in all respects to the Prepetition Liens and the liens or security interests permitted under the Prepetition Loan Documents (as defined below) (the "Prepetition Permitted Senior Liens"), which Collateral (the "Encumbered Property") shall be subject to such Prepetition Liens and Prepetition Permitted Senior Liens. For the avoidance of doubt, the valid and enforceable interests of providers of warehouse credit facilities in mortgage loans and related documents existing as of the Petition Date (the "Prepetition Warehoused

Mortgage Loans Collateral") shall be deemed Prepetition Permitted Senior Liens and the Prepetition Warehoused Mortgage Loans Collateral shall be deemed Encumbered Property.

11.     DIP Superpriority Claims.     All DIP Obligations shall constitute joint and several allowed superpriority administrative claims (the "DIP Superpriority Claims") against AmeriFirst for all DIP Obligations under the DIP Term Sheet (without the need to file any proof of claim) pursuant to Section 364(c)(1) of the Bankruptcy Code having priority in right of payment over all other obligations, liabilities, and indebtedness of AmeriFirst, whether now in existence or hereafter incurred by such Debtor, and over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507, 546(c), 552(b) 726, 1113 or 1114 of the Bankruptcy Code.  Such DIP Superpriority Claims shall for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under Section 503(b) of the Bankruptcy Code and shall be payable from and have recourse to all prepetition and postpetition property of AmeriFirst and all proceeds thereof; *provided*, *however*, that ~~the~~no DIP Superpriority Claims shall be ~~subject to the Carve-Out (as defined below)~~paid or payable from Unencumbered Assets or the proceeds of Unencumbered Assets.

12.     Adequate Protection.   The Prepetition Loans provided to AmeriFirst by the Prepetition Lenders are entitled to adequate protection.  The Prepetition Obligations arise under the Prepetition Loan Documents.  The Prepetition Lenders assert that, as of the Petition Date, pursuant to the Prepetition Loan Documents, AmeriFirst granted for the benefit of the Prepetition Lenders, valid, binding, properly perfected, enforceable, non-avoidable first priority Prepetition

Liens on the Prepetition Collateral, subject only to any liens permitted by the Prepetition Loan Documents to be senior to the Prepetition Liens.   Pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, as adequate protection of their respective interests in the Prepetition Collateral (including Cash Collateral) for the aggregate diminution in value of such interests (including from the amount of any Cash Collateral used by AmeriFirst) (the "Diminution in Value") (if any) and as an inducement to the Prepetition Lenders to consent to the use of their Cash Collateral, the Prepetition Lenders are granted the following Adequate Protection (collectively, the "Adequate Protection Obligations"), subject to and junior in all respects to the DIP Obligations and the Carve-Out and in no case attach to the Unencumbered Assets:

(a)     The Prepetition Lenders, effective and perfected upon the date of this Final Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition Lenders' Diminution in Value (if any) upon all of the DIP Collateral, subject to and junior in all respects to the DIP Liens and the Carve-Out; and

(b)     The Prepetition Lenders shall be granted allowed superpriority administrative expense claims against AmeriFirst (without the need to file any proof of claim) on account of the Prepetition Lenders' Diminution in Value (if any) under section 507(b) of the Bankruptcy Code (the "Prepetition Lender 507(b) Claims"), which Prepetition Lender 507(b) Claims shall be payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding avoidance actions, but including, without limitation, the Unencumbered Assets or the proceeds of

~~avoidance actions~~Unencumbered Assets). Except as otherwise provided in this Final Order and subject to and junior in all respects to the DIP Superpriority Claims (as defined below) and the Carve-Out, the Prepetition Lender 507(b) Claims shall have priority over any and all administrative expenses and all other claims against AmeriFirst now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.

13.     <u>Repayment</u>.  The DIP Obligations shall be due and payable, and shall be paid, as and when provided in the DIP Term Sheet and as provided herein, without offset or counterclaim.  Without limiting the generality of the foregoing, in no event shall AmeriFirst be authorized to offset or recoup any amounts owed, or allegedly owed, by the DIP Agent or the DIP Lenders to AmeriFirst against any of the DIP Obligations without the prior written consent of the DIP Agent or the DIP Lenders that would be affected by any such offset or recoupment, and no such consent shall be implied from any action, inaction or acquiescence by the DIP Agent or the DIP Lenders.

14.     <u>Payments Free and Clear</u>.  Any and all payments or proceeds remitted to the DIP Agent or the DIP Lenders shall be ~~received free and clear of any claim, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) or the "equities of the case" exception of section 552(b) of the Bankruptcy Code.~~subject in all respects to any Challenges.

