IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERIFIRST FINANCIAL, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11240 (TMH)<br><br>(Jointly Administered)<br>**Ref. Docket No. 590** |

Hearing Date: January 30, 2024 at 11:00 a.m. (ET)

**DEBTORS' OBJECTION TO ARIZONA INSTANT FUNDING LLC'S
MOTION FOR STAY RELIEF & TURNOVER**

AmeriFirst Financial, Inc. ("AmeriFirst") and Phoenix 1040, LLC, as debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases, hereby object (the "Objection") to *Arizona Instant Funding LLC's Motion for Stay Relief & Turnover* [Docket No. 590] (the "Motion").[2] In support of this Objection, the Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. Arizona Instant Funding, LLC ("AIF") is not entitled to relief from the automatic stay under section 362(d) of title 11 of the United States Code (the "Bankruptcy Code") or any turnover relief because there is no "cause" to lift the stay and no basis to turnover any assets of the AmeriFirst estate.[3]

2. AIF seeks entry of an order granting stay relief and compelling the Debtors to turn over "Purchased Repo Assets, Mortgage Loan Documents, Repurchase Facility

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Phoenix 1040 LLC (2550); and AmeriFirst Financial, Inc. (4557). The location of Debtor AmeriFirst Financial, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 1550 McKelleps Road, Suite 117, Mesa, Arizona 85203.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[3] AIF failed to file a declaration in support of its Motion in violation of Local Rule 4001-1(c)(i).

DE:4874-4176-3486.2 70786.001

Documents, and any other documents required by the Agreement" (the "Repurchase Documents") with respect to certain loans funded by AIF (the "Loans"). *See* Motion ¶ 30. Alternatively, AIF seeks an order directing the Debtors to turn over the proceeds of any sales of the Loans. *See* Motion ¶ 34.

3. AIF's request for stay relief should be denied, first and foremost, because the Debtors dispute AIF's asserted liens and claims, as reflected in the objection to AIF's proof of claim filed by the Debtors concurrently herewith.

4. Stay relief also should be denied because AIF seeks relief in the form of Loans and loan documents that the Debtors neither have nor beneficially own. The Debtors do not have the documents or files relating to the Loans that are being sought by AIF, given that AmeriFirst no longer services such Loans. The Repurchase Documents attached to the Motion were never operative agreements (the principal agreement attached to the Motion is unsigned by AmeriFirst) and, in practice, no Loans were ever sold by AmeriFirst to AIF. Given that none of the Loans in question belong to AIF or can be repurchased by AmeriFirst, lifting the stay is not an appropriate remedy.

5. Additionally, as described more fully below, AIF advanced $1,398,529.69 on behalf of AmeriFirst that remains outstanding and was used to fund additional draws on construction Loans that were owned by a third party. AmeriFirst never owned such Loans and is no longer the servicer for these Loans. AIF failed to take the necessary steps to protect itself with respect to those advances, either by ensuring that it purchased the Loans at issue or by perfecting a security interest in such Loans.

6. AIF refers to a ShareFile link (*see* Motion ¶ 22) to support its claim to ownership of the Loans. Such link was merely a Google spreadsheet that consisted of a listing of

the Loans and could be accessed by AIF. The ShareFile link and the spreadsheet did not contain Loan files, and AIF's access to the ShareFile link did not constitute "possession" or "control" of any Loans (which, in any event, were not AmeriFirst's Loans in the first place).

7. Finally, AIF's alternative request for relief seeking turnover of sale proceeds from any Loans should be denied. There is no basis for AIF to assert a claim to proceeds of any Loans for which AmeriFirst received reimbursement. AIF: (a) is not secured by the Loans or the proceeds thereof; (b) does not have and never had control of the Loans; (c) failed to file a UCC financing statement with respect to any assets of AmeriFirst; and (d) does not have any other claim to any funds of AmeriFirst. AIF is, at best, an unsecured creditor for the funds advanced.

8. For these reasons, the Motion should be denied.

## JURISDICTION AND VENUE

9. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with the Motion and this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

10. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

DE:4874-4176-3486.2 70786.001

**BACKGROUND**

11. On August 24, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are managing and operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

12. On September 15, 2023, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors.

13. Additional factual background regarding the events leading to the filing of these chapter 11 cases is set forth in the *Declaration of T. Scott Avila in Support of First Day Motions* [Docket No. 20] (the "First Day Declaration"), which is incorporated herein by reference.

