## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERIFIRST FINANCIAL, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11240 (TMH)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 580, 620** |

**Hearing Date:  January 30, 2024 at 11:00 a.m. (ET)**
**Objection Deadline: January 24, 2024 at 4:00 p.m. (ET)(by agreement)**

## DEBTORS' OBJECTION TO PARAGON MICRO, INC.'S MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

AmeriFirst Financial, Inc. ("AmeriFirst") and Phoenix 1040, LLC ("Phoenix"), as debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases (the "Chapter 11 Cases"), hereby object (the "Objection") to *Paragon Micro, Inc.'s Motion for Allowance and Payment of Administrative Expense Claim* [Docket No. 580] (the "Motion").[2]  In support of this Objection, the Debtors respectfully represent as follows:

### PRELIMINARY STATEMENT

In its Motion, Paragon Micro, Inc. ("Paragon") seeks allowance and immediate payment of two asserted administrative claims for the Debtors' postpetition use of (i) Microsoft Azure cloud services and related products ("Azure", or the "CSP" products described in the Motion) and (ii)  licenses for Microsoft Office 365 products ("O365" or the "NCE" products described in the Motion).  Paragon asserts that the Debtors have continued postpetition to use both

---

[1]    The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Phoenix 1040 LLC (2550); and AmeriFirst Financial, Inc. (4557).  The Debtors' service address is 575 W. Chandler Boulevard, Suite 225, Unit 236, Chandler, AZ 85225.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Azure and O365 and failed to pay for such usage.  As described more fully below, (i) the Debtors are current on payments for their postpetition use of Azure/CSP products, and (ii) the Debtors informed Paragon no later than September 20, 2023 that they had discontinued using the O365/NCE products and would not use them going forward.  The Debtors have not used the O365/NCE products since that time.  The Debtors do not object to Paragon being allowed an administrative expenses claim in the amount of $41,422.26 for the Debtors' approximately one month postpetition usage of O365 (the "<u>O365 Admin Claim</u>").  The O365 Admin Claim is not entitled to immediate payment, however.

## **OBJECTION**

### A.    **Standard for Allowance of Administrative Expense Claims**

1.    Section 503(b) of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate.  Because section 503 administrative expense claims are afforded priority pursuant to section 507(a)(1) of the Bankruptcy Code, allowance of such claims is narrowly construed.  *In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D. Del. 2001); *In re Molnar Bros.*, 200 B.R. 555, 558 (Bankr. D.N.J. 1996).  The burden of proving an entitlement to an administrative expense claim is on the claimant.  *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999).

2.    To qualify for administrative priority, the expense must represent "a concrete, discernible benefit" to the estate; a "speculative benefit or the mere potential for benefit is not enough[.]" *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 490 (Bankr. S.D.N.Y. 1991) (quoting *In re United Trucking Serv., Inc.*, 851 F.2d 159, 162 (6th Cir. 1988)); *see Am. Anthracite & Bituminous Coal Comp. v. Leonardo Arrivabene, S. A.*, 280 F.2d 119, 126 (2d Cir.

1960). Thus, as the Third Circuit has summarized, "[f]or a claim in its entirety to be entitled to first priority under [§ 503(b)(1)(A)], the debt must arise from a transaction with the debtor-in-possession. . . . [and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of the business." *Calpine Corp., v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 532-33 (3d Cir. 1999) (citation omitted). Additionally, "[a] party seeking payment of costs and fees as an administrative expense must . . . carry the heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." *Id.; see also, In re Women First Healthcare, Inc.*, 332 B.R. 115, 121 (Bankr. D. Del. 2005) ("The claimant bears the burden of proving its actions conferred a benefit upon the estate.")

