## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE



THOMAS M. HORAN
JUDGE

824 N. MARKET STREET
WILMINGTON, DELAWARE
(302) 252-2888

June 12, 2024

**VIA CM/ECF**

Counsel to the Debtors and Debtors-in-Possession
Counsel to Arizona Instant Funding, LLC

                Re:    *In re AmeriFirst Financial, Inc.*, No. 23-11240

Dear Counsel:

    On June 5, 2024, I conducted a hearing regarding Arizona Instant Funding LLC's ("AIF") Motion for Stay Relief and Turnover (the "Motion") [D.I. 590] and the Debtor's Objection to Claim Number 179 Filed by Arizona Instant Funding LLC (the "Claim Objection") [D.I. 637]. This is my ruling on the Motion and the Claim Objection. My discussion of the factual background is brief because I write primarily for the parties.

### Factual Background

    AIF is a warehouse lender that provided short-term financing for real estate transactions and construction projects originated by the Debtor. The disputes here arise out of the Master Purchase Agreement (the "Agreement") between the Debtor and AIF, dated as of March 21, 2023, and related agreements. The related agreements include the Pricing Side Letter of the same date and an amendment thereto dated May 31, 2023.

    AIF filed a proof of claim against the Debtor in the amount of $1,530,573.16.[1] The basis of the claim is "[m]oney owed."[2] AIF asserted in the proof of claim that its claim was secured by a lien on "Purchased Repo Assets and income thereon and proceeds."[3]

---

[1] See Claim Objection, Ex. C.
[2] Id.
[3] Id.

Counsel to the Debtors and Debtors-in-Possession
Counsel to Arizona Instant Funding, LLC
June 12, 2024
Page Number 2

### The Motion

By the Motion, AIF seeks two forms of relief. First, AIF requests that the automatic stay of Bankruptcy Code section 362 be "terminated . . . to allow AIF to take action necessary to take possession of the Purchases Repo Assets, Mortgage Loan Documents, Repurchase Facility Documents, among other documents related to the Loans . . . ."[4] Second, AIF requests entry of an order directing the Debtor to "turnover the Purchased Repo Assets, Mortgage Loan Documents, Repurchase Facility Documents, among other documents related to the Loans . . . ."[5] Put differently, AIF seeks the documents relating to the Loans or turnover of the proceeds of the Loans.

The Debtor objected to the Motion.[6] Concurrently with the objection, the Debtor filed the Claim Objection, seeking to have AIF's claim reclassified as a general unsecured claim and reduced to $1,398,529.69.

In response to the Objection, AIF argued for the first time on reply[7] that the Debtor and AIF had created an express trust or, in the alternative, that the Court should impose a constructive trust, in which the Debtor held funds from the Loans for AIF.[8] This contention contradicts the theory of recovery set forth in the proof of claim, where AIF asserted a right to recovery as a secured creditor.

Bankruptcy Code section 362(d)(1) provides that the Court shall grant stay relief upon a showing of cause.[9] Cause is not defined in section 362(d)(1). Courts "often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay."[10] This Court has adopted the three-part test outlined in In re Rexene Products Co., in which the Court weighs (1) the prejudice to the debtor or estate from the continuation of the civil suit, (2) whether the hardships imposed by the stay on the moving party "considerably outweigh[] the hardship[s] of the debtor, and" (3) whether the moving party "has a probability of prevailing on the merits."[11] In addition to the Rexene factors,

---

[4] Proposed Order Granting Arizona Instant Funding, LLC's Mot. for Stay Relief & Turnover [D.I. 590].
[5] Id.
[6] Debtor's Obj. to Arizona Instant Funding, LLC's Mot. for Stay Relief & Turnover (the "Stay Objection") [D.I. 634].
[7] The Court generally ignores arguments raised for the first time in a reply. See Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief . . . ."). However, the Debtor adequately argued its opposition to these theories and has not alleged that it was prejudiced by AIF's untimely assertion of these new trust arguments. Therefore, I am considering these arguments.
[8] Reply in Support of Arizona Instant Funding, LLC's Motion for Stay Relief & Turnover (the "AIF Reply") [D.I. 659].
[9] 11 U.S.C. § 362(d)(1).
[10] In re SCO Grp., Inc., 395 B.R. 852, 856 (Bankr. D. Del. 2007).
[11] 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing In re Fernstrom Storage & Van Co., 938 F.2d 731, 735 (7th Cir. 1991)).

