**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERIFIRST FINANCIAL, INC., *et al.*, | ) | Case No. 23-11240 (TMH) |
| | ) | |
| Debtors. [1] | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re:  D.I. 702 & 705** |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS'**
**REPLY TO PRELIMINARY FEE OBJECTIONS**

Pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* (D.I. 164) (the "Interim Compensation Procedures Order"), the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned chapter 11 cases submits this reply (the "Reply") in further support of the fee applications of Morris, Nichols, Arsht & Tunnell LLP ("Morris Nichols"), Glenn Agre Bergman & Fuentes LLP ("Glenn Agre"), and IslandDundon LLC ("Dundon," collectively with Morris Nichols and Glenn Agre, the "Committee Professionals"), and in response to:

A.     *Debtors' Response and Preliminary Objection to: (1) Omnibus Objection and Reservation of Rights of the Official Committee of Unsecured Creditors to Fee Applications filed by Debtors' Professionals; and (2) Monthly and Interim Fee Applications of Committee's Professionals* (D.I. 702) (the "Debtors' Objection"); and

B.     *RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. and RCP Customized Credit Fund (Fund IV-A), L.P.'s Joinder in Debtors' Response and Preliminary*

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers include: Phoenix 1040 LLC (2550) and AmeriFirst Financial, Inc. (4557). The Debtors' service address is 575 W. Chandler Blvd, Suite 225, Unit 236, Chandler, AZ 85225.

*Objection to: (1) Omnibus Objection and Reservation of Rights of the Official Committee of Unsecured Creditors to Fee Applications filed by Debtors' Professionals; and (2) Monthly and Interim Fee Applications of Committee's Professionals and Reservation of Rights* (D.I. 705) ("RCP's Objection," together with the Debtors' Objection, the "Preliminary Fee Objections").

For the reasons set forth herein, the Committee respectfully requests that this Court overrule the Preliminary Fee Objections, and approve, on an interim basis, the fee applications filed by the Committee Professionals in these cases.

## PRELIMINARY STATEMENT

1. As the Court will recall, the Debtors filed these chapter 11 cases at the direction and for the sole benefit of their senior secured lender Reverence Capital Partners and its affiliates (collectively, "RCP"), seeking, among other things, to release claims against RCP with no ability of either the Committee, or any other party in interest, to investigate and/or challenge the propriety of that release. As a result, from its formation on September 15, 2023, and through the conclusion of the evidentiary hearings on the Debtors' DIP Motion[2] and the Committee's motion seeking standing to pursue claims against RCP, the Committee was forced to engage in expedited and protracted litigation with the Debtors and RCP to secure the most basic rights afforded to unsecured creditors in a chapter 11 case. That fight, triggered by the Debtors' surreptitious attempt to eliminate the challenge period and secure broad releases for RCP, involved the review of more than 100,000 pages of documents, five depositions, and more than eight contested hearings, including four lengthy evidentiary hearings. As a result of those efforts, the

---

[2]   Capitalized terms not otherwise herein shall have the meanings ascribed to them in the *Motion of the Debtors for Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Lenders, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (D.I. 21) (the "DIP Motion").

Committee succeeded in obtaining relief from the most egregious and overreaching provisions of the DIP Motion and was granted standing to pursue claims against RCP, which the Court concluded the Debtors wrongfully failed to bring.

2.      Now, the Debtors and RCP seek to deny payment of *any* of the Committee Professionals' fees incurred in that fight, despite the existence of a multimillion-dollar professional fee reserve established for payment of all professionals in the case and a procedures' order which contemplates the allowance and payment of professional fees and expenses on an interim basis. By its express terms, that order preserves all parties' ability to object to the final allowance of fees, and makes all fees and expenses paid on an interim basis subject to challenge and disgorgement until final allowance by the Court.

3.      Given the length of time the cases have been pending, and the lack of any progress towards resolving these cases in the year since the final DIP hearing, there is ample reason to approve the Committee Professionals' requested fees and expenses on an interim basis. This is particularly true given that the Debtors' professionals have already received payment of almost three million dollars from the eight plus million-dollar reserve established for the payment of professional fees. The Committee is simply requesting that this Court approve, on an interim basis, the fees already incurred by the Committee Professionals in accordance with the Interim Compensation Procedures Order.

