**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERIFIRST FINANCIAL, INC., *et al.*,[1] | ) | Case No. 23-11240 (TMH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF ORDER (I) APPROVING GLOBAL SETTLEMENT AGREEMENT WITH THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND RCP, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby file this motion (the "Motion") for entry of an order, substantially in the form attached as **Exhibit A** (the "Proposed Order"), pursuant to section 105 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the *Settlement Agreement & Release* (the "Settlement Agreement") reached among the Debtors, RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. and RCP Customized Credit Fund (Fund IV-A) (collectively, "RCP"), and the Official Committee of Unsecured Creditors (the "Committee").  A copy of the Settlement Agreement[2] is attached to the Proposed Order as Exhibit 1.  In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Phoenix 1040 LLC (255) and AmeriFirst Financial, Inc. (4557).  The Debtors' service address is 575 W. Chandler Boulevard, Suite 225, Unit 236, Chandler, AZ 85225.

[2] Capitalized terms not otherwise defined in this paragraph shall have the meanings given them in the Settlement Agreement.

**PRELIMINARY STATEMENT**

1. With Judge Mary Walrath's considerable assistance as mediator, the parties successfully negotiated the terms of the Settlement Agreement, which resolves the entrenched and contentious disputes that have plagued these Chapter 11 Cases nearly from their inception and provides a roadmap for their prompt conclusion. The Settlement Agreement is in the best interests of the estates because it provides for a potentially meaningful distribution to general unsecured creditors via confirmation of a liquidating plan and avoids the substantial costs, delay and uncertainties of continued litigation.

2. Based on the foregoing, and as set forth more fully below, the Debtors submit that the Court should approve the Settlement Agreement.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order by this Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

2. Venue of the above-captioned case and this Motion are proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

3. On August 24, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are managing their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

4. No trustee or examiner has been appointed in the Debtors' chapter 11 cases. On September 15, 2023, the Office of the United States Trustee (the "U. S. Trustee") appointed the Committee.

5. Additional factual background regarding the events leading to the filing of these Chapter 11 Cases is set forth in the *Declaration of T. Scott Avila in Support of First Day Motions* [Docket No. 20].

6. The Court is well aware of the tortured history of these Chapter 11 Cases and the numerous disputes among the Debtors, the Committee, and RCP. While the Debtors long ago completed the sale of their operating assets[3], the Chapter 11 Cases have been at a standstill for well over a year because the parties could not reach agreement on a path forward.

7. On August 18, 2024, the Court granted the Committee standing to pursue certain causes of action against RCP (but not others). On January 8, 2025 the Committee filed its complaint against RCP (the "Committee Complaint").

8. On February 3, 2025, the Debtors, the Committee and RCP participated in a second mediation session before The Honorable Mary F. Walrath during which the parties settled the claims in the Committee Complaint. Since the conclusion of mediation, the parties continued negotiating in an effort to address issues relating to a consensual plan. The parties have addressed those issues and now seek this Court's approval of the Settlement Agreement.

---

[3] The Debtors' remaining assets consist primarily of litigation claims against third parties.

9. The principal terms of the Settlement Agreement are as follows[4]:

    a. The Debtors, with RCP's consent, shall, within 5 days of the Settlement Effective Date, allocate $2.23 million of the Debtors' cash on hand into a segregated fund (the "Allowed Claims Fund") to be used by the Plan Administrator (selected by the UCC) for the sole purposes of paying (i) allowed General Unsecured Claims pursuant to, and in accordance with a liquidating plan (the "Plan"), (ii) the Plan Administrator's expenses, (iii) U.S. Trustee fees imposed after the Plan Effective Date, and (iv) professional fees incurred in connection with the evaluation and pursuit of the UCC Avoidance Actions.

    b. RCP waives any and all right to a distribution from the Allowed Claims Fund.

