**EXHIBIT A**
**PROPOSED ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERIFIRST FINANCIAL, INC., *et al.*,[5] | ) | Case No. 23-11240 (TMH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | | **Ref. Docket No. __** |

**ORDER APPROVING SETTLEMENT AGREEMENT**

The Court having considered the *Debtors' Motion for Entry of Order (I) Approving Settlement Agreement and (II) Granting Related Relief* (the "9019 Motion"); and the district court having jurisdiction under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the 9019 Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the 9019 Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the 9019 Motion and opportunity for a hearing on the 9019 Motion were appropriate and no other notice need be provided; and this Court having reviewed the 9019 Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the

---

[5] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Phoenix 1040 LLC (255) and AmeriFirst Financial, Inc. (4557). The Debtors' service address is 575 W. Chandler Boulevard, Suite 225, Unit 236, Chandler, AZ 85225.

legal and factual bases set forth in the 9019 Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Settlement Agreement attached hereto as **<u>Exhibit 1</u>** is approved.

2. The Debtors, RCP and the Committee are authorized to perform all their respective obligations under the Settlement Agreement.

3. The Bankruptcy Court shall maintain jurisdiction over any dispute arising under or in connection with the Settlement Agreement.

4. Notice of the 9019 Motion as provided therein shall be deemed good and sufficient notice of such motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

5. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

**Exhibit 1**

Settlement Agreement

**EXECUTION VERSION**

# SETTLEMENT AGREEMENT & RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is made by and among RCP (as defined below), the Debtors (as defined below), and the Committee (as defined below) (collectively, the "**Parties**," and each individually, a "**Party**").

## DEFINITIONS

"**Administrative Claim**" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 327, 328, 330, 365, 503(b), 507(a), 507(b), or 1114(e)(2) of the Bankruptcy Code, and 28 U.S.C. § 1930, but excluding Professional Fee Claims.

"**Adversary Proceeding**" means the proceeding styled *Official Committee of Unsecured Creditors of AmeriFirst Financial, Inc., et al. v. RCP Credit Opportunities Fund Loan SPV (Fund III), L.P.*, Adv. Proc. No. 25-50001 (TMH) (Bankr. D. Del.).

"**AFI**" means AmeriFirst Financial Inc., Phoenix 1040, LLC, and their various affiliates in their capacities as entities prior to the filing of the Chapter 11 Cases, and before becoming debtors and debtors in possession.

"**Allowed**" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a proof of claim filed by the applicable claims bar date or a request for payment of an Administrative Claim filed by the administrative claims bar date, as applicable (or for which Claim a proof of claim is not required under the Plan, the Bankruptcy Code, or a final order, including the Final DIP Order); (b) a Claim that is scheduled by the Debtors as not contingent, not unliquidated, and not disputed, and for which no proof of claim, as applicable, has been timely filed; or (c) a Claim allowed pursuant to the Plan or a final order, including the Final DIP Order; provided, that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been Allowed by a final order.

"**Avoidance Actions**" means any and all avoidance, recovery, subordination, or other Causes of Action that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code, or other similar or related state, federal, or foreign statutes, common law, or other applicable Law.

"**Bankruptcy Approval Order**" means an order granting a motion to approve this Agreement.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware.

"**Causes of Action**" means any claims, cross-claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, judgments, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, tortious interference, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any other Avoidance Action.

"**Chapter 11 Cases**" means cases commenced under chapter 11 of title 11 of the United States Code styled In re AmeriFirst Fin., Inc., et al., No. 23-11240 (TMH) (Bankr. D. Del.).

"**Claim**" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors or any of the Estates.

"**Committee**" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases pursuant to 1102(a) of the Bankruptcy Code.

"**Debtors**" means AmeriFirst Financial, Inc. and Phoenix 1040, LLC in their capacities as debtors and debtors in possession in the Chapter 11 Cases.

"**DIP Agent**" has the meaning ascribed to it in the Final DIP Order.

"**DIP Lender**" has the meaning ascribed to it in the Final DIP Order.

"**DIP Loan**" has the meaning ascribed to it in the Final DIP Order.

"**DIP Obligations**" has the meaning ascribed to it in the Final DIP Order.

