**<u>Exhibit A</u>**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|                                          |   |                         |
|------------------------------------------|---|-------------------------|
| In re:                                   | ) | Chapter 11              |
|                                          | ) |                         |
| AMERIFIRST FINANCIAL, INC., *et al.*,[1] | ) | Case No. 23-11240 (TMH) |
|                                          | ) | (Jointly Administered)  |
| Debtors.                                 | ) |                         |
|                                          | ) | **Ref. Docket No. ____** |

## ORDER APPROVING SETTLEMENT BY AND BETWEEN
## THE DEBTORS, GRANITE MOUNTAIN LENDING, LLC, AND JONNY JACKSON

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") approving the Settlement between the Parties, as more fully set forth in the Motion; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and the Court having reviewed the Motion and determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers include:  Phoenix 1040 LLC (2550) and AmeriFirst Financial, Inc. (4557).  The Debtors' service address is 575 W. Chandler Boulevard, Suite 225, Unit 236, Chandler, AZ 85225.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      Pursuant to Bankruptcy Rule 9019 and sections 363 and 105(a) of the Bankruptcy Code, the Settlement Agreement, in the form attached hereto as **Exhibit 1**, is approved in its entirety and is incorporated herein by reference.

3.      The Parties are authorized to take any and all actions necessary to effectuate the terms of this Order and the Settlement Agreement.

4.      The stay of this Order provided by any Bankruptcy Rule (including, without limitation, Bankruptcy Rule 6004) is hereby waived, and this Order shall be effective and enforceable immediately upon its entry.

5.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order and the Settlement Agreement.

## Exhibit 1

**Settlement Agreement**

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (this "Agreement"), dated as of August 4, 2025, is made and entered into by and between AmeriFirst Financial, Inc. and Phoenix 1040 LLC (together, the "Debtors") on the one hand and Granite Mountain Lending, LLC ("Granite") and Jonny Jackson ("Jackson" and together with Granite, the "Granite Parties") on the other (each of the Debtors and the Granite Parties, a "Party" and collectively, the "Parties").

## RECITALS:

**WHEREAS**, on August 24, 2023, the Debtors commenced their chapter 11 bankruptcy cases (the "Bankruptcy Cases") by filing voluntary chapter 11 petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

**WHEREAS**, on December 11, 2023, Granite filed Proof of Claim No. 128 as a secured claim in the amount of $1,500,000.00 (the "Granite Disputed Secured Claim") on the basis of the Note and Deed of Trust (each as defined below);

**WHEREAS**, on August 29, 2024, Granite filed *Granite Mountain Lending, LLC's Motion for Relief from the Automatic Stay* [Docket No. 836] (the "Stay Relief Motion"), whereby Granite sought relief from the automatic stay to exercise its non-bankruptcy rights and remedies with respect to the Bowlby Residence (as defined below);

**WHEREAS**, on September 19, 2024, the Debtors filed the *Debtors' Objection to Granite Mountain Lending, LLC's Motion for Relief from the Automatic Stay* [Docket No. 860] (the "Stay Relief Objection");

**WHEREAS**, on September 19, 2024, the Debtors also filed the *Debtors' Objection to Proof of Claim No. 128 Filed by Granite Mountain Lending, LLC* [Docket No. 861] (the "Claim Objection");

**WHEREAS**, the Parties desire to settle and resolve the Granite Disputed Secured Claim and the Stay Relief Motion on the terms and conditions of this Agreement.

**NOW THEREFORE**, in consideration of the mutual promises and agreements contained herein, the Parties hereby contract, covenant, and agree, subject to approval by the Bankruptcy Court of this Agreement, as follows:

## ARTICLE I
## DEFINITIONS

Section 1.1    Recitals. The Recitals set forth above are incorporated by reference and are explicitly made a part of this Agreement.

Section 1.2    Definitions. To the extent a term is not defined elsewhere in this Agreement, the following definitions shall apply to and constitute part of this Agreement:

"9019 Motion" means a motion to approve the compromise and settlement set forth in this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and section 363 of the Bankruptcy Code.

