IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMERIFIRST FINANCIAL INC., *et al.*,[1] | Case No. 23-11240 (TMH) |
| Debtors. | Jointly Administered |

### AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION OF AMERIFIRST FINANCIAL INC. AND PHOENIX 1040 LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (*pro hac vice*)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:   302-652-4400
email: ljones@pszjlaw.com
        dbertenthal@pszjlaw.com
        tcairns@pszjlaw.com

*Counsel for Debtors and Debtors in Possession*

Dated:  November 12, 2025

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are:  Phoenix 1040 LLC (2550); and AmeriFirst Financial, Inc. (4557).  The Debtors' service address is 575 W. Chandler Boulevard, Suite 225, Unit 236, Chandler, AZ 85225.

## TABLE OF CONTENTS

DISCLAIMERS ........................................................................................................... 1

SECTION 1 INTRODUCTION ................................................................................... 1

SECTION 2 SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN AND IMPORTANT SOLICITATION AND CONFIRMATION DATES AND DEADLINES ............................................... 3

    2.1    Summary of Classification and Treatment of Claims and Interests. ..................... 3
    2.2    Important Dates and Deadlines .................................................................. 7

SECTION 3 DEFINED TERMS ................................................................................. 7

    3.1    "Administrative Claim" ............................................................................ 7
    3.2    "Administrative-Priority Claims Reserve" ................................................... 7
    3.3    "Allowed" .............................................................................................. 7
    3.4    "Allowed Claim" or "Allowed … Claim" ..................................................... 8
    3.5    "Allowed Claims Fund" ........................................................................... 8
    3.6    "AmeriFirst" .......................................................................................... 8
    3.7    "Assigned Assets" .................................................................................. 8
    3.8    "Avoidance Actions" ............................................................................... 9
    3.9    "Ballots" ............................................................................................... 9
    3.10    "Bankruptcy Code" ............................................................................... 9
    3.11    "Bankruptcy Court" .............................................................................. 9
    3.12    "Bankruptcy Rules" .............................................................................. 9
    3.13    "Bar Date" .......................................................................................... 9
    3.14    "Bar Date Order" ................................................................................. 9
    3.15    "Business Day" .................................................................................... 9
    3.16    "Cash" ................................................................................................ 9
    3.17    "Causes of Action" .............................................................................. 9
    3.18    "Chapter 11 Cases" ............................................................................ 10
    3.19    "Claim" ............................................................................................. 10
    3.20    "Claimant" ......................................................................................... 10
    3.21    "Claims Agent" .................................................................................. 10
    3.22    "Claims Objection Deadline" ............................................................... 10
    3.23    "Class" .............................................................................................. 10
    3.24    "Collateral" ........................................................................................ 10
    3.25    "Combined Plan and Disclosure Statement" .......................................... 10
    3.26    "Committee" ...................................................................................... 10
    3.27    "Confirmation" ................................................................................... 10
    3.28    "Confirmation Date" ........................................................................... 10
    3.29    "Confirmation Order" .......................................................................... 10
    3.30    "Confirmation Hearing" ....................................................................... 11
    3.31    "Consummation" or "Consummate" ...................................................... 11
    3.32    "Contingent Claim" ............................................................................. 11
    3.33    "Creditor" .......................................................................................... 11
    3.34    "Debtors" .......................................................................................... 11
    3.35    "Debtor/Estate Release" ...................................................................... 11

3.36    "Debtor/Estate Releasors" ................................................................. 11
3.37    "DIP Documentation" ...................................................................... 11
3.38    "DIP Facility" ................................................................................ 11
3.39    "DIP Facility Claim" ....................................................................... 11
3.40    "DIP Lenders" ................................................................................ 11
3.41    "DIP Orders" .................................................................................. 11
3.42    "Disallowed Claim" ........................................................................ 11
3.43    "Disclosure Statement" ................................................................... 11
3.44    "Disputed" ..................................................................................... 12
3.45    "Disputed Claim" ............................................................................ 12
3.46    "Disputed Claim Reserve" ............................................................... 12
3.47    "Distributions" ............................................................................... 12
3.48    "Distribution Dates" ....................................................................... 12
3.49    "Distribution Record Date" .............................................................. 12
3.50    "Effective Date" ............................................................................. 12
3.51    "Entity" ......................................................................................... 12
3.52    "Estates" ....................................................................................... 12
3.53    "Excluded Assets" .......................................................................... 12
3.54    "Exculpated Parties" ....................................................................... 12
3.55    "Final Decree(s)" ........................................................................... 12
3.56    "Final DIP Order" ........................................................................... 13
3.57    "Final Distribution" ........................................................................ 13
3.58    "Final Order" ................................................................................. 13
3.59    "First Administrative Claims Bar Date" ............................................. 13
3.60    "General Claims Bar Date" .............................................................. 13
3.61    "Governmental Unit" ...................................................................... 13
3.62    "Granite Mountain" ........................................................................ 13
3.63    "Granite Mountain Settlement Agreement" ....................................... 13
3.64    "Granite Mountain Settlement Order" ............................................... 13
3.65    "Holder" ........................................................................................ 13
3.66    "Impaired" ..................................................................................... 13
3.67    "Indemnified Parties" ..................................................................... 13
3.68    "Initial Distribution Date" ............................................................... 14
3.69    "Insider" ....................................................................................... 14
3.70    "Insurance Policies" ....................................................................... 14
3.71    "Intercompany Claim" ..................................................................... 14
3.72    "Interest" ...................................................................................... 14
3.73    "Interim DIP Order" ....................................................................... 14
3.74    "Interim Fee Order" ....................................................................... 14
3.75    "Lien" ........................................................................................... 14
3.76    "Litigation" ................................................................................... 14
3.77    "Paladin" ....................................................................................... 14
3.78    "Paladin Approval Order" ................................................................ 15
3.79    "Person" ........................................................................................ 15
3.80    "Petition Date" ............................................................................... 15
3.81    "Phoenix" means Phoenix 1040 LLC, ............................................... 15

3.82    "Plan" .................................................................................................... 15
3.83    "Plan Administrator" ............................................................................ 15
3.84    "Plan Administrator Agreement" ........................................................ 15
3.85    "Plan Documents" ................................................................................ 15
3.86    "Plan Objection Deadline" ................................................................... 15
3.87    "Plan Supplement" ............................................................................... 15
3.88    "Post-Effective-Date Debtor(s)" .......................................................... 15
3.89    "Post-Effective-Date Debtor Representative" ...................................... 15
3.90    "Prepetition Agent" .............................................................................. 15
3.91    "Prepetition Credit Agreement" ........................................................... 15
3.92    "Prepetition Credit Documents" .......................................................... 16
3.93    "Prepetition Lenders" ........................................................................... 16
3.94    "Prepetition Lenders Deficiency Claim" ............................................. 16
3.95    "Prepetition Lenders Secured Claims" ................................................ 16
3.96    "Priority Claims" ................................................................................. 16
3.97    "Priority Non-Tax Claim" .................................................................... 16
3.98    "Priority Tax Claim" ............................................................................ 16
3.99    "Pro Rata" ............................................................................................ 16
3.100   "Professional" ...................................................................................... 16
3.101   "Professional Fee Claim" ..................................................................... 16
3.102   "Professional Fee Reserve" .................................................................. 17
3.103   "Proof of Claim" .................................................................................. 17
3.104   "RCP" ................................................................................................... 17
3.105   "RCP Avoidance Actions" ................................................................... 17
3.106   "Record Date" ...................................................................................... 17
3.107   "Rejection Bar Date" ............................................................................ 17
3.108   "Related Persons" ................................................................................. 17
3.109   "Released Parties" ................................................................................ 17
3.110   "Releasing Parties" .............................................................................. 17
3.111   "Schedules" .......................................................................................... 17
3.112   "Second Administrative Claims Bar Date" .......................................... 18
3.113   "Secured Claim" .................................................................................. 18
3.114   "Settlement Agreement" ...................................................................... 18
3.115   "Settlement Agreement Order" ............................................................ 18
3.116   "Settlement Effective Date" ................................................................. 18
3.117   "Subsequent Distribution Date" ........................................................... 18
3.118   "Tax" .................................................................................................... 18
3.119   "Tax Claim" ......................................................................................... 18
3.120   "Third Party Release" .......................................................................... 18
3.121   "UCC Avoidance Actions" .................................................................. 18
3.122   "Unimpaired Claim" ............................................................................ 18
3.123   "Unsecured Claim" .............................................................................. 19
3.124   "U.S. Trustee" ...................................................................................... 19
3.125   "Voting Deadline" ................................................................................ 19
3.126   "Voting Instructions" ........................................................................... 19
3.127   "Voting Record Date" .......................................................................... 19

LA:4862-8386-2413.18 70786.001

SECTION 4 BACKGROUND ........................................................................................... 19

4.1     General Background. ................................................................................. 19
4.2     Circumstances Leading to Chapter 11 Filing.......................................... 21

SECTION 5 THE CHAPTER 11 CASES ........................................................................ 22

5.1     First Day and Other Early Relief. ............................................................ 22
5.2     DIP Financing/Cash Collateral Relief. .................................................... 22
5.3     Private Sales of Certain Assets. ............................................................... 23
5.4     U.S. Trustee's Motion to Transfer Venue................................................. 24
5.5     Formation of the Committee..................................................................... 24
5.6     Retention of Professionals........................................................................ 24
5.7     Committee's Standing Motion & Complaint / Mediation Resulting in
        Global Settlement...................................................................................... 24
5.8     Debtors' Schedules and Statements of Financial Affairs. ....................... 25
5.9     Debtors' Retention of OCPs. .................................................................... 25
5.10    Rejection of Contracts/Leases and Claims Objections. ........................... 25

SECTION 6 CONFIRMATION AND VOTING PROCEDURES ................................... 26

6.1     Confirmation Hearing. .............................................................................. 26
6.2     Procedures for Objections......................................................................... 26
6.3     Requirements for Confirmation. ............................................................... 26
6.4     Classification of Claims and Interests....................................................... 27
6.5     Impaired Claims or Interests. ................................................................... 28
6.6     Confirmation without Necessary Acceptances; Cramdown. .................... 29
6.7     Feasibility.................................................................................................. 30
6.8     Best Interests Test and Liquidation Analysis........................................... 30
6.9     Eligibility to Vote on the Combined Plan and Disclosure Statement. ..... 31
6.10    Solicitation Package / Release Opt-Out. .................................................. 31
6.11    Voting Procedures, Voting Deadline, and Applicable Deadlines............. 32
6.12    Acceptance of the Combined Plan and Disclosure Statement. ................ 33

SECTION 7 CERTAIN RISK FACTORS, TAX CONSEQUENCES, AND OTHER
DISCLOSURES............................................................................................. 33

7.1     Certain Risk Factors to be Considered...................................................... 33
7.2     The Combined Plan and Disclosure Statement May Not Be Accepted............... 33
7.3     The Combined Plan and Disclosure Statement May Not Be Confirmed............. 33
7.4     Distributions to Holders of Allowed Claims Under the Combined Plan
        and Disclosure Statement May be Inconsistent with Projections. ......... 34
7.5     Objections to Classification of Claims. .................................................... 34
7.6     Failure to Consummate the Combined Plan and Disclosure Statement. ............. 35
7.7     The Releases May Not Be Approved. ....................................................... 35
7.8     Reductions to Estimated Creditor Recoveries. ........................................ 35
7.9     Certain U.S. Federal Income Tax Consequences...................................... 36
7.10    Tax Consequences for U.S. Holders of Certain Claims............................ 37
7.11    Information Reporting and Withholding. .................................................. 37
7.12    Releases, Exculpations, and Injunctions.................................................. 38

7.13    Alternatives to the Combined Plan and Disclosure Statement. ............................ 39

SECTION 8 UNCLASSIFIED CLAIMS ................................................................................ 39

8.1    Unclassified Claims. ........................................................................................ 39
8.2    Administrative Claims. ..................................................................................... 40

SECTION 9 CLASSIFICATION OF CLAIMS AND INTERESTS ......................................... 41

9.1    Summary of Classification. ............................................................................... 41
9.2    Special Provision Governing Unimpaired Claims. .............................................. 42
9.3    Vacant and Abstaining Classes. ........................................................................ 42

SECTION 10 TREATMENT OF CLAIMS AND INTERESTS ............................................... 42

10.1    Class 1—Priority Non-Tax Claims. ................................................................. 42
10.2    Class 2—Prepetition Lenders Secured Claims – Only Applicable to
         AmeriFirst. ................................................................................................... 43
10.3    Class 3—Other Secured Claims – Only Applicable to AmeriFirst. .................... 43
10.4    Class 4A—Unsecured Claims Against AmeriFirst. ........................................... 44
10.5    Class 4B— Unsecured Claims against Phoenix. ............................................... 44
10.6    Class 5A—Intercompany Claims against Phoenix. ........................................... 44
10.7    Class 5B—Intercompany Claims against AmeriFirst. ....................................... 44
10.8    Class 6A—Interests in AmeriFirst. ................................................................. 45
10.9    Class 6B—Interests in Phoenix. ..................................................................... 45

SECTION 11 DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS ............................ 45

11.1    Distribution Dates. ......................................................................................... 45
11.2    Subsequent Distributions. ............................................................................... 45
11.3    Distribution Record Date. ............................................................................... 45
11.4    Manner of Cash Payments Under the Plan. ....................................................... 46
11.5    Time Bar to Cash Payments by Check. ............................................................. 46
11.6    Tax Identification Numbers. ............................................................................ 46

SECTION 12 PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND
REDISTRIBUTIONS ....................................................................................... 47

12.1    No Distributions Pending Allowance. ............................................................... 47
12.2    Resolution of Disputed Claims. ....................................................................... 47
12.3    Authority to Object to, Settle, and Resolve Claims. .......................................... 47
12.4    Objection Deadline. ....................................................................................... 47
12.5    Estimation of Claims. ..................................................................................... 47
12.6    Disallowance of Claims. ................................................................................. 48
12.7    Reserved. ...................................................................................................... 48
12.8    Reserve Provisions for Disputed Claims. .......................................................... 48
12.9    De minimis Distributions, Rounding. ................................................................ 49
12.10   Unclaimed and Undeliverable Distributions. ..................................................... 49
12.11   Books and Records and Vesting of Privileges. ................................................... 50

SECTION 13 TREATMENT OF EXECUTORY CONTRACTS  AND UNEXPIRED
LEASES .......................................................................................................... 51

| | | |
|---|---|---|
| 13.1 | Rejection. | 51 |
| 13.2 | Rejection Claims. | 52 |
| 13.3 | Insurance Policies. | 52 |

**SECTION 14 MEANS FOR IMPLEMENTATION OF THE PLAN** ..... 52

| | | |
|---|---|---|
| 14.1 | Global Settlement of Claims. | 52 |
| 14.2 | Assignment of Estate Assets to RCP. | 52 |
| 14.3 | Continued Existence and Vesting of Excluded Assets in Post-Effective-Date Debtor(s) or Plan Administrator. | 53 |
| 14.4 | Corporate Action by Debtors. | 53 |
| 14.5 | Limited Substantive Consolidation. | 54 |
| 14.6 | Dissolution of the Committee. | 54 |

**SECTION 15 EFFECT OF CONFIRMATION** ..... 55

| | | |
|---|---|---|
| 15.1 | Binding Effect of the Plan. | 55 |
| 15.2 | Property Free and Clear. | 55 |

**SECTION 16 EXCULPATIONS, INJUNCTIONS, AND RELEASES** ..... 55

| | | |
|---|---|---|
| 16.1 | Exculpation. | 55 |
| 16.2 | Releases. | 56 |
| 16.3 | Injunction. | 57 |
| 16.4 | Post-Confirmation Liability of Plan Administrator. | 58 |
| 16.5 | Preservation of Rights of Action. | 58 |
| 16.6 | No Discharge. | 60 |

**SECTION 17 CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN** ..... 60

| | | |
|---|---|---|
| 17.1 | Conditions to Confirmation of the Plan. | 60 |
| 17.2 | Conditions to the Effective Date. | 60 |
| 17.3 | Waiver of Conditions Precedent. | 60 |

**SECTION 18 RETENTION OF JURISDICTION** ..... 60

**SECTION 19 MISCELLANEOUS PROVISIONS** ..... 62

| | | |
|---|---|---|
| 19.1 | Payment of Statutory Fees / Closing of Chapter 11 Cases. | 62 |
| 19.2 | Revocation of the Combined Plan and Disclosure Statement. | 62 |
| 19.3 | Severability of Plan Provisions. | 62 |
| 19.4 | Exhibits. | 62 |
| 19.5 | Notices. | 63 |
| 19.6 | Reservation of Rights. | 63 |
| 19.7 | Defects, Omissions and Amendments. | 63 |
| 19.8 | Filing of Additional Documents. | 64 |
| 19.9 | Successors and Assigns. | 64 |
| 19.10 | Setoffs and Recoupments. | 64 |
| 19.11 | Tax Exemption. | 64 |
| 19.12 | Implementation. | 64 |
| 19.13 | Record Date. | 65 |
| 19.14 | Certain Actions. | 65 |

19.15   Substantial Consummation. ................................................................................. 65

19.16   Waiver of Fourteen-Day Stay. ........................................................................... 65

19.17   Governing Law. .................................................................................................. 65

19.18   Entire Agreement. ............................................................................................... 65

SECTION 20 RECOMMENDATION .......................................................................... 66

LA:4862-8386-2413.18 70786.001

## DISCLAIMERS

EACH HOLDER OF A CLAIM AGAINST THE DEBTORS ENTITLED TO VOTE TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT IN ITS ENTIRETY BEFORE VOTING.  NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT MAY BE MADE EXCEPT PURSUANT TO THE TERMS HEREOF AND SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE.  IF YOU ARE ENTITLED TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT, YOU ARE RECEIVING A BALLOT WITH YOUR NOTICE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.  THE DEBTORS URGE YOU TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT.

THE COMBINED PLAN AND DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3016 AND 3017, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.  PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST OR INTERESTS IN THE DEBTORS SHOULD EVALUATE THE COMBINED PLAN AND DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.  THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT AS TO HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS.  YOU SHOULD CONSULT YOUR PERSONAL COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES, OR OTHER LEGAL CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.

THE COMBINED PLAN AND DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, ANTICIPATED EVENTS IN THE CHAPTER 11 CASES, AND FINANCIAL INFORMATION.  ALTHOUGH THE DEBTORS BELIEVE THAT THE STATEMENTS AND DESCRIPTIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE TRUE AND ACCURATE, THEY ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTORY PROVISIONS.  THE TERMS OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTES GOVERN IN THE EVENT OF ANY DISCREPANCY WITH THE COMBINED PLAN AND DISCLOSURE STATEMENT.  CREDITORS AND OTHER INTERESTED PARTIES SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, AND THE APPLICABLE STATUTES THEMSELVES FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.

LA:4862-8386-2413.18 70786.001

THE FACTUAL STATEMENTS AND REPRESENTATIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE MADE BY THE DEBTORS AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED, AND THE DEBTORS DISCLAIM ANY OBLIGATION TO UPDATE ANY SUCH STATEMENTS AFTER THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DELIVERY OF THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT NECESSARILY BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.

