IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMERIFIRST FINANCIAL INC., *et al.*,[1] | Case No. 23-11240 (TMH) |
| Debtors. | Jointly Administered |

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN OF LIQUIDATION OF AMERIFIRST FINANCIAL INC. AND PHOENIX 1040 LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Phoenix 1040 LLC (2550); and AmeriFirst Financial, Inc. (4557). The Debtors' service address is 575 W. Chandler Boulevard, Suite 225, Unit 236, Chandler, AZ 85225.

4921-0291-1364.8 70786.001

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ...............................................................1

II. RELEVANT BACKGROUND...............................................................................................2

III. ARGUMENT ...................................................................................................................5

    A.    The Disclosure Statement Should Be Approved On A Final Basis ........................................6

    B.    The Plan Complies with Applicable Provisions of the Bankruptcy Code (Section ......................9

        1.    Compliance with Section 1122.................................................................................10

        2.    Compliance with Section 1123(a) ............................................................................12

        3.    Compliance with Section 1123(b)............................................................................15

    C.    The Debtors Complied with the Applicable Provisions of the Bankruptcy............................24

    D.    The Plan was Proposed in Good Faith (Section 1129(a)(3))...............................................25

    E.    The Plan Provides that Payments Made by the Debtors for Professional Fees and ...............27

    F.    The Debtors Have Disclosed All Necessary Information Regarding Directors, Officers and Insiders (Section 1129(a)(5))......................................................................................28

    G.    No Rate Changes (11 U.S.C. § 1129(a)(6))....................................................................28

    H.    The Plan is in the Best Interests of All the Debtors' Creditors (Section 1129(a)(7))..............29

    I.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)) ....................................................31

    J.    The Plan Provides for Payment in Full of All Allowed Priority Claims (Section 1129(a)(9))...............32

    K.    Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))................................................33

    L.    The Plan Is Feasible (Section 1129(a)(11)) .....................................................................34

    M.    All Statutory Fees Have Been or Will Be Paid (Section 1129(a)(12))...................................35

    N.    Sections 1129(a)(13) through 1129(a)(16) Do Not Apply to the Plan ..................................35

    O.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)) ..................................36

    P.    Only One Plan (11 U.S.C. § 1129(c)) .............................................................................38

    Q.    The Debtors Have Complied with Section 1129(d) ..........................................................39

IV. CONCLUSION.................................................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. Lasalle St. P'ship*
526 U.S. 434 (1999) ..................................................................................... 34, 43, 45

*Boston Post Rd. L.P. v. FDIC (In re Boston Post Road, L.P.)*
21 F.3d 477 (2d Cir. 1994) ............................................................................ 12

*Century Glove, Inc. v. First Am. Bank of N.Y.*
860 F.2d 94 (3d Cir. 1988) ............................................................................ 7

*Frito-Lay, Inc., v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*
10 F.3d 944 (2d Cir. 1993) ............................................................................ 12

*Harrington v. Purdue Pharma L.P.*
603 U.S. 204 (2024) ...................................................................................... 23, 24

*In re 203 N. LaSalle St. Ltd.  P'ship.*
190 B.R. 567 (Bankr. N.D. Ill. 1995) ............................................................ 43

*In re 500 Fifth Ave. Assocs.*
148 B.R. 1010 (Bankr. S.D.N.Y. 1993) ......................................................... 12

*In re Adelphia Commc'ns. Corp.*
368 B.R. 140 (Bankr. S.D.N.Y. 2007) ........................................................... 34

*In re Ambanc La Mesa Ltd. P'ship*
115 F.3d 650 (9th Cir. 1997) ......................................................................... 43

*In re American Physician Partners, LLC*
Case No. 23-11469 (BLS) (Bankr. D. Del. March 15, 2024) ......................... 21

*In re Armstrong World Indus., Inc.*
348 B.R. 111 (Bankr. D. Del. 2006) .............................................................. 6, 30

*In re Aztec Co.*
107 B.R. 585 (Bankr. M.D. Tenn. 1989) ........................................................ 44

*In re Bally Total Fitness of Greater New York, Inc.*
2007 WL 2779438 2007 Bankr. LEXIS 4729 (Bankr. S.D.N.Y. Sept. 17, 2007) ........................... 6

*In re Bowflex Inc.*
No. 24-12364 (ABA) (Bankr. D. N.J. Aug. 18, 2024) ................................... 25

*In re Bowles*
48 B.R. 502 (Bankr. E.D. Va. 1985) .............................................................. 43

*In re Burns & Roe Enters.*
2009 U.S. Dist. LEXIS 13574 (D.N.J. Feb. 23, 2009) .................................. 30

*In re Chapel Gate Apartments, Ltd.*
64 B.R. 569 (Bankr. N.D. Tex. 1986) ............................................................ 32

*In re Combustion Eng'g, Inc.*
391 F.3d 190 (3d Cir. 2004) .......................................................................... 30

*In re Drexel Burnham Lambert Group, Inc.*
960 F.2d 285 (2d Cir. 1992) .......................................................................... 20

*In re Drexel Burnham Lambert Group, Inc.*
138 B.R. 723 (Bankr. S.D.N.Y. 1992) ........................................................... 40

*In re Emerge Energy Servs. LP*
  2019 WL 7634308 (Bankr. D. Del. Dec. 5, 2019) .......................................................... 24

*In re Enron Corp.*
  326 B.R. 497 (S.D.N.Y. 2005) ................................................................................. 20, 21

*In re Exide Techs.*
  303 B.R. 48 (Bankr. D. Del. 2003) ................................................................................. 45

*In re Fisker, Inc.*
  No. 24-11390 (TMH) (Bankr. D. Del. Oct. 16, 2024) ................................................... 24

*In re FTX Trading Ltd.*,
  No. 22-11068 (JTD) (Bankr. D. Del. Oct. 8, 2024) ...................................................... 24

*In re Future Energy Corp.*
  83 B.R. 470 (Bankr. S.D. Ohio 1988) ........................................................................... 32

*In re Indianapolis Downs, LLC*
  486 B.R. 286 (Bankr. D. Del. 2013) .............................................................................. 24

*In re Invitae Corp.*
  No. 24-11362 (MBK) (Bankr. D.N.J. Aug. 2, 2024) ...................................................... 24

*In re Jersey City Med. Ctr.*
  817 F.2d 1055 (Bankr. D.N.J. 1987) ............................................................................. 11

*In re Johns-Manville Corp.*
  68 B.R. 618 (Bankr. S.D.N.Y.1986) .............................................................................. 44

*In re Lapworth*
  1998 WL 767456, 1998 Bankr. LEXIS 1383 (Bankr. E.D. Pa. Nov. 2, 1998) ............... 28

*In re Lason, Inc.*
  300 B.R. 227 (Bankr. D. Del. 2003) .............................................................................. 35

*In re Masten Space Systems, Inc.*
  Case No. 22-10657 (BLS) (Bankr. D. Del. Nov. 9, 2022) .............................................. 21

*In re Monnier Bros.*
  755 F.2d 1336 (8th Cir. 1985) ......................................................................................... 7

*In re PC Liquidation Corp.*
  383 B.R. 856 (E.D.N.Y. 2008) ........................................................................................ 8

*In re Phoenix Petroleum Co.*
  278 B.R. 385 (Bankr. E.D. Pa. 2001) ........................................................................... 8, 9

*In re PWS Holding Corp.*
  228 F.3d 224 (3d Cir. 2000) .......................................................................................... 20

*In re River Village Assoc.*
  181 B.R. 795  (E.D. Pa. 1995) ......................................................................................... 8

*In re Robertshaw US Holding Corp.*
  Case No. 24-90052 (CML) (Bankr. S.D. Tex. Aug. 16, 2024) ...................................... 24

*In re S&W Enter*
  37 B.R. 153 (Bankr. N.D. Ill. 1984) .............................................................................. 11

*In re Sagewood Manor Assocs. Ltd. P'ship*
  223 B.R. 756 (Bankr. D. Nev. 1998) .............................................................................. 40

*In re Sam Ash Music Corp.*
  No. 24-14727 (SLM) (Bankr D.N.J. Aug. 15, 2024) ...................................................... 24

*In re Scioto Valley Mortg. Co.*
  88 B.R. 168 (Bankr. S.D. Ohio 1988) ............................................................................. 9

