**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Case No. 23-11069 (CTG) |
| **YELLOW CORPORATION, et al.** | Chapter 11 |
| **Debtors.** | Jointly Administered |
| | Related Docket Nos. 5375 and 5417 |

**LOCAL 705 PENSION FUND'S RESPONSE TO DEBTORS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ON SFA MEPPS' AND NON-SFA MEPPS' CLAIMS**

William D. Sullivan, Esq.
William A. Hazeltine, Esq.
SULLIVAN HAZELTINE ALLINSON LLC
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com
           whazeltine@sha-llc.com


Stephen J. Rosenblat, Esq.
BAUM SIGMAN AUERBACH & NEUMAN, LTD.
200 West Adams Street, Suite 1825
Chicago, IL 60606
Tel: (312) 216-2573
Email: srosenblat@baumsigman.com


John S. Delnero, Esq,
PEDERSEN HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
Tel: 312-261-2185
Email: jdelnero@pedersenhoupt.com

*Counsel for International Brotherhood of Teamsters
Local 705 Pension Fund*

**TABLE OF CONTENTS**

I.       PREFACE ................................................................................................................. 1

II.     SUMMARY OF ARGUMENT ................................................................................ 2

III.    FACTUAL OMISSIONS IN DEBTORS' MOTION FOR SUMMARY JUDGMENT 5

IV.   ARGUMENT ........................................................................................................... 9

    A.   Debtors Concede that Bankruptcy is a Default under Local 705 Pension Fund's Plan ... 9

    B.   Debtors Have Waived All Challenges to Local 705 Pension Fund's Discount Methodology ........................................................................................................... 12

    C.   Debtors' Discovery Responses Support Local 705 Pension Fund's Discount Methodology ........................................................................................................... 12

    D.   Local 705 Pension Fund's Discount Rate Follows ERISA, its Plan and Debtors' Test  16

    E.   Debtors' Discount Rate Violates ERISA and Its Own Proposed Test .......................... 19

    F.   Debtors' Reliance on Penalty Cases and Original Issue Discount Cases is Incorrect ... 20

# TABLE OF AUTHORITIES

**Cases**

*Board of Trustees v. Eberhard Foods, Inc*,
  831 F.2d 1258 (6th Cir. 1987) ............................................................................. 17, 18

*Central States, Southeast & Southwest Areas Pension Fund v. Basic Amer. Indus.*,
  252 F.3d 911 (7th Cir. 2001) ..................................................................................... 3, 4

*CPC Int'l, Inc. v. Archer Daniels Midland Co.*,
  831 F. Supp. 1091 (D. Del. 1993) ................................................................................. 12

*GCIU-Emp. Ret. Fund v. MNG Enters., Inc.*,
  51 F.4th 1092 (9th Cir. 2022) ................................................................................. 5, 19

*In re AMR Corp.*,
  730 F.3d 88 (2d Cir. 2013) ........................................................................................... 11

*In re B456 Sys., Inc.*,
  2017 WL 6603817 (Bankr. D. Del. Dec. 22, 2017) ........................................... 15, 16

*In re CD Realty Partners*,
  205 B.R. 651 (Bankr. D. Mass. 1997) ......................................................................... 11

*In re Chateaugay Corp.*, 109 Bankr. 51 (S.D.N.Y. 1990) ................................. 21

*In re Crane Rental Co.*,
  334 B.R. 73 (Bankr. D. Mass. 2005) ...................................................................... 3, 11

*In re General Growth Props.*,
  451 B.R. 323 (Bankr. S.D.N.Y. 2011) ......................................................................... 11

*In re Hertz Corp.*,
  120 F.4th 1181 (3d Cir. 2024) ...................................................................................... 20

*In re Manhattan Jeep Chrysler Dodge, Inc.*, 2019 Bankr. LEXIS 680*1-2 (Bankr. S.D.N.Y.
  2019) ............................................................................................................................... 3

*In re Oakwood Homes*,
  449 F.3d 588 (3rd Cir. 2006) ......................................................................... 13, 14, 15

*In re Public Service co. of New Hampshire*,
  114 B.R. 800 (Bankr. D. N.H. 1990) ........................................................................... 21

*In re Remington Rand Corporation*,
  836 F.2d 825 (3rd. Cir. 1988) ...................................................................................... 11

*In re U.S. Airways Grp., Inc.*,
  303 B.R. 784 (Bankr. E.D. Va. 2003) .......................................................................... 16

*In re Ultra Petroleum Corp.*,
 51 F.4th 138 (5th Cir. 2022) ........................................................................................ 21

*Raleigh v. Illinois Dep't of Revenue*,
 530 U.S. 15 (2000) ...................................................................................................... 17

*Sofco Erectors, Inc. v. Trs. of Ohio Operating Eng'rs Pension Fund*, 15 F.4th 407, 418 (6th Cir.
2021) ...................................................................................................................... 16, 17

*United Mine Workers of Am. 1974 Pension Plan v. Energy W. Mining Co.*,
 39 F. 4th 730 (D.C. Cir. 2022) ............................................................................ 5, 6, 18

*Vanston Bondholders Protective Comm. v Green*,
 329 U.S. 156 (1946) .................................................................................................... 17

**Statutes**

§ 1393 ...................................................................................................................... 1, 3, 17

11 USC § 502 .................................................................................................................. 15

28 U.S.C. § 586 .............................................................................................................. 20

29 U.S.C. § 1393 ............................................................................................. 5, 8, 9, 14, 16

H. Rep. No. 595, 95th Cong., 1st Sess. 352-53 (1977) ........................................................ 9

**LOCAL 705 PENSION FUND'S RESPONSE TO DEBTORS' MOTION FOR PARTIAL**
**SUMMARY JUDGMENT ON SFA MEPPS' AND NON-SFA MEPPS' CLAIMS**

LOCAL 705 INTERNATIONAL BROTHERHOOD OF TEAMSTERS PENSION FUND

("Local 705 Pension Fund"), by and through its undersigned counsel, hereby responds to Debtors'

Motion for Partial Summary Judgment on SFA MEPPS' and Non-SFA MEPPS' Claims filed on

December 14, 2024 [ECF No. 5181] (the "Debtors' MSJ") and Amended Order Scheduling Certain

Dates and Deadlines in SFA MEPP and Non-SFA MEPP Litigation [ECF No. 5156].

