## TO IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | Case No. 23-11069 (CTG) |
| Debtors. | (Jointly Administered) |
| JEFF MOORE, ELIZABETH BROOKE MOORE, and VIDAL TORRES on behalf of themselves and all others similarly situated, | Adv. Pro. No. 23-50457 (CTG) |
| Plaintiffs, | |
| v. | |
| YELLOW CORPORATION, et al., | |
| Defendants. | |
| WILLIAM G. COUGHLEN, et al., | Adv. Pro. No. 23-50761 (CTG) |
| Plaintiffs, | |
| v. | |
| YELLOW CORPORATION, et al., | |
| Defendants. | |

## DEBTORS' OMNIBUS OPPOSITION TO UNIONS' MOTION *IN LIMINE* #3

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Abbott Lab'y v. Lupin Ltd.*,
    2011 WL 1897322 (D. Del. May 19, 2011)...........................................................................10

*CogniPower LLC v. Fantasia Trading, LLC*,
    2024 WL 5165845 (D. Del. Dec. 13, 2024).......................................................................9, 10

*Grider v. Keystone Health Plan Cent., Inc.*,
    580 F.3d 119 & 141 (3d Cir. 2009) .............................................................................9

*Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*,
    2017 WL 11558096 (D. Del. Dec. 11, 2017)............................................................9

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., & Prods.
Liab. Litig.*,
    2024 WL 532026 (D.N.J. Feb. 9, 2024) ...................................................................9

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994)..........................................................................................9

**Rules**

Federal Rule of Civil Procedure 26(e) .........................................................................9

Federal Rule of Civil Procedure 37(c)(1) .............................................................2, 8, 9

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

<u>PRELIMINARY STATEMENT</u> ...................................................................................1

<u>ARGUMENT</u>.............................................................................................................3

    I.    The Debtors' Evidence of Yellow's Final Delivery Was Not Previously Relevant to the Parties' Arguments, and Debtors Had No Reason to Identify and Produce It During Discovery. ..........................................................3

    II.    The Debtors Offered A Deposition to Provide the Unions with the Discovery They Claim is Necessary but the Unions Are Determined to Exclude Evidence Proving That Yellow Was a Liquidating Fiduciary at the Time of Union Layoffs. ......................................................................7

    III.    Even if the Debtors "Failed" to Produce This Evidence During Discovery, Substantial Justification Exists Under F.R.C.P. 37(c)(1) to Hear the Evidence.................................................................................................9

<u>CONCLUSION</u> .......................................................................................................10

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby respond and object to the *International Brotherhood of Teamsters, Teamsters National Freight Industry Negotiating Committee, and International Association of Machinists and Aerospace Workers' Motions in Limine #3* [D.I. 5361] (the "Unions' Motion"), dated January 9, 2025, as follows:

## PRELIMINARY STATEMENT

The Unions' Motion asks this Court to preclude evidence[2] that is highly relevant to answering the open question the Court identified in its December 19, 2024 Summary Judgment Opinion, D.I. 5227, regarding the timing of the Debtors' final delivery. Plaintiffs' motive to exclude this evidence is clear: it definitively establishes Yellow was no longer conducting regular business operations, and thus was *not an employer*, at the time of the Union layoffs on July 30, 2023. The Debtors did not previously identify and produce this evidence because it did not hit on any of the negotiated search terms agreed upon with the Unions, nor was it responsive to any of Plaintiffs' discovery requests. Importantly, both the Debtors' and the Teamsters' discovery efforts and arguments at summary judgment regarding Yellow's status as an employer were not dependent on the timing of Yellow's final ***delivery***.

As further indication there was nothing improper about the Debtors' identification and production of these documents, the metadata reflects the recently produced documents were produced to Plaintiffs ***one day*** after Debtors received them. Indeed, after receiving the Court's December 19, 2024 Summary Judgment Opinion, the Debtors worked quickly over the holidays

---

[2] YELLOW_WARN_166858 – 166859; YELLOW_WARN_166860. These documents are attached to the Unions' Motion as Exhibits 2 and 3. Debtors also anticipate that the Teamsters will raise the same arguments regarding the use of the documents Debtors produced on January 13, 2025, (YELLOW_WARN_166861 – YELLOW_WARN_166872). The documents produced on January 13 are attached here as Exhibits 1-12.

and into the new year to identify and produce documents evidencing the date of the Debtors' final delivery—even resurrecting dormant software systems—which occurred one day prior to the July 30, 2023 layoffs.

