## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| JEFF MOORE, ELIZABETH BROOKE MOORE, and VIDAL TORRES on behalf of themselves and all others similarly situated, | ) ) ) | Adv. Pro. No. 23-50457 (CTG) |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| YELLOW CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| WILLIAM G. COUGHLEN, et al., | ) | Adv. Pro. No. 23-50761 (CTG) |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| YELLOW CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## DEBTORS' TRIAL BRIEF

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

STATEMENT OF UNDISPUTED FACTS .............................................................................. 1

LEGAL STANDARDS ............................................................................................................. 3

I.      LIQUIDATING FIDUCIARY............................................................................................ 3

II.     RELEASE OF CLAIMS..................................................................................................... 4

III.    GOOD FAITH DEFENSE.................................................................................................. 4

ARGUMENT .............................................................................................................................. 5

I.      YELLOW WAS NOT REQUIRED TO ISSUE WARN NOTICES TO
        EMPLOYEES LAID OFF ON OR AFTER JULY 30, 2023 ............................................ 5

II.     EMPLOYEES WHO RELEASED THEIR WARN ACT CLAIMS HAVE NO
        WARN CLAIMS ................................................................................................................ 5

III.    YELLOW ACTED IN GOOD FAITH IN ISSUING ITS WARN NOTICES................... 7

CONCLUSION............................................................................................................................ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advanced Accessory Sys., LLC*,
  443 B.R. 756 (Bankr. E.D. Mich. 2011) ..............................................................11

*Bledsoe v. Emery Worldwide Airlines, Inc.*,
  635 F.3d 836 (6th Cir. 2011) ................................................................................12

*Carlberg v. Guam Indus. Servs.*,
  2017 WL 4381667 (D. Guam Sept. 30, 2017)..................................................11, 12

*Castro v. Chicago Hous. Auth.*,
  360 F.3d 721 (7th Cir. 2004) ..................................................................................7

*Chaney v. Vermont Bread Co.*,
  2023 WL 5589113 (D. Vt. Aug. 24, 2023)..............................................................10

*Cirillo v. Arco Chem. Co.*,
  862 F.2d 448 (3d Cir. 1988)......................................................................................4

*Coventry v. U.S. Steel Corp.*,
  856 F.2d 514 (3d Cir. 1988)......................................................................................4

*Frymire v. Ampex Corp.*,
  61 F.3d 757 (10th Cir. 1995) ...................................................................................8

*Galloway v. United States*,
  319 U.S. 372 (1943).................................................................................................9

*Geraghty v. Ins. Servs. Off., Inc.*,
  369 F. App'x 402 (3d Cir. 2010) .............................................................................4

*Messer v. Bristol Compressors Int'l, LLC*,
  2020 WL 4548125 (W.D. Va. Aug. 6, 2020) .........................................................12

*Oil, Chem. and Atomic Workers Int'l Union v. Am. Home Prods. Corp.*,
  790 F. Supp. 1441 (N.D. Ind. 1992) ...................................................................8, 12

*In re Old Electralloy Corp.*,
  162 B.R. 121 (W.D. Pa. 1993)..................................................................................8

*In re Organogenesis Inc.*,
  316 B.R. 574 (Bankr. D. Mass. 2004) .....................................................................7

*Saxion v. Titan-C-Manufacturing, Inc.*,
   86 F.3d 553 (6th Cir. 1996) ...................................................................................................11

*Serv. Emps. Int'l Union Loc. 6 v. Andrews Int'l, Inc.*,
   2013 WL 12107630 (W.D. Wash. July 25, 2013) ..................................................................11

*United Auto. Aerospace & Agr. Implement Workers of Am., Loc. 1077 v.*
   *Shadyside Stamping Corp.*,
   1991 WL 230841 (6th Cir. Nov. 8, 1991)...........................................................................8, 12

*In re United Healthcare Sys.*,
   200 F. 3d 170 (3d Cir. 1999)................................................................................................4, 5

*United Steelworkers of Am., AFL-CIO-CLC v. North Star Steel Co.*,
   817 F. Supp. 522 (M.D. Pa. 1992).............................................................................................7

*Watts v. Marco Holdings, L.P.*,
   1998 WL 211770 (N.D. Miss. Apr. 30, 1998).........................................................................12

**Statutes**

29 U.S.C. § 2104(a)(4).........................................................................................................4, 11, 12