15.    <u>Fees and Expenses of Estate Professionals; Professional Fee Reserve</u>.  Subject to the terms of the DIP Term Sheet and the Budget, for so long as no Event of Default has occurred, AmeriFirst is authorized to use the DIP Loans or Cash Collateral to fund, on a weekly basis as set forth in the Budget, the trust account of the Debtors' general bankruptcy counsel (the "<u>Professional Fee Reserve</u>") for the purpose of reserving sufficient funds to pay the compensation and expense reimbursement (collectively, "<u>Professional Fees</u>") of estate professional persons (including attorneys, financial advisors, accountants, investment bankers, claims and/or noticing agents, appraisers, and consultants) retained by any Debtor with Court approval or as an ordinary course professional (the "<u>Debtors Professionals</u>") or the Committee with Court approval (the "<u>Committee Professionals</u>," collectively with the Debtors Professionals, the "<u>Professionals</u>"), up to the amounts set forth for each Professional in the Budget; *provided*, *however*, that, notwithstanding anything herein or in any other order of this Court to the contrary, no proceeds of the DIP Loans or Cash Collateral shall be used to pay Professional Fees incurred for any Prohibited Purpose (as defined below).  The funds in the Professional Fee Reserve shall remain subject to the liens and claims of the DIP Agent and the DIP Lenders.  Any excess funds in the Professional Fee Reserve after payment of Professional Fees shall be returned to AmeriFirst, subject to the liens and claims of the DIP Agent and the DIP Lenders.

16.    <u>Section 506(c) Claims</u>.  No costs or expenses of administration shall be imposed upon the DIP Agent or the DIP Lenders pursuant to Section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of the DIP Agent or the DIP Lenders from the payments or proceeds remitted to the DIP Agent or the DIP Lenders, and no such consent shall be implied from any action, inaction or acquiescence by the DIP Agent or the DIP Lenders, provided that the Carve-Out is fully funded by AmeriFirst~~.~~*; provided, however, that in the event*

of a successful Challenge, costs or expenses of administration may be imposed upon the DIP Agent or the DIP Lenders pursuant to Section 506(c) of the Bankruptcy Code or otherwise by subsequent order of this Court.

17.    Carve-Out.  Notwithstanding anything in this Final Order, the DIP Term Sheet, or any other order of this Court to the contrary, the DIP Obligations and the DIP Superpriority Claims in favor of the DIP Agent and the DIP Lenders and the Prepetition Liens and Adequate Protection Obligations in favor of the Prepetition Lenders shall be subject and subordinate in all respects to the payment of the following Carve-Out.  As used in this Final Order, the "Carve-Out" means, collectively, the aggregate amount needed to satisfy (i) accrued but unpaid fees, costs, and expenses of the professionals of the Debtors and the Committee incurred at any time prior to the DIP Agent's or DIP Lenders' delivery of a Carve-Out Trigger Notice (as defined below), up to the aggregate amounts set forth for each Professional in the Budget for such time period and only to the extent allowed by the Bankruptcy Court, (ii) professional fees, costs and expenses of the Debtors and the Committee incurred after delivery of a Carve-Out Trigger Notice not to exceed $250,000 with respect to the Professionals, to the extent allowed by the Bankruptcy Court, (iii) the fees and expenses payable pursuant to 28 U.S.C. § 1930, (iv) any fees, costs, and expenses of a Chapter 7 trustee or their professionals up to $50,000 in the aggregate if either of the Chapter 11 Cases is converted to Chapter 7, and (iv) accrued but unpaid obligations to AmeriFirst's employees, including payroll, commissions, and benefits, due and owing under the Budget through the date of the Carve-Out Trigger Notice; *provided*, that nothing in this Final Order shall be construed to impair the ability of any party to object to the fees, expenses, reimbursements or compensation of any Professional, whether or not in excess of the coverage provided by the Carve-Out.  The Carve-Out shall not act as a cap on the Professional

Fees that may be incurred by Professionals in the Chapter 11 Cases. In no event shall the Carve-Out, or the funding of the DIP Loans or the use of Cash Collateral to satisfy the Carve-Out, result in any reduction in the amount of the DIP Obligations. "<u>Carve-Out Trigger Notice</u>" means written notice by the DIP Agent or the DIP Lenders to the Debtors, the Committee, and the Office of the U.S. Trustee invoking the Carve-Out, which notice may be delivered at any time after the occurrence, and during the continuation, of an Event of Default.