14. AIF alleges that, prior to the Petition Date, AIF and AmeriFirst entered into the Repurchase Documents. However, the principal agreement attached to the Motion is unsigned by AmeriFirst and, in practice, no Loans were ever sold by AmeriFirst to AIF under the Repurchase Documents. AIF has offered no evidence of any sale or other conveyance of any Loans by AmeriFirst to AIF. Indeed, there was no operative agreement between the parties. AIF advanced funds to borrowers of a third party on account of additional draws under existing construction loans serviced (but not owned) by AmeriFirst at the time. AIF is currently owed $1,398,529.69 on account of such advances. AIF failed to protect its own interests in making the foregoing

advances by ensuring that it purchased the Loans at issue or at least took a security interest in them. Therefore, none of the Loans were covered by the Repurchase Documents or ever sold to AIF.[4]

15.     AIF relies on a ShareFile link (*see* Motion ¶ 22) to suggest that there was some form of electronic transfer of the Loans to AIF. This is inaccurate. The link was merely a Google spreadsheet that kept track of the Loans and could be accessed by AIF. The ShareFile link and the spreadsheet did not contain Loan files, and AIF's access to the ShareFile link did not convey ownership of any Loans to AIF (which, in any event, were not AmeriFirst's Loans to convey).

16.     AmeriFirst received reimbursements from the third party lender totaling $1,143,725.89 for the advances made by AIF. No such funds are subject to the liens and claims of AIF and AIF has offered no documentation to the contrary.

17.     Concurrently herewith, the Debtors have filed an objection to AIF's proof of claim seeking to disallow a portion of the claim and to reclassify it from secured to general unsecured status.

## OBJECTION

### A.    AIF Fails to Establish "Cause" to Lift the Automatic Stay

18.     The automatic stay is a fundamental protection afforded to debtors. *See Midlantic Nat'l Bank v. N.J. Dep't of Env't. Prot.*, 474 U.S. 494, 503 (1986). It protects the debtor against "any act to obtain possession . . . or to exercise control over property of the estate," as well as "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a). Generally, the automatic stay operates to "stop

---

[4] A few loans were funded by AIF that were originated and owned by AmeriFirst as of the Petition Date that were sold postpetition. AIF has been reimbursed for such loans.

all creditor collection efforts, stop all harassment of a debtor seeking relief, and *to maintain the status quo* between the debtor and [his] creditors, thereby affording the parties and the Court an opportunity to appropriately resolve competing economic interests in an orderly and effective way." *Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999) (emphasis and alteration in original) (citing *Zeoli v. RIHT Morg. Corp.*, 148 B.R. 698, 700 (D.N.H. 1993)). It is designed, *inter alia*, to give the debtor a "breathing spell" after the commencement of a bankruptcy case, shielding the debtor from creditor harassment and a multitude of litigation in a variety of forums at a time when the debtor's personnel should be focusing on restructuring. *See, e.g.*, *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991).

19. Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that the automatic stay may be modified by the bankruptcy court "for cause." 11 U.S.C. § 362(d)(1). Although the Bankruptcy Code does not define "cause" under section 362(d)(1), the Third Circuit has determined that the statute affords flexibility to bankruptcy courts when determining whether cause exists. *See, e.g.*, *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 120 (Bankr. D. Del. 2015) ("Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay."); *In re Aleris Int'l, Inc.*, 456 B.R. 35, 47 (Bankr. D. Del. 2011) (citing *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997)) ("[T]he Third Circuit has held that courts should consider 'the totality of the circumstances in each particular case' to determine whether 'cause' for relief from stay exists.").

20. Despite this flexibility, the movant has the burden to demonstrate "cause." *See In re Am. Classic Voyages, Co.*, 298 B.R. 222, 225 (Bankr. D. Del. 2003) (quoting *In re FRG*,

115 B.R. 72, 74 (E.D. Pa. 1990)) ("To establish cause, the party seeking relief from the stay must show that 'the balance of hardships from not obtaining relief tips significantly in [its] favor.'").

21. "[I]n resolving motions for relief for 'cause' from the automatic stay courts generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant." *In re Cont'l Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993); *see also In re SCO Grp., Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007) ("This Court has also considered general policies underlying the automatic stay when deciding whether to grant a motion to lift the stay."). These policies include:

> 1) whether relief would result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves the debtor as a fiduciary; 4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; 5) whether the debtor's insurer has assumed full responsibility for defending it; 6) whether the action primarily involves third parties; 7) whether litigation in another forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; 10) the interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the parties are ready for trial in the other proceeding; and 12) impact of the stay on the parties and the balance of the harms.

*In re SCO Grp., Inc.*, 395 B.R. at 857 (quoting *In re Sonnax Indus., Inc. v. Tri Component Prods. Corp.*, 907 F.2d 1280, 1287 (2d Cir. 1990)).