3.      Importantly, because claimants bear the burden of establishing entitlement to administrative priority, courts carefully scrutinize requests for administrative expenses to prevent certain creditors from receiving an unfair advantage over other similarly situated creditors. *See In re Bernard Techs., Inc.*, 342 B.R. 174, 177 (Bankr. D. Del. 2006) ("The applicant must prove his entitlement to the requested compensation and expense reimbursement by a preponderance of the evidence."). As such, an applicant seeking compensation or reimbursement under section 503(b)(1)(A) of the Bankruptcy Code carries a "heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." *Bernard Techs.*, 342 B.R. at 177 (quoting *O'Brien Envtl. Energy, Inc.*, 181 F.3d at 532–33).

4.      Bankruptcy courts apply a two-part test in determining whether a creditor has an administrative claim under section 503(b)(1)(A). The claimed expenses must (i) arise out

3

of a postpetition transaction with the debtor (or trustee); and (ii) directly and substantially benefited the estate. *In re Mid-American Waste Sys., Inc.*, 228 B.R. 816, 821 (Bankr. D. Del. 1999); *Unidigital*, 262 B.R. at 288; *see also In re Pinnacle Brands, Inc.*, 259 B.R. 46, 51 (Bankr. D. Del. 2001) ("the expense must have arisen from a post-petition transaction between the creditor and the trustee and the transaction must have substantially benefitted the estate").

5.      As demonstrated below, Paragon has failed to establish its entitlement to (i) any administrative claim for Azure usage and (ii) any administrative claim for O365 above the amount of the O365 Admin Claim.

**B.      The Debtors are current on payments for Azure/CSP products.**

6.      Paragon acknowledges in the Motion that the Debtors paid for their postpetition usage of Azure/CSP products through October 2023. ("The Debtors have paid for the CSP products post-petition through October, 2023, however the monthly amounts due for the CSP products will continue to accrue each month.") Motion at §7. Despite this acknowledgment, Paragon included an invoice for Azure products in <u>Exhibit B</u> to the Motion. That Azure invoice, in the amount of $12,418.01, clearly states on its face that it relates to August 2023 usage, i.e., prepetition usage. The Debtors take from the unambiguous language in paragraph 7 of the Motion that Paragon is not asserting an administrative claim for that invoice.

7.      At the time Paragon filed the Motion, Paragon had not yet invoiced the Debtors for November Azure usage, despite repeated requests from the Debtors for the invoice. Paragon ultimately provided the invoice within days of the Motion being filed and the Debtors promptly paid it via ACH.   The Debtors recently received Paragon's December invoice for the Azure/CSP products.  The invoice is dated January 17, 2024 and is not due until February 16, 2024.  Nonetheless, the Debtors paid the invoice on January 23, 2024.

8.      Accordingly, Paragon has no valid administrative claim for amounts owing in connection the Debtors' postpetition use of Azure/CSP products.

**C.      The Debtors have not used O365/NCE since mid-September, 2023.**

9.      The Debtors ceased originating loans and terminated the employment of the majority of their employees in early September, 2023.   Given the cessation of most business operations and the concomitant reduction in their work force, the Debtors did not need the Paragon O365/NCE products at the same level as used prepetition.   The Debtors asked Paragon if it would agree to provide a reduced number of O365/NCE licenses and products.  Paragon refused, insisting instead that the Debtors should pay for more than they needed.  Given the delta between the charges Paragon assessed (roughly $41,500 per month) and the charges for more limited products from a new provider (roughly $1,700 per month), the Debtors determined to cease using the O365/NCE products. By September 20, 2023, the Debtors had informed Paragon that the Debtors (i) had obtained similar NCE products in a lesser quantity from another provider, (ii) had no use for and had ceased all use of the O365/NCE products, and (iii) would be filing a motion to reject the O365/NCE contract.[3]

10.      Since the Debtors have not used Paragon's O365/NCE products since mid-September,  Paragon cannot possibly demonstrate that after that date (i) the O365/NCE products were necessary to preserve the value of the estates, or (ii) the O365/NCE products provided any actual benefit to the estate.  Simply put, products that the Debtors do not use can be deemed neither necessary nor beneficial.  In connection with the O365/NCE products, Paragon falls well short of

---

[3] On January 23, 2024, the Debtors filed a motion to reject the O365/NCE products contract effective as of September 20, 2023.