Counsel to the Debtors and Debtors-in-Possession
Counsel to Arizona Instant Funding, LLC
June 12, 2024
Page Number 3

courts analyze "the general policies underlying the automatic stay when deciding whether to grant a motion to lift the stay."[12]

AIF has not shown cause for relief from the automatic stay. AIF first seeks turnover of documents—consisting of specific Purchased Repo Assets, Mortgage Loan Documents, Repurchase Facility Documents, and any other relevant documents—to which AIF claims ownership under the Agreement. AIF provides no evidence that the Debtor possesses any of the relevant documents. To the contrary, Scott Avila, the Chief Restructuring Officer of the Debtor, testified that the documents at issue are not in the Debtor's possession because the Debtor sold the loans to Saluda Grade.[13] Mr. Avila's testimony was consistent with AIF's own witness, Eric Bowlby, who admitted that the Debtor did not sell the loans to AIF but instead sold the loans to third parties such as Saluda Grade.[14] Also, under the Agreement, the parties agreed that the Debtor would transfer documentation governing any particular loan to AIF.[15] The evidence, however, demonstrates the parties ignored this requirement.[16] Instead, the Debtor merely uploaded copies of certain documents to a shared drive where AIF could review them.[17]

AIF does not demonstrate cause for stay relief for turnover of proceeds allegedly received by the Debtor. Debtor concedes it received $1,143,725.89 from a third-party lender "for the advances made by AIF" on certain loans.[18] AIF provides no evidence that AIF owned the specific mortgages at issue before they were sold to a third party. The evidence demonstrates that, in a majority of the transactions, the Debtor sold the mortgages to Saluda Grade before AIF ever provided funding.[19] AIF therefore has not proven that it owns mortgages or the mortgage proceeds.

While AIF presents no proof of ownership over the mortgages at issue, it contends that the Debtor holds the proceeds of the mortgages in trust for AIF.[20] However, AIF did not furnish evidence adequate to establish an express trust under the Agreement or to warrant the imposition of a constructive trust.

California law governs the Agreement.[21] "To create an express trust there must be a competent trustor, trust intent, trust property, trust purpose, and a beneficiary."[22] There is

---

[12] SCO Grp., Inc., 395 B.R. at 857 (quoting In re Sonnax Indus., Inc. v. Tri Component Prods. Corp., 907 F.2d 1280, 1287 (2d Cir. 1990) (listing the general policies considered)).
[13] Tr. re Hr'g Held 6/05/2024 [D.I. 774] 87:18-23 (hereinafter "Hr'g Tr.").
[14] Id. at 26:21-25, 30:5-24.
[15] Motion, Ex. A at Sec. 3(b).
[16] Hr'g Tr. 32:10-23, 63:22-64:7.
[17] Id. at 42:1-12, 60:16-61:9, 61:16-19.
[18] Stay Objection ¶ 16.
[19] Hr'g Tr. 26:21-27:10, 84:16-85:16.
[20] As I noted at the hearing – and as counsel to AIF conceded – AIF takes inconsistent positions. Hr'g Tr. 123:6-9, 129:2-7. AIF filed a proof of claim asserting that it is a secured party. However, in its reply in support of its Motion, AIF takes the position that, in fact, the Debtor holds funds in trust for AIF.
[21] Motion, Ex. A at Sec. 20.
[22] Estate of Heggstad, 16 Cal.App.4th 943, 947 (Cal. Dist. Ct. App. 1993) (summarizing Cal. Prob. Code §§ 15201-15205).

Counsel to the Debtors and Debtors-in-Possession
Counsel to Arizona Instant Funding, LLC
June 12, 2024
Page Number 4

insufficient evidence to satisfy these requirements. First, Section 5(c) of the Agreement contemplates an event of default by Debtor in which the Debtor applies any income received from the sale of mortgages in a trust for the repurchase of Purchased Repo Assets. AIF has not identified an event of default by the Debtor, nor did AIF demonstrate that it owned the Purchased Repo Assets for which the trust would be created.

Additionally, section 15(f) of the Agreement provides for AIF to receive payments owed on any unpaid Repurchase Price of Repurchased Repo Assets.[23] Once again, AIF did not furnish evidence that it owned the Repurchased Repo Assets contemplated in the Agreement. Mr. Bowlby testified that a tri-party agreement existed that contemplated a trust agreement with AIF acting as a warehouse lender, but AIF offered no supporting evidence of such agreement.[24]

The Agreement further provides that any funds held in trust under sections 5(c) and 15(f) remain separate and not comingled with the funds of the Debtor.[25] AIF presented no evidence that such funds were segregated.

AIF also seeks turnover of the proceeds through the imposition of a constructive trust. Under California law,[26] a court may impose a constructive trust when "the following three conditions are satisfied: (1) the existence of a res (property or some interest in property); (2) the right of a complaining party to that res; and (3) some wrongful acquisition or detention of the res by another party who is not entitled to it."[27] The mortgages at issue were sold to a third party by the Debtor before they were funded by AIF. AIF maintains no ownership of the mortgages because the Debtor had no right to convey any ownership after selling them to a third-party. To the extent that the Agreement dictates ownership of the mortgages, AIF's evidence of ownership consists of its access to a shared drive in which the Debtor listed the mortgages.[28] AIF offers no support for the contention that having access to a share drive containing copies of certain documents conveys title to the related loans. AIF cannot establish its entitlement to imposition of a constructive trust.

### The Claim Objection

Debtor objects to AIF's proof of claim number 179. It seeks an order reclassifying the claim as a general unsecured claim and reducing the amount from $1,530,573.16 to $1,398,529.69.