4.      The Committee is not seeking final approval of the Committee Professionals' fees and expenses at this time. Rather, as set forth in the Interim Compensation Procedures Order, any objections to the final approval of fees and expenses can be heard at a later date. But it is fundamentally unfair for the Debtors and RCP to force the Committee Professionals, who have received *no* payment of any kind during the pendency of these cases, to continue to wait

for even an interim payment on their validly incurred fees and expenses.  This is particularly true given the fact that the Debtors' professionals have received millions of dollars in payment of their fees and expenses to date.  RCP orchestrated these chapter 11 bankruptcy cases to liquidate their collateral and obtain releases, and their ambition drove up costs.  RCP must now face the reality that they do not get to pick and choose who is paid out from the estate.

**REPLY**

5.    The Committee Professionals' fees and expenses are reasonable, and easily satisfy the standards applicable under section 330 of title 11 of the United States Code (together with 11 U.S.C. §§ 101–1532, the "Bankruptcy Code").  Under section 330(a), the Court may award attorneys and other professionals "'reasonable compensation for actual, necessary services rendered.'" *In re Channel Master Holdings, Inc.*, 309 B.R. 855, 861 (Bankr. D. Del. 2004) (quoting *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 840 (3d Cir. 1994)); *see also* 11 U.S.C § 330(a).  Compensation awards to attorneys and other professionals are determined by "(i) the nature of the services, (ii) the extent of the services, (iii) the value of the services, (iv) the time spent on the services, and (v) the cost of comparable services in non-bankruptcy cases." *In re Channel Master Holdings, Inc.*, 309 B.R. at 861.  This results in a two-tiered test where the Court must (i) "be satisfied that the professional[s] performed actual and necessary services . . ." and (ii) "must assess a reasonable value for those services." *Id*.  The Committee Professionals submit that those factors are met here.

I.    **The Overwhelming Majority of the Committee Professionals' Fees were Incurred in Direct Response to Actions Taken by the Debtors' and RCP's.**

6.    The Debtors and RCP principally object to the Committee Professionals fees and expenses incurred in "the unnecessary and unsuccessful attempt to employ Kasowitz as Committee litigation counsel" (Debtors' Obj. ¶ 5) and "seeking relief from the Court at the

4

suggestion or direction from equity holders like Mr. Bowlby." RCP's Obj. ¶ 3.  However, the overwhelming majority of the fees incurred by the Committee Professionals were a direct result of the aggressive actions of the Debtors and RCP in connection with the DIP financing motion and the motion filed by the Committee seeking standing to pursue claims against RCP on behalf of the Debtors' estates.  In particular, the Committee Professionals devoted a significant amount of time to defeating the Debtors' and RCP's attempt to eliminate, through multiple continued DIP hearings and months of motion-practice,[3] the seventy-five (75) day challenge period for DIP financing orders provided in the *Local Rules for the United States Bankruptcy Court for the District of Delaware* (the "Local Rules"), which the Court identified as a concern at the first day hearing.  *See Aug. 30, 2023, Hr'g. Tr. for In re AmeriFirst Financial, Inc.*, at 57:13–21 (Case No. 23-11240 (TMH)) ("The challenge period concerns me too.  I mean, the rule in this District is seventy-five days[.]"); *see also* L.R. 4001-2(a)(i)(Q).

7.    As the Court will recall, the Debtors' interim DIP Motion, filed August 29, 2023, sought, among other things, a twenty-one (21) day challenge period.[4]  After meeting resistance from the Office of the United States Trustee (the "U.S. Trustee"), and hearing from the Court at the first day hearing, the Debtors agreed to an interim form of order which included a

---

[3]    *See Third Amended Notice of Agenda of Matters Scheduled for Hearing on October 26, 2023* (D.I. 355) (listing the DIP motion as going forward); *see Second Amended Notice of Agenda of Matters Scheduled for Hearing on November 6, 2023* (D.I. 396) (listing the DIP motion as going forward); *see Second Amended Notice of Agenda of Matters Scheduled for Hearing on November 21, 2023* (D.I. 469) (listing the DIP motion as going forward); *see Fourth Amended Notice of Agenda of Matters Scheduled for Hearing on December 18, 2023* (D.I. 554) (listing the DIP motion as going forward).

[4]    *See Motion of the Debtors for Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Lenders, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (D.I. 21) (including a 21-day challenge period).

seventy-five (75) day challenge period (the "Interim DIP Order") as contemplated by the Local Rules. The Court entered the Interim DIP Order on August 31, 2023 (D.I. 61).