    c. RCP consents to the use of its cash collateral for the purpose of paying all (a) allowed but unpaid administrative claims (other than Professional Fee Claims, which Claims are compromised and addressed in paragraph 4 of the Settlement Agreement), (b) allowed but unpaid priority claims, and (c) all costs and expenses associated with reconciling and/or objecting to any Administrative Claims filed in connection therewith, in the aggregate maximum amount of $370,000; and (d) all fees charged by the Office of the United States Trustee through the Plan Effective Date..

    d. Within five (5) days of the Settlement Effective Date, (a) fifty percent (50%) of the $5,255,784.22 held in the Professional Fee Reserve (as of August 1, 2025) shall be used to pay the Committee's Professional Fee Claims, and the Committee shall not be entitled to the payment of any Professional Fee Claim in excess of that amount (except as expressly provided for in the definition of "Professional Fee Claim"); (b) fifty percent (50%) of the $5,255,784.22 held in the Professional Fee Reserve (as of August 1, 2025) shall be used to pay the Debtors' Professional Fee Claims; (c) $230,000 of the Debtors' current cash-on-hand shall be transferred to the Professional Fee Reserve to be used to pay Debtor Professional Fee Claims; and (d) $100,000 of the Debtors' current cash-on-hand shall be transferred to the Professional Fee Reserve to pay the Debtors' Professional Fee Claims incurred in connection with preparing, filing, and seeking confirmation of the Plan. Other than the amounts paid pursuant to this paragraph, no Professional Fee Claim shall be paid any additional amounts in the Chapter 11 Cases.

    e. RCP shall be entitled to all remaining assets of the Debtors' estates, excluding the Allowed Claim Fund, the amounts for unpaid administrative and priority claims, and the Professional Fee Reserve on account of its secured claim and deficiency GUC claim.  Such estate assets include the RCP Avoidance Actions but exclude UCC Avoidance Actions.

---

[4] In the event of any inconsistency between the description of the Settlement Agreement in this Motion and the Settlement Agreement, the terms of the Settlement Agreement shall control.

   f. Effective upon the Settlement Effective Date, the Committee shall have the sole power and authority with respect to the UCC Avoidance Actions, and shall have standing to commence, prosecute and settle such actions in its own name and right.

   g. Effective upon the Settlement Effective Date, RCP shall have the sole power and authority with respect to the RCP Avoidance Actions, and shall have standing to commence, prosecute and settle such actions in its own name and right.

   h. After the payment of the amounts detailed above, RCP shall receive all remaining cash on hand and will provide no further funds to the Debtors' estates or estate professionals.

   i. The Settlement Agreement includes mutual releases among RCP, the Committee, the Debtors and the Debtors' officers and directors, in full and final settlement of all asserted and unasserted claims and causes of action, including the Committee Complaint and the outstanding objections to estate professionals' fee applications.

## RELIEF REQUESTED

10. By this Motion, the Debtors seek entry of the Proposed Order approving the Settlement Agreement and granting related relief.

## BASIS FOR RELIEF REQUESTED

11. The Settlement Agreement offers a path to the conclusion of these Chapter 11 Cases, one that will resolve costly and time consuming litigation, while also providing potentially meaningful distributions to general unsecured creditors. Absent the Settlement Agreement, these Chapter 11 Cases would remain mired in litigation to the detriment of all stakeholders.

12. Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Bankruptcy Rule 9019 provides that on motion by the trustee (or debtor in possession) and after notice and a hearing, the Court may approve a compromise or settlement. In deciding whether to approve a settlement pursuant to Bankruptcy Rule 9019, the Court should determine whether the compromise

is fair, reasonable, and in the interests of the estates. *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998). The decision whether to accept or reject a compromise lies within the sound discretion of the Court. *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

13. In making this determination, the United States Court of Appeals for the Third Circuit has provided four criteria that a bankruptcy court should consider: (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors. *Martin*, 91 F.3d at 393. Courts generally defer to a debtor's business judgment when there is a legitimate business justification for the trustee's decision. *Id*. at 395.