"**Estate**" means as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case and all property (as defined in section 541 of the Bankruptcy Code) acquired by such Debtor after the Petition Date and before the effective date of any Plan.

"**Estate Causes of Action**" means any and all Causes of Action (a) owned or held or assertable or that may be brought by or on behalf of any Debtor or its Estate, (b) that constitute property of the Estates under section 541 of the Bankruptcy Code, (c) that are or may be commenced or pursued by a representative of the Debtors or the Estates, including pursuant to sections 323 or 362 of the Bankruptcy Code or chapter 5 of the Bankruptcy Code, (d) or

otherwise assertable by any Debtor or its Estate under any federal, state, or other applicable law, including for the avoidance of doubt Avoidance Actions.

"**Final DIP Order**" means the Final Order (I) Authorizing Debtors (A) To Obtain Postpetition Financing And (B) To Utilize Cash Collateral, (II) Granting Adequate Protection To Prepetition Lenders, (III) Modifying Automatic Stay, And (IV) Granting Related Relief [ECF No. 59 in the Chapter 11 Cases].

"**General Unsecured Claim**" means any Claim, including any Prepetition Credit Facility Deficiency Claim, against any of the Debtors that is not: (a) an Administrative Claim; (b) a Professional Fee Claim; (c) a Priority Tax Claim; (d) an Other Priority Claim; (e) a DIP Obligation; (f) a Secured Claim; (f) a Secured Tax Claim; (g) Prepetition Secured Obligation (other than a Prepetition Credit Facility Deficiency Claim); (h) an Other Secured Claim.

"**Granite Mountain Settlement**" means the settlement agreement between the Debtors, on the one hand, and Granite Mountain Lending, LLC and Jonny Jackson, which shall be finalized and executed contemporaneously with this Agreement.

"**Other Priority Claim**" means any Claim against any of the Debtors other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"**Other Secured Claims**" means any Secured Claim other than a DIP Obligation, a Secured Tax Claim, or a Prepetition Secured Obligation (other than a Prepetition Credit Facility Deficiency Claim).

"**Plan**" means a joint chapter 11 plan and all exhibits and schedules annexed thereto or referenced therein, in each case, as may be amended, supplemented, or otherwise modified from time to time in accordance with the Bankruptcy Code and the terms thereof.

"**Plan Effective Date**" means the date on which the Plan, once confirmed by the Bankruptcy Court, becomes effective.

"**Petition Date**" means August 24, 2023.

"**Prepetition Agent**" has the meaning ascribed to it in the Final DIP Order.

"**Prepetition Credit Facility**" has the meaning ascribed to it in the Final DIP Order.

"**Prepetition Credit Facility Deficiency Claim**" means any portion of the Prepetition Secured Obligations that is not satisfied in full from Estate property.

"**Prepetition Loans**" has the meaning ascribed to it in the Final DIP Order.

"**Prepetition Secured Parties**" has the meaning ascribed to it in the Final DIP Order.

"**Prepetition Secured Obligations**" has the meaning ascribed to it in the Final DIP Order.

"**Priority Tax Claim**" means any Claim of the kind entitled to priority of payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"**Professionals**" has the meaning ascribed to it in the Final DIP Order.

"**Professional Fee Claim**" means any Claim by a Professional for compensation for services rendered or reimbursement of expenses incurred by such Professional on or after the Petition Date through and including the date of confirmation of the Plan under sections 328, 330, 331, 503(b)(2), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (including transaction and success fees) to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court; provided, however, that professional fees incurred in connection with the evaluation and pursuit of the UCC Avoidance Actions shall not be paid from the Professional Fee Reserve but shall be paid from the Allowed Claims Fund.  To the extent the Bankruptcy Court denies or reduces by a final order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

"**Professional Fee Reserve**" has the meaning ascribed to it in the Final DIP Order.

"**RCP**" means RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. and RCP Customized Credit Fund (Fund IV-A), L.P., in any and all capacities, including as a lender or agent in connection with any loan or credit agreement entered into prior to the Chapter 11 Cases with AFI, including as a Prepetition Agent or other Prepetition Secured Party that extended Prepetition Loans under the Prepetition Credit Facility, or after the commencement of the Chapter 11 Cases with the Debtors, including as DIP Agent, DIP Lender, or DIP Secured Party that extended DIP Loans.