"Action" means any action, suit, litigation, arbitration, or proceeding (including any civil, criminal, administrative, investigative, appellate, or eminent domain proceeding), audit, examination, or investigation commenced, brought, conducted, or heard by or before any Governmental Authority, arbitrator or arbitration panel.

"AmeriFirst" shall mean Debtor AmeriFirst Financial, Inc.

"Bankruptcy Approval Order" shall mean the order of the Bankruptcy Court approving the compromise and settlement set forth in this Agreement.

"Bowlby" shall mean Eric Bowlby, the former Chief Executive Officer of AmeriFirst.

"Bowlby Residence" shall mean the real property known as 3921 East Mallory Circle, Mesa, Arizona 85215.

"Deed of Trust" shall mean that certain *Deed of Trust and Assignment of Rents*, which was purportedly entered into by AmeriFirst and Granite on August 17, 2023 with respect to the Bowlby Residence.

"Effective Date" shall mean the first business day occurring on or after the Bankruptcy Approval Order is entered on the docket of the Bankruptcy Cases.

"Governmental Authority" means any government or political subdivision, whether federal, state, local, or foreign, or any agency, department, or commission of any such government or political subdivision, or any federal, state, local, or foreign court.

"Granite" shall mean Granite Mountain Lending, LLC.

"Note" shall mean that certain *Promissory Note* for $1,500,000, which was entered into by AmeriFirst and Granite on August 17, 2023.

Section 1.3    Interpretation.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the parties hereto, and no presumption or burden of proof will arise favoring or disfavoring any party hereto because of the authorship of any provision of this Agreement.

## ARTICLE II
## SETTLEMENT TERMS

Section 2.1    Settlement Terms.

(a)    Upon entry of the Bankruptcy Approval Order, the Granite Disputed Secured Claim will be deemed amended to be a general unsecured, non-priority claim in the amount of $450,000.00 (the "Granite Amended Claim").

(b)    Within five (5) business days of the entry of the Bankruptcy Approval Order, the Debtors will (a) withdraw the Claim Objection with prejudice, and (b) allow the Granite Amended Claim.

(c)    Within five (5) business days of the entry of the Bankruptcy Approval Order, Granite will withdraw the Stay Relief Motion with prejudice.

(d)    Within ten (10) business days of the entry of the Bankruptcy Approval Order, Granite will take all steps necessary to complete the withdrawal and release of all liens and encumbrances against the Bowlby Residence, including but not limited to the Note and the Deed of Trust.

(e)    Granite and Jackson agree that the Debtors may serve subpoenas seeking documents and/or testimony, directed to Granite or Jackson, as applicable, by email to their counsel of record in the Bankruptcy Cases or, if the Granite Parties no longer have counsel, then to Jackson at jonnygranitemountain@gmail.com.

(f)    To the extent that they possess written communications between either of them and the Debtors and Bowlby, Granite and Jackson represent that they shall retain and secure the written communications, including but not limited to all text messages, until an order is entered dismissing the Bankruptcy Cases, or an order is entered confirming a plan of reorganization, whichever is sooner.

Section 2.2    Court Approval of Settlement Terms.  The Debtors shall file and serve a 9019 Motion within five (5) business days of the execution of this Agreement, to be heard on regular notice.  If no objection or response by a third party to the 9019 Motion is filed, the Debtors shall file a certificate of no objection with the Bankruptcy Court as soon as practical pursuant to Del. Bankr. L.R. 9013-1(j).

Section 2.3    Conditions Precedent to Effective Date; Termination.  This Agreement shall not become effective until the Effective Date has occurred.  Notwithstanding anything to the contrary, if the Effective Date has not occurred on or before August 22, 2025, this Agreement shall become null and void with no further notice unless the Parties entered into a written agreement extending the term of this Agreement.

**ARTICLE III**
**RELEASES**

Section 3.1    General Release of the Debtors.