ALL FORWARD-LOOKING STATEMENTS CONTAINED HEREIN OR OTHERWISE MADE BY THE DEBTORS INVOLVE MATERIAL RISKS AND UNCERTAINTIES AND ARE SUBJECT TO CHANGE BASED ON NUMEROUS FACTORS, INCLUDING FACTORS THAT ARE BEYOND THE DEBTORS' CONTROL. ACCORDINGLY, THE DEBTORS' FUTURE PERFORMANCE AND FINANCIAL RESULTS MAY DIFFER MATERIALLY FROM THOSE EXPRESSED OR IMPLIED IN ANY SUCH FORWARD-LOOKING STATEMENTS. SUCH FACTORS INCLUDE, BUT ARE NOT LIMITED TO, THOSE DESCRIBED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DEBTORS DO NOT INTEND TO UPDATE OR REVISE THEIR FORWARD-LOOKING STATEMENTS EVEN IF EXPERIENCE OR FUTURE CHANGES MAKE IT CLEAR THAT ANY PROJECTED RESULTS EXPRESSED OR IMPLIED THEREIN WILL NOT BE REALIZED.

ANY PROJECTED RECOVERIES TO CREDITORS SET FORTH IN THIS DISCLOSURE STATEMENT ARE BASED UPON THE ANALYSES PERFORMED BY THE DEBTORS AND THEIR ADVISORS. ALTHOUGH THE DEBTORS AND THEIR ADVISORS HAVE MADE EVERY EFFORT TO VERIFY THE ACCURACY OF THE INFORMATION PRESENTED HEREIN, THE DEBTORS AND THEIR ADVISORS CANNOT MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THIS INFORMATION.

IN CONNECTION WITH THE DEBTORS' SOLICITATION OF ACCEPTANCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT PURSUANT TO SECTION 1126(b) OF THE BANKRUPTCY CODE, THE DEBTORS ARE FURNISHING A SOLICITATION PACKAGE, CONSISTING OF THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE EXHIBITS HERETO, CONFIRMATION NOTICE, AND A BALLOT, AS APPLICABLE, TO EACH RECORD HOLDER OF CLAIMS ELIGIBLE TO VOTE OR ITS COUNSEL. THE COMBINED PLAN AND DISCLOSURE STATEMENT IS TO BE USED BY EACH SUCH ELIGIBLE HOLDER SOLELY IN CONNECTION WITH ITS EVALUATION OF THE COMBINED PLAN AND

LA:4862-8386-2413.18 70786.001

**DISCLOSURE STATEMENT; USE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT FOR ANY OTHER PURPOSE IS NOT AUTHORIZED. NOTHING STATED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY. THE COMBINED PLAN AND DISCLOSURE STATEMENT MAY NOT BE REPRODUCED OR PROVIDED TO ANYONE OTHER THAN ADVISORS TO THE RECIPIENT WITHOUT THE PRIOR WRITTEN CONSENT OF THE DEBTORS.**

LA:4862-8386-2413.18 70786.001

# SECTION 1
## INTRODUCTION

AmeriFirst Financial Inc. ("AmeriFirst") and its affiliated debtor Phoenix 1040 LLC ("Phoenix"), the debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors" or "Company"), hereby propose the following combined disclosure statement and plan of liquidation pursuant to sections 1121(a) and 1125(b) of title 11 of the United States Code (the disclosure statement portion hereof, the "Disclosure Statement" and the chapter 11 plan portion hereof, the "Plan," as may be modified and/or amended from time to time, and collectively, the "Combined Plan and Disclosure Statement").  Capitalized terms used in the Combined Plan and Disclosure Statement and not otherwise defined have the meanings ascribed to such terms in Section 3.

Prepetition, AmeriFirst was a mid-sized independent mortgage company, which was licensed to operate in 44 states and served customers via branches located in over 20 states. In addition to originating and purchasing residential mortgage loans, prepetition, AmeriFirst owned certain loan master servicing rights and fees generated thereby.  During the Chapter 11 Cases, the Debtors have sold, liquidated or otherwise disposed of substantially all of their assets.  Following a successful mediation, the Debtors, the Committee (as defined below), and RCP (as defined below) entered into a Settlement Agreement and Release that resolved the various disputes among the Debtors, the Committee and RCP. On August 21, 2025, the Bankruptcy Court approved the Settlement Agreement and entered the Order Approving Settlement Agreement [D.I. 1090] (the "Settlement Agreement Order"). The proposed Plan will implement the terms of the Settlement Agreement to the extent not previously implemented following entry of the Settlement Agreement Order.

**The Official Committee of Unsecured Creditors supports confirmation of the Plan and urges all general unsecured creditors entitled to vote on the Plan to vote to accept the Plan.**

Pursuant to the proposed Plan, a Plan Administrator, to be selected by the Committee, shall be responsible for administering the Estates after the Effective Date, including, without limitation, reconciling filed Unsecured Claims; objecting to and determining the allowance or disallowance of Unsecured Claims filed against the Estates; and making distributions to Holders of Allowed Unsecured Claims.  The Plan Administrator shall also assume prosecution of such UCC Avoidance Actions as may have been commenced by the Committee following the Settlement Effective Date.

Pursuant to the Settlement Agreement and the Settlement Agreement Order, the parties to the Settlement Agreement, including RCP, agreed to the funding of the Allowed Claims Fund (totaling $2,230,000) solely for the benefit of Holders of Allowed Unsecured Claims from the Debtors' then-current cash-on-hand, which Allowed Claims Fund has been funded in full and no further amounts are due or payable with respect to the Allowed Claims Fund. The Plan Administrator will administer the Allowed Claims Fund and make distributions to Holders of Allowed Unsecured Claims therefrom.  Pursuant to the Settlement Agreement and the Plan, RCP consents to the use of the aggregate amount of $370,000 of its cash collateral from the Debtors' cash-on-hand to fund the Administrative-Priority Claim Reserve for the purpose of paying all Allowed but unpaid Administrative Claims (other than Professional Fee Claims), allowed but

unpaid Priority Claims, and all costs and expenses associated with reconciling and/or objecting to any Administrative Claims filed in connection therewith.  Pursuant to the Settlement Agreement and Plan, RCP also consents to the use of its cash collateral to pay all U.S. Trustee fees owed through the Effective Date. There will be no distributions to Holders of Interests in AmeriFirst or Phoenix. In a Chapter 7 proceeding, Holders of Administrative Claims, Priority Claims and Unsecured Claims would likely receive no distribution on account of their Claims.  The Plan further provides for the limited substantive consolidation of the Debtors' Estates for the purpose of making Distributions to Holders of Claims.

The Debtors submit that the Combined Plan and Disclosure Statement and/or notice thereof will be distributed to all Holders of Claims and Interests in accordance with section 1125(b) of the Bankruptcy Code; Rules 2002, 3016, and 3017 of the Federal Rules of Bankruptcy Procedure; and the Court's order conditionally approving the Combined Plan and Disclosure Statement [Docket No. [•]].  The Combined Plan and Disclosure Statement and the exhibits hereto include a discussion of:  (i) the nature of the Debtors' business; (ii) events during the Chapter 11 Cases; (iii) the requirements for confirmation of the Plan and procedures for voting to accept or reject the Plan; (iv) additional factors and disclosures to be considered, including risk factors and certain U.S. federal income tax consequences of the Plan; and (v) the terms of the Plan, including the treatment of Holders of Claims and Interests under the Plan.  The Disclosure Statement was prepared with the intent to provide "adequate information" (as defined in the Bankruptcy Code) to enable Holders of Claims against and Interests in the Debtors to make informed judgments about the Plan.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Section 19.3 of the Combined Plan and Disclosure Statement, if any, the Debtors expressly reserve the right to alter, amend, or modify the Combined Plan and Disclosure Statement, including the Plan Supplement, one or more times, before substantial consummation thereof.

***Please read the Combined Plan and Disclosure Statement, the exhibits, other supporting materials, and any appropriate ballot carefully and follow the instructions set forth below and on the appropriate ballot to vote on the Combined Plan and Disclosure Statement.  The Debtors and Committee believe that the Combined Plan and Disclosure Statement provides the best method of maximizing the recoveries for the Holders of Claims against the Debtors.  Therefore, the Debtors and Committee recommend that all creditors who are entitled to vote should vote in favor of the Combined Plan and Disclosure Statement.***

Unless otherwise specified, all section or exhibit references in the Combined Plan and Disclosure Statement are to the respective section in, or exhibit to, the Combined Plan and Disclosure Statement, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection, or clause contained herein.  The headings in the Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, or other agreement or document being in

2

a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; and (c) unless otherwise noted above, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

## SECTION 2
## SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN AND IMPORTANT SOLICITATION AND CONFIRMATION DATES AND DEADLINES

2.1   <u>Summary of Classification and Treatment of Claims and Interests.</u>

The Plan constitutes a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors, except as expressly set forth herein.

All Claims against or Interests in the Debtors, other than Administrative Claims, DIP Facility Claims, and Priority Tax Claims, are classified for purposes of voting and distributions under the Combined Plan and Disclosure Statement.  A summary of the classification of these Claims and Interests, the proposed treatment of each Class of Claims or Interests, and the voting status of each Class of Claims or Interests follows.

<u>APPLICABLE TO AMERIFIRST</u>

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| Unclassified: Administrative Claims (excluding Professional Fee Claims)<br><br>estimated amount $226,000<br><br>**Estimated Recovery: 100%** | Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim, other than a Professional Fee Claim, shall receive, without interest, Cash from the Administrative-Priority Claims Reserve equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtors or Post-Effective-Date Debtors, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law. | Unimpaired | No |

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| Unclassified: DIP Facility Claims, Only Applicable to AmeriFirst<br><br>**Estimated Recovery: 100%** | DIP Facility Claims will be deemed satisfied in full on the Effective Date. | Unimpaired | No |
| Unclassified: Priority Tax Claims<br><br>estimated amount $1,700<br><br>**Estimated Recovery: 100%** | Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction of each Allowed Priority Tax Claim, the Debtors or Post-Effective-Date Debtors shall pay each Holder of an Allowed Priority Tax Claim from the Administrative-Priority Claims Reserve the full unpaid amount of such Allowed Priority Tax Claim on the earliest of the following dates: (i) on or as soon as practicable after the Effective Date, (ii) on or as soon as practicable after the date such Allowed Priority Tax Claim becomes an Allowed Claim, and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law. | Unimpaired | No |
| Class 1: Priority Non-Tax Claims<br><br>estimated amount $135,000<br><br>**Estimated Recovery: 100%** | The Debtors or Post-Effective-Date Debtors shall pay from the Administrative-Priority Claims Reserve the Allowed amount of each Priority Non-Tax Claim to each Entity holding a Priority Non-Tax Claim as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim (or as otherwise permitted by law). The Debtors or Post-Effective-Date Debtors shall pay each Entity holding a Priority Non-Tax Claim in Cash in full in respect of such Allowed Claim without interest from the Petition Date; *provided however*, that such Entity may be treated on such less favorable terms as may be agreed to in writing by such Entity. | Unimpaired | No |
| Class 2: Prepetition Lenders Secured Claims<br><br>**Estimated Recovery:**<br><br>TBD in accordance with Settlement Agreement | Consistent with the Settlement Agreement and the Settlement Agreement Order, and to the extent not already assigned or transferred, in satisfaction and release of Allowed Class 2 Claims, on or as soon as practicable after the Effective Date, or as otherwise agreed between the Holders of such Class 2 Claims and the Debtors or Post-Effective-Date Debtors, the Debtors or Post-Effective-Date Debtors shall assign the Assigned Assets to the Holders of Class 2 Claims, to the maximum extent possible, free and clear of all liens, claims and interests. | Impaired | Yes |

LA:4862-8386-2413.18 70786.001

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| | The Holders of Class 2 Claims shall not participate in any recoveries from the Allowed Claims Fund. | | |
| Class 3: Other Secured Claims<br><br>estimated amount $0<br><br>**Estimated Recovery: 100%** | Except to the extent previously paid in full, at the option of the Debtors or Post-Effective-Date Debtor(s), one of the following treatments shall be provided to satisfy Class 3 Claims: (i) the Holder of such Claim shall retain its Lien on its Collateral until such Collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such Collateral, shall be paid to such Holder in full satisfaction and release of such Allowed Other Secured Claim; (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim, or as otherwise agreed between the Holder of such Claim and the Debtors or Post-Effective-Date Debtor(s), the Holder of such Other Secured Claim will receive a Cash payment equal to the amount of its Allowed Other Secured Claim in full satisfaction and release of such Other Secured Claim; or (iii) the Collateral securing the Creditor's Other Secured Claim shall be abandoned to such Creditor, in full satisfaction and release of such Other Secured Claim. | Unimpaired | No |
| Class 4A: Unsecured Claims Against AmeriFirst<br><br>**Estimated Recovery: - 0-10%** | Holders of Class 4A Claims shall receive one or more Distributions of Cash on a Pro Rata basis from the Allowed Claims Fund, subject to the terms of the Plan and the Plan Administrator Agreement. Unsecured Claims are subject to all statutory, equitable, and contractual subordination claims, rights, and grounds available to the Debtors, the Estates, and pursuant to the Plan, except as may be expressly provided otherwise, the Plan Administrator, which subordination claims, rights, and grounds are fully enforceable prior to, on, and after the Effective Date. | Impaired | Yes |
| Class 5A: Intercompany Claims<br><br>**Estimated Recovery: 0%** | There shall be no Distribution on account of Class 5A Claims. | Impaired | No |
| Class 6A: Interests in AmeriFirst<br><br>**Estimated Recovery: $0** | Class 6A Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Class 6A Interests will not receive any distribution on account of such Interests | Impaired | No |

LA:4862-8386-2413.18 70786.001

APPLICABLE TO PHOENIX

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| Unclassified: Administrative Claims, estimated to total approx. $0<br><br>**Estimated Recovery: 100%** | Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim, other than a Professional Fee Claim, shall receive, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtors or Post-Effective-Date Debtors, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law. | Unimpaired | No |
| Class 4B: Unsecured Claims Against Phoenix, estimated amount $0<br><br>**Estimated Recovery: 0%** | There shall be no Distribution on account of Class 5 Unsecured Claims against Phoenix. | Impaired | No |
| Class 5B: Intercompany Claims<br><br>**Estimated Recovery: 0%** | There shall be no Distribution on account of Class 5B Claims. | Impaired | No |
| Class 6B: Interests in Phoenix<br><br>**Estimated Recovery 0%** | There shall be no Distribution on account of Class 6B Claims | Impaired | No |

LA:4862-8386-2413.18 70786.001

## 2.2 Important Dates and Deadlines

| Event | Proposed Date[2] |
|---|---|
| Voting Record Date | November 26, 2025 |
| Deadline to Mail Solicitation Packages / Solicitation Commences | The later of three days after entry of the order or December 9, 2025 |
| Deadline to File Rule 3018 Motions | December 23, 2025 at 4:00 p.m. (ET) |
| Deadline for Responses to Rule 3018 Motions | December 31, 2025 |
| Deadline to File Plan Supplement | December 26, 2025 |
| Voting Deadline | January 2, 2026 at 5:00 p.m. (ET) |
| Deadline to file and serve Objections to Combined Disclosure Statement and Plan Confirmation and/or final approval of the adequacy of the Disclosures | January 6, 2026 at 4:00 p.m. (ET) |
| Deadline to file: (1) Voting Tabulation Affidavit; (2) Confirmation Brief; (3) reply to any objection to Confirmation; or (4) reply to any objection to Rule 3018 Motion | January 8, 2026 at 4:00 p.m. (ET) |
| Combined Hearing on final approval of Disclosures and Confirmation of the Combined Disclosure Statement and Plan | January 13, 2026 (subject to the Court's availability) |

# SECTION 3
# DEFINED TERMS

As used in the Combined Plan and Disclosure Statement, capitalized terms not otherwise defined have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

3.1 "Administrative Claim" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to Sections 327, 328, 330, 365, 503(b), 507(a), 507(b), or 1114(e)(2) of the Bankruptcy Code and 28 U.S.C. § 1930, but excluding Professional Fee Claims.

3.2 "Administrative-Priority Claims Reserve" means an amount of Cash not to exceed $370,000 from RCP's cash collateral set aside for the purpose of paying Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims as set forth in the Settlement Agreement.

3.3 "Allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtors on the Schedules as other than disputed,

---

[2] All times noted are in prevailing Eastern Time.

contingent, or unliquidated and, as to which, the Debtors, the Plan Administrator or other party in interest has not filed an objection on or before the Claims Objection Deadline; (b) a Claim that is set forth in a timely filed Proof of Claim as to which no objection has been filed and which is not otherwise a Disputed Claim; (c) a Claim that has been allowed by a Final Order; (d) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtors prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and nature of Claim executed by the Plan Administrator on or after the Effective Date; (iii) in any stipulation of amount and nature of any Administrative Claim, Priority Non-Tax Claim, or Priority Tax Claim executed by (y) the Debtors and approved by the Bankruptcy Court, or (z) the Plan Administrator; or (iv) in any contract, instrument, indenture or other agreement entered into or assumed by Debtors in connection with and in accordance with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed or Disallowed Claim or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been timely filed by the Claimant before the applicable rejection Bar Date for such claim or has otherwise been deemed timely filed under applicable law; or (f) a Claim that is allowed pursuant to the terms of the Plan.  For the purpose of determining distributions pursuant to the Plan, allowance under subsections (a) and (b) only is applicable once any of the following occur (1) before the Claims Objection Deadline, the Debtors or the Plan Administrator, as applicable, determine not to object to the Claim, (2) the Claims Objection Deadline passes without an objection being filed, or (3) after the Debtor or the Plan Administrator timely objects to the Claim, the Claim is allowed as provided in subparagraphs (c), (d) or (e) above.

3.4    "Allowed Claim" or "Allowed … Claim" means a Claim that has been Allowed.

3.5    "Allowed Claims Fund" means the segregated fund of $2,230,000 in Cash approved and established pursuant to the Settlement Agreement Order, which consistent with the Settlement Agreement, the Settlement Agreement Order and in accordance with the Plan and the Plan Administrator Agreement, will be used by the Plan Administrator to fund the Plan Administrator's (a)(i) reconciliation of Unsecured Claims, (ii) objections to the allowance or disallowance of Unsecured Claims, and (iii) distributions to Holders of Allowed Unsecured Claims (excluding the Prepetition Lenders Deficiency Claim or any other Claims of the Prepetition Lenders)  and, (b) payment of all U.S. Trustee fees incurred after the Effective Date. The Allowed Claims Fund will be held and administered by the Plan Administrator.

3.6    "AmeriFirst" means AmeriFirst Financial Inc., a Debtor in the Chapter 11 Cases.

3.7    "Assigned Assets" means (i) all of the Estate's interest, including title and ownership, in 3921 E. Mallory Circle, Mesa, AZ 85215, which Parcel number 141-27-098 and the following legal description: VISTA ESTANCIA MCR 531-24 Lot 3; (ii) all of the Estate's secured claim(s) against any and all property owned by Russell Shane Bowlby, including the secured claim represented by that certain March 15, 2022 Deed of Trust and Assignment of Rents with respect to 1010 West 2nd Street, Mesa, AZ 85201; (iii) any and all Causes of Action, including all of the RCP Avoidance Actions, including for avoidance of doubt, any and all Avoidance Claims against Granite Mountain and Johnny Jackson in connection with the Debtors' prepetition transfer of notes to either Granite Mountain or Johnny Jackson, but excluding (x) the UCC Avoidance Actions, (y) any Claims or Causes of Action subject to RCP's

general release set forth in paragraph 7 of the Settlement Agreement, and (z) any assets RCP designates to be abandoned.

3.8   "Avoidance Actions" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies which any of the Debtors, the Estates, or other appropriate party in interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

3.9   "Ballots" mean the ballots upon which the Holders of Impaired Claims shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

3.10   "Bankruptcy Code" means title I of the Bankruptcy Reform Act of 1978, as amended from time to time, as set forth in Sections 101 *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

3.11   "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases.