*In re Sea Containers Ltd.*
No. 06-11156 (KJC) (Bankr. D. Del. Nov. 24, 2008) ................................................. 22
*In re SGL Carbon Corp.*
200 F.3d 154 (3d Cir. 1999) ..................................................................... 29
*In re Sound Radio, Inc.*
93 B.R. 849 (Bankr. D. N.J. 1988), *aff'd in part, remanded in part,*
103 B.R. 521 (D.N.J. 1989), aff'd, 908 F.2d 964 (3d Cir. 1990) .......................... 29, 31
*In re Spansion, Inc.*
426 B.R. 114 (Bankr. D. Del. 2010) ............................................................. 24
*In re U.S. Brass Corp.*
194 B.R. 420 (Bankr. E.D. Tex. 1996) ............................................................ 9
*In re VER Technologies HoldCo, LLC*
No. 18-10834 (KG) (Bankr. D. Del. July 26, 2018) .......................................... 22
*In re Washington Mutual, Inc.*
442 B.R. 314 (Bankr. D. Del. 2011) ............................................................. 24
*In re Wheel Pros, LLC*
No. 24-11939 (JTD) (Bankr. D. Del. Oct. 15, 2024) ......................................... 24
*In re YogaWorks, Inc., et. al.*
No. 20-12599 (KBO) (Bankr. D. Del. May 5, 2021) ......................................... 21
*In re Zenith Elecs. Corp.*
241 B.R. 92 (Bankr. D. Del. 1999) ............................................................. 29
*Internal Revenue Serv. v. Kaplan (In re Kaplan)*
104 F.3d 589 (3d Cir. 1997) ..................................................................... 40
*John Hancock v. Rte 37 Bus. Park Assoc.*
987 F.2d 154 (3rd Cir. 1993) ................................................................... 11
*Norwest Bank Worthington v. Ahlers*
485 U.S. 197 (1988) ............................................................................. 45
*Oneida Motor Freight, Inc. v. United Jersey Bank*
848 F.2d 414 (3d Cir. 1988) ..................................................................... 7
*United States v. Energy Res. Co., Inc.*
495 U.S. 545 (1990) ............................................................................. 39
*WEH Liquidating, LLC*
Case No. 25-11602 (TMH) (Bankr. D. Del.) ................................................... 25

**Statutes**
11 U.S.C. § 101(31) ............................................................................. 33
11 U.S.C. § 341 ................................................................................. 36
11 U.S.C. § 507 ............................................................................. 13, 41
11 U.S.C. § 507(a)(1) ........................................................................... 41
11 U.S.C. § 1114 ............................................................................... 41
11 U.S.C. § 1114(a) ............................................................................. 42
11 U.S.C. § 1122 ................................................... 2, 6, 10, 11, 12, 14, 22
11 U.S.C. § 1122(a) ............................................................................. 13
11 U.S.C. § 1123 ................................................................. 2, 6, 11, 22
11 U.S.C. § 1123(a) ............................................................................. 14
11 U.S.C. § 1123(a)(2) ......................................................................... 14
11 U.S.C. § 1123(a)(3) ......................................................................... 14

11 U.S.C. § 1123(a)(4)................................................................................................................ 15
11 U.S.C. § 1123(a)(5)................................................................................................................ 15
11 U.S.C. § 1123(a)(6)................................................................................................................ 16
11 U.S.C. § 1123(a)(7).......................................................................................................... 16, 17
11 U.S.C. § 1123(b)....................................................................................................... 17, 23, 26
11 U.S.C. § 1123(b)(1)-(6)......................................................................................................... 17
11 U.S.C. § 1123(b)(2)................................................................................................................ 18
11 U.S.C. § 1123(b)(3)................................................................................................................ 18
11 U.S.C. § 1123(d).................................................................................................................... 26
11 U.S.C. § 1125........................................................................................... 2, 5, 6, 8, 10, 28
11 U.S.C. § 1125(a)(1)................................................................................................................. 7
11 U.S.C. § 1126........................................................................................................... 26, 27, 28
11 U.S.C. § 1126(a).................................................................................................................... 27
11 U.S.C. § 1126(c)............................................................................................................... 27, 37
11 U.S.C. § 1126(f).................................................................................................................... 27
11 U.S.C. § 1126(g).............................................................................................................. 27, 37
11 U.S.C. § 1129........................................................................................................ 2, 5, 6, 46
11 U.S.C. § 1129(a)..................................................................................................................... 6
11 U.S.C. § 1129(a)(1)...................................................................................................... 10, 11, 22
11 U.S.C. § 1129(a)(2)........................................................................................................... 20, 28
11 U.S.C. § 1129(a)(3)............................................................................................... 20, 29, 30, 31
11 U.S.C. § 1129(a)(4)........................................................................................................... 31, 32
11 U.S.C. § 1129(a)(5)(A)...................................................................................................... 32, 33
11 U.S.C. § 1129(a)(5)(B)............................................................................................................ 33
11 U.S.C. § 1129(a)(6)................................................................................................................ 33
11 U.S.C. § 1129(a)(7)........................................................................................................... 34, 36
11 U.S.C. § 1129(a)(7)(A)...................................................................................................... 34, 35
11 U.S.C. § 1129(a)(8)........................................................................................................... 37, 42
11 U.S.C. § 1129(a)(9)....................................................................................................... 37, 38, 39
11 U.S.C. § 1129(a)(10)............................................................................................................... 39
11 U.S.C. § 1129(a)(11)........................................................................................................... 39, 40
11 U.S.C. § 1129(a)(12)............................................................................................................... 41
11 U.S.C. § 1129(a)(13)........................................................................................................... 41, 42
11 U.S.C. § 1129(a)(14)............................................................................................................... 42
11 U.S.C. § 1129(a)(15)............................................................................................................... 42
11 U.S.C. § 1129(a)(16)............................................................................................................... 42
11 U.S.C. § 1129(b)........................................................................................................ 6, 37, 42, 45
11 U.S.C. § 1129(b)(2)................................................................................................................ 44
11 U.S.C. § 1129(b)(2)(B)(i)........................................................................................................ 45
11 U.S.C. § 1129(b)(2)(B)(ii).................................................................................................. 44, 45
11 U.S.C. § 1129(c)............................................................................................................... 45, 46
11 U.S.C. § 1129(c)(ii)................................................................................................................ 44
11 U.S.C. § 1129(d).................................................................................................................... 46
28 U.S.C. § 1930....................................................................................................................... 41
28 U.S.C. § 1930(a)(6)........................................................................................................... 38, 41

**Other Authorities**

H.R. Rep. No. 595, 95th Cong., 1st Sess., 412 (1977) ................................................................... 9, 24

S. Rep. No. 989, 95th Cong., 2d Sess., 126 (1978) ...................................................................... 9, 24

**Rules**

Fed. R. Bankr. P. 3002(c) ................................................................................................................ 31

**I.**

**INTRODUCTION AND SUMMARY OF ARGUMENT**

1. The above-captioned debtors and debtors in possession (collectively, the "Debtors") seek final approval of the disclosures (the "Disclosure Statement") contained in the *Amended Combined Disclosure Statement and Plan of Liquidation of AmeriFirst Financial Inc. and Phoenix 1040 LLC under Chapter 11 of the Bankruptcy Code* [Docket No. 1196] (the chapter 11 plan portion thereof, as amended, modified or supplemented, the "Plan").[2] During the Chapter 11 Cases, the Debtors liquidated substantially all of their assets. As this Court is aware, and as is described more fully in the Disclosure Statement, following a successful mediation, the Debtors, the Committee, and RCP entered into the Settlement Agreement and Release (the "Settlement Agreement") that resolved the various disputes among the Debtors, the Committee and RCP. This Court previously approved the Settlement Agreement, and the proposed Plan implements the terms thereof to the extent necessary.

2. The consensual Plan is designed to maximize the value of the Debtors' Estates and minimize the Estates' expenses, and make distributions on account of allowed claims, which could potentially result in a meaningful recovery for holders of general unsecured claims. The classes of creditors authorized to vote on the Plan, Class 2 (Prepetition Lenders Secured Claims) and Class 4A (Unsecured Claims against AmeriFirst) voted in favor of the Plan, both in number and amount.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Plan or Disclosure Statement, as applicable.

3. As more fully set forth herein, the Plan satisfies all of the requirements for approval of the Disclosure Statement on a final basis pursuant to Section 1125; and confirmation of the Plan under chapter 11, including Sections 1122, 1123, and 1129. Accordingly, the Debtors respectfully request that the Court enter an Order approving the Disclosure Statement on a final basis and confirming the Plan.

## II.

## RELEVANT BACKGROUND

4. On August 24, 2023 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing the instant bankruptcy cases (the "Chapter 11 Cases").

5. On or about September 15, 2023, the U.S. Trustee formed the Committee, comprised of Kristen Rahn, Mortgageshots, LLC, and Paragon Micro, Inc. [Docket No. 122].

6. During the Chapter 11 Cases, the Debtors have sold, liquidated or otherwise disposed of substantially all of their assets. The Debtors were authorized during the Chapter 11 Cases to proceed with sales of their assets, including certain mortgage loans and related assets and mortgage servicing rights and related assets [Docket Nos. 364 and 473].

7. Following a successful mediation, the Debtors, the Committee, and RCP entered into the Settlement Agreement. On August 21, 2025, the Bankruptcy Court entered an Order approving the Settlement Agreement [Docket No. 1090] (the "Settlement Agreement Order"). The proposed Plan implements the terms of the Settlement Agreement to the extent not previously implemented following entry of the Settlement Agreement Order.

2

8.      On November 12, 2025, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Granting Conditional Approval of the Adequacy of Disclosures in the Amended Combined Disclosure Statement and Plan; (II) Scheduling a Combined Confirmation Hearing and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures' (IV) Approving the Forms of Ballots; and (V) Granting Related Relief* (the "Solicitation Procedures Motion") [Docket No. 1183].