## I.    PREFACE

Debtors' MSJ represents a classic case of moving the goalpost with respect to the

allowance of Local 705 Pension Fund's withdrawal liability claims. Local 705 Pension Fund's

proof of claim in the amount of $17,830,282 represents the present value of Debtors' total future

pension obligations in the amount of $25,596,814. In accordance with ERISA § 1393(a)(1)], Local

705 Pension Fund used a 6.75% discount rate which is the same rate for calculating the fund's

minimum required contributions to meet unfunded vested benefits ("UVB's"). (*See* Gitterman

Affidavit, Exhibit A, par. 11).

No matter how Debtors' attempt to obfuscate the issue, they cannot deny that Local 705

Pension Fund's claim is *already discounted to present value*. The discount rate of 6.75% is higher

than the risk-free rate that this estate is required to invest estate funds, rendering the value of Local

705 Pension Fund's claim less than its non-bankruptcy equivalent. (*See* Gitterman Affidavit,

Exhibit A, pars. 25, 26).

Indeed, Debtors have consistently agreed in pleadings and discovery with Local 705

Pension Fund's calculation of withdrawal liability; Debtors even cancelled depositions of Local

705 Pension Fund's witnesses. Debtors now claim, almost a year after they first objected to Local

705 Pension Fund's proof of claim, that Local 705 Pension Fund's withdrawal liability discount rate is objectionable because Local 705 Pension Fund "did not bargain for the interest *it imposed and then excised*." Debtors' MSJ, p.37. (emphasis added).

This argument is both without merit and waived. Debtors never raised this argument before[1] and failed to answer straightforward discovery requests seeking the Debtors' bases for objecting to Local 705 Pension Fund's claim. Debtors then: (1) produced an expert report supporting the calculation of Local 705 Pension Fund's claim; (2) ignored Local 705 Pension Fund's motion for summary judgment filed on August 23, 2024 [ECF No. 4184]; (3) filed a summary judgment response on December 3, 2024 for different funds, stating that those funds failed to discount future obligations using historic returns on their investments, which is exactly how Local 705 Pension Fund discounted its claim; and (4) stated for the first time on December 14, 2024 that Local 705 Pension Fund's discount rate using historical fund returns was incorrect because it was not negotiated with the Debtors.

Local 705 Pension Fund did exactly what it was supposed to do; Debtors have essentially admitted the same. Debtors' game of hiding the ball and chameleonic shift in arguments mandates the granting of Local 705 Pension Fund's motion for summary judgment.

## II.    SUMMARY OF ARGUMENT

Debtors acknowledge that Local 705 Pension Fund's plan document "provides that an employer will be in default if the employer files a bankruptcy action." (Debtors' MSJ, p.25). Debtors further acknowledge that Local 705 Pension Fund satisfied its "notice and demand

---

[1] As set forth below, the calculation of the interest rates and discount rates by Local Pension's board of trustees, including a Yellow Truck representative, is contemplated by Local 705 Pension Fund's plan documents. *See* Exhibit B, pp. 111-116.

requirements [after] the bankruptcy petition was filed in this matter. *See, e.g.*, … Local 705 Proof of Claim No. 15906 (filed Nov. 2023)…" (Debtor's MSJ, p.18, par. 49). Debtors further acknowledge that "Local 705's proof of claim for $17,830,282 in withdrawal liability is the amount that Local 705 labeled as Debtors' principal withdrawal liability obligation on its amortization Schedule." (*Id.* at p. 6, par. 15).

Debtors' assertion that Local 705 Pension Fund's satisfaction of the notice and demand requirements was "well after the bankruptcy petition" and presumably ineffective[2] is belied by all known bankruptcy authority as set forth in Local 705 Pension Fund's Memorandum Concerning Default and Present Value Issues Raised in Order Dated November 5, 2024 [ECF No. 5163]. *See, e.g., In re Crane Rental Co.,* 334 B.R. 73 (Bankr. D. Mass. 2005) (withdrawal liability exists as of the petition date even if the debtor operates in Chapter 11); *In re Manhattan Jeep Chrysler Dodge, Inc.*, 2019 Bankr. LEXIS 680*1-2 (Bankr. S.D.N.Y. 2019).

In *Central States, Southeast & Southwest Areas Pension Fund v. Basic Amer. Indus.*, 252 F.3d 911, 918 (7th Cir. 2001) the Seventh Circuit found that the automatic stay might not even apply to withdrawal liability *demands outside of the bankruptcy process* stating "[a]s a detail, we note that although 'demanding' payment from a debtor in bankruptcy other than in the bankruptcy proceeding itself is normally a violation of the automatic stay, the demand for payment of withdrawal liability is probably an exception to this principle." If Local 705 Pension Fund could have demanded payment outside the bankruptcy despite the automatic stay, then surely Local 705

---

[2] Debtors cite no authority for the proposition that a notice and demand contained in a proof of claim is ineffective, whether by violation of the automatic stay or otherwise. Debtors also concede that "Section (d)(4) [of Local 705 Pension Fund plan] provides that an employer will be in default if the employer files a bankruptcy action." Debtors' MSJ, p.25.

Pension Fund's actual demand, made within the bankruptcy by asserting the notice and demand in its proofs of claim, was effective.