The Debtors produced these documents across two productions a few days apart because that is when the documents were identified, and the timing of these productions reflects the Debtors' efforts to provide Plaintiffs with the relevant evidence as soon as possible before trial. Debtors did not improperly withhold this evidence during discovery and otherwise complied with all discovery obligations, which makes each of the Teamsters' arguments to exclude it inapplicable. In fact, after the Unions' Motion was filed, the Debtors offered to make a witness available to be deposed on the substance and authenticity of these documents before trial, which would have cured any perceived prejudice; the Unions refused, instead arguing this evidence should be precluded. The Court's interest in considering highly relevant evidence to an issue identified by *the Court* cannot be so easily discarded based solely on the Teamsters' true desire to preclude not the evidence itself, but the inevitable finding that Yellow was no longer an employer at the time of the Union layoffs.

Even if the Court finds the Debtors improperly "withheld" these documents during discovery, which it should not, Federal Rule of Civil Procedure 37(c)(1) provides clear guidance in favor of admitting this evidence at trial. The Debtors' production after the close of discovery was "substantially justified" considering the scope of the Unions' document requests, that the parties' agreed-upon search terms did not identify these documents, and the documents only became relevant after summary judgment. In any event, each of the Teamsters' arguments to bar this evidence goes to weight, not admissibility. Because this evidence relates directly to one of

the few triable issues that survived the parties' cross motions for summary, it strongly supports its inclusion at trial.  Accordingly, the Unions' Motion should be denied.

## **ARGUMENT**

I.    **The Debtors' Evidence of Yellow's Final Delivery Was Not Previously Relevant to the Parties' Arguments, and Debtors Had No Reason to Identify and Produce It During Discovery.**

The Debtors' evidence was not improperly withheld in discovery because the Debtors had no reason to produce the evidence earlier.  During a lengthy and protracted discovery process, the parties, including the Teamsters, exchanged, and agreed on search terms.  After applying these search terms, the Debtors reviewed over 40,000 documents for this proceeding alone and produced nearly 14,000 documents to the Unions across 12 productions.  As Plaintiffs point out, the Debtors agreed to "produce documents sufficient to establish the total number of deliveries that Yellow made per day between July 27 and July 30, 2023."  Unions' Mot. ¶ 4.  The Debtors did so, and the Unions never complained that the production was insufficient, brought a motion to compel additional documents related to this topic, or sought to establish the exact time Yellow's final delivery was made through their discovery requests.  The Debtors therefore had no reason to access the delivery information produced on January 8 and January 13, 2025 in response to the Unions' document requests.

Nor could the Debtors produce this information any more promptly after it became relevant.  The documents' metadata shows that Debtors did not access the evidence produced on January 8 until January 7, and the additional evidence produced on Monday, January 13 was first accessed by Yellow on Friday, January 10.  And even if the Debtors could have produced the documents sooner, this evidence was not relevant to either party until after the Court's December 19, 2024 Summary Judgment Opinion.

For example, the Debtors' contended at summary judgment that Yellow was a liquidating fiduciary as of July 26 at the latest—before the time of any layoffs.  D.I. 4291, at 24-25.  The Debtors' position was that it was "undisputed that Yellow started to discontinue accepting new shipments on July 24, 2023, and picked up just 726 shipments—less than 2% of the 40,000+ daily shipments Yellow had picked up historically—on July 26, 2023, the date Yellow determined layoffs were probable."  *Id.*  Based on this timeline, the Debtors argued that Yellow was a liquidating fiduciary and not an employer during *all* layoffs, because the Debtors had started the process to discontinue picking up new shipments four days earlier on July 24.  *Id.* at 25.  Thus, the Debtors had no reason to identify the timing of the final delivery on July 29.