N.J. Stat. Ann. § 34:11 – 4:10.b...............................................................................................12

New Jersey WARN Act.............................................................................................................12

WARN Act.................................................................................................................... *passim*

## INTRODUCTION

After 99 years in operation, Yellow's business collapsed within a matter of days following the IBT's ill-fated July 17, 2023 strike notice.[2]  Yellow went from typically picking up approximately 50,000 shipments per day to picking up just over 10,000 shipments four days later. On July 29, Yellow delivered its very last shipment.  It then laid off all remaining union employees the next day.  Despite this sudden and tragic end for a storied company, Yellow worked as quickly and diligently as it could to draft and issue WARN notices to all affected employees, always keeping their safety and wellbeing top of mind.  If Yellow does not qualify for a good faith reduction of damages under the circumstances presented here, then no company ever would.

## STATEMENT OF UNDISPUTED FACTS

Yellow operated one of the country's largest less-than-truckload transportation companies, with facilities in all fifty-states.  D.I. 5227 at 7.  By 2023, Yellow employed approximately 30,000 people and, in its final months of operation, typically picked up approximately 50,000 shipments per day.  *Id.*  But when the IBT unexpectedly issued a strike notice on July 17, 2023, Yellow's business rapidly dissipated.  *See id.* at 12.  By July 21, the number of shipments Yellow picked up dropped to just 10,458.  *Id.*  Adding insult to injury, by July 25, Yellow's asset-based lender had issued two notices demanding a total of $50 million in reserves.  D.I. 2581, ¶¶ 94, 101.

As a result, on July 26, 2023, Yellow's Board of Directors concluded it was no longer feasible to save the Company given the pace of liquidity decline.  *See* D.I. 5227 at 13.  Immediately

---

[2]    For purposes of this brief, the "Union Plaintiffs" shall mean claimants represented by the International Brotherhood of Teamsters (the "IBT") and the International Association of Machinists and Aerospace Workers (the "IAM"), "Yellow" or the "Company" shall mean Yellow Corporation, "Debtors" shall mean the above-captioned debtors and debtors in possession, the "Moore Plaintiffs" shall mean the plaintiffs in Adv. Pro. No. 23-50457, the "Coughlen Plaintiffs" shall mean the plaintiffs in Adv. Pro. No. 23-50761 (together with the Union Plaintiffs and the Moore Plaintiffs, the "Plaintiffs"), and "WARN" shall refer to the Worker Adjustment and Retraining Notification Act and its state law equivalents.

1

thereafter, Yellow began working with both in-house and outside counsel to draft WARN notices,[3] the first of which were issued just two days later on July 28 to the approximately 3,200 non-union employees laid off on that date. *See id.* at 13–14; D.I. 4316-4 ¶ 5. All eligible non-union employees who were laid off on that date were offered a Notice of Separation & Release of Claims ("Release Agreement") pursuant to which they would be paid severance in exchange for a release of claims. D.I. 4316-4 ¶ 6. The Release Agreement included an explicit waiver of "claims relating to failure to provide WARN notice" and included a full citation to the statute. D.I. 5227 at 52; D.I. 2582-1. Over 2,700 of the employees terminated on July 28 executed their Release Agreement releasing their WARN claims. D.I. 4316-4 ¶ 6; *id.*, Ex. 3.

However, because Yellow was anticipating filing for bankruptcy as early as end of day July 31, the Company made the decision to pay severance to all eligible non-union employees laid off on July 28 prior to receiving all executed Release Agreements. *See* Whittman Declaration, attached hereto as **Exhibit A** ¶ 10. In a perfect world, the Debtors would have rather made these payments only after employees executed their Release Agreement and only to employees who executed such Release Agreements, but Debtors would have needed Court approval to make severance payments after the petition date, which was not certain. *Id.* Further, at a time when the Debtors crucially needed debtor-in-possession financing, there was uncertainty regarding whether prospective debtor-in-possession financing providers (as well as the Debtors' prepetition secured lenders) would permit the Debtors to make severance payments in the ordinary course of business post-petition. *Id.*

---

[3]    It should also be noted that the Company already had knowledge of the WARN Act and an understanding of its requirements given it had issued WARN notices previously. *See* D.I. 5227 at 60-66; D.I. 4036-1 at Ex. 21; D.I. 2581 at 31.