18.    <u>Excluded Professional Fees</u>. Notwithstanding anything to the contrary in this Final Order, neither the Carve-Out, nor the proceeds of the DIP Loans or the Cash Collateral in any respect, shall be used to pay any Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following (each a "<u>Prohibited Purpose</u>"): (a) objecting to or contesting the validity or enforceability of this Final Order or any DIP Loan; (b) asserting or prosecuting any claim or cause of action against the DIP Agent or the DIP Lenders, other than to enforce the terms of the DIP Term Sheet or this Final Order; (c) seeking to modify any of the rights granted under this Final Order to the DIP Agent or the DIP Lenders; or (d) objecting to, contesting, delaying, preventing or interfering in any way with the exercise of rights and remedies by the DIP Agent or the DIP Lenders after the occurrence and during the continuance of an Event of Default, *provided*, that the DIP Agent and the DIP Lenders may not seek to exercise remedies, and the Debtors may seek appropriate relief from this Court, during the period of five (5) business days following the delivery of a Carve-Out Trigger Notice.

19.    <u>Preservation of Rights Granted Under This Final Order</u>.

    a.    <u>Protection from Subsequent Financing Order</u>. ~~There~~<u>Subject in all respects to any Challenges, there</u> shall not be entered in any of the Chapter 11 Cases or in any Successor Case any order that authorizes the obtaining of credit or the incurrence of indebtedness by any Debtor (or any trustee or examiner) that is entitled to a security interest in any of the Debtors' assets or priority

administrative status that is equal or senior to the DIP Liens and DIP Superpriority Claims granted to the DIP Agent and the DIP Lenders herein; *provided*, *however*, that nothing herein shall prevent the entry of an order that specifically provides for the full payment of all of the DIP Obligations, in the manner required by the DIP Term Sheet, from the proceeds of such credit or indebtedness, and the termination of any funding commitments under the DIP Term Sheet.

b.    Rights Upon Dismissal, Conversion or Consolidation. ~~If~~Subject in all respects to any Challenges, if any of the Chapter 11 Cases are dismissed, converted or substantively consolidated with another case, then neither the entry of this Final Order nor the dismissal, conversion or substantive consolidation of any of the Chapter 11 Cases shall affect the rights or remedies of the DIP Agent or the DIP Lenders under the DIP Term Sheet or the rights or remedies of the DIP Agent or the DIP Lenders under this Final Order, and all of the respective rights and remedies hereunder and thereunder of the DIP Agent and the DIP Lenders shall remain in full force and effect as if such Chapter 11 Case had not been dismissed, converted, or substantively consolidated. Unless and until full payment of all DIP Obligations has occurred, it shall constitute an Event of Default if any Debtor seeks, or if there is entered, any order dismissing any of the Chapter 11 Cases. If an order dismissing any of the Chapter 11 Cases is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Liens and DIP Superpriority Claims shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until full payment of all DIP Obligations, (ii) such DIP Liens and DIP Superpriority Claims shall, notwithstanding such dismissal, remain binding on all parties in interest, and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this Paragraph and otherwise in this Final Order.

c.    Survival of Final Order. The provisions of this Final Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases or any Successor Case.

d.    No Discharge. ~~None~~Subject in all respects to any Challenges, none of the DIP Obligations shall be discharged by the entry of any order confirming a plan of reorganization or liquidation in any of

the Chapter 11 Cases and, pursuant to Section 1141(d)(4) of the Bankruptcy Code, AmeriFirst has waived such discharge.

e.    <u>No Requirement to File Claim for DIP Obligations</u>. Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any bar date order establishing a deadline for the filing of proofs of claim entitled to administrative expense treatment under Section 503(b) of the Bankruptcy Code, the DIP Agent and the DIP Lenders shall not be required to file any proof of claim with respect to any of the DIP Obligations, all of which shall be due and payable in accordance with the DIP Term Sheet without the necessity of filing any such proof of claim; and the failure to file any such proof of claim shall not affect the validity or enforceability of any of the DIP Term Sheet or prejudice or otherwise adversely affect any rights, remedies, powers or privileges of the DIP Agent and the DIP Lenders under any of the DIP Term Sheet or under this Final Order.