22. The automatic stay will be lifted in favor of unsecured claimants only in "the most extraordinary set of circumstances." *See In re Stranahan Gear Co.*, 67 B.R. 834, 838 (Bankr. E.D. Pa. 1986); *see also In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992) (finding that the general rule is that claims that are not viewed as secured should not be granted relief from the automatic stay unless extraordinary circumstances are established to justify such

7

relief); *In re Tristar Auto. Grp., Inc.*, 141 B.R. 41, 44 (Bankr. S.D.N.Y. 1992) (finding that an unsecured creditor would not be entitled to relief from the automatic stay unless it can establish extraordinary circumstances); *In re Pioneer Com. Funding Corp.*, 114 B.R. 45 (Bankr. S.D.N.Y. 1990) (same).

23. AIF argues that "cause" exists to lift the automatic stay on the basis that the Debtors have no equitable interest in the Loans at issue and such Loans are not property of the Debtors' estates. Motion ¶¶ 28–30. The Motion should be denied because AIF seeks relief in the form of Loans and loan documents that the Debtors neither have nor beneficially own. AIF therefore has failed to demonstrate that "cause" exists to lift the automatic stay.

24. AIF has not established "cause" to obtain stay relief when the facts are examined in light of the factors listed in *SCO Group* that are applicable to this matter: (a) whether relief would result in a partial or complete resolution of the issues; (b) the interests of judicial economy; and (c) the impact of the stay on the parties and the balance of the harms.

25. Granting stay relief would not resolve any issues and is not in the interests of judicial economy because the Debtors dispute AIF's asserted liens and claims, as reflected in the objection to AIF's proof of claim filed by the Debtors concurrently herewith. Further, the Debtors neither possess nor beneficially own the Loans or loan documents at issue. The Repurchase Documents attached to the Motion were never operative agreements. The principal agreement attached to the Motion is unsigned by AmeriFirst. In practice, no loans were ever sold by AmeriFirst to AIF and the Debtors no longer service the Loans at issue.

26. AIF advanced $1,398,529.69 on behalf of AmeriFirst that remains outstanding and was used to fund additional draws on construction Loans that were owned by a third party. AmeriFirst never owned the Loans and is no longer the servicer for these Loans. AIF

failed to take the necessary steps to protect itself with respect to those advances, either by ensuring that it purchased the Loans at issue or by perfecting a security interest in such Loans.

27. The ShareFile link referred to in the Motion was nothing more than a Google spreadsheet that was accessible to AIF; it did not include any loan files. AIF's access to the ShareFile link did not constitute "possession" or "control" of any loans. Therefore, none of the Loans in question belong to AIF or can be repurchased by AmeriFirst under those documents.

28. The balance of the harms also strongly favors denying stay relief given that AIF is attempting to recover Loans and loan documents that the Debtors neither have nor control. Stay relief is simply an ineffective remedy here.

29. For these reasons, AIF has not met the required standard for "cause" and its request for stay relief should be denied.

B.  **The Alternative Requested Relief for Turnover Should Be Denied**

30. AIF's alternative request that the Court order the Debtors to turn over the proceeds of any Loans that may have been sold also should be denied. AIF cannot establish any basis to assert a claim to proceeds of any Loans for which AmeriFirst was reimbursed. AIF is not secured by either the Loans or the proceeds thereof and failed to a file a UCC financing statement. AIF never purchased any of the Loans and never had possession or control of the Loans. AIF also does not have any other viable claim to the funds in the AmeriFirst estate. At most, AIF is a general unsecured creditor with respect to the funds advanced. For these reasons, AIF is not entitled to turnover of any proceeds of the Loans.

*[Remainder of Page Intentionally Left Blank]*

**CONCLUSION**

31. For the above reasons, the Debtors respectfully request that the Court deny the Motion.

Dated: January 23, 2024        PACHULSKI STANG ZIEHL & JONES LLP

                    */s/ Laura Davis Jones*
                    Laura Davis Jones (DE Bar No. 2436)
                    David M. Bertenthal (CA Bar No. 167624)
                    Timothy P. Cairns (DE Bar No. 4228)
                    919 North Market Street, 17th Floor
                    P.O. Box 8705
                    Wilmington, Delaware 19899-8705 (Courier 19801)
                    Telephone: 302-652-4100
                    Facsimile: 302-652-4400
                    Email: ljones@pszjlaw.com
                        dbertenthal@pszjlaw.com
                        tcairns@pszjlaw.com

                    *Counsel to the Debtors and Debtors in Possession*