DE:4857-0668-4574.5 70786.001

the "heavy burden" imposed on claimants seeking to demonstrate entitlement to an administrative claim.

### D.     <u>Immediate Payment of the O365/NCE Admin Claim is not Warranted.</u>

11.     While the Debtors believe a lesser amount would be appropriate, they do not object to allowance of the O365/NCE Admin Claim. However, the O365/NCE Admin Claim is not entitled to immediate payment and Paragon's request for payment is premature.

12.     The Bankruptcy Code does not explicitly set forth a time for payment of administrative expense claims. Generally, a bankruptcy court has discretion to determine when an administrative expense should be paid. *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) (a chief factor courts consider is bankruptcy's overarching goal for "an orderly and equal distribution among creditors and the need to prevent a race to the debtor's assets"). When considering whether to authorize immediate payment of administrative expense claims, courts in this district have considered: (1) prejudice to the debtor, (2) hardship to the claimant, and (3) potential detriment to other creditors. *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005).

13.     Specifically, in order to be entitled to immediate payment of an administrative expense claim, a claimant must show there is a necessity to pay and not merely that the Debtor has the ability to pay." *Matter of Continental Airlines, Inc.*, 146 B.R. 520, 531 (Bankr. D. Del.1992) (quoting *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 178-79 (Bankr. S.D.N.Y. 1989) (holding the claimant was not entitled to payment where there was no evidence the claimant would suffer hardship if the debtor failed to provide immediate payment). *See also In re Global Home Prods., LLC*, 2006 LEXIS 3608 (Bankr. D. Del. Dec. 21, 2006) (denying immediate payment of an administrative expense claim where the creditor failed to show requisite level of individual

hardship); *In re Budget Uniform Ctr., Inc.*, 71 B.R. 652, 654 (Bankr. E.D. Pa. 1987) (administrative claimants "must wait for confirmation of a plan before becoming entitled to payment."); 4 COLLIER ON BANKRUPTCY ¶ 503.03[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("Although courts vary in exercising their discretion on timing of payments of administrative expenses, nearly all courts have rejected arguments by claimants that their administrative expense is legally entitled to payment ahead of other administrative claimants.").

14.     Paragon does not explain why immediate payment of its alleged administrative expense claims is necessary. Moreover, Paragon does not assert that it will suffer any hardship if it does not receive immediate payment. Immediate payment of any allowed administrative claim would deprive the Debtors of funds that could otherwise be used to during the plan and wind-down process, to the potential detriment of all parties in interest other than Paragon. Accordingly, to the extent any of Paragon's asserted administrative expense claims are allowed, the Court should deny the request for immediate payment.

## RESERVATION OF RIGHTS

15.     The Debtors reserve the right to amend, modify or supplement the objections asserted herein and to file additional objections to the Motion or to the amount and priority of any claims asserted by Paragon.

[Remainder of Page Intentionally Blank]

DE:4857-0668-4574.5 70786.001

## <u>CONCLUSION</u>

16.     For the above reasons, the Debtors respectfully request that the Court deny
the Motion.

Dated:  January 24, 2024                     **PACHULSKI STANG ZIEHL & JONES LLP**

                                            */s/ Laura Davis Jones*
                                            Laura Davis Jones (DE Bar No. 2436)
                                            David M. Bertenthal (CA Bar No. 167624)
                                            Timothy P. Cairns (DE Bar No. 4228)
                                            919 North Market Street, 17th Floor
                                            P.O. Box 8705
                                            Wilmington, Delaware 19899-8705 (Courier 19801)
                                            Telephone:  302-652-4100
                                            Facsimile:  302-652-4400
                                            Email: ljones@pszjlaw.com
                                                   dbertenthal@pszjlaw.com
                                                   tcairns@pszjlaw.com

                                            *Counsel to the Debtors and Debtors in Possession*