---

[23] See Motion, Ex. A at Sec. 2 (defining Repurchase Price as "the price at which Repurchased Repo Assets are to be transferred from Buyer to Seller on the Repurchase Date . . . .").
[24] Hr'g Tr. 27:13-18. To the contrary. Mr. Bowlby stated later that he did not believe AIF and Saluda Grade maintained a contractual relationship. Hr'g Tr. 34:22-25.
[25] Motion, Ex. A at Secs. 5(c), 15(f).
[26] While the Debtor argues that the Agreement does not govern these transactions given the party's informal relationship, neither party provides the Court with a supplemental agreement that governs the business relationship. Because California law governs the Agreement, the Court will look to California law to determine the existence of a constructive trust.
[27] Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990 (Cal. Dist. Ct. App. 1995).
[28] Hr'g Tr. 60:16-61:9.

Counsel to the Debtors and Debtors-in-Possession
Counsel to Arizona Instant Funding, LLC
June 12, 2024
Page Number 5

      Bankruptcy Code section 506(a) requires a secured claim to be an allowed claim "secured by a lien on property in which the estate has an interest . . . ."[29] Federal Rule of Bankruptcy Procedure 3001(f) dictates that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."[30] Bankruptcy Code section 502(a) dictates that "[a] claim . . . is deemed allowed, unless a party in interest . . . objects."[31] As such, "a proof of claim that alleges sufficient facts to support liability satisfies the claimant's initial obligation to proceed . . . ."[32] A party in interest maintains the right to object to a claim, but bears the burden "to produce evidence sufficient to negate the prima facie validity of the filed claim."[33]

      As noted at footnote 17 of this letter, AIF has conceded that it cannot argue both a trust theory and that it has an unsecured claim.[34] Putting that inconsistency aside, and having already rejected AIF's trust arguments, AIF has not sustained its burden of demonstrating that it is a secured creditor.

      AIF provides no evidence of a security on the outstanding balance allegedly owed by the Debtor. The Agreement contemplates any transactions under the agreement as "sales and purchases and not loans . . . ."[35] Even if the transactions at issue followed the mechanics of the Agreement—and the evidence demonstrates that the parties did not follow the requirements of the Agreement—AIF provides no evidence requiring the transactions at issue to be classified as secured loans versus the sales and purchases contemplated under the Agreement.[36]

      Even if the transactions occurred informally and outside the terms of the Agreement, the underlying collateral—primarily the Purchased Repo Assets and Mortgage Loan Documents—were sold to third parties before the funding of the loan and free and clear of any potential liens from AIF. AIF never filed a UCC-1 statement on any collateral it believed it maintained an interest in; instead, AIF relied on a share-drive that listed the mortgages as proof of a security interest.[37] AIF offers no persuasive legal argument as to how a security interest can be

---

[29] 11 U.S.C. § 506(a)(1); see also 4 Collier on Bankruptcy P 506.03 (16th 2024) ("[A] claim cannot be a 'secured claim' for purposes of section 506(a) unless it is secured by a 'lien' on some specific item of property in which the estate has an interest, or, alternatively, is a claim that is subject to a right of setoff."); United States v. Ron Pair Enters., 489 U.S. 235, 238-39 (1989) (defining a secured claim as "claims by creditors against the estate that are secured by a lien on property in which the estate has an interest" and "only to the extent of the value of the property on which the lien is fixed . . . .").
[30] Fed. R. Bankr. P. 3001(f).
[31] 11 U.S.C. § 502(a).
[32] Lampe v. Lampe, 665 F.3d 506, 514 (3d Cir. 2011) citing In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992).
[33] Allegheny, 954 F.2d at 173.
[34] Hr'g Tr. 129:2-7.
[35] Motion, Ex. A at Sec. 6(a).
[36] AIF presents the testimony of Mr. Bowlby who stated that AIF acted as a warehouse lender and therefore maintained a secured interest in the mortgages they funded. However, the Court does not consider Mr. Bowlby's legal conclusions as evidence of a security interest, nor does AIF present any evidence of a tri-party agreement separate from the Agreement at issue with which Mr. Bowlby relies on.
[37] Hr'g Tr. 60:16-61:9.

established and perfected in this fashion. Instead, the evidence demonstrates that AIF is merely a general unsecured creditor. The claim will be reclassified as a general unsecured claim.

However, the Claim Objection is overruled insofar as the Debtor seeks to reduce the claim amount to from $1,530,573.16 to $1,398,529.69. A properly filed proof of claim constitutes prima facie evidence of a valid claim. The Debtor bears the burden to present evidence disproving the prima facie validity of the claim. The Debtor's evidence, produced from its own accounting, consists of disputes over certain funding draws made by AIF to the Debtor.[38] But the Debtor merely presents disputes over accounting records without negating the validity of AIF's own records. AIF's evidence in support of the amount of its claim is adequate to establish to my satisfaction that the amount sought in the claim is correct. The Debtor does not meet its burden of disproving the prima facie validity of AIF's claim amount. The claim amount will be reclassified as a general unsecured claim and allowed in the amount of $1,520,573.16.

The parties are directed to present a proposed order form of order under certification of counsel.

_____
Thomas M. Horan
United States Bankruptcy Judge

---

[38] See generally Claim Objection, Ex. D.