8. On September 7, 2023, the Debtors filed their first proposed final DIP order,[5] which provided for a seventy-five (75) day challenge period. A week later, on September 15, 2023, the Committee was appointed by the U.S. Trustee. Then, on October 6, 2023, without any consultation with the newly formed Committee or the U.S. Trustee, the Debtors filed a revised proposed final DIP order that entirely eliminated this challenge period (the "Revised Proposed Final DIP Order").[6] The unprecedented and highly prejudicial nature of the Revised Proposed Final DIP Order forced the Committee and other parties in interest into *months* of expedited litigation that included extensive document production, depositions, travel, and contested hearings.[7]

9. At the DIP hearing held on October 26, 2023,[8] the Court gave preliminary comments on the Revised Proposed Final DIP Order stating, "there is no way on [E]arth that I'm cutting off the challenge period." *See Oct. 26, 2023, Hr'g. Tr. for In re AmeriFirst Financial, Inc.*, at 80:17–25, 107:1–3 (Case No. 23-11240 (TMH)). The Debtors then continued the DIP hearing to a later date.

---

[5] *See Notice of Filing of Proposed Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Lenders, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* (D.I. 82) (including a 75-day challenge period).

[6] *See Notice of Filing of Proposed Revised Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Lenders, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* (D.I. 231).

[7] *See, e.g.*, D.I. Nos. 239, 254, 256, 282, 283, 299, 304, 305, 310, 316, 335, 338, 352 & 390.

[8] *See Third Amended Notice of Agenda of Matters Scheduled for Hearing on October 26, 2023* (D.I. 355).

10.     At the continued hearing on November 6, 2023, the Debtors again sought to present the Revised Proposed Final DIP Order without a challenge period before continuing the hearing at the last minute.[9]  Following an unsuccessful effort at mediation, the parties reconvened for another DIP hearing on November 21, 2023, with the Debtors once again attempting to push through the Revised Proposed Final DIP Order without any challenge period.[10]  The Court once again noted its hesitation to approve such a form of order.  *See Nov. 21, 2023, Hr'g. Tr. for In re AmeriFirst Financial, Inc.*, at 41:4–8 (Case No. 23-11240 (TMH)) ("It's hard for me to envision how I get to the end of this hearing and say, yeah, granting those releases today.").  An evidentiary hearing on the final form of order was held on December 18–19, 2023 (the "Final DIP Hearing"),[11] following which the Court entered an order preserving the Committee's challenge rights (the "Final DIP Order").[12]

11.     While the repeated DIP filings and continuances were initiated by the Debtors, they occurred with the support of RCP as the DIP lender and the owner of the Debtors' equity.  Indeed, the Debtors and RCP conspired for months to eliminate the Committee's challenge

---

[9]     *See Second Amended Notice of Agenda of Matters Scheduled for Hearing on November 6, 2023* (D.I. 396); *see Emergency Motion of the Debtors to Continue Final Hearing on the Motion of the Debtors for Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Lenders, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (D.I. 390).

[10]    *See Second Amended Notice of Agenda of Matters Scheduled for Hearing on November 21, 2023* (D.I. 469).

[11]    *See Fourth Amended Notice of Agenda of Matters Scheduled for Hearing on December 18, 2023* (D.I. 554).

[12]    *See Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Lenders, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* (D.I. 579).

rights to release claims that this Court has concluded the Debtors wrongfully failed to bring, forcing costly and entirely unnecessary litigation in order to preserve them.

12.     Simultaneously, as the result of the Debtors' wrongful refusal to bring causes of action against RCP, and while attempting to defend a sham investigation ostensibly run by their independent director, the Committee was forced to seek standing in order to preserve those claims on behalf of the Debtors' estates.  That motion, which was vehemently opposed by the Debtors—resulting in more unnecessary and costly discovery, and an evidentiary hearing before the Court—was ultimately granted, yet the Debtors and RCP would deny the Committee Professionals' payment for their efforts in that regard.

## II.     The Committee's Decision to Retain Kasowitz Benson Torres LLP as Special Litigation Counsel was Reasonable at the Time Professional Fees were Incurred.

13.     The Debtors and RCP's principally attack the fees incurred by the Committee Professionals in connection with the failed retention of Kasowitz Benson Torres LLP ("Kasowitz").  *See* Debtors' Obj. ¶ 2, 5; RCP's Obj. ¶ 3.  Under section 1103 of the Bankruptcy Code, the Committee has a duty to investigate the Debtors and serve the interests of the unsecured creditors and may retain the professionals required to serve those interests.  *See In re Cumberland Farms, Inc.*, 154 B.R. 9, 12 (Bankr. D. Mass. 1993); *see also* 11 U.S.C. § 1103.  Fees for professionals retained under section 330 of the Bankruptcy Code, especially fees that pertain to the pursuit of avoidance actions, are reviewed for their reasonableness at the time the fees were incurred, and not in hindsight after a ruling.  *See In re Hosp. Partners of America, Inc.*, 597 B.R. 763, 766–67 (Bankr. D. Del. 2019) (citing *In re Top Grade Sausage, Inc.*, 227 F.3d 123, 132 (3d Cir. 2000)); *see also* 11 U.S.C § 330(a).