14. When applying the *Martin* factors to a particular motion, "the court is not supposed to have a 'mini-trial' on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *Aetna Casualty & Surety Co. v. Jasmine, Ltd (In re Jasmine, Ltd)*, 258 B.R. 119, 123 (D. N.J. 2000) (internal quotations omitted); *see also In re TSIC, Inc.*, 393 B.R. 71, 79 (Bankr. D. Del. 2008); *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). Although approval of a compromise is within the "sound discretion" of the bankruptcy court (*World Health*, 344 B.R. at 296), the court should not substitute its judgment for that of a trustee or debtor in possession. *In re Parkview Hosp.-Osteopathic Med. Ctr.*, 211 B.R. 603, 610 (Bankr. N.D. Ohio 1996). The ultimate inquiry is whether the compromise is "fair, reasonable, and in the interests of the estate." *TSIC*, 393 B.R. at 78. A court need not be convinced that a proposed settlement is the best possible settlement, but "must conclude that it is within the reasonable range of litigation possibilities." *World Health*, 344 B.R. at 296 (internal citations omitted).

**Probability of success, complexity of litigation of the disputed claims and difficulties in collection.**

15.  The Settlement Agreement resolves complex disputes between the Debtors, RCP, and the Committee that would otherwise create significant risk, expense, and delay. Any litigation over the Committee Complaint would be fact intensive, long, hard-fought, risky, and expensive given the nature of the claims at issue.

16.  The Settlement Agreement, however, resolves not only the Committee Complaint, but also the numerous objections to estate professionals' fee applications, plan related disputes, and other matters.

17.  The probability that either the Committee or RCP would ultimately succeed on any claims asserted in the Committee Complaint is uncertain because (among other reasons) the remaining "colorable" claims are complex and fact intensive, and concern issues such as AFI's solvency at various points in time and the adequacy of the consideration provided by RCP in connection with the May 2023 restructuring. Similarly, the reciprocal fee objections will also require the resolution of fact-intensive disputes. Given the significant costs of continued litigation in these Chapter 11 Cases, the Debtors reasonably agreed to enter into the Settlement Agreement with RCP and the Committee to fully and finally resolve these disputes.

18.  The Settlement Agreement clearly meets these *Martin* factors and should be approved.

**Best interests of creditors.**

19.  Approval of the Settlement Agreement is also in the best interests of the Debtors' creditors and estates. As mentioned, the Settlement Agreement resolves RCP's secured claim, the Committee Complaint, and the outstanding fee disputes among the parties, and provides for a recovery to holders of general unsecured claims via the anticipated liquidating plan.

20. It is in the best interests of the Debtors' creditors to proceed to confirm a plan because a plan will provide for materially higher recoveries to general unsecured creditors than they would receive if the Chapter 11 Cases were converted to chapter 7.

21. Accordingly, it is also in the best interests of creditors to approve the Settlement Agreement because there will be no plan without a settlement among the parties.

22. The Settlement Agreement is the product of good-faith discussions and arms' length bargaining among the Debtors, the Committee, and RCP. In addition to meditating with Judge Walrath, the parties engaged in extensive conference calls and written communications and exchanged numerous drafts of the Settlement Agreement reflective of hard-fought negotiations.

23. For all the foregoing reasons, the Debtors believe the Settlement Agreement is fair and reasonable and in the best interests of the Debtors' estates and creditors, and should be approved pursuant to Bankruptcy Rule 9019.

**NOTICE**

24. Notice of this Motion will be given to the following parties or, in lieu thereof, to their counsel, if known: (i) the U. S. Trustee; (ii) counsel to the Committee; (iii) counsel to RCP; and (iv) all parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice is necessary or required.

**CONCLUSION**

WHEREFORE, the Debtors request that this Court enter an order, in substantially the same form as the Proposed Order, approving the Settlement Agreement, and grant such other and further relief as may be just and proper.

Dated: August 5, 2025  
       Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/    Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email:    ljones@pszjlaw.com
          dbertenthal@pszjlaw.com
          tcairns@pszjlaw.com

*Counsel for the Debtors and Debtors-in-Possession*