"**RCP Avoidance Actions**" means any Avoidance Actions against (a) any of Eric Bowlby, Shane Bowlby, Granite Mountain, LLC (and any entity directly or indirectly owned or controlled by any of them against which the Debtors could assert an Avoidance Action) or (b) RCP.

"**Secured Claim**" means a Claim:  (a) secured by a valid, perfected, and enforceable lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code to the extent of the amount subject to setoff.

"**Settlement Effective Date**" means the date on which the Bankruptcy Court (a) enters the Bankruptcy Approval Order and (b) enters an order approving the Granite Mountain Settlement.

"**Secured Tax Claim**" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

"**Term Sheet**" means the document styled "AMERIFIRST SETTLEMENT TERMS" signed by representatives of RCP, the Committee, and the Debtors on February 3, 2025.

EXECUTION VERSION

"**UCC Avoidance Actions**" means any Avoidance Actions that are not RCP Avoidance Actions.

### RECITALS

WHEREAS, following an investigation conducted by the Debtors' independent director, pursuant to the Final DIP Order, the Debtors, among other things, released any and all actual or potential Estate Causes of Action the Estates might assert against RCP concerning the Prepetition Secured Obligations and stipulated to the validity of those obligations;

WHEREAS, under the Final DIP Order, the Debtors' releases and stipulations would become binding on all third parties, including the Committee, absent the commencement of a Challenge (as defined therein);

WHEREAS a dispute arose between the Committee and RCP concerning the validity of the Prepetition Credit Facility and the Prepetition Loans, transfers made in connection with therewith, and other interactions between RCP and AFI in connection therewith (the "**Dispute**");

WHEREAS pursuant to the Standing Motion (as defined in the Final DIP Order) and a proposed complaint annexed thereto, the Committee brought a Challenge (as defined in the Final DIP Order) in connection with the Dispute, asserting various Causes of Action concerning the validity of the Prepetition Secured Obligations and other interactions between RCP and AFI;

WHEREAS the Bankruptcy Court by Memorandum Opinion dated August 14, 2024 [ECF No. 828 in Chapter 11 Cases] granted in part and denied in part the Standing Motion;

WHEREAS on January 8, 2025, the Committee filed its Complaint setting forth various Causes of Action against RCP (the "**Complaint**") and initiated the Adversary Proceeding;

WHEREAS the Committee, the Debtors, and RCP participated in mediation under the supervision of the Honorable Mary Walrath which resulted in an agreement among the Parties to resolve their differences and settle the Dispute, the Adversary Proceeding, and all objections to any Professional Fee Claim on the terms outlined in the Term Sheet and more specifically set forth below.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1.  Plan Administration

Effective upon the Settlement Effective Date, the Committee shall have the sole power and authority with respect to the UCC Avoidance Actions, and shall have standing to commence, prosecute and settle such actions in its own name and right. As soon as practicable after the Settlement Effective Date, the Debtors shall file and prosecute a proposed Plan. The Plan shall designate a plan administrator (the "**Plan Administrator**") who shall be designated by the Committee and who shall be responsible for administering the Estates after the Plan Effective Date, including, without limitation, reconciling filed General Unsecured Claims; objecting to and determining the allowance or disallowance of General Unsecured Claims filed against the

Estates; and making distributions to holders of General Unsecured Claims that are Allowed against the Estates and to assume prosecution of such UCC Avoidance Actions as may be commenced by the Committee following the Settlement Effective Date.

On the Settlement Effective Date, the Committee or any affiliate, successor or assign or other authorized designee(s) thereof, as applicable, shall be empowered, and have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, litigate to judgment or otherwise resolve (as applicable) the UCC Avoidance Actions and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court, and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such UCC Avoidance Actions. For the avoidance of doubt, the Committee or any affiliate, successor or assign or other authorized designee(s) thereof, as applicable, shall have standing to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, litigate to judgment or otherwise resolve (as applicable) the UCC Avoidance Actions.