(a)    Upon entry of the Bankruptcy Approval Order, Granite and Jackson, for the consideration described in this Agreement, the sufficiency of which they hereby acknowledge, hereby forever discharge and release, for themselves and their respective heirs, executors, successors, and assigns (the "Granite Releasors"), each of the Debtors and each of the Debtors'

respective employees, directors, officers, managers, trustees, partners, investors, members, professionals, representatives, advisors, financial advisors, accountants, consultants, agents, insurers, successors, assigns, heirs, legatees, affiliates, entities managed, advised, or sub-advised by any Debtor or their affiliates, parents, and ultimate parents and attorneys (, except that (1) Granite and Jackson do not release Bowlby personally from liability to Granite and Jackson under this Agreement, (2) this Agreement has no effect or impact on Bowlby's personal liability to Granite and Jackson, (the foregoing, collectively with the Debtors, the "Debtor Releasees")[1] of and from any and all claims, causes of action, other actions, debts, accounts, liens, controversies, covenants, promises, judgments, lawsuits, rights, charges, obligations, liabilities, and demands whatsoever, and in whatever capacity, whether sounding in contract or tort or by statute, in law, or in equity, contingent or liquidated (all of the foregoing, collectively, "Claims"), that any of the Granite Releasors have, had, or may have against any of the Debtor Releasees, in whatever capacity, whether now known or unknown, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of time through the Effective Date, including, without limitation: (i) any and all Claims that the Granite Releasors asserted or could have asserted against any of the Debtor Releasees in the Bankruptcy Cases; and (ii) any and all Claims related in any way to the Bankruptcy Cases, the Debtors, the Note, the Deed of Trust, the Bowlby Residence, or any claims, allegations, facts, or circumstances in or associated with any of the foregoing; provided, however, that the discharges and releases contained in this Agreement shall not affect, discharge, or release any rights or obligations that the Parties have under this Agreement, including but not limited to the allowance of the Granite Amended Claim. Notwithstanding anything to the contrary in this Agreement, Granite and Jackson (a) release any claims relating to, directly or indirectly, the Bowlby residence, any proceeds from any sale of such residence, and any other claims relating to the Bowlby residence, and (b) agree that they will not interfere or disrupt, directly or indirectly, any proceedings or claims pursued by any other party or parties with respect to the Bowlby residence. However, nothing herein bars Granite or Jackson from pursuing Bowlby and/or his assets, other than his interest in the Bowlby residence.

        (b)      The Granite Releasors expressly acknowledge and agree that the foregoing release in Section 3.1(a) of the Debtor Releasees includes, without limitation, all claims or damages that may exist as of the Effective Date of this Agreement, but that the Granite Releasors do not know or suspect to exist in their favor, whether through ignorance, oversight, error, negligence, incomplete discovery, or otherwise, which might, if known, have materially affected their decision to enter into this Agreement. Granite and Jackson, on behalf of themselves and the other Granite Releasors, each expressly waive, with respect to the release set forth in Section 3.1(a), any rights, benefits, and protections afforded by California Civil Code Section 1542, which provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR THE RELEASED PARTY."

---

[1] This term "Debtor Releasors" expressly excludes Bowlby.

and the rights, benefits, and protections of any statute, common law, or other doctrines of similar effect to California Civil Code Section 1542 under the law of any state or jurisdiction.

       Section 3.2    <u>Limited Release of Granite and Jackson</u>.

          (a)    Upon entry of the Bankruptcy Approval Order, the Debtors, for the consideration described in this Agreement, the sufficiency of which they hereby acknowledge, hereby forever discharge and release, for themselves and their heirs, executors, successors, and assigns (the "<u>Debtor Releasors</u>"), Granite and Jackson and each of their respective employees, directors, officers, managers, trustees, partners, investors, members, professionals, representatives, advisors, financial advisors, accountants, consultants, agents, insurers, successors, assigns, heirs, legatees, affiliates, entities managed, advised, or sub-advised by Granite or Jackson or their affiliates, parents, and ultimate parents and attorneys (the foregoing, collectively with Granite and Jackson, "<u>Granite Releasees</u>") of and from any and all Claims that the Debtors have, had, may have, or may claim to have against the Granite Releasees arising from the allegations relating to the Granite Disputed Secured Claim; <u>provided</u>, however, that the discharges and releases contained in this Agreement shall not affect, discharge, or release any rights or obligations that the Parties have under this Agreement.