3.12   "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075 and the General and Local Rules of the Bankruptcy Court.

3.13   "Bar Date" means, as applicable, the General Claims Bar Date, the First Administrative Claims Bar Date, the Second Administrative Claims Bar Date, or any other applicable deadline to file Claims referenced in the Plan.

3.14   "Bar Date Order" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Setting a Bar Date for the Filing of Proofs of Claim By Governmental Units, (III) Setting a Bar Date for the Filing of Requests for Allowance of Administrative Expense Claims, (IV) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (V) Approving the Form of and Manner for Filing Proofs of Claim, (VI) Approving Notice of Bar Dates, and (VII) Granting Related Relief* [Docket No. 444], which established the General Claims Bar Date, the First Administrative Claims Bar Date, and certain other deadlines and procedures.

3.15   "Business Day" means any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

3.16   "Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments, and legal tender of the United States of America or instrumentalities thereof.

3.17   "Causes of Action" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims, including, without

limitation, all claims and any avoidance, preference, recovery, subordination or other actions of the Debtors and/or the Estates (unless the context expressly states that such Causes of Action belong to the another Entity) against Creditors, Insiders, and/or any other Persons or Entities, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date.

3.18  "Chapter 11 Cases" means the Chapter 11 cases commenced when the Debtors filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on the Petition Date, being administered under Case No. 23-11240 (TMH).

3.19  "Claim" means a claim (as defined in Section 101(5) of the Bankruptcy Code) against the Debtors, including, but not limited to: (a) any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

3.20  "Claimant" means the Holder of a Claim.

3.21  "Claims Agent" means Omni Agent Solutions, Inc., which was appointed as the Debtors' claims, noticing, and balloting agent.

3.22  "Claims Objection Deadline" means, with respect to all Claims other than Professional Fee Claims, (a) **180 days after the Effective Date**, or (b) such other period as may be fixed by an order of the Bankruptcy Court for objecting to Claims upon request of the Plan Administrator.

3.23  "Class" means a category of Holders of Claims or Interests, as set forth in Section 9 of the Plan.

3.24  "Collateral" means any property or interest in property of the Debtors' Estates that is subject to a valid and enforceable Lien to secure a Claim.

3.25  "Combined Plan and Disclosure Statement" means this Plan and Disclosure Statement, as modified and/or amended from time to time.

3.26  "Committee" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases.

3.27  "Confirmation" means the entry of the Confirmation Order, subject to all conditions specified in Section 17 hereof having been (a) satisfied or (b) waived pursuant to Section 17.

3.28  "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

3.29  "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

3.30 "Confirmation Hearing" means the hearing(s) held by the Bankruptcy Court pursuant to sections 1128 and 1129 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

3.31 "Consummation" or "Consummate" means the occurrence of the Effective Date.

3.32 "Contingent Claim" means any Claim for which a Proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain and which Claim has not been estimated, fixed, or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date, or a Claim that has accrued but nonetheless remains dependent on the occurrence of a future event that may never occur.

3.33 "Creditor" means any Holder of a Claim against the Debtors as specified in Section 101(10) of the Bankruptcy Code.

3.34 "Debtors" means AmeriFirst Financial, Inc. and Phoenix 1040 LLC, debtors and debtors-in-possession in the Chapter 11 Cases.

3.35 "Debtor/Estate Release" has the meaning set forth in Section 16.2(a)(i) hereof.

3.36 "Debtor/Estate Releasors" has the meaning set forth in Section 16.2(a)(i) hereof.

3.37 "DIP Documentation" means the DIP Term Sheet (as defined in the DIP Orders) and all other related agreements, documents, security agreements, pledge agreements or intercreditor agreements, as the case may be, as may be amended, restated, amended and restated, waived, supplemented or otherwise modified from time to time.

3.38 "DIP Facility" means that certain senior secured superpriority post-petition credit facility made available to the Debtors by the DIP Lenders pursuant to the DIP Documentation and the DIP Orders.

3.39 "DIP Facility Claim" means any Claim of the DIP Lenders arising from, under or in connection with the DIP Facility.

3.40 "DIP Lenders" means RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. and RCP Customized Credit Fund (Fund IV-A), L.P. and any successor(s) thereto, in their capacity as postpetition lenders under the DIP Facility.

3.41 "DIP Orders" means, collectively, the Interim DIP Order and Final DIP Order.

3.42 "Disallowed Claim" means a Claim, or any portion thereof, that has been disallowed by a Final Order or by other agreement of a Claimant, any Claim that is listed by the Debtors in the Schedules as zero or as disputed and as to which no Proof of Claim has been timely filed, or any Claim that is deemed disallowed pursuant to the terms of the Plan.

3.43 "Disclosure Statement" means the portion of this Combined Plan and Disclosure Statement that satisfies the disclosure requirements of section 1125 of the Bankruptcy Code.

LA:4862-8386-2413.18 70786.001

3.44  "Disputed" means, with respect to any Claim or Interest, any Claim or Interest: (a) listed on the Schedules as unliquidated, disputed, or contingent and as to which no Proof of Claim has been filed; or (b) as to which the Debtors, the Plan Administrator, or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtors or the Plan Administrator in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

3.45  "Disputed Claim" means: (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of any deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim that is not a Disallowed Claim that is scheduled by the Debtors in the Schedules as disputed, contingent, or unliquidated and as to which no Proof of Claim has been timely filed; or (iii) any Claim that is not a Disallowed Claim that is not listed in the Schedules and as to which no Proof of Claim has been timely filed.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.

3.46  "Disputed Claim Reserve" has the meaning set forth in Section 12.8 hereof.

3.47  "Distributions" means the distributions of Cash to be made in accordance with the Plan.

3.48  "Distribution Dates" means collectively the Initial Distribution Date, any Subsequent Distribution(s) Date, and the date of the Final Distribution.

3.49  "Distribution Record Date" means the close of business on the Business Day immediately preceding the Effective Date.

3.50  "Effective Date" means the date selected by the Debtors which is a Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect, and (b) all conditions specified in Section 17 hereof have been satisfied, unless waived by the Debtors. Within five (5) business days after the Effective Date, notice of the Effective Date shall be filed with the Bankruptcy Court by the Post-Effective-Date Debtors.

3.51  "Entity" means an entity as defined in Section 101(15) of the Bankruptcy Code and, where applicable, the Committee.

3.52  "Estates" means the estates of the Debtors in the Chapter 11 Cases created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

3.53  "Excluded Assets" has the meaning set forth in Section 14.2 hereof.

3.54  "Exculpated Parties" has the meaning set forth in Section 16.1 hereof.

3.55  "Final Decree(s)" means the decree contemplated under Bankruptcy Rule 3022.

LA:4862-8386-2413.18 70786.001

3.56 "Final DIP Order" means the *Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Lenders, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 579], entered by the Court in the Chapter 11 Cases.

3.57 "Final Distribution" means the last payment to Holders of Allowed Claims in accordance with the provisions of the Plan.

3.58 "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) that has not been reversed, stayed, modified, or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

3.59 "First Administrative Claims Bar Date" means December 29, 2023, at 5:00 p.m. prevailing Eastern Time, which was the deadline set pursuant to the Bar Date Order for filing Administrative Claims (excluding Professional Fee Claims) arising between the Petition Date and December 15, 2023.

3.60 "General Claims Bar Date" means December 29, 2023, at 5:00 p.m. prevailing Eastern Time, which was the general deadline set pursuant to the Bar Date Order for filing Proofs of Claim for any Claims against the Debtors that arose prior to the Petition Date.

3.61 "Governmental Unit" means the United States; State; Commonwealth, District, Territory, municipality, foreign state, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under Chapter 11), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

3.62 "Granite Mountain" means Granite Mountain Lending, LLC.

3.63 "Granite Mountain Settlement Agreement" means the settlement agreement executed among the Debtors, Granite Mountain and Jonny Jackson as attached to and set forth in the *Debtors' Motion for Approval of Settlement By and Between the Debtors and Granite Mountain Lending, LLC and Jonny Jackson* [Docket No. 1064].

3.64 "Granite Mountain Settlement Order" means the order approving the Granite Mountain Settlement Agreement [Docket No. 1084].

3.65 "Holder" means an Entity holding a Claim against, or Interest in, any of the Debtors.

3.66 "Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

3.67 "Indemnified Parties" has the meaning set forth in Section 16.4 hereof.

LA:4862-8386-2413.18 70786.001

3.68 "Initial Distribution Date" means the Effective Date, or as soon as practicable thereafter when the initial Distribution shall be made to the Holders of Allowed Claims, as determined by the Plan Administrator.

3.69 "Insider" means an insider of the Debtors, as defined in Section 101(31) of the Bankruptcy Code.

3.70 "Insurance Policies" means all insurance policies maintained by the Debtors as of the Petition Date, specifically including, but not limited to, director and officer insurance policies.

3.71 "Intercompany Claim" means all any Claim held by a Debtor against the other Debtor.

3.72 "Interest" means any equity interest in the Debtors, including, but not limited to, all issued, unissued, authorized, or outstanding shares or stock, whether vested or non-vested, together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

3.73 "Interim DIP Order" means the *Interim Order (I) Authorizing Debtors to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Lenders, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 61], entered by the Court in the Chapter 11 Cases.

3.74 "Interim Fee Order" means the Order of the Court [Docket No. 164] establishing certain procedures for the interim compensation and reimbursement of expenses of Professionals in the Chapter 11 Cases.

3.75 "Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind) to secure payment of a debt or performance of an obligation.

3.76 "Litigation" means the interest of the Estates, the Debtors, the Post-Effective-Date Debtors, or the Plan Administrator, as applicable, in any and all claims, rights, and Causes of Action that have been or may be commenced by the Debtors, the Post-Effective-Date Debtors, the Committee or the Plan Administrator, as applicable, except to the extent concerning any Released Parties and the RCP Avoidance Actions. Subject to the foregoing, Litigation includes, without limitation not otherwise stated herein, any action: (i) to avoid and recover any transfers of property determined to be preferential, fraudulent, or avoidable pursuant to Sections 544, 545, 547, 548, 549(a), and 550 of the Bankruptcy Code; (ii) for the turnover of property to the Debtors, the Post-Effective-Date Debtors, or the Plan Administrator, as applicable; (iii) for the recovery of property or payment of money that belongs to or can be asserted by the Debtors, the Post-Effective-Date Debtors, or the Plan Administrator, as applicable; (iv) for compensation for damages incurred by the Debtors, the Post-Effective-Date Debtors, or the Plan Administrator; and (iv) equitable subordination actions against Creditors.

3.77 "Paladin" means Paladin Management Group LLC.

LA:4862-8386-2413.18 70786.001

3.78 "Paladin Approval Order" means the order of the Court approving the Debtors' application for an order authorizing the employment and retention of Paladin to provide the Debtors a Chief Restructuring Officer and certain additional Paladin personnel [Docket No. 198].

3.79 "Person" means any individual, corporation, limited liability company, general partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit, or other Entity.

3.80 "Petition Date" means August 24, 2023, the date on which the Debtors filed their respective voluntary petitions for relief commencing the respective Chapter 11 Cases.

3.81 "Phoenix" means Phoenix 1040 LLC, a Debtor in the Chapter 11 Cases.

3.82 "Plan" means the portion of this Combined Plan and Disclosure Statement that constitutes the chapter 11 plan for the Debtors.

3.83 "Plan Administrator" means the person or any successor thereto selected by the Committee and appointed under the Plan to administer the Allowed Claims Fund as provided in the Plan Administrator Agreement. The initial Plan Administrator will be disclosed in the Plan Supplement.

3.84 "Plan Administrator Agreement" means agreement that sets forth the identity of the Person to serve initially as Plan Administrator, as well as the Plan Administrator's duties and compensation, among other things.  The Plan Administrator Agreement shall be included in the Plan Supplement.

3.85 "Plan Documents" means the Plan, the Disclosure Statement, the Plan Supplement, the Plan Administrator Agreement, any plan support letters, or other documents or pleadings filed by the Debtors relating to the Plan.

3.86 "Plan Objection Deadline" means the deadline established by the Bankruptcy Court for filing and serving objections to Confirmation of the Plan.

3.87 "Plan Supplement" means the pleading or pleadings identified in the Plan or Disclosure Statement for filing with the Bankruptcy Court not later than the earlier of seven (7) Days prior to (a) the Voting Deadline or (b) the Plan Objection Deadline, which shall include certain exhibits and schedules to the Plan, as well as documents, agreements, and instruments evidencing and effectuating the Plan.

3.88 "Post-Effective-Date Debtor(s)" means the Debtor(s) from and after the Effective Date.

3.89 "Post-Effective-Date Debtor Representative" means, initially, Paladin.

3.90 "Prepetition Agent" means RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. and any successor(s) thereto, in its capacity as administrative agent under the Prepetition Credit Agreement.

LA:4862-8386-2413.18 70786.001

3.91   "Prepetition Credit Agreement" means that certain *Amended and Restated Credit and Security Agreement*, dated as of May 15, 2023, among AmeriFirst as borrower and the Prepetition Lenders and the Prepetition Agent, as amended, modified, supplemented or restated.

3.92   "Prepetition Credit Documents" means the Prepetition Credit Agreement, that certain Limited Waiver and Second Amendment to Credit and Security Agreement, dated as of May 15, 2023 (as may be modified or supplemented from time to time), and that certain Settlement Agreement, dated as of May 15, 2023, by and among the Debtors, the Prepetition Lenders and certain other parties (as may be modified or supplemented from time to time).

3.93   "Prepetition Lenders" means RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. and RCP Customized Credit Fund (Fund IV-A), L.P. and any successor(s) thereto, in their capacity as prepetition lenders under the Prepetition Credit Agreement.

3.94   "Prepetition Lenders Deficiency Claim" means any unsecured deficiency Claim of the Prepetition Lenders in relation to the Prepetition Lenders' Secured Class 2 Claims.

3.95   "Prepetition Lenders Secured Claims" means any and all Secured Claims of the Prepetition Lenders against the Debtors arising under the Prepetition Loan Agreement.

3.96   "Priority Claims" means Priority Non-Tax Claims and/or Priority Tax Claims.

3.97   "Priority Non-Tax Claim" means any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

3.98   "Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

3.99   "Pro Rata" means proportionately so that, with respect to a Claim, the ratio of: (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims in the Class or Classes entitled to share in the applicable distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

3.100   "Professional" means an Entity (a) employed pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

3.101   "Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to Sections 330, 331, 363, or 503 of the Bankruptcy Code or otherwise, and accrued and unpaid as of the Effective Date, and any and all fees, charges and expenses of Paladin on account of its provision of T. Scott Avila to serve as Chief Restructuring Officer (CRO) of the Debtors, and additional personnel to support the CRO as set forth in the Paladin Approval Order.

16

3.102     "Professional Fee Reserve" means the account held by Debtors' counsel free and clear of all liens and claims (including, without limitation, those of the Prepetition Lenders), funded and established pursuant to the DIP Orders.  Consistent with the Settlement Agreement and the Settlement Agreement Order, the Professional Fee Reserve shall be used for the payment of Professional Fee Claims as further provided for in Section 8.2 hereof; *provided, however,* any professional fees and expenses incurred in connection with the evaluation and pursuit of UCC Avoidance Actions shall be paid from the Allowed Claims Fund, not the Professional Fee Reserve.

3.103     "Proof of Claim" means a proof of claim filed pursuant to Section 501 of the Bankruptcy Code or any order of the Bankruptcy Court, together with supporting documents.

3.104     "RCP" means RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. and RCP Customized Credit Fund (Fund IV-A), L.P., in any and all capacities, including as the Prepetition Agent, Prepetition Lender and DIP Lender, as applicable.

3.105     "RCP Avoidance Actions" means any Avoidance Actions against (i) any of Eric Bowlby, Russell Shane Bowlby, Granite Mountain Lending, LLC, and any entity directly or indirectly owned or controlled by any of the foregoing against which the Debtors could assert an Avoidance Action, or (ii) RCP.

3.106     "Record Date" has the meaning set forth in Section 19.15 hereof.

3.107     "Rejection Bar Date" means the last date for any Entity whose claims arise out of the Bankruptcy Court approved rejection of an executory contract or unexpired lease to file a Proof of Claim for damages related to such rejection.  The Rejection Bar Date for such Claims will be, (i) with respect to executory contracts and unexpired leases rejected pursuant to a Court order other than the Confirmation Order, the date provided by an order approving the rejection, if any, and, (ii) with respect to executory contracts and unexpired leases rejected pursuant to the Confirmation Order (or for which no bar date was provided in the applicable Court order), the date that is thirty (30) days after the Effective Date.

3.108     "Related Persons" means, subject to any exclusions expressly set forth in the Plan, with respect to a specific Person, said Person's successors and assigns, and as applicable, its current (as of the Confirmation Hearing) shareholders, affiliates, subsidiaries, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, and consultants, solely in their respective capacities as such.

3.109     "Released Parties" means, collectively, (a) the Debtors and Post-Effective-Date Debtors; (b) the Committee and the individual members thereof, solely in their capacity as such; (c) the Prepetition Lenders; (d) the Prepetition Agent; (e) the DIP Agent (as defined in the DIP Documentation) and DIP Lenders**;** and (e) each of such Entities' Related Persons.

3.110     "Releasing Parties" has the meaning set forth in Section 16.2(c) hereof.

3.111     "Schedules" means the respective schedules of assets and liabilities and statements of financial affairs filed by the Debtors pursuant to Section 521 of the Bankruptcy

Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

3.112 "Second Administrative Claims Bar Date" means the applicable last date, at 5:00 p.m. Eastern time, set by the Bankruptcy Court for a Claimant to file a request for payment of any Administrative Claim (excluding Professional Fee Claims) arising **after December 15, 2023 and through and including the Effective Date. The Second Administrative Claims Bar Date shall be thirty (30) days after the Effective Date, other than for Professional Fee Claims which shall be subject to the bar date for such Claims set forth in Section 8.2 hereof.**

3.113 "Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under Sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

3.114 "Settlement Agreement" means the *Settlement Agreement and Release* made by and among the Debtors, RCP and the Committee [part of Docket No. 1059], as approved by the Bankruptcy Court pursuant to the Settlement Agreement Order.

3.115 "Settlement Agreement Order" means the Order of the Bankruptcy Court approving the Settlement Agreement as provided therein [Docket No. 1090].

3.116 "Settlement Effective Date" means August 21, 2025.

3.117 "Subsequent Distribution Date" means any date after the Initial Distribution Date upon which the Plan Administrator makes a distribution to any Holders of Allowed Claims.

3.118 "Tax" means any tax, charge, fee, levy, impost, or other assessment by any federal, state, local, or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation, and withholding tax. "Tax" shall include any interest or additions attributable to, imposed on, or with respect to such assessments.

3.119 "Tax Claim" means all or that portion of an Allowed Claim held by a Governmental Unit for a Tax assessed or assessable against the Debtors.

3.120 "Third Party Release" has the meaning set forth in Section 16.2(c) hereof.

3.121 "UCC Avoidance Actions" means any Avoidance Actions that are not RCP Avoidance Actions.

3.122 "Unimpaired Claim" means an unimpaired Claim within the meaning of Section 1124 of the Bankruptcy Code.

LA:4862-8386-2413.18 70786.001

3.123      "Unsecured Claim" means any Claim against the Debtors or Estates that is not a Secured Claim, a DIP Facility Claim, an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Priority Non-Tax Claim, or a Prepetition Lenders Claim. Unsecured Claims include the Prepetition Lenders Deficiency Claim.