9.      On December 5, 2025, the Court entered the *Order (I) Granting Conditional Approval of the Disclosures; (II) Scheduling a Combined Hearing to Consider Final Approval of the Disclosures and Confirmation of the Combined Plan, and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Forms of Ballot; and (V) Granting Related Relief* (the "Solicitation Procedures Order") [Docket No. 1195].

10.     On December 5, 2025, the Debtors filed the *Notice of (I) Conditional Approval of Disclosures; (II) Hearing to Consider Confirmation of the Combined Plan; and (IV) Deadline for Voting on the Combined Plan* [Docket No. 1197] (the "Notice of Confirmation Hearing"). The Notice of Confirmation Hearing provided creditors with the procedure and deadlines for voting and objecting to the Plan. It also outlined the exculpation, release and injunction provisions in the Plan.

11.     On December 19, 2025, the Debtors filed the Plan Supplement, comprised of the form of Plan Administration Agreement, the identification of the Plan Administrator, the Liquidation Analysis, and a list of the Estate-Retained Causes of Action [Docket No. 1205].  On December 23, 2025, the Debtors filed an amended Liquidation Analysis [Docket No. 1207].

12.     In accordance with the Solicitation Procedures Order, by December 10, 2025, Omni Agent Solutions (the "Voting Agent") caused the Solicitation Package (as defined in the Solicitation Procedures Order) to be served on all known Holders of Claims in Class 2 (Prepetition Lenders Secured Claims), and Class 4A (Unsecured Claims Against AmeriFirst) (the "Voting Classes").  In lieu of a Solicitation Package, all known Holders of Claims and Interests in Class 1 (Priority Non-Tax Claims), Class 3 (Other Secured Claims), Class 4B (Unsecured Claims Against Phoenix), Class 5A (Intercompany Claims), Class 5B (Intercompany Claims), Class 6A (Interests in AmeriFirst), Class 6B (Interests in Phoenix) (collectively, the "Non-Voting Classes"), received the Notice of Non-Voting Status, the applicable Opt-Out Form, and the Confirmation Hearing Notice. *See*, *Declaration of Jeriad R. Paul Regarding the Solicitation and Tabulation of Votes on the Amended Combined Disclosure Statement and Plan of Liquidation of AmeriFirst Financial Inc. and Phoenix 1040 LLC under Chapter 11 of the Bankruptcy Code* [Docket No. 1211] (the "Voting Declaration" ).

13.     In addition, on or before December 10, 2025, Omni posted links to the electronic versions of the Combined Plan, the Disclosure Statement Order, the Notice of Non-Voting Status (Class 1 and Class 3), the Notice of Non-Voting Status (Class 4B, Class 6A and Class 6B), and the Confirmation Hearing Notice on the public access website at https://omniagentsolutions.com/AmeriFirst.

14.     As reflected in the Voting Declaration, the class of claims entitled to vote on the Plan has accepted the Plan. Specifically, the voting results were as follows:

| Class | Percentage Voting in Favor (in number) | Percentage Voting Against (in number) | Percentage Voting in Favor (in amount) | Percentage Voting Against (in amount) |
|---|---|---|---|---|
| Class 2 (Prepetition Lenders Secured Claims) | 100% | 0% | 100% | 0% |
| Class 4A (Unsecured Claims against AmeriFirst) | 90.91% | 9.09% | 97.31% | 2.79% |

15.    Based on the acceptance of the Plan by Class 2 and Class 4A, and notwithstanding the deemed rejection of the Plan by the Deemed Rejecting Classes (defined below), the Plan can be confirmed.[3]

## III.

## ARGUMENT

16.    To approve the Disclosure Statement on a final basis, the Court must find that the Disclosure Statement provides adequate information to holders of claims and interests entitled to vote on the Plan under Section 1125. This memorandum sets forth below the reasons why the Disclosure Statement meets the disclosure requirements of Section 1125 and should be approved on a final basis.

17.    To confirm the Plan, the Court must find that the Debtors have satisfied the applicable provisions of Section 1129 by a preponderance of the evidence. *See, e.g., In re Armstrong World Indus., Inc.,* 348 B.R. 111, 120 (Bankr. D. Del. 2006); *see also In re Bally Total Fitness of*

---

[3]  The Debtors request that the Court take judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed and orders entered thereon, and the petitions, bankruptcy schedules and statement of financial affairs filed by the Debtors. Further, the Debtors request the Court take judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of the Chapter 11 Cases.

*Greater New York, Inc.,* 2007 WL 2779438, at *3, 2007 Bankr. LEXIS 4729, at *12 (Bankr.

S.D.N.Y. Sept. 17, 2007) ("The Debtors, as proponents of the Plan, have the burden of proving the

satisfaction of the elements of Sections 1129(a) and (b) of the Bankruptcy Code by a preponderance

of the evidence.").

18.     The Debtors submit that the Plan complies with all applicable sections of the

Bankruptcy Code, the Bankruptcy Rules and applicable non-bankruptcy law.  In particular, the Plan

fully complies with the applicable requirements of Sections 11 U.S.C. § 1122, 1123, 1125, and 1129.

This memorandum addresses each requirement individually.

## A.     The Disclosure Statement Should Be Approved On A Final Basis

19.     Pursuant to Section 1125, the proponent of a proposed chapter 11 plan must

provide "adequate information" regarding that plan to holders of impaired claims and interests

entitled to vote on the plan.  11 U.S.C. § 1125.  Specifically, Section 1125(a)(1) states, in relevant

part, as follows:

> "[A]dequate information" means information of a kind, and in
> sufficient detail, as far as is reasonably practicable in light of the
> nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material
> Federal tax consequences of the plan to the debtor, any successor to
> the debtor, and a hypothetical investor typical of the holders of
> claims or interests in the case, that would enable such a hypothetical
> investor of the relevant class to make an informed judgment about
> the plan[.]

11 U.S.C. § 1125(a)(1).

20.     The primary purpose of a disclosure statement is to provide all material

information that creditors and interest holders affected by a proposed plan need to make an informed

decision regarding whether or not to vote for the plan.  *See, e.g., Century Glove, Inc. v. First Am.*

6

*Bank of N.Y.,* 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *In re Monnier Bros.,* 755 F.2d 1336, 1342(8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan").

21.     "Adequate information" is a flexible standard, based on the facts and circumstances of each case.  11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . ."); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case.").

22.     Courts in the Third Circuit and elsewhere acknowledge that determining what constitutes "adequate information" for the purpose of satisfying Section 1125 resides within the broad discretion of the court.  *See, e.g., In re River Village Assoc.,* 181 B.R. 795, 804 (E.D. Pa. 1995) ("[T]he Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement."); *In re Phoenix Petroleum Co.,* 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (same); *In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate disclosure' in any particular situation is determined on a case-by-case basis, with the determination being largely within the discretion of the bankruptcy court.").

23.     In making a determination as to whether a disclosure statement contains

adequate information as required by Section 1125, courts typically look for disclosures related to topics such as: (i) the events that led to the filing of a bankruptcy petition; (ii) the relationship of the debtor with its affiliates; (iii) a description of the available assets and their value; (iv) the company's anticipated future; (v) the source of information stated in the disclosure statement; (vi) the debtor's condition while in chapter 11; (vii) claims asserted against the debtor; (viii) the estimated return to creditors under a chapter 7 liquidation; (ix) the future management of the debtor; (x) the chapter 11 plan or a summary thereof; (xi) financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan; and (xii) information relevant to the risks posed to creditors under the plan. *See, e.g., In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988). Disclosure regarding all topics is not necessary in every case. *See U.S. Brass Corp.,* 194 B.R. at 424; *Phoenix Petroleum Co.,* 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

24.     Here, the Disclosure Statement provides "adequate information" to allow Holders of Claims in the Voting Classes to make informed decisions about whether to vote to accept or reject the Plan. Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including among other things: (i) the circumstances that gave rise to the filing of the Debtors' cases; (ii) the Debtors' actions during the Chapter 11 Cases, including selling certain of their assets; (iii) an estimate of the Estates' liabilities; (iv) the proposed treatment of Claims and Interests under the Plan and likely estimated distributions to be received on account of each class of Claims and Interests under the Plan; (v) an analysis as to

the distributions creditors would receive from the Estates were the Debtors liquidated under

chapter 7; (vi) a summary of what remaining assets are left to be liquidated after the Effective Date;

(vii) a disclaimer stating that no statements or information regarding the Debtors or their assets are

authorized, other than those included in the Plan; (viii) the relevant sources of information contained

in the Plan; (ix) financial information necessary to allow a creditor to decide whether to approve or

reject the Plan; (x) information regarding the risks being taken by the Holders of Claims prior to

voting, including that the projected recoveries are just estimates and that any estimated recovery is

not guaranteed; (xi) the right and ability of the Plan Administrator to assert, compromise or dispose

of applicable Causes of Action without any further order of the Court; (xii) conspicuous language

regarding the exculpation, third party releases, and the injunction to be entered by and in connection

with the Plan; and (xiii) such other and further information that informs Holders of Claims of their

rights arising from and relating to the Plan.