Debtors' alternative assertion that Local 705 Pension Fund has not sufficiently discounted its withdrawal liability claim is contradicted by Debtors' own pleadings and discovery responses in this case. Local 705 Pension Fund did not include interest, but the Debtors state that "Local 705 asserted that it formally structured its Proofs of Claim such that it contains both principal and *excised interest.*" (Debtors' MSJ, p.34). (emphasis added). Debtors further nonsensically argue that "Local 705 unilaterally selected, imposed, and *then excised an interest rate*—all in the name of claiming that it has already present value discounted its Proofs of Claim." *Id.* "*This purported interest* is illusory because ERISA does not call for it, it was imagined only for the purposes of a proof of claim that itself *excises the interest*, and thus could not and would not and was never contemplated to ever mature." *Id.* at pp.34-35. (emphasis added).

Debtors' arguments are wrong and directly contradict Debtors' own arguments made in objections to other funds withdrawal liability claims in this case. Debtors' withdrawal liability arises from a consensually negotiated collective bargaining agreement, which incorporates a pension plan and trust agreement under which a board of trustees (including a Debtor representative) was authorized to make decisions for the pension fund. That board did not "unilaterally select[] ... an interest rate," as Debtors claim, Local 705 Pension Fund used the discount rate using methodology (same or similar funding and withdrawal assumptions) prescribed by the Debtors in their own pleadings. (*See* Gitterman Affidavit, Exhibit A, par. 31).

On December 3, 2024, Debtors filed their Opposition to Non-SFA MEPPS Motion for Partial Summary Judgment; that Opposition was devoted to an argument that Debtors now ignore, namely, that "ERISA requires that plan actuaries select an interest rate reflecting their 'best

estimate of anticipated experience under the plan…'" [ECF No. 5068, p. 1]. Debtors further argued that 29 U.S.C. § 1393(a)(1) "requires an actuary to project investment returns on the plan's ***actual*** assets." [ECF No. 5068, p.9] (emphasis in original) *citing Sofco Erectors, Inc. v. Trs. of Ohio Operating Eng'rs Pension Fund*, 15 F.4th 407, 418 (6th Cir. 2021); *United Mine Workers of Am. 1974 Pension Plan v. Energy W. Mining Co.*, 39 F. 4th 730, 738 (D.C. Cir. 2022); *GCIU-Emp. Ret. Fund v. MNG Enters., Inc.*, 51 F.4th 1092, 1099 (9th Cir. 2022).

Local 705 Pension Fund did exactly what the Debtors asked. (*See* Gitterman Affidavit, Exhibit A, par. 31). Local 705 Pension Fund discounted the total future stream of payments of $25,596,814 by 6.75% per annum, reducing it to $17,830,282. (*See* Gitterman Affidavit, Exhibit A, par. 15). The discount rate of 6.75% matches the interest rate on actual fund investments to meet future payments to pension beneficiaries. (*See* Gitterman Affidavit, Exhibit A, par. 11). Local 705 Pension Fund's withdrawal liability claims should be allowed.

## III.    FACTUAL OMISSIONS IN DEBTORS' MOTION FOR SUMMARY JUDGMENT

Debtors have long known there is no legitimate basis for objecting to Local 705 Pension Fund's withdrawal liability claims in this case. Debtors should have withdrawn their objections months ago but chose instead to avoid Local 705 Pension Fund's arguments, presumably out of a fear of losing on objections to other withdrawal liability claims in this case.

Over eight months ago, on April 25, 2024, Local 705 Pension Fund propounded interrogatories and requests for production of documents, including an interrogatory requesting that the Debtors "state all bases upon which Debtors assert that withdrawal liability should be calculated and/or which component(s) of the Claimant's calculation are in dispute." *See* Local 705 Pension Fund's First Set of Interrogatories, attached as Exhibit C, hereto. Debtor objected and stated that the interrogatory "seeks the premature disclosure of witness, expert, and other pre-trial

materials or information, including the Debtors' experts' calculations of withdrawal liability to Local 705. The Debtors are still working to identify, collect, and produce non-privileged, relevant materials…" *See* Debtors' Responses and Objections to Local 705 IBT Pension Fund's First Set of Interrogatories, attached as Group Exhibit D, hereto.

Debtors then served their Amended Responses and Objections to Local 705 Pension Fund's First Set of Interrogatories on November 5, 2024, which added no more clarity to contention interrogatory 6 other than to say that the Debtors have set forth their proposed calculation in the expert report of Robert Campbell[3] served on July 29, 2024. (Exhibit E).[4]

Debtors' expert did not directly answer Local 705 Pension Fund's interrogatory either. Instead, Debtors' Expert Report supported Local 705 Pension Fund's claim calculation and methodology:

> "we would expect the interest rates used for purposes of calculating withdrawal liability to be the same as the interest rates used for determining each Funds' minimum required contributions. But here, this was far from the case. With one exception, Local 705, the Non-SFA Funds used entirely different, and much lower, interest rates to determine the Debtors' withdrawal liability." *See* Exhibit F, p.14.

---

[3] Mr. Campbell is not a lawyer and improperly submitted an expert report interpreting ERISA. His original report incorrectly stated that "we would expect the interest rates used for purposes of calculating withdrawal liability to be the same as the interest rates used for determining each Funds' minimum required contributions." Exhibit F, p. 14. The assertion that the interest was expected to be the "same" was changed to "same as, or very similar to, the interest rate" Exhibit G, p.13. This change was presumably because Mr. Campbell was not familiar with existing legal precedent that Debtors' counsel would later cite in pleadings. *See, e.g., United Mine Workers of Am. 1974 Pension Plan v. Energy W. Mining Co.*, 39 F. 4th 730, 741-2 (D.C. Cir. 2022), the DC Circuit Court of Appeals held that the minimum funding obligations and calculation of withdrawal liability "assumptions need not be identical but must be similar because they both must be 'the actuary's best estimate of anticipated experience under the plan."

[4] Debtors never referenced the Seru report in their responses to Local 705 Pension Fund's interrogatories and then slipped in a reference to the Seru report for the first time in their Motion for Summary Judgment filed on December 14, 2024. *See* Debtors' MSJ, p.37.