Plaintiffs' liquidating fiduciary arguments at summary judgment also did not depend on the timing of the final delivery of freight, regardless of their attempts to now argue this information was somehow relevant in discovery.  The Unions were clear that their argument rested on the fact that "Yellow cannot be a liquidating fiduciary when it was not a fiduciary both when it decided to, and when it laid off its Teamster and Machinist represented employees" because Yellow did not file for bankruptcy until days later.  Unions' Opp. to Debtors' Mot. for Summ. J., D.I. 4487, at 10.  They also asserted that Yellow was continuing to deliver "thousands" of shipments up until and through July 30, 2023, and that Yellow was engaged in "regular operations" through the time of all layoffs.  *Id.*  The exact timing of the final delivery by Yellow did not have any bearing on these arguments, and the Unions do not claim otherwise.

In addition, the documents would not have been identifiable unless Yellow was specifically asked to ascertain the exact timing of the final delivery made by a Yellow employee.  After the Court's summary judgment holding that "debtors were no longer 'employers' within the meaning of the WARN Act after they had *both* stopped picking up new shipments *and* delivered the final

shipment," Summary Judgment Opinion at 47, the Debtors recognized the need to identify the timing of the final delivery.  Because Yellow is no longer in business, this information had to be accessed in a legacy system containing shipment delivery data, and the company individuals able to do so were out for the holidays directly after the Court's ruling.  As soon as practicable, Dan Olivier, Yellow's CFO, worked with company individuals to access the legacy system to pull the relevant information.

In order to identify the final delivery, Mr. Olivier worked with and instructed Yellow's Operational Team to engage with Yellow's Technology Team to access software systems Yellow used when it was in business.  Through this review, Yellow identified the latest-in-time deliveries made by the company, and, at Mr. Olivier's direction, IT generated "green screens" from Yellow's Shipment Information System for these deliveries, which are contained in the exhibits Debtors produced on January 8 and January 13.  *See* Unions' Mot. Ex. 2; Exs. 1-6.  The documents produced on January 8 reflect the latest-in-time delivery where a Yellow city driver delivered the freight at the customer's location.  *See* Unions' Mot., Exs. 2, 3.  The documents produced on January 13 reflect the latest-in-time delivery identified by *any* driver, and show a delivery by a road driver, who delivered but did not unload the freight, and instead left the trailer at the customer's location.  *See* Exs. 1-12.  This information was then promptly produced to Plaintiffs.

The Debtors went to enormous efforts to identify information directly responsive to the open question identified in the Court's Summary Judgment Opinion.  However, the Debtors were under no obligation to provide information regarding the process used to obtain the documents to Plaintiffs, or to produce the documents to Plaintiffs at all.  Mr. Olivier will testify at trial about the timing of the final delivery by Yellow based on his own personal knowledge.  While the Teamsters

fixate on a handful of documents, they ignore that the produced documents only support the testimony Mr. Olivier will offer at trial.

At trial, Darren Hawkins, Yellow's former CEO, will testify regarding his understanding of the final delivery and the statement in his declaration about the "final truck" pulling into the terminal gate.  Mr. Hawkins will explain the different types of drivers and trucks operating within Yellow's network.  The core of Yellow's operations was delivering freight directly to customers through "city" or "local" drivers; however, the Debtors also utilized "line haul" trucks that moved freight between Yellow's facilities and *did not make deliveries*.  *See* Ex. 13, Hawkins Dep. Tr. at 19:7 (███████████████████████████████████████████████████████████ ███████████████████████████████████████████████).  Regardless of when the last line haul truck pulled into a Yellow terminal, the evidence the Debtors identified and promptly produced to the Unions establishes the final *delivery* by Yellow was on July 29, 2023.

The Teamsters raise issue with the timing of the last delivery at 4:49 p.m.[3] local time on July 29, 2023, because "its last truck pulled into the terminal at the start of its July 30, 2023 telephonic board meeting" and "that would mean there were between 16-19 hours between when the last delivery was made and when the truck returned to the terminal[.]"  Union Motion at 5. Teamsters are misconstruing the evidence.  The Debtors do not claim, nor do the produced documents purport to show, that the final delivery on July 29 was made by the last truck that pulled into a Yellow terminal on July 30.  The Debtors made their last delivery on July 29, 2023.