Accordingly, with its employees' welfare in mind, Yellow decided to preemptively make the payments, with the expectation that the recipients would ultimately execute a Release Agreement. *Id.* ¶ 11. For anyone who did not end up signing their Release Agreement, the Debtors knew they would have the ability to claw such money back as necessary down the road. *Id.* Debtors never intended to make irrevocable payments that the recipients could keep regardless of whether or not they executed a Release Agreement. *Id.*

On July 29, Yellow picked up just one shipment and delivered its very last shipment. D.I. 5227 at 15; Esser Declaration, attached hereto as **Exhibit B**, Exs. 2–13. After the Company delivered its final shipment, Yellow became a liquidating fiduciary. *See* D.I. 5227 at 4. The next day, Yellow's last truck returned to its terminal, and the Company laid off approximately 22,000 union employees. *Id.* at 15. Improved WARN notices[4] were issued to union representatives on that same day. D.I. 3794-2, Ex. 1. They were also mailed to all union employees on July 31. D.I. 5227 at 15.

## LEGAL STANDARDS

### I.    LIQUIDATING FIDUCIARY

Under the liquidating fiduciary exception, a company that is liquidating at the time that layoffs take place is not an "employer" under the WARN Act and thus has no obligation to provide WARN notice. *See* D.I. 5227 at 43, 48. "The more closely the entity's activities resemble those of a business operating as a going concern, the more likely it is that the entity is an 'employer'; the more closely the activities resemble those of a business winding up its affairs, the more likely it is

---

[4]    In addition to the language included in the WARN notices issued to the Moore Plaintiffs, the WARN notices issued to the Union Plaintiffs and to the vast majority of the Coughlen Plaintiffs explicitly stated "[t]he Company had hoped to complete one or more transactions and secure funds and business to prevent the closing of these locations but was unable to do so. These circumstances were not reasonably foreseeable at the time notice would have otherwise been required and notice is further excused because the business is being liquidated." D.I. 5227 at 15.

the entity is not subject to the WARN Act." *In re United Healthcare Sys.*, 200 F. 3d 170, 178 (3d

Cir. 1999).  At least one court has held that the liquidating fiduciary exception is also available

under New York law.  D.I. 5227 at 66.

## II.    RELEASE OF CLAIMS

In the Third Circuit, an employee may waive an employment claim against their employer

where such waiver is done both "knowingly and willfully."  D.I. 5227 at 49.  Consequently, Third

Circuit courts utilize "a totality of the circumstances test" that considers seven factors:

> [T]he clarity and specificity of the release language; (2) the plaintiff's education
> and business experience; (3) the amount of time plaintiff had for deliberation about
> the release before signing it; (4) whether plaintiff knew or should have known his
> rights upon execution of the release; (5) whether plaintiff was encouraged to seek,
> or in fact received benefit of counsel; (6) whether there was an opportunity for
> negotiation of the terms of the Agreement; and (7) whether the consideration given
> in exchange for the waiver and accepted by the employee exceeds the benefits to
> which the employee was already entitled by contract or law.

*Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir. 1988) (citing *Coventry v. U.S. Steel Corp.*,

856 F.2d 514, 523 (3d Cir. 1988), superseded by statute on other grounds, *Geraghty v. Ins. Servs.

Off., Inc*., 369 F. App'x 402 (3d Cir. 2010)).

## III.    GOOD FAITH DEFENSE

"Section 2104(a)(4) of title 29 allows courts to, in their discretion, reduce a company's

liability under the [WARN] Act" on account of such company's good faith.  D.I. 5227 at 59.  "To

satisfy its burden, the [company] must present subjective evidence of its intent to comply with the

[WARN] Act and evidence of objective reasonableness in the [company's] application of the Act."

*Id*. (internal quotation and citation omitted).