20.    <u>Amendments to DIP Term Sheet</u>.  The amendments to the original DIP Term Sheet are hereby approved as necessary and in the interests of the Debtors' estates.  AmeriFirst, the DIP Agent, and the DIP Lenders are hereby authorized to implement, in accordance with the terms of the DIP Term Sheet and without further order of the Court, any amendments to and modifications of any of such DIP Term Sheet on the following conditions: (a) the amendment or modification must not constitute a Material Change (as defined below) to the terms of such DIP Term Sheet and (b) copies of the amendment or modification must be served upon counsel for the Committee, the U.S. Trustee, and other interested parties specifically requesting such notice. Any amendment or modification that constitutes a material change, to be effective, must be approved by the Court.  For purposes hereof, a "<u>Material Change</u>" shall mean a change that operates to reduce the DIP Loans or the maturity of the DIP Obligations, to increase the aggregate amount of the commitments of the DIP Lenders under the DIP Term Sheet, to increase the rate of interest other than as currently provided in or contemplated by the DIP Term Sheet, to add specific Events of Default, or to enlarge the nature and extent of remedies available to the

DIP Agent or the DIP Lenders following the occurrence of an Event of Default.  Without limiting the generality of the foregoing, any amendment of the DIP Term Sheet to postpone or extend any date or deadline therein (including, without limitation, the expiration of the term of the DIP Loans) shall not constitute a Material Change and may be effectuated by AmeriFirst and the DIP Agent or the DIP Lenders without the need for further approval of the Court.  Upon the receiving of a notice of amendment or modification in subsection (b) above, the Committee has the right to challenge whether such amendment constitutes a Material Change and have such dispute heard by the Court.

21.    <u>Maturity and Repayment</u>.  The DIP Loans shall mature and be repaid as set forth in the DIP Term Sheet.

22.    <u>Events of Default; Remedies</u>.

a.    <u>Events of Default</u>.    The occurrence of any "Event of Default" under (and as defined in) the DIP Term Sheet shall constitute an Event of Default under this Final Order.  The term "Change of Control" as used in the DIP Term Sheet shall mean that Phoenix 1040 LLC ceases to be sole owner of the equity interests in AmeriFirst Financial, Inc.; *provided, however*, that the following events do not constitute an Event of Default under this Order, the Term Sheet, or any other DIP Loan documents: "Any Change in Control" under page 8, subsection (f) of the Term Sheet; the dismissal of debtor Phoenix' chapter 11 case or the conversion of its case to chapter 7 under page 8, subsection (h) of the Term Sheet; an order from the Bankruptcy Court transferring venue of these chapter 11 cases to any other court under page 9, subsection (s) of the Term Sheet; and the appointment of a trustee under either chapter 7 or chapter 11 in either of the Debtors' cases under page 9, subsection (n) of the Term Sheet.

b.    <u>Default Remedies</u>.    Upon the occurrence and during the continuance of any Event of Default, the DIP Agent and the DIP Lenders may (notwithstanding the provisions of Section 362 of the Bankruptcy Code and without application or motion to, or order from, the Bankruptcy Court) by written notice to the Debtors, Committee, and the Office of the U.S. Trustee (a) send the Carve-Out Trigger Notice and (b) declare (i) the unpaid principal amount of and accrued interest on the DIP Loans and (ii) all other

DIP Obligations, immediately due and payable, without presentment, demand, protest or other requirements of any kind, all of which are hereby expressly waived by AmeriFirst, and the same shall forthwith become immediately due and payable, and the obligation of the DIP Lenders to make any DIP Loans shall thereupon terminate. Upon the occurrence and during the continuance of any Event of Default and following the delivery of a Carve-Out Trigger Notice, the DIP Agent and the DIP Lenders shall be required to obtain the authority of this Court to exercise any rights and remedies of the DIP Agent and the DIP Lenders set forth in the DIP Term Sheet or in this Final Order. The Committee, the Debtors, or any party in interest shall have a five-day notice period to challenge the calling of an Event of Default by RCP.

c.   <u>Rights Cumulative</u>.   The rights, remedies, powers, and privileges conferred upon the DIP Agent and the DIP Lenders pursuant to this Final Order shall be in addition to and cumulative with those contained in the DIP Term Sheet.

23.   <u>Effect of Stipulations on Third Parties</u>.   Subject in all respects to any Challenges, AmeriFirst's admissions, stipulations, agreements, and releases contained in this Final Order shall be binding upon such Debtor, its estate, and any successor thereto (including, without limitation any Chapter 7 trustee or Chapter 11 trustee or examiner appointed or elected for such Debtor) under all circumstances and for all purposes.

24.   <u>Service of Final Order</u>.   Promptly after the entry of this Final Order, the Debtors shall mail, by first class mail, a copy of this Final Order to (without duplication) counsel for the DIP Agent and the DIP Lenders, the U.S. Trustee, the Debtors' consolidated thirty largest unsecured creditors, the Internal Revenue Service, all parties who have filed requests for notices under Rule 2002 of the Bankruptcy Rules prior to the time of such service, and all parties known by a Debtor to hold or assert a lien on any assets of a Debtor, and shall file a certificate of service regarding same with the Clerk of the Court.  Such service shall constitute good and sufficient notice of this Final Order.