14.     As previously noted, the Court has granted the Committee standing to pursue claims the Debtors unjustifiably refused to press against RCP that are valued in the tens of

millions of dollars and represent the bulk of potential recoveries for unsecured creditors. *See* Standing Motion[13] at 28; *see also* Standing Opinion[14] at 38; Standing Order.[15]  At the beginning of these chapter 11 cases, the Committee made the decision to seek the retention of Kasowitz as special litigation counsel to ensure that these valuable claims against RCP were pursued in full. After Kasowitz's retention was denied, the Committee retained Glenn Agre as special litigation counsel for the same purpose—something to which no party in interest objected.[16]

15.     Glenn Agre, with the assistance of Morris Nichols, worked expeditiously to file and argue the Standing Motion, which subsequently led to the Court's Standing Opinion and the Standing Order.  No party in interest has disputed the importance of retaining special litigation counsel in these cases, and the Committee's pursuit of the retention of special litigation counsel is intertwined with the Committee's duty to represent the interests of the unsecured creditors.  As this Court has held, "success is not a prerequisite to [the] allowance of fees in chapter 11[,]" so while the Committee's attempt to retain Kasowitz as special litigation counsel was not successful, it does not mean that professional fees expended in the retention of special litigation counsel should be denied.  *See Channel Master Holdings*, 309 B.R. at 861; *see also Hosp. Partners*, 597 B.R. at

---

[13]     *Motion of the Official Committee of Unsecured Creditors of AmeriFirst Financial, Inc., et al. for an Order Granting (I) Leave, Standing, and Authority to Commence and Prosecute Certain Claims on Behalf of the Debtors' Estates and (II) Exclusive Settlement Authority in Respect of Such Claims Filed by Official Committee of Unsecured Creditors* (D.I. 470) (the "Standing Motion").

[14]     *Memorandum Opinion* (D.I. 828) (the "Standing Opinion").

[15]     *Order Granting in Part and Denying in Part the Committee's Motion for an Order (I) Granting Leave, Standing, and Authority to Commence and Prosecute Certain Claims on Behalf of the Debtors' Estates and (II) Exclusive Settlement Authority in Respect of Such Claims* (D.I. 829) (the "Standing Order").

[16]     *See Certificate of No Objection Regarding Application of the Official Committee of Unsecured Creditors of AmeriFirst Financial, Inc., et al. for an Order Authorizing the Retention and Employment of Glenn Agre Bergman & Fuentes LLP as Special Litigation Counsel Nunc Pro Tunc to November 7, 2023* (D.I. 540).

767 ("there is no bright line rule that requires this Court to disallow fees for services rendered when the economic outcome of those services turns out to be disappointing."). In the alternative, if estate professionals are to forgo payment for work that ends in disappointment, the Committee Professionals respectfully request that the Debtors' professionals forgo payment of all fees incurred regarding the Standing Motion in return for the Committee Professionals forgoing the approximately $40,000 of fees incurred in pursuit of Kasowitz's retention and the efforts to transfer venue to Arizona.[17]

16.    Based on the potential for claims handled by special litigation counsel to procure value for unsecured creditors, and the occurrence of both briefing and an evidentiary hearing on Kasowitz's retention, the Committee Professionals submit that fees incurred in the attempt to retain Kasowitz as special litigation counsel were reasonable at the time they were incurred and are allowable under section 330 of the Bankruptcy Code. *See Hosp. Partners*, 597 B.R. at 767. It is of no moment that the Committee was ultimately unsuccessful in that effort and, tellingly, RCP has not objected to the fees incurred by the Debtors' professionals in respect to any of the unsuccessful positions taken by the Debtors.[18]

### III.    The Court's Ruling at the Final DIP Hearing Supersedes the Language in the Final DIP Order.

17.    Third, the Committee Professionals' fees do not violate the Court's rulings on DIP financing. In its objection, RCP alleges that the Committee Professionals' fees exceed the budget and "otherwise violate" the language of the Final DIP Order. *See* RCP's Obj. ¶ 2. This

---

[17]    *Joinder of the Official Committee of Unsecured Creditors to the United State Trustee's Motion to Transfer Venue* (D.I. 266).