The Debtors shall provide reasonable cooperation necessary to enable the Plan Administrator to carry out its responsibilities pursuant to this paragraph 1 hereof, including, without limitation, (i) providing the Plan Administrator or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in the Plan Administrator's sole discretion, with reasonable access to the Debtors' books, records, and other documents that are relevant to and necessary (including privileged documents, (ii) to the extent permitted by applicable law, providing the Plan Administrator or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in the Plan Administrator's sole discretion, with reasonable access to Debtors' employees and agents for fact finding, consultation, interviews, and as witnesses (including as needed to authenticate documents where appropriate) as relevant to and necessary, (iii) to the extent permitted by applicable law, providing the Plan Administrator or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in the Plan Administrator's sole discretion, with reasonable access to systems and Debtor personnel, (iv) taking commercially reasonable measures to retain documents related to the foregoing, and (v) to the extent permitted by applicable law, providing assistance to enable the Plan Administrator to carry out its responsibilities, as reasonably determined by the Plan Administrator or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in the Plan Administrator's sole discretion. Any attorney-client privilege, work-product protections, or other privilege or immunity held by any of the Debtors, including any predecessors, committee or sub-committees, or other designated entities or persons, related to the foregoing shall be extended to and shared with the Plan Administrator or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in the Plan Administrator's sole discretion. The transfer of any privileged books and records provided to the Plan Administrator shall not result in the destruction or waiver of any applicable privileges pertaining to such books and records. Further, shall not be liable for violating any confidentiality or privacy protections as a result of transferring the books and records to the Plan Administrator. For the avoidance of doubt, after the date the Plan is confirmed and prior to the Plan Effective Date, the Debtors shall reasonably cooperate with the foregoing.

Any Plan and any order confirming the Plan filed by the Debtors shall contain provisions substantially similar to and consistent with the provisions of this Section 1 of the Agreement.

2. Allowed Claims Fund

Within five (5) days of the Settlement Effective Date, $2,230,000 of the Debtors' current cash-on-hand shall be allocated to a segregated fund (the "**Allowed Claims Fund**") to be used by for the sole purpose of paying allowed General Unsecured Claims; provided that:

(a) RCP waives any and all right to a distribution from the Allowed Claims Fund;

(b) the Allowed Claims Fund shall not be used to pay any Professional Fee Claim (except as expressly provided for in the definition of "Professional Fee Claim");

(c) the expenses of the Committee's Plan Administrator shall be paid from the Allowed Claims Fund; and

(d) all fees charged by the Office of the United States Trustee after the Plan Effective Date shall be paid from the Allowed Claims Fund.

3. Payment of Allowed but Unpaid Administrative and Priority Claims and Other Expenses

In addition to funding the Allowed Claims Fund, RCP consents to the use of its cash collateral for the purpose of paying all (a) allowed but unpaid administrative claims (other than Professional Fee Claims, which Claims are compromised and addressed in paragraph 4 below), (b) allowed but unpaid priority claims, and (c) all costs and expenses associated with reconciling and/or objecting to any Administrative Claims filed in connection therewith, in the aggregate maximum amount of $370,000 (all such allowed but unpaid administrative and priority claims and costs and expenses, collectively, the "Unpaid Administrative/Priority Claims"); and (d) all fees charged by the Office of the United States Trustee through the Plan Effective Date.

4. Professional Fee Reserve

Within five (5) days of the Settlement Effective Date, (a) fifty percent (50%) of the $5,255,784.22 held in the Professional Fee Reserve (as of August 1, 2025) shall be used to pay the Committee's Professional Fee Claims, and the Committee shall not be entitled to the payment of any Professional Fee Claim in excess of that amount (except as expressly provided for in the definition of "Professional Fee Claim"); (b) fifty percent (50%) of the $5,255,784.22 held in the Professional Fee Reserve (as of August 1, 2025) shall be used to pay the Debtors' Professional Fee Claims; (c) $230,000 of the Debtors' current cash-on-hand shall be transferred to the Professional Fee Reserve to be used to pay Debtor Professional Fee Claims; and (d) $100,000 of the Debtors' current cash-on-hand shall be transferred to the Professional Fee Reserve to pay the Debtors' Professional Fee Claims incurred in connection with preparing, filing, and seeking confirmation of the Plan. Debtors' counsel shall be responsible for paying all costs and expenses associated with providing notice of an Administrative Claims Bar Date. Other

than the amounts paid pursuant to this paragraph, no Professional Fee Claim shall be paid any additional amounts in the Chapter 11 Cases.