          (b)    The Debtor Releasors expressly acknowledge and agree that the foregoing limited release in <u>Section 3.2(a)</u> of the Granite Releasees includes, without limitation, all applicable claims or damages that may exist as of the Effective Date of this Agreement, but that the Debtor Releasors do not know or suspect to exist in their favor, whether through ignorance, oversight, error, negligence, incomplete discovery, or otherwise, which might, if known, have materially affected their decision to enter into this Agreement. The Debtors, on behalf of themselves and the other Debtor Releasors, each expressly waive, with respect to the release set forth in <u>Section 3.2(a)</u> above, any rights, benefits, and protections afforded by California Civil Code Section 1542, which provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR THE RELEASED PARTY."

and the rights, benefits, and protections of any statute, common law, or other doctrines of similar effect to California Civil Code Section 1542 under the law of any state or jurisdiction.

       Section 3.3    <u>No Further Documentation</u>. The discharges and releases contained in this Agreement are self-effectuating and no further documentation is necessary for them to become effective.

# ARTICLE IV
## MISCELLANEOUS

**Section 4.1**   <u>No Admission of Liability</u>. The execution of this Agreement is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding, or dispute of any liability, wrongdoing, or obligation whatsoever with respect to any of the matters addressed in this Agreement.

**Section 4.2**   <u>Good Faith Negotiations</u>. The Parties further recognize and acknowledge that each of the Parties hereto is represented by sophisticated counsel and that such Party received independent legal advice with respect to the advisability of entering into this Agreement. Each of the Parties acknowledges that: (a) the negotiations leading up to this Agreement were conducted at arm's length; (b) this Agreement is made and executed of each Party's own free will; (c) each Party knows all of the relevant facts and his, her, or its rights in connection therewith; and (d) he, she, or it has not been improperly influenced or induced to make this settlement as a result of any act or action on the part of any party or employee, agent, attorney, or representative of any party to this Agreement. The Parties further acknowledge that they entered into this Agreement because of their desire to avoid the further expense and inconvenience of litigation and other disputes, and to compromise permanently and settle their pending litigation and other disputes.

**Section 4.3**   <u>No Waiver</u>. No waiver of rights under this Agreement will be effective unless in writing and signed by the Party to be charged. Failure to enforce any right with respect to a specific act or failure to act shall not constitute a waiver of that or any other right hereunder. Waiver of a breach of this Agreement shall not constitute a waiver of any other prior or subsequent breach.

**Section 4.4**   <u>Third Parties</u>. No third parties are intended beneficiaries of this Agreement or entitled to enforce its provisions. This Agreement shall be binding upon the Parties and their respective heirs, successors, and assigns.

**Section 4.5**   <u>No Prior Transfers</u>. The Parties warrant that they have not made any assignment or other transfer of any of the actions and causes of action, damages, promises, expenses, claims, or demands that are released and discharged forever pursuant to the Agreement.

**Section 4.6**   <u>Due Authorization</u>. Subject to obtaining Bankruptcy Court approval of this Agreement, each Party to the Agreement represents and warrants that his, her, or its execution, delivery, and performance of the Agreement has been duly and validly authorized by all necessary corporate action.

**Section 4.7**   <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>.

(a)      This Agreement shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of Delaware, without giving effect to the conflict of laws principles thereof. Each Party hereto agrees that, to the extent permissible under applicable law, he, she, or it shall bring any action or proceeding in respect of any claim or dispute arising out of or related to this Agreement in the Bankruptcy Court (the "<u>Chosen Court</u>"), and solely in connection with claims or any dispute arising under this Agreement: (i) irrevocably submits to the exclusive jurisdiction and authority of the Chosen Court

(to the extent the Chosen Court can exercise jurisdiction over such claims); (ii) waives any objection to laying venue in any such action or proceeding in the Chosen Court; and (iii) waives any objection that the Chosen Court is an inconvenient forum, does not have jurisdiction over any Party hereto, or lacks the constitutional authority to enter final orders in connection with such action or proceeding.