3.124      "U.S. Trustee" means the Office of the United States Trustee for the District of Delaware.

3.125      "Voting Deadline" means January 2, 2026 at 5:00 p.m.

3.126      "Voting Instructions" means the instructions for voting on the Plan contained on the Ballots.

3.127      "Voting Record Date" means the date as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive and vote on the Plan.

## SECTION 4
## BACKGROUND

4.1   <u>General Background.</u>

(a)   <u>Debtors' Prepetition Business and Operations.</u>

Prepetition, AmeriFirst was a mid-sized independent mortgage company, licensed to operate in 44 states and serving customers via branches located in over 20 states. In addition to originating and purchasing residential mortgage loans, AmeriFirst owns certain loan master servicing rights ("MSRs") and fees generated thereby. The MSRs were a valuable asset of the Debtors' Estates. Debtor Phoenix has no business operations aside from holding 100% of the equity interests in AmeriFirst.

The essence of the Debtors' prepetition business was originating and selling mortgage loans. Once a loan was originated, the Debtors sold it to investors, typically "aggregators" who package purchased loans and sell them in the secondary capital markets. In order to fund new mortgage loans – the backbone of the mortgage industry - the Debtors needed access to their warehouse lines of credit. A warehouse facility is structured as a "safe harbor" repurchase agreement under which a seller sells a mortgage loan to a buyer, with the buyer agreeing to sell the mortgage loan back to the seller on a certain date in the future. This arrangement, which is typical in the mortgage industry, is how AmeriFirst funded the mortgage loans it originated on behalf of underlying borrowers. AmeriFirst bought the mortgage loans back when it was prepared to permanently sell it to one or more loan buyers.

While not a substantial portion of their business, the Debtors had certain obligations to service mortgage loans, generally, but not exclusively, during the period prior to the loans being sold. The Debtors receive fees for services provided. Failure to comply with their servicing obligations could subject the Debtors to consumer and regulatory complaints and would have had an adverse impact on their Estates.

LA:4862-8386-2413.18 70786.001

As of the Petition Date, the Debtors employed approximately 153 full-time employees and 14 part-time employees. The employees performed a variety of functions critical to the preservation of value and the administration of the Debtors' estates. No employees were party to collective bargaining agreements or other similar labor agreements, and no employees were members of labor unions. Since the Petition Date, the Debtors terminated all but one part-time employee.

Following the nationwide decline in residential mortgage lending, particularly refinancings, AmeriFirst's annual combined loan originations and loan sale income dropped precipitously. For the 12-month period ending December 31 2022, AmeriFirst suffered a $16.8 million net loss.

        (b)      <u>Debtors' Organizational/Equity Structure.</u>

Phoenix is the sole shareholder of AmeriFirst.

        (c)      <u>Debtors' Capital Structure.</u>

        (i)      <u>Secured Debt and Prepetition Exercise of Rights by the Prepetition Lenders</u>

Pursuant to, *inter alia*, (i) that certain Amended and Restated Credit and Security Agreement, dated as of May 15, 2023 (the Prepetition Credit Agreement), among AmeriFirst, as borrower, and RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. and RCP Customized Credit Fund (Fund IVA), L.P. (the Prepetition Lenders), and RCP Credit Opportunities Fund Loan SPV (Fund III), L.P. as administrative agent (the Prepetition Agent), (ii) that certain Limited Waiver and Second Amendment to Credit and Security Agreement, dated as of May 15, 2023 (the "<u>Limited Waiver</u>"), and (iii) the certain Settlement Agreement, dated as of May 15, 2023 (the "<u>Prepetition Settlement Agreement</u>"), the Prepetition Secured Parties provided certain prepetition term loans and other financial accommodations to AmeriFirst. Pursuant to the Prepetition Settlement Agreement, in consideration for the execution of the Prepetition Credit Agreement, the Second Amendment, and a restatement of the guaranty agreement of Eric Bowlby (the "<u>Guarantor</u>"), AmeriFirst's former Chief Executive Officer and then majority shareholder, in favor of the Prepetition Secured Parties, the Prepetition Secured Parties, AmeriFirst, and Guarantor entered into certain mutual releases, including the release of all Existing Defaults (as defined in the Prepetition Settlement Agreement), subject to the terms and conditions set forth therein. As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Credit Agreement is at least $15,798,087 (plus accrued and unpaid interest, additional fees, costs, expenses, and other obligations as provided under the Prepetition Credit Agreement) (the "<u>Prepetition Secured Obligations</u>").

In connection with the Prepetition Credit Agreement, the then shareholders of AmeriFirst, Eric Bowlby and Kenneth Bowlby, entered into that certain Pledge Agreement, dated as of May 15, 2023 (the "<u>Pledge Agreement</u>") with the Prepetition Secured Parties, which granted liens and security interests in 100% of the common equity stock of AmeriFirst (the "<u>Pledged Shares</u>") in favor of the Prepetition Agent, and AmeriFirst entered into that certain Security Agreement, dated as of May 15, 2023, with the Prepetition Secured Parties (the "<u>Security Agreement</u>") which

LA:4862-8386-2413.18 70786.001

granted a first priority lien on and security interest in substantially all of the personal property of AmeriFirst to the Prepetition Agent, subject to certain permitted liens, together with mortgages on certain real property of AmeriFirst scheduled pursuant to the Prepetition Credit Agreement. Pursuant to the Prepetition Credit Agreement and the Security Agreement, the Prepetition Secured Parties assert that the Prepetition Secured Obligations are secured by valid, binding, perfected first priority security interests and liens (the "Prepetition Liens") in and on the "Collateral," as defined in the Prepetition Credit Agreement and Security Agreements (the "Prepetition Collateral"). Pursuant to the Second Amendment, AmeriFirst agreed to issue 40,000 shares of preferred shares, with an aggregate liquidation value of $4 million, to the Prepetition Lenders at the closing of the Prepetition Credit Agreement

On August 24, 2023, following various events of default under the Prepetition Credit Agreement and prior to the commencement of the Chapter 11 Cases, the Prepetition Agent gave a Notice of Events of Default under the Prepetition Credit Agreement and declared that the Obligations of AmeriFirst under the Prepetition Credit Agreement were immediately due and payable. The Prepetition Agent thereafter exercised its rights under the Pledge Agreement, including transferring the Pledged Stock and assigning the Prepetition Agent's rights under the Pledge Agreement to Phoenix. Pursuant to the Pledge Agreement, the certificates for the Pledged Shares were then canceled and a new stock certificate issued to Phoenix. Phoenix as the sole shareholder of AmeriFirst then executed a Unanimous Written Consent as the sole shareholder of AmeriFirst (the "Phoenix Consent"). The Phoenix Consent (a) removed the former directors of AmeriFirst, including Eric Bowlby); and (b) elected two new directors (including an independent director, Jeffrey Dane) to AmeriFirst's board of directors. The reconstituted board of AmeriFirst executed a unanimous consent removing all former officers of AmeriFirst and electing new officers (the "AmeriFirst Consent", together with the Phoenix Consent, the "Change in Control"). The Phoenix Consent and the AmeriFirst Consent were each filed with and accepted by the Arizona Corporation Commission.

(ii)    Unsecured Debt

The Debtors estimate that, as of the Petition Date, they owed approximately $[14] million of unsecured indebtedness, including trade debt and payables.

### 4.2    Circumstances Leading to Chapter 11 Filing.

Following the nationwide decline in residential mortgage lending, particularly refinancings, due to certain adverse factors (such as rising interest rates), AmeriFirst's annual combined loan originations and loan sale income dropped precipitously. For the 12 month period ending December 31 2022, AmeriFirst suffered a $16.8 million net loss.

Following the Change in Control discussed above, and in due regard of AmeriFirst's liquidity and default issues, the acceleration of the obligations of AmeriFirst under the Prepetition Credit Agreement, Phoenix determined to file its Chapter 11 Case to protect its sole asset, the common stock of AmeriFirst (and the value of AmeriFirst's assets; in particular, the valuable MSR rights discussed above); and AmeriFirst determined to market and sell substantially all of its assets and filed its Chapter 11 Case to facilitate such sales and the orderly wind-down of its operations.

Thus, the Debtors filed for Chapter 11 relief to protect and maximize the value of the estates' assets (including the MSRs) for the benefit of the Debtors' stakeholders.

## SECTION 5
## THE CHAPTER 11 CASES

The following is a brief description of certain material events that have occurred during the Chapter 11 Cases.

### 5.1    First Day and Other Early Relief.

In order to facilitate the Chapter 11 Cases, minimize disruption to the Debtors' affairs, and preserve the value of the Estates, the Debtors filed motions with the Bankruptcy Court on or shortly after the Petition Date seeking certain relief, including, without limitation:

(a)    authority to honor and pay certain prepetition workforce compensation and expenses and other related obligations, subject to certain caps, which was granted pursuant to an interim order entered on August 31, 2023 and a final order entered on October 2, 2023 [Docket Nos. 58 & 195];

(b)    authority to pay (or use tax credits to offset) local, state and federal income taxes, as well as other governmental taxes, fees and assessments, in the ordinary course of business, which was granted pursuant to an interim order entered on September 8, 2023 and a final order entered on September 28, 2023 [Docket Nos. 89 & 178];

(c)    authority to continue using the Debtors' existing cash management system and the provision of other related relief, which was granted pursuant to interim orders entered on August 31, 2023 and in October 2023 [Docket Nos. 60, 196 & 275];

(d)    authority to continue in the ordinary course sale activities related to certain "Cash is King" owned properties, originating and funding mortgage loans, selling "scratch and dent" loans, and servicing loans, which was granted pursuant to an interim order entered on August 31, 2023 and a final order entered on September 13, 2023 [Docket Nos. 59 & 114];

(e)    authority to continue, revise, extend, renew, supplement, or change the Debtors' prepetition insurance policies, or enter into new policies in the ordinary course, and pay prepetition obligations in respect thereof, which was granted pursuant to an interim order entered on September 8, 2023 and a final order entered on September 28, 2023 [Docket Nos. 91 & 173];

(f)    approval of adequate assurance procedures for utility providers, which was granted pursuant to an interim order entered on September 8, 2023 and a final order entered on September 28, 2023 [Docket Nos. 90 & 179]; and

(g)    the appointment of Omni Agent Solutions as the claims and noticing agent in the Chapter 11 Cases [Docket No. 88].

### 5.2    DIP Financing/Cash Collateral Relief.

As of the Petition Date, the Debtors required an immediate infusion of new money in order to maintain operations, pay employees, and satisfy accruing administrative expenses, including estate professional fees. The Debtors did not have adequate funding based on access to Cash Collateral alone. Without the proposed DIP Loans, the Debtors would suffer immediate and irreparable harm and would be forced to terminate operations, layoff all employees, and convert the cases to Chapter 7.

Subject to Court approval, the Prepetition Lenders agreed to be the DIP Lenders and provide secured superpriority DIP Loans to the Debtors in an amount up to $5 million (subject to any limitations on borrowing under the DIP Term Sheet), of which $2.775 million was available upon entry of the Interim DIP Order. The prepetition loans provided to AmeriFirst by the Prepetition Lenders (which entities are also the DIP Lenders) would be rolled up and converted into DIP obligations secured by the DIP Liens in an amount equal to the sum of (x) the aggregate amount of $676,400, representing the sum of $325,000 advanced to Phoenix immediately prior to the Petition Date (to fund the retention of Paladin Management Group and Pachulski Stang Ziehl & Jones) and $351,400 advanced to Phoenix to pay the premium for a director and officer liability insurance policy for the Debtors; and (y) 100% of the aggregate amount of cash collateral used by AmeriFirst from and after the Petition Date and the principal amount of all DIP loans advanced pursuant to the DIP Orders. The DIP Liens would not attach to the Debtors' leases of non-residential real property, but shall attach solely to the proceeds of such leases; and Avoidance Actions and proceeds of Avoidance Actions shall not be DIP Collateral. The Prepetition Lenders would receive adequate protection for their prepetition liens, including replacement liens and superpriority claims on the DIP Collateral, to the extent of any diminution.

Eric Bowlby (former majority shareholder and former CEO of AmeriFirst), on behalf of himself and other former AmeriFirst shareholders, objected to the Debtors' motion on certain grounds, including over the proposed rollup of prepetition debt and the amount of funding required. The Debtors vigorously argued against Mr. Bowlby's positions, including arguing that Mr. Bowlby was a former shareholder and not a creditor, and that Mr. Bowlby was a potential litigation target as the former majority shareholder and CEO. Further, the Committee sought and received documents from the Debtors and conducted depositions in relation to the DIP Facility.

The Court entered the Interim DIP Order on August 31, 2023. On December 28, 2023, the Court entered the Final DIP Order.

5.3     Private Sales of Certain Assets.

The Debtors moved [Docket No. 226] for approval of the private sale of certain mortgage loans and related assets to Oaktree Funding Corp., free and clear of all liens and encumbrances. The Debtors determined that consummating the sale – which also represents a global resolution of potential disputes with Oaktree and would promptly free up over $1,400,000 in cash, a portion of which the Debtors would likely otherwise be unable to free – on a private basis was appropriate in light of the facts and circumstances of the Chapter 11 Cases, including that the universe of potential buyers of such assets was limited. Overruling the U.S. Trustee's objection to the sale, the Court entered an order on October 26, 2023 [Docket No. 364] approving of the sale subject to the terms therein.

On October 31, 2023, the Debtors also moved for approval of the private sale of certain of the Debtors' mortgage servicing rights and related assets (in connection with approx. $873 million in mortgage loans) to The Money Source Inc. ("TMS").  After extensive marketing and assistance from the Debtors' broker, Phoenix Capital, Inc., the Debtors agreed to sell the assets to TMS for an estimated purchase price of $8 million, believing this offer represented the highest and best purchase price. The Court entered an order approving this sale subject to the terms set forth therein on November 21, 2023 [Docket No. 473].

5.4    U.S. Trustee's Motion to Transfer Venue.

On September 19, 2023, the U.S. Trustee filed a motion to transfer the Chapter 11 Cases to the Bankruptcy Court for the District of Arizona [Docket No. 142].  The U.S. Trustee's motion was joined by certain parties including the Committee [Docket No. 268], and was opposed by the Debtors as well as RCP [Docket Nos. 253 & 257].  On October 25, 2023, the Court entered an order denying the U.S. Trustee's motion [Docket No. 343] and issued a Memorandum Opinion [Docket No. 348], among other things, rejecting arguments that the Debtors manufactured venue in this Court.

5.5    Formation of the Committee.

On or about September 15, 2023, the U.S. Trustee formed the Committee, comprised of Kristen Rahn, Mortgageshots, LLC, and Paragon Micro, Inc. [Docket No. 122].

5.6    Retention of Professionals.

With Court approval, the Debtors have employed certain professionals, including Pachulski Stang Ziehl & Jones LLP as bankruptcy counsel in the Chapter 11 Cases (approved by Court order [Docket No. 197]), Bon Salle Group as Consultants [Docket Nos. 227, 333], Weiner Brodsky Kider PC as Special Counsel [Docket Nos. 225, 331], and Phoenix Capital, Inc. as MSR Broker [Docket Nos. 224, 332]. The Debtors also filed a motion to retain and employ Paladin to provide the Debtors with T. Scott Avila as CRO and certain additional staff to assist the CRO, which motion was approved on an interim basis [Docket No. 198] and then on a final basis pursuant to an order entered on October 2, 2023 [Docket No. 198].

The Committee initially sought to retain as its counsel, Kasowitz Benson Torres LLP ("Kasowitz") as special litigation counsel and Morris, Nichols, Arsht & Tunnell LLP ("Morris Nichols") as bankruptcy counsel. The Debtors objected to Kasowitz providing services to the Committee [Docket No. 243], and on November 17, 2025, the Court entered an order denying the Committee's retention of Kasowitz as special litigation counsel [Docket No. 441].

In addition to Morris Nichols as bankruptcy counsel [Docket No. 433], the Committee has retained as its professionals: IslandDundon LLC as its financial advisor [Docket Nos. 366, 427, 429]; and Glenn Agre Bergman & Fuentes LLP as special litigation counsel [Docket Nos. 491, 540, 544].

5.7    Committee's Standing Motion & Complaint / Mediation Resulting in Global Settlement.

Following an investigation conducted by the Debtors' independent director, pursuant to the Final DIP Order, the Debtors, among other things, released any and all actual or potential Causes of Action the Estates might assert against RCP concerning the Prepetition Secured Obligations and stipulated to the validity of those obligations [Docket No. 579]. Under the Final DIP Order, the Debtors' releases and stipulations would become binding on all third parties, including the Committee, absent the timely commencement of a Challenge (as defined therein).

A dispute arose between the Committee and RCP concerning the validity of the Prepetition Secured Obligations, transfers made in connection with therewith, and other interactions between RCP and AmeriFirst in connection therewith. Pursuant to its motion seeking standing to pursue certain claims on behalf of the Estates (the "Standing Motion") [Docket No. 470] and a proposed complaint annexed thereto, the Committee brought a Challenge (as defined in the Final DIP Order), asserting various Causes of Action concerning the validity of the Prepetition Secured Obligations and other interactions between RCP and AmeriFirst. The Bankruptcy Court by Memorandum Opinion dated August 14, 2024 [Docket No. 828] granted in part and denied in part the Standing Motion. Of the 11 counts in the Committee's proposed complaint [ECF No. 470-3], the Court concluded that 5 counts were colorable claims: Count 1 (Fraudulent Transfer-$10.3mm); Count 2 (Preference $3.8mm); Count 3 (Fraudulent Transfer to Insiders); Count 4 (550 claim); and Count 7 (Equitable Subordination). The Court found the following were not colorable claims: Count 5 (Fraud and Fraud in the Inducement); Count 6 (Breach of Implied Covenant of Good Faith and Fair Dealing); Count 8-9 (Perfection Challenges); Count 10-11 (Tortious Interference).

On January 8, 2025, the Committee filed its Complaint setting forth various Causes of Action against RCP (the "Committee Complaint") and initiated Adv. Proc. No. 25-50001.

Subsequently, the Committee, the Debtors, and RCP participated in mediation under the supervision of the Honorable Mary Walrath which ultimately resulted in the Settlement Agreement. The Settlement Agreement resolves and settles among other things, the Committee Complaint, and all objections to Professional Fee Claims as more specifically set forth in the Settlement Agreement and the Settlement Agreement Order. Pursuant to the Settlement Agreement, the terms of the Plan are consistent with and implement, to the extent necessary, the Settlement Agreement and the Settlement Agreement Order.

5.8     Debtors' Schedules and Statements of Financial Affairs.

The Debtors filed with the Court their respective Schedules and Statements of Financial Affairs on October 13, 2023 [Docket Nos. 250, 251, 373].

5.9     Debtors' Retention of OCPs.

Upon the Debtors' motion [Docket No. 652], the Court entered an order on February 27, 2024 [Docket No. 669], authorizing the Debtors to retain and compensate professionals utilized in the ordinary course of business, including tax return professionals.

5.10     Rejection of Contracts/Leases and Claims Objections.

Upon the Debtors' motions, numerous orders have been entered by the Court authorizing

the rejection of various executory contracts pursuant to Section 365 of the Bankruptcy Code and related relief [*see, e.g*., Docket Nos. 63, 188, 638, 675, 696, 707, 724, 744].

The Debtors have successfully objected to numerous Proofs of Claim, including various asserted Priority and Administrative Claims [*see, e.g.,* Docket Nos. 1021, 1040].