25.     Accordingly, the Debtors respectfully submit that the Disclosure Statement

contains "adequate information" satisfying Section 1125 and should be approved on a final basis.

**B.      The Plan Complies with Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1))**

26.     Pursuant to Section 11 U.S.C. § 1129(a)(1), a plan must "compl[y] with the

applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1). The legislative history of

Section 1129(a)(1) explains that this provision encompasses the requirements of Sections 1122 and

1123, which govern the classification of claims and the contents of a plan, respectively. *See* S. Rep.

No. 95-989, 95th Cong., 2d Sess. 126 (1978); H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412

(1977); *In re S&W Enter.,* 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984) ("An examination of the

legislative history of [section 1129(a)(1)] reveals that although its scope is certainly broad, the provisions it was more directly aimed at were sections 1122 and 1123."). As demonstrated below, the Plan complies with the requirements of Sections 1122 and 1123, as well as other applicable provisions of the Bankruptcy Code.

### 1.    Compliance with Section 1122

27.    The Plan satisfies the classification requirements of Section 1122. Courts in this jurisdiction and others have recognized that under Section 1122, plan proponents have significant flexibility in placing similar claims into different classes, provided there is a rational basis to do so. *See John Hancock v. Rte 37 Bus. Park Assoc.,* 987 F.2d 154 (3rd Cir. 1993); *In re Jersey City Med. Ctr.,* 817 F.2d 1055, 1066 (Bankr. D.N.J. 1987) (recognizing that separate classes of claims must be reasonable and allowing a plan proponent to group similar claims in different classes); *see also Boston Post Rd. L.P. v. FDIC (In re Boston Post Road, L.P.),* 21 F.3d 477, 483 (2d Cir. 1994) (finding that courts cannot prohibit separate classification of substantially similar claims); *Frito-Lay, Inc., v. LTV Steel Co., Inc. (In re Chateaugay Corp.),* 10 F.3d 944, 956-57 (2d Cir. 1993) (finding separate classification appropriate because classification scheme had a rational basis); *In re 500 Fifth Ave. Assocs.,* 148 B.R. 1010, 1018 (Bankr. S.D.N.Y. 1993) (although discretion is not unlimited, "the proponent of a plan of reorganization has considerable discretion to classify claims and interests according to the facts and circumstances of the case").

28.    The Plan's classification of Claims and Interests satisfies the requirements of Section 1122 because the Claims and Interests in each Class differ legally and/or factually from the Claims and Interests in other Classes. Moreover, each of the Claims or Interests in a particular Class

is substantially similar to the other Claims or Interests within that Class.

29.     Specifically, the Plan provides for the separate classification of Claims and Interests into the following Classes:

- <u>Class 1</u> Priority Non-Tax Claims
- <u>Class 2</u> Prepetition Lenders Secured Claims
- <u>Class 3</u> Other Secured Claims
- <u>Class 4A</u> Unsecured Claims against AmeriFirst
- <u>Class 4B</u>  Unsecured Claims against Phoenix
- <u>Class 5A</u> Intercompany Claims against AmeriFirst
- <u>Class 5B</u> Intercompany Claims against Phoenix
- <u>Class 6A</u> Interests in AmeriFirst
- <u>Class 6B</u> Interests in Phoenix

30.     Priority Non-Tax Claims (Class 1) are classified separately due to their required treatment under Section 507. Prepetition Lenders Secured Claims (Class 2) and Other Secured Claims (Class 3) are classified separately because they represent Claims that are secured by certain assets of the Estates. Class 4A (Unsecured Claims against AmeriFirst) and Class 4B (Unsecured Claims against Phoenix) are classified separately because they represent general unsecured, non-priority Claims against the Debtors. Class 5A (Intercompany Claims against AmeriFirst) and Class 5B (Intercompany Claims against Phoenix) are classified separately because they are each Debtor's respective Claims against the other Debtor.  Interests in Classes 6A and 6B are classified separately because of the legal distinction between Interests and Claims.

31.     Accordingly, Claims or Interests assigned to each particular Class described

4921-0291-1364.5 70786.001

above are substantially similar to the other Claims or Interests in such Class and the classification of the various Classes are reasonable given the legal and factual nature of the Claims or Interests in each Class.  As such, the Plan satisfies Section 1122(a).

**2.** **Compliance with Section 1123(a)**

32.     Section 1123(a) sets forth seven items that every chapter 11 plan must contain. The Plan contains each of these items.

**a.** **Designation of Classes of Claims and Interests (Section 1123(a)(1))**

33.     As discussed above, Section 10 of the Plan properly designates classes of Claims and Interests and thus, satisfies the requirement of Section 1122.

**b.** **Specification of Unimpaired Classes (Section 1123(a)(2))**

34.     Section 1123(a)(2) requires that the Plan "specify any class of claims or interests that is not impaired under the plan." 11 U.S.C. § 1123(a)(2).  The Plan meets this requirement by identifying in Sections 9 and 10 each Class that is unimpaired – namely, Class 1 (Priority Non-Tax Claims) and Class 3 (Other Secured Claims).

**c.** **Treatment of Impaired Classes (Section 1123(a)(3))**

35.     Section 1123(a)(3) requires that the Plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3).  The Plan meets this requirement by setting forth the treatment in Sections 9 and 10 of the impaired Classes – namely, Classes 2, 4A, 4B, 5A, 5B, 6A and 6B.

**d.** **Equal Treatment within Classes (Section 1123(a)(4))**

36.     Section 1123(a)(4) requires that the Plan "provide the same treatment for each

12

claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). The Plan meets this requirement because holders of Allowed Claims will receive the same rights and treatment as other holders of Allowed Claims within their respective Class, except to the extent they agree to less favorable treatment.

### e.      **Means for Implementation (Section 1123(a)(5))**

37.     Section 1123(a)(5) requires that the Plan provide "adequate means" for its implementation. 11 U.S.C. § 1123(a)(5). The Plan satisfies this requirement through Section 14 and various other provisions of the Plan which, together, provide for the means by which the Plan will be implemented. Under the Plan, a Plan Administrator, selected by the Committee, will be responsible for administering the Estates after the Effective Date, including reconciling, objecting to and administering Unsecured Claims; making distributions to holders of Allowed Unsecured Claims; and assuming prosecution of UCC Avoidance Actions as may have been commenced by the Committee following the Settlement Effective Date. Pursuant to the Settlement Agreement and the Settlement Agreement Order, the parties to the Settlement Agreement, including RCP, agreed to the funding of the Allowed Claims Fund (totaling $2,230,000) solely for the benefit of Holders of Allowed Unsecured Claims from the Debtors' then-current cash-on-hand, which Allowed Claims Fund has been funded in full. The Plan Administrator will administer the Allowed Claims Fund and make distributions to Holders of Allowed Unsecured Claims therefrom. Pursuant to the Settlement Agreement and the Plan, RCP consents to the use of the aggregate amount of $370,000 of its cash collateral from the Debtors' cash-on-hand to fund the Administrative-Priority Claim Reserve for the

13

purpose of paying all Allowed but unpaid Administrative Claims (other than Professional Fee Claims), allowed but unpaid Priority Claims, and all costs and expenses associated with reconciling and/or objecting to any Administrative Claims filed in connection therewith.[4] Pursuant to the Settlement Agreement and Plan, RCP also consents to the use of its cash collateral to pay all U.S. Trustee fees owed through the Effective Date. There will be no distributions to Holders of Interests in AmeriFirst or Phoenix.

### f.      Issuance of Non-Voting Securities (Section 1123(a)(6))

38.      Section 1123(a)(6) requires that a debtor's corporate constituent documents prohibit the issuance of non-voting equity securities. *See* 11 U.S.C. § 1123(a)(6). On the Effective Date, all outstanding prepetition Interests in the Debtors shall be cancelled and no new securities are being issued. This subsection is not applicable.

### g.      Officers and Directors (Section 1123(a)(7))

39.      Section 1123(a)(7) requires that the Plan's provisions with respect to the manner of selection of any director, officer or trustee, or any other successor thereto, be "consistent with the interests of creditors and equity security holders and with public policy." 11 U.S.C. § 1123(a)(7). While there are no directors, officers or trustees selected under the Plan, Section 11.3 of the Plan provides for the appointment of a Plan Administrator. As set forth in the Plan Supplement, Mr. Joe Cashel, a Managing Director of the financial advisory firm Weaver, has been identified as the Plan Administrator. Mr. Cashel was chosen due to his background in restructuring and financial advisory services and significant experience working as a fiduciary in other bankruptcy and

---

[4] The evidence adduced at the confirmation hearing will establish by a preponderance of the evidence that $370,000 is sufficient to satisfy all allowed but unpaid administrative and priority claims.

liquidation cases.  The Debtors believe that his selection and manner thereof is consistent with the interests of creditors and stakeholders and with public policy.  As such, the Plan satisfies Section 1123(a)(7).