"Local 705 Pension Fund's 'Interest Rate Used for Funding Valuation' (6.75%) matched its 'Interest Rate Used for Withdrawal Liability Calculation.'" (6.75%). *Id.* at 15.

"For all but two of the Funds, Local 705 and Local 701, inaccurate contribution rates contribution base units were applied in the calculation of the Debtors' withdrawal liability in the Funds' proofs of claim." *Id* at 16.

*"Local 705:* We note here that as of the date of this report, Local 705 is in the process of submitting an amended proof of claim for withdrawal liability. This amended proof of claim addresses two material issues with the original proof of claim. Based on preliminary exhibits we have been provided, the withdrawal liability payments for the Debtors to Local 705 will be correctly calculated and stated in the amended proof of claim." *Id*. at 21

"With one exception (Local 705), the Non-SFA Funds did not follow the rules or their own plan documents in calculating and assessing withdrawal liability for the Debtors." *Id*. at 21

"[w]ith the one exception (Local 705), the Non-SFA Funds assessed the entire allocated share of UVBs to the Debtors and did so directly and solely through their proofs of claim, failing to reflect the requirement to assess withdrawal liability in annual installments with a 20-year cap." *Id*. at 22.

"The 'Allocation of UVB in Proof of Claim for Local 705 in the amount of $17,830,282 matches the 'Allocation of UVB using Funding Valuation Rates.'" (i.e., $17,830,282). *Id.* at 23.[5]

"For Local 705, the Fund's actuary uses the same interest rate for determining the UVB for withdrawal liability as they use for determining the plan's annual minimum funding requirements, so there is no difference between the values." *Id.* at 25.

---

[5] Local 705 Pension Fund's calculation of withdrawal liability of $17,830,282, is far less than the amount that Debtors themselves calculated. Debtors' experts and discovery responses confirm that Local 705 Pension Fund's calculation was not only reasonable but well below Debtors' pre-petition estimates from 2011 to 2021 in the range of $32,326,446 (Yellow-NON-SFA_0002989, attached as Exhibit I) to $57,000,000 (Yellow-NON-SFA_0067348, attached as Exhibit J). Two years prior to bankruptcy, Debtors estimated their withdrawal liability to Local 705 Pension Fund at $34,100,00. (Yellow-NON-SFA_0001288, attached as Exhibit K). *See also*, Campbell Deposition, pp.26, 43, attached as Exhibit L.

Debtors' Amended Expert Report went even further in supporting Local 705 Pension Fund's calculation of its withdrawal liability claim. *See* Exhibit F, p. 13 and redline attached as Exhibit H, p.15. Neither version of the Campbell report refers to any requirement of negotiated interest and Campbell's amended report directly contradicts this position. In the Amended Report, Mr. Campbell states "[w]ith one exception (Local 705), the Non-SFA Funds did not follow <span style="color:red">the rules</span><span style="color:blue">ERISA</span> or their own plan documents in calculating and assessing withdrawal liability for the Debtors." *See* Exhibit H, p. 23 [Debtors' redline].  In other words, Debtors' own expert has opined that Local 705 has followed either its own plan documents or ERISA. Local 705 Pension Fund did both.

On August 23, 2024, Local 705 Pension Fund filed its Motion for Summary Judgment ("Local 705 Pension Fund MSJ") [ECF No. 4184], which the Debtors failed to respond to or even acknowledge in their omnibus filings with the Court. Debtors further acknowledged that "Debtors are not alleging Local 705 relied upon inflated contribution rates, failed to account for required liability caps, or is seeking more than Debtors' allocable share of unfunded vested benefits, and will not object to Local 705's proofs of claim on those grounds." [ECF No. 4231, exhibit A thereto at p.2.]

Debtors did not file a response to the Local 705 Pension Fund MSJ filed on August 8, 2024 but did file a response [ECF No. 5068] to the Motion for Summary Judgment filed by IBT Local 710 Pension Fund, Central Pennsylvania Teamsters Defined Benefit Plan, Central Pennsylvania Teamsters Health and Welfare Fund, Teamsters 710 Pension and Health and Welfare Funds, New England Teamsters Pension Fund, Teamsters Joint Council #83 of Virginia Pension Fund. ("Non-SFA MEPPs Motion for Summary Judgment"). [ECF 4835]. Debtors' Response specifically attacked the assertions of the SFA MEPPs on the basis that 29 U.S.C. § 1393(a)(1) "requires an

actuary to project investment returns on the plan's ***actual*** assets." [ECF No. 5068, p. 9]. (emphasis in original).

Using *actual fund assets* is exactly how Local 705 Pension Fund calculated withdrawal liability. Debtors' own admissions compel the granting of summary judgment in favor of Local 705 Pension Fund.

## IV.    ARGUMENT

### A.  *Debtors Concede that Bankruptcy is a Default under Local 705 Pension Fund's Plan.*

Debtors' MSJ states that "Section (d)(4) [of Local 705 Pension Fund plan] provides that an employer will be in default if the employer files a bankruptcy action." Debtors' MSJ, p.25. Debtors then remarkably argue that "section (d)(3) provides that where there is a default, the Fund 'may require' that some or all of the withdrawal liability obligation be accelerated, indicating a need for an affirmative determination." *Id.* The Debtors' gloss over Section (d)(4), which, without qualification or further affirmative action, states that the Debtors "*will* be in default if the employer files a bankruptcy action." *Id.* (emphasis added.). The Debtors' Motion for Reconsideration asserted that this Court should reconsider its September 13, 2024 ruling [ECF No. 4326, p.36] not because there was a question of acceleration, but whether there was a default based on alleged insecurity clauses. [ECF. No. 4461, pp.1-2].