---

[3]    As evidenced by the Debtors production on January 13, 2025, the actual time of the last shipment delivery was 11:30 p.m. EST.  Regardless, the last truck to pull into the Yellow terminal on July 30, 2023 was not the same truck that made the last delivery on July 29, and the Debtors' arguments made in opposition to the Unions' Motion apply with equal force.

Separately, the Debtors' last line haul truck pulled into a Yellow terminal on July 30, 2023.  The final delivery and the final truck pulling in are mutually exclusive events and the implication of a mysterious "16-19 hour[]" gap is not valid.  Unions' Mot. ¶ 5.

## II.    The Debtors Offered A Deposition to Provide the Unions with the Discovery They Claim is Necessary but the Unions Are Determined to Exclude Evidence Proving That Yellow Was a Liquidating Fiduciary at the Time of Union Layoffs.

In a good faith effort to cure any possible prejudice to the Teamsters regarding the evidence of Yellow's final shipment, the Debtors offered additional discovery to the Unions where it may be needed to explain what the evidence is and how this evidence was obtained.  The Debtors made their initial production to the Teamsters on the morning of January 8, 2025.  Later the same day, the parties met for a meet and confer regarding issues for trial.  At that time, no party raised any issues, objections, or additional discovery requests relating to the Debtors' production four hours prior.  The next day, January 9, the Unions filed their motion *in limine* to exclude the documents without any communication to the Debtors beforehand.

On January 10, at the parties' next meet and confer, the Debtors offered a one-hour deposition of Dan Olivier to potentially resolve the instant dispute and provide the Unions an opportunity to obtain answers they claim are necessary before trial.  The Debtors explained that the deposition would offer the Teamsters the opportunity to gather the very information they claim they would have "conducted discovery" on had the documents been produced earlier, including "how document #166860 was generated, how any of Debtors' identified trial witnesses would have the necessary personal knowledge to identify and authenticate document #166860, Yellow's Shipment Information System, how any of Debtors' identified trial witnesses would have the necessary knowledge of the Shipment Information System to lay foundation to admit document #166860 as a business record, Debtors' chain of reasoning to determine that the delivery represented by document #166860 was the last delivery Yellow ever made, and how any of

Debtors' trial witnesses could testify that document #166860 represented the last delivery Yellow ever made without relying on hearsay statements by their subordinates."  Unions' Mot. ¶ 7.

While the Debtors deny that the production was untimely, the Debtors offered a deposition to address any possible "unfair prejudice" to Plaintiffs and did not claim that Plaintiffs should go to trial "without the information and documents that they could have obtained in discovery to test Yellow's claim."  *Id.*  Nevertheless, the Debtors' offer for a deposition to give the Unions the precise discovery they claimed they needed to authenticate the highly relevant documents was swiftly rejected outright by the Teamsters.[4]  Plaintiffs offered hollow reasoning for their refusal, including that prejudice could not be cured because the Unions "doubt that Mr. Olivier would have the necessary personal knowledge to answer the Unions' questions about the shipment[.]"

Tellingly, Plaintiffs are still contending that, contrary to this Court's summary judgment holding, "for the purpose of determining whether Yellow was a liquidating fiduciary, it should not matter when Yellow made its last delivery."  Unions' Mot. ¶ 3 n.1.  It is evident that Plaintiffs cannot accept the Court's reasoned standard for when Yellow was no longer an "employer" under the WARN Act, because it means Yellow was not an employer at the time of the Union layoffs on July 30, 2023.  With the Court's ruling on the issue established at summary judgment, the next best thing for the Teamsters is to refuse to take the deposition the Debtors offered, claim unfair surprise and untimely production, and engage in every effort to exclude the relevant evidence establishing the Debtors' final shipment on July 29, 2023.  Those efforts should be denied.

---

[4] The Debtors anticipate that Plaintiffs will now claim additional prejudice arising from the Debtors' January 13 production of documents identified after the January 8 production.  Given that Plaintiffs have refused the Debtors' offer to depose Mr. Olivier on the documents, there is no additional prejudice arising from Plaintiffs receiving a handful of additional documents on January 13 that provide similar information on the exact same issue.

### III.    Even if the Debtors "Failed" to Produce This Evidence During Discovery, Substantial Justification Exists Under F.R.C.P. 37(c)(1) to Hear the Evidence.