## ARGUMENT

**I. YELLOW WAS NOT REQUIRED TO ISSUE WARN NOTICES TO EMPLOYEES LAID OFF ON OR AFTER JULY 30, 2023**

This Court held that Yellow was not a liquidating fiduciary at the time of the approximately 3,200 layoffs that occurred on July 28, 2023, but that there is a genuine dispute of material fact as to whether the liquidating fiduciary exception was applicable when the approximately 22,000 layoffs occurred on July 30, 2023 given it was unclear whether those layoffs "occurred before or after the last delivery was completed." D.I. 5227 at 48–49. While the Debtors do not agree that Yellow was an "employer" within the meaning of the WARN Act on July 28, the evidence at trial will show that Yellow was certainly not an "employer" at the time of the July 30 layoffs and all layoffs thereafter. Indeed, Yellow delivered its very last shipment on July 29—the day before the July 30 layoffs. Ex. B, Exs. 2–13. Furthermore, it is undisputed that Yellow's final truck on the road returned to the terminal gate on July 30 ***before*** the layoffs occurred, and that Yellow did not pick up or deliver any shipments thereafter. *See* D.I. 2581 ¶ 108. Since Yellow was liquidating and thus was not an "employer" as defined by the WARN Act at the time it conducted layoffs on July 30, 2023 and thereafter, it was not required to issue WARN notices and has no liability under the WARN Act to any employee terminated on or after such date outside of New Jersey. *United Healthcare*, 200 F. 3d at 177–79.

**II. EMPLOYEES WHO RELEASED THEIR WARN ACT CLAIMS HAVE NO WARN CLAIMS**

As noted previously, Yellow terminated approximately 3,200 non-union employees on July 28, 2023. D.I. 4316-4 ¶ 5. Of those employees, over 2,700 executed a Release Agreement pursuant to which they were paid severance, calculated based on years of service and/or their position, in exchange for a release of claims. *Id*. ¶ 6; *id*., Ex. 3. The Release Agreement expressly required a release of all claims, including claims under the federal WARN Act and its state level equivalents.

*Id.*, Ex. 1.  Specifically, the claims released pursuant to the Release Agreement include any and all claims "arising from or relating to [] employment with the Company, the terms and conditions of that employment relationship, and the termination of that employment relationship, including, but not limited to, any statutory, regulatory, constitutional, or common law claims alleging ... damages and claims relating to failure to provide WARN notice . . . ." *Id.*  Plaintiffs understood they would be releasing their WARN claims if they executed the Release Agreement.  *See, e.g.,* D.I. 4316-12 at 46:19-49:11 (describing how Plaintiff Green did not execute the Release Agreement after reviewing it twice and conducting research on the WARN Act).

Yet, the Court has held there is a genuine question of fact as to whether the Debtors paid consideration in exchange for the over 2,700 employees' release of claims given that all non-union employees terminated pre-petition were paid severance out of an abundance of caution.  D.I. 5227 at 54-59.  The evidence at trial will make clear that Plaintiffs' fraud theories on this issue are not only "far-fetched," but entirely without merit.  *Id.* at 5.  As the Court surmised, Debtors merely
"████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████."  *Id*. at 58; *see also* B. Whittman Dep. Tr., attached hereto as **Exhibit C**, at 68:22–69:17.  The Debtors knew that to the extent some employees did not execute a release agreement, the bankruptcy estate could claw back such employees' severance payments.  Ex. C at 68:22–69:17.  "[B]ecause those who executed the release forms would not be subject to that [claw back] risk, those claimants received valid consideration in exchange for the releases they executed."  D.I. 5227 at 58.  Accordingly, over 2,700 of the approximately 3,200 employees terminated on July

28, 2023 validly released their WARN claims, and Yellow has no liability under the WARN Act or its state law equivalents to such employees.

## III.    YELLOW ACTED IN GOOD FAITH IN ISSUING ITS WARN NOTICES

Only approximately 430 employees who were terminated on July 28, 2023—when the Court believes Yellow was still an "employer" within the meaning of the WARN Act—did ***not*** release their WARN claims, and only approximately 470 employees who were terminated on July 30, 2023 were employed in New Jersey—where the Court has held the liquidating fiduciary exception is unavailable.  D.I. 4316-4, Ex. 3; D.I. 5227 at 48, 64; Ex. B, Ex. 1.  Yellow's WARN liability as to those approximately 900 employees (and as to any other employees should the Court somehow disagree with the Debtors' arguments in Sections I and II) is limited under the good faith defense.