25.    No Deemed Control.  ~~In~~Subject in all respects to any Challenges, in determining to make the DIP Loans, or in exercising any rights or remedies as and when permitted pursuant to the Interim Order, this Final Order, or the DIP Term Sheet, the DIP Agent and the DIP Lenders shall not be deemed to be in control of any Debtor or its operations.

26.    Exculpation.  Nothing in this Final Order, or the DIP Term Sheet~~, or any other document related to the DIP Loans~~ shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent or the DIP Lenders any liability for any claims arising from the prepetition or postpetition activities of any Debtor in the operation of its business or in connection with its restructuring efforts~~.~~, and nothing in this Final Order or the DIP Term Sheet shall be in any way be construed or interpreted to exculpate any prepetition parties from any liability for any claims arising from the prepetition or postpetition activities of the DIP Agent or the DIP Lenders.

27.    Binding Effect; Successors and Assigns.  ~~The~~Subject in all respects to any Challenges, the provisions of the DIP Term Sheet and this Final Order, including all findings, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Debtors, the Committee, and their respective successors and assigns (including any Chapter 11 trustee hereafter appointed for the estate of any Debtor, any Chapter 7 trustee appointed or elected in a Successor Case, any examiner appointed pursuant to Section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any Debtor or with respect to the property of the estate of any Debtor), and shall inure to the benefit of DIP Agent and the DIP Lenders and their respective successors and assigns.

28.    <u>Government Sponsored Enterprises and Governmental Units</u>.

(a)    <u>Fannie Mae Rights</u>.

(i)    Notwithstanding anything to the contrary contained in the DIP Term Sheet or this Final Order, (a) no lien or security interest granted pursuant to the DIP Term Sheet or this Final Order (including, without limitation, the DIP Liens, the Adequate Protection Obligations, or any other lien that may be approved pursuant to the terms of this Final Order) shall attach to, modify, include, encumber, impair or otherwise affect, and (b) no administrative expense claim (of a superpriority nature or otherwise) shall prime, encumber, impair or limit, in any way: (1) any mortgage loans presently owned by, subsequently transferred to, or otherwise acquired by, the Federal National Mortgage Association (together with any successor thereto, "<u>Fannie Mae</u>"; and such mortgage loans, the "<u>Fannie Mae Loans</u>"), (2) the Fannie Mae Lender Contract (as defined below) or any of Fannie Mae's rights with respect to the sale and delivery of mortgage loans to, or any servicing rights with respect to the Fannie Mae Loans (the "<u>Fannie Mae Servicing Rights</u>"), or any obligations of AmeriFirst, or obligations of Fannie Mae, under the Fannie Mae Lender Contract, or (3) any cash, accounts, or other collateral (or any proceeds of the foregoing) that have been pledged to Fannie Mae pursuant to any collateral pledge agreement or other security agreement between AmeriFirst and Fannie Mae.  Nothing in the DIP Term Sheet or this Final Order shall discharge, release or otherwise preclude any valid right of setoff or recoupment of Fannie Mae.

(ii)    Furthermore, and without limiting the foregoing, none of the principal, interest, and funds for the payment of property taxes and insurance premiums, mortgage premiums, condominium fees, or any other amounts collected by AmeriFirst or any subservicer in connection with its performance of its servicing obligations under the Fannie Mae Lender Contract are property of AmeriFirst's estate under section 541 of the Bankruptcy Code.  Fannie Mae reserves all rights in and under the Fannie Mae Lender Contract.  None of the DIP Lenders, Prepetition Lenders, or any other lender subject to this Final Order has a claim against Fannie Mae arising by virtue of this Final Order.  No secured claim or administrative expense granted pursuant to, or lien approved by, this Final Order, trumps, or negatively impacts, in any way, Fannie Mae's rights and AmeriFirst's obligations under the Fannie Mae Lender Contract (including, without limitation, with respect to the Fannie Mae Loans and the Fannie Mae Servicing Rights).