[18]    In all events, as noted above, the Committee Professionals' fees incurred in that effort represent only a tiny fraction of the Committee Professionals' fees.

objection ignores established case law in this Court and ignores the Court's ruling at the Final DIP

Hearing by relying on language in the Final DIP Order that was excluded by the Court.

18.     In *Channel Master Holdings*, the Court held that "the existence of a cap on

fees for Committee's Professionals in the DIP Financing Order does not limit allowance or

payment of fees to those professionals." 309 B.R. at 860.   This is because "[the] [C]ourt has the

inherent power to direct disgorgement of fees by any professional and to redistribute those

disgorged fees among all professionals in order to assure that none receives more than its pro rata

share." *Id.*; *see also In re Allegiance Coal USA Ltd.*, 2024 WL 2941522 at *5 (Bankr. D. Del. June

7, 2024) ("Accordingly, while the refusal to agree on a [DIP] budget can . . . prevent the debtors

from making a cash payment in any given period, it does not provide a basis, at the end of the case,

to deny the estate professionals an award for fees[.]").   A similar decision was reached in

*Molycorp,* where the Court refused to enforce a $250,000 carve-out in the DIP financing order as

a cap on the official committee of unsecured creditors' professionals' fees.  *See In re Molycorp,*

*Inc.,* 562 B.R. 67, 77, 79–80, 83 (Bankr. D. Del. 2017).   While *Molycorp* left open the possibility

of a fee cap with the correct "specific language[,]" the Final DIP Order does not contain any such

language. *Id.* at 70, 83.

19.     Even if there was specific language in the Final DIP Order that capped the

Committee Professionals' fees, the Court's ruling at the Final DIP Hearing is controlling:

> [The Court] possess[es] [the] authority to approve and allocate fees
> and [is] not bound by the [D]ebtors' budget.  Whatever money is set
> aside for professional fees would likely be shared among all
> professionals, without regard to what is presently budgeted for the
> [D]ebtors and [C]ommittee respectively.

*Dec. 19, 2023, Hr'g. Tr. for In re AmeriFirst Financial, Inc.*, at 7:18–23 (Case No. 23-11240

(TMH)).  However, despite the Court's ruling that it would determine this matter without regard

to the language and budget in the Final DIP Order, RCP's Objection erroneously relies on the

language and budget set forth in the Final DIP Order as a basis for objecting to the Committee Professionals' fees.  *See* RCP's Obj. ¶ 2.

20.    Paragraph fifteen (15) of the Final DIP Order creates and defines the Professional Fee Reserve "for the purpose of reserving sufficient funds to pay the compensation and expense reimbursement . . . of estate professional persons."  This definition includes the Committee Professionals.

21.    Upon information provided by the Debtors, the Committee Professionals believe that the Professional Fee Reserve at one point held $8.1 million but has since decreased to $5.1 million due to payments made to the Debtors' professionals.

### Reservation of Rights

22.    The Committee reserves all rights to supplement this Reply and to respond to any additional objections at or prior to a hearing on the matter.

### Conclusion

23.    The Committee respectfully submits that the fees and expenses sought by the Committee Professionals' fee applications are reasonable and appropriate in light of the scope and complexity of these chapter 11 cases.  The Committee Professionals' fees are comparable to market rates charged by similar law firms and are comparable to those charged in both chapter 11 and non-chapter 11 matters.

WHEREFORE, the Committee respectfully requests that the Court overrule the Fee Objections and approve the fees and expenses sought by the Committee Professionals on an interim basis.

Dated: January 6, 2025
       Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Casey B. Sawyer*
Donna L. Culver (No. 2983)
Robert J. Dehney, Sr. (No. 3578)
Eric D. Schwartz (No. 3134)
Daniel B. Butz (No. 4227)
Casey B. Sawyer (No. 7260)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
Email:  dculver@morrisnichols.com
      rdehney@morrisnichols.com
      eschwartz@morrisnichols.com
      dbutz@morrisnichols.com
      csawyer@morrisnichols.com

**COUNSEL FOR OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

- and -

**GLENN AGRE BERGMAN & FUENTES LLP**
Andrew K. Glenn (admitted *pro hac vice*)
Kurt A. Mayr (admitted *pro hac vice*)
Malak S. Doss (admitted *pro hac vice*)
1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
Telephone: (212) 970-1600
Email:  aglenn@glennagre.com
      kmayr@glennagre.com
      mdoss@glennagre.com

**SPECIAL LITIGATION COUNSEL FOR OFFICIAL COMMITTEE OF UNSECURED CREDITORS**