5. Assignment Of Estate Assets To RCP

On the Plan Effective Date, the Debtors shall transfer and assign to RCP, or an authorized designee or designees of RCP, as determined in RCP's sole discretion, pursuant to section 1123 of the Bankruptcy Code and any applicable law, any and all of their right, title, and interest and free and clear from any lien, claim, or encumbrance, all of the Debtors' remaining cash-on-hand after payment of items set forth in paragraph 2 (Allowed Claims Fund), paragraph 3 (payment of allowed but Unpaid Administrative/Priority Claims, and any costs of administering and or objecting to such Claims), and paragraph 4 (Professional Fee Reserve).

On the Settlement Effective Date, RCP shall succeed to (i) all of the Estate's interest, including title and ownership, in 3921 E. Mallory Circle, Mesa, AZ 85215, which Parcel number 141-27-098 and the following legal description: VISTA ESTANCIA MCR 531-24 Lot 3; and (ii) all of the Estate's secured claim(s) against any and all property owned by Russell Shane Bowlby, including the secured claim represented by that certain March 15, 2022 Deed of Trust and Assignment of Rents with respect to 1010 West 2nd Street, Mesa, AZ 85201; (iii) any and all Estate Causes of Action, including all of the RCP Avoidance Actions, including for avoidance of doubt, any and all Avoidance Claims against Granite Mountain Lending LLC and Johnny Jackson in connection with the Debtors' prepetition transfer of notes to either Granite Mountain Lending LLC or Johnny Jackson, but excluding (x) the UCC Avoidance Actions and (y) any Claims or Causes of Action subject to RCP's general release set forth in paragraph 7 below (collectively, (a)-(b), the "**Assigned Assets**").

Effective upon the Settlement Effective Date, RCP shall have the sole power and authority with respect to the RCP Avoidance Actions, and shall have standing to commence, prosecute and settle such actions in its own name and right.

The following assets shall be excluded from the Assigned Assets:

(w) UCC Avoidance Actions;

(x) any assets RCP designates to be abandoned;

(y) the Allowed Claims Fund; and

(z) the Professional Fee Reserve (collectively, (w)-(z), the "**Excluded Assets**").

On the Settlement Effective Date, RCP or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in RCP's sole discretion, as applicable, shall be empowered, and have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, litigate to judgment or otherwise resolve (as applicable) all legal actions, and other proceedings and disputes related to any and all Estate Causes of Action that are, or that relate to any, Assigned Assets and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court, and no preclusion doctrine, including the doctrines

of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Estate Causes of Action that are, or that relate to any, Assigned Assets upon, after, or as a consequence of the confirmation or consummation of the Plan. For the avoidance of doubt, RCP or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in RCP's sole discretion, as applicable, shall have standing to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, litigate to judgment or otherwise resolve (as applicable) all legal actions, and other proceedings and disputes related to any and all Estate Causes of Action that are, or that relate to any, Assigned Assets.