(b)    In the event of any breach or attempted or threatened breach of the Agreement, each Party agrees that the non-breaching Party shall be irreparably harmed and damaged, and accordingly, in such an event, the non-breaching Party shall be entitled to apply for injunctive relief to enforce the provisions of the Agreement.

(c)    Each Party hereby waives, to the fullest extent permitted by applicable law, any right such Party may have to a trial by jury in any legal proceeding arising out of, or relating to, this Agreement or the transactions contemplated hereby (whether based on contract, tort, or any other theory). Each Party: (i) certifies that no representative, agent, or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver; and (ii) acknowledges that such Party and the other Parties have been induced to enter into this Agreement by, among other things, the releases in Article 3.

Section 4.8    Entire Agreement.  The terms and conditions set forth in this Agreement constitute the complete statement of the agreement between the Parties relating to this Agreement, superseding all previous negotiations and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement.  The Parties mutually intend that this Agreement constitutes the complete statement of the terms as between the Parties hereto, and that no extrinsic evidence whatsoever of purported additional terms not expressly set forth in this Agreement may be introduced in any judicial proceeding between the Parties.  No representations, warranties, promises, statements, or inducements have been made by any Party or relied on by any Party concerning this Agreement other than those contained and memorialized in this Agreement.  Each Party hereto expressly represents that he, she, or it was not induced to enter into this Agreement due to any representation, warranty, promise, or statement by or on behalf of any other Party except those expressly set forth herein, and each Party hereto irrevocably waives any claim to the contrary. The terms of this Agreement are contractual and not a mere recital.  This Agreement may not be altered, amended, modified, superseded, canceled, or terminated except by express written agreement duly executed by the Parties.

Section 4.9    Further Assurances.  The Parties hereto shall execute such other documents and take such other action as may be reasonably necessary to further the purposes of this Agreement.

Section 4.10    Counterparts.  This Agreement may be executed in counterparts, each of which shall constitute an original, and all of which together shall constitute one and the same document.  Facsimile and scanned signatures are effective hereunder.

Section 4.11    Captions.  The titles or captions of the paragraphs or sections contained in this Agreement are inserted only as a matter of convenience and for reference and in no way define, extend, or describe the scope of this Agreement or the intent or meaning of any provision hereof.

Section 4.12    Notices.  All notices to be sent in connection with this Agreement must be made in writing and must be made in person or sent by certified or registered mail, or national overnight courier, with a copy sent by email, to:

If to the Debtors, to:

AmeriFirst Financial, Inc.
575 W. Chandler Boulevard
Suite 225, Unit 236
Chandler, AZ 85225
Attn: T. Scott Avila (savila@paladinmgmt.com)

with a copy to:

Pachulski Stang Ziehl & Jones LLP
780 Third Avenue
34th Floor
New York, NY 10017-2024
Attn: John A. Morris (jmorris@pszjlaw.com)

If to Granite or Jackson:

Granite Mountain Lending, LLC
115 East Marlin
Suite 105
McPherson, KS 67460
Attn: Jonny Jackson

with a copy to:

May, Potenza, Baran & Gillespie, P.C.
Central Arts Plaza
1850 N. Central Ave.
16th Floor
Phoenix, AZ 85004-4633
Attn: Grant Cartwright (gcartwright@maypotenza.com)

Section 4.13    Severability and Construction.  If any term or other provision of this Agreement shall be held by a court of competent jurisdiction to be invalid, illegal, or unenforceable, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of this Agreement is not affected in any manner materially adverse to any Party.  Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the essential terms and conditions of this Agreement are fulfilled to the extent possible.

Section 4.14    <u>Attorneys' Fees</u>.  Each Party shall bear its own attorneys' fees and costs relating to this Agreement and the transactions contemplated herein.

*[Remainder of Page Intentionally Left Blank]*

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first stated above.

AMERIFIRST FINANCIAL, INC. AND
PHOENIX 1040 LLC

By: _____
Name:
Title:


GRANITE MOUNTAIN LENDING, LLC

By: _____
Name:
Title: President

_____
Jonny Jackson