## SECTION 6
## CONFIRMATION AND VOTING PROCEDURES

6.1   Confirmation Hearing.

On [●], 2025, the Court entered an order conditionally approving the Disclosure Statement (the "Conditional Approval and Procedures Order") for solicitation purposes only and authorizing the Debtors to solicit the Plan.  The Confirmation Hearing has been scheduled for **January 13, 2026, at [●] a.m./p.m. (prevailing Eastern Time)** to consider (a) final approval of the Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (b) confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.  The Confirmation Hearing may be adjourned from time to time by the Debtors without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Court.

6.2   Procedures for Objections.

Any objection to final approval of the Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or confirmation of the Plan and Disclosure Statement must be made in writing and filed with the Court by no later than **January 6, 2026, at 4:00 p.m. (prevailing Eastern Time)**.  **Unless an objection is timely filed and served, it may not be considered by the Court at the Confirmation Hearing.**

6.3   Requirements for Confirmation.

The Court will confirm the Combined Plan and Disclosure Statement only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code.  Among the requirements for confirmation in the Chapter 11 Cases is that the Combined Plan and Disclosure Statement be:  (i) accepted by all Impaired Classes of Claims and Interests or, if rejected by an Impaired Class, that the Combined Plan and Disclosure Statement "does not discriminate unfairly" against, and is "fair and equitable" with respect to, such Class; and (ii) feasible.  The Court must also find that:

(a)   the Combined Plan and Disclosure Statement has classified Claims and Interests in a permissible manner;

(b)   the Combined Plan and Disclosure Statement complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and

(c)   the Combined Plan and Disclosure Statement has been proposed in good faith.

The Debtors believe that the Combined Plan and Disclosure Statement complies, or will comply, with all such requirements.

### 6.4    Classification of Claims and Interests.

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest Holders.  In accordance with section 1123 of the Bankruptcy Code, the Combined Plan and Disclosure Statement divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which pursuant to section 1123(a)(1) of the Bankruptcy Code need not be and have not been classified).

Section 1122 of the Bankruptcy Code requires the Combined Plan and Disclosure Statement to place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests in such class.  The Combined Plan and Disclosure Statement creates separate Classes to deal respectively with Priority Non-Tax Claims, various Secured Claims, Unsecured Claims, and Interests.  The Debtors believe that the Combined Plan and Disclosure Statement's classifications place substantially similar Claims or Interests in the same Class and, thus, meet the requirements of section 1122 of the Bankruptcy Code.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim Holder or interest Holder agrees to a less favorable treatment of its claim or interest.  The Debtors believe that the Combined Plan and Disclosure Statement complies with such standard.  If the Court finds otherwise, however, it could deny confirmation of the Combined Plan and Disclosure Statement if the Holders of Claims or Interests affected do not consent to the treatment afforded them under the Combined Plan and Disclosure Statement.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim also is placed in a particular Class for the purpose of receiving distributions pursuant to the Combined Plan and Disclosure Statement only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

The Debtors believe that the Combined Plan and Disclosure Statement has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law.  It is possible that a Holder of a Claim or Interest may challenge the Debtors' classification of Claims or Interests and that the Court may find that a different classification is required for the Combined Plan and Disclosure Statement to be confirmed.  If such a situation develops, the Debtors intend, in accordance with the terms of the Combined Plan and Disclosure Statement, to make such permissible modifications to the Combined Plan and Disclosure Statement as may be necessary to permit its confirmation.  Any such reclassification could adversely affect Holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Combined Plan and Disclosure Statement.

LA:4862-8386-2413.18 70786.001

**EXCEPT AS SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE COMBINED PLAN AND DISCLOSURE STATEMENT'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The amount of any Impaired Claim that ultimately is Allowed by the Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Court with respect to each Impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any Impaired Class. Thus, the actual recovery ultimately received by a particular Holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed in the applicable Class. Additionally, any changes to any of the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein or the actual Distribution received by creditors. The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Debtors' views as of the date hereof only.

The classification of Claims and Interests and the nature of distributions to members of each Class are summarized herein. The Debtors believe that the consideration, if any, provided under the Combined Plan and Disclosure Statement to Holders of Allowed Claims reflects an appropriate resolution of their Allowed Claims taking into account the differing nature and priority of such Claims and Interests. The Court must find, however, that a number of statutory tests are met before it may confirm the Combined Plan and Disclosure Statement. Many of these tests are designed to protect the interests of Holders of Claims or Interests who are not entitled to vote on the Combined Plan and Disclosure Statement, or do not vote to accept the Combined Plan and Disclosure Statement, but who will be bound by the provisions of the Combined Plan and Disclosure Statement if it is confirmed by the Court.

6.5    Impaired Claims or Interests.

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes Impaired by the Combined Plan and Disclosure Statement and receiving a payment or Distribution under the Combined Plan and Disclosure Statement may vote to accept or reject the Combined Plan and Disclosure Statement. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be Impaired if the Combined Plan and Disclosure Statement alters the legal, equitable, or contractual rights of the Holders of such Claims or Interests treated in such Class. The Holders of Claims not Impaired by the Combined Plan and Disclosure Statement are deemed to accept the Combined Plan and Disclosure Statement and do not have the right to vote on the Combined Plan and Disclosure Statement. The Holders of Claims or Interests in any Class which will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote. Finally, the Holders of Claims or Interests whose Claims or Interests are not

classified under the Combined Plan and Disclosure Statement are not entitled to vote on the Combined Plan and Disclosure Statement.

Under the Combined Plan and Disclosure Statement, Holders of Claims in Class 1 (Priority Non-Tax Claims) and Class 3 (Other Secured Claims) are Unimpaired and, therefore, not entitled to vote on the Combined Plan and Disclosure Statement and are deemed to accept the Combined Plan and Disclosure Statement. Holders of Claims in Class 2 (Prepetition Lenders Secured Claims) and Class 4A (Unsecured Claims) are Impaired and entitled to vote on the Plan. Holders of Intercompany Claims in Class 5A will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement but as proponents of the Combined Plan and Disclosure Statement are deemed to accept the Combined Plan and Disclosure Statement and do not have the right to vote. Holders of Interests in Class 6A and Class 6B will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement and are deemed to reject the Combined Plan and Disclosure Statement.

**ACCORDINGLY, BALLOTS FOR ACCEPTANCE OR REJECTION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE BEING PROVIDED TO HOLDERS OF CLAIMS IN CLASSES 2 AND 4A.**

6.6    Confirmation without Necessary Acceptances; Cramdown.

In the event that any impaired class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan. A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, determined without including any acceptance of the plan by any Insider holding a claim in that class, and the plan meets the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code requires that a court find that a plan (a) "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests. Here, because Holders of Claims in Classes 2 and 4A and Holders of Interests in Classes 6A and 6B are deemed to reject the Combined Plan and Disclosure Statement, the Debtors will seek confirmation of the Combined Plan and Disclosure Statement from the Court by satisfying the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. The Debtors believe that such requirements are satisfied, as no Holder of a Claim or Interest junior to those in Class 7 is entitled to receive any property under the Combined Plan and Disclosure Statement.

The concept of "unfair discrimination" is not defined in the Bankruptcy Code, but has been suggested in recent case law to arise when a difference in a plan's treatment of two classes of equal priority results in a materially lower percentage recovery for the non-accepting class. Based upon their understanding of existing case law, the Debtors do not believe that the Plan unfairly discriminates against any Class of Claims.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." To determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cramdown" tests for secured creditors, unsecured creditors, and equity Holders, as follows:

a.   <u>Secured Creditors</u>.   Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

b.   <u>Unsecured Creditors</u>.   Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the Holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

c.   <u>Interests</u>.   Either (i) each Holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such Holder is entitled, the fixed redemption price to which such Holder is entitled or the value of the interest or (ii) the Holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

As discussed above, the Debtors believe that the distributions provided under the Combined Plan and Disclosure Statement satisfy the absolute priority rule, where required.

6.7   <u>Feasibility</u>.

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Combined Plan and Disclosure Statement).   Because the Combined Plan and Disclosure Statement proposes a liquidation and wind-down of the Debtors' remaining assets, for purposes of this test, the Debtors have analyzed the ability of the Post-Effective-Date Debtors to meet their obligations under the Combined Plan and Disclosure Statement.   Based on the Debtors' analysis including their analysis of potential and asserted Administrative Claims, the Post-Effective-Date Debtors will have sufficient assets to accomplish their tasks and satisfy their obligations under the Combined Plan and Disclosure Statement.   Therefore, the Debtors believe that the Combined Plan and Disclosure Statement will meet the feasibility requirements of the Bankruptcy Code.

6.8   <u>Best Interests Test and Liquidation Analysis</u>.

Even if a plan is accepted by the Holders of each class of claims and interests, the Bankruptcy Code requires the Court to determine that such plan is in the best interests of all Holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such Holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to Holders of each impaired class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 cases were converted to cases under chapter 7 of the Bankruptcy Code.  To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtor's unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses, and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan.  If the hypothetical liquidation distribution to Holders of claims or interests in any impaired class is greater than the distributions to be received by such parties under the plan, then such plan is not in the best interests of the Holders of claims or interests in such impaired class.

If the Chapter 11 Cases were converted to a Chapter 7 proceeding, first and foremost, the Estates would not have the benefit of the value and concessions to be provided by RCP pursuant to the Settlement Agreement, including the Allowed Claims Fund and the use of cash collateral to pay Administrative and Priority Claims.   The Debtors believe that Holders of Unsecured Claims would likely receive no recovery in a Chapter 7 proceeding.  Further, the Debtors' estates would incur the costs of payment of a statutorily allowed commission to the Chapter 7 trustee, as well as the costs of counsel and other professionals retained by the trustee.  The Debtors believe that such amounts would exceed the amount of expenses that will be incurred in implementing the Plan. The Plan contemplates an orderly administration and Claims process by parties that are already familiar with the Debtors, their affairs, and their creditors and liabilities.  Such familiarity will allow the Plan Administrator or the Post-Effective-Date Debtors, as applicable, to complete a wind-down (including reconciling and objecting to Disputed Claims), and Distribute pro rata the Allowed Claims Fund to Holders of Unsecured Claims, and RCP's cash collateral to Holders of Allowed Administrative Claims and Allowed Priority Claims more efficiently and expeditiously than a Chapter 7 trustee.  Additionally, the Estates would suffer additional delays, as a Chapter 7 trustee and his/her counsel took time to develop a necessary learning curve in order to complete the administration of the Estates.  Also, a new time period for the filing of claims would commence under Bankruptcy Rule 1019(2), possibly resulting in the filing of additional Claims against the Estates.

Based upon the foregoing, the Debtors believe that creditors will receive at least as much or more under the Plan than they would receive if the Chapter 11 Cases were converted to Chapter 7 cases.

6.9   Eligibility to Vote on the Combined Plan and Disclosure Statement.

Unless otherwise ordered by the Court, only Holders of Allowed Claims in Classes 2 and 4A may vote on the Plan.  Further, subject to the tabulation procedures that were approved by the Conditional Approval and Procedures Order, in order to vote on the Combined Plan and Disclosure Statement, you must hold an Allowed Claim in Classes 2 and 4A, or be the Holder of a Claim that has been temporarily Allowed for voting purposes only pursuant to the approved tabulation procedures or under Bankruptcy Rule 3018(a).

6.10   Solicitation Package / Release Opt-Out.

All Holders of Allowed Claims in Classes 2 and 4A will receive a Solicitation Package. The Solicitation Packages will contain: (i) the Combined Plan and Disclosure Statement; (ii) the Conditional Approval Order and Procedures Order; (iii) notice of the Confirmation Hearing; (iv) a form of Ballot, including voting instructions and a box for Holders of Class 4A Unsecured Claims against AmeriFirst to check to opt out of being a Releasing Party in connection with the third-party releases contained in Section 16.2(c); and (v) such other materials as the Court may direct or approve or that the Debtors deem appropriate.

All other Creditors and parties in interest not entitled to vote on the Combined Plan and Disclosure Statement will receive only a copy of the notice of Confirmation Hearing.

Copies of the Combined Plan and Disclosure Statement will be available on the Claims and Balloting Agent's website at https://omniagentsolutions.com/AmeriFirst. Any Creditor or party-in-interest can request a hard copy of the Combined Plan and Disclosure Statement be sent to them by regular mail by calling the Claims and Balloting Agent at (888) 741-5390 (U.S. & Canada) and (747) 226-5635 (International) during regular business hours or via email to AmeriFirstInquiries@omniagnt.com.

### 6.11 Voting Procedures, Voting Deadline, and Applicable Deadlines.

The Voting Record Date for determining which Holders of Claims in Classes 2 and 4A may vote on the Combined Plan and Disclosure Statement is December 5, 2025.

In order for your Ballot to count, you must (1) complete, date, and properly execute the Ballot and (2) properly deliver the Ballot to the Claims and Balloting Agent by either (a) mailing the Ballot to the Claims and Balloting Agent at the following address: AmeriFirst Ballot Processing c/o Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367; or (b) uploading the Ballot on the Claims and Balloting Agent's online balloting platform at **omniagentsolutions.com/AmeriFirst-Ballots**. Instructions for casting a Ballot will be available on the Claims and Balloting Agent's website.

Ballots must be submitted electronically, or the Claims and Balloting Agent must actually receive physical, original Ballots by mail or overnight delivery, on or before the Voting Deadline, which is **January 2, 2026 at 5:00 p.m. (prevailing Eastern Time)**. Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, you may not change your vote once a Ballot is submitted electronically or the Claims and Balloting Agent receives your original paper Ballot. Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, any Ballot that is timely and properly submitted electronically or received physically will be counted and will be deemed to be cast as an acceptance, rejection or abstention, as the case may be, of the Combined Plan and Disclosure Statement.

**IF YOU ARE ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL THE BALLOT YOU RECEIVE. PLEASE BE SURE TO COMPLETE ALL BALLOT ITEMS PROPERLY AND LEGIBLY. IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A**

**DAMAGED BALLOT, OR YOU LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THE COMBINED PLAN AND DISCLOSURE STATEMENT OR PROCEDURES FOR VOTING ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, PLEASE CONTACT THE CLAIMS AND BALLOTING AGENT BY (I) TELEPHONE AT (888) 741-5390 (U.S./CANADA) OR (747) 226-5635 (INTERNATIONAL) OR (II) EMAIL AT [AMERIFIRSTINQUIRIES@OMNIAGNT.COM](mailto:AMERIFIRSTINQUIRIES@OMNIAGNT.COM). THE CLAIMS AND BALLOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

6.12    Acceptance of the Combined Plan and Disclosure Statement.

If you are a Holder of a Claim in Classes 2 or 4A, your acceptance of the Combined Plan and Disclosure Statement is important.  In order for the Combined Plan and Disclosure Statement to be accepted by an Impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Combined Plan and Disclosure Statement.  At least one Impaired Class of Creditors, excluding the votes of Insiders, must actually vote to accept the Combined Plan and Disclosure Statement.  The Debtors urge that you vote to accept the Combined Plan and Disclosure Statement.

**SECTION 7
CERTAIN RISK FACTORS, TAX CONSEQUENCES, AND OTHER DISCLOSURES**

7.1    Certain Risk Factors to be Considered.

THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW.  HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT.  THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION.

7.2    The Combined Plan and Disclosure Statement May Not Be Accepted.

The Debtors can make no assurances that the requisite acceptances of the Combined Plan and Disclosure Statement will be received, and the Debtors may need to obtain acceptances of an alternative plan of liquidation for the Debtors, or otherwise, that may not have the support of the creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code.  There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to creditors as those proposed in the Combined Plan and Disclosure Statement.

7.3    The Combined Plan and Disclosure Statement May Not Be Confirmed.

LA:4862-8386-2413.18 70786.001

Even if the Debtors receive the requisite acceptances, there is no assurance that the Court, which may exercise substantial discretion as a court of equity, will confirm the Combined Plan and Disclosure Statement.  Even if the Court determined that the Combined Plan and Disclosure Statement and the balloting procedures and results were appropriate, the Court could still decline to confirm the Combined Plan and Disclosure Statement if it finds that any of the statutory requirements for confirmation had not been met.  As is described in greater detail in Section 6.3, section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan.  While, as more fully set forth Section 6, the Debtors believe that the Combined Plan and Disclosure Statement complies with or will comply with all such requirements, there can be no guarantee that the Court will agree.

Moreover, there can be no assurance that modifications to the Combined Plan and Disclosure Statement will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes.  If the Combined Plan and Disclosure Statement is not confirmed, it is unclear what Distributions Holders of Claims ultimately would receive with respect to their Claims in a subsequent plan of liquidation.  If an alternative could not be agreed to, it is possible that the Debtors would have to liquidate their remaining assets in chapter 7, in which case the Debtors believe it is likely that the Holders of Allowed Claims would receive substantially less favorable treatment than they would receive under the Combined Plan and Disclosure Statement.

7.4    Distributions to Holders of Allowed Claims Under the Combined Plan and Disclosure Statement May be Inconsistent with Projections.

Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for Distribution.  There can be no assurance that the estimated Claim amounts (including for Administrative Claims other than Professional Fee Claims) set forth in the Combined Plan and Disclosure Statement are correct.  These estimated amounts are based on certain assumptions with respect to a variety of factors.  Both the actual amount of Allowed Claims in a particular Class and the funds available for distribution to such Class may differ from the Debtors' estimates.  If the total amount of Allowed Claims in a Class is higher than the Debtors' estimates, or the funds available for Distribution to such Class are lower than the Debtors' estimates, the percentage recovery to Holders of Allowed Claims in such Class will be less than projected.

7.5    Objections to Classification of Claims.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class.  As is described in greater detail in Section 6.4, the Debtors believe that the classification of Claims and Interests under the Combined Plan and Disclosure Statement complies with the requirements set forth in the Bankruptcy Code.  Nevertheless, there can be no assurance the Court will reach the same conclusion.

To the extent that the Court finds that a different classification is required for the Combined Plan and Disclosure Statement to be confirmed, the Debtors would seek to (i) modify the Combined Plan and Disclosure Statement to provide for whatever classification might be required

for Confirmation and (ii) use the acceptances received from any Holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such Holder ultimately is deemed to be a member.  Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Holder was initially a member, or any other Class under the Combined Plan and Disclosure Statement, by changing the composition of such Class and the vote required for approval of the Combined Plan and Disclosure Statement.  There can be no assurance that the Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Combined Plan and Disclosure Statement based upon such reclassification.  Except to the extent that modification of classification in the Combined Plan and Disclosure Statement requires re-solicitation, the Debtors will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Court that acceptance of the Combined Plan and Disclosure Statement by any Holder of Claims pursuant to this solicitation will constitute a consent to the Combined Plan and Disclosure Statement's treatment of such Holder, regardless of the Class as to which such Holder is ultimately deemed to be a member.  The Debtors believe that under the Bankruptcy Rules, they would be required to resolicit votes for or against the Combined Plan and Disclosure Statement only when a modification adversely affects the treatment of the Claim or Interest of any Holder.

The Bankruptcy Code also requires that the Combined Plan and Disclosure Statement provide the same treatment for each Claim or Interest of a particular Class unless the Holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest.  The Debtors believe that the Combined Plan and Disclosure Statement complies with the requirement of equal treatment.  To the extent that the Court finds that the Combined Plan and Disclosure Statement does not satisfy such requirement, the Court could deny confirmation of the Combined Plan and Disclosure Statement.  Issues or disputes relating to classification and/or treatment could result in a delay in the confirmation and consummation of the Combined Plan and Disclosure Statement and could increase the risk that the Combined Plan and Disclosure Statement will not be consummated.