40.     Based upon the foregoing, the Plan complies fully with the requirements of Section 1123(a).

**3.     Compliance with Section 1123(b)**

**a.     Overview of Plan's Compliance with Section 1123(b)**

41.     Section 1123(b) sets forth various permissive provisions that may be incorporated into a chapter 11 plan.  *See* 11 U.S.C. § 1123(b).  For example, Section 1123(b) provides that a plan may: (a) impair or leave unimpaired any class of claims or interests; (b) provide for the assumption or rejection of executory contracts and unexpired leases; (c) provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estates; and (d) include any other appropriate provision not inconsistent with the applicable provisions of chapter 11. 11 U.S.C. § 1123(b)(1)-(6).

42.     The Plan is consistent with Section 1123(b).  Specifically, Section 10 of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims or Interests under the Plan. Specifically: (a) Class 1 (Priority Non-Tax Claims) and Class 3 (Other Secured Claims) are unimpaired by the Plan and are deemed to have accepted the Plan; (b) Class 2 (Prepetition Lenders Secured Claims) and Class 4A (Unsecured Claims against AmeriFirst) are impaired under the Plan and entitled to vote on the Plan; and (c) Classes 4B (Unsecured Claims against Phoenix), 5A (Intercompany Claims against AmeriFirst), 5B (Intercompany Claims against Phoenix), 6A

15

(Interests in AmeriFirst) and 6B (Interests in Phoenix) are impaired under the Plan. Classes 4B, 6A and 6B are not to receive any distribution under the Plan, and thus, are deemed to have rejected the Plan. Classes 5A and 5B, as Plan proponents, are deemed to accept the Plan.

43.　　In addition, in accordance with Section 1123(b)(2), Section 13.1 of the Plan provides that, except with respect to (i) executory contracts or unexpired leases that were previously assumed or rejected by order of the Bankruptcy Court, and (ii) executory contracts or unexpired leases that are the subject of a pending motion to assume or reject, on the Effective Date, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be deemed rejected pursuant to Section 365 of the Bankruptcy Code; provided however, that nothing in this Section will cause the rejection, breach, or termination of any contract of insurance benefiting the Debtors and the Estates, the Debtors' officers, managers and directors, and/or the Post-Effective-Date Debtor(s).

44.　　Finally, pursuant to and consistent with Section 11 1123(b)(3), Sections 12.3 and 16.5(a) provide that the Plan Administrator will have the authority to object to, settle or otherwise resolve Disputed Unsecured Claims (other than those claims that constitute Assigned Assets or were or will be released pursuant to the Settlement Agreement, the Settlement Agreement Order, and the Plan); and to prosecute or settle UCC Avoidance Actions in accordance with the Plan and Plan Administrator Agreement.

**b.　　The Plan's Exculpation, Third Party Release and Injunction Provisions Satisfy Section 1123(b)**

45.　　The Plan also includes: (a) an exculpation and limitation of liability provision; (b) releases of certain parties; and (c) an injunction provision. As explained below, these provisions

16

are fair and appropriate under both applicable law and the facts and circumstances of this case and are the product of arms' length negotiations.

(i)    <strong><u>The Exculpation Provision</u></strong>

46.    Section 16.1 of the Plan exculpates parties critical to the Debtors and the formulation of the Plan for any acts or omissions in connection with the Plan, the restructuring efforts, and the Chapter 11 Cases (the "<u>Exculpation</u>").  The Exculpated Parties include the Debtors' officers, directors, managers and employees, the Committee and its members, and each of their respective professionals retained during the Chapter 11 Cases, each solely in their capacities as such (the "<u>Exculpated Parties</u>").  The Debtors have agreed to modify the definition of Exculpated Parties to clarify that any employee will be an Exculpated Party solely to extent such employee acted as an Estate fiduciary. As modified, the Exculpation is appropriate because the Exculpated Parties have participated in the Chapter 11 Cases in good faith, made substantial contributions to the Debtors' efforts to maximize the value of the Estates, and will participate in the successful implementation of the Plan. Further, the Exculpation is narrowly tailored to protect the Exculpated Parties only from inappropriate litigation related to acts or omissions in connection with the administration of the Chapter 11 Cases.

47.    An exculpation provision is not a mandatory release of all liability, but instead, establishes the appropriate standard of liability with respect to the parties exculpated. *See In re PWS Holding Corp.,* 228 F.3d 224, 246 (3d Cir. 2000) (reasoning that the exculpation provision "does not affect the liability of third parties, but rather sets forth the appropriate standard of liability."); *see also In re Enron Corp.,* 326 B.R. 497, 501 (S.D.N.Y. 2005) (in finding creditors'

17

appeal of confirmation based on the plan's exculpation provision moot, the court specifically noted that the bankruptcy court addressed the exculpation provision and found it appropriate because it excluded gross negligence and willful misconduct).

48.     The Exculpation provision and the liability standard it reflects represents a conclusion of law that flows logically from certain findings of fact that the Court must reach to confirm the Plan.  First, this Court must find, under Section 1129(a)(2), that the Debtors complied with the applicable provisions of the Bankruptcy Code.  Additionally, this Court must find, under Section 1129(a)(3), that the Plan has been proposed in good faith and not by any means forbidden by law.  *See* 11 U.S.C. §§ 1129(a)(2)-(3).  These findings apply to the Debtors and, by extension, to the Debtors' officers, directors, managers, employees and professionals, and the Committee and its professionals, and justify the Exculpation.

49.     Second, it is well established that exculpation for parties participating in the plan process is appropriate where plan negotiations could not have occurred without protection from liability.  *See In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 293 (2d Cir. 1992); *Enron Corp.,* 326 B.R. at 503 (excising similar exculpation provisions would "tend to unravel the entire fabric of the Plan, and would be inequitable to all those who participated in good faith to bring it into fruition.").

50.     The Debtors ask that the Court find that the Exculpated Parties have participated in good faith with respect to the Debtors' bankruptcy efforts, the Chapter 11 Cases, and formulating and negotiating the Plan and that they are entitled to protection from lawsuits from disgruntled creditors or any other parties in interest.  Negotiation and compromise were crucial to the

conduct of the restructuring process, the Chapter 11 Cases generally and the formulation of the Plan through a largely consensual process that was critical to preserving value for creditors. This could not have occurred without the protection from liability that the Exculpation provides to the Exculpated Parties.

51.     Further, as modified, the Exculpation is consistent with the practice in this jurisdiction and others. *See, e.g., In re American Physician Partners, LLC,* Case No. 23-11469 (BLS) (Bankr. D. Del. March 15, 2024); *In re Masten Space Systems, Inc.,* Case No. 22-10657 (BLS) (Bankr. D. Del. Nov. 9, 2022); *In re YogaWorks, Inc., et. al.,* No. 20-12599 (KBO) (Bankr. D. Del. May 5, 2021); *In re VER Technologies HoldCo, LLC,* No. 18-10834 (KG) (Bankr. D. Del. July 26, 2018); *In re Sea Containers Ltd.,* No. 06-11156 (KJC) (Bankr. D. Del. Nov. 24, 2008). Therefore, the Court should approve the Exculpation and adopt the appropriate standard of liability for the Exculpated Parties with respect to the Chapter 11 Cases.

52.     Based upon the foregoing, the Exculpation complies with the requirements of Sections 1122 and 1123 and thus, satisfies the requirements of Section 1129(a)(1).

(ii)     **The Release Provisions**

(A)     **Estate Releases**

53.     Section 16.2(a) of the Plan provides for releases (the "Estate Release(s)") of certain claims and actions against the Released Parties by the Debtors, the Estates, the Post-Effective-Date Debtors, and the Committee. The Released Parties are (a) the Debtors and Post-Effective-Date Debtors; (b) the Committee and the members thereof, solely in their capacity as such; (c) the Prepetition Lenders; (d) the Prepetition Agent; (e) the DIP Agent and DIP Lenders; and (e) each of

19

such Entities' Related Persons.

54.     The Estate Release is a consensual release that was the result of substantial negotiations by and among the Debtors, the Committee, and other Released Parties, to ensure the Released Parties, given the value and other consideration and concessions provided by the Prepetition Lenders, the DIP Lenders, and the other Released Parties under or in connection with the Plan, are protected from liability with respect to their acts related to the Debtors. The Estate Release is narrowly and specifically tailored so as to give sufficient notice of the nature of the released claims. The Estate Releases were an integral and necessary component to the negotiation and implementation of the Plan and its contemplated transactions.

55.     Accordingly, the Estate Releases comply with the requirements of Section 1123(b).

(B)     <strong><u>Consensual Third Party Releases</u></strong>

56.     The Plan, at section 16.2(a)(2), provides for a consensual Third Party Release. The Third Party Release, like all substantive elements of the Plan, was negotiated by sophisticated parties represented by able counsel and are the result of arm's-length negotiations. The Third Party Release provides the Released Parties with a level of finality that is key to an orderly and value-maximizing disposition of the Estates, a result which would be impossible without the contributions of the Released Parties.

57.     Notwithstanding the Supreme Court's recent decision in *Purdue*,[5] nothing has changed the longstanding precedent permitting consensual third party releases. Courts in the Third

---

[5] *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024).