Debtors' new argument regarding acceleration[6] is a perfect example of moving the goalpost on both Local 705 Pension Fund and this Court. On September 13, 2024, this Court ruled

---

[6] The legislative history of the Section 101(5)(A) confirms that bankruptcy accelerates the principal amount of claims. H. Rep. No. 595, 95th Cong., 1st Sess. 352-53 (1977) ("[B]ankruptcy operates as the acceleration of the principal amount of all claims against the debtor.").

that the debtors "defaulted by virtue of their bankruptcy filing" [ECF No. 4326, p.36]. Debtors

then filed a motion for reconsideration that argued that:

> *Unless the Court was referring simply to the Debtors' chapter 11 filings as a 'default,'* it is unclear on what basis the Court concluded that there was any default. The summary judgment record is bereft of any evidence of pre-petition default (none is cited in the Memorandum Opinion).
>
> As set forth in more detail below, the factual record demonstrates just the opposite: prior to the Petition Date, not one of the SFA MEPPs assessed or demanded payment of Debtors' withdrawal liability, let alone determined under plan rules that there existed a substantial likelihood that the Debtors would be unable to pay the yet-to-be-assessed withdrawal liability (an 'Insecurity Default'), meaning that Debtors could not have 'defaulted' on any such payments before seeking the protections of chapter 11.

[ECF. No. 4461, pp.1-2] (emphasis added).

On October 10, 2024, this Court heard argument on Debtors' motion for reconsideration

and stated during the argument, that "I had concluded that the debtor wasn't contesting that there

was what I'll call a 'security default' with respect to its obligation to make the payments of the

withdrawal liability."  *See* Exhibit M, p.10.

The Debtors did not previously challenge the proposition that the filing of Debtors'

bankruptcy would be an event of default if a plan document, as does Local 705 Pension Fund's

plan, so provides. The only issue in dispute on reconsideration as stated by the Debtors' counsel,

and as acknowledged by the Court, was whether there was a factual record related to insecurity

clauses that may or may not be contained in various fund documents. Since Debtors acknowledge

that Local 705 Pension Fund's plan provides for bankruptcy as an event of default, there is no

need for further development of the record on possible insecurity default language in Local 705

Pension Fund's plan.

Local 705 Pension Fund's default provision is fully enforceable for the purpose of asserting withdrawal liability under both *In re AMR Corp*., 730 F.3d 88 (2d Cir. 2013), cited by this Court, and all other authority. *See, In re Crane Rental Co.,* 334 B.R. 73 (Bankr. D. Mass. 2005) (obligation of withdrawal liability exists as of the petition date even if the debtor operates in Chapter 11); *In re CD Realty Partners*, 205 B.R. 651 (Bankr. D. Mass. 1997) (withdrawal liability claim was a contingent claim subject to discharge where withdrawal did not occur until after reorganization).

Debtors incorrectly argue that, even though they were in default by virtue of their bankruptcy filing, "Section (d)(3) [of Local 705 Pension Fund's plan] provides that where there is a default, the Fund 'may require' that some or all of the withdrawal liability obligation be accelerated, indicating a need for an affirmative determination." (Debtor's MSJ, p. 25). Any such determination, however, on its face concerns acceleration, not the assertion of a claim triggered by bankruptcy. *In re General Growth Props*., 451 B.R. 323 (Bankr. S.D.N.Y. 2011) (after finding "there is no dispute that prior [to the petition date] the Homart Note was not in default," court ruled that oversecured creditor still entitled to interest at default rate, triggered by bankruptcy filing despite lack of notice by creditor).

Statutory claims, like the ERISA withdrawal liability claims here, are not subject to disallowance in bankruptcy for failing to follow statutory procedures. *See also, In re Remington Rand Corporation*, 836 F.2d 825 (3rd. Cir. 1988) (statutory procedures for allowance of claims under the Federal Contract Disputes Act create "'no substantive contractual rights' [and] such procedures serve non-bankruptcy policy objectives of resolving disputes "'before the resort to the judicial process. '").

### B. *Debtors Have Waived All Challenges to Local 705 Pension Fund's Discount Methodology*

Local 705 Pension Fund has played whack a mole with Debtors for months trying to secure a basic response from the Debtors concerning their objection to Local 705 Pension Fund's withdrawal liability claim. Local 705 Pension Fund propounded interrogatories and requests for production of documents in April, 2024 and even took the deposition of Debtors' representative Robert Campbell, only to get vague, evasive, and half-hearted statements that the Debtors object to Local 705 Pension Fund's claim on the basis of present value discounting. *See*, Debtors' Seventh Omnibus (Substantive) Objection to Proofs of Claim for Withdrawal Liability [ECF No. 2595], Exhibit D, and Exhibit E. The Debtors are barred from asserting any further arguments or raising any new facts under the rules of civil procedure. *See, e.g., CPC Int'l, Inc. v. Archer Daniels Midland Co*., 831 F. Supp. 1091, 1102 (D. Del. 1993) (patent infringement argument waived after party failed to adequately respond to contention interrogatory on nature of alleged infringement). Debtors raised no objections to Local 705 Pension Fund's use of a 6.75% discount rate, or that rate's basis in an anticipated return on investment of the Fund's actual assets. Local 705 Pension Fund's claim has already been discounted to present value, and Debtors cannot, now, complain about the discount rate.

### C. *Debtors' Discovery Responses Support Local 705 Pension Fund's Discount Methodology*

Putting aside Debtors' lack of candor to Local 705 Pension Fund and this Court, Debtors' own arguments made throughout this case contradict the position that they now take, namely, that Local 705 Pension Fund's claim is subject to further present value discounting.

Debtors' position directly contradicts the Third Circuit's ruling in *In re Oakwood Homes*, 449 F.3d 588, 601 (3rd Cir. 2006).[7]  According to the Debtors, *Oakwood Homes'* prohibition on double discounting only applies to "*bargained for"* interest. *See* Debtors' MSJ, p.36. Debtors distort *Oakwood Homes* and misrepresent the nature of Local 705 Pension's claim*.* Local 705 Pension Fund did not file a claim for interest in this case, whether matured, unmatured, bargained for or not. (*See* Gitterman Affidavit, Exhibit A, pars. 17-20). It nevertheless discounted its claim to present value. *Oakwood Homes,* therefore, prohibits a second, "double discounting."