Even if the Court believes the Debtors' non-production of documents evidencing the timing of the Debtors last shipment delivery constituted a failure to provide relevant information during discovery as required under Federal Rule of Civil Procedure 26(e), this purported "failure" would be "substantially justified" under Rule 37(c)(1).   "Substantial justification" arises where it is "reasonable to find 'that parties could differ as to whether the party was required to comply with the disclosure request'" and there is a "genuine dispute concerning compliance." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2024 WL 532026, at *3 (D.N.J. Feb. 9, 2024) (*quoting Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 140 n. 23 & 141 (3d Cir. 2009)).   The "exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence[.]"   *CogniPower LLC v. Fantasia Trading, LLC*, 2024 WL 5165845, at *2 (D. Del. Dec. 13, 2024) (internal citations omitted).   The extreme remedy of excluding crucial evidence "should not be imposed where an untimely or improper disclosure amounts to only a 'slight deviation from pre-trial notice requirements' or occasions only 'slight prejudice' to the movant." *Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, 2017 WL 11558096, at *4 (D. Del. Dec. 11, 2017) (*quoting In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994)).

Here, there is more than substantial justification for the Debtors not previously producing this evidence.  As discussed, the search terms negotiated and agreed upon by the parties, including the Teamsters, during discovery did not result in identification of the documents the Debtors produced on January 8 and 13.  The Debtors had no reason to go seek these documents out on their own, as the documents were not responsive to discovery requests, which did not seek to establish

the exact time of the final delivery.  Thus, there is at least a "genuine dispute concerning compliance," even if the Court finds the Debtors should have previously produced these documents.

The nature of this evidence should not come as a surprise to Plaintiffs, who, since the Court's December 19, 2024 Summary Judgment Opinion, have been aware the timing of the final delivery is a fact the Debtors would seek to establish at trial.  *See* Summ. J. Op. at 4 ("As the Court reads the caselaw, the debtors became a liquidating fiduciary after they completed delivery of their last shipment.").  The Debtors immediately produced this evidence once it was identified and offered Plaintiffs a deposition to authenticate the documents and conduct further inquiry they deemed necessary in order to cure any prejudice.  If Plaintiffs claim to be prejudiced by the Debtors using this evidence at trial, it is their own doing, after refusing to depose Mr. Olivier on this highly relevant evidence.

Plaintiffs also have not provided any evidence of "willful deception or flagrant disregard of a court order" by the Debtors, and there is no justification to impose the "extreme sanction" of excluding such "critical evidence."  *CogniPower,* 2024 WL 5165845, at *2.  This is particularly true where courts "favor resolution of disputes on their merits," and this Court's interest in determining the Debtors' status as a liquidating fiduciary at the time of the Union layoffs should prevail.  *Abbott Lab'y v. Lupin Ltd.*, 2011 WL 1897322, at *5 (D. Del. May 19, 2011).

Accordingly, the Court should deny the Unions' Motion #3.

## CONCLUSION

The Debtors produced evidence relevant to answering one of the remaining triable issues. While the Teamsters may wish to impose the harshest sanction and preclude this evidence at trial, there are no grounds to do so where the Debtors had no reason to previously identify and produce these documents and offered Plaintiffs the opportunity to cure any alleged prejudice.  After the

10

Court's Summary Judgment Opinion, the Debtors made every effort to identify the timing of the final delivery and promptly produce related relevant documents.  The Court should be permitted to hear and consider the documents supporting Mr. Olivier's anticipated testimony at trial.

Therefore, the Debtors respectfully request that the Court deny the Unions' Motion #3.

Dated: January 13, 2025

/s/ Peter J. Keane

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: jones@pszjlaw.com
        tcairns@pszjlaw.com
        pkeane@pszjlaw.com
        ecorma@pszjlaw.com

-and-

Patrick J. Nash, P.C. (admitted pro hac vice)
David Seligman, P.C. (admitted pro hac vice)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: patrick.nash@kirkland.com
        david.seligman@kirkland.com

-and-

Allyson B. Smith (admitted pro hac vice)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: allyson.smith@kirkland.com

*Co-Counsel for the Debtors and the Debtors in Possession*