Despite the fact that Yellow indisputably "started to discontinue accepting new shipments on July 24, 2023," and picked up just 43 shipments—less than 0.09% of the 50,000 daily shipments Yellow had picked up historically—on July 28, 2023[5] and thus was not an "employer" under the WARN Act in the Debtors' view at such time, Yellow ***still*** issued WARN notices to ***all*** affected employees, evidencing Debtors' intent to comply with the WARN Act.  *See* D.I. 5227 at 59–60. Indeed, the fact that Yellow issued WARN notices in and of itself sets Yellow apart from employers in many cases where courts have held damages cannot be reduced for good faith.  *See, e.g., Castro v. Chicago Hous. Auth.*, 360 F.3d 721, 731 (7th Cir. 2004); *United Steelworkers of Am., AFL-CIO-CLC v. North Star Steel Co.*, 817 F. Supp. 522, 524 (M.D. Pa. 1992); *In re Organogenesis Inc.*, 316 B.R. 574, 588–89 (Bankr. D. Mass. 2004).

---

[5]    *See* D.I. 4036 at 14; D.I. 5227 at 13.

Courts have interpreted the good faith defense "to require proof of the employer's subjective intent to comply with the [WARN] Act, as well as evidence of objective reasonableness in the employer's application of the Act." *Frymire v. Ampex Corp.*, 61 F.3d 757, 767-68 (10th Cir. 1995); *Oil, Chem. and Atomic Workers Int'l Union v. Am. Home Prods. Corp.*, 790 F. Supp. 1441, 1451–52 (N.D. Ind. 1992). Evidence of an employer's subjective intent to comply with the WARN Act can "include proof that the employer worked with legal counsel to determine whether the company was in compliance with WARN, as well as more general evidence that the company had its employees' welfare in mind." *Frymire*, 61 F.3d at 768; *see also In re Old Electralloy Corp.*, 162 B.R. 121, 126 (W.D. Pa. 1993) (holding evidence that company "contact[ed] legal counsel to assure compliance with the WARN Act's requirements" supported finding of good faith that "negate[d] any penalty" for WARN violation). The good faith defense thus permits the presentation of numerous types of evidence to demonstrate an employers' intent to comply with the WARN Act and considers the totality of the circumstances. *See e.g. United Auto. Aerospace & Agr. Implement Workers of Am., Loc. 1077 v. Shadyside Stamping Corp.*, 1991 WL 230841, at *3 (6th Cir. Nov. 8, 1991) (finding good faith after weighing evidence that company was facing "rapidly evolving" and "unforeseen developments" and "knew of the Act, attempted to comply with the Act, and had reasonable grounds for believing it had complied").

The evidence at trial will show not only that Yellow worked with both in-house and outside counsel in order to try to ensure compliance with the WARN Act, but also that Yellow had its employees' welfare top of mind throughout its winddown process, ensuring their safety and that they would receive severance payments if they executed a Release Agreement, among other things. *See* D. Hawkins Dep. Tr., attached hereto as **Exhibit D**, at 120:13-122:15 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); Ex. C at

68:22-69:17.  The Debtors did the best they could to comply with the WARN Act on a very tight timeline and under extreme circumstances.  The WARN notice that Yellow issued to its non-union employees was issued just ***two days*** after Yellow's mass layoffs became probable.  *See* D.I. 4316-4, Ex. 1.  Yellow then continued working with counsel and issued an improved WARN notice to union representatives two days later, which the Court even acknowledges was "certainly a close case" with regard to sufficiency.  D.I. 5227 at 37.  Thus, the Court can make a reasonable inference of Yellow's good faith efforts from that fact.  *See Galloway v. United States*, 319 U.S. 372, 396 (1943) (holding that the fact finder must "be allowed to make reasonable inferences").

And although the Court determined Yellow's WARN notices were insufficient because the brief statement contained therein "did not contain enough facts adequately to justify the reduced notice," D.I. 5227 at 30, the Debtors' application of the WARN Act was objectively reasonable, particularly in light of all of the other communications Yellow made to employees.  The undisputed evidence demonstrates that Yellow sent several written communications to its employees in June and July 2023 explaining the circumstances facing the Company as they evolved.  D.I. 2581 ¶¶ 69, 71, 75-76, 78, 96.  These communications, one of which was sent on July 20—just days before the layoffs—provide abundant explanation of the basis for reducing the notification period.  These communications explain the importance of One Yellow, that Yellow was working with lenders who needed to see progress on One Yellow, the IBT's intransigence, that all Yellow jobs would be lost if One Yellow were not executed, and that Yellow was doing everything it could to achieve One Yellow and save jobs.