(iii)    If, notwithstanding the foregoing, any lender or other party hereafter asserts that the DIP Liens or any Adequate Protection Obligations and related adequate protection collateral, or any other lien in any other collateral that may be approved or granted pursuant to the terms of this Final Order, include: (a) any Fannie Mae Servicing Rights, (b) the Fannie Mae Lender Contract and/or (c) any other rights of AmeriFirst, or obligations of Fannie Mae under the Fannie Mae Lender Contract, any and all security interests therein shall be subject and subordinate to all rights of Fannie Mae under the Mortgage Selling and Servicing Contract, the Fannie Mae Selling Guide, the Fannie Mae Servicing Guide and all supplemental servicing instructions or directives provided by Fannie Mae, all applicable master agreements, recourse agreements, repurchase agreements, indemnification agreements, loss-sharing agreements, and any other agreements between Fannie Mae and AmeriFirst, and all as amended, restated or supplemented from time to time (collectively, the "Fannie Mae Lender Contract"), which rights include, among other rights, the right of Fannie Mae to: (1) terminate, at any time, all or any portion of  servicing or the Fannie Mae Lender Contract with or without cause and (2) sell, or have transferred, the Fannie Mae Servicing Rights, with any such sale or transfer being subject to Fannie Mae's consent.

(iv)    Fannie Mae reserves all of its rights under the Fannie Mae Lender Contract, including all of its rights under the Fannie Mae Servicing Guide.  If there is any conflict between the terms of the Fannie Mae Lender Contract and those of the DIP Term Sheet, the terms of the Fannie Mae Lender Contract will control.

(b)    Freddie Mac Rights.

(i)        Notwithstanding anything to the contrary in the DIP Term Sheet or this
Final Order -- (a) no lien or security interest granted pursuant to the DIP Term Sheet or this Final
Order (including, without limitation, the DIP Liens, the Adequate Protection Obligations, or any
other lien that were approved pursuant to the terms of the Interim Order) shall attach to, modify,
include, encumber, impair or otherwise affect and (b) no administrative expense claim (of a
superpriority nature or otherwise) shall prime, encumber, impair or limit, in any way: (1) any
mortgage loans presently owned by, subsequently transferred to, or otherwise acquired by, the
Federal Home Loan Mortgage Corporation ("Freddie Mac"; and all such mortgage loans shall be
referred to as the "Freddie Mac Loans"); (2) the Freddie Mac Agreements (defined below) or any
of Freddie Mac's rights with respect to the sale and delivery of mortgage loans to, or any
servicing of Freddie Mac Loans for Freddie Mac under the Freddie Mac Single-Family
Seller/Servicer Guide ("Freddie Mac Guide"), the Freddie Mac Single-Family Seller/Servicer
Guide Plus Additional Provisions, certain applicable Master Agreements (as defined in the
Freddie Mac Guide), Purchase Contracts (as defined in the Freddie Mac Guide), Pricing
Identifier Terms (as defined in the Freddie Mac Guide) supplements, addendums, Bulletins (as
defined in the Freddie Mac Guide), terms of business and any other agreements between
AmeriFirst and Freddie Mac, as amended, restated or supplemented from time to time
(collectively, the "Freddie Mac Agreements"), or AmeriFirst's obligations with respect thereto;
and/or (3) any cash, accounts, or other collateral (or any proceeds of the foregoing) that have
been pledged to Freddie Mac pursuant to any collateral pledge agreement or other security
agreement between AmeriFirst and Freddie Mac. Nothing in the DIP Term Sheet or this Final
Order shall discharge, release or otherwise preclude any valid right of setoff or recoupment of
Freddie Mac.

(ii)     Furthermore, and without limiting the foregoing, none of the principal, interest, and funds for the payment of property taxes and insurance premiums, mortgage premiums, condominium fees, or any other amounts collected by AmeriFirst or any subservicer in connection with its performance of its servicing obligations under the Freddie Mac Agreements are property of AmeriFirst's estate under section 541 of the Bankruptcy Code. Freddie Mac reserve all rights in, and under, the Freddie Mac Agreements. None of the DIP Lenders, Prepetition Lenders, or any other lender subject to this Final Order has a claim against Freddie Mac arising by virtue of this Final Order. No secured claim or administrative expense granted pursuant to, or lien approved by, this Final Order, trumps, or negatively impacts, in any way, Freddie Mac's rights and AmeriFirst's obligations under the Freddie Mac Agreements (including, without limitation, with respect to the Freddie Mac Loans and the Freddie Mac Servicing Contract Rights (as defined in the Freddie Mac Agreements)).