The Debtors shall provide reasonable cooperation necessary to maximize the value of Estate Causes of Action that are, or that relate to any, Assigned Assets, including, without limitation, (i) providing RCP or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in RCP's sole discretion, with reasonable access to the Debtors' books, records, and other documents that are relevant to and necessary for the advancement of Estate Causes of Action that are, or that relate to any, Assigned Assets (including privileged documents that are relevant to and necessary for the advancement of Estate Causes of Action that are, or that relate to any, Assigned Assets), (ii) to the extent permitted by applicable law, providing RCP or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in RCP's sole discretion, with reasonable access to Debtors' employees and agents for fact finding, consultation, interviews, and as witnesses (including as needed to authenticate documents where appropriate) as relevant to and necessary for the advancement of Estate Causes of Action that are, or that relate to any, Assigned Assets, (iii) to the extent permitted by applicable law, providing RCP or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in RCP's sole discretion, with reasonable access to systems and Debtor personnel as relevant for administration of the Assigned Assets, (iv) taking commercially reasonable measures to retain documents related to the advancement of Estate Causes of Action that are, or that relate to ay, Assigned Assets, and (v) to the extent able by applicable law, providing assistance to maximize the value of the Estate Causes of Action that are, or that relate to any, Assigned Assets, as reasonably determined by RCP or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in RCP's sole discretion. Any attorney-client privilege, work-product protections, or other privilege or immunity held by any of the Debtors, including any predecessors, committee or sub-committees, or other designated entities or persons, related to the Estate Causes of Action that are, or that relate to any, Assigned Assets shall be extended to and shared with RCP or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in RCP's sole discretion. The transfer of any privileged books and records provided to the RCP or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in RCP's sole discretion, shall not result in the destruction or waiver of any applicable privileges pertaining to such books and records. Further, none of the Debtors or the Committee's Plan Administrator shall be liable for violating any confidentiality or privacy protections as a result of transferring the books and records to the RCP or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in RCP's sole discretion. For the avoidance of doubt, after the date the Plan is confirmed and prior to the Plan Effective Date, the Debtors shall reasonably cooperate with the foregoing.

For the avoidance of doubt, RCP shall have, in RCP's sole discretion, the power to assign and/or transfer the Estate Causes of Action that are Assigned Assets without the consent or

approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court or other tribunal of competent jurisdiction.

Any Plan and any order confirming the Plan filed by the Debtors shall contain provisions substantially similar to and consistent with the provisions of this Section 4 of the Agreement.

6.   No Further Funding

RCP shall not provide any further funding to the Estates for any purpose, either from its own funds, the Assigned Assets, or any other source whatsoever, including without limitation to fund the payment of any Allowed Claim or any Professional Fee Claim.

7.   Release By Committee

Upon funding the Allowed Claims Fund and payment of the Committee's Professional Fee Claim in accordance with paragraphs 2 and 3 above, and except for the obligations set forth in this Agreement, the Committee and each of its members acting in such capacity, for the consideration described in this Agreement, the sufficiency of which is hereby acknowledged, hereby forever discharge and release, for themselves and their respective successors and assigns (the "**Committee Releasors**"), each of (a) the Debtors and each of the Debtors' (and their affiliates') respective employees, directors, officers, managers, trustees, partners, investors, members, professionals, representatives, advisors, financial advisors, accountants, consultants, agents, insurers, successors, assigns, heirs, legatees, affiliates, entities managed, advised, or sub-advised by any Debtor or their affiliates, parents, and ultimate parents and attorneys (solely in their respective capacities as such), but expressly excluding the Debtors' former President, Eric Bowlby and any of his relatives and affiliates (other than the Debtors) (the "**Debtor Releasees**") and (b) RCP and each of RCP's (and its affiliates') respective employees, directors, officers, managers, trustees, partners, investors, members, professionals, representatives, advisors, financial advisors, accountants, consultants, agents, insurers, successors, assigns, heirs, legatees, affiliates, entities managed, advised, or sub-advised by RCP or its affiliates, parents, and ultimate parents and attorneys (solely in their respective capacities as such) (the "**RCP Releasees**") of and from any and all claims, Causes of Action, other actions, debts, accounts, liens, controversies, covenants, promises, judgments, lawsuits, rights, charges, obligations, liabilities, and demands whatsoever, and in whatever capacity, whether sounding in contract or tort or by statute, in law, or in equity, contingent or liquidated that any of the Committee Releasors have, had, or may have against any of the Debtor Releasees or any of the RCP Releasees, in whatever capacity, whether now known or unknown, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of time through the Settlement Effective Date related to the Chapter 11 Cases or to AFI, including, without limitation:  (i) any and all Claims and Causes of Action that the Committee Releasors asserted or could have asserted against any of the Debtor Releasees or any of the RCP Releasees in the Adversary Proceeding; and (ii) any and all objections to any fee application filed by any Professional engaged by the Debtors. Notwithstanding the foregoing, nothing herein shall be deemed to constitute a waiver or release of any obligations arising under this Agreement or by any Committee member on account of any timely filed proof of claim filed or scheduled in the Chapter 11 Cases which, upon becoming an Allowed Claim, shall be paid pro rata with all other Allowed Claims from the Allowed Claims Fund.