      7.6   <u>Failure to Consummate the Combined Plan and Disclosure Statement.</u>

Although the Debtors believe that the Effective Date will occur and may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

      7.7   <u>The Releases May Not Be Approved.</u>

There can be no assurance that the releases, as provided in Section 16.2, will be granted. Failure of the Court to grant such relief may result in a plan that differs from the Combined Plan and Disclosure Statement or the Plan not being confirmed.

      7.8   <u>Reductions to Estimated Creditor Recoveries.</u>

The Allowed amount of Claims in any Class could be greater than projected, which, in turn, could cause the amount of distributions to creditors in such Class to be reduced substantially. The amount of cash realized from the monetization of the Debtors' remaining assets could be less

LA:4862-8386-2413.18 70786.001

than anticipated, which could cause the amount of distributions to creditors to be reduced substantially.

7.9    Certain U.S. Federal Income Tax Consequences.

The following discussion is a summary of certain material U.S. federal income tax consequences of the Combined Plan and Disclosure Statement to the Debtors and to certain Holders (which solely for purposes of this discussion means the beneficial owner for U.S. federal income tax purposes) of Claims. The following summary does not address the U.S. federal income tax consequences to Holders of Claims or Interests not entitled to vote on the Combined Plan and Disclosure Statement. This summary is based on the Internal Revenue Code, Treasury Regulations promulgated and proposed thereunder, judicial decisions, and published administrative rules and pronouncements of the IRS, all as in effect on the date hereof and all of which are subject to change or differing interpretations, possibly with retroactive effect. No legal opinions have been requested or obtained from counsel with respect to any of the tax aspects of the Combined Plan and Disclosure Statement and no rulings have been or will be requested from the IRS with respect to the any of the issues discussed below. The discussion below is not binding upon the IRS or the courts. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than any position discussed herein.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtors or to certain Holders of Claims in light of their individual circumstances, nor does the discussion deal with tax issues with respect to Holders of Claims or Interests subject to special treatment under the U.S. federal income tax laws (including, for example, insurance companies; banks or other financial institutions; brokers, dealers, or traders in securities; real estate investment trusts; governmental authorities or agencies; tax-exempt organizations; retirement plans; individual retirement or other tax-deferred accounts; certain expatriates or former long-term residents of the United States; small business investment companies; regulated investment companies; S corporations, partnerships, or other pass-through entities for U.S. federal income tax purposes and their owners; persons whose functional currency is not the U.S. dollar; persons who use a mark-to-market method of accounting; persons required to report income on an applicable financial statement; persons holding Claims or Interests as part of a straddle, hedge, constructive sale, conversion transaction, or other integrated transaction; and persons who are not U.S. Holders (as defined below)). Furthermore, this discussion assumes that a Holder of a Claim holds such claim as a "capital asset" within the meaning of Section 1221 of the Internal Revenue Code (generally property held for investment). This discussion does not address any U.S. federal non-income (including estate or gift), state, local, or foreign taxation, alternative minimum tax, or the Medicare tax on certain net investment income.

If a partnership (or other entity or arrangement classified as a partnership for U.S. federal income tax purposes) is a Holder of Claims or Interests, the U.S. federal income tax treatment of a partner in the partnership will generally depend on the status of the partner and the activities of the partnership. A Holder of a Claim or Interest that is a partnership and the partners in such partnership should consult their tax advisors with regard to the U.S. federal income tax consequences of the Combined Plan and Disclosure Statement.

**THE FOLLOWING SUMMARY IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN, AND OTHER TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

7.10 <u>Tax Consequences for U.S. Holders of Certain Claims.</u>

Generally, a Holder of a Claim should in most, but not all, circumstances recognize gain or loss equal to the difference between the "amount realized" by such Holder in exchange for its Claim and such Holder's adjusted tax basis in the Claim. The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under a plan of reorganization in respect of a Holder's Claim. The tax basis of a Holder in a Claim will generally be equal to the Holder's cost therefor. To the extent applicable, the character of any recognized gain or loss (*e.g.*, ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the Holder, the nature of the Claim in the Holder's hands, the purpose and circumstances of its acquisition, the Holder's holding period of the Claim, and the extent to which the Holder previously claimed a deduction for the worthlessness of all or a portion of the Claim. Generally, if the Claim is a capital asset in the Holder's hands, any gain or loss realized will generally be characterized as capital gain or loss, and will constitute long-term capital gain or loss if the Holder has held such Claim for more than one year.

A creditor who receives Cash in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest. A creditor who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Plan, will be treated as having received interest income to the extent that any consideration received is characterized for U.S. federal income tax purposes as interest, regardless of whether such creditor realizes an overall gain or loss as a result of surrendering its Claim. A creditor who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such creditor realizes an overall gain or loss as a result of the distribution it may receive under the Plan on account of its Claim.

Under the Plan, the Holders of certain Claims, including Unsecured Claims in Class 4A will likely receive only a partial distribution of their Allowed Claims. Whether the applicable Holder of such Claims will recognize a loss or any other tax treatment will depend upon facts and circumstances that are specific to the nature of the Holder and its Claims. Creditors should consult their own tax advisors.

7.11 <u>Information Reporting and Withholding.</u>

In connection with the Combined Plan and Disclosure Statement, the Debtors will comply with all applicable withholding and information reporting requirements imposed by U.S. federal, state, local, and foreign taxing authorities, and all Distributions under the Combined Plan and

37

Disclosure Statement will be subject to those withholding and information reporting requirements. Holders of Claims may be required to provide certain tax information as a condition to receiving Distributions pursuant to the Combined Plan and Disclosure Statement.

In general, information reporting requirements may apply to Distributions pursuant to the Combined Plan and Disclosure Statement. Additionally, under the backup withholding rules, a Holder may be subject to backup withholding with respect to Distributions made pursuant to the Combined Plan and Disclosure Statement, unless a U.S. Holder provides the applicable withholding agent with a taxpayer identification number, certified under penalties of perjury, as well as certain other information, or otherwise establish an exemption from backup withholding. Backup withholding is not an additional tax. Any amounts withheld under the backup withholding rules will be allowed as a credit against a U.S. Holder's U.S. federal income tax liability, if any, and may entitle a U.S. Holder to a refund, provided the required information is timely furnished to the IRS.

In addition, from an information reporting perspective, Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders of Claims or Interests are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Combined Plan and Disclosure Statement would be subject to these regulations and require disclosure on the Holder's tax returns.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF U.S. FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM OR INTEREST IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN, AND OTHER TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT**.

7.12  Releases, Exculpations, and Injunctions.

This Combined Plan and Disclosure Statement contains certain releases, exculpations, and injunction language. Parties are urged to read these provisions carefully to understand how Confirmation and consummation of the Plan will affect any Claim, interest, right, or action with regard to the Debtor and certain third parties.

**THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS AGAINST THE DEBTORS TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED UNDER THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND ALL OTHER APPLICABLE LAW.**

LA:4862-8386-2413.18 70786.001

7.13  Alternatives to the Combined Plan and Disclosure Statement.

If the requisite acceptances are not received or the Combined Plan and Disclosure Statement is not confirmed and consummated, the theoretical alternatives to the Combined Plan and Disclosure Statement would be (a) formulation of an alternative chapter 11 plan, (b) conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or (c) dismissal of the Chapter 11 Cases.  The Debtors do not believe that any of these alternatives, even if viable, would afford Holders of Claims or Interests a greater recovery than what is provided by the Combined Plan and Disclosure Statement.

If the Combined Plan and Disclosure Statement is not confirmed, then the Debtors or any other party in interest could attempt to formulate a different plan.  The additional costs, including, among other amounts, additional professional fees, all of which would constitute Administrative Claims (subject to allowance thereof), however, may be so significant that one or more parties in interest could request that the Chapter 11 Cases be converted to chapter 7.  At this time, the Debtors do not believe that there are viable alternative plans available to the Debtors.

If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate and distribute the Debtors' remaining assets in accordance with the priorities established by the Bankruptcy Code.  As discussed above and indicated in the Liquidation Analysis, the Debtors believe that the Combined Plan and Disclosure Statement provides a better outcome for Holders of Claims than a chapter 7 liquidation would provide.

If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Cases also could be dismissed.  Among other effects, dismissal would result in the termination of the automatic stay, thus permitting creditors to assert state-law rights and remedies against the Debtors and their assets, likely to the detriment of other creditors.  While it is impossible to predict precisely what would happen in the event the Chapter 11 Cases are dismissed, it is unlikely that dismissal would result in a ratable distribution of the Debtors' assets among creditors as provided in the Combined Plan and Disclosure Statement.  Thus, the vast majority of creditors, including Holders of Unsecured Claims, could expect to receive less in the dismissal scenario than they would receive under the Combined Plan and Disclosure Statement.

## SECTION 8
## UNCLASSIFIED CLAIMS

8.1  Unclassified Claims.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Facility Claims, and Priority Tax Claims have not been classified for purposes of voting or receiving Distributions.  Rather, all such Claims are treated separately as unclassified Claims as set forth in this Section, and the Holders thereof are not entitled to vote on the Combined Plan and Disclosure Statement.

RCP has consented to the use of its Cash Collateral (as defined in the DIP Orders) for the purposes of paying (i) all Allowed but unpaid Administrative Claims (other than Professional Fee

Claims except to the extent expressly provided for in the Settlement Agreement) and Priority Claims, and (ii) all fees and expenses associated with reconciling and/or objecting to Administrative Claims, in the aggregate maximum amount of $370,000 for preceding items (i) and (ii) combined, and (iii) any and all fees charged by the U.S. Trustee through the Effective Date, as provided in and consistent with the Settlement Agreement and the Settlement Agreement Order.

8.2    Administrative Claims.

(a)    Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim, other than a Professional Fee Claim, shall receive, without interest, Cash from the Administrative-Priority Claims Reserve equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtors or Post-Effective-Date Debtor(s), as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law.

(i)    Holders of Administrative Claims (including, without limitation, Professionals requesting compensation or reimbursement of such expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code) that do not file such requests by the applicable deadline provided for herein may be subject to objection for untimeliness and may be prohibited by order of the Bankruptcy Court from asserting such claims against the Debtors, the Post-Effective-Date Debtor(s), the Estates, or their successors or assigns, or their property. Any objection to Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court.

(ii)    All fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on or before the Effective Date by the Debtors. All fees due and payable under 28 U.S.C. § 1930 accruing after the Effective Date shall be paid by the Plan Administrator from the Allowed Claims Fund.

(b)    Professional Fees.

(i)    Professionals requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code or required to file fee applications by order of the Bankruptcy Court for services rendered prior to the Effective Date must file and serve pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses **no later than thirty (30) days after the Effective Date**. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court. For avoidance of doubt, the Plan Administrator is not authorized under the Plan to object to applications for final allowance of compensation and reimbursement of expenses.

LA:4862-8386-2413.18 70786.001

(c)    DIP Facility Claims.

The DIP Facility Claims will be deemed paid and satisfied on the Effective Date.

(d)    Priority Tax Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Tax Claim, the Debtors or Post-Effective-Date Debtor(s) shall pay each Holder of an Allowed Priority Tax Claim from the Administrative-Priority Claims Reserve the full unpaid amount of such Allowed Priority Tax Claim on the earliest of the following dates:  (i) on or as soon as practicable after the Effective Date, (ii) on or as soon as practicable after the date such Allowed Priority Tax Claim becomes an Allowed Claim, and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law.

## SECTION 9
## CLASSIFICATION OF CLAIMS AND INTERESTS

9.1    Summary of Classification.

The Plan constitutes a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors, except as expressly set forth herein.  The provisions of this Section 9 govern Claims against and Interests in the Debtors. Any Class that is vacant will be treated in accordance with Section 9.3.

The following table designates the Classes of Claims against, and Interests in, the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Combined Plan and Disclosure Statement in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to accept or reject the Combined Plan and Disclosure Statement.  A Claim or portion thereof is classified in a particular Class only to the extent that such Claim or portion thereof qualifies within the description of such Class and is classified in a different Class to the extent that the portion of such Claim qualifies within the description of such different Class.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims -- Only in Relation to AmeriFirst | Unimpaired | No (deemed to accept) |
| 2 | Prepetition Lenders Secured Claims – Only in Relation to AmeriFirst | Impaired | Yes |
| 3 | Other Secured Claims – Only in Relation to AmeriFirst | Unimpaired | No (deemed to accept) |
| 4A | Unsecured Claims – Only in Relation to AmeriFirst | Impaired | Yes |
| 4B | Unsecured Claims – Only in Relation to Phoenix | Impaired | No (deemed to reject) |

41

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 5A | Intercompany Claims Against Phoenix | Impaired | No (proponents of plan/deemed to accept) |
| 5B | Intercompany Claims Against AmeriFirst | Impaired | No (proponents of plan/deemed to accept) |
| 6A | Interests in AmeriFirst | Impaired | No (deemed to reject) |
| 6B | Interests in Phoenix | Impaired | No (deemed to reject) |

9.2    Special Provision Governing Unimpaired Claims.

Except as otherwise provided in the Combined Plan and Disclosure Statement, nothing under the Combined Plan and Disclosure Statement shall affect the rights of the Debtors, the Post-Effective-Date Debtor(s), or the Plan Administrator, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

9.3    Vacant and Abstaining Classes.

Any Class of Claims or Interests that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or Interest or a Claim or Interest temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Combined Plan and Disclosure Statement for purposes of voting to accept or reject the Combined Plan and Disclosure Statement and for purposes of determining acceptance or rejection of the Combined Plan and Disclosure Statement by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code. If a Class contains Claims or Interests eligible to vote on the Plan and no Holder of Claims or Interests eligible to vote in such Class votes to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

## SECTION 10
## TREATMENT OF CLAIMS AND INTERESTS

10.1    Class 1—Priority Non-Tax Claims.

(a)    Classification. Class 1 consists of all Priority Non-Tax Claims.

(b)    Treatment. The Debtors or Post-Effective-Date Debtor(s) shall pay from the Administrative-Priority Claims Reserve the Allowed amount of each Priority Non-Tax Claim to each Entity holding a Priority Non-Tax Claim as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim (or as otherwise permitted by law). The Debtors or Post-Effective-Date Debtor(s) shall pay each Entity holding a Priority Non-Tax Claim in Cash in full in respect of such Allowed Claim without interest from the Petition Date; *provided however*, that such Entity may be treated on such less favorable terms as may be agreed to in writing by such Entity.

LA:4862-8386-2413.18 70786.001

(c)    <u>Impairment and Voting</u>.  Class 1 is Unimpaired.  Holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Combined Plan and Disclosure Statement pursuant to section 1126(f) of the Bankruptcy Code and, accordingly, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

10.2    <u>Class 2—Prepetition Lenders Secured Claims – Only Applicable to AmeriFirst.</u>

(a)    <u>Classification</u>.  Class 2 consists of Prepetition Lenders Secured Claims against AmeriFirst.

(b)    <u>Treatment</u>. Consistent with the Settlement Agreement and the Settlement Agreement Order, in satisfaction and release of Allowed Class 2 Claims, on or as soon as practicable after the Effective Date, or as otherwise agreed between the Holders of such Class 2 Claims and the Debtors or Post-Effective-Date Debtors, the Debtors or Post-Effective-Date Debtors shall assign the Assigned Assets to the Holders of Class 2 Claims, to the maximum extent possible, free and clear of all liens, claims and interests.  The Holders of Class 2 Claims shall not participate in any recoveries from the Allowed Claims Fund.

(c)    <u>Impairment and Voting</u>.  Class 2 is Impaired, and the Holders thereof are entitled to vote on the Plan.

10.3    <u>Class 3—Other Secured Claims – Only Applicable to AmeriFirst.</u>

(a)    <u>Classification</u>.    Class 3 consists of all Other Secured Claims against AmeriFirst.  For purposes of distributions under the Plan, each Holder of an Other Secured Claim in Class 3 is considered to be in its own separate subclass within Class 3 (*i.e.*, Class 3A, Class 3B, etc.), and each such subclass is deemed to be a separate Class for purposes of the Plan.

(b)    <u>Treatment</u>.  Except to the extent previously paid in full, to the extent any Other Secured Claims exist, at the option of the Debtors or Post-Effective-Date Debtor(s), one of the following treatments shall be provided: (i) the Holder of such Claim shall retain its Lien on its Collateral until such Collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such Collateral, shall be paid to such Holder in full satisfaction and release of such Allowed Other Secured Claim; (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim, or as otherwise agreed between the Holder of such Claim and the Debtors or Post-Effective-Date Debtor(s), the Holder of such Other Secured Claim will receive a Cash payment equal to the amount of its Allowed Other Secured Claim in full satisfaction and release of such Other Secured Claim; or (iii) the Collateral securing the Creditor's Other Secured Claim shall be abandoned to such Creditor, in full satisfaction and release of such Other Secured Claim.

(c)    <u>Impairment and Voting</u>.  Class 3 is Unimpaired.  Holders of Other Secured Claims are conclusively presumed to have accepted the Combined Plan and Disclosure Statement pursuant to section 1126(f) of the Bankruptcy Code and, accordingly, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

10.4 <u>Class 4A—Unsecured Claims Against AmeriFirst.</u>

(a) <u>Classification.</u>  Class 4A consists of all Unsecured Claims against AmeriFirst.  Class 4A includes the Prepetition Lenders Deficiency Claims, but the Holders of any Prepetition Lenders Deficiency Claims will not receive any recovery from the Allowed Claims Fund.

(b) <u>Treatment.</u>  Holders of Class 4A Claims shall receive Distributions of Cash on a Pro Rata basis from the Allowed Claims Fund, subject to the terms of the Plan and the Plan Administrator Agreement.  Unsecured Claims are subject to all statutory, equitable, and contractual subordination claims, rights, defenses and grounds available to the Debtors, the Estates, and pursuant to the Plan, except as may be expressly provided otherwise, the Plan Administrator, which subordination claims, rights, and grounds are fully enforceable prior to, on, and after the Effective Date.

(c) <u>Impairment and Voting.</u>  Class 4A is Impaired, and the Holders thereof are entitled to vote on the Plan.

10.5 <u>Class 4B— Unsecured Claims against Phoenix.</u>

(a) <u>Classification.</u>  Class 4B consists of all Unsecured Claims against Phoenix.

(b) <u>Treatment.</u>  There shall be no Distribution on account of Class 4B Claims.

(c) <u>Impairment and Voting.</u>  Holders of Class 4B Claims are deemed to have rejected the Plan, and are not entitled to vote.

10.6 <u>Class 5A—Intercompany Claims against Phoenix.</u>

(d) <u>Classification.</u>  Class 5A consists of all Intercompany Claims against Phoenix.

(e) <u>Treatment.</u>  There shall be no Distribution on account of Class 5A Intercompany Claims.

(f) <u>Impairment and Voting.</u>  Holders of Intercompany Claims in Class 5A are deemed to have accepted the Plan in that the Debtors are the proponents of the Plan.

10.7 <u>Class 5B—Intercompany Claims against AmeriFirst.</u>

(g) <u>Classification.</u>  Class 5B consists of all Intercompany Claims against AmeriFirst.

(h) <u>Treatment.</u>  There shall be no Distribution on account of Class 5B Intercompany Claims.

(i) <u>Impairment and Voting.</u>  Holders of Intercompany Claims in Class 5B are deemed to have accepted the Plan in that the Debtors are the proponents of the Plan.