Circuit have long recognized that a chapter 11 plan may include a release of non-debtors by other non-debtors when such release is consensual.[6] Since *Purdue*, many courts have continued to approve third party releases in chapter 11 plans where consent was obtained through an opt-out mechanism as in the cases here. *See, e.g., In re Fisker, Inc.*, No. 24-11390 (TMH) (Bankr. D. Del. Oct. 16, 2024)[7]; *In re Wheel Pros, LLC*, No. 24-11939 (JTD) (Bankr. D. Del. Oct. 15, 2024); *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. Oct. 8, 2024); *In re Sam Ash Music Corp.*, No. 24-14727 (SLM) (Bankr D.N.J. Aug. 15, 2024); *In re Robertshaw US Holding Corp.*, Case No. 24-90052 (CML) (Bankr. S.D. Tex. Aug. 16, 2024); *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Aug. 2, 2024); *In re Bowflex Inc.*, No. 24-12364 (ABA) (Bankr. D. N.J. Aug. 18, 2024).

58.     Nonetheless, the Debtors have agreed to further modify the Third Party Release such that any party who did not return a Ballot or an Opt-Out Form will not be deemed a Releasing Party under the Plan.  Such modification comports with this Court's recent ruling in *WEH Liquidating, LLC*, Case No. 25-11602 (TMH) (Bankr. D. Del.).  *See*, *Transcript of Dec. 17, 2025 Hearing* [Docket No. 417].  As modified, the Third Party Release is fully consensual and consistent with the law in this Circuit and should therefore be approved.

c.     **The Injunction Provision**

59.     The injunction provision in Section 16.3 of the Plan permanently enjoins all

---

[6]  *See, e.g., In re Emerge Energy Servs. LP*, 2019 WL 7634308, * 17-18 (Bankr. D. Del. Dec. 5, 2019); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 305 (Bankr. D. Del. 2013); *In re Spansion, Inc*., 426 B.R. 114, 144 (Bankr. D. Del. 2010) ("a third party release may be included in a plan if the release is consensual"); *In re Washington Mutual, Inc*., 442 B.R. 314, 351–52 (Bankr. D. Del. 2011).

[7]  In *Fisker*, this Court permitted the use of opt-outs for creditors regardless of their voting status, only rejecting the use of opt-outs for equity holders, reasoning that inaction by a party "receiving nothing under the plan…" cannot be construed as consent. *In re Fisker, Inc*., Case No. 24-11390 (TMH) (Bankr. D. Del. Oct. 11, 2024) (Dkt. No. 706, Hearing Transcript, 45:5-19).

entities that held, hold or may hold claims or interests from asserting or bringing any actions on any such claims or interests against the Debtors, the Estates, the Post-Effective-Date Debtors and the Plan Administrator (the "Injunction").   The Injunction provision is necessary to implement the Plan and also preserve and enforce the Exculpation and is narrowly tailored to achieve these purposes.

60.   The Injunction is a key provision of the Plan because it facilitates the implementation of the Plan (including the specific treatment provided for allowed claims) enforces the Exculpation provision by enjoining entities from taking any actions against the Debtors, the Estates, and related parties. Therefore, to the extent the Court finds the Plan releases and Exculpation provision as modified are appropriate, the Injunction is also appropriate and should be approved.

61.   Based on all of the above, the Plan complies with Section 1123(b).

**d.**      **Compliance with Section 1123(d)**

62.   Section 1123(d) states that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and nonbankruptcy law." *See* 11 U.S.C. § 1123(d)."

63.   Section 13.1 of the Plan provides that, except with respect to (i) executory contracts or unexpired leases that were previously assumed or rejected by order of the Bankruptcy Court, and (ii) executory contracts or unexpired leases that are the subject of a pending motion to assume or reject, on the Effective Date, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be deemed rejected pursuant to Section 365 of the Bankruptcy Code; provided however, that nothing in this Section shall cause the rejection, breach, or termination of any contract

22

of insurance benefiting the Debtors and the Estates, the Debtors' officers, managers and directors, and/or the Post-Effective-Date Debtor(s).  As such, the Plan satisfies Section 1123(d).

### e.  Compliance with Section 1126

64.     Section 1126 specifies the requirements for acceptance of a plan.  11 U.S.C. § 1126. Specifically, under Section 1126, only holders of allowed claims and allowed equity interests in impaired classes of claims or interests that will receive or retain property under a plan on account of such claims or interests may vote to accept or reject such plan.  Section 1126 provides in pertinent part that:

> (a) The holder of a claim or interest allowed under section 502 of [the Bankruptcy Code] may accept or reject a plan. . . .
>
> (f) Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.
>
> (g) Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests.

11 U.S.C. § 1126(a), (f) and (g).

65.     As set forth in the Plan and, in accordance with Section 1126, the Debtors solicited acceptances or rejections of the Plan from the Holders of Class 2 Claims (Prepetition Secured Lenders Claims) and Class 4A (Unsecured Claims against AmeriFirst). Classes 1 and 3 are unimpaired and are thus conclusively presumed to have accepted the Plan pursuant to Section 1126(f).  Classes 4B, 6A, and 6B, are impaired under the Plan, but will not receive or retain property under the Plan and thus, are conclusively presumed to have rejected the Plan pursuant to Section

23

1126(g) and are not entitled to vote. Classes 5A and 5B are Plan proponents and deemed to accept the Plan.

66.     As to the impaired Classes entitled to vote to accept or reject the Plan (Class 2 and Class 4A), Section 1126(c) specifies the requirements for acceptance of a plan by classes of claims:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected the plan.

As discussed above, Class 2 and Class 4A voted to accept the Plan both in numerosity and in dollar amount.

67.     Based upon the foregoing and the evidence that will be presented prior to and at the Confirmation Hearing, the Debtors submit that the Plan satisfies the requirements of Section 1126.

## C.     The Debtors Complied with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2))

68.     The Debtors have satisfied Section 1129(a)(2), which requires that the proponent of a plan comply with the applicable provisions of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(2). The legislative history to Section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements set forth in Sections 1125 and 1126. *See In re Lapworth*, 1998 WL 767456, at *3, 1998 Bankr. LEXIS 1383, at *10 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2)."); S. Rep. No. 989, 95th Cong., 2d Sess., at

24

126 (1978); H.R. Rep. No. 595, 95th Cong., 1st Sess., at 412 (1977).

69.     Among other things: (a) the Debtors are proper debtors under Section 109(d); (b) the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by order of the Court; and (c) the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Solicitation Procedures Order in (i) transmitting the Disclosure Statement, the Plan and related documents and notices and (ii) soliciting and tabulating votes on the Plan.

**D.      The Plan was Proposed in Good Faith (Section 1129(a)(3))**

70.     Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The good faith standard requires that the plan be "proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code." *In re Zenith Elecs. Corp.,* 241 B.R. 92, 107 (Bankr. D. Del. 1999) (*quoting In re Sound Radio, Inc.,* 93 B.R. 849, 853 (Bankr. D. N.J. 1988), *aff'd in part, remanded in part,* 103 B.R. 521 (D.N.J. 1989), aff'd, 908 F.2d 964 (3d Cir. 1990)). *See also In re SGL Carbon Corp.,* 200 F.3d 154, 165 (3d Cir. 1999) (finding good faith requires "some relation" between the chapter 11 plan and the "reorganization-related purposes" of chapter 11).

71.     The Bankruptcy Code does not define "good faith" as that term is used in Section 1129(a)(3). "[F]or purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code" in light of the particular facts

and circumstances of the case. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 247 (3d Cir. 2004) (*quoting In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000)); *see also In re Armstrong World Indus., Inc.*, 348 B.R. at 164. This inquiry typically focuses on whether a plan has been proposed with a legitimate purpose and with a basis for expecting that reorganization consistent with the Bankruptcy Code's objectives can be effectuated. *See, e.g., In re Burns & Roe Enters.*, 2009 U.S. Dist. LEXIS 13574, at *78-19 (D.N.J. Feb. 23, 2009) (holding that plan had been proposed with the legitimate purpose of reorganizing the debtors' affairs and maximizing the returns available to creditors and holders of equity interests and therefore satisfied 1129(a)(3), even if it relieved debtors of contractual obligations to objecting insurance company).

72.     The Debtors' good faith is evident from the record of the hearing on the Solicitation Procedures Motion and other proceedings held in the Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of effectuating the Settlement Agreement, making distributions and liquidating (or otherwise monetizing) the Debtors' remaining assets and maximizing their value for the benefit of the Debtors' creditors. Further, the Plan satisfies these objectives in the most efficient and timely manner presently imaginable, and is in no way an attempt to abuse judicial process or delay or frustrate the legitimate efforts of creditors to enforce their rights. *See In re Sound Radio, Inc.,* 93 B.R. at 853.

73.     The Plan was the product of effort by the Debtors to inform all creditors, interest holders, and other parties in interest of all developments with the Debtors and the Chapter 11 Cases, and to create a means to maximize the value of the remaining assets of the Estates in order to make distributions on account of claims consistent with the priority scheme of the Bankruptcy Code.