*Oakwood Homes* further stated that "the only issue before us is whether the Bankruptcy Court erred by 'double discounting' when it discounted the principal component of the claims to present value after also having disallowed the postpetition interest portion of the claims." *Id.* at 592. In other words, Debtors seek to mislead this Court by suggesting that *Oakwood's* prohibition on double discounting is only triggered when there is *bargained for* interest in a claim. But there is no discounting at all unless a claim includes unmatured interest. Local 705 Pension Fund's claim includes no unmatured interest, or in Debtors' words, "excised interest" – whatever that is supposed to mean.

What the Debtors hide from the Court is that *Oakwood* holds that discounting does not come into the picture without the inclusion of unmatured interest in a proof of claim. *Id.* at 601 ("once unmatured interest has been disallowed, discounting the remainder of the claim to present value would inequitably twice penalize the creditor for the time value of money."). *Oakwood*

---

[7] Debtors' MSJ falsely claims that "in prior briefing, Local 705 asserted that it formally structured its Proofs of Claim such that it contains both principal and excised interest" citing Local 705 Pension Fund's Response to Debtors' Motion for Reconsideration [ECF No. 4538] at 11. Local 705 Pension Fund never said anything of the sort. Local 705 Pension Fund actually said, "[t]he 705 Pension Fund's withdrawal liability claim *does not include unmatured interest* (though Debtors were presented with the option to amortize payment, which would include accrued interest)." *Id.* at p.11. (emphasis added).

*Homes'* holding that double discounting is prohibited after disallowance of asserted unmatured interest applies with equal force to a claim, like Local 705 Pension Fund's claim, which contains no interest component at all. The court recognized that Section 502 does not provide for present value discounting – only disallowance of unmatured interest that might be included in a claim. "[B]oth disallowing postpetition interest and discounting the claim to present value would be impermissible and inequitable double discounting." *Id.* at 593.

Local 705 Pension Fund's claim is the exact opposite of a claim with interest. Local 705 Pension Fund discounted the Debtors' future stream of payments totaling $25,596,814, reducing it to $17,830,282 to fund beneficiary obligations by a discount rate precisely based on the actual assets in its investment portfolio. (*See* Gitterman Affidavit, Exhibit A, par. 31). If the amount of $17,830,282 was paid to Local 705 Pension Fund on the petition date and then invested with investment returns of 6.75%, the Debtors' pension beneficiaries would get their entitled payments – no more, no less. (*See* Gitterman Affidavit, Exhibit A, par. 27).

This is the precise methodology urged by Debtors in their December 3, 2024 Opposition to Non-SFA MEPPS Motion for Partial Summary Judgment where they argued that "ERISA requires that plan actuaries select an interest rate reflecting their 'best estimate of anticipated experience under the plan…" [ECF No. 5068, p. 1] and 29 U.S.C. § 1393(a)(1) 'requires an actuary to project investment returns on the plan's ***actual*** assets.'" [ECF No. 5068, p.9]. (emphasis in original). That is what Local 705 Pension Fund did here. (*See* Gitterman Affidavit, Exhibit A, par. 31).

Debtors concede, without seeing the contradiction, that *In re Oakwood Homes* "rejected a [bankruptcy court's ruling] that double-discounted guarantee claims composed of principal and bargained for interest by first disallowing the bargained-for interest that was unmatured under

Section 502(b)(2) and then subjecting the claims to further discounting under 502(b)." Debtors' MSJ, p.36. Taking this proposition at face value, Debtors are not entitled to further discount Local 705 Pension Fund's claim even if Local 705 Pension Fund included a claim for unmatured interest (which it did not) and the court first disallowed the unmatured interest. Since Local 705 Pension Fund did not include unmatured interest in the first place, *Oakwood Homes* manifestly prohibits any further discounting. [8]

There is no claim for unmatured interest in Local 705 Pension Fund's claim. (*See* Gitterman Affidavit, Exhibit A, par. 19). Not only is there no unmatured interest, had Local 705 Pension Fund included unmatured interest it would have been on top of the total future payments of $25,596,814.[9]  Local 705 Pension Fund's claim would have likely been in the range of the Debtors' internal estimates of between $32,326,446 to $57,000,000 (Exhibit I and Exhibit K).

Debtors' citation to *In re B456 Sys., Inc.*, 2017 WL 6603817, at *25 (Bankr. D. Del. Dec. 22, 2017) supports Local 705 Pension Fund's arguments here. In *B456 Systems, Inc.*, a creditor asserted a claim for rejection damages that included future damages, which the bankruptcy court ruled was "not akin to a claim for principal." *Id. at* 53. The bankruptcy court then ruled that

---

[8] Even Debtors' false claim that "Local 705 asserted that it formally structured its Proofs of Claim such that it contains both principal and *excised* interest." (Debtors' MSJ, p.34) (emphasis in original) if true, would be the substantive equivalent of the initial disallowance of unmatured interest preventing further discounting.

[9] Debtors make the curious argument (Debtors' MSJ, p.36n.10) that under "11 USC § 502(b) requires bankruptcy courts to value a long-term payment as of the bankruptcy petition date, thus ensuring long-term claims do not receive a bankruptcy premium." Local 705 Pension Fund is receiving the exact opposite of a premium – it is suffering a bankruptcy penalty because Local 705 Pension Fund is asserting a withdrawal liability amount as of the petition date. The withdrawal liability claim in the amount of $17,830,282, if paid in full, would need to earn 6.75% using fund investments starting on the petition date (actually the date of withdrawal) to meet total future pension obligations in the amount of $25,596,814. Even if the Debtors' plan paid 100% on the dollar, Local 705 Pension Fund will only receive distributions at a future date that will never enjoy investment returns that a distribution on the date of the petition would enjoy.