Additionally, supervisors of non-union employees were instructed to inform the non-union employees being laid off that:

> The IBT's refusal to negotiate for nine months, its freezing of our essential business plan, One Yellow, and finally, its strike authorization that caused customers to find

alternative freight carriers, has had a catastrophic effect on our business. When IBT leaders were finally ready to meet this week, it was too late. By then, the IBT's strike threat already had a devastating impact on our business, rattling investors and causing customers to quickly depart.

D.I. 3794-1, Ex. 15.  Moreover, Yellow issued a press release expressly notifying the world—including its former employees—that when "IBT leaders announced a strike against Yellow's then-significantly wounded company[,] [c]ustomers fled and business was not recoverable." Yellow Corporation Files Voluntary Chapter 11 Petitions (published August 6, 2023), https://investors.myyellow.com/news-releases/news-release-details/yellow-corporation-files-voluntary-chapter-11-petitions.  And those are just the communications that Yellow sent to employees—union leaders also sent communications with relevant information,[6] and given the highly publicized nature of Yellow's shutdown, there was a huge amount of publicly available information on the cause of the Company's sudden demise as well.  *See, e.g.*, Alan Rappeport, *After $700 Million U.S. Bailout, Trucking Firm Is Shutting Down* (July 28, 2023), https://www.nytimes.com/2023/07/28/business/bailout-trucking-firm-yellow-yrc-shutdown.html; Emma Bowman, *The Yellow trucking company meltdown, explained* (published July 30, 2023, as updated Aug. 3, 2023), https://www.npr.org/2023/07/30/1190960948/yellow-trucking-shutdown-explained.

Indeed, no Plaintiff points to **any** evidence to suggest that **any** employee was unaware that there was a strike notice issued shortly before Yellow's shutdown.  All employees were certainly aware of the IBT's highly publicized strike threat and its effect on Yellow's business, and thus had the "opportunity to determine whether, on that basis, the absence of prior notice was reasonable." *Chaney v. Vermont Bread Co.*, 2023 WL 5589113, at *11 (D. Vt. Aug. 24, 2023); *see also, e.g.,*

---

[6]    *See, e.g.*, D.I. 4316-1, Ex. 6 (July 27, 2023, memo from John Murphy to local unions notifying them that "Yellow has sought to blame the Local Unions' 72-hour strike notice as the cause of its financial problems.").

D.I. 4316-11 at 86:1-87:2 (testifying that following the strike notice, Plaintiff Torres witnessed "all the operations stuff" "declining rapidly within that week"). It was thus objectively reasonable for Yellow to believe its notices were sufficient. *See Carlberg v. Guam Indus. Servs.*, 2017 WL 4381667, at *4 (D. Guam Sept. 30, 2017) ("an employer may, at times, appropriately rely on a combination of written and oral communication, as well as external publicity, to adequately convey the requisite information under the Act to employees."); *In re Advanced Accessory Sys., LLC*, 443 B.R. 756, 767-68 (Bankr. E.D. Mich. 2011), (finding that a company qualified for the "unforeseeable business circumstances" exception even though it did not provide any written notice at all and relied on employee meetings instead).[7]

It is clear that Yellow had a good faith intent to comply with the WARN Act and that its application of the Act was objectively reasonable. *See* 29 U.S.C. § 2104(a)(4). Moreover, given the amount of information affected employees had available to them regarding the cause of Yellow's collapse, there can be no question that they had the opportunity to assess whether Yellow's basis for its shortened notice period was reasonable, and thus were not harmed by Yellow's WARN notices, despite the Court's finding that they were inadequate. Indeed, even the Court recognizes that "it is by no means obvious that an employee who received a compliant notice would be materially better off than those who received the debtors' inadequate one." D.I. 5227 at 61. And, given that the Court has already found "there can be little question that the business circumstances that caused the layoffs were 'unanticipated' within the meaning of the WARN Act's

---

[7]    *See also, e.g., Serv. Emps. Int'l Union Loc. 6 v. Andrews Int'l, Inc.*, 2013 WL 12107630, at *6 (W.D. Wash. July 25, 2013) (denying union employees' motion for summary judgment where "a reasonably pragmatic interpretation of the transition memorandum, along with the email communications with union representatives and the information communicated to employees orally, support[ed] a finding that notice was sufficient"); *accord Saxion v. Titan-C-Manufacturing, Inc.*, 86 F.3d 553, 561 (6th Cir. 1996) ("That the notice was deficient ... does not change the fact that ten days before the plant was closed, the affected employees clearly knew that it was going to be closed.").