(iii)    If, notwithstanding the foregoing, any lender or other party hereafter asserts that the DIP Liens or any Adequate Protection Obligations and related adequate protection collateral, or any other lien in any other collateral that may be approved or granted pursuant to the terms of this Final Order, include: (i) any Servicing Contract Rights (as defined in the Freddie Mac Agreements) relating to Freddie Mac Loans; (ii) any Freddie Mac Agreement; and/or (iii) any other rights of Freddie Mac, or the obligations of AmeriFirst, under any Freddie Mac Agreement, any and all security interests therein shall be subject and subordinate to all rights of Freddie Mac under the Freddie Mac Agreements, which rights include, among other rights, the right to, among other things: (i) terminate, at any time, all, or any portion of, Servicing (as defined by the Freddie Mac Agreements) by AmeriFirst, and/or to suspend or disqualify AmeriFirst as Seller or Servicer (as defined in the Freddie Mac Agreements), with or without cause, and (ii) sell, or have transferred, the Freddie Mac Servicing Contract Rights (as defined in the Freddie Mac Agreements) associated with Freddie Mac Loans, with any such sale or transfer being subject to Freddie Mac's consent.

(iv)    Freddie Mac reserves all of its rights under all Freddie Mac Agreements. If there is any conflict between the terms of any Freddie Mac Agreements and those of the DIP Term Sheet or in this Final Order, the Freddie Mac Agreements shall control.

(c)     <u>GNMA Rights</u>.

(i)     The Government National Mortgage Association ("<u>GNMA</u>") is a wholly-owned Government Corporation within the U.S. Department of Housing and Urban Development ("<u>HUD</u>").   Pursuant to 12 U.S.C. § 1716, *et seq.* and 24 C.F.R. Part 300 (collectively, the "<u>National Housing Act</u>"), GNMA is a federal agency that guarantees investors the timely payment of principal and interest on mortgage-backed securities ("<u>MBS</u>") backed by federally insured or guaranteed mortgage loans (e.g., mortgage loans insured by the Federal Housing Administration ("<u>FHA</u>"), guaranteed by the U.S. Department of Veterans Administration ("<u>VA</u>"), or guaranteed by the U.S. Department of Agriculture's Rural Housing Service ("<u>RHS</u>" ). Notwithstanding anything to the contrary contained in the DIP Term Sheet or this Final Order, (A) no lien or security interest granted pursuant to the DIP Term Sheet or this Final Order (including, without limitation, the DIP Liens, the Adequate Protection Obligations, or any other lien that may be approved pursuant to the terms of this Final Order) shall attach to, modify, include, encumber, impair or otherwise affect, and (B) no administrative expense claim (of a superpriority nature or otherwise) shall prime, encumber, impair or limit, in any way: (1) any mortgage loans that presently, subsequently, or are otherwise acquired by, AmeriFirst and serve as collateral for the GNMA MBS (and such mortgage loans, the "<u>GNMA Loans</u>"), (2) the GNMA Agreements (as defined below) or any of GNMA's rights with respect to the assignment or transfer any servicing rights with respect to the GNMA Loans (the "<u>GNMA Servicing Rights</u>"), or any obligations of AmeriFirst under the GNMA Agreements, or (3) any cash, accounts, or other collateral (or any proceeds of the foregoing) that have been pledged to GNMA pursuant to any collateral pledge agreement or other security agreement between AmeriFirst and GNMA.

(ii)     Without limiting the foregoing, none of the principal, interest, and funds for the payment of property taxes and insurance premiums, mortgage premiums, condominium fees, or any other amounts collected by AmeriFirst or any subservicer in connection with its performance of its servicing obligations under the GNMA Agreements are property of AmeriFirst's estate under section 541 of the Bankruptcy Code.  Further, nothing in this Final Order or the DIP Term Sheet shall (a) preclude or limit GNMA' rights pursuant to the National Housing Act or the GNMA Agreements; (b) be construed to limit the right of the United States to take any action not subject to the automatic stay; or (c) releases or waives AmeriFirst's obligations and liabilities pursuant to any and all statutes, regulations, rules, policies and procedures of GNMA, FHA, RHS, and VA, including, without limitation, (1) the National Housing Act and GNMA Agreements; (2) 42 U.S.C. §§ 1471 et seq. and 7 C.F.R. part 3555; and (3) 38 U.S.C. §§ 3701 et seq., 38 C.F.R. part 36, and all administrative materials issued under such statutes or regulations thereunder, nor shall anything discharge, release or otherwise preclude any valid right of setoff or recoupment of the United States.  None of the DIP Lenders, Prepetition Lenders, or any other lender subject to this Final Order has a claim against GNMA arising by virtue of this Final Order.  No secured claim or administrative expense granted pursuant to, or lien approved by, this Final Order, trumps, or negatively impacts, in any way, GNMA's rights and AmeriFirst's obligations under the GNMA Agreements (including, without limitation, with respect to the GNMA Loans and the GNMA Servicing Rights).