8. Release By RCP

Upon the occurrence of the Settlement Effective Date, and except for the obligations set forth in this Agreement, RCP, for the consideration described in this Agreement, the sufficiency of which is hereby acknowledged, hereby forever discharges and releases, for itself and its respective successors and assigns (the "**RCP Releasors**"), each of (a) the Debtor Releasees, again for the avoidance of doubt expressly excluding the Debtors' former President Eric Bowlby and his relatives and affiliates (other than the Debtors) and (b) the Committee and each of the Committee's (and its affiliates') respective members, professionals, representatives, advisors, financial advisors, accountants, consultants, agents, insurers, and successors (solely in their respective capacities as such) (the "**Committee Releasees**") of and from any and all claims, Causes of Action, other actions, debts, accounts, liens, controversies, covenants, promises, judgments, lawsuits, rights, charges, obligations, liabilities, and demands whatsoever, and in whatever capacity, whether sounding in contract or tort or by statute, in law, or in equity, contingent or liquidated, that any of the RCP Releasors have, had, or may have against any of the Debtor Releasees or any of the RCP Releasees, in whatever capacity, whether now known or unknown, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of time through the Settlement Effective Date related to the Chapter 11 Cases or to AFI, including, without limitation: (i) any and all Claims that the RCP Releasors could have asserted against any of the Debtor Releasees or any of the RCP Releasees in the Adversary Proceeding; and (ii) any and all objections to any fee application filed by any Professional engaged by the Debtors or the Committee. Notwithstanding the foregoing, nothing herein shall be deemed to constitute a waiver or release of any obligations arising under this Agreement.

9. Release By Debtors

Upon the occurrence of the Settlement Effective Date, and except for the obligations set forth in this Agreement, the Debtors, for the consideration described in this Agreement, the sufficiency of which is hereby acknowledged, hereby forever discharges and releases, for themselves and their respective successors and assigns (the "**Debtor Releasors**"), each of (a) the Committee Releasees and (b) the RCP Releasees, again for the avoidance of doubt expressly excluding the Debtors' former President Eric Bowlby and his relatives, of and from any and all claims, Causes of Action, other actions, debts, accounts, liens, controversies, covenants, promises, judgments, lawsuits, rights, charges, obligations, liabilities, and demands whatsoever, and in whatever capacity, whether sounding in contract or tort or by statute, in law, or in equity, contingent or liquidated, that any of the Debtor Releasors have, had, or may have against any of the Committee Releasees or any of the RCP Releasees, in whatever capacity, whether now known or unknown, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of time through the Settlement Effective Date related to the Chapter 11 Cases or AFI, including, without limitation: (i) any and all Claims that the Debtor Releasors asserted or could have asserted against any of the Committee Releasees or any of the RCP Releasees in the Adversary Proceeding; and (ii) any and all objections to any fee application filed by any Professional engaged by the Committee. Notwithstanding the foregoing, nothing herein shall be deemed to constitute a waiver or release of any obligations arising under this Agreement.

**EXECUTION VERSION**

    10.    <u>Final DIP Order Releases</u>

For the avoidance of doubt, upon funding the Allowed Claims Fund, the Unpaid Administrative/Priority Claims, and payment of the Committee's Professional Fee Claim in accordance with paragraphs 2 through 4 above, and notwithstanding the granting of releases in this Agreement, the Debtors' stipulations, admissions, agreements and releases contained in the Final DIP Order shall be binding upon any and all parties in interest, including, without limitation, the Committee, any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtors, in all circumstances and for all purposes.

    11.    <u>Dismissal Of Adversary Proceeding</u>

Within five (5) days of the Settlement Effective Date, the Committee shall file a notice of dismissal with prejudice of the Adversary Proceeding and the Causes of Action asserted in the Complaint.

    12.    <u>Execution</u>

This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel (the "**Execution Date**"). All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

    13.    <u>Bankruptcy Court Approval</u>

This Agreement is subject to review and approval by the Bankruptcy Court. To that end, the Parties shall file a joint motion seeking approval of the Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure within two days of the Execution Date. In the event the Bankruptcy Court does not approve any material provision of this Agreement, then the Agreement shall be of no force and effect, and all Parties' rights, claims, and defenses are reserved.