LA:4862-8386-2413.18 70786.001

10.8    Class 6A—Interests in AmeriFirst.

(a)    Classification.  Class 6A consists of all Interests in AmeriFirst.

(b)    Treatment.  There shall be no Distribution on account of Class 6A Interests.  Upon the Effective Date, all Interests will be deemed cancelled and will cease to exist.

(c)    Impairment and Voting.  Holders of Interests in Class 6A are deemed to have rejected the Plan, and are not entitled to vote.

10.9    Class 6B—Interests in Phoenix.

(a)    Classification.  Class 6B consists of all Interests in Phoenix.

(b)    Treatment.  There shall be no Distribution on account of Class 6B Interests.  Upon the Effective Date, all Interests will be deemed cancelled and will cease to exist.

(c)    Impairment and Voting.  Holders of Interests in Class 6B are deemed to have rejected the Plan, and are not entitled to vote.

# SECTION 11
# DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS

11.1    Distribution Dates.

The Plan Administrator shall make Distributions to Holders of Allowed Unsecured Claims.  The Debtors or Post-Effective-Date Debtors shall make Distributions to Holders of Allowed Administrative Claims and Holders of Allowed Priority Claims.  Subject to the terms of the Plan, the Plan Administrator or the Debtors or Post-Effective-Date Debtors, as applicable may, in his, her or its sole discretion, make a full or partial Distribution to the Holders of Claims on the Initial Distribution Date or a Subsequent Distribution Date.

11.2    Subsequent Distributions.

Any Distribution not made on the Initial Distribution Date or a Subsequent Distribution Date because the Claim relating to such Distribution had not been Allowed on that Distribution Date shall be held by the Plan Administrator or Post-Effective-Date Debtors for Distribution on any Subsequent Distribution Date after such Claim is Allowed.  No interest shall accrue or be paid on the unpaid amount of any Distribution.

11.3    Distribution Record Date.

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date.  Neither the Plan Administrator nor the Post-Effective-Date Debtor(s) shall have any obligation to recognize any transfer of any Claim occurring after the

Distribution Record Date. In making any Distribution with respect to any Claim, the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the Proof of Claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that is known to the Plan Administrator or Post-Effective-Date Debtor(s) as of the Distribution Record Date.

11.4 <u>Manner of Cash Payments Under the Plan.</u>

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, or by wire transfer from a domestic bank, at the option of the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable. Any and all Distributions and/or written communications pertaining to Distributions shall be made to Creditors at each Creditor's respective address listed in the Claims Register, as reported pursuant Section 12.7, unless the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, receive a written change of address form from a Creditor consistent with the terms of the Plan.

11.5 <u>Time Bar to Cash Payments by Check.</u>

Distribution checks issued to Creditors shall be null and void if not negotiated within **ninety (90) days** after the date of issuance thereof. The Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, shall not reissue any check except upon directly receiving a request in writing from the Creditor that was originally issued such check within **one-hundred and eighty (180) days** of the disbursement of the Distribution. If the 180-day period elapses without the Creditor requesting the check be reissued, the unresponsive Holder's Distribution shall be deemed unclaimed property as provided in the Plan. The foregoing notwithstanding, **ninety (90) days** after the final Distribution under section 1194 of the Bankruptcy Code, the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, shall stop payment on any check remaining unpaid, the corresponding Distribution shall be deemed unclaimed property, and all unclaimed property shall be redistributed to Creditors or, as may be necessary, donated to a qualifying charity in accordance with the provisions of the Plan.

11.6 <u>Tax Identification Numbers.</u>

The Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, may require any Creditor to furnish its taxpayer identification number as assigned by the Internal Revenue Service by submitting a Form W-8, Form W-9, or other form completed in writing to the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, and may condition any Distribution to any Creditor upon receipt of such completed form. If a Creditor does not timely provide the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, with its taxpayer identification number in the manner and by the deadline established by the Post-Effective-Date Debtor(s), then the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, may set aside the Holder's Distribution for a period of **one-hundred-and-eighty (180) days** following service of the request. If the Creditor provides the information in the manner requested in the 180-day period, the Plan Administrator or the Post-Effective-Date Debtor(s), as

applicable, shall disburse the set aside Distribution, without interest, to the Creditor.  However, if the Creditor fails to provide the requested information within the 180-day period, then the unresponsive Creditor's Distribution shall be irreversibly deemed "unclaimed property" and redistributed to the other Creditors in accordance with the provisions of the Plan.

## SECTION 12
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND REDISTRIBUTIONS

12.1  <u>No Distributions Pending Allowance.</u>

Notwithstanding any other provision of the Plan, the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, shall not distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed. Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim.

12.2  <u>Resolution of Disputed Claims.</u>

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, subject to the Plan, the Plan Administrator shall have the right to make, file, prosecute, settle, withdraw, or resolve objections to Unsecured Claims.  The costs of pursuing the objections to Unsecured Claims shall be borne by the Plan Administrator out of the Allowed Claims Fund.  The Post-Effective-Date Debtor(s) shall have the right to make, file, prosecute, settle, withdraw, or resolve objections to Administrative Claims and Priority Claims and shall bear the associated expenses.  From and after the Confirmation Date, objections with respect to Disputed Claims may be litigated to a Final Order except to the extent the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable,  elects to withdraw any such objection or the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, and the Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Interest without approval of the Bankruptcy Court.

12.3  <u>Authority to Object to, Settle, and Resolve Claims.</u>

The Plan Administrator shall have sole authority to object to and compromise, settle, or otherwise resolve any Disputed Unsecured Claims, other than those Claims that constitute Assigned Assets, those that were released and waived pursuant to the Settlement Agreement and the Settlement Agreement Order, and those that will be released pursuant to the Plan.

12.4  <u>Objection Deadline.</u>

All objections to Claims shall be filed and served upon the Claimant not later than the Claims Objection Deadline, as such may be extended by order of the Bankruptcy Court.

12.5  <u>Estimation of Claims.</u>

At any time, (a) prior to the Effective Date, the Debtors, and (b) after the Effective Date, the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by Section

502(c) of the Bankruptcy Code regardless of whether the Debtors,  the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during Litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Debtors, the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdraw, or resolved by any mechanism of the Bankruptcy Court.

12.6  Disallowance of Claims.

Except as otherwise agreed or ordered by the Bankruptcy Court, any and all Proofs of Claim filed after the Bar Date shall be treated as a Disputed Claim for purposes of Distribution without any further notice or action, and Holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Date the Bankruptcy Court has entered an order deeming such Claim to be timely filed.

On the Confirmation Date, any Claim that is scheduled by the Debtors in the Schedules as disputed or listed at zero and as to which no Proof of Claim has been timely filed (or deemed timely filed by Final Order entered by the Bankruptcy Court) shall be deemed a Disallowed Claim.

Any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or Entities that are transferees of transfers avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, provided that such Cause of Action is retained by the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action the Debtors' Estates hold or may hold against any Entity have been resolved or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Estates by that Entity have been turned over or paid to the Debtors, the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable.

12.7  Reserved.

12.8  Reserve Provisions for Disputed Claims.

Before making any Distribution, the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, shall reserve Cash required for distribution on Disputed Claims as if such Claims were Allowed as filed with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Post-Effective-Date Debtor(s) (the "Disputed Claim Reserve").  On each Distribution date after the Effective Date in which the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, makes Distributions to Holders

of Allowed Claims, the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, shall retain on account of Disputed Claims an amount the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, estimates is necessary to fund the Pro Rata Share of such Distributions to Holders of Disputed Claims if such Claims were Allowed, with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable.

The Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, shall hold property in the Disputed Claim Reserve in trust for the benefit of the Holders of Disputed Claims that are ultimately determined to be Allowed. Each Disputed Claim Reserve shall be closed and extinguished by the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, when all Distributions and other dispositions of Cash of other property required to be made hereunder will have been made in accordance with the terms of the Plan. Upon closure of a Disputed Claim Reserve, all Cash or other property held in that Disputed Claim Reserve shall revest in and become unrestricted property of the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable. All funds or other property that vest or revest in the Post-Effective-Date Debtor(s) pursuant to this paragraph shall be assigned to RCP in accordance with the Settlement Agreement.

Except as expressly set forth in the Plan, (i) the Plan Administrator shall not have any duty to fund any Disputed Claim Reserve except from the Allowed Claims Fund, and (ii) the Post-Effective-Date Debtor(s) shall not have any duty to fund any Disputed Claim Reserve except from the amount of cash collateral RCP agreed to allow the Debtors to use to pay Allowed Administrative and Priority Claims.

12.9 *De minimis* Distributions, Rounding.

Notwithstanding anything herein to the contrary, neither the Post-Effective-Date Debtor(s) nor the Plan Administrator shall be required to make: (i) partial Distributions or payments of fractions of dollars or (ii) a Distribution if the amount to be distributed is or has an economic value of less than one hundred fifty dollars ($150). Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent Distributions.

12.10     Unclaimed and Undeliverable Distributions.

If any Distribution to a Creditor is returned to the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, as undeliverable or is unclaimed, no further Distributions to such Creditor shall be made unless and until the Creditor claims the missed Distribution by timely notifying the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, in writing of its current address along with any other information necessary to make the Distribution to the Creditor in accordance with the Plan and applicable law. If the Creditor provides the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, with its current address and such other information necessary to make the Distribution within **one-hundred and eighty (180) days** of the original disbursement, the missed Distribution shall be made to the Creditor as soon as is practicable, without interest. However, if any Distribution that is undeliverable or otherwise unclaimed is not claimed within **one-hundred-and-eighty (180) days** of the original disbursement, such Distribution shall be deemed "unclaimed property" under Bankruptcy Code section 347(b) and forfeited, and the forfeiter shall consequentially lose his status as a Creditor of

the Estates. After the 180-day period to claim property has elapsed, the unclaimed property or interests in property shall revert to the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, for redistribution to Creditors or other disposition in accordance with the terms of the Plan or Settlement Agreement; the Claim to such unclaimed property or interest in property shall be forever barred, expunged, and deemed Disallowed; and the Holder of said Claim deemed Disallowed shall be enjoined from receiving any Distributions under the Plan and from asserting such Disallowed Claim against the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable.

The Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, may, in their sole discretion, attempt to determine a Creditor's current address or otherwise locate a Creditor, but nothing in this Plan shall require the Plan Administrator or the Post-Effective-Date Debtor(s), as applicable, to do so.

12.11    Books and Records and Vesting of Privileges.

Pursuant to the Settlement Agreement and Settlement Agreement Order, the Debtors shall provide reasonable cooperation necessary to maximize the value of  RCP Avoidance Actions or other Assigned Assets, including, without limitation, (i) providing RCP or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in RCP's sole discretion, with reasonable access to the Debtors' books, records, and other documents that are relevant to and necessary for the advancement of RCP Avoidance Actions or other Assigned Assets, (ii) to the extent permitted by applicable law, providing RCP or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in RCP's sole discretion, with reasonable access to Debtors' employees and agents for fact finding, consultation, interviews, and as witnesses (including as needed to authenticate documents where appropriate) as relevant to and necessary for the advancement of RCP Avoidance Actions or that relate to any Assigned Assets, (iii) to the extent permitted by applicable law, providing RCP or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in RCP's sole discretion, with reasonable access to systems and Debtor personnel as relevant for administration of the Assigned Assets, (iv) taking commercially reasonable measures to retain documents related to the advancement of RCP Avoidance Actions or other Assigned Assets, and (v) to the extent able by applicable law, providing assistance to maximize the value of the RCP Avoidance Actions or other Assigned Assets, as reasonably determined by RCP or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in RCP's sole discretion. Any attorney-client privilege, work-product protections, or other privilege or immunity held by any of the Debtors, including any predecessors, committee or sub-committees, or other designated entities or persons, related to the RCP Avoidance Actions or other Assigned Assets shall be extended to and shared with RCP or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in RCP's sole discretion. The transfer of any privileged books and records provided to the RCP or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in RCP's sole discretion, shall not result in the destruction or waiver of any applicable privileges pertaining to such books and records. Further, none of the Debtors or the Plan Administrator shall be liable for violating any confidentiality or privacy protections as a result of transferring the books and records to the RCP or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in RCP's sole discretion. For the avoidance of doubt, after the Settlement Effective Date and prior to the Effective Date, the Debtors shall reasonably cooperate with the foregoing.

The Debtors shall provide reasonable cooperation necessary to enable the Plan Administrator to carry out its responsibilities, including, without limitation, (i) providing the Plan Administrator or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in the Plan Administrator's sole discretion, with reasonable access to the Debtors' books, records, and other documents that are relevant to and necessary (including privileged documents, (ii) to the extent permitted by applicable law, providing the Plan Administrator or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in the Plan Administrator's sole discretion, with reasonable access to Debtors' employees and agents for fact finding, consultation, interviews, and as witnesses (including as needed to authenticate documents where appropriate) as relevant to and necessary, (iii) to the extent permitted by applicable law, providing the Plan Administrator or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in the Plan Administrator's sole discretion, with reasonable access to systems and Debtor personnel, (iv) taking commercially reasonable measures to retain documents related to the foregoing, and (v) to the extent permitted by applicable law, providing assistance to enable the Plan Administrator to carry out its responsibilities, as reasonably determined by the Plan Administrator or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in the Plan Administrator's sole discretion. Any attorney-client privilege, work-product protections, or other privilege or immunity held by any of the Debtors, including any predecessors, committee or sub-committees, or other designated entities or persons, related to the foregoing shall be extended to and shared with the Plan Administrator or any affiliate, successor or assign or other authorized designee(s) thereof, as determined in the Plan Administrator's sole discretion.  The transfer of any privileged books and records provided to the Plan Administrator shall not result in the destruction or waiver of any applicable privileges pertaining to such books and records. Further, the Debtors shall not be liable for violating any confidentiality or privacy protections as a result of transferring the books and records to the Plan Administrator. For the avoidance of doubt, after the Confirmation Date and prior to the Effective Date, the Debtors shall reasonably cooperate with the foregoing.

## SECTION 13
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

13.1 <u>Rejection.</u>

Except with respect to: (i) executory contracts or unexpired leases that were previously assumed or rejected by order of the Bankruptcy Court, and (ii) executory contracts or unexpired leases that are the subject of a pending motion to assume or reject, pursuant to Section 365 of the Bankruptcy Code, on the Effective Date, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code; *provided however,* that nothing in this Section shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtors and the Estates, the Debtors' officers, managers and directors, and/or the Post-Effective-Date Debtor(s).  Nothing in this Section shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date.  The non-Debtor parties to any rejected personal property leases shall be responsible for

taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases, and none of the Debtors, the Post-Effective-Date Debtors or the Plan Administrator shall bear any liability for costs associated with such matters.

For the avoidance of doubt, any lease or executory contract relating to the Assigned Assets, including the December 9, 2020 *Lease Purchase* related to the property at 3921 E. Mallory Circle, Mesa, AZ 85215, with Parcel number 141-27-098 and the following legal description: VISTA ESTANCIA MCR 531-24 Lot 3, and 1010 West 2nd Street, Mesa, AZ 85201, will be rejected pursuant to the Plan.

### 13.2   Rejection Claims.

All Proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be filed with the Claims Agent within thirty (30) days after the earlier of the Effective Date or an order of the Bankruptcy Court approving such rejection.  Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Confirmation of the Plan that is not filed within such times will be subject to objection.  All such Claims for which Proofs of Claim are timely and properly filed and ultimately Allowed will be treated as Unsecured Claims.

### 13.3   Insurance Policies.

Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations of the non-Debtor parties to the Insurance Policies.  To the extent one or more of the Insurance Policies provide potential coverage related to one or more Causes of Action the Debtors hold or may hold against any Entity, the Debtors shall, to the extent permissible under each Insurance Policy, assign all rights thereunder with respect to such Causes of Action to RCP or the Plan Administrator, as applicable.  All net proceeds (including, for the avoidance of doubt, net of any deductibles or retentions) of Insurance Policies received by RCP or the Plan Administrator, as applicable, shall be treated as proceeds of such Causes of Action for all purposes under the Plan.

## SECTION 14
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 14.1   Global Settlement of Claims.

Pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.

### 14.2   Assignment of Estate Assets to RCP.

On the Effective Date, in accordance with the terms of the Settlement Agreement, and to the extent not already assigned or transferred, the Debtors shall transfer and assign the Assigned Assets to RCP, or an authorized designee or designees of RCP, as determined in RCP's sole

discretion, pursuant to section 1123 of the Bankruptcy Code free and clear of all Claims, Liens, charges, other encumbrances, and Interests.

14.3    Continued Existence and Vesting of Excluded Assets in Post-Effective-Date Debtor(s) or Plan Administrator.

On and after the Effective Date, subject to the requirements of the Plan, the Debtors will continue to exist as the Post-Effective-Date Debtors and shall retain all of the powers of the applicable corporate entities under applicable non-bankruptcy law, and without prejudice to any right to amend their respective organizational documents, dissolve, merge or convert into another form of business entity, or to alter or terminate their existence.

On and after the Effective Date, all Excluded Assets shall vest in the Post-Effective-Date Debtors or Plan Administrator, as applicable under the Settlement Agreement, free and clear of all Claims, Liens, charges, other encumbrances and Interests, except as expressly provided otherwise in the Plan.  Neither the occurrence of the Effective Date, nor the effectiveness of this Plan, nor any provision of applicable non-bankruptcy law shall cause a dissolution of the Debtors or Post-Effective-Date Debtors, which shall continue under the control of the Post-Effective-Date Debtor Representative following the Effective Date subject to the terms of the Plan.

14.4    Corporate Action by Debtors.

On the Effective Date, the matters under the Plan involving or requiring any corporate actions of the Debtors, including but not limited to actions requiring a vote or other approval of the board of directors, managers, members, partners, or other equity Holders of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the managers, members, directors, or officers of the Debtors..

On and after the Effective Date, the Plan Administrator may, in the name of the Debtors or Post-Effective-Date Debtors, take any and all appropriate actions consistent with the Plan without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan, the Confirmation Order and/or the Plan Administrator Agreement.  Without limiting the foregoing, the Plan Administrator may pay all reasonable fees, costs, and expenses of the Plan Administrator (including the fees and expenses of the professionals retained by the Plan Administrator) without further notice to Creditors or Holders of Interests or approval of the Bankruptcy Court.  All fees and expenses incurred by the professionals retained by the Plan Administrator, as well as the compensation for the Plan Administrator, following the Effective Date shall be paid by the Plan Administrator from the Allowed Claims Fund.  In the event that the Plan Administrator resigns or is unable to fulfill his or her duties under the Plan, a replacement will be appointed by the Bankruptcy Court upon motion by any party in interest.

From and after the Effective Date, (i) the Debtors, for all purposes, shall be deemed to have withdrawn their business operations from any states in which they were previously conducting or are registered or licensed to conduct business operations, and the Debtors shall not be required to

file any document, pay any sum or take any other action, in order to effectuate such withdrawal, and (ii) the Debtors shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

Once all Excluded Assets not assigned to the Plan Administrator under the Settlement Agreement and all Administrative Claims and Priority Claims have been paid in full or otherwise disposed of, the Post-Effective-Date Debtors shall be deemed dissolved without any further action.