74.     The Plan was indeed proposed with honesty and good intentions, and it was proposed and negotiated at arm's length; therefore, it meets the requirements of Section 1129(a)(3).

**E.     The Plan Provides that Payments Made by the Debtors for Professional Fees and Expenses are Subject to Court Approval (Section 1129(a)(4))**

75.     Section 1129(a)(4) requires that certain professional fees and expenses paid by the plan proponent, by the debtor or by a person receiving distributions of property under the plan, be subject to approval by the Court as reasonable. 11 U.S.C. § 1129(a)(4). Specifically, Section 1129(a)(4) requires that:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to approval of, the court as reasonable.

76.     Section 1129(a)(4) has been construed to require that all payments of professional fees using funds from estate assets be subject to review and approval by the Court as to their reasonableness. *See In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988); *see also In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation.").

77.     Section 8.2(b) of the Plan requires that all requests for final payment of Professional Fee Claims must be filed with the Court by no later than thirty (30) days after the Effective Date for review and approval by the Court. Further, all other payments to be made in connection with the Effective Date have been disclosed previously or will be disclosed.

78.     Based upon the foregoing, the Plan complies with the requirements of Section

27

1129(a)(4).

**F.**     **The Debtors Have Disclosed All Necessary Information Regarding Directors, Officers and Insiders (Section 1129(a)(5))**

79.     Section 1129(a)(5)(A) requires that the proponent of a plan disclose the identity and affiliations of the proposed officers and directors of the reorganized debtor. 11 U.S.C. § 1129(a)(5)(A). The Bankruptcy Code further provides that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy. Section 1129(a)(5)(B) also requires a plan proponent to disclose the identity of an "insider" (as defined by Section 101(31)) to be employed or retained by the reorganized debtor and the nature of any compensation for such insider. *Id.*

80.     As this is a liquidation and there will be no reorganized debtor, Section 1129(a)(5)(A) is facially inapplicable. Nevertheless, the Plan proposes the appointment of Joe Cashel (a Managing Director of Weaver) to serve as the Plan Administrator for the purpose of, among other things, effectuating Distributions to Holders of Allowed Claims under the Plan. Mr. Cashel's terms of compensation were set forth in the Plan Supplement.

81.     Based upon the foregoing, the Plan satisfies the requirements of Section 1129(a)(5).

**G.**     **No Rate Changes (11 U.S.C. § 1129(a)(6))**

82.     Section 1129(a)(6) permits confirmation only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved any rate change provided for the Plan. This provision is not applicable as the Debtors are no longer conducting business and the Plan does not provide for any changes in any regulated rates. Accordingly, the Plan satisfies

Section 1129(a)(6).

**H.**     **The Plan is in the Best Interests of All the Debtors' Creditors (Section 1129(a)(7))**

83.     Section 1129(a)(7) — the "best interests test" — provides, in relevant part:

With respect to each impaired class of claims or interests —

> (A)     each holder of a claim or interest of such class —
>   (i)     has accepted the plan; or
>   (ii)    will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date….

11 U.S.C. § 1129(a)(7)(A).

84.     The best interests test applies to individual dissenting holders of claims and interests rather than classes, and is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's plan. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. Lasalle St. P'ship,* 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *In re Adelphia Commc'ns. Corp.,* 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (Section § 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation."). As Section 1129(a)(7) makes clear, the best interests test applies only to non-accepting holders of impaired claims or interests.

85.     There are two impaired voting classes under the Plan: Class 2 (Prepetition Lenders Secured Claims) and Class 4A (Unsecured Claims against AmeriFirst). Class 2 and Class 4A have voted to accept the Plan. To satisfy the best interests test in relation to Class 4A, the

29

Debtors must demonstrate that each creditor holding a Claim in Class 4A has either accepted the Plan or will receive at least as much under the Plan as that claimant would receive in a hypothetical chapter 7 liquidation. *See In re Lason, Inc.,* 300 B.R. 227, 232 (Bankr. D. Del. 2003) ("Section 1129(a)(7)(A) requires a determination whether 'a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization.'").

86.     As set forth in the Disclosure Statement section 6.8 (Best Interests Test and Liquidation Analysis), and the Liquidation Analysis submitted as part of the Plan Supplement, Class 4A claimants that voted to reject the Plan would receive less in a hypothetical chapter 7 liquidation than as projected pursuant to the Plan in the Chapter 11 Cases.

87.     If the Chapter 11 Cases were converted to a chapter 7 proceeding, first and foremost, the Estates would not have the benefit of the value and concessions to be provided by RCP pursuant to the Settlement Agreement, including the Allowed Claims Fund and the use of cash collateral to pay administrative and priority claims. Further, the Debtors' estates would incur the costs of payment of a statutorily allowed commission to the chapter 7 trustee, as well as the costs of its counsel and other professionals. The Plan contemplates an orderly administration and claims process by parties that are already familiar with the Debtors, their affairs, and their creditors and liabilities. Such familiarity will allow the Plan Administrator or the Post-Effective-Date Debtors, as applicable, to complete a wind-down including reconciling and objecting to disputed claims and prosecute UCC Avoidance Actions (as applicable). Also, the Estates would suffer additional delays, as a chapter 7 trustee and its professionals would need time to develop a necessary learning curve in order to complete the administration of the Estates.

4921-0291-1364.5 70786.001

88.     Additionally, a chapter 7 liquidation likely would result in a significant delay in payments being made to creditors and the expansion of the claims pool to be administered. Bankruptcy Rule 3002(c) provides that conversion of Chapter 11 cases to chapter 7 will trigger a new bar date for filing claims against the estates, and that the new bar date will be 90 days after the first date set for the meeting of creditors called under Section 341. Thus, not only would a chapter 7 liquidation delay distribution to creditors, but it is possible that additional claims that were not asserted in the Chapter 11 Cases, or were late-filed, could be filed against the Estates. Additional claims would mean a lower pro rata distribution to similarly situated creditors.

89.     In summary, if the Chapter 11 Cases were to convert to chapter 7 cases, the Liquidation Analysis demonstrates that there would be no distribution available for Class 4A claimants. Therefore, the claimants in Class 4A that did not accept the Plan will receive a larger distribution through the Plan than they would in a liquidation under chapter 7. Accordingly, the Plan satisfies the best interests test.

90.     Based upon the foregoing, the Plan satisfies the requirements of Section 1129(a)(7).

## I.     Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))

91.     Section 1129(a)(8) requires that each class of claims or interests either accept the plan or not be impaired under the plan. Classes 2 and 4A voted to accept the Plan in accordance with Section 1126(c). Classes 4B, 6A, and 6B (the "Deemed Rejecting Classes") are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to Section 1126(g). As Plan proponents, Classes 5A and 5B are deemed to accept the Plan.

Although Section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes, as discussed herein. Accordingly, the Plan satisfies Section 1129(b) with respect to Classes 4B, 6A, and 6B.

**J.**   **The Plan Provides for Payment in Full of All Allowed Priority Claims (Section 1129(a)(9))**

92.   Section 1129(a)(9) requires that persons holding claims entitled to priority under Section 507(a) receive specified cash payments under the plan. 11 U.S.C. § 1129(a)(9). Unless the holder of a particular claim agrees to a different treatment with respect to such claim, Section 1129(a)(9) requires the plan to provide as follows:

> (A)   with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2), on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

> (B)   with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7), each holder of a claim of such class will receive
>
> —
>
> > (i)   if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
> >
> > (ii)   if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

> (C)   with respect to a claim of a kind specified in section 507(a)(8), the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

11 U.S.C. § 1129(a)(9).

93.      In compliance with Section 1129(a)(9), Section 8.2 of the Plan provides for (a) full payment of all Allowed Administrative Claims on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim, or (b) payment in accordance with the terms and conditions of agreements between the administrative claimant and the Debtors or Post-Effective-Date Debtors, or (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, payment upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan, or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), payment as and when due under applicable law.

94.      Further, Section 8.2(d) of the Plan provides for full payment of Allowed Priority Tax Claims on the earliest of the following dates: (i) on or as soon as practicable after the Effective Date, (ii) on or as soon as practicable after the claim is Allowed, and (iii) the date it is payable under applicable non-bankruptcy law, unless otherwise agreed to by the Holder of a Priority Tax Claim.

95.      Based upon the foregoing and the evidence that will be adduced at the Confirmation Hearing, the Debtors submit that the Plan satisfies the requirements of Section 1129(a)(9).

**K.      Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))**

96.      Section 11 U.S.C. § 1129(a)(10) requires that, if there is an impaired class of claims under the plan, at least one impaired class has accepted the plan, exclusive of insider votes. Class 2 and Class 4A are impaired Classes and voted to accept the Plan. Accordingly, the Plan

33

satisfies the requirements of Section 1129(a)(10).

**L.     The Plan Is Feasible (Section 1129(a)(11))**

97.     Section 1129(a)(11) requires that the bankruptcy court find that a plan is feasible as a condition precedent to confirmation.  Specifically, the Court must determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).