*Oakwood Homes* was not applicable. *Id.* the Court further stated that "*Oakwood Homes* is limited to claims based on interest-bearing debt." Local 705 Pension Fund's claim is not an interest-bearing debt.

Withdrawal liability is a present claim and not a claim for future damages of the type asserted by the creditor in *B456. See In re U.S. Airways Grp., Inc.*, 303 B.R. 784, 793 (Bankr. E.D. Va. 2003) (withdrawal liability "is not simply valuing a contingent future loss." Instead, "Congress, by statute, has expressly given [the multiemployer pension fund] a present right to recover an amount determined in accordance with the valuation regulation." *Id.* (emphasis in original).

### D. Local 705 Pension Fund's Discount Rate Follows ERISA, its Plan and Debtors' Test

Local 705 Pension Fund's claim complies with Debtors' own argued-for test, namely, that 29 U.S.C. § 1393(a)(1) "requires an actuary to project investment returns on the plan's ***actual*** assets." [ECF No. 5068, p.9] (emphasis in original) *citing Sofco Erectors, Inc. v. Trs. of Ohio Operating Eng'rs Pension Fund*, 15 F.4th 407, 418 (6th Cir. 2021). (emphasis in original). (*See* Gitterman Affidavit, Exhibit A, par. 31).

In *Sofco Erectors, Inc.* the Sixth Circuit partly upheld an arbitrator's ruling in favor of a fund that imposed withdrawal liability. According to the court, the "primary dispute in this case is the propriety of the interest rate assumption the Fund used to calculate withdrawal liability." 15 F. 4th at 418. In calculating the assessment, the court had occasion to say:

> Generally, employer contributions plus the income generated from them need to be sufficient to pay future benefits and cover administrative expenses. Determining a fund's future liabilities, or how much it will have to pay out in benefits, requires actuaries to make assumptions about how many employees will vest their benefits, how much they will receive in benefits, and how long they

> will live. Once an actuary determines how much the fund will need to spend on benefits payments and administrative costs, it must determine the present value of future liabilities—how much the fund needs in assets today in order to pay those liabilities in the future. This requires the actuary to make certain assumptions about the income the assets will generate.

*Id.*

There, the fund used the "Segal Blend," which is not used in Local 705 Pension Fund's calculation of withdrawal liability. (*See* Gitterman Affidavit, Exhibit A, par.11). The court stated that "using the Segal Blend here violates the statute because the resulting interest rate is not "the actuary's best estimate of anticipated experience under the plan [as required by ERISA § 1393(a)(1)]." *Id.* at 421.

Local 705 Pension Fund's claim is based on the actual assets that it holds in its portfolio and complies with ERISA. (*See* Gitterman Affidavit, Exhibit A, par. 31). Even Debtors' own expert agrees. *See* Exhibit E, p. 23 [Debtors' Redline] ("With one exception (Local 705), the Non-SFA Funds did not follow the rulesERISA or their own plan documents in calculating and assessing withdrawal liability for the Debtors."). (*See* Gitterman Affidavit, Exhibit A, par. 28).

Because Local 705 Pension Fund correctly calculated its claim in accordance with non-bankruptcy law, its claim is allowed on the same basis in bankruptcy, absent a qualifying or contrary provision of the Bankruptcy Code. *See Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000) citing *Butner v. United States*, 440 U.S. 48, 55 (1979); *Vanston Bondholders Protective Comm. v Green*, 329 U.S. 156 (1946). The Debtors point to no bankruptcy code provision that impacts Local 705 Pension Fund's calculation of its withdrawal liability claim.

Nor does Local 705 Pension Fund need to employ an exact number, which would require a crystal ball. *See, e.g., Board of Trustees v. Eberhard Foods, Inc,* 831 F.2d 1258,1261 (6th Cir. 1987) ("actual determination of withdrawal liability is not an exact science and therefore there is

a range of reasonable actuarial determinations."). Again, Debtors' own expert agrees with Local 705 Pension Fund's methodology even though he originally thought that the interest rate had to be the same, and not just similar in accordance with established precedent. *See* Exhibit F, p. 13 and redline attached as Exhibit H, p.15.

Despite numerous admissions that Local 705 Pension Fund got it right, the Debtors dropped in a new argument, never disclosed prior to December 14, 2024 Motion for Summary Judgment, that Local 705 Pension Fund's calculation of withdrawal liability was flawed because the discount rate was not negotiated with the Debtor. Debtors' MSJ, p.35. Neither version of the Campbell report refers to any negotiation requirement and the amended report directly contradicts this position. *See* Exhibit G, p.23. (*See* Gitterman Affidavit, Exhibit A, par. 29). Debtors' own expert has opined that Local 705 has followed either its own plan documents or ERISA. Local 705 Pension Fund did both.

*See, Board of Trustees v. Eberhard Foods, Inc,* 831 F.2d 1258,1262-3 (6th Cir. 1987) (upholding arbitrator and district court's approval of interest rate of 6% as "consistent with historical interest rates over a long period of time, and we are unable to say that the trustees were unreasonable in concluding that future rates are more likely to approximate  long-term rates than the high rates prevailing during the past decade.")

Debtor's other cited authority supports Local 705 Pension Fund's calculation. In *United Mine Workers of Am. 1974 Pension Plan v. Energy W. Mining Co.*, 39 F. 4th 730, 741-2 (D.C. Cir. 2022), the DC Circuit Court of Appeals held that the minimum funding obligations and calculation of withdrawal liability "assumptions need not be identical but must be similar because they both must be 'the actuary's best estimate of anticipated experience under the plan.'"