exception," it is clear that Debtors could not have issued WARN notices any earlier. *Id*. at 3, 61. Thus, even if Yellow had issued notices determined to be sufficient by the Court on July 28 and July 30, Plaintiffs would still not have received any advanced notice of their layoffs, and therefore have suffered no damages as a result of Yellow's perceived "purely technical" violation. *Id*. at 6; *see also Messer v. Bristol Compressors Int'l, LLC,* 2020 WL 4548125, at *3 (W.D. Va. Aug. 6, 2020) (holding no WARN violation under substantial compliance where there was no evidence that employees "suffered any prejudice" from technical defect and "employees at issue" had "received notice that served the purpose of the WARN Act" despite defects).

"[T]he entire damage award—the liability for back pay and benefits—[is] within the district court's discretion." *Bledsoe v. Emery Worldwide Airlines, Inc.*, 635 F.3d 836, 843 (6th Cir. 2011); *see also Oil, Chemical, & Atomic Workers*, 790 F. Supp. at 1451 ("the court has discretion to reduce the amount of the liability or penalty provided by the WARN Act."); *Watts v. Marco Holdings, L.P.*, 1998 WL 211770, at *2 (N.D. Miss. Apr. 30, 1998) ("The court may, in its discretion, reduce the amount of the award if the court finds that the defendants' actions were taken in good faith, and that there was a reasonable basis for believing that they were not in violation of the provisions of the Act."); *Shadyside Stamping*, 1991 WL 230841, at *3 (finding "it was within the district court's discretion under 29 U.S.C. § 2104(a)(4) to conclude that no damages should be awarded."). Accordingly, the Debtors respectfully submit that the Court should substantially reduce any WARN liability assessed against the Debtors on account of the Debtors' good faith.[8]

---

[8] It should be noted that the Union Plaintiffs seem to have taken the position that the Debtors' damages under the New Jersey WARN Act cannot be reduced on account of Yellow's good faith. D.I. 5314 ¶ 17. This is patently incorrect. *See* N.J. Stat. Ann. § 34:11 – 4:10.b ("When determining the amount of the penalty imposed because of a [WARN] violation, the commissioner shall consider factors [including] . . . the seriousness of the violation" and "the good faith of the employer.").

## CONCLUSION

For the reasons set forth herein, the Court should find that Yellow was a liquidating fiduciary at the time of the July 30, 2023 layoffs and all layoffs thereafter, that it paid adequate consideration in exchange for Plaintiffs' release of claims, and that any damages assessed against it should be reduced on account of the Debtors' good faith.

Dated: January 14, 2025            */s/ Peter J. Keane*
Wilmington, Delaware               Laura Davis Jones (DE Bar No. 2436)
                                   Timothy P. Cairns (DE Bar No. 4228)
                                   Peter J. Keane (DE Bar No. 5503)
                                   Edward Corma (DE Bar No. 6718)
                                   **PACHULSKI STANG ZIEHL & JONES LLP**
                                   919 North Market Street, 17th Floor
                                   P.O. Box 8705
                                   Wilmington, Delaware 19899-8705 (Courier 19801)
                                   Telephone:    (302) 652-4100
                                   Facsimile:    (302) 652-4400
                                   Email:        ljones@pszjlaw.com
                                                 tcairns@pszjlaw.com
                                                 pkeane@pszjlaw.com
                                                 ecorma@pszjlaw.com

                                   -and-

                                   Patrick J. Nash, P.C. (admitted *pro hac vice*)
                                   David Seligman, P.C. (admitted *pro hac vice*)
                                   **KIRKLAND & ELLIS LLP**
                                   **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                   333 West Wolf Point Plaza
                                   Chicago, IL 60654
                                   Telephone:    (312) 862-2000
                                   Facsimile:    (312) 862-2200
                                   Email:        pnash@kirkland.com
                                                 dseligman@kirkland.com

                                   -and-

                                   Allyson B. Smith (admitted *pro hac vice*)
                                   **KIRKLAND & ELLIS LLP**
                                   **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                   601 Lexington Avenue
                                   New York, New York 10022
                                   Telephone:    (212) 446-4800
                                   Facsimile:    (212) 446-4900
                                   Email:        allyson.smith@kirkland.com

                                   *Co-Counsel for the Debtors and Debtors in Possession*