(iii)    If, notwithstanding the foregoing, any lender or other party hereafter asserts that the DIP Liens or any Adequate Protection Obligations and related adequate protection collateral, or any other lien in any other collateral that may be approved or granted pursuant to the terms of this Final Order, include: (a) any GNMA Servicing Rights, (b) the GNMA Agreements and/or (c) any other rights of GNMA or obligations of AmeriFirst under the GNMA Agreements, any and all security interests therein shall be subject and subordinate to all rights of GNMA under the National Housing Act, the GNMA Guide, all guaranty agreements, MBS prospectus documents, escrow agreements, unilateral notification, notices of violation, supplements, addendums, amendments, and related agreements (collectively, the "GNMA Agreements"), which rights include, among other rights, the right of GNMA to: (1) extinguish, at any time, all or any rights and interests of AmeriFirst under the GNMA Agreements with or without cause, or (2) review and consent to any proposed assignment or transfer the GNMA Servicing Rights.

(iv)    GNMA reserves all of its rights under the GNMA Agreements, including all of its rights under the National Housing Act and GNMA Guide.  If there is any conflict between the terms of the GNMA Agreements and those of the DIP Term Sheet or this Final Order, the terms of the GNMA Agreements will control.

(v)     Nothing in this Final Order (a) modifies, impairs or affects any contract, contract of insurance, agreement, approval, authorization or writing of or with the U.S. Department of Housing and Urban Development's Federal Housing Administration ("FHA"); (b) releases or waives any of AmeriFirst's or any non-debtor's obligations and liabilities pursuant to any and all statutes, regulations, rules, policies and procedures of FHA including, without limitation, (i) Title II of the National Housing Act, 12 USC §1707 *et seq.*, (ii) 24 C.F.R. Parts 201 – 203 and 206, and (iii) the FHA Handbooks and Mortgagee Letters; or (c) authorize or grant any lien or security interest in any escrow or custodial account, and all funds therein, held by AmeriFirst for the benefit of borrowers with FHA-insured mortgages.

(vi)    Nothing in this Final Order or the DIP Term Sheet shall (a) modify, impair or affect any contract, contract of guaranty, agreement, approval, authorization or writing of or with the VA (collectively, "VA Documents"); (b) release or waive any Debtor's or non-debtor's obligations and liabilities pursuant to any and all statutes, regulations, rules, policies and procedures of VA and/or relating to the origination or servicing of VA-guaranteed mortgages, including, without limitation, (i) 38 USC § 3701 et seq., (ii) 38 C.F.R. Part 36, and (iii) VA-guaranteed mortgage administrative materials, manuals, policies and procedures (collectively, "VA Requirements"); or (c) authorize or grant any lien or security interest in any escrow or custodial account, and all funds therein, held by the Debtors for the benefit of borrowers with VA-guaranteed mortgages.

(vii)    Nothing in this Final Order or the DIP Term Sheet shall (a) modify, impair, or affect any contract, contract of insurance, agreement, loan guarantee, approval, authorization or writing of or with the RHS (collectively "RHS Documents"); (b) release or waive any Debtor's or non-debtor's obligations and liabilities pursuant to any and all statutes, regulations, rules, policies and procedures of RHS including, without limitation, (i) Title V of the Housing Act of 1949 (42 U.S.C. 1471 et seq.), (ii) 7 C.F.R. Part 3555, and (iii) RHS Handbooks, Guaranteed Underwriting System User Agreement, and Lender User Agreement (collectively, the "RHS Requirements"); or (c) authorize or grant any lien or security interest in any escrow or custodial account, and all funds therein, held by AmeriFirst or any servicer or sub-servicer for the benefit of borrowers with RHS-guaranteed mortgages. RHS reserves all rights and remedies under the RHS Documents and the RHS Requirements, none of which are waived under this Final Order.

29.    Effectiveness; Enforceability.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  This Final Order shall be valid, take full effect, and be enforceable immediately upon entry hereof; there shall be no stay of execution or effectiveness of this Final Order; and any stay of the effectiveness of this Final Order that might otherwise apply is hereby waived for cause shown.

30.    Retention of Jurisdiction.  This Court shall retain jurisdiction to enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any Chapter 11 plan for AmeriFirst notwithstanding the terms or provisions of any such Chapter 11 plan or any order confirming any such Chapter 11 plan.

31.    <u>Inconsistencies</u>.  To the extent of any inconsistencies or conflicts between this Final Order and the DIP Term Sheet, this Final Order shall govern.

Dated:  _____, 2023
        Wilmington, Delaware

        _____
        UNITED   STATES   BANKRUPTCY   JUDGE

**<u>EXHIBIT A</u>**

**Amended DIP Term Sheet**

11888-00001/14381314.2

**EXHIBIT B**

**DIP Budget**