    14.    <u>Term Sheet</u>

In the event of any inconsistency between this Agreement and the Term Sheet, the Agreement shall govern.

    15.    <u>Binding Nature Of Agreement</u>

Upon the occurrence of the Settlement Effective Date, the provisions of this Agreement shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Debtors, the Committee, and their respective successors and assigns (including any Chapter 11 trustee hereafter appointed for the estate of any Debtor, any Chapter 7 trustee appointed or elected in a Successor Case (as defined in the Final DIP Order),

any examiner appointed pursuant to Section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any Debtors or with respect to the property of the Estate of any Debtor).

16. <u>Agreement and Release Knowing and Voluntary</u>

The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable amount of time to consider this Agreement. The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

17. <u>Representations and Warranties</u>

Each Party severally represents and warrants as to itself only that: (a) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (b) such Party has full power and authority to execute and deliver this Agreement; and (c) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms. Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

18. <u>Cooperation</u>

The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including, without limitation, the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith as well as the preparation and prosecution of a motion seeking approval of the Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure on or before August 21, 2025, and, further, agree to reasonably communicate and cooperate with one another in this regard.

19. <u>Governing Law</u>

This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

20. <u>Jurisdiction/Venue</u>

The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any action or proceeding arising out of or related to this Agreement or the subject matter hereof.

21. <u>No Admissions</u>

All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any claim, including but not limited to, the claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any proceeding, other than a proceeding to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

22. <u>Other Provisions</u>

This Agreement contains the entire agreement and understanding of the parties and supersedes any and all prior or contemporaneous agreements, arrangements, and understandings relating to the subject matter of this Agreement. No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

23. <u>Notices</u>

All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Committee:

**MORRIS NICHOLS ARSHT & TUNNELL LLP**
Robert J. Dehney, Sr.
Donna L. Culver
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302 658 9200
rdehney@mnat.com
dculver@mnat.com

**EXECUTION VERSION**

To RCP:

**QUINN EMANUEL URQUHART & SULLIVAN LLP**
James C. Tecce
Manisha M. Sheth
Quinn Emanuel Urquhart & Sullivan LLP
295 Fifth Avenue, New York NY  10016
212 849 7199
212 849 7441
jamestecce@quinnemanuel.com
manishasheth@quinnemanuel.com

Bennett Murphy
Razmig Izakelian
865 S. Figueroa St., 10th Floor
Los Angeles, CA  90017
213 443 3000
bennettmurphy@quinnemanuel.com
razmigizakelian@quinnemanuel.com

To the Debtors:

**PACHULSKI, STANG, ZIEHL & JONES LLP**
Laura Davis Jones
919 North Market Street, 17th Floor
Wilmington, DE  19801
(302) 778 6401
ljones@pszjlaw.com

John A. Morris
780 Third Avenue, 36th Floor
New York, NY  10017
212 561 7700
jmorris@pszjlaw.com

[*Signature page follows*]

**EXECUTION VERSION**

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement under seal effective as of August 1, 2025.

**RCP CREDIT OPPORTUNITIES FUND LOAN SPV (FUND III), L.P.**

By: Reverence Capital Partners Credit (Fund III) GP, L.P., its general partner

By: Reverence Capital Partners Credit (Fund III) GP, LLC, its general partner

By: */s/ Milton Berlinski*
Name: Milton Berlinski
Title:   Managing Partner

**RCP CUSTOMIZED CREDIT FUND (FUND IV-A), L.P.**

By: RCP Customized Credit Fund (Fund IV) GP, L.P., its general partner

By: RCP Customized Credit Fund (Fund IV) GP, LLC, its general partner

By: */s/ Milton Berlinski*
Name: Milton Berlinski
Title:   Managing Partner

**DEBTORS**
By     */s/ T. Scott Avila*
         Name:     T. Scott Avila
         Title:       Chief Restructuring Officer

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By     */s/ Todd Cowen*
         Name: Todd Cowen
         Title:  Chair

[*Signature page to Settlement Agreement & Release*]