14.5   Limited Substantive Consolidation.

Under the Plan, there shall be limited substantive consolidation of the Debtors' Estates solely for the purposes of making Distributions to Holders of Claims. Specifically, on the Effective Date, (i) all assets and liabilities of the Debtors will, for Distribution purposes, be treated as if they were merged, (ii) each Claim against the Debtors will be deemed a single Claim against and a single obligation of the Debtors, (iii) any Claims filed or to be filed in the Chapter 11 Cases will be deemed single Claims against all of the Debtors, (iv) all guarantees of any Debtor of the payment, performance, or collection of obligations of any other Debtor shall be eliminated and canceled, (v) all transfers, disbursements and Distributions on account of Claims made by or on behalf of any of the Debtors' Estates hereunder will be deemed to be made by or on behalf of all of the Debtors' Estates, and (vi) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors. Holders of Allowed Claims entitled to Distributions under the Plan shall be entitled to their share of assets available for Distribution to such Claim without regard to which Debtor was originally liable for such Claim. Except as set forth herein, such limited substantive consolidation shall not (other than for purposes related to this Combined Disclosure Statement and Plan) affect the legal and corporate structures of the Debtors.

The Plan shall serve as a motion seeking entry of an order substantively consolidating the Chapter 11 Cases for Distribution purposes as provided above. Unless an objection to substantive consolidation is made in writing by any Creditor or Interest Holder affected by the Plan on or before the applicable objection deadline set by the Court, an order substantively consolidating the Chapter 11 Cases for distribution purposes (which order may be the Confirmation Order) may be entered by the Bankruptcy Court.

Notwithstanding the substantive consolidation herein, substantive consolidation shall not affect the obligation of each and every one of the Debtors under 28 U.S.C. § 1930(a)(6) until a particular case is closed, converted, or dismissed.

14.6   Dissolution of the Committee.

On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Cases, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date. The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the Committee after the Effective Date, except pursuant to the Settlement Agreement. Nothing in the Plan shall prohibit or limit the ability of the

Debtors' or Committee's Professionals to represent the Post-Effective-Date Debtor(s) or Plan Administrator, or to be compensated or reimbursed in connection with such representation.

## SECTION 15
## EFFECT OF CONFIRMATION

15.1    Binding Effect of the Plan.

The provisions of the confirmed Plan shall bind the Debtors, the Post-Effective-Date Debtor(s), the Plan Administrator, any Entity acquiring property under the Plan, and any Creditor or Interest Holder, whether or not such Creditor or Interest Holder has filed a Proof of Claim or Interest in the Chapter 11 Cases, whether or not the Claim of such Creditor or the Interest of such Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan.  All Claims shall be fixed and adjusted pursuant to the Plan.  The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under the Plan or related to any transaction contemplated under the Plan is to be recorded with respect to any taxes of the kind specified in Bankruptcy Code Section 1146(a).

15.2    Property Free and Clear.

Except as otherwise provided in the Plan or the Confirmation Order, all property that shall vest in the Post-Effective-Date Debtor(s), the Plan Administrator, or RCP, as applicable, shall be free and clear of all Claims, Interests, Liens, charges, or other encumbrances of Creditors or Interest Holders, other than as set forth herein and in relevant documents, agreements, and instruments contained in the Plan Supplement.  Following the Effective Date, the Post-Effective-Date Debtor(s), RCP, and the Plan Administrator, as applicable, may transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

## SECTION 16
## EXCULPATIONS, INJUNCTIONS, AND RELEASES

16.1    Exculpation.

The (i) Debtors, (ii) the Debtors' directors, officers, managers, and employees that served in such capacity, (iii) the Committee and the members thereof, and (iv) each of their respective professionals retained during the Chapter 11 Cases, each solely in their capacities as such (collectively, the "Exculpated Parties"), will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken between the Petition Date and Effective Date in connection with or related to the Chapter 11 Cases, the sale or other disposition of the Debtors' assets or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; *provided however*, that this limitation will not affect or modify the obligations created under the Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, or gross negligence (in each case subject to determination of such by final order of a court

55

of competent jurisdiction); *provided however,* that any Exculpated Party shall be entitled to rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan, and such reliance shall form a defense to any such claim, Cause of Action, or liability. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of Section 1125(e) of the Bankruptcy Code.  For the avoidance of doubt, Paladin, together with the personnel provided by it to furnish services to the Debtors during the Chapter 11 Cases, including T. Scott Avila, the Debtors' CRO, and the personnel of Paladin assisting the CRO, are Exculpated Parties.

16.2   <u>Releases.</u>

(a)   Debtor Related Releases.

1.   Debtor/Estate Release of Released Parties.

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtors, the Post-Effective-Date Debtor(s), the Estates, and the Committee (collectively, the "<u>Debtor/Estate Releasors</u>") shall release (the "<u>Debtor/Estate Release</u>") each Released Party, and each Released Party is deemed released by the Debtor/Estate Releasors from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor/Estate Releasors, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor/Estate Releasors would have been legally entitled to assert in its own right, or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' liquidation, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence; *provided however*, the foregoing Debtor/Estate Release shall not operate to waive or release any obligations of any party under the Plan, the Settlement Agreement or any other document, instrument, or agreement executed to implement the Plan or the Settlement Agreement; and further provided that nothing herein shall act as a discharge of the Debtors.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor/Estate Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release is: (a) in exchange for the good and valuable consideration**

**provided by the Released Parties; (b) in the best interests of the Debtors and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Debtor/Estate Releasors asserting any Claim or Cause of Action released pursuant to the Debtor/Estate Release.  For the avoidance of doubt, the Debtor/Estate Release is not intended to and shall not modify any and all of the releases set forth in the Settlement Agreement and the Settlement Agreement Order.**

2.      Third Party Release.

**On and after and subject to the occurrence of the Effective Date, except as otherwise provided in the Plan, each Claimant (collectively, the "<u>Releasing Parties</u>") who (i) is not Impaired under the Plan; (ii) affirmatively votes to accept the Plan, or (iii) affirmatively votes to reject the Plan but who does not elect to "opt-out" by marking the appropriate box on such Releasing Party's respective Ballot, for themselves and their respective successors, assigns, transferees, and such Claimants' officers and directors, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such), shall release (the "<u>Third Party Release</u>") each Released Party, and each of the Released Parties shall be deemed released from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of any of the Debtors or the Estates, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence; *provided however*, the foregoing Third Party Release shall not release any obligations of any party under the Plan, the Settlement Agreement, or any other document, instrument, or agreement executed to implement the Plan.  For the avoidance of doubt, the Third Party Release is not intended to and shall not modify any and all of the releases set forth in the Settlement Agreement and the Settlement Agreement Order.**

16.3   <u>Injunction.</u>

**In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order, the Settlement Agreement, or the Plan, and except in connection with the enforcement of the terms of the Plan, Settlement Agreement, or any documents provided**

for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors, the Post-Effective-Date Debtor(s), or the Estates that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Plan Administrator, the Post-Effective-Date Debtor(s), the Estates, or any of their respective assets, with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, the Post-Effective-Date Debtor(s), the Plan Administrator, the Estates, or any of their respective assets with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtors, the Post-Effective-Date Debtor(s), the Plan Administrator, the Estates, or any of their respective assets with respect to any such Claim or Interest; and (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this Section shall prohibit the Holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors, the Post-Effective-Date Debtor(s), or the Plan Administrator under the Plan. For the avoidance of doubt, nothing contained herein shall effect the rights and obligations of the Settlement Agreement and related documents.

16.4 <u>Post-Confirmation Liability of Plan Administrator.</u>

The Plan Administrator, together with its consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by the foregoing (collectively, the "<u>Indemnified Parties</u>") shall not be liable for any and all liabilities, losses, damages, claims, Causes of Action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the Holders of Claims or Interests for any action or inaction taken in good faith in connection with the performance or discharge of their duties under the Plan, except the Indemnified Parties will be liable for actions or inactions that are grossly negligent, fraudulent, or which constitute willful misconduct (in each case, liability shall be subject to determination by final order of a court of competent jurisdiction). However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, fraud, or willful misconduct. All rights of the Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Plan.

16.5 <u>Preservation of Rights of Action.</u>

(a)    <u>Vesting of Causes of Action</u>.

Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, the UCC Avoidance Actions shall vest upon the Effective Date in the Plan Administrator; and, pursuant to Section 14.2 hereof and consistent with the Settlement Agreement and the Settlement Agreement Order, the RCP Avoidance Actions will vest upon the Effective Date in RCP.

LA:4862-8386-2413.18 70786.001

Except as otherwise provided in the Confirmation Order, after the Effective Date, the Plan Administrator shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any UCC Avoidance Actions, in accordance with the terms of the Plan and the Plan Administrator Agreement, and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases.

(b)     Preservation of All Causes of Action Not Expressly Settled or Released.

Unless a Cause of Action against a Holder of a Claim or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan (including, without limitation, pursuant to the Debtor/Estate Release), the Settlement Agreement, the Settlement Agreement Order and/or or any other Final Order (including the Confirmation Order), the Debtors and the Post-Effective-Date Debtors expressly reserve such retained Cause of Action for later adjudication by the Post-Effective-Date Debtors, the Plan Administrator or RCP, as applicable (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere, or of which the Debtors may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, Collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order (including the Settlement Agreement Order and the Confirmation Order).  In addition, the Debtors and the Post-Effective-Date Debtors expressly reserve the right to pursue, adopt or assign claims alleged in any lawsuit in which the Debtors are defendants or interested parties against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Subject to the immediately preceding paragraph, and subject to the terms of the Settlement Agreement, any Entity to which the Debtors have incurred an obligation (whether on account of services, the purchase or sale of goods, or otherwise), or that has received services from the Debtors or a transfer of money or property of the Debtors, or that has received services from the Debtors or a transfer or money or property of the Debtors, or that has transacted business with the Debtors, or that has leased property from the Debtors, should assume and is hereby advised that any such obligation, transfer, or transaction may be reviewed by the Post-Effective-Date Debtors subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether (i) such Entity has filed a Proof of Claim against the Debtors in the Chapter 11 Cases; (ii) the Debtors or Plan Administrator, as applicable, have objected to any such Entity's Proof of Claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors or Plan Administrator have objected to any such Entity's scheduled Claim; (v) any such Entity's scheduled Claim has been identified by the Debtors as disputed, contingent, or unliquidated; or (vi) the Debtors have identified any potential claim or Cause of Action against such Entity herein or in the Disclosure Statement.

LA:4862-8386-2413.18 70786.001

16.6 <u>No Discharge.</u>

Nothing contained in the Combined Plan and Disclosure Statement shall be deemed to constitute a discharge of the Debtors under Bankruptcy Code section 1141(d)(3).

**SECTION 17**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

17.1 <u>Conditions to Confirmation of the Plan.</u>

Confirmation of the Plan is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtors: (i) the Bankruptcy Court shall have approved this Combined Disclosure Statement and Plan in form and substance acceptable to the Debtors and Committee; and (ii) the Confirmation Order to be presented to the Bankruptcy Court at the Confirmation Hearing shall be acceptable to the Debtors and Committee.

17.2 <u>Conditions to the Effective Date.</u>

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtors and Committee: (i) a Confirmation Order in form and substance acceptable to the Debtors and Committee shall have been entered by the Bankruptcy Court and become a Final Order which is not subject to any stay of effectiveness; (ii) the Allowed Claims Fund shall have been fully funded, as determined by the Committee, as of the Effective Date; and (iii) all other actions and documents determined by the Debtors to be necessary to implement the Plan shall have been effected and executed.

17.3 <u>Waiver of Conditions Precedent.</u>

To the fullest extent permitted by law, the conditions to the Effective Date set forth in Section 17.2 may be waived or modified in whole or in part at any time by the Debtors, subject to the Prepetition Lenders' and Committee's consent which shall not be unreasonably withheld.

**SECTION 18**
**RETENTION OF JURISDICTION**

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

(a)     To hear and determine any and all objections to the allowance of a Claim, proceedings to estimate a Claim for any purpose, actions to equitably subordinate a Claim, proceedings seeking approval of any necessary claims reconciliation protocols, or any controversy as to the classification of a Claim in a particular Class under the Plan;

(b)     To administer the Plan and the Settlement Agreement (to the extent not previously administered);

(c)      To estimate or liquidate any Disputed Claims;

(d)      To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date;

(e)      To hear and determine any and all motions and/or objections to fix, estimate, allow and/or disallow any Claims arising therefrom;

(f)      To hear and determine any and all applications by Professionals for an award of on account of any Professional Fee Claims;

(g)      To enable the Plan Administrator to take any action or exercise any rights or remedies, including without limitation, to commence and prosecute any UCC Avoidance Actions which may be brought after the Effective Date;

(h)      To enable RCP to commence and prosecute any RCP Avoidance Actions which may be brought after the Effective Date;

(i)      To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document, or instrument contemplated by the Plan;

(j)      To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified, or vacated;

(k)      To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(l)      To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code;

(m)      To enter any orders as required by Rule 23 of the Federal Rules of Civil Procedure, to the extent made applicable to any adversary proceeding pursuant or contested matter pursuant to Bankruptcy Rules 7023 and 9014(c), as applicable; and

(n)      To close the Chapter 11 Cases when the administration of the Chapter 11 Cases has been completed.

LA:4862-8386-2413.18 70786.001

## SECTION 19
## MISCELLANEOUS PROVISIONS

19.1  Payment of Statutory Fees / Closing of Chapter 11 Cases.

All fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid on the Effective Date, or as soon as practicable thereafter, by the Debtors or Post-Effective Date shall be paid by the Plan Administrator and the Plan Administrator shall file reports to show the calculation of such fees until the Chapter 11 Cases are closed under section 350 of the Bankruptcy Code.

The Plan Administrator may seek to close the Chapter 11 Cases, in his, her or its discretion, on motion to the Bankruptcy Court.

19.2  Revocation of the Combined Plan and Disclosure Statement.

Subject to the Settlement Agreement, the Debtors reserve the right to revoke and withdraw the Combined Plan and Disclosure Statement at any time on or before the Confirmation Date.  If the Debtors revoke or withdraw the Combined Plan and Disclosure Statement, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors.

19.3  Severability of Plan Provisions.

In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

19.4  Exhibits.

All exhibits attached to the Combined Plan and Disclosure Statement and the Plan Supplement are, by this reference, hereby incorporated herein.  The Debtors reserve the right to make non-substantive changes and corrections to such Exhibits in advance of the Confirmation Hearing.  If any Exhibits are changed or corrected, the replacement Exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing.

LA:4862-8386-2413.18 70786.001

19.5  Notices.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by nationally recognized overnight or next-day courier service, first-class mail, electronic mail, or via facsimile with electronic confirmation of receipt as follows:

Counsel for Debtors:

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel. 302-652-4100, Fax 302-652-4400
Attn:  Laura Davis Jones, Esq.
ljones@pszjlaw.com

Plan Administrator:

[To come.]

19.6  Reservation of Rights.

Neither the filing of the Combined Plan and Disclosure Statement nor any statement or provision contained in the Combined Plan and Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall: (a) be or be deemed to be an admission against interest and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in or to any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Combined Plan and Disclosure Statement nor any statement contained in the Combined Plan and Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or without the Chapter 11 Cases involving the Debtors, except with respect to Confirmation of the Plan.

19.7  Defects, Omissions and Amendments.

The Debtors may, with the approval of the Bankruptcy Court and without notice to all Holders of Claims or Interests, insofar as it does not materially and adversely affect Holders of Claims, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan.  The Plan may be altered or amended before or after Confirmation as provided in Section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of Holders of Claims, so long as the Plan, as modified, complies with Sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered or amended before or after the Confirmation Date but, prior to substantial Consummation, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, so long as the Plan, as modified, complies with

Bankruptcy Code Sections 1122 and 1123, the Debtors have complied with Bankruptcy Code Section 1125 and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under Bankruptcy Code Section 1129.

19.8    Filing of Additional Documents.

The Debtors shall file with the Bankruptcy Court such agreements, instruments, pleadings, orders, papers, or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

19.9    Successors and Assigns.

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entity.

19.10      Setoffs and Recoupments.

The Post-Effective-Date Debtor(s) and Plan Administrator may, but shall not be required to, set off against or recoup from the payments to be made pursuant to the Plan in respect of a Claim, any claim of any nature whatsoever that the Debtors, the Post-Effective-Date Debtor(s), or the Estates, as applicable, may have against the Holder of such Claim, but neither the failure to do so or the allowance of any Claim hereunder shall constitute a waiver or release of any such claim by the Debtors, the Post-Effective-Date Debtor(s), the Plan Administrator, or the Estates, against such Holder.

19.11      Tax Exemption.

Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the execution, delivery, or recording of an  instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including, without limitation, any transfers to or by the Debtors, if on the Effective Date, and the Post-Effective-Date Debtor(s) (through the Plan Administrator), if after the Effective Date, of the Debtors' property in implementation of or as contemplated by the Plan (including, without limitation, any subsequent transfer of property by the Post-Effective-Date Debtor(s)) shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

19.12      Implementation.

Upon Confirmation, the Debtors shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

LA:4862-8386-2413.18 70786.001

19.13      <u>Record Date.</u>

To the extent a "Record Date" is required for implementation of the Plan, the record date shall be the voting record date established by the Bankruptcy Court in the Conditional Approval and Procedures Order or such other date as the Bankruptcy Court may set.

19.14      <u>Certain Actions.</u>

By reason of entry of the Confirmation Order, prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of directors, members, managers or other Interest Holders of the Debtors under the Plan, including, without limitation, (i) the Distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtors, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to applicable corporation/limited liability company laws, without any requirement of further action by the directors, members, managers or other Interest Holders of the Debtors, irrespective of whether the Confirmation Order specifically authorizes any such action.

Effective upon the Effective Date, the Debtors' formation documents shall be deemed amended to prohibit the issuance by the Debtors of nonvoting securities to the extent required under Section 1123(a)(6) of the Bankruptcy Code.

19.15      <u>Substantial Consummation.</u>

On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code Sections 1101 and 1127(b).

19.16      <u>Waiver of Fourteen-Day Stay.</u>

The Debtors request as part of the Confirmation Order a waiver from the Bankruptcy Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the 14-day stay of Bankruptcy Rule 6004(g).

19.17      <u>Governing Law.</u>

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

19.18      <u>Entire Agreement.</u>

On the Effective Date, but subject to the Settlement Agreement Order, the Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises,

LA:4862-8386-2413.18 70786.001

covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## SECTION 20
## RECOMMENDATION

The Debtors and Committee recommend that all Creditors receiving a Ballot vote in favor of the Plan.  The Debtors and Committee believe that the Plan is in the best interests of Creditors. The Plan as structured, among other things, allows Creditors with Allowed Claims to participate in distributions believed to be in excess of those that would otherwise be available were the Chapter 11 Cases dismissed or converted under Chapter 7 of the Bankruptcy Code and minimizes delays in recoveries to creditors.

**FOR ALL THE REASONS SET FORTH IN THIS DISCLOSURE STATEMENT, THE DEBTORS AND COMMITTEE BELIEVE THAT THE CONFIRMATION AND CONSUMMATION OF THE PLAN IS PREFERABLE TO ALL OTHER ALTERNATIVES.  THE DEBTORS AND COMMITTEE URGE ALL CREDITORS ENTITLED TO VOTE TO ACCEPT THE PLAN AND TO EVIDENCE SUCH ACCEPTANCE BY RETURNING THEIR BALLOTS SO THAT THEY WILL BE RECEIVED BY 4:00 P.M. EASTERN TIME ON JANUARY 2, 2026.**

Dated: November 12, 2025                    Respectfully submitted,

                                            AMERIFIRST FINANCIAL, INC. AND
                                            PHOENIX 1040 LLC


                                            */s/ T. Scott Avila*_____
                                            T. Scott Avila
                                            Chief Restructuring Officer

LA:4862-8386-2413.18 70786.001