98.     To demonstrate that a plan is feasible, it is not necessary that success be guaranteed. Rather, a bankruptcy court must determine whether a plan is workable and has a reasonable likelihood of success. *See United States v. Energy Res. Co., Inc.,* 495 U.S. 545, 549 (1990); *Internal Revenue Serv. v. Kaplan (In re Kaplan),* 104 F.3d 589, 597 (3d Cir. 1997).

99.     Feasibility requires proof that the Debtors will be able to make payments due on the Effective Date and will be able to make payments due under the life of the plan.  "The key element of feasibility is whether there exists a reasonable probability that the provisions of the plan of reorganization can be performed." *In re Sagewood Manor Assocs. Ltd. P'ship,* 223 B.R. 756 (Bankr. D. Nev. 1998) (citing *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 723, 762 (Bankr. S.D.N.Y. 1992)).

100.     The Debtors' obligations under the Plan will be funded by the Allowed Claims Fund, the Administrative-Priority Claims Reserve, and any net proceeds from the liquidation of the Debtor's remaining assets (including potentially UCC Avoidance Actions and proceeds thereof). Based on their review of due and potential claims and expenses, the Debtors believe that

4921-0291-1364.5 70786.001

the foregoing funds are sufficient to implement the Plan. The Plan itself calls for liquidation of the Debtors and therefore, the Plan complies with Section 1129(a)(11).

**M.**   **All Statutory Fees Have Been or Will Be Paid (Section 1129(a)(12))**

101.   Section 1129(a)(12) requires the payment of "[a]ll fees payable under section 1930 [of title 28 of the United States Code], as determined by the court at the hearing on confirmation of the plan." 11 U.S.C. § 1129(a)(12)." Section 507 provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses.  11 U.S.C. § 507(a)(1).

102.   In accordance with Sections 11 U.S.C. § 507 and 1129(a)(12), the Plan, at sections 8.2(a) and 19.1, provides that all fees payable pursuant to 28 U.S.C. § 1930 shall be paid by the estates on or after the Effective Date, when due and payable.  After the Effective Date, to the extent applicable, U.S. Trustee statutory fees under 28 U.S.C. § 1930(a)(6) will be paid from the Administrative-Priority Claims Reserve, which, as will be demonstrated at the Confirmation Hearing, the Debtors believe contains sufficient funds to pay such statutory fees when due and payable under applicable law.  Thus, the Plan satisfies the requirements of Section 1129(a)(12).

**N.**   **Sections 1129(a)(13) through 1129(a)(16) Do Not Apply to the Plan**

103.   Section 1129(a)(13) requires that all retiree benefits continue to be paid post-confirmation at any levels established in accordance with Section 1114. *See* 11 U.S.C. § 1129(a)(13). The Debtors do not have any obligations on account of retiree benefits (as such term is used in Section 1114).[8]  Therefore, Section 1129(a)(13) is inapplicable to the Chapter 11 Cases.

---

[8]   Under Section 1114, "'retiree benefits' means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the

35

104.    Section 1129(a)(14) relates to the payment of domestic support obligations. *See* 11 U.S.C. § 1129(a)(14).  The Debtors are not subject to any domestic support obligations, and therefore, the requirements of Section 1129(a)(14) do not apply.

105.    Section 1129(a)(15) applies only in cases in which the debtor is an "individual" (as that term is defined in the Bankruptcy Code).  Section 1129(a)(15) does not apply in the Chapter 11 Cases because the Debtors are not individuals.

106.    Section 1129(a)(16) does not apply in the Chapter 11 Cases because the Debtors are a moneyed, business or commercial corporation.

**O.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))**

107.    Section 1129(b) provides that if all applicable requirements of Section 1129(a) are met, notwithstanding a failure to comply with Section 1129(a)(8), a plan may be confirmed so long as it does not discriminate unfairly and is fair and equitable with respect to each class of claims and interests that is impaired and has not accepted the plan.  This mechanism is known colloquially as a "cram down."

108.    The Plan does not unfairly discriminate against the impaired classes that are deemed to reject the Plan – Class 4B (Unsecured Claims against Phoenix), Class 5A (Intercompany Claims against AmeriFirst), Class 5B (Intercompany Claims against Phoenix), Class 6A (Interests in AmeriFirst), and Class 6B (Interests in Phoenix).  The Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists.  *See In re 203 N. LaSalle St. Ltd.  P'ship.,* 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), *rev'd on other grounds, Bank of Am. Nat. Trust and Sav.*

_____

purpose of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under [chapter 11]." 11 U.S.C. § 1114(a).

*Ass'n,* 526 U.S. 434 (1999) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established."). Rather, courts typically examine the facts and circumstances of each particular case to determine whether unfair discrimination exists. *See In re Bowles*, 48 B.R. 502, 507 (Bankr. E.D. Va. 1985) ("[W]hether or not a particular plan does so [unfairly] discriminate is to be determined on a case-by-case basis."). At a minimum, however, the unfair discrimination standard prevents creditors and interest holders with similar legal rights from receiving materially different treatment under a proposed plan without sufficient justifications for doing so. *See In re Ambanc La Mesa Ltd. P'ship,* 115 F.3d 650, 655-57 (9th Cir. 1997); *In re Aztec Co.,* 107 B.R. 585, 589-91 (Bankr. M.D. Tenn. 1989); *In re Johns-Manville Corp.,* 68 B.R. 618, 636 (Bankr. S.D.N.Y.1986).

109.    A threshold inquiry to assessing whether a proposed plan unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to a class allegedly receiving more favorable treatment. Here, the classes deemed to reject the Plan –Classes 4B, 5A, and 5B – are not equally situated to any other class allegedly receiving more favorable treatment than that deemed rejecting class. While Class 4A will receive *pro rata* distributions from the Allowed Claim Fund under the Plan and Class 4B will not, there are no claim in Class 4B and thus, no claimants in Class 4B will be treated differently.

110.    The Plan is also fair and equitable. Section 1129(b)(2) provides that a plan is fair and equitable with respect to a particular class of unsecured claims or impaired interests if it provides that the holder of any claim or interest in a class junior to the claims or interests of that

4921-0291-1364.5 70786.001

particular class will not receive or retain under the plan on account of such junior claim or interest in property.  *See* 11 U.S.C. § 1129(b)(2)(B)(ii) and (C)(ii).  This central tenet of bankruptcy law—the "absolute priority rule"—requires that, if the holders of claims or interests in a particular class that vote to reject a plan receive less than full value for their claims or interests, no holder of claims or interests in a junior class may receive or retain any property under the plan.[9]  Another condition under the absolute priority rule is that senior classes cannot receive more than a 100% recovery for their claims.  *See In re Exide Techs.,* 303 B.R. 48, 61 (Bankr. D. Del. 2003).

111.    Under the Plan, Classes 4B, 6A and 6B will receive no distributions under the Plan, are impaired under the Plan, and are conclusively deemed to have rejected the Plan pursuant to the Bankruptcy Code.  There are no classes of Claims or Interests junior to these classes that will receive distributions under the Plan. Further, holders of Claims in Class 2 (Prepetition Lenders Secured Claims) and Class 4A (Unsecured Claims against AmeriFirst) will not receive more than a 100% recovery under the Plan.  Accordingly, the Plan is fair and equitable.

112.    Therefore, the Plan complies with Section 1129(b) and may be confirmed notwithstanding the deemed rejection of the Plan by Classes 4B, 6A and 6B.

**P.    Only One Plan (11 U.S.C. § 1129(c))**

113.    Section 1129(c) provides that, with a limited exception, a bankruptcy court may only confirm one plan.  The Plan is the only chapter 11 plan filed in the Chapter 11 Cases.

---

[9]   *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988) (the absolute priority rule, "provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a reorganization] plan") (citations omitted); *Bank of Am. Nat. Trust and Sav. Ass'n v. 203 North LaSalle St. P'ship*, 526 U.S. 434, 441-42 (1999) ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property,' 11 U.S.C. § 1129(b)(2)(B)(ii). That latter condition is the core of what is known as the 'absolute priority rule.'").

4921-0291-1364.5 70786.001

Accordingly, Section 1129(c) is inapplicable.

**Q.    The Debtors Have Complied with Section 1129(d)**

114.    The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933.  Moreover, no governmental unit or any other party has requested that the Court decline to confirm the Plan on such grounds.  Accordingly, the Plan satisfies the requirements of Section 1129(d).

## IV.

## CONCLUSION

115.    The Disclosure Statement complies with the requirements of Section 1125 and provides adequate information to Holders of Claims entitled to vote on the Plan and thus, should be approved on a final basis.  The Plan complies with and satisfies all of the requirements of Section 1129 and therefore should be confirmed.

Dated: January 8, 2026
Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/  Laura Davis Jones*
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (*pro hac vice*)
Timothy P. Cairns (Bar No. 4228)
Mary F. Caloway (Bar No. 3059)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:  302-652-4400
email: ljones@pszjlaw.com
        dbertenthal@pszjlaw.com
        tcairns@pszjlaw.com
        mcaloway@pszjlaw.com

*Counsel for Debtors and Debtors in Possession*

4921-0291-1364.5 70786.001