18

Similarly, in *GCIU-Emp. Ret. Fund v. MNG Enters., Inc.*, 51 F.4th 1092, 1099 (9th Cir. 2022) the Ninth Circuit stated that:

> Though the statute appears to build in some leeway—using the term, 'reasonable'—it specifies that these assumptions and methods must 'tak[e] into account the experience of the plan and reasonable expectations' and 'in combination, offer the actuary's best estimate of anticipated experience under the plan.' § 1393(a)(1). The 'best estimate' language means that 'the actuary must make assumptions based on the plan's particular characteristics when calculating withdrawal liability.' By ignoring the expected returns of the plan's assets and experience, the actuary's estimate fell short of the statutory 'best estimate' standard because it was not tailored to the features of the plan.

*Id.* (internal citations omitted).

*Sofco Erectors, Inc., Eberhard Foods, Inc, Energy W. Mining Co.*, *MNG Enters., Inc.* all compel summary judgment in favor of Local 705 Pension Fund.

### E.      *Debtors' Discount Rate Violates ERISA and Its Own Proposed Test*

By equal force, *Sofco Erectors, Inc., Eberhard Foods, Inc, Energy W. Mining Co.*, *MNG Enters., Inc.* compel denial of Debtors' proposed methodology for the calculation of withdrawal liability. Debtors' proposed interest rate is based on a hypothetical debtor in possession loan that it has never procured. On December 3, 2024, Debtors asserted in their Opposition to Non-SFA MEPPS Motion for Partial Summary Judgment that the subject funds "selected PBGC and IRS Rates—rates based on assets the Non-SFA MEPPs do not own and do not intend to purchase." [ECF No. 5068], p.1. Debtors, without the least bit of irony, seek to impose an unreasonably high discount rate pulled out of thin air and based on a hypothetical debtor in possession loan that they do not have and will never procure.

Debtors are required to invest estate funds in risk free investments. The Trustee Handbook for Chapter 7 Trustees states that "[w]hen substantial funds (e.g., $50,000) are received by the

estate, which will not be distributed for an extended period of time (e.g., six months), the trustee should consider higher yield investments such as Certificates of Deposit or Treasury Bills. 28 U.S.C. § 586. In general, investments are to be as risk free as possible." Exhibit N, p. 5-8.

These liquidating estates will not be paying annual contributions from borrowed funds but from the proceeds of liquidated assets at some distant point in time. Local 705 Pension Fund has nevertheless credited the Debtors with a 6.75% return on invested assets and offered the Debtors the option of paying the assessed withdrawal liability in a lump sum or amortized over time, "with interest assessed only after the first year at the rate of 7.5 percent per year."

### F.  Debtors' Reliance on Penalty Cases and Original Issue Discount Cases is Incorrect

Debtors make the throw away argument in a footnote that the rate Local 705 Pension Fund unilaterally affixed to its proof of claim does not reflect the claim's present value and thus calls for discounting under 502(b)(2) citing *In re Hertz Corp.*, 120 F.4th 1181 (3d Cir. 2024). *Hertz* involved a bondholders claim in a solvent estate to "make-whole" premiums, which are essentially prepayment penalties designed to capture unmatured interest. "[M]ake-wholes are 'meant to give the lenders the interest yield they expect' in the event of an early redemption." *Id.* at 1193. The Court ruled that such claims were "mathematically equivalent to the unmatured interest the Noteholders would have received had Hertz redeemed the Notes on their Redemption Dates." *Id.* at 1196.

Local 705 Pension Fund's claim contains no interest and is the mathematical opposite of a prepayment penalty. (*See* Gitterman Affidavit, Exhibit A, par. 24). It discounts to present value the amount needed to pay future benefits. (*See* Gitterman Affidavit, Exhibit A, par. 22). It does not seek payment of any amounts that would be unnecessary to meet those benefits. (*See* Gitterman Affidavit, Exhibit A, par. 23).

Debtors' reliance on *In re Public Service co. of New Hampshire*, 114 B.R. 800, 803 (Bankr. D. N.H. 1990) is similarly misplaced. As in *Hertz*, *Public Service* stands for the unremarkable proposition that an original issue discount bond (a zero-coupon bond sold at a discount) is a form of unmatured interest that has no relation to Local 705 Pension Fund's present value claim. "Section 502(b)(2) of the Code expressly excludes a "claim . . . for unmatured interest." Midlantic does not seriously dispute the OID is unmatured interest, especially in light of the recent decision of Bankruptcy Judge Lifland in *In re Chateaugay Corp.*, 109 Bankr. 51 (S.D.N.Y. 1990)." *Id.* at 802. *See also, In re Ultra Petroleum Corp.*, 51 F.4th 138, 147 (5th Cir. 2022) ("In essence, an OID security disguises interest as principal.")

WHEREFORE, INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 705 PENSION FUND respectfully requests that this Court grant summary judgment in its favor and deny Debtor's Motion to For Partial Summary Judgment and order such other and further relief as this Court deems just and necessary.

Date:  January 10, 2025
   Wilmington, Delaware

     **SULLIVAN HAZELTINE ALLINSON LLC**

     */s/ William D. Sullivan*
     William D. Sullivan (No. 2820)
     William A. Hazeltine (No.3294)
     919 North Market Street, Suite 420
     Wilmington, DE 19801
     Tel: (302) 428-8191
     Email: bsullivan@sha-llc.com
        whazeltine@sha-llc.com

     **BAUM SIGMAN AUERBACH & NEUMAN, LTD.**

     */s/ Stephen J. Rosenblat*
     Stephen J. Rosenblat (ARDC No. 6204044)
     200 West Adams Street, Suite 1825
     Chicago, IL 60606
     Tel: (312) 216-2573
     Email: srosenblat@baumsigman.com

     -and-

**PEDERSEN HOUPT**

*/s/ John S. Delnero*

John S. Delnero (ARDC No. 6195914)
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
Tel: 312-261-2185
jdelnero@pedersenhoupt.com

*Counsel for International Brotherhood of Teamsters Local
705 Pension Fund*